# EXHIBIT 8

# EXHIBIT 8

Case 2:14-cv-11916-GCS-SDD ECF No. 18-8, PageID.374 Filed 11/24/14 Page 2 of 7
Westlaw.

Page 1

Not Reported in F.Supp.2d, 2012 WL 2601882 (E.D.Mich.)
**(Cite as: 2012 WL 2601882 (E.D.Mich.))**

H
Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
Christopher James BAILEY, Plaintiff,
v.
FAST MODEL TECHNOLOGIES, LLC, Defendant.

No. 10–15118.
July 5, 2012.

William R. Moore, Pinckney, MI, for Plaintiff.

Aaron M. Halvas, Douglas W. Van Essen, Lee T. Silver, Silver and Van Essen, Grand Rapids, MI, for Defendant.

*MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION (Doc. 42)*
AVERN COHN, District Judge.

### I. Introduction

*1 This is a breach of employment contract case. Christopher James Bailey ("Bailey") worked for Fast Model Technologies, LLC ("Fast Model") as a software sales representative. Fast Model terminated Bailey's employment. Bailey claims that Fast Model failed to pay him commissions he earned under the terms of his employment contract and did not compensate him for additional work he did developing Fast Model's football software.

The complaint is in five (5) Counts: (I) Violation of Michigan Sales Representative Commission Act (MSRCA), M.C.L. § 600.2961; (II) Violation of Michigan's Procuring Cause Doctrine for Post–Termination Commissions; (III) Promissory Estoppel; (IV) Breach of Contract; and (V) Unjust Enrichment and Quantum Meruit.

The Court in a memorandum and order (1) granted Bailey's motion for partial summary judgment; (2) denied in part and granted in part Fast Model's motion for summary judgment; and (3) granted in part and denied in part Bailey's motion to amend the complaint and to extend discovery (Doc. 40).

Now before the Court is Bailey's motion for reconsideration (Doc. 42). Each party filed a brief. For the reasons described below, the motion will be GRANTED in part and DENIED in part. This memorandum and order replaces the previous memorandum and order (Doc. 40). A full discussion of the reasons follows.

### II. Background

The Court gleans from the parties' papers the factual background of the case as follows: Fast Model is a New Jersey company specializing in software for athletic teams and coaches. The parties entered into an employment contract in January of 2010, which provided to Bailey an annual base salary of $24,000, plus commissions of twenty-five percent (25%) of gross sales for new accounts, and seventeen and one-half percent (17.5%) of gross sales on renewals of existing clients.[FN1] The commissions were to be paid at the end of each month once the account receivable department received payment. Bailey's responsibilities included leading, running, and managing Fast Model's football division.

> FN1. The parties did not provide the Court with a signed copy of the contract but do not dispute its validity or its terms. (Doc. 20 ¶ 2)

The football software was not ready to bring to market in time for the 2010 season. As a result, the parties agreed to modify employment contract. Instead of selling football software, Bailey was to sell basketball software to NCAA Division I college teams in the Eastern portion of the United States. Bailey's commission on renewal contracts were to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 2601882 (E.D.Mich.)
**(Cite as: 2012 WL 2601882 (E.D.Mich.))**

decrease from seventeen and one-half percent (17.5%) to seventeen percent (17%). All other terms of the contract remained the same.[FN2]

> FN2. It appears that the modified contract was never memorialized. Neither party questions the modified contract's terms or validity.

Sometime in the beginning of 2010, Bailey encouraged Fast Model to hire his former girlfriend, Heidi England ("England"). Fast Model hired England to work in accounts receivable. Soon thereafter, Bailey's relationship with England soured. Bailey threatened to use his influence to have England fired unless she agreed to his demands for sexual favors. Bailey harassed England with unwanted telephone calls, sending profane emails, and coming to her home uninvited.

*2 England brought the situation to the attention of her supervisor who relayed her complaint to Fast Model's chief executive officer, Ross Comerford ("Comerford"). Comerford spoke to Bailey, instructing him not to have further contact with England. Fast Model also retained a law firm to investigate England's allegations. Despite Fast Model's instructions to the contrary, Bailey attempted to contact England by phone under the guise of discussing a client issue. England reported the attempt to Fast Model. Bailey subsequently e-mailed England. The emails scared England into reporting Bailey to the police.

Fast Model suspended Bailey on August 26, 2010, pending the completion of its investigation. The attorney Fast Model retained to investigate England's complaint concluded that Bailey's conduct amounted to quid pro quo sexual harassment and hostile work environment sexual harassment. The attorney recommended Bailey's termination. Fast Model terminated Bailey effective September 10, 2010.

### III. Standard of Review
Motions for reconsideration are governed by E.D. Mich. LR 7.1(h), which states in pertinent part:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Ososki v. St. Paul Surplus Lines Ins. Co.,* 162 F.Supp.2d 714, 718 (E.D.Mich.2001). The Court is issuing this memorandum because the prior memorandum contained palpable defects.

### III. Discussion
### A. Michigan Sales Representative Commission Act

The Michigan Sales Representative Commission Act ("MSRCA"), M.C.L. § 600.2961(4) requires a principal to pay all commissions due to a sales representative at the time of termination within forty-five (45) days, and to pay commissions that become due after the date of termination within forty-five (45) days of the date the commission became due. The terms of the contract between the parties determine when a commission becomes due. M.C.L. § 600.2961(2). The contract between Bailey and Fast Model states that a commission becomes due at the end of the month that Fast Model receives payment from the customer.

Fast Model argues that it is excused from paying commissions owed to Bailey based on the faithless servant doctrine. "Michigan courts have long recognized that an agent may forfeit his or her right to compensation under a contract for services when the agent engages in misconduct or grossly mismanages his principal's affairs." *Tooling Mfg. & Techs. Ass'n v. Tyler,* 2010 WL 5383529 at *7

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(Mich.App.2010). The agent, however, only forfeits the compensation related to the misconduct.[FN3] *Id.* ("Under the faithless agent rule, an agent who engages in misconduct will forfeit the compensation related to the service that was improperly performed.").

> FN3. A fiduciary may forfeit all compensation where he or she commits fraud, misconduct, or negligence. *See Toy ex rel. Ketcham v. Lapeer Farmers Mut. Fire Ins. Ass'n,* 297 Mich. 188, 192, 297 N.W. 230 (1941). An employer/employee relationship, however, is generally not a fiduciary one. *Muglia v. Kaumagraph Corp.,* 64 F.3d 663, at *5 (6th Cir.1995) (citing *Bradley v. Gleason Works,* 175 Mich.App. 459, 463, 438 N.W.2d 330 (1989)).

**\*3** Fast Model failed to pay Bailey's commission as required under M.C.L. § 600.2961(4). Fast Model is liable to Bailey for the actual damages caused by the failure to pay the commissions when due, totaling $29,463.43.[FN4] M.C.L. § 600.2961(5)(a).

> FN4. The total can be broken down into three different categories: commission from sales invoiced and paid by the customer prior to September 10, 2010 ($12,409.50); commission from sales invoiced before September 10, 2010 but paid by the customer after September 10, 2010 ($11,226.93); and commission from sales originally invoiced before September 10, 2010, but later re-invoiced and paid after September 10, 2010 ($5,827). (See Doc. 12, Ex. 6–10)

Section 600.2961(5)(b) states "If the principal is found to have intentionally failed to pay the commission when due, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000, whichever is less." Fast Model believed that Bailey forfeited his commissions because of his misconduct. However, "under the clear language of the statute, if a principal deliberately fails to pay commissions when due, it is liable for double damages under the statute, even if the principal did not believe, reasonably or otherwise, that the commission was owed. There is no good faith defense under the statute." *Chase v. Matsu Mfg., Inc.,* 147 F.App'x 507, 515 (6th Cir.2005). Accordingly, Fast Model is liable for an additional $58,926.86.

Fast Model is also liable for attorney fees and court costs. M.C.L. § 600.2961(6) ("If a sales representative brings a cause of action pursuant to this section, the court shall award the prevailing party reasonable attorney fees and court costs."). Thus, Fast Model is obligated to pay Bailey for $88,390.29, plus reasonable attorney fees and court costs, yet to be determined. A partial judgment in the amount of $88,390.29 will be entered.

### B. Procuring Cause Doctrine

The procuring cause doctrine is an equitable remedy to ensure that a principal does not terminate an agent to avoid paying commissions on sales that the agent procured. *KBD & Assoc., Inc. v. Great Lakes Foam Tech., Inc.,* 295 Mich.App. 666, 2012 WL 880650 (Mich.Ct.App. March 15, 2012) (citing *Reed v. Kurdziel,* 352 Mich. 287, 294, 89 N.W.2d 479 (1958)). An agent can be the procuring cause of a customer or of a sale. *Lilley v. BTM Corp.,* 958 F.2d 746, 751 (6th Cir.1992) (citing *Reed,* 352 Mich. at 294–95, 89 N.W.2d 479)).

> Customer procurement allows an agent to recover a commission for all sales to a customer that the agent procured regardless of whether the agent was involved in the particular sale. Sales procurement allows an agent to recover a commission only on the specific sales that the agent procures. Subsequent sales to the same customer that are not procured by the agent do not yield a commission. Whether an agent is entitled to commissions on a customer procurement or sales procurement basis is determined by the contract between the agent and the principal.

*Id.*

The phrase in the above quote "determined by the contract between the agent and principal" is somewhat misleading. The procuring cause doctrine is only applicable where the governing contract is silent as to post-termination commissions. *See, e.g., APJ Assoc., Inc. v. North Am. Philips, Corp.,* 317 F.3d 610, 616 (6th Cir.2003). Thus, the terms of the contract regarding pretermination commissions define the scope of post-termination commissions.

*4 Bailey bears the burden of proving that he was the procuring cause of any sales on which he seeks post-termination commission. *See Pfam, Inc. v. Indiana Tube Corp.,* 2006 WL 3313772 at *4 (E.D.Mich. Nov.15, 2006) (quoting *Reed,* 352 Mich. at 295, 89 N.W.2d 479 ("[T]he agent is entitled to recover a commission on a sale, whether or not he personally concluded it, only where it can be shown that his efforts were the 'procuring cause'."). Bailey has offered evidence that he was paid commissions on subsequent sales to customers when he was not directly involved in the sale. Additionally, the contract provided that Bailey would be paid a certain percent of gross sales on renewals of existing clients. There is a genuine issue of material fact as to whether the procuring cause doctrine applies.[FN5] Accordingly, Fast Model's motion for summary judgment on the procuring cause doctrine will be denied. Bailey has not indicated the sales on which he claims he was the procuring cause or the amounts. Bailey shall within 20 days state the sales by Fast Model to which he says he is entitled commission under the procuring cause doctrine and the amount of these commissions.

> FN5. As the Court noted, whether or not an agent is the procuring cause is a question of fact for the jury. (Doc. 40 n. 5)

### C. Promissory Estoppel

Bailey contends that he has been damaged by Fast Model's promises by not receiving payment for certain work he performed or for an ownership interest in the football software. (Comp.¶ 95) To prevail on his promissory estoppel claim, Bailey must demonstrate: (1) there was a promise; (2) the promisor reasonably should have expected the promise to cause the promisee to act in a definite and substantial manner; (3) the promisee did in fact rely on the promise by acting in accordance with its terms; and (4) the promise must be enforced to avoid injustice. *Novak v. Nationwide Mut. Ins.,* 235 Mich.App. 675, 686–87, 599 N.W.2d 546 (1999). "Moreover, to support a claim of estoppel, a promise must be definite and clear." *Kamalnath v. Mercy Mem. Hosp. Corp.,* 194 Mich.App. 543, 552, 487 N.W.2d 499 (1992).

Bailey concedes that he was never promised compensation beyond his base salary and commissions or an ownership interest in the football software:

> Q: Okay. Listen to my question. Did anyone at Fast Model ever promise you a 20 percent ownership stake in the football software?
>
> A: Those words were not used, no.
>
> Q: Okay.
>
> A: Those specific words.
>
> Q: Did anybody ever promise you any ownership percentage in the football program?
>
> A: Those—no. Those words were not used, but—
>
> Q: Do you have anything in writing that says you will receive an ownership interest in Fast Model's football software?
>
> A: No, there's nothing in writing stating that I should.
>
> Q: So why then, Mr. Bailey, do you feel you are entitled to a 20 percent ownership interest in the football software developed by Fast Model?
>
> A: Well, I was asked to do the development on it....

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:14-cv-11916-GCS-SDD ECF No. 18-8, PageID.378 Filed 11/24/14 Page 6 of 7

Page 5

Not Reported in F.Supp.2d, 2012 WL 2601882 (E.D.Mich.)
(Cite as: 2012 WL 2601882 (E.D.Mich.))

(Bailey TR–157, Doc. 14 Ex. 2).

Bailey does not identify any promise that he that he would receive compensation beyond his base salary and commissions or an ownership interest in the football software. Accordingly, Bailey's promissory estoppel claim will be dismissed.

### D. Breach of Contract

*5 Bailey claims that Fast Model breached the contract by not paying him a bonus.[FN6] Bailey's contract entitled him to a $10,000 bonus if and when his gross sales exceeded $250,000. Bailey's gross sales exceeded $250,000 (See Doc. 12, Ex. 6–20) Bailey earned the $10,000 bonus. Bailey is entitled to an additional $10,000. The partial judgment (see section III.A., *supra*) shall include the $10,000.

> FN6. Bailey also contends that Fast Model breached the contract by failing to pay commissions when they became due. This issue is address in section III.A., *supra*.

### E. Unjust Enrichment and Quantum Meruit

Bailey says he should be awarded an ownership interest in the football software based on a theory of unjust enrichment or quantum meruit. The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. *Dumas v. Auto Club Ins. Ass'n,* 437 Mich. 521, 546, 473 N.W.2d 652 (1991). In such instances, the law operates to imply a contract in order to prevent unjust enrichment. *Martin v. East Lansing School Dist.,* 193 Mich.App. 166, 177, 483 N.W.2d 656 (1992). A contract, however, will be implied only if there is no express contract covering the same subject matter. *Id.*

Bailey's employment contract requires him to "lead, run and manage the Fast Model Football division as well as selling ...." The language "as well as" belies Bailey's assertion that his role was limited exclusively to sales. The verbs "lead" "run" and "manage" contemplate services beyond sales. Thus, Bailey's contract covered the work he performed on the football software. The law will not imply a contract where there is an express contract covering the same subject matter. *Belle Isle Grill Corp. v. City of Detroit,* 256 Mich.App. 463, 666 N.W.2d 271 (2003). Accordingly, Bailey's unjust enrichment and quantum meruit claim will be dismissed.

### F. Bailey's Motion to Amend
#### 1. Legal Standard

Under Fed.R.Civ.P. 15(a), a party may amend its pleadings after 20 days "only by leave of court or by written consent of the adverse party" and leave to amend "shall be freely given when justice so requires." The decision whether to permit the amendment is committed to the discretion of the trial court. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–32, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). This discretion, however, is "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir.1987) (citation omitted).

#### 2. Tortious Interference with Contract[FN7]

> FN7. Although labeled as a claim for tortious interference with a contract, the claim, in substance, is a claim for tortious interference with a business relationship or expectancy.

As part of discovery, Fast Model requested that Bailey turn over any employment contracts into which he entered subsequently to be being terminated by Fast Model. Bailey had secured employment with Scoutware, LLC ("Scoutware"). On October 17, 2011 Bailey turned over to Fast Model the employment contract with Scoutware. Telephone records indicate that on October 19, (1) there were six (6) telephone conversations between Comerford and Kate Cronin ("Cronin"), a Scoutware employee; (2) after hanging up with Comerford, Cronin

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

called Andy Clark, Scoutware's vice president; and (3) after hanging up with Andy Clark, Cronin called Scoutware's chief executive officer, Jeff Murphy. On November 4, 2011, Scoutware terminated Bailey's employment.

*6 The timing of Bailey's termination following disclosure of his Scoutware contract coupled with the timing of the telephone exchanges between Comerford and Cronin raises a plausible claim that Comerford had something to do with Bailey's termination. Accordingly, Bailey's motion to amend the complaint to add a tortious interference claim will be granted.

### 3. Intentional Infliction of Emotional Distress

Bailey's final allegation is that Fast Model's chief operating officer sent a letter to the state unemployment agency saying that Bailey was not entitled to unemployment benefits due to his misconduct. Bailey says that the sole purpose of the letter was to retaliate against him for filing the present suit by interfering in his ability to earn a living. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Polk v. Yellow Freight Sys., Inc.,* 801 F.2d 190, 195 (6th Cir.1986).

M.C.L. § 421.29(b) disqualifies an employee terminated for misconduct from receiving unemployment benefits. Fast Model did nothing more than exercise its legal right to challenge an award of unemployment benefits. A Fast Model is not liable " 'where he has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence is certain to cause emotional distress.' " *Polk,* 801 F.2d at 195 (quoting Restatement (2d) of Torts § 46 , comment g (1965)). Accordingly, Bailey's motion to amend the complaint to add an intentional infliction of emotional distress claim will be denied.

### IV. Conclusion

The Court GRANTS summary judgment in favor of Bailey on Count (I) Violation of Michigan Sales Representative Commission Act (MSRCA), M.C.L. § 600.2961, and directs entry of a partial judgment in the amount of $88,390.29. The Court DENIES Fast Model's motion for summary judgment as to Count (II) Violation of Michigan's Procuring Cause Doctrine for Post–Termination Commissions. The Court GRANTS Fast Model's motion for summary judgment on Count (III) Promissory Estoppel. The Court GRANTS Bailey's motion for summary judgment on Count (IV) Breach of Contract, and directs the partial judgment to include an additional $10,000. The Court GRANTS Fast Model's motion for summary judgment as to Count (V) Unjust Enrichment and Quantum Meruit. Finally, the Court GRANTS Bailey's motion to amend the complaint to add a claim of tortious interference FN8 and DENIES Bailey's motion to amend the complaint to add a claim of intentional infliction of emotional distress. The case manager shall set a date for a status conference at which the case forward will be discussed.

> FN8. Bailey is required to demonstrate that the Court has personal jurisdiction over Comerford, whom Bailey seeks to add as a defendant.

SO ORDERED.

E.D.Mich.,2012.
Bailey v. Fast Model Technologies, LLC
Not Reported in F.Supp.2d, 2012 WL 2601882 (E.D.Mich.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.