# EXHIBIT D

Jacobson v. Starbucks Coffee Co., Not Reported in F.Supp.2d (2006)
2006 WL 3146349

2006 WL 3146349
Only the Westlaw citation is currently available.
United States District Court,
D. Kansas.

Jacque JACOBSON, Plaintiff,
v.
STARBUCKS COFFEE COMPANY, Defendant.

No. 05–1338–JTM. | Oct. 31, 2006.

**Attorneys and Law Firms**

Jeffrey P. Degraffenreid, Foulston Siefkin LLP, Wichita, KS, for Plaintiff.

Lora M. Jennings, Terry L. Mann, Martin, Pringle, Oliver, Wallace & Bauer, LLP, Wichita, KS, for Defendant.

*MEMORANDUM AND ORDER*

KAREN M. HUMPHREYS, Magistrate Judge.

*1 This matter is before the court on plaintiff's motion to compel. (Doc. 30). Specifically, plaintiff seeks an order requiring defendant to (1) produce all documents responsive to Production Request Nos. 3, 4, 5, 7, 8, 9, 10 and 11, (2) explain Starbucks' efforts to locate responsive documents; and (3) produce Scott Vanatta's computer for inspection. Plaintiff also requests monetary sanctions. Starbucks opposes the motion. For the reasons set forth below the motion shall be GRANTED IN PART.

**Background**

This is an employment discrimination case. Highly summarized, plaintiff alleges that she was hired in September 2002 to manage Starbucks' first coffee shop in Wichita, Kansas. The store was the most profitable in the Midwest region and she received a "Bravo Award" from defendant for the store's financial success. Plaintiff also received numerous compliments from customers.

Plaintiff asserts that defendant's view of her performance changed markedly after she injured her knees while working in the store in December 2003 and filed a claim for workers compensation. She contends that her immediate supervisor, Scott Vanatta, wanted to fire her in March 2004 but was told by Angela Bailey, Starbucks' human resource manager, that he did not have sufficient documentation. Vanatta then suspended plaintiff while he conducted an investigation and ultimately terminated her employment in July 2004.

Plaintiff alleges that her suspension and termination were unlawful and based upon (1) age, (2) gender, (3) disability, and/or (4) the filing of a workers compensation claim. Defendant denies plaintiff's allegations and contends that she was (1) suspended so that management could investigate complaints that she treated coworkers and customers in an unprofessional and rude manner and (2) terminated for customer complaints. (Doc. 35, pp. 1–2). Plaintiff counters that defendant's stated reasons are merely a pretext for her wrongful termination. Additional facts and contentions are contained in the following discussion of the discovery issues raised by plaintiff's motion.

**Motion to Compel**

**Production Request No. 3 and 5(a)**
Production Request No. 3 asks for "all documents relating to plaintiff's employment with Starbucks or that in any way reference plaintiff." Similarly, Production Request No. 5(a) asks for the "personnel files, supervisor files, human resource files, performance evaluations, complaint or discipline files, and any other employment related documents or files" regarding plaintiff. Defendant answered the requests by stating that all such documents, other than those identified in a privilege log, had previously been provided.

Plaintiff moves to compel, arguing that it is "questionable whether all documents in defendant's possession have been produced." (Doc. 31, p. 16). Specifically, plaintiff argues that Brian Joy, a manager temporarily assigned to plaintiff's store, assisted in Starbucks' pre-termination investigation of plaintiff's conduct but that no documents have been provided concerning Joy's investigation. Plaintiff also argues that recently produced discovery responses reveal that Starbucks did not conduct a reasonable search for documents responsive to Request Nos. 3 and 5(a).

*2 With respect to Brian Joy, defendant disputes

plaintiff's "understanding and belief" that Joy was involved in the investigation. Starbucks contends that the "investigation" was conducted by plaintiff's supervisor, Scott Vanatta, who traveled to Wichita and interviewed employees. Defendant also explains that Mr. Joy no longer works for Starbucks and a review of his personnel and field files shows no evidence that Joy participated in the investigation of plaintiff's conduct.[1] Finally, Angela Bailey, Starbucks' human resource representative, states that Joy did not participate in the investigation. Based on Starbucks' representations, the court is persuaded that there are no Brian Joy records responsive to plaintiff's production requests.

The issue of whether Starbucks conducted a reasonable search for documents responsive to Production Request Nos. 3 and 5(a) is more problematic.[2] Plaintiff served the above production requests on May 26, 2006. On **July 18, 2006,** Starbucks represented that all documents responsive to the two requests had "previously been produced." However, plaintiff discovered in **August 2006** that Vanatta maintained files about plaintiff on his work computer which had not been searched for responsive documents.[3] Vanatta was the main decision-maker in plaintiff's termination and the failure to review his computer for relevant documents before responding to plaintiff's production requests is inexcusable.[4]

Equally troubling, plaintiff alleges that Coon and Ignatowski (two of defendant's managers who prepared written complaints about plaintiff at Vanatta's request) testified at their depositions that they had not searched their home office or work office for discoverable documents concerning customer complaints and/or compliments.[5] Apparently, they were never asked by defendant to check for records responsive to plaintiff's production requests. Based on these and other examples, plaintiff asks that the court conduct an inquiry into the sufficiency of defendant's efforts to locate and produce documents.[6]

The court agrees that defendant's efforts to search for documents responsive to plaintiff's production requests are highly suspect. However, rather than conduct an independent inquiry, the court will authorize plaintiff to conduct a Rule 30(b)(6) deposition of Starbucks to develop facts and information concerning defendant's efforts to locate responsive documents. The cost of that deposition, including attorney fees, shall be assessed against defendant.

**Production Request Nos. 4 and 8**
Originally, Production Request No. 4 asked for any and all Starbucks employee manuals, handbooks, management statements or policies "in any way pertaining to personnel practices, operating policies or procedures, or training policies or procedures." Defendant objected to the request as overly broad, burdensome, lacking relevance, and not limited to any time period.[7]

Plaintiff narrowed the request and now seeks to compel documents related to "any training or procedure documents relating to investigations, or how investigations should be conducted." In particular, plaintiff seeks documents discussing the recommended methods for investigating employee or customer complaints of inappropriate or unlawful conduct. Defendant argues that it has produced the available materials in its possession or control; however, plaintiff again questions the sufficiency of defendant's search. Plaintiff can address the sufficiency of defendant's search and the completeness of its production when taking the Rule 30b(6) deposition authorized above.

*3 Request No. 8 is closely related to Request No. 4 and seeks all documents related to the training provided *to Scott Vanatta and/or Angela Bailey* regarding the handling of employee issues and, in particular, the procedure for investigation of customer or employee complaints.[8] Defendant stated in its July 18 response that it would provide a "list of internal training programs" that have been provided to Vanatta and Bailey.

Plaintiff moves to compel Request No. 8, arguing that neither the list nor the actual training documents have been provided. In response to the motion, defendant now asserts that it maintains no such list but that Angela Bailey "has agreed to attempt" to reconstruct a list of additional training that she has completed. Defendant also lists by Bates-number the training documents it has now provided to plaintiff and argues that it "doesn't know what else plaintiff wants."

Plaintiff counters that it is "unimaginable that an employer of [120,000 employees] does not publish information or train employees in regard to conducting proper investigations."(Doc. 40, p. 8). More importantly, plaintiff argues that Vanatta testified during his deposition that he received such training; therefore, training documents concerning investigations must exist.

Vanatta's deposition testimony has not been provided and the court is unable to determine whether documents on the procedure for conducting an investigation exist. What is clear is that defendant made a material misrepresentation concerning the production of a training list in its original response and then delayed the

production of training records until after plaintiff filed her motion to compel. Plaintiff may inquire about Vanatta and Bailey's training on "investigations" during the Rule 30(b)(6) deposition mentioned above. Because Starbucks misrepresented the existence of such "lists" and waited until after plaintiff filed her motion to compel before producing training documents, the cost of the deposition, including plaintiff's attorney fees, shall be borne by Starbucks.

**Production Request No. 5**
Production Request No. 5 requests the personnel file and employment related records for the following individuals:

    a. Jacque Jacobson;

    b. Scott Vanatta;

    c. Angela Bailey;

    d. Andrew Holloway;

    e. John R. Rolleston;

    f. Any manager or assistant manager of stores reporting to Scott Vanatta from 2001 to the present;

    g. Any employee who reported to Jacque Jacobson during the time she managed the Wichita store;

    h. Any manager terminated by Starbucks for the same reason or reasons that Starbucks alleges plaintiff was discharged;

    i. Any employee who made a statement to Scott Vanatta during his investigation of Jacque Jacobson.

Plaintiff seeks to compel documents responsive to subparts (d), (f), (g), and (h).[9]

**Subpart 5(d): Andrew Holloway**
After plaintiff returned from her suspension, Andrew Holloway began his employment as an assistant store manager under plaintiff. Holloway is substantially younger than plaintiff and a male. Plaintiff alleges that numerous employees complained that Holloway was making sexually inappropriate comments to female co-workers and customers which would reasonably be viewed as sexual harassment. After plaintiff presented her concerns about Holloway to Vanatta, plaintiff was terminated. Plaintiff contends that Holloway is a "comparable employee" who was treated more favorably and therefore she seeks discovery of all documents concerning his employment.

*4 Defendant asserts that Andrew Holloway's file was lost by UPS during shipment from one Starbucks office to another but that "defendant has provided plaintiff with all of the company's computerized records for Holloway."(Doc. 35, p. 11). Because the paper file was lost, defendant argues "it cannot produce what it does not have."*Id.*

Obviously, a party "cannot produce what it does not have," therefore, the motion to compel Holloway's personnel file appears to be a moot point. However, should discovery reveal the existence of such records or misconduct by defendant, plaintiff may renew her motion to compel and for sanctions.[10]

**Subpart 5(f): Managers or Assistant Managers Reporting to Vanatta**
Plaintiff moves to compel the files and employment records of managers and assistant managers who reported to Vanatta from 2001 to the present. Defendant opposes the motion arguing that "plaintiff offers no compelling argument that these files are relevant."However, the files of managers and assistant managers reporting to Vanatta are relevant in the context of discovery because the files are reasonably calculated to show (1) whether the managers and assistant managers are "comparable" to plaintiff and (2) that plaintiff was treated differently from comparable employees. Evidence that male or younger managers were treated more favorably for the same conduct would support plaintiff's contention that the stated grounds for her suspension and termination were merely a pretext.

Defendant also argues that the request should be limited to the period of time that plaintiff was employed by Starbucks (September 2002 to July 2004) and that plaintiff should narrow her request by picking employee names from a list provided by Starbucks. Defendant fails to cite any legal authority or coherent reasoning to support its argument.[11]Moreover, allowing discovery from 2001 is not an unreasonable starting point for reviewing Vanatta's treatment of other managers.[12]Accordingly, plaintiff's motion to compel Subpart 5(f) shall be GRANTED.

**Subpart 5(g): Employees Reporting to Plaintiff**
Plaintiff moves to compel defendant to produce the employment records for the employees who reported to

her. Defendant argues that it has produced the files of those employees who voiced complaints about plaintiff but insists that plaintiff narrow her request by identifying those remaining persons who might provide favorable comments. Again, defendant presents no coherent argument for refusing to comply with the discovery request other than the assertion that plaintiff should narrow her request. Defendant's unsupported argument is rejected and the motion to compel subpart 5(g) shall be GRANTED.[13]

### Subpart 5(h): Managers Terminated for Similar Reasons

Plaintiff moves to compel the production of employee records for any manager terminated for the same reason given for plaintiff's termination. Defendant opposes the motion as overly broad and unduly burdensome because the request would require Starbucks to search nationwide for information involving supervisors having no connection to the circumstances surrounding plaintiff's termination. Defendant also objects that the request is unlimited in time and would include termination decisions dating back to 1971.

*5 Production Request 5(h) is overly broad and unduly burdensome on its face because the request seeks nationwide discovery and is unlimited by any time parameters. Plaintiff argues, in the alternative, that if the request is overly broad, defendant should produce the records of employees who were terminated by the decision-makers in this case (Vanatta, Rolleston, and Bailey).[14] The court agrees; therefore, plaintiff's motion shall be GRANTED IN PART. Defendant shall produce the records for managers terminated by Vanatta, Rolleston, and Bailey for customer care complaints. The temporal scope of discovery shall be limited to the period of time from January 1, 2001 to January 1, 2006.

### Production Request No. 7

Request No. 7 seeks production of any documents relating to Scott Vanatta giving verbal warnings to any manager regarding customer care issues or investigating complaints. In response to plaintiff's motion to compel, defendant argues that it has produced all documents responsive to plaintiff's production request. Plaintiff does not challenge defendant's representation that all responsive documents have been produced; thus, the motion to compel is MOOT.

### Production Request No. 9

Request No. 9 asks for "customer snapshots, customer complaints and/or feedback" for all Starbucks stores reporting to Scott Vanatta from 2001 to the present. Defendant responded to the production request with an objection that the temporal scope was too broad. Defendant also objected that not all requested records were in a computer database and that assembling such records would be unduly burdensome. Consistent with its objection, defendant produced some computerized records from 2003 to the present.

Plaintiff moves to compel, arguing that the requested information is relevant and that the temporal scope of requested discovery (2001 to the present) is reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also argues that defendant has failed to carry its burden of showing that collecting the information would be unduly burdensome. (Doc. 31, pp. 23–24). In response to plaintiff's motion, defendant merely asserts that production of the computerized records satisfies Production Request No. 9. (Doc. 35, pp. 23–24).

Defendant's conclusory assertion that Production Request No. 9 has been "satisfied" is inadequate and unresponsive to plaintiff's motion.[15] Defendant has not produced all documents requested by plaintiff. Moreover, the information requested is relevant to show whether other stores supervised by Vanatta had customer complaints and whether managers of those stores were similarly subjected to suspension, investigation, and termination. The request for documents is not unduly burdensome on its face; therefore, defendant has the burden of presenting evidence showing that production of the "non-computerized" records would be unduly burdensome. Because defendant presents no evidence that production is unduly burdensome, its conclusory objection is rejected. Finally, the temporal scope of discovery (2001 to the present) is not unreasonable. Accordingly, the motion to compel a complete response to Production Request No. 9 shall be GRANTED.

### Production Request No. 10

*6 Request No. 10 asks for any and all Starbucks "Monster Reports" for the store managed by plaintiff and any other store supervised by Vanatta.[16] Although defendant produced some reports and records of financial performance, plaintiff moves to compel additional documents.

In support of her motion, plaintiff argues that the reports are relevant to her claim that she was wrongfully terminated for filing a workers compensation claim and

needing to take time off for her surgery and recovery. Plaintiff contends Vanatta decided to terminate her because her workers compensation claim and resulting disability had a negative impact on store profitability.

Defendant opposes the motion based on relevance. More importantly, defendant explains that "Monster Reports" do not exist for 2001 and 2002. Defendant produced the Monster Reports for plaintiff's store and other stores supervised by Vanatta for 2003 and 2004; however, Monster Reports are no longer utilized by Starbucks. Defendant also produced spreadsheets from Vanatta's computer detailing the profit and loss reports for each of his stores during the time he was plaintiff's supervisor.

Plaintiff concedes that financial information has been produced from Vanatta's computer but argues that "it is difficult to determine if it is complete." Because of her uncertainty as to whether the financial information is complete, plaintiff asks for the production of other financial information and "performance measures." As discussed below, the court is ordering that Vanatta's computer or a mirrored image be produced for plaintiff's inspection; therefore, plaintiff can determine whether production from Vanatta's computer "is complete." Because defendant has produced the requested "Monster Reports" as well as additional financial data, plaintiff's motion to compel Production Request No. 9 shall be DENIED WITHOUT PREJUDICE.[17]

**Production Request No. 11**
Request No. 11 asks for all Starbucks "Score Cards" for the store managed by plaintiff and any other store supervised by Vanatta.[18] In response to plaintiff's motion, defendant asserts that it produced the "Score Card information" for all of Vanatta's stores for 2003 and 2004 via the "Monster Reports." Defendant represents that the "Score Cards" were not archived in their original format and are not available.

The parties' arguments concerning the Score Card information are the same as those concerning the Monster Reports. For the reasons set forth above, plaintiff's motion to compel Production Request No. 11 shall be DENIED.

**Vanatta's Computer**
Because of the failure to timely review Vanatta's computer and other questionable discovery responses, plaintiff moves for production of Vanatta's computer or a mirror image for review. Defendant opposes the request, arguing that the computer contains information that is completely unrelated to plaintiff's claims and that much of the information is proprietary and confidential business data.[19] Defendant has searched the computer using the terms "Jacque," "Jacobson," "[Store] 2675," and "suspension" and is willing to search the computer for additional search terms suggested by plaintiff's counsel.

*7 Although production of a computer for inspection is unusual, the court is persuaded that the circumstances in this case warrant production of Vanatta's computer or a mirror image of the hard drive for plaintiff's inspection. The record before the court reflects a history of incomplete and inconsistent responses to plaintiff's production requests. Unquestionably, the computer contains relevant information which defendant initially did not timely review for documents. Defendant's belated search using four terms and its offer to conduct additional searches is simply "too little, too late." Accordingly, plaintiff's motion to compel production of Vanatta's computer or a mirror image shall be GRANTED.

**Sanctions**
Plaintiff requests that monetary sanctions be imposed. The court is persuaded that monetary sanctions are appropriate in this case because defendant's July 18, 2006 discovery responses stated that documents would be produced but many of the documents were not produced until after plaintiff filed her motion to compel.[20] However, the court will defer the imposition of monetary sanctions pending the completion of the Rule 30(b)(6) deposition authorized by this opinion. In addition to determining the reasonableness of defendant's search efforts and the completeness of its responses, the Rule 30(b)(6) deposition will assist the court in deciding whether to impose monetary sanctions against defense counsel and/or defendant.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel (Doc. 30) is GRANTED IN PART. Defendant shall produce the records as set forth in the court's rulings and Vanatta's computer for plaintiff's inspection by **November 10, 2006.** The Rule 30(b)(6) deposition authorized by this opinion shall be conducted on an expedited basis and completed by **November 10, 2006.** The cost of the deposition, including attorney fees, shall be paid by defendant.[21]

**IT IS FURTHER ORDERED** that the imposition of monetary sanctions is deferred pending completion of the Rule 30(b)(6) deposition. Plaintiff shall supplement its request for monetary sanctions 10 days after completion of the Rule 30(b)(6) deposition and defendant shall

Jacobson v. Starbucks Coffee Co., Not Reported in F.Supp.2d (2006)
2006 WL 3146349

respond 10 days thereafter.

**IT IS SO ORDERED.**

Footnotes

1  Starbucks produced Brian Joy's personnel and field files for plaintiff's review.

2  Plaintiff's concerns are not limited to Requests 3 and 5(a) and extend to all of defendant's discovery responses.

3  Plaintiff is seeking workers compensation benefits in a separate proceeding. Vanatta's testimony in the workers compensation proceeding revealed the existence of files concerning plaintiff on his Starbucks' computer.

4  After Vanatta's computer was called to defendant's attention, Starbucks executed a search using the terms "Jacque," "Jacobson," "2675," and "suspension." Starbucks concedes that the search resulted in the discovery of hundreds of relevant computer files, including emails, letters, memoranda, and personnel forms. (Doc. 35, p. 28). Defendant offers no excuse for failing to check Vanatta's computer before serving its original discovery responses and instead criticizes plaintiff's counsel for failing to provide a list of search terms.

5  Both managers testified that they had such documents in their possession.

6  Another example of defendant's questionable responses can be found in the following discussion of defendant's response to Production Request No. 8.

7  As originally drafted, the request would encompass a wide range of topics, including the procedure for making a particular drink and policies concerning the handling of cash. The court agrees that such procedures and policies have no relevance to this lawsuit.

8  Plaintiff contends that Vanatta's "investigation" was a sham; therefore, evidence concerning the existence or non-existence of a policy or training on the investigation procedure is important to her claim that the reasons given for her suspension and termination were merely a pretext.

9  Plaintiff's motion to compel subpart 5(a) was discussed above and will not be repeated.

10  Plaintiff expressed her intent to inquire about the circumstances surrounding the disappearance of the records during depositions. This matter may also be the subject of the Rule 30(b)(6) deposition.

11  Defendant asserts that the files of two managers (Joyce Barnett and Jennifer Stockton) are not relevant because neither manager reported to Vanatta. This is a most peculiar argument because Production Request No. 5(f) does not request the files of managers who did not report to Vanatta.

12  Defendant argues that the temporal scope of discovery in an employment discrimination case is limited to the time plaintiff was employed by defendant. This narrow view of relevance is rejected because the relevant time period depends, in part, on the nature of the dispute and the specific information requested. For example, evidence that Scott Vanatta treated similarly situated managers more favorably before plaintiff was hired or after she was terminated raises the inference that Vanatta's stated reasons were merely a pretext. Allowing discovery for the period January 1, 2001 to the present is a reasonable period of time for the temporal scope of discovery.

13  Plaintiff advised the court by letter dated October 20, 2006 that Starbucks provided the personnel files for 50 employees but failed to produce any field files or other employment records. This ruling resolves any further uncertainty concerning production of the employment records.

14  J.R. Rolleston was Vanatta's immediate supervisor. In mid-March 2004, shortly after plaintiff advised Starbucks that she was going to have additional surgery, Vanatta contacted Angela Bailey and informed her that he wanted to fire plaintiff and had discussed the situation with Rolleston. Bailey told Vanatta that he did not have sufficient documentation and suggested he obtain statements from witnesses. Bailey later conducted her own interviews of several employees and a customer.

Jacobson v. Starbucks Coffee Co., Not Reported in F.Supp.2d (2006)
2006 WL 3146349

15   For reasons unexplained, defendant fails to even acknowledge the arguments raised by plaintiff. Although defendant's failure to assert any arguments in response to plaintiff's motion waives any prior objections, the court will briefly address the issues presented by plaintiff.

16   "Monster Reports" apparently refers to the large report each store receives at the end of the month and contains financial and other information about the store.

17   Plaintiff may renew her motion to compel Production Request No. 9 if review of Vanatta's computer suggests that the produced financial data is incomplete.

18   "Score Cards" were apparently another performance report utilized for a period of time by Starbucks.

19   Defendant's *conclusory* assertion that the computer contains "proprietary and confidential" information is not sufficient for an order denying production. However, the parties may confer and submit a protective order limiting disclosure to appropriate individuals.

20   Plaintiff filed her motion to compel on September 8, 2006. On September 19, 21, 22, 26 and 27, defendant emailed documents to plaintiff. On September 28, defendant filed its response to the motion, asserting that documents responsive to the production requests had been provided to plaintiff.

21   Consistent with Rule 30(b)(6), plaintiff shall provide defendant with a deposition notice setting forth with reasonable particularity the matters about which deposition testimony is requested. Defendant may designate more than one person to answer deposition questions if necessary.

End of Document                                         © 2015 Thomson Reuters. No claim to original U.S. Government Works.