UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATALIE REESER,

    Plaintiff,

v.

HENRY FORD HOSPITAL,

    Defendant.

Hon. George Caram Steeh
Case No.: 2:14-cv-11916

_____/

| MILLER COHEN, P.L.C. | VARNUM LLP |
|---|---|
| Keith D. Flynn (P74192) | Terrence J. Miglio (P30541) |
| Attorney for Plaintiff | Barbara E. Buchanan (P55084) |
| 600 W. Lafayette Blvd., 4th Floor | Attorneys for Defendant |
| Detroit, MI 48226 | 39500 High Pointe Blvd., Ste. 350 |
| 313-964-4454 | Novi, MI 48375 |
| kflynn@millercohen.com | 248-567-7828 |
|  | tjmiglio@varnumlaw.com |
|  | bebuchanan@varnumlaw.com |

_____/

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.     **Plaintiff Has Offered No Evidence To Show Pretext.**[1]

Plaintiff offers a number of excuses, unsupported by any evidence, as to why her conduct in leaving her worksite without her supervisor's permission was not the reason for her termination. As established in Defendant's Brief in Support of Motion for Summary Judgment ("SJ Brief"):

- The Outreach Program maintained an explicit policy prohibiting employees from leaving a site without permission of their supervisor and Plaintiff acknowledged receiving the policy. (SJ Brief p. 3.)
- On numerous occasions, she requested permission from her supervisor before leaving her worksite, even in emergencies.
- Plaintiff also admitted that she was aware that she and all other Laboratory Outreach Services employees were required to receive permission from a manager to leave the site during their working hours. (SJ Brief p. 3 ; Def. Ex. 5, Plaintiff's Dep., pp. 153,154.)
- HR Business Partner Jill Hood testified that job abandonment is a HFHS system-wide "Group 2 Violation," a terminable offense. (SJ Brief p. 4.)

In order to create a genuine issue of material fact as to pretext, it was incumbent on Plaintiff to show that Defendant's proffered reason for her termination: (1) has no basis in fact, (2) did not actually motivate HFHS' decision, or (3) was insufficient to warrant the decision.[2]

---

[1] Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") contains numerous misrepresentations. Defendant respectfully urges the Court to carefully review each of Plaintiff's alleged factual assertions for evidentiary support since the limited space of this Reply affords Defendant the opportunity to point out only the most egregious misrepresentations.

[2] See *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994)); *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F.App'x 524, 535 (6th Cir.2011).

Instead, Plaintiff argues that her misconduct was not properly deemed job abandonment (a violation of the Outreach Program policy and HFHS Corrective Action policy). (Response p. 20.)  A plaintiff "cannot simply show that the employer's decision was wrong or mistaken" to establish pretext. *Saulter v. Detroit Area Agency on Aging*, 562 F. App'x 346, 357 (6th Cir.2014).

First, Plaintiff argues that her conduct should have been dealt with under the HFHS attendance policy. (Response p. 20.) Plaintiff states: "Defendant's policy <u>MANDATED</u> employees to take a thirty minute <u>UNPAID</u> lunch during which they could leave the facility." (Response p. 20.) This misrepresentation is contrary to <u>all</u> of the evidence:

- The HFML policy 2.56, does not indicate that employees may leave their site for lunch.(Pl's Ex. I.)
- CTPSC was closed site and phlebotomists at that site could not leave the premises for lunch. (Def. Ex. 2, Bork dep. pp. 83-84.)
- Hood testified that depending upon the worksite, employees may or may not be able to leave for lunch. If they are able to leave for lunch, it will be unpaid, if they are required to stay at the facility is a paid lunch (Def. Ex. 9, Hood dep. p 64)
- Plaintiff admitted that:
    - the lunch policy did not state that she could leave the building (Attachment D, Plaintiff's Dep. p 103);
    - she had asked for permission to leave the site for lunch on prior occasions (*Id.*  p 116);
    - due to down times it was expected she could take her lunch at the facility (*Id.*  p 145);
    - she could not leave for lunch without <u>first</u> getting permission (*Id.* p 146) and;
    - leaving the facility for lunch without permission would be insubordination (*Id.*  p 145).

3

Plaintiff next argues she needed no permission because she was following a "new policy" in a February 24, 2014 email to Outreach employees. (Def. Ex. 19; Pl's Ex. GG.)[3] <u>The email says nothing about leaving a site without authorization or that employees are no longer required to obtain permission to leave a site</u>. The email directed employees to properly record their lunch time under Kronos, a new HFHS timekeeping system (Def. Ex. 2, Bork dep. pp 249-250; Attachment E, Hood dep. p 226). Outreach Program employees were already required to send emails signing in and out of shifts. (Def. Ex. 4, HFML Policy 2.56). Plaintiff's email announcing she was leaving wasn't even sent to "HFML Outreach," demonstrating that she wasn't relying upon Bork's email as a substitute for obtaining permission to leave. (Def. Ex. 22, Plaintiff's 2/25 email).[4]

Next, Plaintiff argues she was justified leaving her work site because she "notified three managerial employees" by email that she was taking a lunch. (Response p. 2, 10.) Yet Plaintiff testified she didn't receive

---

[3] Defendant inadvertently cited to Bork's February 24th email as the "policy" implemented for closing CTPSC each day for lunch. That email related solely to the Kronos lunch time recording. The new lunch policy is in Attachment H.

[4] Prior to her deposition, Plaintiff never asserted she relied upon Bork's February 24th email in walking off the job. Rather, she told Hood following her suspension, that she was just doing what she had done on numerous occasions. (Def. Ex. 31.)

authorization from Bork or anyone,[5] but she left in reliance upon Bork's February 24th email. (Attachment D, Plaintiff's dep pp 146-148.)

Next, Plaintiff asserts falsely that employees at CTPSC "had a practice of placing a break sign on the door of the office informing potential customers that someone would return soon."  (Response p. 8.) <u>The statement is a total lie.  Nothing on the deposition pages she cites (pp 115-116) supports the statement that there was a "practice"</u>. When Plaintiff was asked by Hood for examples of when she had put a sign up and left the site <u>she was unable to provide any</u>. (Def. Ex. 31.)[6] Hood obtained statements from other employees indicating they had never seen and were unaware of Plaintiff's use of the signs (Def. Ex. 32.)

Next Plaintiff <u>blatantly misrepresents</u> that "All employees" discharged by Defendant for job abandonment "had previous discipline" citing to her deposition, pages 94-95 and Exhibits VV and WW.[7]  <u>Nothing on pages 94-</u>

---

[5] Plaintiff misrepresents throughout her Response that Wiseheart was her supervisor. Wiseheart, Bork and Hood all testified Plaintiff reported to Bork. (Def. Ex. 2, Bork dep. pp 23, 32-33; Attachment E, Hood dep. pp 22, 88; Attachment C, Wiseheart dep. pp 98-99) Plaintiff admitted it was Bork's permission she needed to leave the premises. (Attachment D, Plaintiff's dep. p 121.)

[6] In her deposition, she claimed she put up  a sign four or five times  but then <u>only with permission</u>.(Def. Ex. 5, Plaintiff's dep. pp 153-154.)

[7] Plaintiff misrepresents that Wiseheart "could not recall any employee for an act other than failing to show up to work for three days and being violent in the work place" (Response p. 14). Wiseheart testified that there was an employee of hers who walked off the job for 4 hours and was terminated for

<u>95 of Plaintiff's deposition relate in any way to the discipline of other employees</u> and Exhibits VV and WW plainly show that the employees were terminated for leaving without authorization. Moreover:

- Contrary to Plaintiff's misrepresentation, only one of the two employees referenced in Exhibits VV and WW had previous discipline and it was merely a documented counseling;
- Plaintiff purposely omits any reference to other employees terminated for job abandonment (Def. Ex. 8, sealed records). Bork testified four other employees were terminated or resigned in lieu of termination for job abandonment. (Def. Ex. 2, Bork dep. p 114); and
- Hood testified that she was not aware of any employees within HFHS who were not terminated for engaging in such conduct (Attachment E, Hood dep. p 44-45).

Thus Plaintiff has not offered a shred of evidence necessary to show that her termination for job abandonment was a pretext for retaliation.

## II. Plaintiff Has Offered No Direct Evidence of Retaliation

Plaintiff's alleged "direct evidence" of retaliation is comprised of: a) statements allegedly made by Bork during phone calls (Plaintiff has not proven were made) expressing dissatisfaction with Plaintiff because she went to HR and b) emails and excerpts of deposition testimony which Plaintiff claims shows Bork was critical of her. <u>None of what Plaintiff proffers constitutes "direct evidence" of retaliation which by definition, requires the court to draw the conclusion that unlawful retaliation was a motivating factor in Plaintiff's discharge.</u> *Fuhr v. Hazel Park School*

---

job abandonment. (Attachment C, Wiseheart p. 48-50.)

*District*, 710 F.3d 668, (6th Cir. 2013)[8] Every purported bit of alleged "direct evidence" Plaintiff proffers requires the Court <u>to infer</u> that: 1) Bork was angry with Plaintiff because of her complaint about not being paid for lunches <u>and</u>; 2) Bork[9] terminated her because of her complaint.

With respect to the phone calls Plaintiff alleges she received from Bork at night in late January or early February and on the morning of February 25th, the records show no such call took place (Def. Ex. 21; Attachment B, Bork's declaration). Plaintiff has not offered any evidence to refute Defendant's evidence that the calls did not take place.

In addition, Attachment A demonstrates that none of the emails or deposition testimony offered by Plaintiff constitutes direct evidence or otherwise proves she was terminated for complaints about paid lunches.

                                                                          VARNUM LLP

Dated: June 29, 2015

By:   /s/ Terrence J. Miglio
       Terrence J. Miglio (P30541)
       Barbara E. Buchanan (P55084)
       Attorneys for Defendant

---

[8] The Sixth Circuit reaffirmed precedent holding there must be no room for inference. *Fuhr*, 673.

[9] Plaintiff has offered no evidence that Hood harbored any animus toward Plaintiff because she complained about unpaid lunches. It was Hood who told Bork to suspend Plaintiff. (Def. Ex. 9, Hood dep. p 195.) It was also Hood who investigated Plaintiff's conduct in leaving the work site without permission and recommended she be terminated. (Attachment E, Hood dep. p 250.)

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2015, I caused the foregoing documents to be electronically filed with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record.

/s/ Judy Peterman