# ATTACHMENT D

Natalie Reeser
3/30/2015

```
                                                        Page 1
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MICHIGAN
                    SOUTHERN DIVISION
NATALIE REESER,

          Plaintiff,
                              CASE NO:2:14-cv-11916
vs.

HENRY FORD HOSPITAL,

          Defendant.
_____/

          Volume I of the deposition of NATALIE
    REESER, taken before me, Lauri A. Sheldon, CSR 4045, RPR,
    on March 23, 2015, at 39500 High Pointe Boulevard, Suite
    350, Novi, Michigan, commencing at or about 10:07 a.m.
APPEARANCES:

    MILLER COHEN, P.L.C.
    BY:  KEITH D. FLYNN, ESQUIRE
    600 W. Lafayette Boulevard, 4th Floor
    Detroit, Michigan  48226
    313-964-4454
    Appearing on behalf of the Plaintiff.

    VARNUM, LLP
    BY:  TERRENCE J. MIGLIO
    39500 High Pointe Boulevard, Suite 350
    Novi, Michigan  48375
    248-567-7400
    tjmiglio@varnumlaw.com
    Appearing on behalf of the Defendant.
```

Natalie Reeser
3/30/2015

Page 103

1  signature on the last page of that document.
2  A   I don't know who PB is on the first page of that
3      document.
4  Q   That's not what I asked you.  What I asked you --
5  A   Yes, is that my signature.
6  Q   All right.  And do you remember receiving a copy of this
7      document?
8  A   Yes.
9  Q   Okay.  When would you have received it?
10 A   In 2013, but that's not the last lunch document that I
11     received.
12 Q   I'm not asking you whether it's the last, first or
13     whatever.  I just asked you when you received it.
14 A   2013.
15 Q   And do you see on the third page there it says, "Never
16     leave a site at any time without prior authorization from
17     a manager"?
18 A   That is not under --
19         MR. FLYNN:  Objection.  The document speaks for
20     itself.
21         THE WITNESS:  -- lunch or breaks.
22         MR. MIGLIO:  Well, I don't hear her talking, so
23     that's why I'm asking her if she saw that.
24         MR. FLYNN:  Well, it has words on a page,
25     counsel.

Natalie Reeser
3/30/2015

Page 116

1        she just already answered from your question.
2 Q   (Continuing by Mr. Miglio): Is that correct, you were
3        asking her to leave the site for 30 minutes and put a
4        sign on the door?
5          MR. FLYNN: Objection. Asked and answered.
6          THE WITNESS: I already answered your question.
7          MR. FLYNN: You can answer it again, but --
8          THE WITNESS: I was asking probably because
9        Martha wasn't in the office.
10 Q   (Continuing by Mr. Miglio): Okay. So what was the
11        response you got?
12 A   I'm not sure.
13          MR. FLYNN: The response isn't here, is it?
14          THE WITNESS: Oh. Yeah, it's right there. She
15        wanted to know if someone could come over from Shelby.
16 Q   (Continuing by Mr. Miglio): So somebody came over to
17        cover for you the time you were gone; is that right?
18 A   Looks like at this point in time, yeah.
19 Q   So why didn't the policy apply that you didn't need to
20        ask anybody for permission to leave for lunch?
21          MR. FLYNN: Objection. Misconstrues her
22        earlier testimony.
23          THE WITNESS: The new policy did not require me
24        to get authorization for lunch.
25 Q   (Continuing by Mr. Miglio): That's not what I asked you.

Natalie Reeser
3/30/2015

Page 121

| | | |
|---|---|---|
| 1 | | would be an occurrence.  That's an attendance policy |
| 2 | | issue, not a lunch policy. |
| 3 | Q | It says here on your email to Fiona, "Please let me know |
| 4 | | asap so I can let her know." |
| 5 | A | Hm-hmm. |
| 6 | Q | What did that mean, let you -- What did you want her to |
| 7 | | let you know? |
| 8 | A | If I could go home.  Anytime you're going to leave and go |
| 9 | | home you have to get permission from Fiona. |
| 10 | Q | So then Fiona responded, "That's fine, but leaving would |
| 11 | | be an occurrence."  What did you understand an occurrence |
| 12 | | to mean? |
| 13 | A | An occurrence would be an attendance policy violation, |
| 14 | | which is just a writeup. |
| 15 | Q | And then you respond saying, "You know me, I can't go |
| 16 | | home even if I'm dying.  It would be ruining my chances |
| 17 | | at a lead position some day, so I'm just going to tough |
| 18 | | this out.  I understand the policy and thank you for |
| 19 | | letting me know ahead of time.  I don't ever want to get |
| 20 | | in trouble.  Thank you again." |
| 21 | A | Correct.  That's the attendance policy I was referring |
| 22 | | to. |
| 23 | Q | So the policy was what that you were referring to? |
| 24 | A | The attendance policy. |
| 25 | Q | And what does the attendance policy say about leaving |

Natalie Reeser
3/30/2015

Page 145

1 testimony.
2 THE WITNESS: I don't understand what you're
3 asking.
4 Q (Continuing by Mr. Miglio): Well, are you saying that you
5 could leave the Clinton Township site to go to lunch
6 without getting the approval or authorization from Martha
7 or Fiona?
8 MR. FLYNN: And objection. Form.
9 THE WITNESS: I'm saying that I wasn't allowed
10 to take a lunch. So no, I was not allowed to leave my
11 site from Fiona.
12 Q (Continuing by Mr. Miglio): So you needed Fiona's
13 authorization to leave the site.
14 MR. FLYNN: No. Object --
15 THE WITNESS: I wasn't given a lunch.
16 MR. FLYNN: Wait, wait, wait. Objection.
17 Misconstrues her earlier testimony. Now you can answer.
18 THE WITNESS: I was never given a lunch.
19 Q (Continuing by Mr. Miglio): Why couldn't you just take
20 it?
21 A Because that is considered insubordination.
22 Q Where did she tell you not to take a lunch break?
23 A Several -- Several times when I asked if I could take a
24 lunch she said that my down times were my lunch.
25 Q So you knew that you, at least from what direction she

Natalie Reeser
3/30/2015

Page 146

```
 1      gave you, that you couldn't leave the site without
 2      taking -- without getting her permission.
 3              MR. FLYNN:  Objection.  Misconstrues her
 4      testimony.  You can answer.
 5              THE WITNESS:  The day before I was separated
 6      from Henry Ford, which is February 25th -- the --
 7      February 24th she sent out a new policy which did not
 8      require me to require authorization.  Nowhere in there
 9      does it say that.  It just says sign in and sign out for
10      your lunches.
11   Q  (Continuing by Mr. Miglio):  I'm not talking about
12      whatever she sent out on February 24th.  I'm talking
13      about before what she sent out on February 24th.  Is it
14      your position that you did not need to have Fiona's
15      authorization to leave the Clinton Township site for
16      lunch?  Very simple question.
17              MR. FLYNN:  Objection as to form and asked and
18      answered.  Are you talking about this document or what
19      happened in practice?
20              MR. MIGLIO:  Go ahead, read the question back
21      so he can hear it one more time.
22              THE WITNESS:  Unless Martha Wiseheart gave me
23      permission, yes.
24   Q  (Continuing by Mr. Miglio):  Okay.  So what you're saying
25      now is that you needed permission from Fiona to leave the
```

Tri-County Court Reporters
248-608-9250

Natalie Reeser
3/30/2015

```
                                                      Page 147
 1        Clinton Township site to go to lunch unless Martha gave
 2        you permission; is that right?
 3              MR. FLYNN:  Objection as to form.  And asked
 4        and answered.  You can answer it.
 5              THE WITNESS:  Prior to the new lunch policy
 6        that came out on February 24th.
 7   Q    (Continuing by Mr. Miglio):  Okay.  So now we've
 8        established that authorization was required from Fiona or
 9        Martha to leave the site for lunch before February 24th,
10        right?
11              MR. FLYNN:  Objection.  Misconstrues her
12        testimony.
13              THE WITNESS:  I . . .
14   Q    (Continuing by Mr. Miglio):  Correct?
15   A    I'm not saying --
16              MR. FLYNN:  Objection.  Misconstrues --
17              THE WITNESS:  -- correct.  I don't recall --
18              MR. FLYNN:  -- the testimony.  You can answer.
19   Q    (Continuing by Mr. Miglio):  So on February 24th what was
20        the change in policy?  What did you have to do then at
21        that point in time?
22   A    You were to email that you were leaving and emailing that
23        you were coming back.
24   Q    Okay.  For lunch.
25   A    For lunch.
```

Natalie Reeser
3/30/2015

Page 148

1   Q   Okay.  So you got this policy on October 19th, 2013.
2   A   Hm-hmm.
3   Q   The policy we marked as Exhibit 53.
4   A   Yes.
5   Q   And so just so I'm clear, you didn't think that the never
6       leave a site at any time without prior authorization from
7       a manager applied to you?
8   A   That applied to --
9   Q   For leaving for lunches.
10  A   That applied to --
11              MR. FLYNN:  Objection.  Misconstrues her
12      testimony.  You can answer.
13              THE WITNESS:  That applies to breaks.
14  Q   (Continuing by Mr. Miglio):  Okay.  So just so we get this
15      straight, the statement that says, "Never leave a site at
16      any time without prior authorization from a manager,"
17      you're saying that only applied to breaks.
18  A   Off this policy, correct, because it's not attached to
19      the lunch policy at all.
20              (Exhibit 54 marked.)
21  Q   (Continuing by Mr. Miglio):  Let me show you what's been
22      marked as Exhibit 54.  What is this?
23  A   That's how many patients I saw through the whole year of
24      2013.
25  Q   Did somebody ask you to put this together?

Natalie Reeser
3/30/2015

Page 335

```
STATE OF MICHIGAN    )
                     )    ss:
COUNTY OF MACOMB     )
```

I hereby certify that the foregoing attached pages are a full and complete transcript of the proceedings held on the date and at the place hereinbefore set forth. I reported stenographically the proceedings held in the matter hereinbefore set forth, and the testimony so reported was subsequently transcribed under my direction and supervision, and the foregoing is a full, true and accurate transcript of my original stenotype notes.

_____
Lauri A. Sheldon CSR-4045, RPR

Notary Public
Macomb County, Michigan
My Commission Expires:
February 8, 2022