# ATTACHMENT E

DEPOSITION OF JILL HOOD
REESER v HENRY FORD HOSPITAL

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATALIE REESER,

    Plaintiff,

v                           Case No. 2:14-cv-11916-GCS-MJH
                             Hon. George Caram Steeh

HENRY FORD HOSPITAL,

    Defendant.
_____/

DEPOSITION OF JILL HOOD

Taken by the Plaintiff on the 5th day of May, 2015, at the office of Keith D. Flynn, 600 W. Lafayette Blvd., Detroit, Michigan at 10:00 a.m.

APPEARANCES:

For the Plaintiff:    MR. KEITH D. FLYNN (P74192)
                      Miller Cohen, P.L.C.
                      600 W. Lafayette Blvd., 4th Floor
                      Detroit, Michigan 48226-0840
                      313.964.4454

For the Defendant:    MR. TERRANCE J. MIGLIO (P30541)
                      MS. BARBARA E. BUCHANAN (P55084)
                      Varnum LLP
                      39500 High Pointe Blvd., Suite 350
                      Novi, Michigan 48375
                      248.567.7828

Also Present:        NATALIE REESER, via telephone
Reported by:         TAMARA A. O'CONNOR
                      CSMR 2656, CER 2656

DEPOSITION OF JILL HOOD
REESER v HENRY FORD HOSPITAL

Page 22

```
 1    A    Fiona is over Martha.  Martha helped with some of
 2         the day-to-day business activities in the lab.  She
 3         did not handle the supervision of the employees,
 4         where Fiona did handle any employee supervision.
 5    Q    So Martha reports to Fiona?
 6    A    Correct.
 7    Q    And who is Fiona Bork?
 8    A    I'm blanking on her official title, but she was over
 9         all of the remote outreach labs, so all of the
10         different labs that we had kind of scattered around
11         in the community.  She was in charge of those labs.
12    Q    Do you supervise any employees?
13    A    No.
14              MR. MIGLIO:  Now or then?
15    Q    (By Mr. Flynn)  Then?
16    A    No.
17    Q    Do you report to Ms. Bork, or did you report to Ms.
18         Bork?
19    A    No.
20    Q    Does Henry Ford maintain written work place
21         policies?
22    A    Yes.
23    Q    Are you authorized to change, modify, amend or
24         supplement those work place policies?
25    A    Not on my own, no.  I would need approval.
```

TAMARA A. O'CONNOR
248.882.1331

f4eadfd1-bc8b-47ff-a2ad-8aecc3d02951

DEPOSITION OF JILL HOOD
REESER v HENRY FORD HOSPITAL

Page 44

```
 1                MR. MIGLIO:  Object to the form of the
 2       question.  For what violation?
 3   Q   (By Mr. Flynn)  Let's say walking off the job.
 4                MR. MIGLIO:  Let's say walking off the
 5       job?  I'll object to the form of that question.
 6                THE WITNESS:  I'm sorry.  Repeat the
 7       question, please.
 8   Q   (By Mr. Flynn)  Okay.  What I'm trying to get at,
 9       obviously you have years of experience at Henry
10       Ford.  Correct?
11   A   Yes, correct.
12   Q   And whenever there is a discipline or discharge, you
13       are consulted.  Correct?
14   A   In one of my areas, that is correct.
15   Q   So whenever there is a situation involving walking
16       off the job, you have testified that circumstances
17       may demand a lesser penalty.  Correct?
18   A   Correct.
19   Q   What kind of circumstances, from your experience,
20       can you think of today?
21   A   For walking off the job?
22   Q   Yes.
23   A   I cannot think of any circumstance where we had
24       said, "Okay.  That was not a terminable offense."
25   Q   You can't think of a single one?
```

DEPOSITION OF JILL HOOD
REESER v HENRY FORD HOSPITAL

Page 45

```
 1   A    Not for walking off the job, no.
 2   Q    What about no call/no show?
 3             MR. MIGLIO:  What about--what is the
 4   question?  What about no call/no show?  Object to
 5   the form of that.
 6   Q    (By Mr. Flynn)  Can you think of a single
 7   circumstance that--where someone has been
 8   immediately terminated for being a no call/no show,
 9   where there were no other circumstances that
10   required a lesser penalty?
11             MR. MIGLIO:  Objection as to the form of
12   the question.  It doesn't even make sense.
13             THE WITNESS:  I'm confused by that
14   question.  I'm sorry.
15   Q    (By Mr. Flynn)  Okay.  Let me repeat.  So let's say
16   you have a situation where someone is a no call/no
17   show.  Correct?
18   A    Correct.
19   Q    So if someone is a no call/no show, you have
20   testified it's a Group 2 violation.  Correct?
21   A    Correct.
22   Q    And so would that warrant immediate termination?
23   A    No.
24   Q    Why would that not warrant immediate termination?
25   A    Because the policy says that a no call/no show is an
```

TAMARA A. O'CONNOR
248.882.1331

f4eadfd1-bc8b-47ff-a2ad-8aecc3d02951

DEPOSITION OF JILL HOOD
REESER v HENRY FORD HOSPITAL

Page 88

1   A    I do not.
2   Q    Who is responsible for evaluating the performance of
3        phlebotomists?
4   A    That would be Fiona.
5   Q    Is there any way you can countermand her performance
6        evaluations?
7   A    Depends on what you are countermanding.  If it is
8        something that is technical in nature, they would
9        have the data to be able to back it up.
10            If it is something that is more
11       subjective, then that is something that we can take
12       a look at.
13  Q    What do you mean, you can take a look at it?
14  A    We can take a look and ask for the specifics or the
15       rationale as to why a certain performance score was
16       given.
17  Q    But at the end of the day, if you disagree with the
18       rationale provided, that has no--you have no control
19       over whether or not that remains in the person's
20       performance evaluation?
21            MR. MIGLIO:  Objection as to form and
22       foundation.
23            THE WITNESS:  It is still the manager's
24       discretion.
25  Q    (By Mr. Flynn)  Could you take me through the

TAMARA A. O'CONNOR
248.882.1331

f4eadfd1-bc8b-47ff-a2ad-8aecc3d02951

DEPOSITION OF JILL HOOD
REESER v HENRY FORD HOSPITAL

Page 154

| | | |
|---|---|---|
| 1 | | the phone, that is when I let her know that it's |
| 2 | | compensable time. |
| 3 | Q | And what was Fiona's tone during this conversation, |
| 4 | | if you could recall? |
| 5 | A | She was fine with it.  Fiona is very concerned about |
| 6 | | doing the right thing and doing it consistently. |
| 7 | Q | So if she was required to take a lunch, why was she |
| 8 | | not provided a lunch on the 25th of February? |
| 9 | A | If she was required to take--it's not about not |
| 10 | | taking a lunch.  It's about leaving a site, locking |
| 11 | | the door and not having anybody there, about |
| 12 | | abandoning your job. |
| 13 | Q | But that's not my question.  My question isn't what |
| 14 | | you think it's about.  My question is, if she was |
| 15 | | required to take a lunch, why was she not provided a |
| 16 | | lunch on February 25th? |
| 17 | A | Because they were still doing the exact same |
| 18 | | schedule that they were doing before, like I said. |
| 19 | Q | But here she is saying-- |
| 20 | A | May I-- |
| 21 | Q | This is her saying that it is mandatory for her to |
| 22 | | take a lunch-- |
| 23 | | MR. MIGLIO:  Stop.  Stop.  Let her answer |
| 24 | | the--we're going to take a break.  Okay?  We're not |
| 25 | | coming back until-- |

TAMARA A. O'CONNOR
248.882.1331

f4eadfd1-bc8b-47ff-a2ad-8aecc3d02951

DEPOSITION OF JILL HOOD
REESER v HENRY FORD HOSPITAL

Page 226

1   A   Not that I saw.
2               (At 2:57 p.m., Plaintiff's
3            Deposition Exhibit 14 marked)
4   Q   (By Mr. Flynn)  Have you seen this E-mail before?
5   A   I have.
6   Q   Do you recall what led to this E-mail?
7   A   The implementation of Kronos.  We implemented a new
8       timekeeping system across all of Henry Ford Health
9       System.  Previously everything was done by hand.
10           So with the implementation of the new
11      Kronos system, we had to go to a new completely
12      different format for recording time.
13  Q   So it says here that:
14           "Starting tomorrow, February 25th,
15         when you take your lunch please send an E-mail
16         that you are signing out for lunch, and when
17         you return from lunch, please send an E-mail
18         indicating that you are back from lunch."
19      Do you see that?
20  A   I do.
21  Q   So if an employee were to--there is nothing that is
22      contrary to this.  This is how things were going to
23      be moving forward?
24  A   That is correct.
25  Q   So you send an E-mail to your supervisor, and then

TAMARA A. O'CONNOR
248.882.1331

f4eadfd1-bc8b-47ff-a2ad-8aecc3d02951

DEPOSITION OF JILL HOOD
REESER v HENRY FORD HOSPITAL

Page 250

| | | |
|---|---|---|
| 1 | | you just rely on this statement from Reeser? |
| 2 | A | No. I individually followed up with John. |
| 3 | Q | Or, I'm sorry, from Bork? |
| 4 | A | From Bork. No. I followed up with John as well. |
| 5 | Q | And when did you follow up with him? |
| 6 | A | I do not recall if it was--the exact date. It would |
| 7 | | have been obviously prior to the discussion with |
| 8 | | Natalie that we were ending her employment, but I |
| 9 | | don't have the exact date. |
| 10 | Q | Do you recall what was said during that meeting? |
| 11 | A | I do. I let him know that we had finalized the |
| 12 | | investigation, that there was nothing that I could |
| 13 | | find that could identify any type of--make any |
| 14 | | circumstances that would lend this to be anything |
| 15 | | other than job abandonment, and therefore my |
| 16 | | recommendation was to proceed with termination if he |
| 17 | | was in support. |
| 18 | Q | And what did he say? |
| 19 | A | He said he was in support. |
| 20 | Q | Did he ask any questions? |
| 21 | A | He had lots of questions, but I had also been |
| 22 | | updating--as we had talked, I had been updating him |
| 23 | | all along as well. |
| 24 | Q | What questions did he raise? |
| 25 | A | I don't remember his specific questions. He had |

TAMARA A. O'CONNOR
248.882.1331

f4eadfd1-bc8b-47ff-a2ad-8aecc3d02951

DEPOSITION OF JILL HOOD
REESER v HENRY FORD HOSPITAL

Page 304

1              CERTIFICATE OF COURT REPORTER

2

3    STATE OF MICHIGAN )
4                      )
5    COUNTY OF OAKLAND )

6

7

8              I certify that this transcript, consisting
9    of 304 pages, is a complete, true and correct record
10   of the testimony of Jill Hood held in this case on
11   Tuesday, May 5, 2015.
12             I also certify that prior to taking this
13   deposition Jill Hood was duly sworn to tell the
14   truth.

15

16        5/11/15

17        _____     _____

18        Date                        TAMARA A. O'CONNOR

19                                    CSMR 2656, CER 2656

20                                    2385 Jakewood Drive

21        pz                          West Bloomfield, Michigan 48324

TAMARA A. O'CONNOR
248.882.1331

f4eadfd1-bc8b-47ff-a2ad-8aecc3d02951