Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATALIE REESER,

    Plaintiff,

v                              Case No. 2:14-cv-11916-GCS-MJH
                              Hon. George Caram Steeh

HENRY FORD HOSPITAL,

    Defendant.
_____/

DEPOSITION OF FIONA BORK

Taken by the Plaintiff on the 16th day of March, 2015, at the office of Keith D. Flynn, 600 W. Lafayette Blvd., Detroit, Michigan at 11:00 a.m.

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | MR. KEITH D. FLYNN (P74192) |
| | Miller Cohen, P.L.C. |
| | 600 W. Lafayette Blvd., 4th Floor |
| | Detroit, Michigan 48226-0840 |
| | 313.964.4454 |
| For the Defendant: | MR. TERRANCE J. MIGLIO (P30541) |
| | MS. BARBARA E. BUCHANAN (P55084) |
| | Varnum LLP |
| | 39500 High Pointe Blvd., Suite 350 |
| | Novi, Michigan 48375 |
| | 248.567.7828 |
| Reported by: | TAMARA A. O'CONNOR |
| | CSMR 2656, CER 2656 |

NATALIE REESER v HENRY FORD HOSPITAL
DEPOSITION OF FIONA BORK

Page 43

1  Q  Well, for instance, you indicated that you drafted
2     the Outreach handbook.  What I'm asking is--
3  A  Well, I put together the contents.  I mean, they are
4     in a format--I formatted the contents of the folder,
5     but they're hospital policies.
6  Q  Oh, okay.  So you didn't like make changes to
7     hospital policies, incorporate those into the
8     handbook?
9  A  With the call-in, yes.
10 Q  Okay.
11 A  That's what I talked about earlier.  If they call in
12    with less than a two-hour notice, then I don't allow
13    them to use CTO.
14 Q  And that is the only difference?
15 A  Uh-huh, and you're allowed to do that.
16 Q  And that is the only difference?  You went "uh-huh"
17    again.
18 A  Oh, sorry.  I'm sorry, yes.  Bad habit.
19 Q  Okay.  So are you also required to follow Henry
20    Ford's policies?
21 A  Yes.
22 Q  Back to this sense of hierarchy.  What is the
23    relationship between laboratory Outreach and Henry
24    Ford Hospital proper?
25 A  We are a division of Henry Ford Hospital.

NATALIE REESER v HENRY FORD HOSPITAL
DEPOSITION OF FIONA BORK

Page 83

1        what you are asking me.
2   Q    (By Mr. Flynn)  Well, you're the one who decides at
3        the end of the day who is scheduled where and what
4        time.  Right?
5   A    Correct.
6   Q    Has your decision to schedule someone for a specific
7        location or specific shift ever been questioned or
8        countermanded?
9             MR. MIGLIO:  I will object to the form and
10       the foundation of the question.
11  Q    (By Mr. Flynn)  Meaning has anyone said, "No, you
12       can't do that"?
13  A    Oh, no.  No.
14  Q    Do you have the authority to determine who receives
15       a lunch period?
16  A    Who--everyone.
17  Q    Everyone gets a lunch period?
18  A    Yes.
19  Q    Okay.  It's mandatory.  Right?
20  A    Correct.
21  Q    And how long is the lunch period?
22  A    Thirty minutes, unpaid.
23  Q    And they can leave the facility if they choose to go
24       someplace else to have their lunch?
25  A    Not everyone can.  Certain sites we--they can't

NATALIE REESER v HENRY FORD HOSPITAL
DEPOSITION OF FIONA BORK

Page 106

1       their lunches that they were forced to work at the
2       facility until someone brought it to your attention
3       that you were required to do that?
4   A   No.
5              MR. MIGLIO:  Objection as to the form of
6       the question.
7   Q   (By Mr. Flynn)  You did pay individuals for working
8       through lunch?
9   A   I never said to anybody--I thought that what we were
10      doing was fine, that they got their break and ate
11      lunch.
12  Q   I'm asking whether or not you paid them during that
13      period of time where you thought that was fine.
14  A   Yes.  They were all paid.
15  Q   And you approved the payment?
16  A   Yes.  I had to do the research.
17  Q   At the time, after the research you approved the
18      payment?
19  A   Correct.
20  Q   But at the time you did not approve the payment?
21             MR. MIGLIO:  I will object to the form of
22      that question.
23             REPORTER:  I'm sorry?
24             MR. MIGLIO:  I'll object to the form of
25      the question.

NATALIE REESER v HENRY FORD HOSPITAL
DEPOSITION OF FIONA BORK

Page 107

1  Q  (By Mr. Flynn)  At the time that they were working
2     these lunches, did you or did you not approve or
3     deny the request for payment?
4            MR. MIGLIO:  Objection to the form of the
5     question.
6            THE WITNESS:  They were not paid at the
7     time.
8  Q  (By Mr. Flynn)  Because you denied it.  Right?
9            MR. MIGLIO:  Objection to the form of the
10    question.
11           THE WITNESS:  The only time that the lunch
12    periods came up was at the end of January, and I did
13    not--they were not paid until I found out from H.R.
14    how we were going to handle the payment.
15 Q  (By Mr. Flynn)  So did you ever stop them from being
16    paid?
17           MR. MIGLIO:  Objection to the form of the
18    question.
19 Q  (By Mr. Flynn)  You did payroll.  Right?
20 A  I didn't do payroll at that time.
21 Q  Okay.  Well, that's a managerial function.  Who did
22    you delegate that to?
23 A  I never delegated it.
24 Q  Who did payroll?
25 A  Martha Wiseheart.

NATALIE REESER v HENRY FORD HOSPITAL
DEPOSITION OF FIONA BORK

Page 129

1  Q   About three years.  Right?
2  A   Correct.
3  Q   Where did she work?
4  A   Clinton Township.
5  Q   So she was never transferred?
6  A   What do you mean, transferred?
7  Q   Moved to a new location?
8  A   No.  I'm thinking about--she was trained to work at
9      different sites, and she was scheduled to work at
10     different sites like a lot of people are, but she
11     mainly worked at Clinton Township.
12 Q   Okay.  Well, that gets me back to a couple of
13     questions ago, maybe a couple of hours ago.  You
14     testified that sometimes employees--not sometimes,
15     that employees are expected to be moved around.
16     Right?
17 A   They are.
18 Q   But do most employees typically stay at one of the
19     facilities for the most part?
20 A   Some may for extended periods of time.  They could,
21     but they are never assigned a permanent site.
22 Q   And why are they--why do they stay at those
23     particular sites for elongated periods of time, as
24     opposed to others?
25 A   It just may be that that is the way the schedule is

NATALIE REESER v HENRY FORD HOSPITAL
DEPOSITION OF FIONA BORK

Page 163

1  Q   Okay, but did you talk to Martha the day that--the
2      day in question, the 25th?
3  A   I talked to her on my way to the site to meet with
4      Natalie.
5  Q   About what she observed though.
6              MR. MIGLIO:  Will you let her finish the
7      question, her answer?  Quit interrupting her.
8  Q   (By Mr. Flynn)  Did you talk to her about what she
9      observed in regards to Natalie on the 25th?
10 A   Yes.
11 Q   And what did she observe?
12 A   Well, she was in her office.  Her door was shut.
13     She was on a conference call, and she said Natalie
14     barged in, said something and walked out.
15 Q   Did she say what she said?
16 A   I don't think she even heard what she said or knew
17     what she said.  I don't know.  You would have to ask
18     her.
19 Q   Barged in like she walked into her office?
20 A   I think she used the word "barged in," like didn't
21     knock on the door, like barged in the door, barged
22     into her office.
23 Q   And you are saying that this--even though she barges
24     in, she doesn't have Martha's attention at that
25     point?