# Exhibit D

Case 2:14-cv-11916-GCS-SDD ECF No. 70-5, PageID.2043 Filed 03/07/16 Page 2 of 6

Logan v. Pena, Not Reported in F.Supp. (1993)
1993 WL 62316, 61 Fair Empl.Prac.Cas. (BNA) 564, 2 A.D. Cases 606, 2 A.D.D. 374...

1993 WL 62316
United States District Court, D. Kansas.

Curtis LOGAN, Plaintiff,
v.
The Honorable Frederico PENA [1], in his official capacity as Secretary of Transportation, Defendant.

Civ. A. No. 91–2389–JWL.
|
Feb. 9, 1993.

**Attorneys and Law Firms**

Denise L. Adams, Rosie M. Quinn & Associates, Kansas City, KS and Larry Delano Coleman, Kansas City, MO, for plaintiff.

Janice M. Karlin, Office of U.S. Atty., Kansas City, KS, for defendant.

MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

**\*1** In this employment discrimination action, the plaintiff has alleged that he was discriminated against by being discharged from the Federal Aviation Administration in violation of the Rehabilitation Act, 29 U.S.C. § 794a, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* This court has federal question jurisdiction over this matter under 28 U.S.C. § 1331. The government has admitted liability and the trial to the court on January 29, 1993 was solely on the issue of appropriate relief. For the reasons set forth below, the plaintiff is not entitled to back pay but is entitled to other equitable relief. The court's findings of fact and conclusions of law are set forth below. The defendant's motion for attorney's fee (Doc. # 54) is denied for the reasons set forth below. In addition, various motions related to the trial and objections which were taken under advisement at the bench trial are discussed and ruled upon at the end of this opinion.

*I. Findings of Fact*

1. In August of 1989, plaintiff Curtis Logan learned that he would not be retained by the Federal Aviation Administration (FAA) as a Supervisory Air Traffic Control Specialist at the Olathe, Kansas Air Route Traffic Control Center because he could no longer maintain medical currency. Even though Mr. Logan's duties at the FAA were primarily supervisory, he was required to actively control air traffic for 16 hours per month. He could not maintain medical currency because he was required by his physician to take Tylenol with codeine to control his chronic back pain, and his ingestion of that medication ran afoul of certain requirements for persons responsible for controlling air traffic.

2. On March 16, 1990, the plaintiff was involuntarily retired from the FAA after the FAA failed to provide him with a comparable position not requiring medical currency.

3. The defendant has admitted to liability for Mr. Logan's discriminatory discharge in violation of the Rehabilitation Act and the ADEA.

4. On March 9, 1992, the plaintiff was rehired as a GS–15 National Air Space Implementation Specialist in the Air Traffic Planning Branch in the Kansas City, Missouri Central Regional Headquarters Office in the National Air Space office, with Donovan Schardt as the Branch Manager. This position was comparable to or better than the position he had left.

5. Mr. Logan was advised through his counsel on December 18, 1991 that the position he currently occupies would be made available to him as part of an overall settlement of his employment discrimination claims against the FAA. In order to obtain the position, the plaintiff would have been required to accept other conditions related to the settlement of his claim. The plaintiff did not accept the position at that time.

6. For the period from March 16, 1990 through March 8, 1992, plaintiff received monthly retirement benefits from the United States government totalling $67,717.80. In addition, he received an initial lump sum retirement benefit of $67,293.00.

**\*2** 7. If Mr. Logan had not been involuntarily retired from the FAA, he would have earned $147,133.00 for the 103 weeks from the date of his retirement to date of his rehire. Subtracting the amount of monthly retirement benefits which he received, Mr. Logan's net back pay claim is $79,840. [2] He also would have accumulated 204 hours of sick leave and an additional 103 weeks of credit toward the calculation of his retirement pay. On paper, Mr. Logan would have accumulated 408 hours of annual leave during the period he was retired. However, based on his testimony that his practice was to use up his annual leave as quickly as he accumulated it prior to retiring, Mr. Logan would not have accumulated any

Case 2:14-cv-11916-GCS-SDD ECF No. 70-5, PageID.2044 Filed 03/07/16 Page 3 of 6

Logan v. Peña, Not Reported in F.Supp. (1993)
1993 WL 62316, 61 Fair Empl.Prac.Cas. (BNA) 564, 2 A.D. Cases 606, 2 A.D.D. 374...

additional hours of annual leave if he had been employed by the FAA during that period.

8. During Mr. Logan's interim retirement, he was hospitalized for injuries he suffered from a car accident. Had he been working for the FAA, this would have used 32 hours of his sick leave.

9. Mr. Logan's chronic back pain would not have precluded him from finding suitable interim work. He had demonstrated that he could work even though he was in pain for at least ten years before he was retired. He also maintained an active lifestyle: fishing from a fishing boat, mowing the lawn at his rental properties, and performing a number of maintenance and improvement activities at his home and rental properties.

10. Mr. Logan is a well-educated man. He has a bachelor's degree in business administration which he received with honors. He has also actively pursued continuing education courses in a variety of business and technical subjects.

11. Due to Mr. Logan's educational and work experience, he could perform work which would not be restricted by his chronic back pain. Mr. Logan's experience and education suit him for so-called "white collar" occupations where physical exertion such as bending and lifting are not required.

12. Before being retired from the FAA, Mr. Logan performed a specialized, technical supervisory function which required communication and computer skills and was paid approximately $71,000 per year.

13. Based on the testimony of the defendant's expert, Mr. Michael Dreiling, there were suitable positions available in the Kansas City area during the period of time that Mr. Logan was off work from the FAA for which he was qualified and which would have paid enough to offset all or a very high percentage of his net back pay. One of these which the expert explicitly made reference to as illustrative was as an assistant to the Director of Aviation for Kansas City which paid from $40,000 to $74,000 and had requirements which paralleled Mr. Logan's qualifications.

14. From the time Mr. Logan realized he would be retired from the FAA, in August of 1989, until the time he returned to work in March of 1992, he did not attempt in any significant or reasonable way to locate any job. He did not apply for a single job, did not update a ten year old resume or send it out to any prospective employers, did not seek any job counseling, did not contact any employment agencies or job centers, and did not place any advertisements in newspapers or trade journals. He occasionally read newspaper "help wanted" ads, although he testified that he only did this from boredom. He telephoned a few people who placed "help wanted" ads but only followed up on one position. Mr. Logan went to Olathe to discuss a 911 dispatcher job with the local police station. He spoke to someone in the parking lot about the position and left without filling out an application.

*3 15. Defendants uncontroverted evidence established that newspaper ads only contain a small percentage of all the jobs which are available in any location, especially upper level positions which require specialized backgrounds. Such positions are often more readily found through other means such as employment agencies and job centers.

16. Mr. Logan pursued a retired lifestyle while on involuntary retirement from the FAA. He took extended fishing trips, visited family out of town, did some chores on a family farm in which he possesses a partial interest, and managed some rental property which he owned. Mr. Logan's activities at the family farm and with his rental property were not new efforts to generate income during his interim retirement. He testified that he had done these activities before his involuntary retirement and merely continued doing them after he was released from the FAA.

17. Mr. Logan did not believe that he was required to actively seek employment in order to mitigate his damages and, in essence, he did not do so.

18. The defendant has stipulated that the plaintiff is entitled to be credited for retirement purposes for the 103 week interim period when he was involuntarily retired.

19. The court finds that the plaintiff is a prevailing party and is entitled to a reasonable attorney fee for the efforts of his attorney in obtaining reinstatement and credit for certain job benefits.

*II. Conclusions of Law*

The following conclusions of law lead this court to find, given the forgoing facts, that the plaintiff, although entitled to some equitable relief, is not entitled to back pay.

20. "[S]uccessful Rehabilitation Act plaintiffs are entitled to the same remedies as successful Title VII plaintiffs." *Lengen v. Department of Transportation,* 903 F.2d 1464, 1468 (11th Cir.1990).

Case 2:14-cv-11916-GCS-SDD ECF No. 70-5, PageID.2045 Filed 03/07/16 Page 4 of 6

**Logan v. Pena, Not Reported in F.Supp. (1993)**
1993 WL 62316, 61 Fair Empl.Prac.Cas. (BNA) 564, 2 A.D. Cases 606, 2 A.D.D. 374...

21. Title VII provides that a court may order reinstatement with or without back pay once a court determines an employer has engaged in an unlawful employment practice. 42 U.S.C. § 2000e–5(g).

22. Back pay and reinstatement are also available as remedies under the Age Discrimination in Employment Act (ADEA). 29 U.S.C. 626(b).

23. Back pay is not an automatic or mandatory remedy under Title VII, but it is one which the courts may invoke in the exercise of their sound discretion. *Ford Motor Co. v. EEOC,* 458 U.S. 219, 226 (1982).

24. The primary purpose of Title VII is to bring employment discrimination to an end. *Id.* at 228. The secondary purpose is to compensate victims for their injuries, but unemployed or underemployed claimants are subject to the statutory duty to minimize the damages which result when they are illegally discriminated against. The statute provides that "interim earnings or *amounts earnable with reasonable diligence* by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g) (emphasis added).

25. "Unquestionably, wrongfully discharged claimants have an obligation to use reasonable methods to mitigate their damages." *E.E.O.C. v. Sandia Corp.,* 639 F.2d 600, 627 (10th Cir.1980).

 *4 26. A claimant is required to use only reasonable efforts to mitigate damages, and the law does not compel him or her to be successful in mitigation. The law only requires that a claimant make an honest, good faith effort to mitigate damages by seeking other positions. *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1158 (10th Cir.1990); *EEOC v. Sandia Corp.,* 639 F.2d 600, 627 (10th Cir.1980); *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918, 938 (10th Cir.1979).

27. Courts have declined to award back pay to claimants "for those periods of time when they were found to be unavailable for other work or were not seeking other employment." *EEOC v. Sandia Corp.,* 639 F.2d 600, 627 (1980).

28. The employer has the burden of proof to show that the plaintiff did not exercise reasonable diligence in seeking other employment. *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1158 (10th Cir.1990). To meet this burden of proof "the defendant must establish (1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." *EEOC v. Sandia Corp.,* 639 F.2d 600, 627 (10th Cir.1980). A suitable position need not have equal or greater wages than the discriminatee's former position. *Tubari Ltd., Inc. v. National Labor Relations Board,* 959 F.2d 451, 459 (3d Cir.1992).

29. The defendant has satisfied the first component of its burden of proof by showing that there were suitable positions available in Kansas City which Mr. Logan could have discovered and for which he was qualified and which would have paid enough to offset all or a very high percentage of his net back pay claim.

30. When a discriminatee makes little or no effort to obtain any type of employment, the court does not need to consider in the abstract whether or not a suitable position for which the plaintiff is qualified might have been offered to the discriminatee if he or she had made the necessary effort to find it. *See Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1527 (11th Cir.1991); *Sellers v. Delgado College,* 902 F.2d 1189 (5th Cir.1990); *cert. denied,* 111 S.Ct. 525 (1991).

31. The defendant has met the second component of its burden of proof to show lack of mitigation by showing that the discriminatee used virtually no diligence at all in failing to seriously seek to earn any amount.

32. When Mr. Logan merely looked at a few employment advertisements in the newspaper, made a few phone calls in response to ads, and informally discussed one possible job over a two year period, this did not constitute reasonable diligence in seeking to mitigate damages. *See EEOC v. Service News Co.,* 898 F.2d 958, 963 (4th Cir.1990).

33. Even though Mr. Logan actively sought reinstatement to a comparable position at the FAA through administrative and legal means, this did not constitute mitigation of damages. In a discharge case, the plaintiff's duty to mitigate is fulfilled by "seeking other employment." *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918, 938 (10th Cir.1979). This duty to seek other employment is based on the language in the statute which reduces back pay awards by "interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e–5(g). The term "interim earnings," in the context of discharge cases suggests that the discriminatee has earned wages from employment which he obtained in the interim, i.e. while waiting to be reinstated in his former position or while waiting to be compensated for his damages through court

Case 2:14-cv-11916-GCS-SDD ECF No. 70-5, PageID.2046 Filed 03/07/16 Page 5 of 6

**Logan v. Peña, Not Reported in F.Supp. (1993)**
1993 WL 62316, 61 Fair Empl.Prac.Cas. (BNA) 564, 2 A.D. Cases 606, 2 A.D.D. 374...

action. The plaintiff can only mitigate damages by making "interim earnings", i.e. wages from another employer, or by using reasonable diligence to seek to make such "interim earnings." Seeking reinstatement to a former position through administrative and legal means does not constitute reasonable diligence to mitigate damages because it is not an attempt to seek "other employment."

**\*5** 34. Due to his lack of reasonable diligence in attempting to find other employment, Mr. Logan is not entitled to back pay.

35. There are, however, various job benefits for which plaintiff should receive credit. Remedies under Title VII are equitable in nature, *Manders v. Oklahoma,* 875 F.2d 263, 266 (10th Cir.1989), and are to be used by the court to make "persons whole for injuries suffered on account of unlawful employment discrimination." *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 418 (1975); *Estate of Pitre v. Western Elec. Co., Inc.,* 975 F.2d 700, 704 (10th Cir.1992).

36. "The purpose of the equitable remedies under the ADEA is to make a plaintiff whole—to put the plaintiff, as nearly as possible, into the position he or she would have been in absent the discriminatory conduct." *Sandlin v. Corporate Interiors, Inc.,* 972 F.2d 1212, 1215 (10th Cir.1992).

37. The court therefore orders that the sick leave which Mr. Logan would have accumulated during his interim retirement be restored to him. His sick leave will be reduced by the amount of time he spent in the hospital following his car accident. The court also orders that 103 weeks be credited to Mr. Logan for the purposes of his retirement pay calculation for the 103 weeks that he was involuntarily retired.

*III. Other Motions and Rulings Related to the Trial*

The defendant moved prior to the trial to strike portions of the plaintiff's counsel's affidavit (Doc. # 63) concerning when Mr. Logan was offered the opportunity to return to the FAA. The defendant argues that certain letters from the defendant plaintiff's counsel concerning an offer of judgment should be stricken from the plaintiff's counsel's affidavit. This court agrees that the inclusion of such letters violates Fed.R.Civ.P. 68, which provides that evidence of offers of judgment which are not accepted "are not admissible except in a proceeding to determine costs." The defendant's offer of judgment which was referenced in the letters in question was not accepted and this proceeding does not purport to determine costs. Therefore, these letters are inadmissible and are ordered stricken from the Coleman affidavit. It might be noted that even if the court had considered these letters in its determination, it would not have influenced the outcome of this matter.

On December 23, 1992, the court conducted a hearing related to various motions. The plaintiff's objections (Doc. # 20) to Magistrate Judge Rushfelt's order of June 8, 1992 (Doc. # 18) was denied for the reasons set forth on the record at the hearing. In that hearing, the court also ordered that attorney's fees due from the plaintiff to the defendant under Magistrate Judge Rushfelt's order would be treated as an offset against statutory attorney's fees awarded to Mr. Logan as a prevailing party in this action. The parties shall consider that amount in their determinations of reasonable attorney's fees pursuant to D.Kan.Rule 220. The defendant has also moved for attorney's fees (Doc. # 54) pursuant to Magistrate Rushfelt's order of December 24, 1992 (Doc. # 51) denying the plaintiff's motion to compel discovery (Doc. # 41). In the hearing of December 23, 1992, the court effectively granted portions of the plaintiff's motion to compel. Therefore, the court denies the defendant's motion for attorney's fees (Doc. # 54).

**\*6** The defendant moved for judgment as a matter of law (Doc. # 66) pursuant to Fed.R.Civ.P. 52(c) at the end of the plaintiff's evidence. The court took the defendant's motion under advisement. In light of the court's judgment on the merits, the motion is moot.

The defendant objected to Mr. Logan offering into evidence a document in which he had calculated an amount that he believed he was owed for back pay on the basis that the amount listed in the document was more than the amount asked for in the pretrial order. The court took the objection under advisement. The court sustains the defendant's objection. The pretrial order controls the subsequent course of the litigation and should only be modified to prevent manifest injustice. Fed.R.Civ.P. 16(e). In response to a question from the court, the plaintiff testified that he had the necessary information to make the calculations found in the contested document prior to the pretrial conference, he had merely failed to do so. Therefore, there is no manifest injustice resulting from failing to modify the pretrial order. Because the amount calculated as back pay exceeds the amount requested in the pretrial order, it is not admitted into evidence. This issue is not determinative of the case in any event because the court has found no liability for back pay.

Case 2:14-cv-11916-GCS-SDD ECF No. 70-5, PageID.2047 Filed 03/07/16 Page 6 of 6

Logan v. Pena, Not Reported in F.Supp. (1993)
1993 WL 62316, 61 Fair Empl.Prac.Cas. (BNA) 564, 2 A.D. Cases 606, 2 A.D.D. 374...

The court took under advisement the plaintiff's objection to a portion of the defendant's expert witness' testimony. The court overrules the plaintiff's objection. Mr. Michael Dreiling, the defendant's expert witness, gave an opinion that the plaintiff had a very good chance of obtaining suitable employment for which he was qualified given his education and experience. The plaintiff objected that this opinion was not relevant because the issue is whether comparable employment, virtually to the point of being identical, was available. This court reads the Tenth Circuit precedent such as *E.E.O.C. v. Sandia* as showing that the concept of "suitable positions for which the plaintiff is qualified" is broader than the plaintiff contends and that evidence of its availability is relevant. 639 F.2d 600, 627 (10th Cir.1980).

The plaintiff also objected to the admission of help wanted ads in the Kansas City Star. The court admitted these ads for the limited purposes of showing part of the basis of Mr. Dreiling's opinion (Fed.R.Evid. 703) and rebutting the plaintiff's implicit contention that his review of the newspaper ads for offers of employment was adequate. The court took under advisement the plaintiff's objection to the general admissibility of the ads due to their lack of relevance and their inadmissibility as hearsay. The court sustains the plaintiff's objection and holds that the ads are not admissible for a broader purpose because they are hearsay. Although relevant,[3] they are offered for the truth of the matter contained in the ads and do not fit within any exception to the hearsay rule.

*IV. Conclusion*

*7 IT IS THEREFORE ORDERED BY THE COURT that judgment is entered in favor of plaintiff Curtis Logan on his claims against defendant Frederico Pena for discrimination in violation of the ADEA and the Rehabilitation Act.

IT IS FURTHER ORDERED BY THE COURT that plaintiff Curtis Logan recover of the defendant, Frederico Pena, credit for 172 hours of sick leave in his current position with the Federal Aviation Administration.

IT IS FURTHER ORDERED BY THE COURT that plaintiff Curtis Logan recover of the defendant, Frederico Pena, credit for 103 additional weeks of employment in his retirement pay calculation at his current position with the Federal Aviation Administration.

IT IS FURTHER ORDERED BY THE COURT that plaintiff Curtis Logan recover of defendant Frederico Pena statutory attorney's fees for this action, the amount to be determined in accordance with District of Kansas Rule 220.

IT IS FURTHER ORDERED BY THE COURT that defendant's motion to strike (Doc. # 63) is granted.

IT IS FURTHER ORDERED BY THE COURT that plaintiff's objections (Doc. # 20) to Magistrate Judge Rushfelt's order of June 8, 1992 are denied.

IT IS FURTHER ORDERED BY THE COURT that defendant's motion (Doc. # 54) for attorney's fees is denied.

IT IS FURTHER ORDERED BY THE COURT that defendant's motion for judgment as a matter of law (Doc. # 66) is moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1993 WL 62316, 61 Fair Empl.Prac.Cas. (BNA) 564, 2 A.D. Cases 606, 2 A.D.D. 374, 3 NDLR P 335

Footnotes

1   The court granted the defendant's oral motion to substitute the honorable Frederico Pena for the honorable Andrew Card, former Secretary of Transportation.
2   The court ruled at the hearing on December 23, 1992, overruling plaintiff's motion for partial summary judgment (Doc. # 10), that retirement pay received by the plaintiff directly from his employer, the federal government, should be deducted from any back pay award at trial. See *E.E.O.C. v. Wyoming Retirement System,* 771 F.2d 1425, 1431 (10th Cir.1985).
3   See *Sellers v. Delgado College,* 902 F.2d 1189, 1195 n. 4 (5th Cir.1990).