# EXHIBIT B

Case 2:14-cv-11916-GCS-SDD ECF No. 71-3, PageID.2099 Filed 03/07/16 Page 1 of 9

2007 WL 1994059
Only the Westlaw citation is currently available.
United States District Court,
S.D. California.

Christopher A. ANDERSON, Plaintiff,
v.
ABERCROMBIE AND FITCH STORES, INC.;
Abercrombie and Fitch Merchandising &
Design Company; Abercrombie and Fitch
Trading Co.; Jen (Doe), individually, and
Does 1 through 20, inclusive, Defendants.

No. 06cv991-WQH (BLM).
|
July 2, 2007.

**Attorneys and Law Firms**

David A. Miller, Law Office of David A. Miller, San Diego, CA, for Plaintiff.

E. Joseph Connaughton, III, Paul Plevin Sullivan and Connaughton, Martina M. Nagle, Paul Plevin Sullivan and Connaughton, San Diego, CA, Jonathan M. Norman, Stacia Marie Jones, Vorys Sater Seymour and Peace, Mark A. Knueve, Law Offices of Mark A. Knueve, Columbus, OH, for Defendants.

ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR COURT ORDER AUTHORIZING PRODUCTION OF DOCUMENTS BY SUBPOENAS TO BALBOA NAVAL HOSPITAL AND CALIFORNIA FRANCHISE TAX BOARD, AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND TO LIMIT DISCOVERY; TO QUASH SUBPOENAS

BARBARA L. MAJOR, United States Magistrate Judge.

*1 Plaintiff, an African-American male, alleges that he suffered racial discrimination and retaliation at the hands of Defendants, his former employer. Plaintiff contends that as a result of Defendants' alleged conduct, he has suffered emotional and mental distress, lost wages, and lost employee benefits. *See* Compl., Doc. No. 1. In addition to these compensatory damages, Plaintiff seeks exemplary and punitive damages, attorney's fees, and costs. *Id.*

On May 31, 2007, counsel for both parties contacted Chambers to discuss an ongoing dispute regarding subpoenas Defendants intend to issue to the Naval Medical Center San Diego ("Balboa Naval Hospital") and the California Franchise Tax Board ("Board"). Counsel for both parties requested hearing dates for parallel discovery motions, namely, a motion for a court order authorizing production by subpoena (Defendants) and a motion to quash and for a protective order (Plaintiff). That same day, the Court issued an order setting a hearing date and expedited briefing schedule on the parties' dueling motions. Doc. No. 37. The parties filed their motions on June 6, 2007, *see* Doc. Nos. 38, 43, and subsequently filed further briefing pursuant to the special schedule.[1] The Court took the briefing under submission pursuant to Civil Local Rule 7.1(d)(1).

Having considered the arguments presented and all supporting documents submitted, and for the reasons set forth below, Defendants' Motion for Court Order Authorizing Production of Documents by Subpoenas to Balboa Naval Hospital and California Franchise Tax Board [Doc. No. 38] is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion for Protective Order and to Limit Discovery; to Quash Subpoenas [Doc. No. 43] is **GRANTED IN PART** and **DENIED IN PART.**

*LEGAL STANDARD*

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1). To be discoverable, the information need not be admissible at trial if it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted). However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Accordingly, district courts have broad discretion to

determine relevancy for discovery purposes. *See Hallett v. Morgan,* 296 F.3d 732, 751 (9th Cir.2002).

District courts also have broad discretion to limit discovery. For example, a court may limit the scope of any discovery method if it determines that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(2)(C). Similarly, district courts are directed to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

*2 Under Rule 45, any party may serve a subpoena commanding a non-party "to attend and give testimony or to produce and permit inspection [and] copying" of documents. Fed.R.Civ.P. 45(a)(1) (C). Any such subpoena is subject to the relevance requirements set forth in Rule 26(b). Fed.R.Civ.P. 26(b)(1). The non-party may make objections to the subpoena within fourteen days after service, or before the time for compliance if less than fourteen days. Fed.R.Civ.P. 45(c)(2)(B). Upon a timely motion, the court may quash or modify the subpoena for any one of the reasons set forth in Rule 45(c)(3)(A), such as the subpoena "requires disclosure of privileged or other protected matter and no exception or waiver applies," or it "subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A). A party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek a protective order. *See Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 636 (C.D.Cal.2005); *see also Pennwalt Corp. v. Durand-Wayland, Inc.,* 708 F.2d 492, 494 n. 5 (9th Cir.1983) ("[o]nce the person subpoenaed objects to the subpoena ... the provisions of Rule 45(d) come into play"). The party who moves to quash a subpoena has the burden of persuasion under Rule 45(c)(3). *See Moon,* 232 F.R.D. at 637.

Courts have broad discretion to determine whether a subpoena is unduly burdensome. *See Exxon Shipping Co. v. U.S. Dep't of Interior,* 34 F.3d 774, 779 (9th Cir.1994). For example, a subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of the litigation. *See Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 813-14 (9th Cir.2003) (holding subpoenas properly quashed where their overbreadth led the court to conclude that subpoenas were "served for the purpose of annoying and harassment and not really for the purpose of getting information"). Again, the moving party bears the burden of establishing that a subpoena is unduly burdensome. *See F.D.I.C. v. Garner,* 126 F.3d 1138, 1146 (9th Cir.1997).

Finally, although irrelevance is not among the enumerated reasons for quashing a subpoena under Rule 45(c)(3), federal courts have incorporated relevance as a factor to be considered when ruling on motions to quash. *See Moon,* 232 F.R.D. at 637. Under Rule 45(c)(3)(A), "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]" and mandates the court's consideration of such factors as relevance, the serving party's need for the requested documents, the breadth of the discovery request, the particularity with which the documents are described, and the burden imposed. *Id.* (internal citations omitted).

## DISCUSSION

Defendants seek an order authorizing the production of medical and tax board records maintained by Balboa Naval Hospital and the Board.[2] Defs.' Mem. at 2. Defendants allege that neither entity will produce the records without a release from Plaintiff-which Plaintiff refuses to provide-or a court order. *Id.;* Nagle Decl. at ¶ 3. Defendants argue that the records sought are relevant and discoverable, and that the proposed subpoenas are narrowly tailored and prompted by Plaintiff's own deposition testimony. Defs.' Mem. at 4-7; Defs.' Reply at 1; Defs.' Opp'n at 1. As such, Defendants request that the Court authorize the issuance of their proposed subpoenas.[3] Defs.' Mem. at 7; Defs.' Reply at 4.

*3 Plaintiff simultaneously seeks a protective order limiting Defendants' discovery of the requested medical, wage garnishment, identity theft, and educational records, and moves to quash subpoenas Defendants have issued (the Remington College subpoena) or seek to have issued (the Balboa Naval Hospital and Board proposed subpoenas). Pl.'s Mem. at 2-4. Plaintiff argues that the three subpoenas are impermissibly overbroad, request irrelevant information, and unduly invade his privacy rights. *Id.* Plaintiff therefore urges the Court to limit this discovery, to quash the subpoenas in question, and to deny Defendants' motion. *Id.* at 9; Pl.'s Opp'n at 4.

As an initial matter, it is clear from the briefing that the subpoenas to Balboa Naval Hospital and the Board have yet to be issued. Thus, at least with respect to these two subpoenas, the parties' motions are premature in that there are no

objections to or violations of any discovery device to examine and no pending subpoenas to quash. However, the briefing also makes clear that the arguments presented in support of the instant motions would be repeated were Defendants to serve their proposed subpoenas. As a result, the Court will reach the merits of the parties' motions notwithstanding this procedural defect.

### A. *The Balboa Naval Hospital Subpoena*

The proposed subpoena to Balboa Naval Hospital seeks

> [a]ny and all medical psychiatric and/or psychological records pertaining to any examinations, treatments, and consultations of [Plaintiff] in November 2004, including, but not limited to, all inpatient and outpatient records, medical histories, referrals, prescriptions, chart notes, billing records, x-rays and reports, histories, laboratory reports, tests, admissions and discharge reports, treatment records, diagnosis and prognosis records, nurses' and doctors' notes, and all medical, psychiatric and psychological evaluations and/or reports.

See Defs.' Mem. Ex. A.

Defendants argue Plaintiff's medical records are directly relevant to his wrongful termination and emotional distress claims. Defs.' Mem. at 5. Defendants allege that Plaintiff was terminated due to absenteeism. *Id.* As such, Defendants claim that the requested records are the only way to verify Plaintiff's deposition testimony that he was treated at Balboa Naval Hospital on one of the days he was disciplined for absenteeism, and that he suffered emotional distress as a result of Defendants' alleged conduct. *Id.* (citing *Britt v. Superior Court,* 20 Cal.3d 844, 859-62, 143 Cal.Rptr. 695, 574 P.2d 766 (Cal.1978) for the proposition that medical records are relevant and discoverable where plaintiff places his emotional well-being at issue); Defs.' Reply at 3 (citing *In re Lifschutz,* 2 Cal.3d 415, 436-39, 85 Cal.Rptr. 829, 467 P.2d 557 (Cal.1970) (ordering production of plaintiff's psychotherapy records where plaintiff sought damages for emotional distress)); *see also* Nagle Decl. Ex. 1 (excerpts from Plaintiff's deposition testimony).

Plaintiff argues that as drafted, the subpoena is without reasonable limitation and amounts to a fishing expedition into his entire medical history. Pl.'s Mem. at 6. Plaintiff emphasizes that he possesses a constitutional right to privacy in his medical history, and that Defendants' subpoena encompasses irrelevant records unrelated to the claims and injuries at issue in this case such that their disclosure would violate that right. *Id.* (citing *Pettus v. Cole,* 49 Cal.App.4th 402, 441, 57 Cal.Rptr.2d 46 (Cal.Ct.App.1996); *Palay v. Superior Court,* 18 Cal.App.4th 919, 933-34, 22 Cal.Rptr.2d 839 (Cal.Ct.App.1993)). Plaintiff also insists that Defendants' desire to test the veracity of his deposition testimony or to assess his general credibility are not legally permissible reasons to violate his privacy rights, and the fact that the complaint alleges emotional distress and seeks compensatory damages does not justify the invasion of such rights. Pl.'s Opp'n at 3.

*4 California law recognizes a constitutional right to privacy in an individual's medical history.[4] *See Pettus,* 49 Cal.App.4th at 440, 57 Cal.Rptr.2d 46 ("the 'zones of privacy' created by article I, section 1 [of the California Constitution], extend to the details of one's medical history"); *Palay,* 18 Cal.App.4th at 932, 22 Cal.Rptr.2d 839 ("[F]undamental to the privacy of medical information 'is the ability to control [its] circulation ....' "). This constitutional right to privacy is not absolute, but is subject to invasion where a compelling public interest is involved. *See Ragge v. MCA/Universal Studios,* 165 F.R.D. 601, 604 (C.D.Cal.1995). Where one party claims that his opponent has waived this protection by filing suit, "the court must construe the concept of 'waiver' narrowly and a compelling public interest is demonstrated only where the material sought is *directly relevant* to the litigation." *Tylo v. Superior Court,* 55 Cal.App.4th 1379, 1387, 64 Cal.Rptr.2d 731 (Cal.Ct.App.1993) (citing *Britt,* 20 Cal.3d at 858-59, 143 Cal.Rptr. 695, 574 P.2d 766)) (emphasis in original). The party seeking the constitutionally protected information bears the burden of establishing that the information is directly relevant to the claims at issue. *Id.*

In this case, Plaintiff alleges claims of wrongful termination, discrimination, retaliation, and emotional distress. *See* Compl. at ¶¶ 21-39; *id.* at 12, 143 Cal.Rptr. 695, 574 P.2d 766. Plaintiff testified during deposition that while employed by Defendants, he received an Unsatisfactory Performance Notice in November 2004 due to absenteeism. *See* Nagle Decl. Ex. 1 at 142-46. Plaintiff also testified that he was unable to work on the date he was disciplined because he was

heavily medicated and tired from a doctor's appointment he attended at Balboa Naval Hospital. *Id.* Plaintiff offered this information and identified the EKG procedure he underwent without objection from his counsel or claim of privacy rights. *Id.* In light of these representations by Plaintiff, the Court finds that some of the requested medical records are relevant to Plaintiff's wrongful termination claims in that they either may bolster or undermine Defendants' absenteeism allegation.

However, the Court declines to find the requested records are relevant to Plaintiff's allegations of emotional distress. In his opposition to Defendants' motion, Plaintiff expressly states that (1) he has not alleged "any extraordinary emotional distress beyond that normally accompanying a wrongful termination," (2) he has not testified that his emotional distress is ongoing, and (3) his emotional state is not at issue in this case. Pl.'s Opp'n at 3. Plaintiff has therefore limited his claim for emotional distress to the standard mental injuries associated with an allegedly wrongful termination, and in turn has tacitly agreed not to present at trial physical evidence of emotional distress, such as any medical treatment or supporting records, or evidence of any emotional distress beyond that normally accompanying wrongful termination. Accepting Plaintiff's representations, the Court finds that Plaintiff has tendered his mental condition in this case only as it relates to the alleged wrongful termination, and as such, any discovery related to Plaintiff's allegations of emotional distress must be limited to those injuries resulting from that allegedly wrongful termination. *See Vinson v. Superior Court,* 43 Cal.3d 833, 841, 239 Cal.Rptr. 292, 740 P.2d 404 (Cal.1987) (underlining that plaintiff's mere initiation of a sexual harassment suit, even where plaintiff claims to have suffered "rather extreme mental and emotional damage," does not waive all privacy interests or expose plaintiff to "unfettered mental probing"); *Britt,* 20 Cal.3d at 864, 143 Cal.Rptr. 695, 574 P.2d 766 ("plaintiffs are 'not obligated to sacrifice all privacy to seek redress for a specific [physical,] mental or emotional injury"; while they may not withhold information which relates to any physical or mental condition which they have put in issue by bringing [ ] suit, they are entitled to retain the confidentiality of all unrelated medical or psychotherapeutic treatment they may have undergone in the past") (citation omitted); *Tylo,* 55 Cal.App.4th at 1388, 64 Cal.Rptr.2d 731 (in employment discrimination and wrongful termination case where plaintiff asserted her psychological condition only as it related to termination of employment contract, discovery was limited to those injuries resulting from contract's termination, and thus plaintiff could be questioned regarding her marital relationship only as it related to those asserted claims); *Mendez v. Superior Court,* 206 Cal.App.3d 557, 573, 253 Cal.Rptr. 731 (Cal.Ct.App.1988) (in sexual harassment case, "the bare fact that plaintiff alleges that the improper behavior produced emotional distress will not justify a defendant's requested invasion of plaintiff's sexual privacy"; to warrant such an inquiry, "either plaintiff must claim some special damage ... or defendant must demonstrate some extraordinary circumstance attendant to plaintiff's claim"). Moreover, the Court notes that Defendants' proposed subpoena seeks a variety of medical and psychological records for November 2004, a time period when Plaintiff was still in Defendants' employ. *See* Defs.' Mem. Ex. A. Given the scope of the proposed subpoena, the Court fails to comprehend how records documenting medical treatment Plaintiff received while still employed by Defendants in November 2004 would be relevant to emotional distress Plaintiff may have experienced following his termination by Defendants in 2005. Accordingly, the Court finds that the requested medical records are not relevant to Plaintiff's emotional distress claims.

**\*5** In conclusion, based on Plaintiff's deposition testimony and in light of Plaintiff's representations regarding emotional distress, the Court finds that Plaintiff's medical records are relevant to Defendants' absenteeism theory, but not to Plaintiff's emotional distress claims. Accordingly, while Defendants are entitled to obtain medical records relating to Plaintiff's November 2004 EKG examination, they are not entitled to the panoply of medical, psychological, and psychiatric reports and notes requested by Defendants. Defendants, therefore, may issue a subpoena to Balboa Naval Hospital requesting the dates and times of any and all medical appointments made and medical appointments attended during the month of November 2004, and any and all records relating to the EKG examination conducted in November 2004. As a result, Defendants' motion for an order authorizing production of Balboa Naval Hospital documents by subpoena is **GRANTED IN PART** and **DENIED IN PART.** Plaintiff's concurrent motion for a protective order, to limit discovery, and to quash this subpoena is **GRANTED IN PART** and **DENIED IN PART.**

**B.** *The Board Subpoena*
The proposed subpoena to the Board seeks

> [a]ny and all documents pertaining to [Plaintiff's] wage garnishment and/or

claim of identity theft in 2005-2007, including, but not limited to: (1) [a]ll investigator notes, forms and reports regarding [Plaintiff]; (2)[a]ll notes, memos, reports, and summaries of interviews with other persons concerning [Plaintiff]; (3)[a]ll notes of interviews with [Plaintiff] or his agent; (4) [a]ll correspondence between the Franchise Tax Board and [Plaintiff] or his agent; (5)[a]ll correspondence between the Franchise Tax Board and any other person(s) or agency regarding [Plaintiff]; (6)[a]ll interoffice communications regarding [Plaintiff]; (7)[a]ll documents relating to the status and/or closure of [Plaintiff's] case files by the Franchise Tax Board or any other agency; and (8) [a]ll other documents that refer to or relate to any and all issues or claims regarding [Plaintiff].

See Defs.' Mem. Ex. B.

Defendants argue these records are directly relevant to Plaintiff's future wage loss and emotional distress claims because they will provide further insight into (1) why Plaintiff voluntarily left a higher paying position after being terminated by Defendants, and (2) the nature and extent of stress Plaintiff may have experienced as a result of wage garnishment and alleged identity theft. Defs.' Mem. at 6; Defs.' Reply at 2. Having searched area court files for records pertaining to Plaintiff's garnishment and identity theft allegations to no avail, Defendants claim they have no other recourse than to request an order authorizing production by subpoena. Defs.' Mem. at 6. Moreover, Defendants contend the Board subpoena seeks no financial or tax information implicating Plaintiff's privacy rights, rather, it requests records confirming Plaintiff's testimony that he was the victim of identity theft and mistakenly subject to wage garnishment. Defs.' Mem. at 4-7; Defs.' Reply at 2-3; see also Nagle Decl. Ex. 1. Defendants further argue that even assuming these records do implicate a right to privacy, Plaintiff waived that right by providing deposition testimony-without objection or claim of a right to privacy-about the wage garnishment and identity theft issues. Defs.' Mem. at 6 (citing Schnabel v. Superior Court, 5 Cal.4th 704, 721, 21 Cal.Rptr.2d 200, 854 P.2d 1117 (Cal.1993)); Defs.' Reply at 2-3.

*6 Plaintiff maintains this subpoena is overbroad, seeks records with no connection to either Defendants or the claims at issue, and unduly invades his privacy rights. Pl.'s Mem. at 6-8. In support, Plaintiff contends that the personnel policies of his other former employers have no bearing on the discrimination claims at issue, and as such, Defendants cannot meet the standard for general discovery, let alone the heightened standard for discovery where, as here, privacy rights are implicated. Id. at 4-8, 21 Cal.Rptr.2d 200, 854 P.2d 1117 (citing Britt, 20 Cal.3d at 858-89, 864, 143 Cal.Rptr. 695, 574 P.2d 766); San Diego Trolley, Inc. v. Superior Court, 87 Cal.App.4th 1083, 1097, 105 Cal.Rptr.2d 476 (Cal.Ct.App.2001)). Plaintiff also denies that he waived his right to privacy in these records by initiating suit or providing deposition testimony on these subjects. Pl.'s Opp'n at 3. Plaintiff represents that he provided such testimony "only because the mitigation of economic damages was an issue," and that in any event, his testimony did not "constitute a carte blanche waiver of privacy rights." Id.

As with medical records, California's privacy protection similarly embraces personal financial and tax information. See Davis v. Leal, 43 F.Supp.2d 1102, 1109-10 (E.D.Cal.1999); Schnabel, 5 Cal.4th at 712-13, 21 Cal.Rptr.2d 200, 854 P.2d 1117. However, the constitutional right to privacy in financial information is not absolute and may be abridged to accommodate a compelling public interest. See Moskowitz v. Superior Court, 137 Cal.App.3d 313, 316-17, 187 Cal.Rptr. 4 (Cal.Ct.App.1982). "One such interest, evidenced by California's broad discovery statutes, is the 'historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings.' " Id. (quoting Britt, 20 Cal.3d at 857, 143 Cal.Rptr. 695, 574 P.2d 766). Thus, where an individual's right of privacy in his financial affairs conflicts with this public interest, the court must carefully balance the competing interests. Id.; Hofmann Corp. v. Superior Court, 172 Cal.App.3d 357, 362, 218 Cal.Rptr. 355 (Cal.Ct.App.1985) (underlining limited protection given to sensitive financial information and describing balancing test).

Plaintiff seeks compensatory damages for lost wages, lost employee benefits, and emotional distress, as well as exemplary and punitive damages, attorney's fees, and costs. See Compl. at 12. Plaintiff has provided deposition testimony that he voluntarily left a higher paying job at Jack-in-the-Box, a job he held after his termination by Defendants. See Nagle Decl. Ex. 1 at 239-40. Plaintiff has provided testimony that he was a victim of identity theft while employed at Jackin-

the-Box, which in turn prompted an improper order of the Board to garnish his wages. *Id.* at 241-44, 218 Cal.Rptr. 355. Moreover, Plaintiff has testified that after explaining the matter to an unidentified official, his record was expunged and his wages were not garnished. *Id.* Plaintiff has provided this testimony without objection from counsel or an assertion of his privacy rights. *Id.*

**\*7** To the extent that the records sought by Defendants' proposed subpoena seek financial or tax information, the Court underlines that they are subject to a constitutional right to privacy under California law. *Davis,* 43 F.Supp.2d at 1109; *Schnabel,* 5 Cal.4th 712-13. Nevertheless, the Court finds that the requested records are relevant to damages, in particular, Plaintiff's claims for lost wages and lost benefits, as well as mitigation of damages. *Schnabel,* 5 Cal.4th at 723, 21 Cal.Rptr.2d 200, 854 P.2d 1117 (in a marital dissolution proceeding, finding that husband's corporate and payroll tax returns were discoverable to assist in the assessment of husband's assets, but information in the payroll tax returns identifying persons other than husband were privileged). As such, the records are sufficiently relevant to justify their disclosure. *See Harding Lawson Assocs. v. Superior Court,* 10 Cal.App.4th 7, 10, 12 Cal.Rptr.2d 538 (Cal.Ct.App.1992) ("A showing of relevancy may be enough to cause the court to balance the compelling public need for discovery against the fundamental right of privacy.").

Notwithstanding this relevance finding, Plaintiff's arguments regarding the subpoena's overbreadth are well taken. As noted above, Defendants seek records spanning from 2005 through 2007. Defs.' Mem. Ex. B. Both Plaintiff's deposition testimony and exhibits reviewed by Plaintiff during his deposition confirm that he was hired by Jack-in-the-Box in October 2005 and that he voluntarily resigned his position sometime in 2006. *See* Nagle Decl. Ex. 1 at 239-41 (Plaintiff testifying that he was hired by Jack-in-the-Box in October 2005 and voluntarily left the company "in the middle of 2006"); *id.* (attaching exhibits noting Plaintiff's dates of employment at Jack-in-the-Box). In addition, the record before the Court includes an exhibit marked during Plaintiff's deposition-a letter from Jack-in-the-Box payroll services to Plaintiff dated January 19, 2006-informing Plaintiff of an impending wage garnishment. *Id.* (attaching January 19, 2006 letter and notice of earnings withholding from the Board). Based on the evidence presented, the Court fails to see how Board records dated well before and long after Plaintiff's employment at Jack-in-the-Box are relevant to confirm a January 2006 wage garnishment/identity theft, to determine the resolution of the wage garnishment/identity theft issue, to assess the nature and extent of Plaintiff's emotional distress with respect to that January 2006 wage garnishment/identity theft, and to evaluate Plaintiff's future wage loss claim. Thus, while the Court finds the Board records are relevant, it also finds the subpoena is overbroad to the extent that it seeks production of records far exceeding Plaintiff's dates of employment at Jack-in-the-Box. The Court therefore finds it appropriate to limit the proposed subpoena's scope to Board records dated from October 2005 through December 2006, and to authorize production of such records by subpoena as so limited.

**\*8** Accordingly, Defendants' motion for an order authorizing production of Board documents by subpoena is **GRANTED IN PART** and **DENIED IN PART.** Defendants are entitled to those Board documents described in their proposed subpoena dated from October 2005 through December 2006. As such, Plaintiff's concurrent motion for a protective order, to limit discovery, and to quash this subpoena is **GRANTED IN PART** and **DENIED IN PART** consistent with the above limitation.

### C. *The Remington College Subpoena*

In addition to the aforementioned proposed subpoenas, Plaintiff's briefing addresses Defendants' subpoena to Remington College, which was issued by Defendants and received by Plaintiff's counsel on May 10, 2007. Pl.'s Att'y Decl. at ¶ 2. This subpoena seeks

> [a]ny and all documents pertaining to [Plaintiff], for all dates of enrollment at Remington College ("school"), including but not limited to, any of the following: (1) transcripts, (2) application for enrollment, (3) records of courses taken, (4) records of degrees earned, (4)[sic] any notes or correspondence regarding [Plaintiff], (5) any disciplinary documentation, (6) billing records, and (7) dates of attendance.

Pl.'s Notice of Lodgment Ex. 1. Plaintiff's arguments in support of his motion to quash this subpoena mirror those presented in connection with the Balboa Naval Hospital and Board subpoenas. Pl.'s Mem. at 6-9; Pl.'s Opp'n at 2-4.

Defendants contend that Plaintiff's motion is untimely and was not identified to the Court as a proper subject for the present briefing. Defs.' Opp'n at 2, 4-6. In particular, Defendants claim that Plaintiff has waived any right to oppose this subpoena, noting that Plaintiff failed to file a motion prior to the identified production date and that Remington College has never served written objections. *Id.* Defendants also maintain the records sought are directly relevant to Plaintiff's credibility and a potential defense of after-acquired evidence based on the fact that Plaintiff may have falsified information on his employment application. *Id.* at 2, 12 Cal.Rptr.2d 538; *see also* Nagle Decl. Ex. A (excerpts from Plaintiff's deposition testimony). Finally, Defendants assert that Plaintiff has provided no authority to support his claim that his educational records are protected by a right to privacy, and that in any event, Plaintiff waived that right by failing to object to an identical subpoena issued to Mesa College. Defs.' Opp'n at 5; *see also* Nagle Decl. Ex. C (subpoena to Remington College and attaching letter producing responsive documents).

The Court agrees with Defendants that Plaintiff's motion to quash the Remington College subpoena is untimely. To excuse compliance, a motion to quash must be made before the production or deposition date identified in the subpoena. *See King v. Fidelity Nat'l Bank of Baton Rouge,* 712 F.2d 188, 191 (5th Cir.1983) (emphasizing that "a motion to quash must be not only made but *granted* before the scheduled deposition to excuse compliance") (emphasis in original); *Pioche Mines Consol., Inc. v. Doman,* 333 F.2d 257, 269 (9th Cir.1964) (under earlier version of rules, motion to quash notice of deposition must be filed and acted on before scheduled time of deposition to avoid sanctions); *Innomed Labs, LLC v. Alza Corp.,* 211 F.R.D. 237, 240 (S.D.N.Y.2002) (noting that motion to quash was untimely because it was filed after the deposition at issue was to have taken place). Defendants' subpoena called for production from Remington College on May 30, 2007. Pl.'s Notice of Lodgment Ex. 1. Plaintiff filed the instant motion on June 6, 2007. Doc. No. 43. Because the May 30, 2007 production date came and went without a timely motion from Plaintiff, he cannot now attack the subpoena's validity through a motion to quash. *See King,* 712 F.2d at 191; *Pioche Mines Consol., Inc.,* 333 F.2d at 269; *Innomed Labs, LLC,* 211 F.R.D. at 240. Accordingly, Plaintiff's motion to quash the Remington College subpoena is **DENIED**.

## CONCLUSION

**\*9** Based on the Court's review of the briefing submitted, and for the foregoing reasons, Defendants' Motion for Court Order Authorizing Production of Documents by Subpoenas to Balboa Naval Hospital and California Franchise Tax Board [Doc. No. 38] is **GRANTED IN PART** and **DENIED IN PART**. Defendants are entitled to issue a subpoena to Balboa Naval Hospital requesting the dates and times of any and all medical appointments Plaintiff made and medical appointments Plaintiff attended during the month of November 2004, as well as any and all records relating to the EKG examination to which Plaintiff submitted in November 2004. Defendants are also entitled to issue a subpoena to the Board requesting those documents described in their proposed subpoena for the period between October 2005 through December 2006.

Plaintiff's Motion for Protective Order and to Limit Discovery; to Quash Subpoenas is **GRANTED IN PART** and **DENIED IN PART** consistent with the foregoing. Doc. No. 43. Plaintiff's Motion for Protective Order and to Limited Discovery; to Quash Defendants' subpoena directed to Remington College is **DENIED**. Doc. No. 43.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1994059

Footnotes

1   Plaintiff did not file a reply in connection with his motion.
2   To address any privacy concerns Plaintiff may have, Defendants offer to enter into a protective order authorizing production to Defendants but prohibiting disclosure outside the instant litigation. Defs.' Mem. at 4. Plaintiff does not address this offer in his briefing.
3   In the alternative, Defendants request that the Court issue an order for (1) the subpoena of records reflecting that Plaintiff was treated by Balboa Naval Hospital or was the victim of identity theft and/or a mistaken garnishment order, or (2) certification from either entity that no such records exist. Defs.' Mem. at 5-7.

**Anderson v. Abercrombie and Fitch Stores, Inc., Not Reported in F.Supp.2d (2007)**
2007 WL 1994059

4  Because this is a diversity case, California's law of privilege applies. *See* Fed.R.Evid. 501; *Star Editorial, Inc. v. Dist. Court,* 7 F.3d 856, 859 (9th Cir.1993) (analyzing qualified reporter's privilege under California law).

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.