# EXHIBIT B

2014 WL 4906891
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Edwin SOUTHERLAND, et al., Plaintiffs,
v.
CORPORATE TRANSIT OF AMERICA, Defendant.

No. 13–14462
|
Signed Sept. 30, 2014.

**Attorneys and Law Firms**

Joseph A. Golden, Syeda F. Davidson, Heidi T. Sharp, Burgess & Sharp PLLC, Rex A. Burgess, Clinton Township, MI, for Plaintiffs.

Kate M. Heideman, Robert J. Tomaso, Husch Blackwell LLP, St. Louis, MO, William M. Thacker, Dickinson Wright, Ann Arbor, MI, for Defendant.

*OPINION AND ORDER GRANTING DEFENDANT'S [13] MOTION TO DISMISS OR STAY THE CASE AND TO COMPEL ARBITRATION*

JUDITH E. LEVY, District Judge.

*1 Plaintiffs Edwin Southerland, Yvette Williams, and Leander Chatman are delivery drivers who provide transportation services to third parties on behalf of defendant Corporate Transit of America ("CTA"). They allege CTA has improperly classified them as independent contractors and thereby failed to pay minimum wage and overtime in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") and the laws of seven states. (Dkt.1, Compl.¶ ¶ 17, 55). Plaintiffs also bring various state statutory and common-law claims for illegal paycheck deductions, deceptive business practices, fraud, contract unconscionability, and unjust enrichment. (*Id.* 58–112).

Before the Court is CTA's Motion to Dismiss and/or Stay and to Compel Arbitration. (Dkt.13). Plaintiffs oppose the motion, arguing primarily that the entire contract at issue, including its mandatory arbitration clause, is not enforceable. For the reasons set forth below, the Court will first modify the remedies provision in the arbitration agreement, then grant defendant's motion and dismiss this case without prejudice.

**I. Background**

**A. Parties**

Defendant CTA is a logistics broker that provides local courier services to commercial entities such as banks and pharmaceutical companies. Plaintiffs allege they are or were employed as drivers by CTA. CTA claims plaintiffs are independent contractors, not employees. CTA obtains plaintiffs' services through a third party, Subcontracting Concepts, LLC ("SCI"). Plaintiffs argue that CTA uses SCI to circumvent otherwise applicable labor laws, and that a close examination of the relationships between the parties will reveal an employer/employee relationship between plaintiffs and CTA.

In order to work for CTA, plaintiffs had to sign both an Independent Contractor Acknowledgment Form with CTA ("CTA Form") and an Owner / Operator Agreement with SCI ("SCI Agreement"). (*E.g.,* Dkt. 14–6, Ex. F to Def.'s Br.; Dkt. 14–3, Ex. C to Def.'s Br.).[1] CTA is not a party to the SCI Agreement. However, CTA provided the SCI Agreement to plaintiffs. (Dkt. 19–2, Ex. 1 to Pls.' Resp., Blevins Dep. 16). It does not appear that plaintiffs were required to communicate with SCI in any way. (*Id.* at 16–17). Plaintiffs refer to the CTA Form throughout their complaint as the basis for their claims, but CTA maintains that the SCI Agreement forms the basis for most, if not all, of plaintiffs' claims. (Dkt. 14, Def.'s Br. 10).

**B. The arbitration clause and plaintiffs' claims**

The arbitration clause CTA seeks to enforce is found in section 26 of the SCI Agreement and states in relevant part:

> In the event of any dispute, question, or disagreement arising from or relating to this agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, question or disagreement. To this effect, the parties shall consult and negotiate with one another in good faith in an attempt to reach a just and equitable solution, satisfactory to both parties. If resolution

of the dispute, claim, question, or disagreement is not reached within a period of 60 days, then upon notice by either party, disputes that are within the jurisdictional maximum for small claims will be settled in the small claims court where the Owner/Operator resides.

***2** All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts ... shall be finally settled by arbitration in accordance with the Federal Arbitration Act.

Neither you nor SCI shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity.

The arbitration panel shall be made up of three (3) people. Each party shall choose one arbitrator that will serve on the panel in a non-neutral capacity. The two chosen arbitrators will select a third arbitrator who will be neutral. If the chosen arbitrators are unable to select a third arbitrator within ten (10) days of their selection, a third arbitrator shall be appointed by the American Arbitration Association. Each arbitrator shall have experience in the transportation industry and have a legal background.

... each party will upon written request of the other party promptly provide copies of any relevant documents necessary to support any claim or defense. All parties shall have the discretion to examine up to three (3) witnesses per party. Each deposition shall be limited to a maximum of two (2) hours. Any objections based on privilege and/or confidential information will be reserved for arbitration. The arbitration and any discovery prior to the arbitration will take place in a location convenient to both parties. The parties may submit briefs in lieu of any formal gathering for arbitration.

The arbitrators will have authority to award actual monetary damages only. No punitive or equitable relief is authorized. All parties shall bear their own costs for arbitration and no attorney's fees or other costs shall be granted to either party.

(Dkt. 14–3, Ex. C to Def.'s Br. 4–5).

Plaintiffs bring nine counts in their complaint. Count I is brought as a collective action pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b). (Dkt.1, Compl.15). The remaining counts are brought as a class action pursuant to Fed.R.Civ.P. 23. (*Id*. 23). Plaintiffs allege that:

- CTA has failed to pay minimum wage and overtime to them and other similarly situated employees, in violation of the FLSA and the minimum wage laws of seven states (Counts I & II);

- CTA has made deductions from plaintiffs' compensation for, e.g., vehicle expenses, insurance claims, customer charges, and communication equipment, in violation of statutes of six states (Count III);

- CTA has engaged in fraudulent and deceptive business practices by misleading plaintiffs into thinking plaintiffs would be independent business owners with control over how the means and methods of their work, in violation of statutes of eleven states (Count IV);

- CTA has committed fraud by misleading plaintiffs, through material representations in the CTA Form, as to their employment status and their responsibility for all "employment-related expenses," such as obtaining and maintaining vehicles (Count V);

**\*3** • The CTA Form is an unconscionable contract of adhesion that allows CTA to shift costs such as vehicle maintenance and insurance, social security contributions, workers' compensation coverage, and state disability and unemployment coverage onto plaintiffs, and therefore should be rescinded (Count VI); and

- CTA has been unjustly enriched by classifying plaintiffs as independent contractors and shifting employment-related costs onto plaintiffs (Count IX).

Plaintiffs also seek declaratory and injunctive relief (Counts VII & VIII).

This case was initially assigned to Judge Edmunds, who held a hearing on defendant's motion on April 30, 2014. The case was reassigned to this Court on May 13, 2014. (Dkt.23). Following reassignment, the Court required the parties to submit supplemental briefs on the enforceability of the remedies provision in the arbitration agreement. (Dkt.25). The parties submitted their supplemental briefs on August 15, 2014.

## II. Analysis

### A. The FAA favors enforcement of the arbitration agreement

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides for the enforcement of arbitration clauses. The Supreme Court has stated that:

> [t]he FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms. Like other contracts, however, they may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability."

> The Act also establishes procedures by which federal courts implement § 2's substantive rule. Under § 3, a party may apply to a federal court for a stay of the trial of an action "upon any issue referable to arbitration under an agreement in writing for such arbitration." Under § 4, a party "aggrieved" by the failure of another party "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." The court "shall" order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."

*Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 67–68, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (internal citations omitted). The Court has further expressed that the FAA was "designed to promote arbitration" and "embod[ies] a national policy favoring arbitration." *AT & T Mobility LLC v. Concepcion,* —— U.S. ——, ——, 131 S.Ct. 1740, 1749, 179 L.Ed.2d 742 (2011). Courts must therefore "examine the language of [arbitration agreements] in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000). "[A]mbiguities in the [arbitration agreement] or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.*

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*\*4 Id.* The second and third tasks can be dispensed with at the outset of the Court's analysis. The arbitration agreement covers "any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof." (Dkt. 14–3, Ex. C to Def.'s Resp. 4). All of plaintiffs' claims are addressed by provisions in the SCI Agreement, and therefore fall within the scope of the arbitration agreement.

Plaintiffs bring one statutory claim pursuant to the FLSA. FLSA claims are arbitrable. *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306 (6th Cir.2000).

The Court will address whether to stay proceedings pending arbitration at the end of its analysis. The remaining issue—the one central to this dispute—is whether the parties agreed to arbitrate.

### B. The parties have agreed to arbitrate

To determine whether the parties here have agreed to arbitrate, the Court must first decide whether, as a non-party to the SCI Agreement, CTA can invoke the arbitration clause therein. Second, the Court must determine whether plaintiffs have challenged the validity of the arbitration agreement itself.

#### 1. *CTA may invoke the arbitration clause in the SCI Agreement*

A threshold issue is whether CTA, as a non-party to the SCI Agreement, can invoke the arbitration clause therein to compel arbitration under §§ 3 & 4 of the FAA. The Supreme Court has held that "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009).

CTA argues that New York law applies under the SCI Agreement's choice of law clause, which states: "This Agreement shall be governed by the laws of the State of New York." (Dkt. 14–3, Ex. C to Def.'s Br. § 23). Plaintiffs, while not explicitly addressing the choice of law issue, rely

primarily on Michigan law. The SCI Agreement's choice of law clause is clearly mandatory; New York law applies. Under either New York or Michigan law, however, the result is the same: CTA may enforce the arbitration clause in the SCI Agreement.[2]

Under both New York and Michigan law, a non-signatory to an arbitration agreement may compel a signatory to abide by that agreement and arbitrate a dispute. The underlying principle is consent: namely, whether the signatory could have "foreseen the involvement of the nonsignatory" and could therefore "be said to have consented to arbitrate with the nonsignatory." *Moss v. BMO Harris Bank, N.A.*, No. 13–5438, **2014** WL 2565824, at *3 (E.D.N.Y. June 9, **2014**).

New York courts have recognized that:

> signatories to an arbitration agreement can be compelled to arbitrate their claims with a non-signatory where a careful review of the relationship among the parties, the contracts they signed ... and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."

*\*5 Merrill Lynch Int'l Fin., Inc. v. Donaldson*, 27 Misc.3d 391, 895 N.Y.S.2d 698, 702–03 (N.Y.Sup.Ct.2010) (quoting *JLM Indus. v. Stolt–Nielsen S.A.*, 387 F.3d 163, 177 (2d Cir.2004)). Courts have termed this basis for compelling arbitration "alternative estoppel." *E.g., Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir.2003). Courts in the Second Circuit applying alternative estoppel have focused on two factors: whether "(1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there is a close relationship between the signatory and the non-signatory party." *Moss v. BMO Harris Bank, N.A.*, No. 13–5438, **2014** WL 2565824, at *4 (E.D.N.Y. June 9, **2014**) (internal citations and quotation marks omitted).

Similarly, Michigan courts recognize alternative estoppel as a basis for compelling a signatory to an arbitration agreement to arbitrate disputes with a nonsignatory to that agreement. *Tobel v. AXA Equitable Life Ins. Co.*, No. 298129, 2012 WL 555801, at *9–12 (Mich.Ct.App. Feb.21, 2012) ("Alternative estoppel typically relies, at least in part, on the claims being so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow the availability of the arbitration clause of that same agreement.").

Here, it is undisputed that the parties are closely related. Plaintiffs foresaw the involvement of CTA in their relationship with SCI; in fact, plaintiffs maintain they are employees of CTA, not independent contractors employed by SCI. (*See, e.g.,* Dkt. 19, Pls.' Resp. 13–14 ("The contract [*sc.* the SCI Agreement] itself, based on the actual relationship between the parties, is a façade")). Moreover, the SCI Agreement refers throughout to "logistics brokers," a category that includes CTA. Finally, most, if not all, of the issues raised by plaintiff in this case are explicitly addressed by the SCI Agreement. (*See* Dkt. 14, Def.'s Br. 10). In sum, the relationship between the parties is sufficiently close and the issues raised in plaintiffs' claims are sufficiently intertwined with the SCI Agreement to allow CTA to invoke the arbitration clause.

*2. Plaintiffs fail to challenge the validity of the agreement to arbitrate in their complaint or in their response to defendant's motion to compel arbitration*

Under the FAA, a district court "shall" order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate ... The required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir.2002) (internal citations omitted).

*\*6 The *Rent–A–Center* Court articulated a framework for determining the validity of an agreement to arbitrate where one party resists complying with the agreement:

> There are two types of validity challenges under § 2: One type challenges specifically the validity of the agreement to arbitrate, and the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. [We have] held that only the first type of challenge is relevant to a court's determination whether the arbitration agreement

at issue is enforceable. That is because § 2 states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.

*Rent–A–Center,* 561 U.S. at 70–71 (internal citations omitted). The Court, then, must assess plaintiffs' claims and determine whether they attack the contract as a whole, or whether they specifically attack the arbitration provision. In doing so, the Court must be mindful that:

> In some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate. Thus, in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone. But even where that is not the case—as in [*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ] itself, where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.

*Id.*

In this case, plaintiffs' complaint addresses the CTA Form, but does not mention the SCI Agreement, let alone the arbitration clause found therein. (*See, e.g.,* Dkt. 1, Compl. 90–101 (attacking CTA Form as unconscionable contract of adhesion)). As such, no direct attack against the arbitration clause is to be found in the complaint.

In their response to CTA's motion, plaintiffs attack the SCI Agreement as an unenforceable contract of adhesion.

(Dkt. 19, Pls.' Resp. 10–13). But plaintiffs only challenge the validity of the agreement as a whole; nowhere do they specifically challenge the validity of the agreement to arbitrate. For example, plaintiffs argue that "[t]he SCI contracts are at issue in the instant litigation, and no portion of them may be enforced until their validity is determined." (*Id.* at 13). The Court is not convinced that plaintiffs have sufficiently attacked the arbitration clause beyond stating that it is part of a larger, unenforceable contract. Under *Rent–A–Center,* this is insufficient to avoid enforcement of the arbitration clause. 561 U.S. at 70–71.

### 3. *Plaintiffs' challenge to the arbitration agreement's remedies limitations*

*7 Plaintiffs specifically challenge the arbitration agreement as unconscionable in their supplemental brief on the enforceability of the remedies limitation. (*See* Dkt. 26). But they have only done so at the Court's prompting. (*See* Dkt. 25). Even if plaintiffs' belated challenge is sufficient to put the validity of the arbitration agreement before the Court, the challenge is ultimately unavailing.

"If a party challenges the validity ... of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Rent–A–Center,* 561 U.S. at 71. Defendant maintains that under both New York and Michigan law, the arbitration clauses are not unconscionable.

#### a. *Unconscionability under New York and Michigan law*

"As a general matter, under New York law, unconscionability requires a showing that a contract is both procedurally and substantively unconscionable when made. That is, there must be some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Brower v. Gateway 2000, Inc.,* 246 A.D.2d 246, 676 N.Y.S.2d 569, 573 (N.Y.App.Div.1998) (internal citations and quotation marks omitted).

Michigan law also requires a showing of both procedural and substantive unconscionability to render a contract unenforceable. "Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term." *Clark v. DaimlerChrysler Corp.,* 268 Mich.App. 138, 706 N.W.2d 471, 474–75 (Mich.Ct.App.2005) (citation omitted). "If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term,

there was no procedural unconscionability." *Id.* at 475. A contract provision is substantively unconscionable "where the inequity of the term is so extreme as to shock the conscience." *Id.* "Even if the contract is adhesive ... the challenged term is still enforceable if substantively reasonable and not oppressive or unconscionable." *Rehmann, Robson & Co. v. McMahan,* 187 Mich.App. 36, 466 N.W.2d 325, 329 (Mich.Ct.App.1991).

b. *Procedural unconscionability*
Plaintiffs have not argued that the arbitration agreement itself is procedurally unconscionable. Rather, they argue that the SCI Agreement as a whole is a contract of adhesion, based on the circumstances of its execution. For this reason alone, as discussed above, the issue of the arbitration agreement's validity is not properly before the Court. But even assuming that plaintiffs have shown the arbitration agreement is procedurally unconscionable, they have failed to show the agreement is substantively unconscionable such that the Court should not enforce it.

c. *Substantive unconscionability*
Plaintiffs maintain the arbitration agreement is substantively unconscionable because it (1) "effectively waives Plaintiff's [*sic* ] right to judicial review of an arbitration award"; (2) "has unconscionable discovery limitations"; and (3) waives plaintiffs' right to pursue punitive damages, consequential damages, equitable relief, and attorney's fees. (Dkt. 26, Pls.' Supp. Br. 4–5 & 4 n. 1).

i. *Provisions of the arbitration agreement not at issue*
*8 As an initial matter, plaintiffs do not challenge several provisions of the arbitration agreement. These provisions weigh in favor of finding the agreement reasonable. Before arbitrating a dispute, the parties must engage in good faith negotiations for at least 60 days to attempt resolution. Each party is entitled to select one arbitrator; in turn, those two select a third, neutral arbitrator. If the two party-selected arbitrators are unable to agree, the American Arbitration Association will choose the third arbitrator. The arbitrators must have experience in the transportation industry and must have a legal background. The agreement provides broad rights to document production and gives the parties the option to save costs by foregoing a hearing and having the dispute decided on the briefs.

ii. *Judicial review of the arbitration award*
The FAA allows for judicial review of arbitration awards in limited circumstances; for example, "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). Plaintiffs point to no provision in the arbitration agreement that limits judicial review of an award beyond the limitations imposed by the FAA. Plaintiffs thus fail to show the agreement is unconscionable on this basis.

iii. *Discovery limitations*
Plaintiffs fail to identify the discovery limitations they allege are unconscionable. (*See* Dkt. 26, Pls.' Supp. Br. 4 n. 1). The only apparent departure from the Federal Rules of Civil Procedure is that each party is limited to three depositions of a maximum of two hours each. (Dkt. 14–3, Ex. C to Def.'s Br. 5). Such discovery limitations are far from uncommon in arbitration and, as the Supreme Court has noted, typically constitute part of a tradeoff: "by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate / Johnson Lane Corp.,* 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (internal quotation marks omitted). Accordingly, the Court does not find the discovery provision substantively unreasonable or unconscionable.

iv. *Punitive damages, consequential damages, and equitable relief*
Plaintiffs cannot recover punitive damages for their FLSA claims. While the Sixth Circuit has not yet decided whether punitive damages are recoverable under the FLSA, it is clear that such damages could only be recovered under the FLSA's anti-retaliation provision. Section 216(b) specifies the relief available for violations of §§ 206 and 207, the minimum wage and overtime provisions: "unpaid minimum wages, or ... unpaid overtime compensation, as the case may be, and ... an additional equal amount as liquidated damages."

Broader remedies are only available for violations of the FLSA's anti-retaliation provision: "such legal or equitable relief as may be appropriate to effectuate section 215(a)(3) [*sc.* the anti-retaliation provision]." *See Moore v. Freeman,* 355 F.3d 558, 564 (6th Cir.2004) (recognizing split among circuits on availability of punitive damages under § 216(b)); *Travis v. Gary Cmty. Mental Health Ctr., Inc.,* 921 F.2d 108, 112 (7th Cir.1990) (holding punitive damages available under FLSA, but only for retaliation claims, based on language of

§ 216(b)). The arbitration agreement's "waiver" of punitive damages is therefore not unconscionable. The same goes for consequential damages and for equitable relief, which are also not available for plaintiffs' FLSA claims. *See* 29 U.S.C. § 216(b).

*v. Attorney's fees, costs, and liquidated damages*

**\*9** This leaves only one ground cited by plaintiffs for finding the arbitration agreement substantively unconscionable and therefore unenforceable: the prohibition on awarding attorney's fees. That provision is unenforceable as applied to plaintiffs' FLSA claim. So are two others: the provision authorizing the arbitrators to award actual damages only, and the provision requiring parties to bear their own costs for arbitration.

As noted above, FLSA claims are amenable to mandatory arbitration. *Floss*, 211 F.3d at 313. However, in "agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* (quoting *Gilmer*, 500 U.S. at 26). Thus, "the specific arbitral forum provided under an arbitration agreement must ... allow for effective vindication of [the statutory] claim." *Floss*, 211 F.3d at 313.

It is well-established that "employees may not ... waive their FLSA rights to ... liquidated damages." *Boaz v. FedEx Customer Info. Servs.*, 725 F.3d 603, 606 (6th Cir.2013). That is because waivers of FLSA rights "would nullify the Act's purpose of achieving a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered under the Act ." *Id.* (internal citations and quotation marks omitted). They would also undermine the Act's purpose of preventing employers from gaining an unfair advantage over competitors. *See id.* at 605.

The same logic applies to waivers of statutory rights to attorney's fees and costs. *See Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir.2009) (holding that the FLSA "provides for reasonable attorney's fees [and] the parties cannot contract in derogation of FLSA's provisions"); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668–70 (6th Cir.2003) (finding cost-splitting provision and other limitations on remedies in arbitration agreement unenforceable as applied to Title VII claim); *McCaskill v. SCI Mgmt. Corp.*, 285 F.3d 623, 626 (7th Cir.2002) (holding provision in arbitration agreement unenforceable for failing to provide for award of attorney's fees and noting that "[t]he right to attorney's fees ... is central to the ability of persons to seek redress from violations of Title VII").

The FLSA mandates an award of attorney's fees and costs to a prevailing plaintiff: "The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C.A. § 216(b) (emphasis added). As with liquidated damages, this reflects Congress' determination of what is necessary to guarantee employees' rights to compensation and to ensure fair competition among employers. *See Morrison*, 317 F.3d at 670 ("[E]nforcement of the arbitration agreement would require Morrison to forego her substantive rights to the full panoply of remedies under Title VII and would thereby contravene Congress's intent to utilize certain damages as a tool for compensating victims of discrimination and for deterring employment discrimination more broadly").

*vi. Severability of the unenforceable limitations on remedies*

**\*10** CTA acknowledges that "to the extent the damages limitation restricts Plaintiffs' ability to vindicate their statutory rights, the limitation should not be enforced." (Dkt. 27, Def.'s Supp. Br. 4). Specifically, CTA concedes that "the damages limitation is unenforceable as it relates to Plaintiffs' claims under the FLSA." (*Id.* at 4 n. 1). But CTA maintains that the unenforceable provisions do not render the entire arbitration agreement unenforceable; rather, they should be severed or modified pursuant to the SCI Agreement's severability provision. (*Id.* at 2, 4). Plaintiffs disagree, citing various Courts of Appeals that have declined to modify or sever arbitration agreements. (Dkt. 26, Pls.' Supp. Br. 6–7).

CTA has the better argument. For starters, the cases plaintiffs cite are inapposite here. Courts in those cases were faced with arbitration agreements where "unconscionability permeate[d] the agreement," *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 271 (3d Cir.2003), and where "illegality pervade [d] the arbitration agreement such that only a disintegrated fragment would remain after hacking away at the enforceable parts." *Booker v. Robert Half Int'l*, 413 F.3d 77, 84–85 (D.C.Cir.2005). The unenforceable remedies provisions here do not "permeate" or "pervade" the entire arbitration agreement. Moreover, where, as here, the arbitration agreement contains a severability provision, "courts should not lightly conclude that a particular provision

of an arbitration agreement taints the entire agreement." *Morrison*, 317 F.3d at 675.

Under both New York and Michigan law, the intent of the parties is paramount in determining whether a contractual provision is severable. *In re Wilson's Estate*, 50 N.Y.2d 59, 427 N.Y.S.2d 977, 405 N.E.2d 220, 223 (N.Y.1980); *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich.App. 636, 534 N.W.2d 217, 220 (Mich.Ct.App.1995). Section 23 of the SCI Agreement provides that:

> If any provision of this Agreement or portion thereof is held to be unenforceable by a court of law or equity, said provision or portion thereof shall not prejudice the enforceability of any other provision or portion of the same provision, and instead such provision shall be modified to the least extent necessary to render such provision enforceable while maintaining the intent thereof.

(Dkt. 14–3, Ex. C to Def.'s Br. 4). Section 23 indicates the intent of the parties was to sever or modify any unenforceable provision of the SCI Agreement. The Court will therefore apply the severability provision to the unenforceable remedies limitations. *See Morrison*, 317 F.3d at 675 (holding cost-splitting and limitation on remedies provisions severable from arbitration agreement and concluding that district court "erred in compelling arbitration in the present case without first severing these unenforceable provisions from the agreement").

The remedies provision of the arbitration agreement will therefore be modified to include the following additional language (in bold):

> *11 The arbitrators will have authority to award actual monetary damages only. No punitive or equitable relief is authorized. All parties shall bear their own costs for arbitration and no attorney's fees or other costs shall be granted to either party. **Notwithstanding the foregoing, the arbitrators shall not have the authority to abridge substantive rights or remedies available to the parties under applicable law.**

Under this modified provision, if plaintiffs prevail on their FLSA claims in arbitration, they must be awarded liquidated damages, reasonable attorney's fees, and costs, pursuant to 29 U.S.C. § 216(b).

### C. Dismissal without prejudice is proper when all the claims are referable to arbitration

The remaining question is whether the Court should stay these proceedings pending arbitration of plaintiffs' claims, or dismiss the case without prejudice. Section 3 of the FAA requires courts to stay proceedings until arbitration of any referable issues is completed. 9 U.S.C. § 3. The Sixth Circuit, like several other circuits, has authorized dismissal of actions where all claims are referable to arbitration and retaining jurisdiction would thus serve no purpose. *Ozormoor v. TMobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir.2009); *Sellers v. Macy's Retail Holdings, Inc.*, No. 12–02496, **2014 WL** 2826119, at *10 (W.D. Tenn. June 23, **2014**) (citing cases from 4th, 5th, 6th, and 9th Circuits, as well as cases from within 6th Circuit). All of the claims in this case are referable to arbitration. The Court will therefore follow the practice of courts within this Circuit and dismiss the case without prejudice.

### III. Conclusion

Accordingly, for the reasons set forth above, and pursuant to sections 23 and 26 of the SCI Agreement and the directives of sections 2, 3, and 4 of the FAA,

The remedies provision in section 26 of the SCI Agreement is modified as above;

CTA's Motion is GRANTED;

The parties are ORDERED to commence arbitration according to the procedures in the SCI Agreement, as modified; and

The case is DISMISSED without prejudice.

IT IS SO ORDERED.

Southerland v. Corporate Transit of America, Slip Copy (2014)

23 Wage & Hour Cas.2d (BNA) 886

**All Citations**

Slip Copy, 2014 WL 4906891, 23 Wage & Hour Cas.2d (BNA) 886

Footnotes

1    Plaintiffs indicate in their complaint that the CTA Form is sometimes titled an "Agreement and Equipment Lease," or "AEL" (Dkt.1, Compl.¶ 25), and refer to this document as "AEL" throughout the Complaint. (*E.g.,* ¶¶ 29, 34, 36). Because the contracts executed between named plaintiffs and CTA **are** titled "Independent Contractor Acknowledgement Form" (*E.g.,* Dkt. 14–6, Ex. F to Def.'s Br.), the Court will refer to the contracts as "CTA Form."

2    As an aside, the Court notes that the arbitration clause in plaintiff Williams' SCI Agreement requires her to arbitrate claims related to any "service arrangement" between herself and any SCI client. (*See* Dkt. 14–5, Ex. E to Def.'s Br. § 26).

**End of Document**      © 2016 Thomson Reuters. No claim to original U.S. Government Works.