# EXHIBIT K

Case 2:14-cv-11916-GCS-SDD   ECF No. 76-12, PageID.2489   Filed 03/24/16   Page 2 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

2002 WL 31190167
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

John REITER, Plaintiff,
v.
METROPOLITAN TRANSPORTATION
AUTHORITY OF THE STATE OF NEW
YORK, MTA, New York City Transit
Authority, Mysore L. Nagaraja, P.E., Senior
Vice President and Chief Engineer, Defendants.

No. 01 Civ. 2762(JGK).
|
Sept. 30, 2002.

Employee sued city transit **authority**, his former supervisor, and state **transportation authority**, alleging discriminatory and retaliatory conduct in violation of Title VII, § 1981, and **New York** State Human Rights Law (NYSHL). On cross motions for summary judgment, the District Court, Koeltl, J., held that: (1) state **authority** was not employer; (2) even if Title VII protected employee from retaliation for employee's wife's filing of discrimination complaint, there was no causal connection between complaint and alleged adverse action; (3) verbal admonishment employee received from supervisor was not adverse employment action; (4) fact issues precluded summary judgment on issue of whether employer's reasons for demoting employee were pretext for retaliation; (5) any adverse employment actions taken against employee were not result of race or marital status discrimination based on employee's marriage to African-American woman; and (6) employee's claim for violation of due process was collaterally estopped.

Ordered accordingly.

*OPINION AND ORDER*

KOELTL, J.

**\*1** The plaintiff, John **Reiter**, brought this action against his employer, the **New York** City Transit **Authority** ("NYCTA"), his former supervisor, Mysore L. Nagaraja, and the **Metropolitan Transportation Authority** of the State of **New York** ("MTA"), seeking damages and injunctive relief for allegedly discriminatory and retaliatory conduct that he suffered as an employee.

The plaintiff raises Title VII claims alleging that he was subject to retaliation in the form of verbal reprimands, negative performance reviews, and demotion because he complained of discrimination and because his wife also raised similar claims. The plaintiff also contends that the defendants discriminated against him on the basis of race in violation of 42 U.S.C. § 1981; on the basis of marital status in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII); and (3) on the basis of martial status in violation of the **New York** Human Rights Law, N.Y. Exec. Law § 296. He also alleges disparate treatment on the basis of race, color and gender under Title VII. The plaintiff also alleges a violation of 42 U.S.C. § 1983 based on the alleged violation of 42 U.S.C. § 1981. (Tr. dated Aug. 30, 2002 at 52–53.) Finally, the plaintiff raises a claim alleging violation of his due process rights.

The defendants have now moved for summary judgment, and the plaintiff has cross-moved for summary judgment. The defendants contend, among other things, that the plaintiff lacks standing to raise claims of discrimination, and that the plaintiff has suffered no adverse employment consequences. The defendants also argue that the plaintiff has not put forward sufficient proof of discriminatory conduct to survive a summary judgment motion.

After the motion for summary judgment was fully briefed, the plaintiff moved to strike portions of the defendants' summary judgment papers. The defendants, in response, filed a motion for legal fees and costs pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.

II.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited

Case 2:14-cv-11916-GCS-SDD ECF No. 76-12, PageID.2490 Filed 03/24/16 Page 3 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**\*2** In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas,* 143 F.3d 105, 114–15 (2d Cir.1998) (collecting cases).

Normally, when both parties seek summary judgment, the Court must " 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." ' *Abrams v. United States,* 797 F.2d 100, 103 (2d Cir.1986) (quoting *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 304, 314 (2d Cir.1981)).

III.

Unless otherwise noted, there is no dispute as to the following facts. The plaintiff, a Caucasian male, began working for the NYCTA as a mechanical engineer in 1986. (Defts.' Rule 56.1 Stmt. ¶ 3; Pl .'s Resp. Rule 56.1 Stmt. ¶ 3.) From November 13, 1995 until June 1, 2000 the plaintiff worked as the Deputy Vice–President of Engineering Services of the Capital Program Management ("CPM"), a department of the NYCTA. (Defts.' Rule 56.1 Stmt. ¶¶ 1, 2, 37; Pl.'s Resp. Rule 56.1 Stmt. ¶¶ 1, 2, 37; Pl.'s Rule 56.1 Stmt. ¶ 52.) The CPM's head, and the plaintiff's immediate supervisor was Chief Engineer and Senior Vice President, Mysore L. Nagaraja. (Defts.' Rule 56.1 Stmt. ¶ 2; Pl.'s Resp. Rule 56.1 Stmt. ¶ 2.)

The plaintiff's wife, Soheir Ellithi, was also an employee of the NYCTA. [1] (Defts.' Rule 56.1 Stmt. ¶ 6; Pl.'s Resp. Rule 56.1 Stmt. ¶ 6.) She also worked in the CPM office, the department headed by Mr. Nagaraja. While working at the NYCTA, the plaintiff's wife raised five discrimination and retaliation claims against her employer. On May 7, 1998, the plaintiff's wife filed a complaint with the NYCTA's Equal Employment Opportunity ("EEO") office, alleging that she was subjected to sex discrimination and retaliation by her immediate supervisors. (*See* Employee Intake and Compl. Form attached as Exh. 4 to Affirmation of Steven Stimell dated Feb. 25, 2002 ("Stimell Affirm.").) This 1998 complaint did not name Mysore Nagaraja as a respondent or allege any discriminatory conduct against him.

**\*3** Thereafter, on February 14, 1999, the plaintiff's wife filed another internal complaint, with the MTA's Office of Civil Rights, Division of Equal Employment Opportunity. (Employee Intake and Compl. Form attached as Exh. 5 to Stimell Affirm.) This complaint did name Mr. Nagaraja as a respondent, and alleged claims of discrimination based on sex, age, marital status and retaliation. (*Id.*) On August 12, 1999, Ms. Ellithi raised claims of sex and age discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (Charge of Discrimination attached as Exh. 6 to Stimell Affirm at 30.) The alleged claims arose out of events from June, 1997 to August, 1999, and asserted that Mr. Nagaraja had some involvement in the allegedly discriminatory and retaliatory conduct. (*Id.* at 30, 32–33.).

The substance of her 1999 EEOC complaint was reiterated in Ms. Ellithi's subsequent March, 25, 2000 complaint with the EEOC; however, this time she also raised a claim of discrimination on the basis of race and color. (Charge of Discrimination attached as Exh. 7 to Stimell Affirm. at 81.)

Finally, Ms. Ellithi filed a March, 2000 action with the **New York** State Division of Human Rights, alleging facts similar to those raised in her prior complaints. (Div. of Human Rights Compl. attached as Exh. 8 to Stimell Affirm.)

The lawsuit in this Court centers around actions taken against the plaintiff by the NYCTA during and after the time in which the plaintiff's wife filed her complaints with the EEO and the EEOC, and the **New York** State Division of Human Rights. On October 25, 1999 the defendants declined the EEOC's offer to mediate Ms. Ellithi's complaint. (Pl.'s Rule 56.1 Stmt. ¶ 5.) There is some factual dispute as to whether Mr. Nagaraja was aware in 1999 of the offer to mediate. (Aff. of Mysore Nagaraja dated January 31, 2002 ¶ 6; Aff. of John **Reiter** dated February 23, 2002 ¶ 19.) On October 26, 1999, the plaintiff received a verbal performance review from Mr. Nagaraja, stating that his work performance was not adequate. (Pl.'s Rule 56.1 Stmt. ¶ 5.) During this conversation Mr. Nagaraja indicated that he would conduct meetings with the plaintiff to discuss CPM's performance, but these meetings did not take place. (Pl.'s Rule 56.1 Stmt. ¶ 33.)

In December 1999, the plaintiff received a memorandum from Mr. Nagaraja that expressed concerns about the plaintiff's work performance. (Defts.' Rule 56.1 Stmt. ¶ 13; Pl.'s Resp. Rule 56.1 Stmt. ¶ 13.) The plaintiff then received his Year 1999 performance review from Mr. Nagaraja on January 31, 2000. This review gave him an overal rating of "marginal." (Defts.' Rule 56.1 Stmt. ¶ 15; Pl.'s Resp. Rule 56.1 Stmt. ¶ 15.) This was the first marginal review that the plaintiff had received as a NYCTA employee, and prevented him from receiving a pay raise in the year 2000. The NYCTA did give the plaintiff a review of "good" in 2000 and 2001, allowing him to receive a pay increase in 2001 (Defts.' Rule 56.1 Stmt. ¶¶ 16,17; Pl.'s Resp. Rule 56.1 Stmt. ¶¶ 16, 17; Pl.'s Rule 56.1 Stmt. ¶¶ 36, 37.)

  *4 The plaintiff sought review of his 1999 evaluation, and pursued an appeals process that included an appeal to Mr. Nagaraja on February 8, 2000; an attempt to have NYCTA President Lawrence Reuter get involved; and a hearing before an appeals board consisting of various MTA and NYCTA employees, which rendered a decision upholding the marginal review on March 30, 2000 (Defts.' Rule 56.1 Stmt. ¶¶ 18, 25, 30–33; Pl.'s Resp. Rule 56.1 Stmt. ¶¶ 18,25, 30–33; Pl.'s Rule 56.1 Stmt. ¶¶ 42–48.)

The plaintiff also pursued other avenues to appeal his 1999 performance evaluation. On March 25, 2000 he filed a complaint with the EEOC, alleging that the circumstances surrounding the evaluation constituted retaliation and discrimination on the basis of race and color. (Charge of Discrimination dated March 25, 2000 attached as Exh. 12 to Stimell Affirm.) The retaliation claim was based, in part, on an allegation that the plaintiff received his negative performance evaluations because his wife raised discrimination claims with the NYCTA.

On June 1, 2000, the plaintiff was reassigned to the position of Deputy Vice President of Technical Services, another placement within the CPM where he retained his salary and benefits, but reported to a new supervisor, Jack Carter. (Defts.' Rule 56.1 Stmt. ¶¶ 37–39; Pl.'s Resp. Rule 56.1 Stmt. ¶¶ 37–39; Pl.'s Rule 56.1 Stmt. ¶¶ 52,54.) In a subsequent June 19, 2000 EEOC Complaint the plaintiff alleged that on or about June 1, 2000 the NYCTA retaliated against the plaintiff by re-assigning him to the new position because he had filed his March 25, 2000 EEOC Complaint. (*See* Charge of Discrimination dated June 19, 2000 attached as Exh. 12 to Stimell Affirm.)

Prior to filing an action in this Court, the plaintiff initiated an Article 78 proceeding, in the **New York** State Supreme Court, to review and reverse the determination of the appeals board that his 1999 evaluation should remain in place, and sought to be reinstated to his previous position. (Notice of Pet. in Article 78 Proceeding dated June 15, 2000 attached as Exh. 9 to Stimell Affirm.) On May 2, 2002, the **New York** State Supreme Court denied the plaintiff's petition finding that the decision was not arbitrary and capricious and had a rational basis.

IV.

[1]   The plaintiff moves for summary judgment dismissing all claims against the MTA on the grounds that the MTA was never the plaintiff's employer and therefore the MTA is not liable for any of the claims in this case.

Most of the plaintiff's allegations in this case arise under Title VII. Title VII, in relevant part, prohibits employment discrimination by an "employer." *See* 42 U.S.C. § 2000e–2(a). The Court of Appeals has found the term employer to be "sufficiently broad [so as] to encompass any party who significantly affects access of any individual to employment opportunities." *Spirt v. Teachers Insurance & Annuity Ass'n,* 691 F.2d 1054, 1063 (2d Cir.1982), *vacated on other grounds,*

Case 2:14-cv-11916-GCS-SDD   ECF No. 76-12, PageID.2492   Filed 03/24/16   Page 5 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

463 U.S. 1223 (1983). The test for whether a particular entity is an employer is whether it "exercise[s] a direct and significant degree of control over the complaining party's direct employer or the complaining party's work environment." *Goyette v. DCA Advertising, Inc.,* 830 F.Supp. 737, 744 (S.D.N.Y.1993) (quotations omitted).

*5 Here, no reasonable juror could find that the MTA is the plaintiff's employer as defined by Title VII. There is no allegation that the plaintiff was ever actually employed by the MTA or that the MTA took any part in the alleged acts of discrimination and retaliation. The plaintiff, as well as his supervisor, were at all times employees of the NYCTA. It is true that entities may be so "intertwined that they are a joint employer for purposes of Title VII." *Ross v. Mitsui Fudosan, Inc.,* 2 F.Supp.2d 522, 529 (quotations omitted) (collecting cases). However, there is no evidence of such intertwining for the purposes of the employment decisions in this case. The NYCTA and MTA are two distinct legal entities, and the MTA was not responsible for any of the personnel decisions in this case. (Aff. of Kevin Hyland sworn to January 25, 2002 at ¶¶ 2–7.) The plaintiff has produced no contrary evidence. The MTA does not determine the pay scale of the plaintiff, nor did it hire or reassign the plaintiff. The employment relationship between the two entities is insufficiently interrelated to permit the plaintiff's claims against the MTA to proceed. *See Kern v. City of Rochester,* 93 F.3d 38, 45 (2d Cir.1996) (dismissing Title VII claims against City where it lacked **authority** to hire or fire employee or determine her rate of pay).[2]

Moreover, collateral estoppel prohibits the plaintiff from re-litigating the nature of the relationship between the NYCTA and the MTA. Collateral estoppel, under **New York** law, bars a party from re-litigating an issue already decided, if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 200 (2d Cir.1996). Whether the MTA is the plaintiff's employer was an issue already actually litigated in the plaintiff's Article 78 proceeding. In that proceeding, the MTA was dismissed as a party to the plaintiff's action, based on a finding that the MTA and NYCTA are separate entities, and that the plaintiff was not employed by the MTA and that the MTA did not take part in or have an interest in the review of the plaintiff's marginal evaluation. (*See* Decision and Order of Judge Madden dated December 8, 2000 attached as Exh. 10 to Stimell Affirm. at 10–11.) The plaintiff argues that

the procedures in an Article 78 proceeding are sufficiently different from this action so that he could not be considered to have had a full and fair opportunity to litigate his employment status. These conclusory allegations are insufficient, given that it is well established that an Article 78 proceeding can in fact provide a full and fair opportunity to litigate issues and such decisions are entitled to collateral estoppel effect. *See Moccio,* 95 F.3d at 202.

The fact that there is no evidence that the plaintiff was employed by the MTA, and the fact that the prior determination of the state court to that effect is entitled to collateral estoppel bars the plaintiff's claims under Title VII against the MTA. Similarly, because the plaintiff has suggested no basis for liability against the MTA under any of the other federal or state statutes on which he relies, all of the plaintiff's claims against the MTA are dismissed.

V.

*6 The defendant also moves for summary judgment on the plaintiff's Title VII claims for retaliation. The plaintiff raises three retaliation claims. He claims that (1) because his wife filed an EEOC complaint in August, 1999 he received a "marginal" performance review in January, 2000; (2) in February, 2000 after complaining to his staff members about alleged retaliation, he received a verbal reprimand from the Vice–President of Human Resources Kevin Hyland; and (3) he was demoted in June, 2000 after filing a March 25, 2000 complaint with the EEOC alleging discrimination.[3]

Title VII makes it "an unlawful practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

Claims of retaliation are analyzed according to the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Cosgrove v. Sears, Robuck & Co.,* 9 F.3d 1033, 1038–39 (2d Cir.1993). The plaintiff must first establish a prima facie case of retaliation. To establish a prima facie case of retaliation, the plaintiff must show that he was (1) engaged in protected activity; that (2) the defendant was aware of this activity; (3) the defendant took adverse action against the plaintiff; and (4) that a causal connection exists between the

Case 2:14-cv-11916-GCS-SDD ECF No. 76-12, PageID.2493 Filed 03/24/16 Page 6 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

protected activity and the adverse action, i.e. that a retaliatory motive played a part in the adverse employment action. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir.2002); *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d. Cir.2000).

If the plaintiff meets his initial burden, the burden shifts to the defendant to provide a legitimate nonretaliatory reason for its decisions. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 443 (2d Cir.1999); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768–69 (2d Cir.1998). If the defendant meets this burden, then the *McDonnell Douglas* framework disappears and the sole remaining issue is whether the plaintiff has produced sufficient evidence that discriminatory or retaliatory animus was a motivating factor in the challenged decisions. *Reg'l Econ.*, 294 F.3d at 49, 54. In determining whether the plaintiff has met this burden, the Court is to use a "case by case" approach that evaluates "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *James v. New York Racing Assoc.*, 233 F.3d 149, 156 (2d Cir.2000) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *accord Schnabel v. Abramson*, 232 F.3d 83, 90–91 (2d Cir.2000); *Cooney v. Consolidated Edison*, No. 00 Civ. 4965, 2002 WL 31059310, at *5 (S.D.N.Y. Sept.16, 2002); *Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F.Supp.2d 265, 282–83 (S.D.N.Y.2001); *Alleyne v. Four Seasons Hotel*, No. 99 Civ. 3432, 2001 WL 135770, at *10 (S.D.N.Y. Feb.15, 2001), *aff'd*, 25 Fed. Appx. 74 (2d Cir.2002). "The task ... is to examine the entire record and ... make the case-specific assessment as to whether a finding of discrimination [or retaliation] may reasonably be made." *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 382 (2d Cir.2001).

## A.

*7 **[2]** With respect to the first claim of retaliation, the plaintiff argues that he was retaliated against because of the "protected activity" that his wife engaged in when she filed her complaint with the EEOC in August, 1999.[4] The defendants contend that there can be no retaliation claim under Title VII when the complainant did not engage in the protected activity. The statute provides that it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made unlawful employment practice by this subchapter, or because he has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

Several courts of appeals have held that merely being related to, or being associated with, another person who engages in protected activity is insufficient to allow the claimant to allege retaliation because of the protected activity of the other person. *See, e.g., Fogleman v. Mercy Hosp.*, 283 F.3d 561, 569–70 (3d Cir.2002) (applying plain language analysis for retaliation claims under Age Discrimination in Employment Act ("ADEA") and Americans with Disabilities Act ("ADA")); *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819 (8th Cir.1998) (Title VII); *Holt v. JTM Indus.*, 89 F.3d 1224, 1226 n. 1, 1227 (5th Cir.1996) (ADEA). These courts reason that the plain language of Title VII prohibits discrimination only against those who have themselves engaged in protected activity. *See Fogleman*, 283 F.3d at 570; *Smith*, 151 F.3d at 819; *Holt*, 89 F.3d at 1226–1227. Other courts of appeals have permitted retaliation claims by persons closely associated with those who have engaged in protected activities. *See, e.g., Equal Employment Opportunity Comm'n v. Ohio Edison Co.*, 7 F.3d 541, 543–44 (6th Cir.1993); *Wu v. Thomas*, 863 F.2d 1543, 1547–48 (11th Cir.1989). The Second Circuit Court of Appeals has not yet addressed this question. *Gonzalez v. New York State Dept. of Correctional Services Fishkill Correctional Facility*, 122 F.Supp.2d 335, 346 (N.D.N.Y.2000). However, other district courts in this Circuit have held that a plaintiff can state a claim under Title VII where the plaintiff alleges that the plaintiff was retaliated against because of the protected activities of another closely related person. *Id.; Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F.Supp. 1108, 1118 (W.D.N.Y.1996). This approach has also been followed by district courts in other circuits and the EEOC. *See Equal Employment Opportunity Comm'n v. Nalbandian Sales, Inc.*, 36 F.Supp.2d 1206, 1212 (E.D.Cal.1998); *Thurman v. Robertshaw Control Co.*, 869 F.Supp. 934, 941 (N.D.Ga.1994); *De Medina v. Reinhardt*, 444 F.Supp. 573, 580 (D.D.C.1978), *aff'd in part and remanded in part*, 686 F.2d 997 (D.C.Cir.1982); *see also Bates v. Widnall*, Agency No. 0D1C960001, 1997 WL 332902, at *1 (E.E.O.C. June 10, 1997) (noting that "it is well settled that third party reprisals are cognizable under EEO law").

*8 It is unnecessary in this case to resolve this dispute as to the scope of Title VII's protections against retaliation, because it is clear that even if the plaintiff is able to allege that the plaintiff cannot be retaliated against because of the protected

activity of his wife, no reasonable juror could find that he was retaliated against because of the activity of Ms. Ellithi.

In addition to alleging protected activity, the plaintiff must show that he suffered some materially adverse employment action. Such an action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices ... unique to a particular situation." *Galabya v. New York City Board of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (internal citation omitted). On January 31, 2000 the plaintiff received a written performance review of "marginal" which was the first such negative review he had received during his employment at the NYCTA.[5] A trier of fact could reasonably determine that this "marginal" review was an adverse employment action, because it deprived the plaintiff of a salary increase for the year 2000.

The final element of a prima-facie case requires that the plaintiff show that there is some causal connection between the protected activity and the adverse employment action. *Gordon*, 232 F.3d at 113. Thus, the plaintiff must show that there was some causal connection between his "marginal" performance evaluation and the protected activity in this case, the August 1999 complaint of discrimination filed by the plaintiff's wife. The plaintiff cannot make this showing.

There is insufficient evidence from which a reasonable jury could conclude that the plaintiff's "marginal" evaluation was related to his wife's EEO and EEOC complaints. There is no direct evidence in the record that indicates Mr. Nagaraja, aware of Ms. Ellithi's complaints, decided to retaliate against her husband by giving him a marginal evaluation in January, 2000. Without direct evidence, the plaintiff can prove causation indirectly "by showing that the protected activity was closely followed in time by the adverse action." *Monaharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988).

The plaintiff seeks to narrow the time-frame in which his retaliation claim is analyzed, by defining the protected activity only with respect to his wife's August 12, 1999 EEOC complaint. The defendants, including Mr. Nagaraja, were on notice of this EEOC complaint. (*See* Mem. dated October 21, 1999 attached as Ex. 1 to Declaration of Gregory Smith ("Smith Decl.") dated March 16, 2002.) However, his wife filed two earlier complaints, including a May 1998 EEO complaint and a 1999 EEO Complaint that specifically named

Mr. Nagaraja as a respondent. The plaintiff alleges that there is some factual dispute as to when Mr. Nagaraja became aware of Ms. Ellithi's complaints, and whether the retaliation was a result of the more formal and later in time, August 1999 EEOC filing. However, the evidence demonstrates, without genuine dispute, that Mr. Nagaraja was aware of the earlier complaints filed by Ms. Ellithi. Mr. Nagaraja was interviewed in July, 1998 by EEO Investigations Manager Gwendolyn Harleston about Ms. Ellithi's complaint. (*See* Memo to File from Gwendolyn Harrison dated July 6, 1998 attached as Ex. 2 to letter of Steven Stimell ("Stimell Letter") dated September 5, 2002.) Mr. Nagaraja made clear several times during the course of his deposition testimony that he was aware in 1998 of Ms. Ellithi's May EEO complaint. (*See* Letter of Gregory Smith dated September 5, 2002 at 2 (excerpting deposition testimony).) He was also aware of Ms. Ellithi's later complaints and the allegations she had made against him. (*Id.* at 2–3.) Finally, the plaintiff conceded at oral argument that Mr. Nagaraja, as head of CPM, would invariably become aware of discrimination complaints filed by employees within the department. (Tr. 30–31.)

**\*9** Normally, the date on which the employer becomes aware of the commencement of the protected activity is the appropriate starting point for causation analysis. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). The defendants, including Mr. Nagaraja, were aware of plaintiff's wife's May 1998 EEO complaint soon after it was filed, and became aware of the subsequent 1999 complaints. The alleged act of retaliation, the marginal performance evaluation, took place in January 31, 2000. The passage of over a year and a half between the commencement of the protected activity and retaliation is too great a period of time from which a reasonable jury could determine that the two events were causally connected. *See id.* (requiring that temporal proximity be "very close"); *Ponticelli v. Zurich Am. Ins. Co.*, 16 F.Supp.2d 414, 436 (S.D.N.Y.1998) (dismissing retaliation claim and holding that causation did not exist when only two and one-half months had elapsed between protected activity and retaliation); *Cooper v. Morgenthau*, No. 99 Civ. 11946, 2001 WL 868003, at \*8 (S.D.N.Y. July 31, 2001) (collecting cases). Consequently, the plaintiff has failed to satisfy the elements of a prima-facie case, and the defendant's motion for summary judgment on this retaliation claim is granted.[6]

B.

Case 2:14-cv-11916-GCS-SDD  ECF No. 76-12, PageID.2495  Filed 03/24/16  Page 8 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

**[3]** The plaintiff's second retaliation claim asserts that he also complained informally to his staff about alleged retaliatory conduct by Mr. Nagaraja and was reprimanded. This claim fails because the plaintiff suffered no adverse employment action as a result of his informal complaint.

Beyond a verbal admonishment from Kevin Hyland, the Vice–President of Human Resources, the plaintiff asserts no other allegedly adverse action that he suffered from his February, 2000 discussion. During this conversation, the plaintiff was informed that it was not proper, under NYCTA policy, to raise complaints to subordinates regarding alleged retaliation taken by Mr. Nagaraja. The plaintiff was also informed of the appropriate NYCTA appeals and review processes for such a claim, and that there were procedures available for dealing with allegations of retaliation. (See Dep. of Kevin Hyland attached as Ex. 36 to Decl. of Gregory Smith dated Feb. 24, 2002 at 44–45.) This type of verbal admonishment for talking to subordinates that does not affect in any way the plaintiff's position, salary or working conditions could not be considered an adverse employment action. There is no evidence that the plaintiff suffered any adverse action that affected the conditions of his employment. The plaintiff thus fails to satisfy the adverse action element for his second retaliation claim. *See Galabya,* 202 F.3d at 640. This claim is therefore dismissed.

C.

**[4]** The final retaliation claim alleges that the plaintiff's transfer in June, 2000 was a demotion that resulted from his filing of his March, 2000 EEOC complaint. This allegation adequately states a prima facie case of retaliation, and the defendants have failed to show that no reasonable juror could find that the plaintiff had proven his claim of retaliation.

**\*10** The plaintiff engaged in protected activity contemplated by the statute, because he filed a March 2000 Complaint with the EEOC alleging discrimination. The Complaint lists discrimination based on race, color and retaliation, but the description of the charge alleges that the NYCTA retaliated against the plaintiff because of the EEOC Complaint filed by the plaintiff's wife. The defendants argue that because this EEOC filing alleges retaliation for protected activity of another person, the plaintiff's EEOC complaint itself does not constitute a protected activity. However, whether or not the underlying acts complained of by the plaintiff were actionable, to establish that an activity was protected, a party

need only prove that he was acting under a good faith, reasonable belief that the activity was of a kind covered by the statute. *Cosgrove,* 9 F.3d at 1039; *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998); *Reed v. A.W. Lawrence & Co., Inc. .,* 95 F.3d 1170, 1178 (2d. Cir.1996); *cf. Fogelman,* 283 F.3d at 565 (holding that ADA and ADEA retaliation claims were actionable, because the employer retaliated against the employee because it thought he was engaged in protected activity even if he was not.) The plaintiff's filing of the EEOC complaint was plainly within the definition of protected activity under Title VII. Nothing indicates that the plaintiff lacked good faith in believing that complaining to the EEOC about discrimination suffered by his spouse was not activity covered by Title VII. Further, given the substantial **authority** supporting the plaintiff's claim, it could not be found that his complaint was unreasonable. Moreover, the plaintiff's EEOC complaint was not simply an attempt to bootstrap and transform his wife's complaint into his own; rather, the plaintiff's complaint was based on his own legitimate belief that he was suffering negative employment consequences for actions taken by his wife.

The plaintiff claims that his transfer on June 1, 2000 was a retaliatory demotion. The defendants counter that there was no adverse employment action, because the plaintiff continued to receive the same salary and benefits, and retained the title of Deputy Vice–President. The plaintiff has offered sufficient evidence of adverse employment actions to satisfy this element of a prima facie case. The plaintiff, although still a Deputy Vice–President, is now lower in the NYCTA heirarchy. (Pl.'s Rule 56.1 Stmt. ¶ 54.) The NYCTA's classification system, which gives more "hay points" to positions within the NYCTA that require greater skill and contain more managerial and supervisory responsibility, assigns zero points to the plaintiff's current position, whereas his previous position contained a significant number of such points. (*Id.* at ¶ 56; Defts.' Resp. Rule 56.1 Stmt. ¶ 56.) Additionally, the plaintiff no longer has a confidential secretary or other fringe benefits associated with his earlier position. (Pl.'s Rule 56.1 Stmt. ¶ 59.) There is also a sufficient factual dispute as whether the plaintiff's managerial responsibilities, reporting requirements and overall job requirements decreased significantly after his reassignment, such that summary judgment should not be granted. (Pl.'s Rule 56.1 Stmt. ¶¶ 55,57; Defts.' Rule 56.1 Stmt. ¶¶ 41, 42.) These changes in ancillary job-related benefits and job responsibilities, when viewed as a whole rather than individually, may rise to the level of materially adverse

Case 2:14-cv-11916-GCS-SDD ECF No. 76-12, PageID.2496 Filed 03/24/16 Page 9 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

actions. *See De La Cruz v. New York City Human Rs. Admin. Dep't of Social Serv.,* 82 F.3d 16, 21 (2d Cir.1996); *Fowler v. New York Transit Auth.,* No. 96 Civ. 6796, 2001 WL 83228, at *7 (S.D.N.Y. Jan.31, 2001) (collecting cases).

*11 There is also a genuine issue of material fact as to whether there was a causal connection between the plaintiff's filing of the March EEOC complaint and his June, 2000 transfer. The temporal proximity is sufficiently narrow, and the defendants offer no argument on causation.

The defendants offer three reasons for the plaintiff's reassignment, including a deteriorating working relationship with Mr. Nagaraja, poor work performance under Mr. Nagaraja, and the plaintiff's good working relationship with the supervisor in the new position. However, a reasonable jury could find that these reasons are simply euphemisms for Mr. Nagaraja's more critical reviews of the plaintiff after the plaintiff filed his EEOC complaint and because of that complaint. Given the plaintiff's past performance, his distinguished career, and the timing of the reassignment, there are general issues of material fact as to whether the proffered reasons were true and, even if true, whether retaliation was nevertheless a motivating factor in causing the reassignment. Summary judgment on this claim is therefore denied.

D.

The plaintiff has also moved for summary judgment on his retaliation claims. However, this motion merely recounts facts already presented in the plaintiff's response to the defendants' summary judgment motion. These responses provide no basis to decide as a matter of law that the plaintiff is entitled to judgment, and are sufficient only to deny the defendants' motion on the last retaliation claim. The plaintiff has simply demonstrated that there are material issues of fact with respect to whether his reassignment was an adverse employment action and whether retaliation for the plaintiff's filing of his EEOC complaint was a motivating factor for the reassignment. The facts are not so clear that it can be determined as a matter of law that the defendants retaliated against the plaintiff. Consequently, the plaintiff's motion is denied.

V.

[5] The plaintiff raises a claim under Title VII and **New York** State Human Rights Law, N.Y. Exec. Law § 296, that a motivating factor in the adverse employment decisions against him was his marital status.[7] The plaintiff also raises a claim under Title VII alleging disparate treatment on the basis of race, color and gender. Additionally, he raises a claim on the basis of 42 U.S.C. § 1981, alleging discrimination on the basis of race. The basis for all these claims is the basic allegation that the plaintiff was discriminated against because he is a Caucasian male who is married to an African–American female. These claims effectively allege discrimination on the basis of race, and will be analyzed as such, because they allege that the plaintiff was subject to retaliation because of race, and on the basis of his relationship with a member of a particular racial group.[8] As noted below, the legal and factual analysis for all of these claims is identical, and because the plaintiff has failed to allege a prima facie case of employment discrimination, summary judgment is appropriate for the defendants on all of these claims.

*12 The plaintiff's claims, for race discrimination under Title VII and the **New York** Human Rights Law, and for discrimination in violation of § 1981, are all employment discrimination claims, and are governed by the standard established in *McDonnell Douglas Corp. v. Green. Torres v. Pisano,* 116 F.3d 625, 619 n. 1 (2d Cir.1997) (claims arising under the **New York** Human Rights law analytically inseparable from Title VII claims); *Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 245 n. 4 (S.D.N.Y.2001) (claims under Title VII, § 1981, and the **New York** Human Rights Law analyzed under the McDonnell Douglas burden shifting framework). Under the *McDonnell Douglas* test, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff meets this initial burden, the burden of production shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse employment action. *Reeves,* 530 U.S. at 143. If the defendant meets this burden, then the sole remaining issue is whether the plaintiff has produced sufficient evidence that discriminatory animus was a motivating factor in the challenged decision. *Reg'l Econ.,* 294 F.3d at 49, 54. In determining whether the plaintiff has met this burden, the Court is to use a "case by case" approach that evaluates "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *James,* 233 F.3d at 156; *Cooney,* 2002 WL 31059310, at *5 (collecting cases).

# EXHIBIT K

Case 2:14-cv-11916-GCS-SDD    ECF No. 76-12, PageID.2498    Filed 03/24/16    Page 11 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

2002 WL 31190167
Only the Westlaw citation is currently available.
United States District Court, S.D. **New York**.

John **REITER**, Plaintiff,

v.

**METROPOLITAN TRANSPORTATION
AUTHORITY** OF THE STATE OF **NEW
YORK**, MTA, **New York** City Transit
**Authority**, Mysore L. Nagaraja, P.E., Senior
Vice President and Chief Engineer, Defendants.

No. 01 Civ. 2762(JGK).

|

Sept. 30, 2002.

Employee sued city transit **authority**, his former supervisor, and state **transportation authority**, alleging discriminatory and retaliatory conduct in violation of Title VII, § 1981, and **New York** State Human Rights Law (NYSHL). On cross motions for summary judgment, the District Court, Koeltl, J., held that: (1) state **authority** was not employer; (2) even if Title VII protected employee from retaliation for employee's wife's filing of discrimination complaint, there was no causal connection between complaint and alleged adverse action; (3) verbal admonishment employee received from supervisor was not adverse employment action; (4) fact issues precluded summary judgment on issue of whether employer's reasons for demoting employee were pretext for retaliation; (5) any adverse employment actions taken against employee were not result of race or marital status discrimination based on employee's marriage to African-American woman; and (6) employee's claim for violation of due process was collaterally estopped.

Ordered accordingly.

*OPINION AND ORDER*

KOELTL, J.

**\*1** The plaintiff, John **Reiter**, brought this action against his employer, the **New York** City Transit **Authority** ("NYCTA"), his former supervisor, Mysore L. Nagaraja, and the **Metropolitan Transportation Authority** of the State of **New York** ("MTA"), seeking damages and injunctive relief for allegedly discriminatory and retaliatory conduct that he suffered as an employee.

The plaintiff raises Title VII claims alleging that he was subject to retaliation in the form of verbal reprimands, negative performance reviews, and demotion because he complained of discrimination and because his wife also raised similar claims. The plaintiff also contends that the defendants discriminated against him on the basis of race in violation of 42 U.S.C. § 1981; on the basis of marital status in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (3) on the basis of martial status in violation of the **New York** Human Rights Law, N.Y. Exec. Law § 296. He also alleges disparate treatment on the basis of race, color and gender under Title VII. The plaintiff also alleges a violation of 42 U.S.C. § 1983 based on the alleged violation of 42 U.S.C. § 1981. (Tr. dated Aug. 30, 2002 at 52–53.) Finally, the plaintiff raises a claim alleging violation of his due process rights.

The defendants have now moved for summary judgment, and the plaintiff has cross-moved for summary judgment. The defendants contend, among other things, that the plaintiff lacks standing to raise claims of discrimination, and that the plaintiff has suffered no adverse employment consequences. The defendants also argue that the plaintiff has not put forward sufficient proof of discriminatory conduct to survive a summary judgment motion.

After the motion for summary judgment was fully briefed, the plaintiff moved to strike portions of the defendants' summary judgment papers. The defendants, in response, filed a motion for legal fees and costs pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.

II.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited

Case 2:14-cv-11916-GCS-SDD  ECF No. 76-12, PageID.2499  Filed 03/24/16  Page 12 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**\*2** In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir.1998) (collecting cases).

Normally, when both parties seek summary judgment, the Court must " 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.' " *Abrams v. United States*, 797 F.2d 100, 103 (2d Cir.1986) (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 304, 314 (2d Cir.1981)).

III.

Unless otherwise noted, there is no dispute as to the following facts. The plaintiff, a Caucasian male, began working for the NYCTA as a mechanical engineer in 1986. (Defts.' Rule 56.1 Stmt. ¶ 3; Pl .'s Resp. Rule 56.1 Stmt. ¶ 3.) From November 13, 1995 until June 1, 2000 the plaintiff worked as the Deputy Vice–President of Engineering Services of the Capital Program Management ("CPM"), a department of the NYCTA. (Defts.' Rule 56.1 Stmt. ¶¶ 1, 2, 37; Pl.'s Resp. Rule 56.1 Stmt. ¶¶ 1, 2, 37; Pl.'s Rule 56.1 Stmt. ¶ 52.) The CPM's head, and the plaintiff's immediate supervisor was Chief Engineer and Senior Vice President, Mysore L. Nagaraja. (Defts.' Rule 56.1 Stmt. ¶ 2; Pl.'s Resp. Rule 56.1 Stmt. ¶ 2.)

The plaintiff's wife, Soheir Ellithi, was also an employee of the NYCTA. [1] (Defts.' Rule 56.1 Stmt. ¶ 6; Pl.'s Resp. Rule 56.1 Stmt. ¶ 6.) She also worked in the CPM office, the department headed by Mr. Nagaraja. While working at the NYCTA, the plaintiff's wife raised five discrimination and retaliation claims against her employer. On May 7, 1998, the plaintiff's wife filed a complaint with the NYCTA's Equal Employment Opportunity ("EEO") office, alleging that she was subjected to sex discrimination and retaliation by her immediate supervisors. (*See* Employee Intake and Compl. Form attached as Exh. 4 to Affirmation of Steven Stimell dated Feb. 25, 2002 ("Stimell Affirm.").) This 1998 complaint did not name Mysore Nagaraja as a respondent or allege any discriminatory conduct against him.

**\*3** Thereafter, on February 14, 1999, the plaintiff's wife filed another internal complaint, with the MTA's Office of Civil Rights, Division of Equal Employment Opportunity. (Employee Intake and Compl. Form attached as Exh. 5 to Stimell Affirm.) This complaint did name Mr. Nagaraja as a respondent, and alleged claims of discrimination based on sex, age, marital status and retaliation. (*Id.*) On August 12, 1999, Ms. Ellithi raised claims of sex and age discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (Charge of Discrimination attached as Exh. 6 to Stimell Affirm at 30.) The alleged claims arose out of events from June, 1997 to August, 1999, and asserted that Mr. Nagaraja had some involvement in the allegedly discriminatory and retaliatory conduct. (*Id.* at 30, 32–33.).

The substance of her 1999 EEOC complaint was reiterated in Ms. Ellithi's subsequent March, 25, 2000 complaint with the EEOC; however, this time she also raised a claim of discrimination on the basis of race and color. (Charge of Discrimination attached as Exh. 7 to Stimell Affirm. at 81.)

Case 2:14-cv-11916-GCS-SDD   ECF No. 76-12, PageID.2500   Filed 03/24/16   Page 13 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

Finally, Ms. Ellithi filed a March, 2000 action with the **New York** State Division of Human Rights, alleging facts similar to those raised in her prior complaints. (Div. of Human Rights Compl. attached as Exh. 8 to Stimell Affirm.)

The lawsuit in this Court centers around actions taken against the plaintiff by the NYCTA during and after the time in which the plaintiff's wife filed her complaints with the EEO and the EEOC, and the **New York** State Division of Human Rights. On October 25, 1999 the defendants declined the EEOC's offer to mediate Ms. Ellithi's complaint. (Pl.'s Rule 56.1 Stmt. ¶ 5.) There is some factual dispute as to whether Mr. Nagaraja was aware in 1999 of the offer to mediate. (Aff. of Mysore Nagaraja dated January 31, 2002 ¶ 6; Aff. of John **Reiter** dated February 23, 2002 ¶ 19.) On October 26, 1999, the plaintiff received a verbal performance review from Mr. Nagaraja, stating that his work performance was not adequate. (Pl.'s Rule 56.1 Stmt. ¶ 5.) During this conversation Mr. Nagaraja indicated that he would conduct meetings with the plaintiff to discuss CPM's performance, but these meetings did not take place. (Pl.'s Rule 56.1 Stmt. ¶ 33.)

In December 1999, the plaintiff received a memorandum from Mr. Nagaraja that expressed concerns about the plaintiff's work performance. (Defts.' Rule 56.1 Stmt. ¶ 13; Pl.'s Resp. Rule 56.1 Stmt. ¶ 13.) The plaintiff then received his Year 1999 performance review from Mr. Nagaraja on January 31, 2000. This review gave him an overal rating of "marginal." (Defts.' Rule 56.1 Stmt. ¶ 15; Pl.'s Resp. Rule 56.1 Stmt. ¶ 15.) This was the first marginal review that the plaintiff had received as a NYCTA employee, and prevented him from receiving a pay raise in the year 2000. The NYCTA did give the plaintiff a review of "good" in 2000 and 2001, allowing him to receive a pay increase in 2001 (Defts.' Rule 56.1 Stmt. ¶¶ 16,17; Pl.'s Resp. Rule 56.1 Stmt. ¶¶ 16, 17; Pl.'s Rule 56.1 Stmt. ¶¶ 36, 37.)

  *4 The plaintiff sought review of his 1999 evaluation, and pursued an appeals process that included an appeal to Mr. Nagaraja on February 8, 2000; an attempt to have NYCTA President Lawrence Reuter get involved; and a hearing before an appeals board consisting of various MTA and NYCTA employees, which upheld a decision upholding the marginal review on March 30, 2000 (Defts.' Rule 56.1 Stmt. ¶¶ 18, 25, 30–33; Pl.'s Resp. Rule 56.1 Stmt. ¶¶ 18,25, 30–33; Pl.'s Rule 56.1 Stmt. ¶¶ 42–48.)

The plaintiff also pursued other avenues to appeal his 1999 performance evaluation. On March 25, 2000 he filed a

complaint with the EEOC, alleging that the circumstances surrounding the evaluation constituted retaliation and discrimination on the basis of race and color. (Charge of Discrimination dated March 25, 2000 attached as Exh. 12 to Stimell Affirm.) The retaliation claim was based, in part, on an allegation that the plaintiff received his negative performance evaluations because his wife raised discrimination claims with the NYCTA.

On June 1, 2000, the plaintiff was reassigned to the position of Deputy Vice President of Technical Services, another placement within the CPM where he retained his salary and benefits, but reported to a new supervisor, Jack Carter. (Defts.' Rule 56.1 Stmt. ¶¶ 37–39; Pl.'s Resp. Rule 56.1 Stmt. ¶¶ 37–39; Pl.'s Rule 56.1 Stmt. ¶¶ 52,54.) In a subsequent June 19, 2000 EEOC Complaint the plaintiff alleged that on or about June 1, 2000 the NYCTA retaliated against the plaintiff by re-assigning him to the new position because he had filed his March 25, 2000 EEOC Complaint. (*See* Charge of Discrimination dated June 19, 2000 attached as Exh. 12 to Stimell Affirm.)

Prior to filing an action in this Court, the plaintiff initiated an Article 78 proceeding, in the **New York** State Supreme Court, to review and reverse the determination of the appeals board that his 1999 evaluation should remain in place, and sought to be reinstated to his previous position. (Notice of Pet. in Article 78 Proceeding dated June 15, 2000 attached as Exh. 9 to Stimell Affirm.) On May 2, 2002, the **New York** State Supreme Court denied the plaintiff's petition finding that the decision was not arbitrary and capricious and had a rational basis.

IV.

**[1]**   The plaintiff moves for summary judgment dismissing all claims against the MTA on the grounds that the MTA was never the plaintiff's employer and therefore the MTA is not liable for any of the claims in this case.

Most of the plaintiff's allegations in this case arise under Title VII. Title VII, in relevant part, prohibits employment discrimination by an "employer." *See* 42 U.S.C. § 2000e–2(a). The Court of Appeals has found the term employer to be "sufficiently broad [so as] to encompass any party who significantly affects access of any individual to employment opportunities." *Spirt v. Teachers Insurance & Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir.1982), *vacated on other grounds,*

Case 2:14-cv-11916-GCS-SDD ECF No. 76-12, PageID.2501 Filed 03/24/16 Page 14 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

463 U.S. 1223 (1983). The test for whether a particular entity is an employer is whether it "exercise[s] a direct and significant degree of control over the complaining party's direct employer or the complaining party's work environment." *Goyette v. DCA Advertising, Inc.,* 830 F.Supp. 737, 744 (S.D.N.Y.1993) (quotations omitted).

**\*5** Here, no reasonable juror could find that the MTA is the plaintiff's employer as defined by Title VII. There is no allegation that the plaintiff was ever actually employed by the MTA or that the MTA took any part in the alleged acts of discrimination and retaliation. The plaintiff, as well as his supervisor, were at all times employees of the NYCTA. It is true that entities may be so "intertwined that they are a joint employer for purposes of Title VII." *Ross v. Mitsui Fudosan, Inc.,* 2 F.Supp.2d 522, 529 (quotations omitted) (collecting cases). However, there is no evidence of such intertwining for the purposes of the employment decisions in this case. The NYCTA and MTA are two distinct legal entities, and the MTA was not responsible for any of the personnel decisions in this case. (Aff. of Kevin Hyland sworn to January 25, 2002 at ¶¶ 2–7.) The plaintiff has produced no contrary evidence. The MTA does not determine the pay scale of the plaintiff, nor did it hire or reassign the plaintiff. The employment relationship between the two entities is insufficiently interrelated to permit the plaintiff's claims against the MTA to proceed. *See Kern v. City of Rochester,* 93 F.3d 38, 45 (2d Cir.1996) (dismissing Title VII claims against City where it lacked **authority** to hire or fire employee or determine her rate of pay).[2]

Moreover, collateral estoppel prohibits the plaintiff from re-litigating the nature of the relationship between the NYCTA and the MTA. Collateral estoppel, under New York law, bars a party from re-litigating an issue already decided, if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 200 (2d Cir.1996). Whether the MTA is the plaintiff's employer was an issue already actually litigated in the plaintiff's Article 78 proceeding. In that proceeding, the MTA was dismissed as a party to the plaintiff's action, based on a finding that the MTA and NYCTA are separate entities, and that the plaintiff was not employed by the MTA and that the MTA did not take part in or have an interest in the review of the plaintiff's marginal evaluation. (*See* Decision and Order of Judge Madden dated December 8, 2000 attached as Exh. 10 to Stimell Affirm. at 10–11.) The plaintiff argues that

the procedures in an Article 78 proceeding are sufficiently different from this action so that he could not be considered to have had a full and fair opportunity to litigate his employment status. These conclusory allegations are insufficient, given that it is well established that an Article 78 proceeding can in fact provide a full and fair opportunity to litigate issues and such decisions are entitled to collateral estoppel effect. *See Moccio,* 95 F.3d at 202.

The fact that there is no evidence that the plaintiff was employed by the MTA, and the fact that the prior determination of the state court to that effect is entitled to collateral estoppel bars the plaintiff's claims under Title VII against the MTA. Similarly, because the plaintiff has suggested no basis for liability against the MTA under any of the other federal or state statutes on which he relies, all of the plaintiff's claims against the MTA are dismissed.

V.

**\*6** The defendant also moves for summary judgment on the plaintiff's Title VII claims for retaliation. The plaintiff raises three retaliation claims. He claims that (1) because his wife filed an EEOC complaint in August, 1999 he received a "marginal" performance review in January, 2000; (2) in February, 2000 after complaining to his staff members about alleged retaliation, he received a verbal reprimand from the Vice–President of Human Resources Kevin Hyland; and (3) he was demoted in June, 2000 after filing a March 25, 2000 complaint with the EEOC alleging discrimination.[3]

Title VII makes it "an unlawful practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

Claims of retaliation are analyzed according to the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Cosgrove v. Sears, Robuck & Co.,* 9 F.3d 1033, 1038–39 (2d Cir.1993). The plaintiff must first establish a prima facie case of retaliation. To establish a prima facie case of retaliation, the plaintiff must show that he was (1) engaged in protected activity; that (2) the defendant was aware of this activity; (3) the defendant took adverse action against the plaintiff; and (4) that a causal connection exists between the

Case 2:14-cv-11916-GCS-SDD   ECF No. 76-12, PageID.2502   Filed 03/24/16   Page 15 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

protected activity and the adverse action, i.e. that a retaliatory motive played a part in the adverse employment action. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 54 (2d Cir.2002); *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 113 (2d. Cir.2000).

If the plaintiff meets his initial burden, the burden shifts to the defendant to provide a legitimate nonretaliatory reason for its decisions. *See Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 443 (2d Cir.1999); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768–69 (2d Cir.1998). If the defendant meets this burden, then the *McDonnell Douglas* framework disappears and the sole remaining issue is whether the plaintiff has produced sufficient evidence that discriminatory or retaliatory animus was a motivating factor in the challenged decisions. *Reg'l Econ.,* 294 F.3d at 49, 54. In determining whether the plaintiff has met this burden, the Court is to use a "case by case" approach that evaluates "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *James v. New York Racing Assoc.,* 233 F.3d 149, 156 (2d Cir.2000) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *accord Schnabel v. Abramson,* 232 F.3d 83, 90–91 (2d Cir.2000); *Cooney v. Consolidated Edison,* No. 00 Civ. 4965, 2002 WL 31059310, at *5 (S.D.N.Y. Sept.16, 2002); *Dooner v. Keefe, Bruyette & Woods, Inc.,* 157 F.Supp.2d 265, 282–83 (S.D.N.Y.2001); *Alleyne v. Four Seasons Hotel,* No. 99 Civ. 3432, 2001 WL 135770, at *10 (S.D.N.Y. Feb.15, 2001), *aff'd,* 25 Fed. Appx. 74 (2d Cir.2002). "The task ... is to examine the entire record and ... make the case-specific assessment as to whether a finding of discrimination [or retaliation] may reasonably be made." *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 382 (2d Cir.2001).

A.

**\*7  [2]**  With respect to the first claim of retaliation, the plaintiff argues that he was retaliated against because of the "protected activity" that his wife engaged in when she filed her complaint with the EEOC in August, 1999.[4] The defendants contend that there can be no retaliation claim under Title VII when the complainant did not engage in the protected activity. The statute provides that it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made unlawful employment practice by this subchapter, or because he has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

Several courts of appeals have held that merely being related to, or being associated with, another person who engages in protected activity is insufficient to allow the claimant to allege retaliation because of the protected activity of the other person. *See, e.g., Fogleman v. Mercy Hosp.,* 283 F.3d 561, 569–70 (3d Cir.2002) (applying plain language analysis for retaliation claims under Age Discrimination in Employment Act ("ADEA") and Americans with Disabilities Act ("ADA"); *Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 819 (8th Cir.1998) (Title VII); *Holt v. JTM Indus.,* 89 F.3d 1224, 1226 n. 1, 1227 (5th Cir.1996) (ADEA). These courts reason that the plain language of Title VII prohibits discrimination only against those who have themselves engaged in protected activity. *See Fogleman,* 283 F.3d at 570; *Smith,* 151 F.3d at 819; *Holt,* 89 F.3d at 1226–1227. Other courts of appeals have permitted retaliation claims by persons closely associated with those who have engaged in protected activities. *See, e.g., Equal Employment Opportunity Comm'n v. Ohio Edison Co.,* 7 F.3d 541, 543–44 (6th Cir.1993); *Wu v. Thomas,* 863 F.2d 1543, 1547–48 (11th Cir.1989). The Second Circuit Court of Appeals has not yet addressed this question. *Gonzalez v. New York State Dept. of Correctional Services Fishkill Correctional Facility,* 122 F.Supp.2d 335, 346 (N.D.N.Y.2000). However, other district courts in this Circuit have held that a plaintiff can state a claim under Title VII where the plaintiff alleges that the plaintiff was retaliated against because of the protected activities of another closely related person. *Id.; Murphy v. Cadillac Rubber & Plastics, Inc.,* 946 F.Supp. 1108, 1118 (W.D.N.Y.1996). This approach has also been followed by district courts in other circuits and the EEOC. *See Equal Employment Opportunity Comm'n v. Nalbandian Sales, Inc.,* 36 F.Supp.2d 1206, 1212 (E.D.Cal.1998); *Thurman v. Robertshaw Control Co.,* 869 F.Supp. 934, 941 (N.D.Ga.1994); *De Medina v. Reinhardt,* 444 F.Supp. 573, 580 (D.D.C.1978), *aff'd in part and remanded in part,* 686 F.2d 997 (D.C.Cir.1982); *see also Bates v. Widnall,* Agency No. 0D1C960001, 1997 WL 332902, at *1 (E.E.O.C. June 10, 1997) (noting that "it is well settled that third party reprisals are cognizable under EEO law").

**\*8**  It is unnecessary in this case to resolve this dispute as to the scope of Title VII's protections against retaliation, because it is clear that even if the plaintiff is able to allege that the plaintiff cannot be retaliated against because of the protected

activity of his wife, no reasonable juror could find that he was retaliated against because of the activity of Ms. Ellithi.

In addition to alleging protected activity, the plaintiff must show that he suffered some materially adverse employment action. Such an action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices ... unique to a particular situation." *Galabya v. New York City Board of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (internal citation omitted). On January 31, 2000 the plaintiff received a written performance review of "marginal" which was the first such negative review he had received during his employment at the NYCTA.[5] A trier of fact could reasonably determine that this "marginal" review was an adverse employment action, because it deprived the plaintiff of a salary increase for the year 2000.

The final element of a prima-facie case requires that the plaintiff show that there is some causal connection between the protected activity and the adverse employment action. *Gordon,* 232 F.3d at 113. Thus, the plaintiff must show that there was some causal connection between his "marginal" performance evaluation and the protected activity in this case, the August 1999 complaint of discrimination filed by the plaintiff's wife. The plaintiff cannot make this showing.

There is insufficient evidence from which a reasonable jury could conclude that the plaintiff's "marginal" evaluation was related to his wife's EEO and EEOC complaints. There is no direct evidence in the record that indicates Mr. Nagaraja, aware of Ms. Ellithi's complaints, decided to retaliate against her husband by giving him a marginal evaluation in January, 2000. Without direct evidence, the plaintiff can prove causation indirectly "by showing that the protected activity was closely followed in time by the adverse action." *Monaharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988).

The plaintiff seeks to narrow the time-frame in which his retaliation claim is analyzed, by defining the protected activity only with respect to his wife's August 12, 1999 EEOC complaint. The defendants, including Mr. Nagaraja, were on notice of this EEOC complaint. (*See* Mem. dated October 21, 1999 attached as Ex. 1 to Declaration of Gregory Smith ("Smith Decl.") dated March 16, 2002.) However, his wife filed two earlier complaints, including a May 1998 EEO complaint and a 1999 EEO Complaint that specifically named

Mr. Nagaraja as a respondent. The plaintiff alleges that there is some factual dispute as to when Mr. Nagaraja became aware of Ms. Ellithi's complaints, and whether the retaliation was a result of the more formal and later in time, August 1999 EEOC filing. However, the evidence demonstrates, without genuine dispute, that Mr. Nagaraja was aware of the earlier complaints filed by Ms. Ellithi. Mr. Nagaraja was interviewed in July, 1998 by EEO Investigations Manager Gwendolyn Harleston about Ms. Ellithi's complaint. (*See* Memo to File from Gwendolyn Harrison dated July 6, 1998 attached as Ex. 2 to letter of Steven Stimell ("Stimell Letter") dated September 5, 2002.) Mr. Nagaraja made clear several times during the course of his deposition testimony that he was aware in 1998 of Ms. Ellithi's May EEO complaint. (*See* Letter of Gregory Smith dated September 5, 2002 at 2 (excerpting deposition testimony).) He was also aware of Ms. Ellithi's later complaints and the allegations she had made against him. (*Id.* at 2–3.) Finally, the plaintiff conceded at oral argument that Mr. Nagaraja, as head of CPM, would invariably become aware of discrimination complaints filed by employees within the department. (Tr. 30–31.)

*\*9* Normally, the date on which the employer becomes aware of the commencement of the protected activity is the appropriate starting point for causation analysis. *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). The defendants, including Mr. Nagaraja, were aware of plaintiff's wife's May 1998 EEO complaint soon after it was filed, and became aware of the subsequent 1999 complaints. The alleged act of retaliation, the marginal performance evaluation, took place in January 31, 2000. The passage of over a year and a half between the commencement of the protected activity and retaliation is too great a period of time from which a reasonable jury could determine that the two events were causally connected. *See id.* (requiring that temporal proximity be "very close"); *Ponticelli v. Zurich Am. Ins. Co.,* 16 F.Supp.2d 414, 436 (S.D.N.Y.1998) (dismissing retaliation claim and holding that causation did not exist when only two and one-half months had elapsed between protected activity and retaliation); *Cooper v. Morgenthau,* No. 99 Civ. 11946, 2001 WL 868003, at \*8 (S.D.N.Y. July 31, 2001) (collecting cases). Consequently, the plaintiff has failed to satisfy the elements of a prima-facie case, and the defendant's motion for summary judgment on this retaliation claim is granted.[6]

B.

Case 2:14-cv-11916-GCS-SDD    ECF No. 76-12, PageID.2504    Filed 03/24/16    Page 17 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

**[3]**    The plaintiff's second retaliation claim asserts that he also complained informally to his staff about alleged retaliatory conduct by Mr. Nagaraja and was reprimanded. This claim fails because the plaintiff suffered no adverse employment action as a result of his informal complaint.

Beyond a verbal admonishment from Kevin Hyland, the Vice–President of Human Resources, the plaintiff asserts no other allegedly adverse action that he suffered from his February, 2000 discussion. During this conversation, the plaintiff was informed that it was not proper, under NYCTA policy, to raise complaints to subordinates regarding alleged retaliation taken by Mr. Nagaraja. The plaintiff was also informed of the appropriate NYCTA appeals and review processes for such a claim, and that there were procedures available for dealing with allegations of retaliation. (See Dep. of Kevin Hyland attached as Ex. 36 to Decl. of Gregory Smith dated Feb. 24, 2002 at 44–45.) This type of verbal admonishment for talking to subordinates that does not affect in any way the plaintiff's position, salary or working conditions could not be considered an adverse employment action. There is no evidence that the plaintiff suffered any adverse action that affected the conditions of his employment. The plaintiff thus fails to satisfy the adverse action element for his second retaliation claim. *See Galabya,* 202 F.3d at 640. This claim is therefore dismissed.

## C.

**[4]**    The final retaliation claim alleges that the plaintiff's transfer in June, 2000 was a demotion that resulted from his filing of his March, 2000 EEOC complaint. This allegation adequately states a prima facie case of retaliation, and the defendants have failed to show that no reasonable juror could find that the plaintiff had proven his claim of retaliation.

**\*10**    The plaintiff engaged in protected activity contemplated by the statute, because he filed a March 2000 Complaint with the EEOC alleging discrimination. The Complaint lists discrimination based on race, color and retaliation, but the description of the charge alleges that the NYCTA retaliated against the plaintiff because of the EEOC Complaint filed by the plaintiff's wife. The defendants argue that because this EEOC filing alleges retaliation for protected activity of another person, the plaintiff's EEOC complaint itself does not constitute a protected activity. However, whether or not the underlying acts complained of by the plaintiff were actionable, to establish that an activity was protected, a party

need only prove that he was acting under a good faith, reasonable belief that the activity was of a kind covered by the statute. *Cosgrove,* 9 F.3d at 1039; *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998); *Reed v. A.W. Lawrence & Co., Inc. .,* 95 F.3d 1170, 1178 (2d. Cir.1996); *cf. Fogelman,* 283 F.3d at 565 (holding that ADA and ADEA retaliation claims were actionable, because the employer retaliated against the employee because it thought he was engaged in protected activity even if he was not.) The plaintiff's filing of the EEOC complaint was plainly within the definition of protected activity under Title VII. Nothing indicates that the plaintiff lacked good faith in believing that complaining to the EEOC about discrimination suffered by his spouse was not activity covered by Title VII. Further, given the substantial **authority** supporting the plaintiff's claim, it could not be found that his complaint was unreasonable. Moreover, the plaintiff's EEOC complaint was not simply an attempt to bootstrap and transform his wife's complaint into his own; rather, the plaintiff's complaint was based on his own legitimate belief that he was suffering negative employment consequences for actions taken by his wife.

The plaintiff claims that his transfer on June 1, 2000 was a retaliatory demotion. The defendants counter that there was no adverse employment action, because the plaintiff continued to receive the same salary and benefits, and retained the title of Deputy Vice–President. The plaintiff has offered sufficient evidence of adverse employment actions to satisfy this element of a prima facie case. The plaintiff, although still a Deputy Vice–President, is now lower in the NYCTA heirarchy. (Pl.'s Rule 56.1 Stmt. ¶ 54.) The NYCTA's classification system, which gives more "hay points" to positions within the NYCTA that require greater skill and contain more managerial and supervisory responsibility, assigns zero points to the plaintiff's current position, whereas his previous position contained a significant number of such points. (*Id.* at ¶ 56; Defts.' Resp. Rule 56.1 Stmt. ¶ 56.) Additionally, the plaintiff no longer has a confidential secretary or other fringe benefits associated with his earlier position. (Pl.'s Rule 56.1 Stmt. ¶ 59.) There is also a sufficient factual dispute as whether the plaintiff's managerial responsibilities, reporting requirements and overall job requirements decreased significantly after his reassignment, such that summary judgment should not be granted. (Pl.'s Rule 56.1 Stmt. ¶¶ 55,57; Defts.' Rule 56.1 Stmt. ¶¶ 41, 42.) These changes in ancillary job-related benefits and job responsibilities, when viewed as a whole rather than individually, may rise to the level of materially adverse

Case 2:14-cv-11916-GCS-SDD ECF No. 76-12, PageID.2505 Filed 03/24/16 Page 18 of 21

Reiter v. Metropolitan Transportation Authority of the State..., Not Reported in...

actions. *See De La Cruz v. New York City Human Rs. Admin. Dep't of Social Serv.,* 82 F.3d 16, 21 (2d Cir.1996); *Fowler v. New York Transit Auth.,* No. 96 Civ. 6796, 2001 WL 83228, at *7 (S.D.N.Y. Jan.31, 2001) (collecting cases).

*11 There is also a genuine issue of material fact as to whether there was a causal connection between the plaintiff's filing of the March EEOC complaint and his June, 2000 transfer. The temporal proximity is sufficiently narrow, and the defendants offer no argument on causation.

The defendants offer three reasons for the plaintiff's reassignment, including a deteriorating working relationship with Mr. Nagaraja, poor work performance under Mr. Nagaraja, and the plaintiff's good working relationship with the supervisor in the new position. However, a reasonable jury could find that these reasons are simply euphemisms for Mr. Nagaraja's more critical reviews of the plaintiff after the plaintiff filed his EEOC complaint and because of that complaint. Given the plaintiff's past performance, his distinguished career, and the timing of the reassignment, there are general issues of material fact as to whether the proffered reasons were true and, even if true, whether retaliation was nevertheless a motivating factor in causing the reassignment. Summary judgment on this claim is therefore denied.

D.

The plaintiff has also moved for summary judgment on his retaliation claims. However, this motion merely recounts facts already presented in the plaintiff's response to the defendants' summary judgment motion. These responses provide no basis to decide as a matter of law that the plaintiff is entitled to judgment, and are sufficient only to deny the defendants' motion on the last retaliation claim. The plaintiff has simply demonstrated that there are material issues of fact with respect to whether his reassignment was an adverse employment action and whether retaliation for the plaintiff's filing of his EEOC complaint was a motivating factor for the reassignment. The facts are not so clear that it can be determined as a matter of law that the defendants retaliated against the plaintiff. Consequently, the plaintiff's motion is denied.

V.

[5] The plaintiff raises a claim under Title VII and **New York** State Human Rights Law, N.Y. Exec. Law § 296, that a motivating factor in the adverse employment decisions against him was his marital status. [7] The plaintiff also raises a claim under Title VII alleging disparate treatment on the basis of race, color and gender. Additionally, he raises a claim on the basis of 42 U.S.C. § 1981, alleging discrimination on the basis of race. The basis for all these claims is the basic allegation is that the plaintiff was discriminated against because he is a Caucasian male who is married to an African–American female. These claims effectively allege discrimination on the basis of race, and will be analyzed as such, because they allege that the plaintiff was subject to retaliation because of race, and on the basis of his relationship with a member of a particular racial group. [8] As noted below, the legal and factual analysis for all of these claims is identical, and because the plaintiff has failed to allege a prima facie case of employment discrimination, summary judgment is appropriate for the defendants on all of these claims.

*12 The plaintiff's claims, for race discrimination under Title VII and the **New York** Human Rights Law, and for discrimination in violation of § 1981, are all employment discrimination claims, and are governed by the standard established in *McDonnell Douglas Corp. v. Green. Torres v. Pisano,* 116 F.3d 625, 619 n. 1 (2d Cir.1997) (claims arising under the **New York** Human Rights law analytically inseparable from Title VII claims); *Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 245 n. 4 (S.D.N.Y.2001) (claims under Title VII, § 1981, and the **New York** Human Rights Law analyzed under the McDonnell Douglas burden shifting framework). Under the *McDonnell Douglas* test, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff meets this initial burden, the burden of production shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse employment action. *Reeves,* 530 U.S. at 143. If the defendant meets this burden, then the sole remaining issue is whether the plaintiff has produced sufficient evidence that discriminatory animus was a motivating factor in the challenged decision. *Reg'l Econ.,* 294 F.3d at 49, 54. In determining whether the plaintiff has met this burden, the Court is to use a "case by case" approach that evaluates "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *James,* 233 F.3d at 156; *Cooney,* 2002 WL 31059310, at *5 (collecting cases).

The elements for a prima-facie case of employment discrimination under Title VII, § 1981 and New York Human Rights law are identical. *Ani v. IMI Sys.,* No. 98 Civ. 8430, 2002 WL 1888873, at *19–20 (S.D.N.Y. Aug.15, 2002). To state a prima facie case of employment discrimination, the plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) that this adverse employment decision occurred under circumstances giving rise to an inference of discrimination based on membership in the protected group. *Collins v. New York City Transity Auth.,* No. 00–9522, 2002 WL 31097564, at *4 (2d Cir. Sept.20, 2002); *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir.2001).

The plaintiff's burden of establishing a prima-facie case in the context of employment discrimination is minimal. *Id.* at 53. In this instance, however, the plaintiff does not even meet this minimal requirement, because it cannot be said that any adverse employment decisions occurred under circumstances that give rise to an inference of discrimination. The plaintiff has merely reincorporated the evidence from his retaliation claim to allege disparate treatment and racial discrimination, without providing any substantive basis from which discrimination could be found to exist. There is no direct evidence of racial discrimination or discrimination based on race or gender. The plaintiff puts forth no factual allegation or evidence to show that Mr. Nagaraja or any other decisionmaker at the NYCTA acted out of racial animus towards Caucasians or towards Caucasians who are married to African–Americans. There is no evidence of derogatory comments or conduct by the NYCTA that was racially hostile. Nor could it reasonably be found that the alleged adverse actions occurred under circumstances giving rise to an inference of discrimination. Moreover, it could not be found that race or gender was a motivating factor in any adverse action. The fact that the plaintiff was married to Ms. Ellithi was well-known for many years, a period during which the plaintiff continued to remain a very high ranking official in the NYCTA. The relevant decision-makers were aware of the plaintiff's race, his wife's race, and his marital status, yet they continued to favor him with career advancements. (Tr. 18–19.) There is simply no basis from which a reasonable juror could conclude that any negative employment consequences were motivated by racial animus. This is unlike the plaintiff's final retaliation claim, where the retaliation, the plaintiff's reassignment, took place close in time to his filing of the EEOC complaint.

**\*13** Given this lack of any evidence from which an inference of racial discrimination or disparate treatment may be inferred, the allegations of racial animus made by plaintiff are mere "naked assertion[s]" and fail to establish a prima-facie case of employment discrimination. *See Yusuf v. Vassar College,* 35 F.3d 709, 714 (2d Cir.1993); *McGuinness,* 263 F.3d at 55–56. Consequently, summary judgment is granted for the defendants on the plaintiff's § 1981, New York Human Rights Law, and Title VII claims.

## VIII.

Finally, the plaintiff raises a claim alleging that the appeals process that he used to review his Year 1999 performance evaluation violated his due process rights. The plaintiff claims that the NYCTA failed to follow its own internal procedures when he proceeded through the appeals process.

**[6]** Any claim regarding the validity of the appeals process is barred by collateral estoppel. In the prior Article 78 proceeding, the plaintiff raised this very same due process argument, and the New York State Supreme Court found that the decision of the appeals board not to reverse the "marginal" review was not arbitrary or capricious. *See Reiter v. MTA, New York City Transit,* No. 113409/00, at *4–5 (N.Y.Sup.Ct. May 2, 2002) (unpublished disposition). Given the plaintiff's full and fair opportunity to litigate this very issue in a prior proceeding, the plaintiff is barred from re-litigating his due process claim in this court. *See Moccio,* 95 F.3d at 200.

**[7]** Moreover, this claim is also barred by the Rooker–Feldman doctrine. Under the Rooker–Feldman doctrine, a federal district court has no jurisdiction over a case that seeks to reverse or modify a state court decision, or a case in which the federal claims presented are "inextricably intertwined" with the merits of the state court's judgment. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Phifer v. City of New York,* 289 F.3d 49, 55–56 (2d Cir.2002); *Hachamovitch v. DuBuono,* 159 F.3d 687, 693 (2d Cir.1998); *Moccio,* 95 F.3d at 198; *Mitchell v. Fishbein,* No. 01 Civ. 2760, 2002 WL 1888793, at *5 (S.D.N.Y. Aug.12, 2002). Such federal review may only be obtained in the Supreme Court. *Feldman,* 460 U.S. at 476; *Rooker,* 263 U.S. at 416; *Phifer,* 289 F.3d at 55; *Hachamovitch,* 159 F.3d at 693; *Moccio,* 95 F.3d at 198.

In this case, the plaintiff's claim for injunctive relief based upon a due process violation would require this Court to modify or reverse the decision of the New York State Supreme Court that the NYCTA agency appeals process was not arbitrary or capricious. Similarly, for the plaintiff to succeed on his claim for damages this Court would have to decide that the state court erred in rejecting the plaintiff's Article 78 petition. This Court cannot do. The plaintiff can only appeal the decision of the New York State Supreme Court by proceeding through the New York State appeals process, and then seeking a writ of certiorari from the United States Supreme Court, not by filing a claim in federal district court. Indeed the plaintiff advised the Court at oral argument that he has filed an appeal to the Appellate Division from the dismissal of his Article 78 petition. (Tr. at 65.) This Court lacks jurisdiction to entertain the plaintiff's due process claim, and it is dismissed. *See Moccio,* 95 F.3d 200–02 (district court had no jurisdiction over a claim that a termination decision violated due process where an Article 78 proceeding determined that the termination was not arbitrary or capricious).[9]

### IX.

**\*14** After the time for submissions had elapsed, the plaintiff moved to strike portions of the defendants' papers in support of the motion for summary judgment. Because this motion was filed after the time for such motions had passed, the plaintiff's motion is denied as untimely. In any event, the defendants' papers in support of the motion for summary judgment were not improper.

The defendants, in response to the plaintiff's motion to strike, filed a motion under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 for legal fees and costs. However, in the absence of any evidence of bad faith or evidence that the papers in support of the motion were entirely baseless, this motion is denied. *See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO,* 948 F.3d 1338, 1344 (2d Cir.1991) (noting that Rule 11 sanctions are appropriate only when no competent attorney could form a reasonable belief that a particular pleading is well grounded in fact and warranted by existing law or a good faith argument for its extension and that § 1927 sanctions are only appropriate where bad faith is shown).

### CONCLUSION

The remaining arguments of the parties are either moot or without merit. For the reasons stated, the plaintiff's motion for summary judgment is denied. The defendants' motion for summary judgment is granted, except with respect to the plaintiff's third retaliation claim. The plaintiff's motion to strike is denied. The defendants' motion for fees and costs is also denied.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 31190167

---

Footnotes

1      There is some dispute as to whether Ms. Ellithi is African–American. The plaintiff contends that she is, due to her place of birth, while the defendant asserts that she has repeatedly listed herself as a member of other racial groups. Because the race of the plaintiff's wife is not essential to the disposition of the motions, it is unnecessary to resolve this factual dispute.

2      The plaintiff's reliance on *Greene v. Long Island R.R. Co.,* 280 F.3d 224 (2d Cir.2002) is misplaced. That case dealt with the question of whether the MTA is a "common carrier" as defined by the Federal Employers' Liability Act (FELA) based on its integral role in the operation of the Long Island Railroad Company and has no bearing on the relationship of the MTA and its subsidiary entities in the context of Title VII.

3      The plaintiff clarified the three claims at oral argument and made it clear that he was not asserting other possible claims of retaliation such as any alleged retaliation against the plaintiff for his wife's May 1998 or February 1999 internal complaints to the NYCTA. (Tr. at 12–14.)

4      The plaintiff claims that he assisted his wife in filing her EEO and EEOC complaints. The plaintiff conceded, at oral argument, however, that there is no evidence that the defendants knew of any assistance that he gave to his wife. (Tr. at 50–51.) Therefore, there can be no retaliation claim based on the plaintiff's participation of his wife's claims because the employer could not have retaliated for actions of which they were unaware. *See Gordon,* 232 F.3d at 113 (2d Cir.2000); *Quinn,* 159 F.3d at 789.

5    The plaintiff in his motion papers suggested that on October 26, 1999, when Mr. Nagaraja gave the plaintiff a negative verbal evaluation, the plaintiff suffered an adverse employment action. At oral argument, however, the plaintiff conceded that as a matter of law, this incident in and of itself could not constitute an adverse action, since there was no loss of benefits, position, or pay. (Tr. at 47–48.)

6    The plaintiff argues that the alleged act of retaliation took place much earlier than January, 2000 because he received clear indications in October, 1999, one day after the NYCTA declined an offer to mediate his wife's EEOC complaint, that he would be receiving a negative performance review for the year 1999. He suggests that while he may not have suffered actual injury until January, 2000, the retaliation was contemplated, and placed into motion several months earlier. However, even if October is used as the relevant date of retaliation, the passage of time from his wife's first EEO complaint is still well over a year, and the time from the February, 1999 EEO complaint naming Mr. Nagaraja was eight months, and the plaintiff still has failed to provide evidence from which a reasonable juror could find causation.

7    The defendants have pointed out that under **New York** law a party may only maintain a marital status discrimination claim if he alleges that he is being discriminated against because he is a married person, not because he is married to a particular person. This is correct. *See Manhattan Pizza Hut, Inc. v.* **New York** *State Human Rights Appeal Bd.,* 51 N.Y.2d 506, 512, 434 N.Y.S.2d 961, 415 N.E.2d 950 (N.Y.1980) ("[T]he statute in effect says that employers may no longer decide whether to hire, fire, or promote someone because he or she is single, married, divorced, separated or the like. Had the Legislature desire to enlarge the scope of its proscription to prohibit discrimination based on an individual's marital relationships rather than simply on an individual's marital status surely it would have said so."). However, the gist of the plaintiff's claim is that he was retaliated against because he is a Caucasian who is related to an African–American, not because he is a married person. This is not discrimination based on marital status, as the **New York** Court of Appeals has defined it, but rather discrimination based on race.

8    The defendants do not dispute that an individual may bring a race discrimination claim alleging that he was discriminated against due to his relationship to a person of a particular race. And the law makes clear that the plaintiff may properly bring such a claim under Title VII, § 1981, and the **New York** Human Rights Law. *Lieberman v. Fine, Olin & Anderson, P.C.,* No. 00 Civ. 6533, 2002 WL 142198, at * 3 n. 1 (S.D.N.Y. Jan.31, 2002) (collecting cases under 42 U.S.C. § 1981); *Rosenblatt v. Bivona & Cohen, P.C.,* 946 F.Supp. 298, 300 (S.D.N.Y.1996).

9    The plaintiff also alleged a claim under 42 U.S.C. § 1983, alleging that the NYCTA, acting under color of state law deprived him of his rights under federal law. At argument, the plaintiff claimed that his claim under § 1983 was premised on the alleged violation of § 1981. As discussed above, there was no such violation. Even if the plaintiff contended that the alleged violation of his right to due process was the basis for the alleged violation of § 1983, there also was no such violation. It is therefore unnecessary to reach the defendants' additional argument that Mr. Nagaraja, who took the action against the plaintiff, did not possess sufficient **authority** to establish municipal policy with respect to the challenged actions. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1998).

---

**End of Document**                                        © 2016 Thomson Reuters. No claim to original U.S. Government Works