## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**NATALIE REESER**,

                        Plaintiff,

v

**HENRY FORD HEALTH SYSTEM
d/b/a HENRY FORD HOSPITAL**,

                  Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Stephanie Dawkins Davis

| MILLER COHEN, P.L.C. | VARNUM LLP |
|---|---|
| Keith D. Flynn (P74192) | Terrence J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 160 W. Fort, 5th Floor |
| Detroit, MI  48226-0840 | Detroit, MI  48226 |
| (313) 964-4454 | (313) 481-7300 |

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION IN LIMINE

NOW COMES Defendant Henry Ford Health System, by and through its attorneys Varnum LLP, and for its Response in Opposition to Plaintiff's Motion in Limine, states as follows:

1.    Admitted that Plaintiff brings claims under the Fair Labor Standards Act and the Michigan Whistleblowers' Protection Act.  The remaining allegations are denied as untrue.

2.      Neither admitted or denied.  Defendant Henry Ford Health System has made clear in multiple pleadings the reasons why Plaintiff was terminated, and relies on the facts and evidence contained therein.

3.      Admitted that Plaintiff seeks to exclude the evidence listed in Paragraph 3.  Denied that such evidence should be excluded.

4.      Denied as untrue.

5.      Admitted.

6.      Admitted.

**WHEREFORE**, for the reasons set forth herein as well as for the reasons in the attached Brief in Support, Defendant Henry Ford Health System respectfully requests that this Court deny Plaintiff's Motion in Limine in its entirety.

Respectfully submitted,

VARNUM LLP

By:      */s/ Terrence J. Miglio*
          Terrence J. Miglio (P30541)
          Barbara E. Buchanan (P55084)
          Attorneys for Defendant
          160 West Fort Street, Fifth Floor
          Detroit, MI 48226
Dated: March 24, 2016          313-481-7335

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**NATALIE REESER**,

          Plaintiff,

v

**HENRY FORD HEALTH SYSTEM
d/b/a HENRY FORD HOSPITAL**,

       Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Stephanie Dawkins Davis

| MILLER COHEN, P.L.C. | VARNUM LLP |
|---|---|
| Keith D. Flynn (P74192) | Terrence J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 160 W. Fort, 5th Floor |
| Detroit, MI  48226-0840 | Detroit, MI  48226 |
| (313) 964-4454 | (313) 481-7300 |

## BRIEF IN SUPPORT OF DEFENDANT'S RESPONSE
## IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE

## **TABLE OF CONTENTS**

**INDEX OF AUTHORITIES** ................................................................................ iii

**INTRODUCTION** ............................................................................................1

**ARGUMENT** ..................................................................................................2

  **I.**  **Information Regarding Plaintiff's Sexual Assault In 2000 Is Highly Relevant To Plaintiff's Claim For Emotional Distress Damages And Her Remarkably Different Reports Of The Assault Go Directly To Her Character For Truthfulness** .......................................2

    **A.**  **Evidence Of Plaintiff's Sexual Assault Is Relevant To Plaintiff's Claims Of Emotional Distress** ................................................................3

    **B.**  **Evidence That Plaintiff Reported Four Wildly Divergent Versions Of The Alleged Sexual Assault, Must Be Allowed To Show Plaintiff's Character For Untruthfulness** ..................................6

  **II.**  **Evidence Regarding Financial Assistance Fiona Bork Provided To Plaintiff Is Relevant And Should Be Considered By The Jury** .................7

    **A.**  **Evidence That Plaintiff Made False Statements And Omissions About Her Prior Employment History In Connection With Her Employment Application With HFHS Is Relevant and Admissible to Support HFHS' After-Acquired Evidence Defense** .......10

    **B.**  **Plaintiff's Employment History is Relevant and Admissible as It Relates to Her Claims for Damages** ........................................11

    **C.**  **Evidence of False Statements Made By Plaintiff To Other Employers is Highly Relevant To Plaintiff's Character for Untruthfulness** ................................................................12

  **IV.**  **Evidence Regarding Plaintiff's Lawsuit Against A Former Employer Is Highly Relevant To The Issue Of Damages And Shows A Motive And A Plan By Plaintiff To Assert Similar Claims** ..........................................................................................13

  **V.**  **Evidence Regarding Plaintiff's Bankruptcy is Highly Relevant and Admissible** ..........................................................................16

**VI. Evidence Regarding Plaintiff's Violation Of  HIPAA And HFHS' HIPAA Policy Is Highly Relevant Since It Also Directly Relates To HFHS' After-Acquired Evidence Defense** ...........................................17

**CONCLUSION**......................................................................................................19

ii

# INDEX OF AUTHORITIES

## Cases

*Arauio v. Treasure Chest Casino*, No. 97-3043, 1999 WL 219771 (E. D. La. April 14, 1999)......................................................................................................16

*Baskerville v. Culligan Int'l Co.,* No. 93C5367, 1994 WL 162800 (N.D. Ill. April 25, 1994)......................................................................................................13

*Boddicker v. Esurance, Inc.*, No. CIV. 09-4027-KES, 2011 WL 873473 (D.S.D. Mar. 8, 2011)........................................................................................................8

*Brewer v. Jones*, No. 05-4442-pr, 2007 WL 926850 (2nd Cir. March 28, 2007) ...14

Delaney v. City of Hampton, 999 F.Supp. 794 (E.D. Va. 1997), aff'd,135 F.3d 769 (4th Cir. 1998)......................................................................................................5

*DeMarco v. West Hills Montessori*, No. 09-0499-cv, 2009 WL 3463778 (2nd Cir. Oct., 29, 2009)...................................................................................................14

Gastineau v. Fleet Mortgage Corp., 137 F.3d 490 (7th Cir. 1998).........................15

Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620 (D.Kan.1999) ...6

*Marcic v. Reinauer Transportation Co.,* 397 F.3d 120 (2d Cir. 2005) ...................15

McCleland v. Montgomery Ward & Co., Inc., No. 95 C 23, 1995 WL 571324 (N.D.Ill. Sept. 25, 1995)........................................................................................5

*McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995) ...................11

*Thurman v. Yellow Freight Sys.*, 90 F.3d 1160 (6th Cir. 1996) .............................11

Van Deelen v. Johnson, No. 05-4039-SAC, 2008 WL 4683022 (D. Kan. Oct. 22, 2008)...................................................................................................................15

*Wilkins v. Ford Motor Co.*, No. 01-CV-931-E (J), 2003 WL 25694928 (N. D. Okla. April 23, 2003)...................................................................................................16

*Womack v. Delaware Highlands AI Services Provider, LLC*, 883 F.Supp.2d 1013 (D. Kan. 2012)...................................................................................................19

*Wright v. Restaurant Concept Mgt., Inc.*, 210 Mich. App. 105 (1995)...................11

*York v. American Tel. & Tel. Co.*, 95 F.3d 948 (10th Cir. 1996) ............................4

*Zhou v. State Univ. of New York Inst. of Tech.*, No. 6:08-cv-0444, 2013 WL 2237842 (N.D.N.Y. May 21, 2013) ......................................................................11

## Rules

Fed. R. Evid. 401 ....................................................................................................6

Fed. R. Evid. 402 ....................................................................................................6

Fed. R. Evid. 404 ............................................................................................ 8, 9, 15

Fed. R. Evid. 608 ................................................................................................7, 15

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.     Whether Defendant should be allowed to introduce evidence regarding the Plaintiff's sexual assault, because it is highly relevant to Plaintiff's claim for emotional distress damages and is evidence of her character for untruthfulness?

II.    Whether Defendant should be allowed to introduce evidence regarding the financial assistance that Fiona Bork provided to Plaintiff in 2014, because it is not character evidence but shows the relationship between Bork and Plaintiff and should be considered by the jury?

III.   Whether Defendant should be allowed to introduce evidence regarding Plaintiff's work history, because (1) falsification of Plaintiff's HFHS employment application is highly relevant to Defendant's after-acquired evidence defense, (2) it is relevant to her claim for economic damages, and (3) it is evidence of Plaintiff's character for untruthfulness?

IV.    Whether Defendant should be allowed to introduce evidence regarding Plaintiff's lawsuit against a former employer, because it is highly relevant to Plaintiff's claim for damages and shows a motive and a plan by Plaintiff to assert similar claims?

V.     Whether Defendant should be allowed to introduce evidence regarding Plaintiff's bankruptcy, because it is highly relevant to refute Plaintiff's claim that Defendant caused her financial hardship and related emotional distress?

VI.    Whether Defendant should be allowed to introduce evidence regarding Plaintiff's admitted HIPAA violation because it is highly relevant to HFHS after-acquired evidence defense?

Defendant Henry Ford Health System answers these questions "Yes."

iv

# INTRODUCTION

On May 16, 2011, Plaintiff Natalie Reeser was hired as a full-time laboratory assistant or "Laboratory Service Representative" in the Laboratory Outreach Services division of Defendant Henry Ford Health System ("HFHS"). (Ex. 1, Offer Letter)  As a Laboratory Service Representative, Plaintiff essentially performed the duties of a phlebotomist.  She drew blood, processed samples and registered patients, among other duties.

After her termination, on May 13, 2014, Plaintiff filed a lawsuit alleging retaliation in violation of the Fair Labor Standards Act ("FLSA") and the Michigan Whistleblower's Protection Act.  (ECF Dkt. #1)  Plaintiff seeks damages in the form of front and back pay, liquidated damages and damages for "extreme mental and emotional distress, lack of health care, depression and anxiety." *See* Joint Final Pretrial Order, Dkt. #66  p. 60.  Plaintiff also seeks punitive damages. (*Id.*)

Plaintiff now seeks to exclude relevant evidence relating to:

a) Plaintiff's sexual assault in 2000, which had and continues to cause her mental and emotional distress for which she blames Defendant;

b) Financial assistance provided to Plaintiff by her supervisor, who she claims treated her unfairly and was out to get her;

c) Plaintiff's prior work history, which she repeatedly lied about and which if known by HFHS would have precluded her being hired and would have resulted in her termination;

d) Plaintiff's lawsuit against a prior employer, where she sought the same damages she seeks in this case;

e) Plaintiff's bankruptcy and poor financial condition prior to her employment with HFHS, but for which she nonetheless blames HFHS; and

f) Plaintiff's admitted and improper removal of patient information in violation of HIPAA and HFHS policy which if known would have resulted in her termination.

For the reasons set forth below, Plaintiff's Motion *In Limine* should be denied in its entirety.

## ARGUMENT

**I.**    **Information Regarding Plaintiff's Sexual Assault In 2000 Is Highly Relevant To Plaintiff's Claim For Emotional Distress Damages And Her Remarkably Different Reports Of The Assault Go Directly To Her Character For Truthfulness**

The fact that Plaintiff was sexually assaulted and, since then, has been taking Paxil – regardless of the dosage – to treat "general anxiety and depression" is highly relevant to refuting Plaintiff's claim of emotional distress damages. (Plaintiff's Motion, ECF Dkt. #71, pp. 4-5)  Defendant seeks to introduce evidence regarding Plaintiff's sexual assault for two reasons:  (1) to show that Plaintiff's previous psychological trauma continues to affect her emotionally and mentally and is thus a pre-existing cause of emotional distress—an alternate reason for any emotional harm Plaintiff seeks to attribute to HFHS in discharging her for job abandonment; and (2) Plaintiff has a propensity for untruthfulness, as demonstrated by the four significantly different versions of the assault she reported.  HFHS is not

2

seeking to introduce every detail of the alleged assault; rather, HFHS should be entitled to show that Plaintiff, whose character for truthfulness is a major issue in this case, gave contradictory reports regarding the assault as well as the number of alleged perpetrators.

### A.   Evidence Of Plaintiff's Sexual Assault Is Relevant To Plaintiff's Claims Of Emotional Distress

Evidence of Plaintiff's sexual assault, and the on-going emotional distress she claims to have suffered as a result, is highly relevant to Plaintiff's claim for non-economic damages. Plaintiff must not be allowed to testify that HFHS caused her emotional harm while HFHS is precluded from introducing evidence of such pre-existing harm and its cause(s). Plaintiff admits that for the past 16 years, she has sought treatment and medication as a result of a sexual assault.[1] (Ex. 2, Plaintiff's Dep., p. 78) The assault is not an "irrelevant fact" as Plaintiff asserts, and in fact could be a contributing cause, if not the cause, of Plaintiff's alleged emotional distress in this lawsuit. Evidence of alternate causes of emotional harm is clearly admissible.

---

[1] Plaintiff testified at deposition and asserted in the Final Pre-Trial Statement that the medication she had been taking since the assault was increased only as a result of her termination.  Plaintiff's medical records demonstrate Plaintiff's testimony is false. Evidence of treatment related to the sexual assault is clearly relevant to the defense of the emotional distress claim, and also goes directly to Plaintiff's character for untruthfulness. (See below at Section I.B.)

In *York v. American Tel. & Tel. Co.*, 95 F.3d 948 (10th Cir. 1996), the plaintiff brought suit against her employer and the union under Title VII, alleging sex-based disparate treatment and disparate impact discrimination, based on her employer's failure to promote her and the union's failure to pursue a grievance arising from her non-selection. Plaintiff moved to exclude evidence relating to her medical treatment, i.e., her hospitalization in a psychiatric facility, bankruptcy proceedings she commenced seven years prior to the alleged discriminatory treatment, and divorce proceedings. The Tenth Circuit upheld the district court's denial of Plaintiff's motion, holding:

> York sought damages for emotional distress allegedly suffered as a result of not obtaining the positions that she sought. She contended that she had become emotionally strained and had lost her self-esteem and enjoyment of life. The defendants maintained that much, if not all, of York's emotional distress was rooted in her past, stemming from events that occurred well before her unsuccessful bid for the Operating Engineer position in 1992. In particular, they note that her hospitalization in a psychiatric facility in 1988 was necessitated by various sources of stress in her life. **Because York chose to raise a claim of emotional distress, it was entirely appropriate for the court to allow the defendants to introduce evidence of alternate or multiple causes of such distress. The jury must be permitted to consider such relevant evidence of causation where damages are claimed for emotional distress. Moreover, it would be inequitable to allow the plaintiff to introduce selected evidence on the matter but to disallow the defendants to present evidence supporting their theories of causation**.

*See York*, 95 F.3d at 957-958.

In *McCleland v. Montgomery Ward & Co., Inc.,* No. 95 C 23, 1995 WL 571324 (N.D. Ill. Sept. 25, 1995)[2], the defendant discovered during the plaintiffs' depositions that they were each abused as children and it subsequently obtained their medical records.  The plaintiffs sought compensatory damages for humiliation and emotional suffering from the defendant's alleged conduct.  The district court denied plaintiffs' motion in *limine* to exclude the evidence of their childhood and adolescent abuse, and noted that the defendant could avoid liability for compensatory damages for emotional distress and suffering by showing that the plaintiffs' emotional distress was caused by something other than the defendant's actions.  Consequently, the district court found the probative value of the evidence concerning the plaintiffs' childhood and adolescent sexual abuse was not substantially outweighed by the danger of unfair prejudice.

Likewise, in *Delaney v. City of Hampton,* 999 F.Supp. 794 (E.D. Va. 1997), *aff'd,*135 F.3d 769 (4th Cir. 1998), the defendant sought admission of evidence regarding the plaintiff's sexual history under Fed. R. Evid. 412.  Specifically, the defendant sought to admit evidence regarding the plaintiff's "history of prior sexual abuse to show that other stressors in her life besides the alleged abuse by [the plaintiff] might be responsible for her psychiatric condition."  The district court found that under Fed. R. Evid. 412, the probative value of such evidence

---

[2] Unpublished cases are attached hereto at Exhibit 3.

substantially outweighed the danger of harm to any victim and of unfair prejudice to any party because the evidence was "highly probative as to both liability and damages." *See also Hertenstein v. Kimberly Home Health Care, Inc.,* 189 F.R.D. 620 (D.Kan.1999)(permitting examiner to inquire about private sexual activities in sexual harassment case and concluding that such inquiry did not run afoul of Federal Rule of Evidence 412 because such inquiries were relevant to the evaluation of the cause and extent of psychological injuries claimed by plaintiff).

HFHS is not seeking to invade Plaintiff's sexual privacy.  It does not intend to ask questions regarding every detail of the assault itself, but is certainly entitled to determine if the assault has had a lasting impact on Plaintiff's mental and emotional state, and to introduce evidence of alternate or multiple causes of Plaintiff's alleged emotional distress.  *See York*, *supra*.  Such testimony is relevant and admissible.  Fed. R. Evid. 401 and 402.

**B.    Evidence That Plaintiff Reported Four Wildly Divergent Versions Of The Alleged Sexual Assault, Must Be Allowed To Show Plaintiff's Character For Untruthfulness**

Following the sexual assault in 2000, Plaintiff reported four different versions of it: one to the police, one during her deposition in this case, and at least two additional versions to health care providers in 2006, 2007 and 2012.  HFHS must be allowed to cross-examine Plaintiff regarding her differing statements and

deposition testimony, in order to attack her character for truthfulness.  *See* Fed. R. Evid. 608(b); see Ex. 2, Plaintiff's Dep. pp. 73-76; Ex. 4, Dryden Police Report.[3]

While HFHS does not dispute that a sexual assault is a traumatic event, the issue here is that Plaintiff's reports and testimony are wildly divergent.  Federal Rule of Evidence 608(b) provides that specific instances of a witness' conduct may be inquired into on cross-examination if the instances concern the witness' character for truthfulness or untruthfulness.  HFHS must be allowed to cross-examine Plaintiff concerning the specific reports and her deposition testimony regarding the sexual assault in order to show the jury Plaintiff's propensity for untruthfulness.

## II.   Evidence Regarding Financial Assistance Fiona Bork Provided To Plaintiff Is Relevant And Should Be Considered By The Jury

Plaintiff testified that after her apartment flooded in 2012, Plaintiff's supervisor, Fiona Bork, gave Plaintiff several televisions.  Bork also gave Plaintiff money in 2013 to support Plaintiff's fundraising activities for Plaintiff's brother, who was seriously ill.  (Ex. 5, Fiona Bork email dated January 16, 2014)

Plaintiff now wants to exclude evidence relating to such actions because it supposedly is proof of Bork's "good character."  Plaintiff is simply incorrect.  This evidence is highly relevant to the background and working relationship Plaintiff

---

[3] HFHS will if necessary at the hearing on Plaintiff's Motion, provide the Court with the records reflecting Plaintiff's wildly divergent accounts of the alleged sexual assault .The records are governed by a protective order.

had with Ms. Bork. How these two employees interacted prior to Plaintiff's dissatisfaction with her performance evaluation is a critical issue in this case. Plaintiff cannot offer evidence of her supervisor's alleged retaliation, unfairness and that her supervisor was out to get her, but yet prevent the jury from evaluating evidence regarding their relationship leading up to the alleged adverse employment action. This is not "character evidence" under the Federal Rules of Evidence. The evidence is not offered to show that Bork acted in a particular way on a particular occasion based on her character or disposition. *See* Fed. R. Evid. 404.[4]

To prevent HFHS from providing the jury with information regarding Bork and her relationship with Plaintiff is absurd and patently prejudicial. There is

---

[4] For example, in *Boddicker v. Esurance, Inc.*, No. CIV. 09-4027-KES, 2011 WL 873473, at *2-3 (D.S.D. Mar. 8, 2011), the plaintiff asserted Rules 408 and 608 as a basis for refusing to admit evidence about his relationship with his family and whether that relationship caused his emotional stress and other mental problems, as opposed to the actions of the defendant, his employer. The court noted that "character is not defined in the federal rules, but leading commentators have noted that character *tends to refer to a personality trait or a person's mental or, in some cases, physical attributes*." *Id.* at *2 (emphasis added). In denying the plaintiff's Motion in Limine, the *Boddicker* court found that the plaintiff offered "[n]o argument on how evidence of his familial relationships or possible abuse [by his family] is character or reputation evidence." *Id.* at *3. The court was clear that the family's actions, or lack thereof, were "neither mental or physical attributes nor personality traits. Thus, the evidence is not character evidence…" As in *Boddicker,* Plaintiff contends the evidence regarding the assistance Bork provided is character evidence, yet fails to explain how or why such evidence could properly be deemed character evidence, since it is "neither a mental or physical attribute, nor a personality trait" of Bork.

absolutely no basis for which to keep out such evidence, and because it is highly

relevant and admissible, it must be admitted. Fed. R. Evid. 401 and 402.

### III. Evidence Of Plaintiff's Employment History Is Highly Relevant To (1) Defendant's After-Acquired Evidence Defense, (2) Plaintiff's Claim For Lost Wages Including Front Pay And, (3) Plaintiff's Character For Untruthfulness[5]

Evidence of Plaintiff's work history before HFHS is highly relevant. Plaintiff

falsified her HFHS employment application and made material misrepresentations

on her resume concerning her prior employment history, which she submitted to

obtain employment with HFHS.  HFHS is clearly entitled to introduce evidence of

her true employment history as part of its after-acquired evidence defense.

Evidence that Plaintiff has consistently worked for previous employers for short

periods of time directly refutes her claim for economic damages, including her

contention that she would have worked long term for HFHS.  Finally, Defendant is

also entitled to cross examine Plaintiff regarding false statements and omissions

she made to other employers about her employment history to show Plaintiff's

character for untruthfulness.  Thus, evidence concerning her employment history is

relevant and admissible pursuant to Fed. R. Evid. 401, 402 and 608.

---

[5] Plaintiff's assertions as to why HFHS wants to introduce such evidence are incorrect, and therefore the cases cited by Plaintiff are inapposite and readily distinguishable. HFHS is not seeking to introduce this information pursuant to Fed. R. Evid. 404.

A.   **Evidence That Plaintiff Made False Statements And Omissions About Her Prior Employment History In Connection With Her Employment Application With HFHS Is Relevant and Admissible to Support HFHS' After-Acquired Evidence Defense**

During discovery, HFHS discovered that Plaintiff had falsified and omitted information on her HFHS employment application and resume in order to obtain employment with HFHS.   Evidence will show that on application materials she submitted to HFHS, Plaintiff concealed the identity of previous employers, falsified reasons for leaving previous employers, and provided false information concerning dates of employment and unemployment. Specifically, the HFHS employment application requires  the applicant to "list all employers . . . " (Ex. 6, Plaintiff's HFHS Employment Application) By signing the Employment Application, Plaintiff certified that the information she provided in connection with her application was true and accurate.  (*Id*.)  Plaintiff specifically acknowledged:

"**I understand and agree that if any of the information or statements is false, misleading or incomplete**, it will prevent me from being hired, or if hired, **it will be grounds for my termination from employment."**  (*Id*.)

Defendant will introduce evidence that Plaintiff would have been terminated once it was discovered that she provided false information on her employment application and the  resume she submitted to obtain employment.

Under the "after-acquired evidence" rule, back pay losses are to be calculated from the time of the discharge to the date of the discovery of plaintiff's

misconduct. *Wright v. Restaurant Concept Mgt., Inc.*, 210 Mich. App. 105, 112 (1995) citing *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995).  "The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered."  *Wright*, *supra* citing *McKennon*, *supra*. The after-acquired evidence rule bars a plaintiff from obtaining front pay and reinstatement. *See Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1168 (6th Cir. 1996).

To the extent Plaintiff is awarded backpay, Plaintiff should not be awarded any lost wages beyond the date that HFHS learned that Plaintiff falsified her employment application materials. HFHS should be allowed to introduce evidence of Plaintiff's employment history since this evidence directly supports its after-acquired evidence defense, and as such is relevant and admissible.  *See Zhou v. State Univ. of New York Inst. of Tech.*, No. 6:08-cv-0444, 2013 WL 2237842 at * 3-5 (N.D.N.Y. May 21, 2013) (denying plaintiff's motion *in limine* and allowing defendant to introduce evidence of teaching evaluations at prior employer in order to impeach the plaintiff's credibility and limit any award of damages in accordance with after-acquired evidence defense).

**B.    Plaintiff's Employment History is Relevant and Admissible as It Relates to Her Claims for Damages**

Evidence of Plaintiff's frequent job changes and her tendency to remain employed with each of her previous employers for a short period of time is also

11

relevant to refute Plaintiff's claim for economic damages and her assertion that she would have had a long career at HFHS.  Plaintiff's employment history shows that she has held numerous jobs over the past fifteen years but each job for a short period of time.  At virtually every previous employer she remained employed for only a period ranging from a few months to at most, 2 years.  In this case,  Plaintiff seeks both back pay and front pay, and will undoubtedly contend that she would have continued working at HFHS for several years, incredibly even until retirement age.   The jury should be allowed to consider  evidence of her employment history since it directly refutes this contention and is therefore relevant and admissible.  *See* Fed. R. Evid. 401 and 402.

### C.   Evidence of False Statements Made By Plaintiff To Other Employers is Highly Relevant To Plaintiff's Character for Untruthfulness

Not only did Plaintiff make false statements and material omissions concerning her work history to HFHS, she also lied on employment applications and resumes she submitted to other employers.  Evidence that Plaintiff falsified these employment materials, is also relevant and admissible under FRE 608(b).  Plaintiff certified that she provided true and complete information on the various employment applications.  Falsification of these employment applications, clearly relates to Plaintiff's "character for truthfulness or untruthfulness" such that HFHS may cross-examine Plaintiff concerning these applications.  *Baskerville v. Culligan*

12

*Int'l Co.,* No. 93C5367, 1994 WL 162800 at n.3 (N.D. Ill. April 25, 1994) (finding that plaintiff's allegedly false answers on employment application may be used to impeach her credibility on cross-examination); *see also Zhou*, *supra*.  Evidence that she falsified these documents are relevant and should be admitted.

### IV.    Evidence Regarding Plaintiff's Lawsuit Against A Former Employer Is Highly Relevant To The Issue Of Damages And Shows A Motive And A Plan By Plaintiff To Assert Similar Claims

Plaintiff sued a former employer, Jeffrey Automotive Group and two individuals, in April 2009, alleging termination of employment and violation of public policy and tortious interference with contractual and/or business relationship.  (Ex. 7, lawsuit)   **In that case, Plaintiff claimed she suffered the same damages she claims HFHS caused her**, **including loss of wages, loss of benefits, emotional distress and exemplary damages.**  (*Id*.)  Plaintiff's attorney in that case filed a successful motion to withdraw because Plaintiff believed that her case had an unrealistic, high settlement value, i.e., $150,000. (Ex. 8, Motion to Withdraw) After her attorney withdrew, Plaintiff never pursued the case.

**One of the reasons that Plaintiff was terminated by Jeffery Automotive was for improperly using a company computer to post a dating advertisement on Craig's List, the same type of misconduct for which Plaintiff was counseled by her HFHS supervisor.**

13

Evidence concerning her the prior lawsuit and employment with Jeffrey Automotive (as well as her misconduct on that job) is relevant and should be admitted. The Jeffery Automotive lawsuit was filed in April 2009 and the current suit was filed in May 2014. Plaintiff claimed the same damages, including emotional distress damages, in both cases. Evidence that she claimed she suffered damages and emotional distress as a result of being fired by Jeffery Automotive refutes Plaintiff's claim in the current lawsuit that the same damages and alleged emotional distress were caused by HFHS. *See DeMarco v. West Hills Montessori*, No. 09-0499-cv, 2009 WL 3463778, at *1 (2nd Cir. Oct., 29, 2009) (questioning regarding separate lawsuit brought by the plaintiff allowed, "[b]ecause both suits alleged continuing mental anguish and emotional harm, and the events alleged in the two suits occurred close in time, inquiry into the existence of the separate suit was relevant to the issue of damages."); *see also Brewer v. Jones*, No. 05-4442-pr, 2007 WL 926850, at *1 (2nd Cir. March 28, 2007) (evidence [of previous lawsuit] was relevant to show a possible cause of Brewer's injury unrelated to the acts of the defendant, the district court correctly concluded that the probative value of the evidence outweighed any possibility of prejudice.")

Further, evidence of Plaintiff's previous lawsuit demonstrates a motive and a plan by Plaintiff to assert similar claims. Showing a plaintiff's plan, scheme or modus operandi through admission of prior lawsuits can undoubtedly be a proper

14

purpose under Rule 404(b).  *See Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490 (7th Cir. 1998) (allowing evidence of prior lawsuits where the evidence "establish[ed] that Gastineau has a common scheme or plan in disputes with his former employers…[and] the evidence was quite similar temporally and otherwise to the present dispute"); *Van Deelen v. Johnson,* No. 05-4039-SAC, 2008 WL 4683022 (D. Kan. Oct. 22, 2008) (allowing evidence of prior lawsuits where "prior civil pleadings filed by plaintiff are similar enough to the present case in their allegations, claims and/or substance, that they could in fact reveal that plaintiff had a motive, plan or scheme to bring similar kinds of claims against those who crossed him."); *Marcic v. Reinauer Transportation Co.,* 397 F.3d 120, 125 n.1 (2d Cir. 2005) ("Motive or plan may be appropriate grounds for allowing charges that a party is litigious. *See* Fed. R. Evid. 404(b).").  Plaintiff's lawsuit against Jeffrey Automotive is similar both temporally and substantively to the case at bar.  The evidence should be allowed to show a motive or plan by Plaintiff to assert similar claims.

Finally, Fed. R. Evid. 608 allows admission of specific instances of conduct for the purposes of attacking the credibility of a witness.  Evidence of the lawsuit against Jeffrey (and any claims Plaintiff may have made while employed by same) should be admitted pursuant to Fed. R. Evid. 608 in order to show Plaintiff's character for untruthfulness.

## V.    Evidence Regarding Plaintiff's Bankruptcy is Highly Relevant and Admissible

On August 1, 2011, Plaintiff filed for voluntary Chapter 7 Bankruptcy in the Eastern District of Michigan. HFHS should be allowed to introduce evidence or reference the fact that Plaintiff previously filed for bankruptcy and was experiencing financial hardship prior to her termination from HFHS. Her alleged financial hardship, as well as any alleged emotional distress resulting therefrom, was not caused by her termination from HFHS, but instead, resulted from Plaintiff's inability to manage her finances **prior** to her termination by HFHS. *See York*, *supra*; *see also Wilkins v. Ford Motor Co.*, No. 01-CV-931-E (J), 2003 WL 25694928 (N. D. Okla. April 23, 2003) (court held that the plaintiff's prior bankruptcy was admissible if the plaintiff pursued a claim for future earnings).

Indeed, as one court found, a plaintiff's bankruptcy proceedings may be "highly relevant" as to any claims for emotional distress damages, and that it issues regarding emotional distress and bankruptcy proceedings was for the "jury to ascertain, not the Court." *See Arauio v. Treasure Chest Casino*, No. 97-3043, 1999 WL 219771, at *3-4 (E. D. La. April 14, 1999) (denying plaintiff's motion to exclude evidence relative to prior bankruptcy proceedings)

The cases cited by Plaintiff are distinguishable from the facts of the instant matter. *Vaughn*, *Stewart-Patterson* and *Walker* (cited by Plaintiff) are all personal injury/slip and fall cases where the court found that the plaintiff's bankruptcy

16

records and/or financial condition were not relevant as a possible motive for pursuing litigation.  Such is not the case here.

It is anticipated that Plaintiff will argue that her termination from HFHS has caused her significant financial hardship. (Joint Final Pre-Trial Order, ECF Dkt. #66, p. 60)  HFHS should be allowed to introduce evidence that Plaintiff's financial problems began well before her termination from HFHS.  Such evidence would in no way mislead the jury, but would help the jury assess Plaintiff's claim that HFHS is responsible for her financial predicament.  Accordingly, HFHS should be permitted to introduce evidence regarding Plaintiff's Bankruptcy.  Fed. R. Evid. 401 and 402.

**VI.   Evidence Regarding Plaintiff's Violation Of  HIPAA And HFHS' HIPAA Policy Is Highly Relevant Since It Also Directly Relates To HFHS' After-Acquired Evidence Defense**

Through discovery, HFHS learned that Plaintiff knowingly violated HIPAA and HFHS policy concerning HIPAA protected information when she removed confidential information regarding patients from her work location.  This included confidential patient information contained in emails, which Plaintiff produced to Defendant  on August 1, 2014.  (Ex. 9, emails produced by Plaintiff)

Defendant will prove that Plaintiff removed confidential patient information, in violation of HIPAA and HFHS' policies **and lied about it during her deposition**.  (ECF Dkt. #71, p. 15)   HFHS policies provides that removing

confidential patient information is a terminable offense.  (Ex. 10, HFHS System-Wide Corrective Program HR Policy No. 5.17)   Evidence that Plaintiff violated HIPAA and HFHS' policy establishes Defendant's after-acquired defense. Defendant will prove that had it learned that she removed patient information, she would have been terminated if she was still employed. Thus, this evidence is highly relevant and admissible.  Fed. R. Evid. 401 and 402. Pursuant to the after-acquired evidence doctrine, Plaintiff's entitlement to lost wages, if any, should cease to be effective August 2014.  *See* Fed. R. Civ. P. 401 and 402[6].

The cases cited by Plaintiff are entirely distinguishable.  In *Kempcke*, the plaintiff, while deleting files on a computer that was newly assigned to him, found a highly confidential document that the plaintiff alleged was evidence of age discrimination.   The court found that such action was "akin to the employee who is inadvertently copied on an internal memorandum, or who discovers a document mistakenly left in an office copier."  *Kempcke*, 132 F.3d at 446.  This is entirely different than the instant matter, where Plaintiff knowingly took confidential patient documents – she did not happen upon the document by chance.

---

[6] It is unclear as to what documents Plaintiff is referring to in her Motion *In Limine*.  (ECF Dkt. #71, pp. 15-17)  However,  Plaintiff's removal of documents from her Clinton Township location to take them to a meeting with Jill Hood in Human Resources – and her retention of them rather than returning them – are admitted violations of HIPAA and HFHS' policy.

In *Womack*, the defendant admitted that at the time of the alleged incident that led to the plaintiff's termination, there was no formal policy in place regarding contacts with hospice workers and the related issues of confidentiality and HIPAA. There was also a "custom and practice" among the nurses in scheduling a hospice referral.  *See Womack v. Delaware Highlands AI Services Provider, LLC*, 883 F.Supp.2d 1013, 1024-25 (D. Kan. 2012).   Again, the facts of *Womack* are distinguishable from the instant matter.  Plaintiff's admitted actions constitute clear violations of HFHS policy of which Plaintiff was aware.

It is totally false for Plaintiff to claim that she "innocently" came upon the documents.   (ECF Dkt. #71, p. 17)   Plaintiff knowingly and admittedly took documents with patient's confidential information.  The removal of patient data – in any format – is a violation of HFHS' policies, and Plaintiff would have been terminated if HFHS had discovered same.

<u>**CONCLUSION**</u>

**WHEREFORE**, for the all the reasons set forth above, Plaintiff's Motion *In Limine* should be denied in its entirety.

Respectfully submitted,

19

VARNUM LLP

By:    */s/ Terrence J. Miglio*       
             Terrence J. Miglio (P30541)
             Barbara E. Buchanan (P55084)
             Attorneys for Defendants
             160 W. Fort, Fifth Floor
             Detroit, MI 48226
Dated:  March 24, 2016        313-481-7300

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2016, I caused the foregoing documents to be electronically filed with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record.

*/s/Terrence J. Miglio*
Terrence J. Miglio (P30541)
160 W. Fort, Fifth Floor
Detroit, MI 48226
313-481-7300
tjmiglio@varnumlaw.com