Exhibit 3

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2574 Filed 03/24/16 Page 2 of 35
McCleland v. Montgomery Ward & Co., Inc., Not Reported in F.Supp. (1995)
1995 WL 571324

KeyCite Yellow Flag - Negative Treatment
**Distinguished by** *Fitzpatrick v. QVC, Inc.,* E.D.Pa., December 7, 1999

1995 WL 571324
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Kimberly McCLELAND and
Lisa Martinez, Plaintiffs,
v.
MONTGOMERY WARD & CO.,
INCORPORATED, Defendant.

No. 95 C 23.
|
Sept. 25, 1995.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.

 **\*1** Kimberly McCleland and Lisa Martinez (collectively "plaintiffs") sue defendant Montgomery Ward & Co., Inc. ("Montgomery Ward") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiffs assert that they were subjected to hostile work environment sexual harassment during their employment with Montgomery Ward. McCleland further alleges that she was constructively discharged due to the sexual harassment. Jury trial begins on October 2, 1995. The parties move *in limine* to exclude evidence from trial.

I. *Motions In Limine*
Motions *in limine* are disfavored. *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400 (N.D.Ill.1993). An order *in limine* excludes clearly inadmissible evidence. Evidence should not be excluded *in limine* unless it is clearly inadmissible on all potential grounds. Evidentiary rulings should be deferred until trial so that questions of foundation, competency, relevancy and potential prejudice may be resolved in proper context. *Middleby Corp. v. Hussmann Corp.,* No. 90 C 2744, 1993 WL 151290, at \*1 (N.D.Ill. May 7, 1993); *General Electric Capital Corp. v. Munson Marine, Inc.,* No. 91 C 5090, 1992 WL 166963, at \*1 (N.D.Ill. July 8, 1992). *See generally* 21

Charles A. Wright, Kenneth W. Graham, Jr., *Federal Practice and Procedure* §§ 5037, 5042 (1977 & Supp.1993).

Denial of a motion *in limine* does not mean that all evidence contemplated by the motion will be admitted at trial. Rather, denial means that the court cannot determine whether the evidence should be excluded outside the trial context. The court will entertain objections on individual proffers as they arise even though the proffer falls within the scope of a denied motion *in limine*. See *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984)).

II. *Plaintiffs' Motion In Limine To Bar Evidence Of Prior Childhood And Adolescent Abuse*
Plaintiffs seek to exclude evidence of their prior childhood and adolescent abuse pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence. Specifically, plaintiffs seek to exclude evidence of the following: (1) any pre-adolescent or adolescent parental sexual, physical, mental or emotional abuse; (2) any psychological or mental conditions resulting from the above-mentioned abuse; and (3) their waived claims for damages for aggravation of any pre-existing psychological or mental conditions related to past abuse due to sexual harassment experienced while at Montgomery Ward. Plaintiffs argue that because they are not claiming damages for aggravation of pre-existing mental or psychological conditions or for any medical bills incurred as a result of their hospitalization, evidence of the three issues above is irrelevant and prejudicial.

Montgomery Ward responds that the evidence is relevant and outweighs possible prejudice to plaintiffs because plaintiffs are still seeking compensatory damages for humiliation, embarrassment, and emotional and physical suffering. Montgomery Ward contends that any alleged emotional suffering was caused by their childhood abuse rather than by Montgomery Ward's conduct. Additionally, Montgomery Ward claims that medical records and medical care providers' testimony directly contradict plaintiffs' testimony that they were hospitalized because of Montgomery Ward's conduct.

 **\*2** In their April 10, 1995 interrogatory answers, plaintiffs claimed that their monetary damages included hospital medical bills resulting from sexual harassment. Plaintiffs' Interrogatory Answers ¶ 6. Plaintiffs further answered that they experienced emotional suffering, humiliation, embarrassment, loss of self-esteem, loss of self-respect, anxiety and depression, and were hospitalized because of

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2575 Filed 03/24/16 Page 3 of 35

McCleland v. Montgomery Ward & Co., Inc., Not Reported in F.Supp. (1995)

1995 WL 571324

the hostile environment sexual harassment. *Id.* ¶ 7. Plaintiffs listed their treating physicians and therapist and the hospital where they were admitted.

Montgomery Ward discovered during plaintiffs' depositions that McCleland and Martinez were each abused as children. Subsequently, Montgomery Ward received plaintiffs' medical records and deposed the doctors and therapist who treated plaintiffs in 1993 and/or 1994 (Dr. Baber, Dr. Keegan, Dr. Tumbali and Ms. Irene Hartigan). Montgomery Ward discovered that plaintiffs never complained or mentioned to their doctors or therapist that they were sexually harassed at Montgomery Ward. Plaintiffs attributed their suffering and hospitalization to factors unrelated to sexual harassment, including issues relating to plaintiffs' childhood abuse.

Plaintiffs are no longer seeking damages for medical bills related to their hospitalization. Nor are plaintiffs claiming aggravation of any pre-existing psychological or mental condition. However, plaintiffs continue to seek compensatory damages for humiliation and emotional suffering resulting from Montgomery Ward's alleged conduct. Plaintiffs' concede that a plaintiff seeking compensatory damages for emotional distress and suffering must prove that the defendant's conduct caused plaintiff's damages. *See* Final Pretrial Order, Plaintiff's Proposed Jury Instruction No. 16, No. 95 C 0237 (N.D.Ill. Aug. 22, 1995); *Berry v. Deloney,* 28 F.3d 604, 608 (7th Cir.1994). Conversely, a defendant may prove that the plaintiff's emotional distress was caused by something other than defendant's actions. *Berry,* 28 F.3d at 608; *Alberts v. Wickes Lumber Co.,* No. 93 C 4397, 1995 WL 117886, at *4 (N.D.Ill. Mar. 15, 1995). [1] Montgomery Ward contends that plaintiffs' medical records, treating physicians and therapist will establish that other stressful situations caused plaintiffs' emotional pain and suffering. Accordingly, the probative value of this evidence as to the cause of plaintiffs' compensatory damages is not substantially outweighed by the danger of unfair prejudice or undue delay. Fed.R.Evid. 403.

Moreover, Montgomery Ward argues that the evidence plaintiffs' seek to exclude is relevant for impeachment purposes. Martinez claimed in her charge of discrimination that she was hospitalized because of Montgomery Ward's sexual harassment. Both plaintiffs made similar sworn statements in their interrogatory answers. Montgomery Ward maintains that plaintiffs' medical records, treating physicians and therapist directly contradict plaintiffs' statements. Plaintiffs eventually recanted their stories. The probative value of this evidence in undermining plaintiffs' claim that Montgomery Ward's conduct caused their emotional suffering is not substantially outweighed by the danger of unfair prejudice or undue delay. Fed.R.Evid. 403; *see Berry,* 28 F.3d at 608; *Alberts,* 1995 WL 117886 at *5.

**\*3** To avoid any potential prejudice, before trial plaintiffs may submit a cautionary jury instruction that the evidence plaintiffs seek to exclude may only be considered for limited purposes and is not to be considered when determining Montgomery Ward's liability for sexual harassment. *See Berry,* 28 F.3d at 606 n. 1. Accordingly, plaintiffs' motion *in limine* is denied. Montgomery Ward's motion for leave to subpoena the trial testimony of plaintiffs' treating physicians and therapist (Dr. Baber, Dr. Keegan, Dr. Tumbali and Ms. Irene Hartigan) is granted.

III. *Montgomery Ward's Motions To Exclude Evidence Of Joann Azarcon's Sexual Harassment Complaint*

Montgomery Ward seeks to exclude evidence of Joann Azarcon's sexual harassment complaint as irrelevant and unfairly prejudicial, pursuant to Rules 402 and 403 of the Federal Rules of Evidence. Azarcon is Montgomery Ward's office manager and the person to whom plaintiffs complained about their alleged sexual harassment. Plaintiffs seek to introduce Azarcon's own claim that she was sexually harassed by a Montgomery Ward employee. Azarcon's claim involves a different alleged harasser and occurred approximately six months prior to plaintiffs' alleged harassment.

Rule 401 defines relevant evidence as evidence tending "to make the existence of any fact that is of consequence to the determination of the action" more or less probable. Montgomery Ward claims that evidence of Azarcon's alleged harassment does not make plaintiffs' harassment complaints more or less probable, and is inadmissible under Rule 402 of the Federal Rules of Evidence. Even if this evidence were relevant, Montgomery Ward maintains that its probative value is "substantially outweighed by the danger of unfair prejudice [and] confusion of the issues." Fed.R.Evid. 403. Plaintiffs do not respond.

Montgomery Ward's argument is persuasive. Presentation of evidence relating to Azarcon's harassment claim would necessitate a "trial within a trial." *See Sims v. Mulcahy,* 902 F.2d 524, 530–31 (7th Cir.), *cert. denied,* 498 U.S. 897 (1990); *Jones v. Hamelman,* 869 F.2d 1023, 1027 (7th Cir.1989). In *Sims,* the Seventh Circuit affirmed the district court's exclusion of evidence that the defendant allegedly

discriminated against another employee. The district court found that the incident involving the other employee was not "even within hailing distance" of the plaintiff's incident. *Sims,* 902 F.2d at 530. The court concluded that if "there is anything probative as it concerns [the incident involving the other employee], it is outweighed by the misleading nature." *Id.* The court of appeals found that "[e]xclusion of evidence under Rule 403 is also important to avoid significant litigation on issues that are collateral to those required to be tried." *Id.* at 531. Likewise, the *Jones* court affirmed a district court's exclusion of evidence, ruling that:

> In effect the admission of Lyon's testimony may have very well necessitated a "trial within a trial" concerning Swain's alleged actions *subsequent* to, and independent of, the assault at issue in this case and this "trial within a trial" would have consumed a great deal of trial time and would have had slight probative value.

**\*4** *Jones,* 869 F.2d at 1027 (emphasis in original).

If plaintiffs introduced evidence relating to Azarcon's harassment claim, Montgomery Ward would be forced to present evidence refuting this issue. This would involve a great deal of trial time on an issue that is collateral to plaintiffs' claim. The probative value of evidence relating to Azarcon's harassment claim is even less than in *Sims* or *Jones* because Azarcon is not claiming she was harassed by the individual who allegedly harassed plaintiffs. The probative value is substantially outweighed by the danger of unfair prejudice to Montgomery Ward, the likely confusion of issues, and the significant litigation time that would be expended on trying a collateral issue. Accordingly, Montgomery Ward's motions to exclude any evidence relating to Azarcon's harassment claim is granted.

## *CONCLUSION*

Plaintiffs' motion *in limine* to bar evidence of plaintiffs' childhood abuse is denied. Defendant Montgomery Ward & Co., Inc.'s motion for leave to subpoena the trial testimony of plaintiffs' treating physicians and therapist (Dr. Baber, Dr. Keegan, Dr. Tumbali and Ms. Irene Hartigan) is granted. Defendant's motions *in limine* to exclude evidence relating to Joann Azarcon's sexual harassment complaints are granted.

1     The *Alberts* court applied Fed.R.Evid. 412. Rule 412 limits disclosure of a victim's sexual behavior or sexual predisposition. Rule 412 is inapplicable here because Montgomery Ward does not proffer plaintiffs' childhood abuse to prove sexual behavior or predisposition. Even if Rule 412 were applicable, Montgomery Ward shows that the evidence's probative value substantially outweighs danger of harm or unfair prejudice.

**All Citations**

Not Reported in F.Supp., 1995 WL 571324

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2577 Filed 03/24/16 Page 5 of 35
Boddicker v. Esurance, Inc., Not Reported in F.Supp.2d (2011)
2011 WL 873473

2011 WL 873473
Only the Westlaw citation is currently available.
United States District Court,
D. South Dakota,
Southern Division.

Ryan BODDICKER, Plaintiff,
v.
ESURANCE, INC., Defendant.

No. CIV. 09–4027–KES.
|
March 8, 2011.

**Attorneys and Law Firms**

Pamela R. Bollweg, Ronald A. Parsons, Jr., Shannon Falon, Sara E. Show, Johnson, Heidepriem & Abdallah, LLP, Sioux Falls, SD, for Plaintiff.

George R. Wood, Littler Mendelson, P.C., Minneapolis, MN, Sandra K. Hoglund–Hanson, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for Defendant.

ORDER

KAREN E. SCHREIER, Chief Judge.

**\*1** Plaintiff, Ryan Boddicker, filed suit against defendant, Esurance, Inc. [1] Only Boddicker's Family Medical Leave Act (FMLA) interference and Consolidated Omnibus Budget Reconciliation Act (COBRA) causes of action survived summary judgment. The parties filed a number of motions in limine and, after a pretrial hearing, the court reserved ruling on three of Boddicker's motions in limine. Boddicker's motions in limine are granted in part and denied in part.

[1]    In its recent briefs to the court, Esurance has noted in footnotes that after this litigation commenced, Esurance changed its name from Esurance, Inc. to Esurance Insurance Services, Inc. Until Boddicker or Esurance makes a motion to change the caption, the court will continue to use the original caption.

**DISCUSSION**

**I. Motions in Limine Numbers 2 and 3**

In his motion in limine number 2, Boddicker seeks to prohibit Esurance from offering "[e]vidence, testimony, or argument concerning or referencing any abuse suffered by Ryan Boddicker from his parents, stepparents, or other relatives." Docket 90. Motion in limine number 3 seeks to forbid Esurance from offering "[e]vidence, testimony, or argument concerning or referencing the relationship between Ryan Boddicker and his parents, stepparents, or any other relative." Docket 90.

Boddicker objects to the evidence on the basis of relevancy under Rules 401 and 402. "All relevant evidence is admissible...." Fed.R.Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "Relevancy is not an inherent characteristic of any item of evidence but exists only as relation between an item of evidence and a matter properly provable in the case." Huddleston v. United States, 485 U.S. 681, 689 (1988) (citing Advisory Committee's Notes on Fed. Rule. Evid. 401, 28 U.S.C.App., at 688).

During the pretrial hearing, the court requested Boddicker's mental health records and the depositions of his mental health providers. The records reflect that Boddicker told his mental health providers that he was exposed to, at a minimum, verbal abuse by his father and his stepmother. The records also state that Boddicker has experienced stressed relationships with some family members.

The central issue with regard to Boddicker's FMLA interference claim is whether Esurance chilled or interfered with Boddicker's FMLA rights resulting in Boddicker's suffering emotional stress or other mental problems that caused him to miss work. Esurance contends that Boddicker's relationship with and abuse from his family were the cause of his emotional stress and other mental problems and not Esurance's actions. Because the evidence goes to a material issue in the case, it is relevant.

Boddicker contends that the evidence is prohibited by Rule 403. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. "Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." Wade v. Haynes,

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2578 Filed 03/24/16 Page 6 of 35
Boddicker v. Esurance, Inc., Not Reported in F.Supp.2d (2011)

2011 WL 873473

663 F.2d 778, 783 (8th Cir.1981), *aff'd sub nom. Smith v. Wade,* 461 U.S. 30 (1983). Unfairly prejudicial evidence is evidence that is " 'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.' " *United States v. Adams,* 401 F.3d 886, 900 (8th Cir.2005) (quoting *United States v. Shoffner,* 71 F.3d 1429, 1433 (8th Cir.1995)).

**\*2** Boddicker does not identify the unfair prejudice that he would suffer if the evidence surrounding his familial relationship is admitted. Instead, he only asserts that "any possible probative value is substantially outweighed by the danger of unfair prejudice of this evidence, confusion of the issues, or misleading the jury and therefore, it should be excluded." Docket 91 at 3. Because the evidence is relevant and Boddicker has not articulated how the evidence would result in unfair prejudice, the motion in limine is without merit. Moreover, evidence of Boddicker's relationship with his family or any abuse he suffered from his family would not suggest a decision on an improper basis, because if the jury believes Esurance's version of the facts, Boddicker's familial difficulties may have been the cause of his missing work.

Boddicker further asserts Rules 404 and 608 as bases for refusing to admit the evidence. Evidence of a person's character is generally not admissible, *see* Fed.R.Evid. 404, especially in a civil case. *See, e.g., McCabe v. Macaulay,* No. 05–CV–73–LRR, 2008 WL 1844048, at \*4 (N.D.Iowa 2008) ("[C]haracter evidence not admissible in civil actions, unless character or reputation is put in issue by the very proceeding itself." (citation omitted)). Additionally, if a witness's credibility is attacked, the evidence can only refer to the witness's character for truthfulness or untruthfulness. *See* Fed.R.Evid. 608(a). Character is not defined in the federal rules, but leading commentators have noted that character tends to refer to a personality trait or a person's mental or, in some cases, physical attributes. *See generally* Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5232 (1978).

Boddicker offers no argument on how evidence of his familial relationships or possible abuse is character or reputation evidence. A history of abuse or difficult familial relationships are neither mental or physical attributes nor personality traits. Thus, the evidence is not character evidence and Boddicker's motions in limine numbers 2 and 3 are denied.

## II. Motion in Limine Number 5
In motion in limine number 5, Boddicker seeks to prohibit Esurance from offering:

Evidence or testimony by Larry Plucker, Sr. or Larry Plucker, Jr. as well as evidence, testimony, or argument from any witness, attorney, or representative thereof concerning or referencing any statements made by the Plaintiff about other employees of the Defendant being "b\* \* \* \*es" or "b\* \* \* \*y" as well as statements allegedly made about the taxpayers or any other person paying for Plaintiff's disability.

Docket 90 at 1. Boddicker's motion in limine number 5 contains two separate types of evidence: (1) statements made to the Pluckers about his Esurance supervisors; and (2) statements made to the Pluckers about his disability and the taxpayers.

### A. Statements about Esurance Supervisors
Boddicker worked full time for Save Our Space, a company specializing in closet organization, from October 22, 2007, through December 17, 2007. Plucker, Jr. owns Save Our Space and his father, Plucker, Sr., works for the company as an installer.

**\*3** In his deposition, Plucker, Jr. testified that when he interviewed Boddicker for the Save Our Space job, he asked Boddicker why he left Esurance. Boddicker

> basically told me that he was—he had two women supervisors, a direct supervisor and then someone over her, and that he just simply didn't get along with them. He at one point used the B word.... He called them b\* \* \* \*es, and that he had recently had his review, his annual review, and evidently it wasn't favorable, and he was upset because how could they give him an unfavorable review because they didn't even know what his job was, something to that effect.

Plucker, Jr. Dep., p. 10, lines 16–25, p. 11 line 1, Docket 110 at 3. Boddicker never told Plucker, Jr. the names of the women. *Id.* at p. 36 lines 17–25, p. 37 lines 1–5, 22–25, Docket 110 at 27–28.

Plucker, Sr. testified that Boddicker minimally spoke with him about Esurance. Plucker, Sr. Dep., p. 7 lines 4–6, Docket 111 at 7 ("Q: Did Mr. Boddicker ever talk about his work for Esurance? A: Yes, minimal."). According to Plucker, Sr.,

Boddicker "only kind of brought up maybe two or three times that he mentioned these women, and because he was quite upset about evidently his experience with them, but he didn't dwell on it. He just said that these two women up there that—you know, b* * * *y old women up there that he had to work for, that that was his reason for leaving." *Id.* at p. 21, lines 13–18, Docket 111 at 21.

Boddicker argues that the Pluckers' testimony is "not relevant to whether Esurance, Inc.'s actions interfered with Ryan's right to take FMLA leave," and is inadmissable under Rules 401 and 402. Docket 91 at 5.

To determine if an employer interfered with an employee's FMLA rights, the fact finder views the situation from the totality of the circumstances. *Murphy v. FedEx Nat'l Ltd.,* 618 F.3d 893, 901 (8th Cir.2010) (employing a totality of the circumstances test in an FMLA case); *Scobey v. Nucor Steel–Ark.,* 580 F.3d 781, 787 (8th Cir.2009) (same). Boddicker claims that comments made by his supervisors to him after he returned from FMLA leave chilled the use of his FMLA rights. The statements Boddicker made about his supervisors are statements of a party opponent, and they are relevant to show Boddicker's view of and relationship with his supervisors. Such evidence allows the jury to determine whether it is more or less probable that Boddicker's supervisors chilled the exercise of his FMLA rights.

Boddicker contends that the evidence is also inadmissible under Rule 403. The jury will be required to determine if Esurance interfered with Boddicker's FMLA rights. While incantations of the word b* * * * may be offensive, such language is not so inflammatory that it will divert the jury's attention away from the material issue of FMLA interference.

Boddicker further contends that these statements are inadmissible character evidence because the statements concern his work ethic. The Pluckers will only testify about statements that Boddicker voluntarily made to them while working at Save Our Space. A person's statements about past supervisors is neither a personality trait nor a physical or mental attribute and, thus, the evidence is not character evidence.

**\*4** Finally, Boddicker contends that the evidence is hearsay and inadmissible under Rule 802. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of

the matter asserted." Fed.R.Evid. 801. Boddicker's statements about his supervisors that they were "b* * * *es" or "b* * * *y" are not offered to prove the truth of the statements, but rather to show Boddicker's mental impressions of his supervisors. Thus, Boddicker's motion in limine number 5 as it pertains to his comments made to the Pluckers about his Esurance supervisors is denied.

**B. Taxpayers Paying for Boddicker's Disability**

Boddicker only made statements about the taxpayers paying for his disability to Plucker, Sr.; he did not directly make statements about his disability or taxpayers to Plucker, Jr. *See* Plucker, Jr. Dep., p. 19, lines 15–18, Docket 110 at 5 ("Q: Did Mr. Boddicker at any point in time make statements to you about his—the fact that he was going to have a claim for disability benefits with the government? A: Not to me.").

Plucker Sr. testified that Boddicker "made a comment to me that I would be paying his disability check," Plucker, Sr. Dep., p. 8 lines 20–21, Docket 111 at 7, and "I understood what he meant, as a taxpayer that he would be filing or getting disability, and that as a taxpayer I would be paying part of his disability." *Id.* at p. 9 lines 6–8. Plucker Sr. further testified that "I believe, yeah, that it was kind of a dig, you know, that you're going to be paying my, you know—I don't know if he was bragging about it, but it was definitely that he was trying to make it clear that the taxpayers were going to be making a —paying him disability." *Id.* at p. 20, lines 24–25, p. 21, lines 1–4.

Plucker, Sr. did tell Plucker, Jr. about Boddicker's statements: "Q: What did he say to your father that you understand? A: He was bragging that the taxpayers would be paying his disability forever and that his two children were going to college for free." Plucker, Jr. Dep., page 19, lines 22–25, Docket 110 at 5.

Esurance argues that it is relevant that Boddicker "viewed his own case as a 'scam.' " Docket 101 at 3. Boddicker correctly notes that there is no evidence that Boddicker referred to his case as a "scam." Instead, Don Welker, a non-party, told Plucker, Jr. that Boddicker's case was a "scam." *See* Docket 102 at 1–2. Because Boddicker never told either Plucker that this lawsuit was a "scam," that evidence is inadmissible.

Boddicker's statements about the taxpayers paying for his disability are not relevant under Rules 401 and 402. Whether the taxpayers will ultimately pay for Boddicker's disability benefits is not a matter relevant to any issue in this case.

2011 WL 873473

Accordingly, Boddicker's motion in limine number 5 as it pertains to statements Boddicker made to the Pluckers about receiving disability payments is granted. Accordingly it is

 **\*5**  ORDERED that the motions in limine numbers 2 and 3 are denied and motion in limine number 5 is granted in part and denied in part.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 873473

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2581 Filed 03/24/16 Page 9 of 35

Zhou v. State University of New York Institute of Technology, Not Reported in F.Supp.2d...

2013 WL 2237842, 118 Fair Empl.Prac.Cas. (BNA) 1023

2013 WL 2237842
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Xu–Shen "Jason" ZHOU, Plaintiff,

v.

STATE UNIVERSITY OF NEW YORK INSTITUTE
OF TECHNOLOGY; Dr. Lisa Berardino; Dr Stephen
Havlovic; and Dr. William Langdon, Defendants.

No. 6:08–cv–0444 (GTS/ATB).
|
May 21, 2013.

**Attorneys and Law Firms**

Satter & Andrews, LLP, Ross P. Andrews, Esq., of Counsel,
Syracuse, NY, for Plaintiff.

Hon. Eric T. Schneiderman, Attorney General for the State of
New York, Douglas J. Goglia, Esq., of Counsel, Albany, NY,
for Defendants.

***DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

*\*1* Currently before the Court, in this employment
discrimination action filed by Xu–Shen Zhou ("Plaintiff")
against the State University of New York Institute of
Technology, Dr. Lisa Berardino, Dr. Stephen Havlovic and
Dr. William Langdon ("Defendants"), is Plaintiff's motion
in limine seeking to preclude certain evidence regarding his
teaching performance during his previous employment with
Bloomsburg University. Defendants oppose the motion. For
the following reasons, Plaintiff's motion is denied.

**I. Relevant Background**

This action was commenced in April of 2008. Plaintiff
amended his complaint in April of 2009 and Defendants
timely filed their answer to the Amended Complaint.
Generally, Plaintiff's Amended Complaint alleges that
Plaintiff, a person of Chinese nationality and origin, was
subject to discrimination during his employment at the State
University of New York Institute of Technology ("SUNY
IT"). This Court has liberally construed Plaintiff's Amended

Complaint to assert claims of discrimination, retaliation, and
hostile work environment pursuant to Title VII of the Civil
Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.
("Title VII"), 42 U.S.C. § 1981, and Section 292 of the New
York State Human Rights Law ("NYHRL"). *See Zhou v. State
Univ. of New York Inst. of Tech.,* No. 08–CV–0444, 2011 WL
4344025, at * 1 (N.D.N.Y. Sept. 14, 2011).

In the Fall of 2005, Plaintiff began his employment with
SUNY IT as a faculty member teaching finance in the School
of Business. Dr. Spina, the Interim President of SUNY
IT, extended the offer of employment to Plaintiff. During
Plaintiff's interviews for the position, he never disclosed that
he received complaints from students about his teaching at
Bloomsburg University, his former employer.

In August of 2009, Defendants served Bloomsburg
University with a subpoena directing production of
documents related to Plaintiff's employment. Plaintiff moved
to quash the subpoena in the District Court for the Middle
District of Pennsylvania, which was later denied on January
5, 2010. Bloomsburg University produced the documents
to Defendants on February 12, 2010. Defendants did not
move for summary judgment until October of 2010, and
never moved to amend their Answer to add the after-acquired
evidence doctrine as an affirmative defense.

Nonetheless, in support of their motion for summary
judgment, Defendants raised the after-acquired evidence
issue, arguing that, should Plaintiff prevail on his
discrimination claim, any damages should be limited based
on evidence of Plaintiff's poor teaching evaluations at
Bloomsburg University. Defendants argued that, had they
been aware of those evaluations, Plaintiff would not have
been hired to begin with. (*See* Dkt. No. 70–1, at 11 [Defs.'
Mem. of Law in Support of Mot. for Summ. J.].) In opposing
the motion for summary judgment, Plaintiff advanced the
same arguments he presents now in support of his motion
in limine, including that, because the after-acquired evidence
doctrine is an affirmative defense that must be pled, which
Defendants failed to do, the Court should not consider
it. (*See* Dkt. No. 78–5, at 26–28 [Pl.'s Mem. of Law in
Opp'n to Mot. for Summ. J.].) Because the Court granted
Defendants' motion for summary judgment in its entirety,
it did not address the parties' arguments regarding the
after-acquired evidence doctrine. However, the Court did
consider the evidence of Plaintiff's evaluations at Bloomsburg
University as admissible evidence in determining that the
record evidence does not support a finding of pretext on

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2582 Filed 03/24/16 Page 10 of 35

Zhou v. State University of New York Institute of Technology, Not Reported in F.Supp.2d...

2013 WL 2237842, 118 Fair Empl.Prac.Cas. (BNA) 1023

Plaintiff's discrimination claim. *See Zhou,* 2011 WL 4344025, at *4. The Court further noted, in granting Defendants' motion for summary judgment regarding Plaintiff's retaliation claim, that Plaintiff advanced the same arguments regarding pretext on that claim as he did regarding his discrimination claim, and that the Court rejects those arguments for the same reasons it rejected them regarding the discrimination claim. *See id.,* at 13.

**\*2** Plaintiff appealed this Court's decision granting Defendants' motion for summary judgment regarding Plaintiff's retaliation claim, but did not appeal that portion of this Court's decision granting summary judgment regarding Plaintiff's discrimination and hostile work environment claims. Consequently, the Second Circuit determined that Plaintiff abandoned those claims. *See Zhou v. State Univ. of New York Inst. of Tech.,* 499 F. App'x 105, 107 n. 1 (2d Cir.2012). Regarding Plaintiff's retaliation claim, the Second Circuit found that, viewing the evidence in a light most favorable to Plaintiff, they raise a triable issue of fact that a fact finder could resolve in Plaintiff's favor. *See Zhou,* 499 F. App'x at 109–10. The Second Circuit made no ruling regarding the inadmissibility of evidence relied on by this Court, despite Plaintiff having argued before the Circuit that the evidence regarding Plaintiff's teaching evaluations at Bloomsburg University is inadmissible.

Ultimately, the Second Circuit vacated this Court's decision regarding Plaintiff's retaliation claims against all Defendants except Dr. Peter Spina. [1] *See Zhou v. State Univ. of New York Inst. of Tech.,* 499 F. App'x 105 (2d Cir.2012). Accordingly, Plaintiff's retaliation claims against all Defendants except Dr. Spina remain to be tried. In support of these claims, Plaintiff essentially alleges that Defendants decided not to renew his two-year employment contract in retaliation for Plaintiff's complaints of race or national origin discrimination by Dr. Langdon.

[1]  Dr. Peter Spina, the Interim President of defendant SUNY IT at the time Plaintiff's employment contract was not renewed, was originally named as a defendant in this action.

## II. The Parties' Arguments

Plaintiff argues that evidence of his poor teaching reviews at Bloomsburg University prior to his employment at SUNY IT should be precluded for the following four reasons: (1) it is irrelevant and inadmissible to prove that Plaintiff had a propensity for poor teaching; (2) it does not fall within the "after-acquired evidence" doctrine because it does not constitute misconduct that occurred during Plaintiff's employment with SUNY IT; (3) the after-acquired evidence doctrine is an affirmative defense, which Defendants failed to plead in their answer; and (4) Defendants cannot establish that Plaintiff's performance at Bloomsburg University constituted misconduct of such severity that they would have terminated Plaintiff on that ground.

Defendants oppose Plaintiff's motion on the following two grounds: (1) evidence of Plaintiff's poor teaching reviews at Bloomsburg University and his false statements about those reviews during his interviews with SUNY IT are admissible to impeach Plaintiff's credibility; and (2) such evidence is admissible under the after-acquired evidence doctrine to limit damages, which was not required to be pled as an affirmative defense, especially where, as here, Defendants did not learn of the evidence until they discovered it after this litigation commenced.

## III. Analysis

### A. Whether the After–Acquired Evidence Doctrine Applies in This Case

**\*3** The Court answers this question in the affirmative and adds the following analysis.

The after-acquired evidence doctrine stems from the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879 (1995). In *McKennon,* an ADEA case, the Supreme Court acknowledged that the ADEA and Title VII share common substantive features, including remedies, and a common purpose to eliminate discrimination in the workplace. *See McKennon,* 513 U.S. at 358, 115 S.Ct. at 884. The Court further noted that "[i]t would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act." *Id.* Instead, where it is established "that the wrongdoing was of such severity that the employee would in fact have been terminated on those grounds alone if the employer had known of it at the time of discharge," a court may limit backpay to the period from the date of unlawful termination until the date the new information was discovered. *Id.* at 362–63, 115 S.Ct. at 886–87. The Court further noted that, where an employer successfully establishes that it would have terminated the plaintiff's employment, "neither reinstatement nor front pay is an appropriate remedy." *Id.,* at 362, 115 S.Ct. at 886.

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2583 Filed 03/24/16 Page 11 of 35

Zhou v. State University of New York Institute of Technology, Not Reported in F.Supp.2d...

2013 WL 2237842, 118 Fair Empl.Prac.Cas. (BNA) 1023

Nothing in the Court's decision suggests that wrongdoing that occurs in the course of an employee's interview process could not form the basis for an employer's argument that it would have terminated him had it discovered the wrongdoing after it hired him. Notably, the *McKennon* Court, in support of its holding, commented that

> [t]he proper boundaries of remedial relief in the general class of cases where, after termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case.

*Id.,* at 361, 115 S.Ct. at 886. Accordingly, the Court finds that the after-acquired evidence doctrine could theoretically apply to the facts asserted in this case.

## B. Whether the After–Acquired Evidence Doctrine Is an Affirmative Defense

The Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (*See* Dkt. No. 107 [Pl.'s Mem. of Law, at 2].) The Court would add the following analysis.

To be sure, as Defendants point out, "[c]ourts within the Second Circuit have not unanimously recognized the after-acquired evidence doctrine as an affirmative defense." *Ellis v. Cygnus Enters.,* LLC, No. 11–CV–771, 2012 WL 259913, at *4 (E.D.N.Y. Jan. 3, 2012) (comparing *Zubulake v. UBS Warburg LLC,* 231 F.R.D. 159, 160 (S.D .N.Y.2005) (denying leave to amend answer to assert affirmative defense of after-acquired evidence) with *E.E. O.C. v. Morgan Stanley & Co., Inc.,* No. 01–CV–8421, 2002 WL 31778779, at *1 (S.D.N.Y. Dec. 11, 2002) (holding that after-acquired evidence was not necessarily an affirmative defense and the defendant did not need to amend its answer to assert it)). However, a fair majority of courts in the Second Circuit consider after-acquired evidence to be an affirmative defense. *See, e.g., Kanhoye v. Altana Inc.,* 686 F.Supp.2d 199, 212 (E.D.N.Y.2009) (finding that summary judgment is not appropriate on affirmative defense of after-acquired evidence where plaintiff is able to raise a triable question of fact regarding whether such evidence would actually be

a basis for termination); *Quinby v. WestLB AG,* No. 04–CV–7406, 2007 WL 1153994, at * 16 (S.D.N.Y. Apr. 19, 2007) (same); *Christian v. R. Wood Motors, Inc.,* No. 91–CV–1348, 1995 WL 238981, at *12 (N.D.N.Y. Apr. 21, 1995) (granting defendants' motion to amend its answer to add an affirmative defense of after-acquired evidence). Moreover, the sole case relied on by the court in *Ellis* to conclude that courts in the Second Circuit have not unanimously recognized afteracquired evidence as an affirmative defense was a summary order from a magistrate judge denying a motion to amend an answer to add after-acquired evidence as an affirmative defense as unnecessary, given the lack of a direct ruling by the Supreme Court or Second Circuit. *See E.E.O. C. v. Morgan Stanley & Co., Inc.,* 2012 WL 31778779. Given that most courts in this Circuit address after-acquired evidence as an affirmative defense, this Court will do so as well.

## C. Whether Defendants Waived Assertion of the After–Acquired Evidence Doctrine by Failing to Move to Amend Their Answer to Add It As an Affirmative Defense

**\*4** The Court answers this question in the negative, in part for the reasons asserted by Defendants in their letter brief. (*See* Dkt. No. 112, at 2 [Defs.' Ltr. Br.].)

Generally, the failure to plead an affirmative defense results in a waiver of that defense. *See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC,* 842 F.Supp.2d 682, 709 (S.D.N.Y.2012) (quoting *Travellers Int'l, A.G. v. Trans World Airlines,* 41 F.3d 1570, 1580 (2d Cir.1994)). *See also* Fed.R.Civ.P. 8(c) (requiring a defendant to "affirmatively state any avoidance or affirmative defense," in a responsive pleading). However, the general rule is not applied automatically, and as a practical matter, there are many exceptions to it. For example, where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party, waiver may not be proper. *See Am. Fed. Grp., Ltd. v. Rothenberg,* 136 F.3d 897, 910 (2d Cir.1998). *Cf. In re Cross Media Mktg. Corp.,* 367 B.R. 435, 446 (S.D.N.Y.2007) ("[U]nless Defendants can assert that the affirmative defenses now being alleged were not available at the pleading stage, Defendants' failure to plead these defenses should result in a waiver.").

Defendants argue that the after-acquired evidence defense did not become available to them until they discovered Plaintiff's Bloomsburg University evaluations in February of 2010, over two years after the commencement of this action. To be sure,

Zhou v. State University of New York Institute of Technology, Not Reported in F.Supp.2d...

2013 WL 2237842, 118 Fair Empl.Prac.Cas. (BNA) 1023

Defendants could have sought to amend their answer at that time, but failed to do so. Instead, Defendants first mentioned the defense in October of 2010 in support of their motion for summary judgment. Nonetheless, any argument that Plaintiff is prejudiced by Defendants failure to amend their answer to assert after-acquired evidence carries little weight. Plaintiff, having unsuccessfully moved to quash the subpoena of the evidence from Bloomsburg University, was certainly aware that Defendants were in possession of the evidence before discovery closed. There being no prejudice to Plaintiff, Defendants have not waived the after-acquired evidence affirmative defense. Accordingly, Defendants are permitted to use Plaintiff's teaching evaluations from Bloomsburg University for the purpose of seeking a limitation of damages under their afteracquired evidence defense.

**D. Whether the After–Acquired Evidence May Be Used to Impeach Plaintiff's Credibility**

The Court answers this question in the affirmative, generally for the reasons stated by Defendants in their letter brief. (*See* Dkt. No. 112, at 1–2 [Defs.' Ltr. Br.].) The Court would only provide the following analysis.

First, Defendants have made clear that they do not intend to offer the evidence of Plaintiff's prior performance at Bloomsburg University in order to show his propensity for deficient teaching. Accordingly, to the extent Plaintiff seeks to preclude the evidence on that basis, his motion in limine is denied as moot.

 **\*5** Second, Defendants do intend to use the evidence of Plaintiff's prior performance at Bloomsburg University, as well as his responses to questions about his performance at Bloomsburg University during his interviews for his position at SUNY IT, in order to impeach Plaintiff's credibility. Pursuant to Fed.R.Evid. 608(b), specific instances of a witness's conduct may be raised on cross examination if they are probative of his character for truthfulness or untruthfulness. Accordingly, Defendants are permitted to use the evidence regarding Plaintiff's statements during his interviews in order to impeach Plaintiff's credibility.

Third, Plaintiff argues that his statements during his interviews with SUNY IT do not constitute any misconduct or wrongdoing under the after-acquired evidence doctrine because he subjectively believed his teaching recommendations to be good at Bloomsburg University at the time he left its employ. Plaintiff can certainly offer evidence in support of that assertion, since whether his statements regarding his prior teaching evaluation amount to wrongdoing of the requisite severity is a question of fact for the jury to decide. However, Plaintiff's subjective belief that his statements were true does not bar Defendants from using the evidence of those statements in order to limit damages or impeach Plaintiff's credibility.

**IV. Conclusion**

For all of these reasons, Plaintiff's motion to preclude evidence of his teaching evaluations at Bloomsburg University as well as his statements regarding those evaluations, which were made during the interview process for his employment with Defendant SUNY IT, is denied. Defendants are permitted to use the evidence for the purposes of 1) impeaching Plaintiff's credibility and 2) limiting any award of damages to Plaintiff.

Accordingly, it is

**ORDERED** that Plaintiff's motion in limine to preclude evidence of his teaching evaluations at Bloomsburg University and his statements regarding those evaluations during his interviews for employment at SUNY IT is ***DENIED;*** and it is further

**ORDERED** that Defendants are permitted to use evidence of Plaintiff's teaching evaluations at Bloomsburg University and his statements regarding those evaluations during his interviews for employment at SUNY IT to 1) impeach Plaintiff's credibility, and/or 2) limit any award of damages to Plaintiff.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2237842, 118 Fair Empl.Prac.Cas. (BNA) 1023

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-11916-GCS-SDD  ECF No. 77-4,  PageID.2585  Filed 03/24/16  Page 13 of 35
Baskerville v. Culligan Intern. Co., Not Reported in F.Supp. (1994)

1994 WL 162800

1994 WL 162800
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Valerie A. BASKERVILLE, Plaintiff,

v.

CULLIGAN INTERNATIONAL COMPANY,
a Delaware corporation, Defendant.

No. 93 C 5367.
|
April 25, 1994.

MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

**\*1**  Valerie Baskerville sues Culligan International Co. ("Culligan"), her former employer, for sex discrimination. Baskerville sues under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), alleging that she was harassed and discriminated against on the basis of her sex. The parties file motions *in limine* to exclude evidence from trial. In addition, Culligan petitions to recover costs of filing a motion to compel.

DISCUSSION

1. Motions *In Limine*

The court excludes evidence on a motion *in limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400 (N.D.Ill.1993). Although the court may bar evidence before trial, motions *in limine* are disfavored. Instead, admissibility questions generally should be ruled upon as they arise at trial. *See Scarboro v. Travelers Ins. Co.,* 91 F.R.D. 21, 22 (E.D.Tenn.1980). Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice can be resolved in context. *See Hawthorne Partners,* 831 F.Supp. at 1401. Moreover, denial of a motion *in limine* does not mean that all evidence contemplated by the motion will be admitted at trial. Rather, denial of the motion means only that without the context of trial the court is unable to determine whether the evidence in question should

be excluded. *See United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989).

a. Character evidence
Baskerville moves to preclude Culligan from introducing evidence: (1) that she had marital difficulties and saw a marriage counselor; and (2) that she was dismissed, issued warnings, and accused of wrongdoing by previous employers. Baskerville contends that this is character evidence and is irrelevant to her Title VII claim or to Culligan's defenses. She further asserts that the evidence must be excluded pursuant to Fed.R.Evid. 404(a). Culligan responds that the evidence is relevant to Baskerville's claims and to Culligan's defenses.

i. Marital problems

Baskerville moves to exclude evidence that she experienced marital problems and sought the help of a marriage counselor. Culligan responds that by asserting a claim for emotional distress, Baskerville:

> has placed her mental and emotional state squarely at issue. The fact that Plaintiff had marital problems, and sought treatment for them, bears not only on Plaintiff's psychological condition, but also on the issue of whether or not it was Culligan's conduct that caused her to suffer emotional distress during the relevant time period.

Response at 2. Culligan's position exaggerates the probative value of the evidence. By stating a claim for emotional distress, Baskerville has not placed in issue every traumatic event in her life. The marital problems that Baskerville and her husband suffered were in 1989, two years before the time period relevant to this suit. Culligan has not demonstrated a rational connection between Baskerville's claims for emotional distress and her earlier marital difficulties. Thus, the evidence does not appear to be relevant. *See* Fed.R.Evid. 401–02. Even if this evidence were marginally relevant, any probative value appears to be substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed.R.Evid. 403.

**\*2**  In addition, Culligan fails to demonstrate that marital counseling is equivalent to individual psychotherapy—or that

1994 WL 162800

marital difficulties should be equated with psychological problems. Culligan's statement that Baskerville "sought treatment" is misleading; Culligan has not shown that Baskerville's decision to see a marriage counselor indicates that she suffered from psychological distress. Baskerville's marital difficulties and marriage counseling have not been shown to be relevant to her sexual harassment claims. Thus, Baskerville's motion to bar substantive evidence regarding her marital problems is granted.[1]

Culligan argues alternatively that if Baskerville's marriage difficulties are inadmissible as substantive evidence, its expert witness, Dr. Rom–Rymer, may nevertheless comment upon the subject of Baskerville's marriage. Under Fed.R.Evid. 703, an expert witness may base her opinions on any facts that experts in the field would reasonably rely upon— even if the evidence is otherwise inadmissible. *See AMPAT/ Midwest, Inc. v. Illinois Tool Works Inc.,* 896 F.2d 1035, 1045 (7th Cir.1990). Dr. Rom–Rymer will testify regarding Baskerville's emotional condition and prognosis. Culligan contends that in reaching her opinion, Dr. Rom–Rymer reasonably relied upon Baskerville's emotional history, including her past marital difficulties.

It is premature to decide whether Culligan's contention is sound. Culligan has yet to show the necessity of relying on Baskerville's marital problems or their relevance to Dr. Rom–Rymer's testimony. An expert witness may refer to inadmissible evidence in stating an opinion. *See Matter of James Wilson Associates,* 965 F.2d 160, 173 (7th Cir.1992). However, the expert testimony may not be used as a "vehicle for circumventing the rules of evidence." *Id.* Before proffering Dr. Rom–Rymer's testimony, Culligan must demonstrate, out of the jury's presence, that Baskerville's marital problems were reasonably relied upon in forming Dr. Rom–Rymer's opinions. In addition, Culligan must establish that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to Baskerville. *See* Fed.R.Evid. 403.[2]

### ii. Work history

Baskerville also moves to exclude evidence that she was fired and reprimanded by previous employers. Baskerville asserts that the evidence is irrelevant to her claims that she was harassed. Baskerville further states that the evidence improperly suggests that she is a poor employee and a complainer; Culligan may not introduce evidence of

Baskerville's character to suggest that Baskerville acted in conformity with a particular character trait. *See* Fed.R.Evid. 404(a).

Culligan argues that the evidence is relevant because it suggests that Culligan always has been a poor worker with emotional problems. Culligan reasons that the evidence must be considered in assessing Baskerville's credibility as a witness. Culligan also contends that the evidence suggests that Baskerville's allegation that she was reprimanded in retaliation for alleging harassment is not credible. Although Culligan proposes to use the evidence to attack Baskerville's credibility, it appears that Culligan proffers the evidence to prove Baskerville was a poor employee. Accordingly, the evidence must be excluded for that purpose.

**\*3** Under Fed.R.Evid. 404(a), evidence proffered to show a proclivity for bad conduct or a bad character trait must be excluded. The evidence regarding Baskerville's past work performance leads to the following chain of inferences: Because Baskerville had been reprimanded and dismissed before, Baskerville is, and always has been, a troublemaker and a poor employee; therefore, Baskerville's allegations of harassment most likely are untrue or exaggerated. For this reason, evidence of Baskerville's prior work difficulties may not be introduced to establish that Baskerville was a poor employee.[3]

Culligan also seeks to present Dr. Rom–Rymer's expert testimony regarding Baskerville's past work history. Culligan hopes to establish through expert testimony that Baskerville has always had problems with supervisors. As discussed above, expert witnesses may refer to inadmissible evidence in presenting their opinions. However, under Fed.R.Evid. 703, the evidence must be the type of information that an expert in the field would reasonably rely upon. Dr. Rom–Rymer may not comment about Baskerville's inability to get along with supervisors to suggest proclivity under Fed.R.Evid. 404(a). Unless and until Culligan establishes the admissibility of Dr. Rom–Rymer's testimony about Baskerville's past work history outside the jury's presence, it may not introduce her expert testimony.[4]

### b. Dr. Bell's testimony

Culligan moves to exclude the expert testimony of Gale J. Bell, Ph.D. Dr. Bell is Baskerville's treating psychologist and her proposed expert witness regarding her psychological condition, treatment, and prognosis. Dr. Bell is also

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2587 Filed 03/24/16 Page 15 of 35

Baskerville v. Culligan Intern. Co., Not Reported in F.Supp. (1994)

1994 WL 162800

Baskerville's sister. Culligan does not dispute that Dr. Bell is a licensed psychologist or that Dr. Bell is qualified to render expert psychological testimony. However, Culligan maintains that it would be improper for Dr. Bell to render expert opinions regarding her sister's psychological condition.

Culligan asserts that Dr. Bell's expert testimony would violate the American Psychology Association ("APA")'s ethical code. Under the APA's code of ethical principles, psychologists must refrain "from entering into [a] personal, scientific, professional, financial, or other relationship ... if it appears likely that such a relationship reasonably might impair the psychologist's objectivity." Motion, Ex. D at ¶ 1.17. Culligan maintains that Dr. Bell's professional relationship with Baskerville is unethical because they are sisters. Culligan reasons that the court must disqualify Dr. Bell and preclude her expert testimony in order "to preserve the public confidence in the fairness and integrity of the judicial proceedings." Motion at 4.

If at trial the court determines that Dr. Bell may testify as an expert, the court would not be sponsoring her testimony or vouching for its objectivity. Rather, it would be the jury's function to assess the credibility of Dr. Bell's opinions and to determine the weight to be given her testimony. Culligan shows that Dr. Bell's professional relationship with Baskerville is unorthodox and raises serious questions regarding Dr. Bell's objectivity. However, these are appropriate subjects for Culligan's cross-examination of Dr. Bell. The testimony is not excluded on the motion *in limine*.

c. Interrogatory 4

*4 Culligan moves to bar evidence regarding Culligan's treatment of any former, current, or prospective female employee other than Baskerville. In particular, Culligan seeks to bar evidence regarding Michael Hall's conduct toward female employees. (Hall was the Culligan supervisor who allegedly harassed Baskerville.) As authorized by the court, Culligan moves to exclude the evidence under Fed.R.Evid. 37 due to Baskerville's repeated failure to respond to interrogatories and because she ignored orders to compel. *See* Order, No. 93 C 5367 (N.D.Ill. Mar. 16, 1994).

On September 22, 1993, Culligan served interrogatories asking whether Baskerville would base her Title VII claim in part on Culligan's treatment of other female employees. On December 3, 1993, Baskerville belatedly responded to interrogatory 4 by stating that her response was "unknown

at this time." [5] Culligan filed a motion to compel a response to interrogatory 4; the court ordered Baskerville to respond to the interrogatory by February 15, 1994. On February 17, 1994 and March 11, 1994 Culligan filed renewed motions to compel because Baskerville had not responded—despite the court order that she do so. Culligan's renewed motions sought sanctions under Fed.R.Civ.P. 37. In granting the second motion to compel, the court authorized Culligan to submit a motion to preclude Baskerville from introducing evidence responsive to interrogatory 4.

Baskerville failed to timely respond to discovery requests, and violated a court order directing her to respond. Under Rule 37, the court may preclude Baskerville from presenting evidence that should have been disclosed in its interrogatory response. *See* Fed.R.Civ.P. 37(4)(b)(2)(B); *Souderbeck v. Burnett County,* 821 F.2d 446, 453 (7th Cir.1987). Because discovery is closed, the pretrial order has been submitted, and trial is set for early next month, Culligan would be unduly prejudiced by the introduction of evidence that would have been responsive to interrogatory 4. [6] Accordingly, Baskerville may not introduce evidence or make reference to any alleged acts of harassment by Culligan employees, including Michael Hall, against other women. [7]

d. Baskerville's performance

Culligan moves to bar evidence regarding Baskerville's performance as a Culligan employee between 1985 and 1989. Baskerville worked for Culligan from November 1985 until she resigned in January 1989. In October 1991, Baskerville was rehired by Culligan for a new position in a different department. The allegations of harassment in Baskerville's complaint all concern the period after she was rehired in 1991. Culligan contends that Baskerville's performance between 1985 and 1989 is irrelevant to the Title VII claims.

Evidence that Baskerville performed well during her initial tenure with Culligan may be relevant to her harassment claims: Although the alleged harassment occurred two years later in another department, evidence of Baskerville's past performance as a Culligan employee may be probative of the overall employment relationship between the parties. Moreover, evidence that Baskerville worked for Culligan without incident for four years may be probative of Baskerville's claim that Culligan reprimanded her in retaliation for filing a harassment complaint. Accordingly, the motion to exclude evidence regarding Baskerville's past work performance as a Culligan employee must be denied.

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2588 Filed 03/24/16 Page 16 of 35
Baskerville v. Culligan Intern. Co., Not Reported in F.Supp. (1994)
1994 WL 162800

e. Harassment article

**\*5** Culligan moves to exclude evidence that in August 1993 Culligan's manager of human resources handed Baskerville an article regarding allegations of sexual harassment against one of Baskerville's attorneys. Culligan argues that handing the article to Baskerville was not harassment because it occurred a year after the alleged harassment had ceased. Thus, Culligan reasons that the delivery of the article is not relevant to Baskerville's Title VII claims and is inadmissible under Fed.R.Evid. 402.

All of Baskerville's claims concern conduct that allegedly occurred in 1991 and 1992. The incident regarding the harassment article occurred in August 1993, over a year after the alleged harassment had ceased. Moreover, the article did not involve Culligan or Baskerville's allegations, but instead concerned an unrelated allegation against one of Baskerville's *attorneys.* Baskerville has not shown a rational connection between the harassment article and her harassment claims. Baskerville also has not established that the incident involving the article—which involved harassment outside the scope of her claims—suggests discriminatory intent. Because the evidence appears to be irrelevant to Baskerville's claims, the motion *in limine* is granted.

2. Fee Petition

Culligan petitions to recover costs of moving to compel Baskerville's compliance with mandatory pretrial procedure. Pursuant to Local Rule 5, Standing Order Establishing Pretrial Procedure ("the standing order"), the plaintiff's counsel must initiate a meeting with the defendant's counsel to narrow the issues for trial, and must "prepare a draft pretrial order and submit it to opposing counsel," so the parties can jointly submit a final draft order in open court. *See* Standing Order ¶ 5.

On January 6, 1994, the court set March 17, 1994 as the date for the parties to submit the joint pretrial order. As of March 8, 1994, Baskerville had not provided a draft to Culligan. On that date, Culligan's counsel telephoned Baskerville's counsel to request an initial draft of the order. After not receiving a draft by March 10, 1994, Culligan's counsel sent a letter by messenger to Baskerville's counsel requesting a draft by the end of the next day. On March 11, 1994, one of Baskerville's attorneys telephoned Culligan's counsel to inform her that the attorney responsible for preparing the draft order was out of

the office due to a family emergency, and that it was unclear when a draft order would be completed.

In response to Baskerville's failure to present a draft pretrial order, Culligan filed a motion to compel compliance with the standing order. On March 16, 1994, the court granted the motion to compel. In addition, the court authorized Culligan to file a petition to recover attorneys' fees expended in preparing the motion to compel. *See* Order, No. 93 C 5367 (N.D.Ill. Mar. 16, 1994); *see also* Standing Order ("Failure of either party to comply with the substance or spirit of this standing order may result in ... sanctions appropriate under Fed.R.Civ.P. 16").

**\*6** In ordering sanctions for noncompliance, the standing order directs the court to the provisions of Fed.R.Civ.P. 16. Rule 16(f) provides in pertinent part:

> If a party or party's attorney fails to obey a scheduling or pretrial order ... the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 16(f). Baskerville does not contend that the noncompliance was justified, nor does she suggest that an award of expenses in this situation would be unjust. Instead, Baskerville asserts that the fees that Culligan seeks are unreasonable.

The expenses requested are reasonable. Culligan submits the affidavit of its counsel, C. Elizabeth Belmont. The affidavit indicates that Culligan was billed for 3.2 hours because of Baskerville's failure to comply with the standing order. *See* Petition, Ex. A at 3. In addition, Culligan's attorneys spent 0.8 hours preparing the fee petition. The hours claimed, supported by affidavit, are reasonable. Culligan is entitled to recover for 4 hours that were billed due to Baskerville's failure to comply with the standing order.

The billing rate that Culligan seeks also is reasonable. All of the hours claimed were billed by Belmont. Belmont is a fifth-year associate at a large Chicago firm. Belmont's billing

1994 WL 162800

rate of $155/hour is reasonable in the Chicago legal market for an attorney of her experience. Accordingly, Baskerville's attorneys [8] are directed to pay Culligan $620, representing a rate of $155 per hour for four hours.


CONCLUSION

For the foregoing reasons: plaintiff Valerie Baskerville's motion *in limine* is granted in part; defendant Culligan International Company's motions to disqualify and preclude the testimony of Dr. Bell and to exclude evidence of Baskerville's work history are denied. Defendant's motion to exclude evidence regarding Michael Hall's alleged acts of harassment; to exclude evidence responsive to interrogatory 4; and to exclude evidence regarding the harassment article are granted. Defendant's petition for attorneys' fees is granted. Plaintiff's attorneys are directed to pay defendant $620 for the expense of filing a motion to compel compliance with mandatory pretrial procedure.


[1]     In its additional response, Culligan asserts, without any case law support, that the evidence is admissible under Fed.R.Evid. 405(b), because Baskerville's character is an essential element of her claims. Culligan does not establish that Baskerville's Title VII claims make her character an essential element of her claims.

[2]     Culligan is barred from referring to Baskerville's marital difficulties in the jury's presence until the court has ruled on the admissibility of the evidence. In particular, Culligan may not mention Baskerville's marital problems in its opening statement.

[3]     Culligan also contends evidence that Baskerville lied about her dismissals by previous employers on her

job application goes to her credibility as a witness. Baskerville's allegedly false answers on her employment application may not be introduced as substantive evidence, but may be used exclusively to impeach her credibility on cross-examination.

[4]     In addition, Culligan may not refer to Baskerville's past work history in its opening statement. *See* note 2.

[5]     Interrogatory 4 provided as follows:
        Please state whether you intend to rely upon Culligan's actions with regard to any employee or former or prospective employee of Culligan other than Plaintiff in support of your claim.

[6]     Baskerville's contention that there would be no surprise if she were to introduce evidence regarding harassment against other employees is misplaced. Although there was deposition testimony indicating that there may have been other incidents of harassment, Culligan was never notified that it must defend itself against other allegations of harassment. Because discovery is closed and the trial is imminent, Culligan would not have a reasonable opportunity to prepare a defense against the allegations.

[7]     Accordingly, Culligan's motion to preclude evidence that Hall may have harassed other female employees also must be granted.

[8]     Under Fed.R.Civ.P. 16(f), the court may direct the party, her lawyers, or both, to pay fees and expenses. In this case, the failure to comply with the standing order is due solely to the dilatory conduct of Baskerville's counsel.

### All Citations

Not Reported in F.Supp., 1994 WL 162800

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

350 Fed.Appx. 592
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Paulina DeMARCO, Plaintiff-Appellant,
v.
WEST HILLS MONTESSORI, Gersh
Management Services, Inc., Gersh
Academy, Kevin Gersh, in his individual and
official capacities, Defendants-Appellees.

No. 09-0499-cv.
|
Oct. 29, 2009.

**Synopsis**
**Background:** Employee brought employment discrimination action. The United States District Court for the Eastern District of New York, Gleeson, J., entered final judgment. Employee appealed.

**Holdings:** The Court of Appeals held that:

[1] probative value of employee's proposed testimony regarding her coworkers' hearsay statements was substantially outweighed by danger of unfair prejudice, and

[2] district court could allow limited questioning about separate lawsuit brought by employee.

Affirmed.

West Headnotes (2)

[1]     **Evidence**
          👉 **Similar wrongful acts**
          Probative value of employee's proposed testimony regarding her coworkers' hearsay statements concerning encounters that coworkers allegedly had with defendant was substantially outweighed by danger of unfair prejudice, permitting exclusion of such

testimony in employee's discrimination action even though harassment experienced by other employees was relevant to employee's hostile work environment claim, where coworkers did not testify at trial and employee did not witness any of alleged events herself. Fed.Rules Evid.Rule 403, 28 U.S.C.A.

1 Cases that cite this headnote

[2]     **Evidence**
          👉 **Relation to Issues in General**
          District court could allow limited questioning about separate lawsuit brought by employee in employee's employment discrimination action where both actions alleged continuing mental anguish and emotional harm and underlying events occurred close in time, making inquiry into existence of separate action relevant to issue of damages, and where district court limited inquiry to the "fact of the lawsuit" and employee's emotional and physical injuries allegedly suffered from acts set forth in separate lawsuit, and did not allow that action to be used to demonstrate that employee was litigious.

Cases that cite this headnote

**\*593** Appeal from the United States District Court for the Eastern District of New York (Gleeson, J.).
UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and hereby is AFFIRMED:

**Attorneys and Law Firms**

Kenneth P. Thompson, Thompson, Wigdor & Gilly, LLP, New York, NY, for Plaintiff-Appellant.

Eden M. Mauro (Leonard N. Flamm, on the brief), The Mauro Law Firm, Syosset, NY, for Defendant-Appellee.

PRESENT: GUIDO CALABRESI and RICHARD C. WESLEY, Circuit Judges and JED S. RAKOFF, District Judge. *

\*      The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

### SUMMARY ORDER

**\*\*1** Appellant Paulina DeMarco ("DeMarco") appeals from a final judgment entered by the United States District Court for the Eastern District of New York (Gleeson, *J.* ) on February 3, 2009. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review evidentiary rulings by the district court for abuse of discretion. *Brady* **\*594** *v. Wal-Mart Stores, Inc.,* 531 F.3d 127, 136 (2d Cir.2008). In the midst of trial, the district court must make on-the-spot decisions, carefully weighing probative value against undue prejudice for each proffered piece of evidence. *Sprint/United Management Co. v. Mendelsohn,* 552 U.S. 379, 128 S.Ct. 1140, 1144-45, 170 L.Ed.2d 1 (2008). Therefore, when we review those decisions, we afford the district court substantial deference. *Meloff v. New York Life Ins. Co.,* 240 F.3d 138, 148 (2d Cir.2001).

 [1]    The District Court did not abuse its discretion when it precluded DeMarco from testifying as to her co-workers' statements to DeMarco concerning alleged encounters by the co-workers with Defendant Kevin Gersh ("Gersh"). None of these employees testified at trial, and DeMarco did not witness any of the alleged events herself. Under Federal Rule of Evidence 403, evidence may be excluded by the court if the probative value of the evidence proffered is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403. Allowing DeMarco to testify to hearsay statements that detail events she herself did not witness presents a significant risk of undue prejudice. DeMarco is correct that harassment experienced by other employees is relevant to hostile work environment claims, but the evidence must be firsthand accounts of the events in question. *See Howley v. Town of Stratford,* 217 F.3d 141, 155 (2d Cir.2000); *see also Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 150-51 (2d Cir.1997). DeMarco was certainly entitled to put witnesses on the stand and elicit testimony of their experiences with harassment to support her claim. But she was not entitled to testify as to what she heard from these employees in order to prove a hostile work environment, as the district court properly concluded.

Nor did the District Court abuse its discretion in its decision concerning a variety of other evidence that DeMarco sought to introduce. Given the purposes for which DeMarco proffered the evidence, the District Court could correctly determine that its probative value would be substantially outweighed by its prejudicial effect.

 [2]    The District Court also did not abuse its discretion when it allowed limited questioning about a separate lawsuit brought by DeMarco. Because both suits alleged continuing mental anguish and emotional harm, and the events alleged in the two suits occurred close in time, inquiry into the existence of the separate suit was relevant to the issue of damages. The district court limited the inquiry to "the fact of the lawsuit" and the "emotional and physical injuries" DeMarco alleged she suffered from the acts set forth in the second suit. The court did not allow the lawsuit to be used to demonstrate that DeMarco was litigious, a line of argument forbidden by *Outley v. City of New York,* 837 F.2d 587, 592 (2d Cir.1988).

 **\*\*2** We have reviewed the remaining arguments and find them to be without merit.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

### All Citations

350 Fed.Appx. 592, 2009 WL 3463778

---

**End of Document**            © 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
**Distinguished by** Harvey v. Farber, N.D.N.Y., February 28, 2013

222 Fed.Appx. 69
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Jesse BREWER, Plaintiff-Appellant,

v.

Andrew D. JONES, Jr., Defendant-Appellee.

No. 05-4442-pr.
|
March 28, 2007.

**Synopsis**

**Background:** Pro se plaintiff brought § 1983 action. The United States District Court for the Southern District of New York, P. Kevin Castel, J., entered judgment on jury verdict in defendant's favor. Plaintiff appealed.

**Holdings:** The Court of Appeals held that:

[1] probative value of evidence of prior lawsuit filed by plaintiff outweighed any possibility of prejudice, and

[2] risk of prejudice from admission of evidence of prior lawsuit did not warrant limiting instruction.

Affirmed.

West Headnotes (2)

[1]     **Evidence**
         👉 Tendency to Mislead or Confuse

         Probative value of evidence of prior lawsuit filed by civil rights plaintiff, which showed possible cause of plaintiff's injury unrelated to acts of defendant, outweighed any possibility of prejudice. 42 U.S.C.A. § 1983; Fed.Rules Evid.Rules 403, 404, 28 U.S.C.A.

4 Cases that cite this headnote

[2]     **Federal Civil Procedure**
         👉 Necessity and Subject Matter

         Risk of prejudice to civil rights plaintiff arising from admission of evidence of plaintiff's prior lawsuit, which showed possible cause of plaintiff's injury unrelated to acts of defendant, did not warrant limiting instruction. 42 U.S.C.A. § 1983.

4 Cases that cite this headnote

*70 Appeal from a judgment of the United States District Court for the Southern District of New York (P. Kevin Castel, Judge).

UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be **AFFIRMED.**

**Attorneys and Law Firms**

Jesse Brewer, pro se, Attica, NY, for Appellant.

Daniel J. Chepaitis, Assistant Solicitor General (Michael S. Belohlavek, on the brief), for Eliot Spitzer, Attorney General of the State of New York, for Appellee.

PRESENT: Hon. ROBERT D. SACK, Hon. B.D. PARKER and Hon. PETER W. HALL, Circuit Judges.

*SUMMARY ORDER*

**\*\*1** Plaintiff-appellant Jesse Brewer, *pro se,* appeals from a judgment entered after a jury verdict in favor of defendant-appellee Andrew Jones in this suit brought under 42 U.S.C. § 1983. We assume the parties' familiarity with the underlying facts and procedural history of the case and the issues on appeal.

[1] Brewer argues on appeal that the district court erred under Federal Rules of Evidence 403 and 404 in admitting evidence of a previous lawsuit filed by Brewer. Specifically, Brewer argues that the challenged evidence improperly suggested that Brewer had litigious tendencies. We review a district court's evidentiary rulings for an abuse of discretion.

*See* *Arlio v. Lively,* 474 F.3d 46, 51 (2d Cir.2007). A trial judge's Rule 403 rulings are entitled to "considerable deference." *Costantino v. Herzog,* 203 F.3d 164, 173 (2d Cir.2000). "Moreover, the improper admission of evidence is grounds for reversal only where it affects 'a substantial right' of one of the parties." *Id.* at 174 (quoting Fed.R.Evid. 103(a)).

We see nothing in the record to suggest that the challenged evidence was admitted for an improper purpose or was unduly prejudicial. On the contrary, because the evidence was relevant to show a possible cause of Brewer's injury unrelated to the acts of the defendant, the district court **\*71** correctly concluded that the probative value of the evidence outweighed any possibility of prejudice. Furthermore, the record reflects that the defense scrupulously confined its use of the challenged evidence to the purpose for which it was admitted. Evidence admissible for one purpose is not rendered inadmissible by a separate rule which might preclude it. *United States v. Abel,* 469 U.S. 45, 56, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

 **[2]**   We also reject Brewer's argument that the district court should have issued a limiting instruction. The omission of such an instruction was not an abuse of discretion because the risk of prejudice to Brewer was not sufficient to require mitigation. *Cf. Outley v. City of New York,* 837 F.2d 587, 595 & n. 6 (2d Cir.1988).

We have considered all of Brewer's arguments on appeal and find them to be without merit. Accordingly, the judgment of the district court is hereby **AFFIRMED.**

**All Citations**

222 Fed.Appx. 69, 2007 WL 926850

---

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Distinguished by** Riggs v. Cory, D.Kan., September 10, 2013

2008 WL 4683022
Only the Westlaw citation is currently available.
United States District Court,
D. Kansas.

Michael D. VAN DEELEN, Plaintiff,

v.

Marion JOHNSON, Steven Miles, Dale
Flory, and Kenneth Fangohr, Defendants.

No. 05–4039–SAC.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Michael D. Van Deelen, Eudora, KS, pro se.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, LLP,
Overland Park, KS, for Defendants.

**MEMORANDUM AND ORDER**

SAM A. CROW, Senior District Judge.

**\*1** This case comes before the court on motions recently
filed by both parties. Trial is set for October 29, 2008.

**Plaintiff's motion in limine** (Dk. 107; 104)
Plaintiff's motion in limine seeks to exclude under Rule
404(b) evidence of prior lawsuits he has filed and rulings
made in them, other than his lawsuits against one or all of the
current defendants. Plaintiff also seeks leave of court to file a
reply brief regarding this motion, which motion is granted.

Included in the defendants' exhibits are copies of pleadings or
orders filed in prior civil cases plaintiff has brought (Exhibits
439–468). Plaintiff objects to all of these except for Exhibit
466, which includes two of the same defendants as in this
case, *i.e.,* Johnson and Miles. Plaintiff contends that the
challenged exhibits are irrelevant to this case, are an improper
attempt to show his bad character or litigiousness, and will
unfairly prejudice him in front of the jury.

Plaintiff additionally objects to admission of some of his
prior lawsuits because they were not disclosed to him during
discovery. *See* Dk. 104. The court addresses this contention
first.

**Failure to disclose**
It is uncontested that Defendants' Exhibits 439–450 were not
disclosed to plaintiff during discovery. Rule 26(a)(1) requires
a party to provide initial disclosures "without awaiting a
discovery request" of copies of all documents that are in
the possession, custody, or control of the party and that the
disclosing party may use to support its claims and defenses,
unless solely for impeachment. Rule 37(c)(1) provides that
"[a] party that without substantial justification fails to disclose
information required by Rule 26(a) ... is not, unless such
failure is harmless, permitted to use as evidence at a trial ...
any witness or information not so disclosed."

It is within this court's discretion to decide whether any
Rule 26(a) violation was justified or harmless. *Woodworker's
Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985,
992–93 (10th Cir.1999). The following factors guide the
court's discretion: (1) the prejudice or surprise to the party
against whom the testimony is offered; (2) the ability of the
party to cure the prejudice; (3) the extent to which introducing
such testimony would disrupt the trial; and (4) the moving
party's bad faith or willfulness. *Woodworker's Supply,* 170
F.3d at 993 (citation omitted).

Plaintiff does not allege any prejudice or surprise from
the proposed exhibits. Nor could he, given the facts that
plaintiff had prior and superior knowledge to defendants
of the existence and substance of his own lawsuits, having
had each exhibit to which he objects in his own possession
before its existence was known to defendants. Additionally,
had these exhibits been timely disclosed to the plaintiff by
defendants, the plaintiff would likely have admitted their
genuineness, as he did for all his other lawsuits which the
defendants did timely disclose to him. *See* Def. Exh. 469
(plaintiff's admissions that his other lawsuits, Defendants'
Exhibits 451–465, are genuine).

**\*2** Nor would defendants' use of these exhibits disrupt the
trial. Adding these exhibits will not require a new strategy by
plaintiff at trial, as they are like in kind to exhibits plaintiff
already knew defendants intended to use at trial. Although
reference to any other lawsuit or complaint has the potential
to disrupt the trial by shifting the jury's focus from this case to
another, the court will enforce strict limits on any permitted

reference to plaintiff's prior lawsuits, and the parties shall not be allowed to engage in a series of mini-trials on the merits of any of them. No bad faith or willfulness by defendants has been shown. Defendants' failure to disclose Exhibits 439–450 is thus harmless and shall not be sanctioned.

### Rule 404(b)

The court next examines plaintiff's objection that admission of his prior lawsuits or complaints violates Fed.R.Evid.404(b). [1]

[1]   Contrary to plaintiff's belief, the Federal Rules of Evidence apply to all claims in this case.

  Rule 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." It allows, however, for the admission of such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Rule 404(b) (emphasis added). Included among the other proper purposes for the admission of prior act evidence is impeachment. *See, e.g., United States v. Olivo,* 69 F.3d 1057, 1065 (10th Cir .1995). *United States v. Cerno,* 529 F.3d 926, 936 (10th Cir.2008).This court considers four factors in weighing the admissibility of evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose, (2) whether the evidence is relevant, (3) whether the probative value of the evidence outweighs any prejudicial effect, and (4) whether a limiting instruction is appropriate. *See Huddleston v. United States,* 485 U.S. 681, 691(1988); *United States v. Zamora,* 222 F.3d 756, 762 (10th Cir.), *cert. denied,* 531 U.S. 1043 (2000).

### Proper purpose

Prior lawsuits may be deemed to be other acts, within the meaning of Rule 404(b). Accordingly, by operation of the rule, defendants cannot admit evidence of plaintiff's prior lawsuits for the purpose of proving that plaintiff is litigious. *See Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 495–96 (7th Cir.1998); *Outley v. City of New York,* 837 F.2d 587, 592 (2nd Cir.1988)* (citation omitted). Prior lawsuits have been found admissible at trial for other purposes, however. *See e.g., United States v. Chisum,* 502 F.3d 1237, 1241–1242 (10th Cir.2007) (to show intent in a criminal tax evasion case), *cert. denied,* 552 U.S. 1211, 128 S.Ct. 1290 (2008); *Worsham*

*v. A.H. Robins Co.,* 734 F.2d 676, 688–89 (11th Cir.1984) (to show defendant's notice of a similar product defect).

Defendants allege that all of the challenged exhibits are admissible for multiple purposes: to show that plaintiff cannot recover twice for the same injuries which he previously suffered (emotional damages); to show motive and a plan to assert similar claims against those who disagree with him; to impeach the credibility of plaintiff's assertion that he was intimidated from filing further tax appeals; and to support the defense of justification for having a law enforcement officer present during the March 30, 2005 hearing. Defendants do not specify which exhibits are admissible for which purposes.

  **\*3** Showing plaintiff's plan, scheme or modus operandi through admission of prior lawsuits can undoubtedly be a proper purpose under Rule 404(b). *See e.g., Batiste–Davis v. Lincare, Inc.,* 526 F.3d 377 (8th Cir.2008); *Mathis v. Phillips Chevrolet, Inc.,* 269 F.3d 771, 776 (7th Cir.2001); *Gastineau v. Fleet Mortgage Corp .,* 137 F.3d 490 (7th Cir.1998); *Byrne v. Gainey Transp. Services, Inc.,* 2005 WL 1799213, 2 (D.Kan.2005). Impeachment is also included among the other proper purposes for the admission of prior act evidence. *Cerno,* 529 F.3d at 936; *See United States v. Olivo,* 69 F.3d 1057, 1065 (10th Cir.1995). The court has reviewed the challenged exhibits, and finds that the prior civil pleadings filed by plaintiff are similar enough to the present case in their allegations, claims and/or substance, that they could in fact reveal that plaintiff had a motive, plan or scheme to bring similar kinds of claims against those who crossed him. Because of their similarity to the present case, plaintiff's prior civil lawsuits show more than a generic pattern of litigiousness meant to show bad character.

### Relevance

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

Although the parties have not specifically addressed the relevance of each proffered exhibit, the court has reviewed them. Setting forth the detail of each of plaintiff's prior lawsuits would unnecessarily lengthen this decision, thus the court has grouped and categorized the Exhibits as follows for purposes of its own convenience: KCMO employment lawsuits (Exhibits 439–445, 460) filed from December of 2002 through October 19, 2007; Alamogordo employment lawsuits (Exhibits 446–450), filed from February of 2007 to

March of 2008; FedEx employment lawsuits (Exhibits 457 & 459) filed in 1998; Little League lawsuits (Exhibits 451–454), filed in 1993; Flooding and County lawsuits (Exhibits 455, 465–468) filed in 1996–2000; and Sons' sports lawsuits (Exhibits 456, 458, 460–464) filed in 1996–2003. Some pleadings are strikingly similar to the present case in their factual recitations, [2] some are quite similar in the legal claims made, [3] many are similar in seeking damages for emotional distress, but all of the civil pleadings filed by the plaintiff are sufficiently similar in kind to the present suit as to be facially relevant to the limited purposes found to be proper above.

[2]  See e.g., Def. Exh. 462—*Van Deelen v. Charles Stephenson, et al.,* No. 03CV1295, filed Feb. 21, 2002, in Johnson County, in which plaintiff alleges that after having twice sued the Lathrop and Gage law firm, plaintiff went to that firm where a security guard attacked, struck and choked him without cause. Soon thereafter, when alone with plaintiff, the guard allegedly said, "Lathrop and Gage has asked me to take care of you." The guard then pointed his pistol at plaintiff and threatened, "Drop those suits, if you know what's good for you. If you don't, you'd better keep your door locked at night."

[3]  See e.g., Def. Exh. 450—*Van Deelen v. Alamogordo Public Schools et al,* filed June 11, 2007, in which plaintiff asserts multiple Section 1983 counts of retaliation, free speech, equal protection, procedural and substantive due process violations, and conspiracy claims in addition to state law claims.

**Prejudice/Limiting instruction**

The trial court has broad discretion under Rule 404(b) to examine whether the probative value of evidence substantially outweighs the danger of unfair prejudice. *United States v. Youts,* 229 F.3d 1312, 1319 (10th Cir.2000). See *United States v. Hubenka,* 438 F.3d 1026, 1036 (10th Cir.), cert. denied, 549 U.S. 850, 127 S.Ct. 114 (2006).The court is aware of the potentially prejudicial nature of the challenged evidence, but not all detrimental evidence is "unfairly prejudicial."

**\*4** Evidence is not unfairly prejudicial simply because it is detrimental to a party's case. *United States v. Martinez,* 938 F .2d 1078, 1082 (10th Cir.1991). Evidence is unfairly prejudicial when it has " 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.' " *Stump v. Gates,* 211

F.3d 527, 538 (10th Cir.2000) (quoting Fed.R .Evid. 403 advisory committee's note).

*United States v. Magleby,* 241 F.3d 1306, 1315 (10th Cir.2001), cert. denied, 547 U.S. 1097 (2006). *See Cerno,* 529 U.S. at 936–37.

Fed.R.Civ.Proc. 11 requires a good faith belief that a pleading filed in court is grounded in fact. A party who files a lawsuit represents to the court that it conforms with Rule 11, or with comparable state rules governing good faith pleading. The filing of a lawsuit is generally done with considerable thought and care. *Williams v. Union Carbide Corp.,* 790 F.2d 552, 556 (6th Cir.1986). Absent unauthorized conduct on the part of a party's attorney, there is nothing unfair about the introduction of one's past lawsuits. *Id.* Here, plaintiff acted pro se, thus each factual assertion and legal theory in each of the prior civil lawsuits was crafted solely by plaintiff himself, without the assistance of an attorney. Plaintiff is hard pressed to show undue prejudice when confronted at trial with the allegations he chose to include in his own pleadings.

In this case, the primary issue is the credibility of the parties. Two crucial events give rise to all of plaintiff's claims: one witnessed only by the plaintiff and defendant Flory, and one witnessed by plaintiff, defendant Flory, and defendant Miles. Evidence which lends to or detracts from any party's credibility is thus of great probative value. The court finds that the probative value of the similar prior civil pleadings filed by the plaintiff substantially outweighs the danger of unfair prejudice. Although the potential for some prejudicial effect is possible, unfair prejudice can be prevented by a limiting instruction, which the court may give.

The court reaches a different result as to those exhibits which are not civil pleadings filed by the plaintiff. These are: Defendants' Exhibit 471—a Douglas County District Court Docket Sheet listing the names of approximately twenty cases involving the plaintiff (two criminal cases listing plaintiff as defendant and 17 civil cases listing him as plaintiff); Exhibit 472—a Eudora police department police report of an incident on Nov. 8, 2002, listing plaintiff as the victim who complained of being "threatened and menaced by suspects"; and Exhibit 473—A Eudora police department police report of an incident on January 10, 2003, listing plaintiff as the victim who complained of a man on a loader on or near plaintiff's property who refused to tell plaintiff his name; Exhibit 442 (Order of Judge Fenner, finding plaintiff "has established a pattern and practice of filing frivolous lawsuits against various individuals and entities,"

demonstrating a willingness to abuse the judicial process for his own personal gratification, "fabricated" evidence, "gave false testimony in support of his claims, verbally harassed co-counsel, the Defendants and his own witnesses, used flippant and inappropriate remarks, etc.; Exhibit 444 (order dismissing plaintiff's case against Judge Fenner pursuant to plaintiff's notice of dismissal); Exhibit 445 (Eighth Circuit order affirming Judge Fenner's ruling in plaintiff's lawsuit which plaintiff tried to Judge Fenner); and Exhibit 447 (order dismissing plaintiff's case against the Truth or Consequences Board of Education and others, pursuant to plaintiff's notice of dismissal).

**\*5** Defendants have not shown any proper purpose for these exhibits. These are insufficiently similar to the present case to have much, if any probative value, and do not appear to be offered for a purpose other than showing plaintiff's litigious nature. Additionally, the probative value of these exhibits is outweighed by the danger of unfair prejudice. Plaintiff's motion in limine and objections shall be granted as to these exhibits. *See* Dk. 104. As a result, the court also grants plaintiff's motion to preclude the testimony of the officers who wrote Exhibits 472 and 473, *i.e.,* Sgt. G. Dahlem, and Officer P.C. Casagranda of the Eudora Police Department.

### Rule 405(b)

Defendants also contend that plaintiff's prior lawsuits, orders, and complaints are admissible pursuant to Fed.R.Evid. 405(b), which provides:

> In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

Defendants allege that plaintiff's character trait of being disputatious is an essential element of their "same decision" defense—*i.e.,* that they would have had a law enforcement officer present during the March 30, 2005 hearing even if plaintiff had not previously sued them, because of their knowledge of his pattern of behavior. This rule provides a separate basis for admission of those lawsuits known to the defendants prior to March 30, 2005.

Defendants separately contend that plaintiff's previous claims of emotional damages are relevant and admissible for the purpose of preventing recovery in this lawsuit for similar damages caused by other acts of other defendants in other cases. To the extent that plaintiff has made similar damages claims in his prior civil lawsuits, such lawsuits are admissible for the purpose showing the existence of plaintiff's alleged pre-existing injuries, whether emotional or otherwise. *See Dugan v. EMS Helicopters, Inc.,* 915 F.2d 1428, 1431–1432 (10th Cir.1990) ("Historically, where a plaintiff files a lawsuit against different defendants for the same injuries, allegations from that prior complaint are considered evidentiary admissions against interest.")

### Rule 613

Defendants additionally assert that plaintiff's prior lawsuits are admissible as a prior statement of a witness under Rule 613. To the extent that defendants intend to use plaintiff's prior statements as inconsistent statements governed by subsection (b), the court agrees. "Prior pleadings may be introduced on cross examination for use as an impeachment tool under Fed.R.Evid. 613." *Dugan,* 915 F.2d at 1432. Subsection (a) of that rule, however, merely permits a method of examination for, and not a basis for admissibility of, prior statements. Plaintiff's prior pleadings are, of course, his own prior statements offered against him, and may be introduced as substantive evidence pursuant to Fed.R.Evid. 801(d)(2). *Dugan,* 915 F.2d at 1432; *LWT, Inc. v. Childers,* 19 F.3d 539, 542 (10th Cir.1994); *Haynes v. Manning,* 717 F.Supp. 730, 733 (D.Kan.1989), *aff'd in part and rev'd in part,* 917 F.2d 450 (10th Cir.1990); *Mason v. Texaco, Inc.,* 129 F.R.D. 542, 543–544 (D.Kan.1989) (finding plaintiff's prior pleadings may be admissible even if they are not inconsistent with her present stance, stating "the established rule is that prior pleadings may be considered as adverse evidentiary admissions in subsequent proceedings.")

### Mini-trials

**\*6** Despite the court's finding that the plaintiff's civil pleadings are admissible for the purposes noted above, the court finds it necessary to curtail their use, both to prevent unfair prejudice and to preclude a series of mini-trials on the merits of each of plaintiff's prior civil pleadings. Accordingly, the court directs the parties to limit the scope of their examination regarding these exhibits to the fact that these pleadings were filed by the plaintiff, and to the plain language on the face of them. The parties shall not be permitted to testify about the validity or invalidity of those lawsuits or refer to facts underlying them which are not stated in the exhibits themselves. Plaintiff will not be precluded from stating his belief, if any, that the allegations in the lawsuits were true, but shall not be permitted to explain the factual

basis underlying that belief. Similarly, defendants shall not be permitted to explain the factual basis underlying any belief that such lawsuits were frivolous. Additional limits on use of these exhibits may be added at trial, as deemed necessary by the court.

### Defendants' motion in limine

By this motion, defendants move the court to preclude evidence regarding two matters: 1) the validity of the tax appraisals on plaintiff's land; and 2) a lawsuit plaintiff filed against defendants' law firm, defendants' former counsel (Mr. Seck), an insurance company and a process server.

Defendants contend that the validity of the appraisals is barred by the doctrines of res judicata, collateral estoppel and exhaustion of administrative remedies, and is irrelevant. In response, plaintiff reminds defendants that they stipulated in the Pretrial order to the admission of this evidence, subject to objections based solely on relevancy, and waived the affirmative defenses of res judicata and the like by failing to include them in the Pretrial order. *See* Dk.61, p. 3.

The court finds it unnecessary to reach the issue of waiver because defendants are correct that the validity of the prior appraisals is not relevant to any issue in this trial. Accordingly, inquiry into the amount of valuation, the method of valuation, the condition of plaintiff's property, the absence of a home inspection or appraisal, and the like shall not be permitted. Neither party shall be precluded, however, from offering evidence of the acts or statements of the parties during informal hearings involving any party, to the extent such evidence is probative to support either plaintiff's theory that defendants had reason to retaliate against him or defendants' theory that the presence of a security guard during plaintiff's March 30, 2005 hearing was based on legitimate business reasons that do not violate the First Amendment. Additional limits on use of these exhibits may be added at trial, as deemed necessary by the court.

Defendants' objection to the lawsuit plaintiff filed against defendants' current law firm (Fisher, Patterson *et al* ), one of the firm's attorneys, an insurance company and a process server (Exhibits 162, 163) lacks substance. The court does not agree that the evidence of payment ($1,001.00) is necessarily barred by Rule 408. Defendants have not offered a sound reason for exclusion, nor has plaintiff shown any relevance, of this exhibit. Because defendants have failed to show the court that this evidence should be excluded at this time, the court

will await a showing of relevance, if any, from the plaintiff at trial.

### Plaintiff's motion for sanctions/Defendants' motion to amend

**\*7** After defendants filed their final witness and exhibit list, plaintiff correctly objected that it failed to include the subject matter of any witness's testimony, and failed to disclose the telephone number and address for a witness, Ms. Metcalf, among other matters. Defendants then filed a motion to amend their witness and exhibit list to cure those failures. Defendants also sought to add new exhibits, which are photographs and a diagram of the cubicle in which the March 30, 2005 hearing occurred. Plaintiff then moved for sanctions against defendant's counsel for failing to timely disclose material evidence, namely, the telephone number and address of Ms. Metcalf, the summaries of testimony for other witnesses, and the new exhibits.

The court refers the parties to its discussion above regarding Rule 37 sanctions. Defendants have informed the court of the reasons for their delay, [4] and the court finds good cause shown for defendants' failure to previously disclose to plaintiff Ms. Metcalf's telephone number and address. Additionally, any prejudice plaintiff may have suffered from not having had Ms. Metcalf's telephone number or address earlier has been fully cured by defendant's willingness to reopen discovery so plaintiff can depose her. Doing so will not require any continuance in the trial date.

[4]    See Defendants' motion to amend; Defendants' response to plaintiff's motion for sanctions.

Nor has the plaintiff shown prejudice from defendants' failure to include a summary of anticipated trial testimony from Miles, Flory, Johnson, and Fangohr. These witnesses are defendants, the nature of whose testimony has previously been revealed to plaintiff by virtue of multiple prior proceedings in this case.

Similarly, the court finds no prejudice by defendants' addition of new exhibits, since they are merely photographs and a diagram of the location in which some of the disputed events of this lawsuit occurred. These are objective depictions not subject to reasonable dispute, will be helpful to the jury, and have not been shown to be prejudicial to plaintiff. Plaintiff's objections to lack of foundation can be raised at trial, if appropriate. Accordingly, defendants shall be permitted to file their amended witness and exhibit list, and plaintiff's

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2599 Filed 03/24/16 Page 27 of 35
Van Deelen v. Johnson, Not Reported in F.Supp.2d (2008)
2008 WL 4683022

motion for sanctions shall be denied, as shall his objections to defendants' demonstrative exhibits.

**Allegations of bad faith**

The court finds it necessary to address another matter. Plaintiff is not an attorney but plaintiff has made assertions regarding defense counsel's bad faith which assertions this court would not countenance, if they had been made by an attorney. Such personal accusations are unfounded and inappropriate. Not every failure, oversight or error springs from bad faith, nor does every omission or misstatement constitute perjury. In particular, the court notes the following personal accusation by plaintiff:

> Furthermore, the testimony of Ms. Metcalf proffered by the defendants is patently false and fraudulent. Ms. Metcalf did not attend the March 30, 2005 tax appeal hearing. The only persons in attendance were plaintiff, defendant Miles and defendant Flory.

**\*8** Dk. 114, p. 3. The testimony proffered by defendants states only that "Defendants anticipate that Metcalf can testify regarding plaintiff's behavior and language during the hearing in her presence ." Dk. 109 p. 2. This court has never seen any assertion by defendants that Ms. Metcalf was present during the March 30, 2005 tax appeal hearing, and plaintiff misconstrues the motions to reach that result. Even a cursory reading of defendants' filings unambiguously shows that Ms. Metcalf's anticipated testimony is not about the March 30, 2005 tax appeal hearing, but is about the tax appeal hearing in 2002 at which she and the plaintiff were present. *See* Dk. 109. Plaintiff is well aware of this fact, having offered as one of his own exhibits a tape recording of at least part of that same hearing with Ms. Metcalf on July 24, 2002. *See* Exh .104. [5]

[5] The court, having listened to this tape, does not agree with plaintiff's assertion that counsel falsely implied that the tape is incomplete. *See* plaintiff's motion for leave to reply, filed Oct. 17, 2008, p. 2.

Plaintiff is cautioned that this court takes very seriously every assertion that an attorney is asserting "false and fraudulent" evidence in its court. In the event that plaintiff makes similar unfounded assertions in the future, the court will not hesitate to sanction the plaintiff. The court fully expects that counsel and the plaintiff in this case will treat each other with courtesy and respect, despite the adversarial nature of their positions.

**Defendants' objections to plaintiff's exhibits**

The court notes that defendants have filed objections to some of plaintiff's exhibits. This document consists mostly of a list of the challenged exhibits, with a cursory statement of defendants' objections, *i.e.,* "hearsay," and "lack of foundation." The court reserves ruling on these objections until they are reasserted and properly argued at trial.

**Deposition designations**

Both parties have designated testimony from plaintiff's deposition to be presented at trial, to which the other objects. *See* Dk. 100, 106, 112, 123. By way of untimely supplemental objection, plaintiff objects to any use of his deposition, because he will be present to testify at trial. This objection is overruled pursuant to Fed. R. Civ. Pro. 32, which allows a party to introduce "as a part of his substantive proof, the deposition of his adversary, and it is quite immaterial that the adversary is available to testify at the trial or has testified there." *King & King Enters. v. Champlin Petroleum Co., 657 F.2d 1147, 1163–64 (10th Cir.1981)* (internal quotation marks and citation omitted), *cert. denied, 454 U.S. 1164 (1982).* Plaintiff additionally objects to defendants' designation of page 74, line 18 through page 75 line 12 because it fails to include a change made via his errata sheet. In response, defendants have agreed to include the change made by the errata sheet, mooting this objection.

Plaintiff next objects that his deposition testimony about his lawsuit against Mr. Massey is irrelevant. This objection is overruled for the reasons stated above relating to plaintiff's motion in limine to exclude his prior lawsuits. Nonetheless, the court has placed limits on the parties' discussion of prior lawsuits, and finds that this deposition testimony serves no legitimate purpose not already served by the admission of Exhibit 451, which is plaintiff's lawsuit against Mr. Massey. Accordingly, the court sustains plaintiff's objection to the designation of his deposition at pages 118, lines 8–18. As a result, plaintiff will not counter-designate the lines following those, *see* Dk. 106, p. 3, mooting defendants' objection to that potential counter-designation.

**Amendment of order regarding parties**

**\*9** This court previously found that all individual defendants remain as parties to this case (Dk.121). The court has *sua sponte* reexamined that conclusion in light of its more recent

2008 WL 4683022

review of the Tenth Circuit's decision remanding this case, which stated in part:

> Mr. Van Deelen further conceded at oral argument that his appeal on First Amendment grounds pertains only to Mr. Miles, Mr. Johnson, and Deputy Flory, and that he does not appeal the district court's conclusion that he lacks evidence of retaliatory conduct by Sergeant Fangohr or Sheriff McGovern.

Dk.82, p. 8. The court notes that although Sergeant Fangohr remains a party to plaintiff's state law conspiracy claim, Sheriff McGovern is not named in that claim. Accordingly, the court finds that Ken McGovern should be dismissed from this case, and that defendants Kenneth Fangohr and Ken McGovern should be dismissed from plaintiff's First Amendment claims.

IT IS THEREFORE ORDERED that plaintiff's motion for leave of court to file a reply brief (Dk.130) is granted; that plaintiff's motion in limine (Dk.107) is granted as to Exhibits 471–473, 442, 444, 445 and 447 and denied in all other respects; that defendants' motion in limine (Dk.110) is granted as to the validity of the appraisals and is denied as to the Seck lawsuit.

IT IS FURTHER ORDERED that defendants' motion to file amended final witness and exhibit list (Dk.109) is granted; that plaintiff's motion for sanctions (Dk.114) is denied; that plaintiff's objections to defendants' final witness and exhibit list (Dk.104) are overruled except as to Exhibits 471–473, 442, 444, 445 and 447 and witnesses Dahlem and Casagranda; that plaintiff's objections to defendants' demonstrative exhibits (Dk.137) are overruled; and that defendants' objections to plaintiff's trial exhibits (Dk.105) are denied without prejudice to their reassertion during trial.

IT IS FURTHER ORDERED that plaintiff's objection to defendants' designation of his deposition (Dk.106) is sustained as to pages 118, lines 8–18, and is overruled as to plaintiff's remaining objections; that defendants' objection to plaintiff's potential counter-designation (Dk.112) is denied as moot; and that plaintiff's supplemental objections to defendants' designations (Dk.123) are overruled.

IT IS FURTHER ORDERED that defendant Ken McGovern is dismissed as a party from this case and that defendants Kenneth Fangohr and Ken McGovern are dismissed from plaintiff's First Amendment claims.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4683022

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Wilkins v. Ford Motor Co., Not Reported in F.Supp.2d (2003)

2003 WL 25694928

2003 WL 25694928
Only the Westlaw citation is currently available.
United States District Court,
N.D. Oklahoma.

Stanley Keith WILKINS and
Leza F. Wilkins, Plaintiff(s),
v.
FORD MOTOR COMPANY; Jordan Research
Corp. and Forest River, Inc., Defendant(s).

No. 01-CV-931-E (J).
|
April 23, 2003.

Named Expert: Dr. Kenneth Laughery

**Attorneys and Law Firms**

Denney & Barrett, Norman, OK, Richard L. Denney, Lydia Joann Barrett, Sue Lister, Goodman Lister & Peters PC, Detroit, MI, for Plaintiffs.

Barry C. Toone, Snell & Wilmer, Phoenix, AZ, Jeffrey C. Warren, Vaughn A. Crawford, Chubbuck Smith Rhodes Stewart Elder, Earl R. Donaldson, Wheeler Wheeler Morgan Faulkner Ballard & Long, Oklahoma City, OK, Julie A. Shull, Shook Hardy & Bacon, Kansas City, MO, George E. Wolfe, Paul A. Williams, George E. Wolf, Thayla Painter Bohn, Feldman Franden Woodard Farris & Boudreaux, Pamela Louise Anthony, Atkinson Haskins Nellis Holeman Phipps Brittingham & Gladd, Tulsa, OK, Jennifer Rae Annis, K. Clark Phipps, for Defendants.

### ORDER

SAM A. JOYNER, United States Magistrate Judge.

**\*1** Plaintiff and Defendant Ford Motor Company announced in Court that Plaintiff and Defendant Ford Motor Company have reached a settlement. The parties anticipate that settlement papers will be filed within thirty days. Plaintiff and Defendant Ford Motor Company agreed that Plaintiff shall, at the pre-trial conference before Judge Ellison, inform the District Court of the settlement with Ford Motor Company. Counsel for Ford Motor Company will not attend the pre-trial conference.

The Court heard argument on numerous motions in limine on April 23, 2003, and made the following rulings from the bench.

#### Document Numbers 37-1 and 54-1
Defendant Jordan Research Corporation's (hereafter "Jordan") motion to strike expert witness Syson's opinions, and Defendant Jordan's third motion in limine are **overruled.** [Docket No. 37-1, 54-1]. The Court finds the document entitled "Trailer Sway Facts and Opinions" prepared by witness Syson does not satisfy the requirements for a supplemental expert report required by Fed. R. Civ. Pro. 26(a)(2)(B). However, Syson's deposition was taken in November 2002, and at that time Plaintiff was given a copy of the "Trailer Sway Facts and Opinions" and informed Defendants that Syson's expert opinion would include the additional matters discussed on that document. Syson had some information on 26 patents at the deposition relating to trailer sway some of which relate to braking mechanisms to control sway which further informed Plaintiff that Syson intends to testify on that subject. Plaintiff has satisfied the preliminary requirements of Daubert. Syson has the necessary educational background and experience to qualify as an expert witness on the subject of braking mechanisms to control sway. The Court is satisfied that Syson satisfies the Daubert gate-keeping functions.

#### Document Number 47-1
Defendant Jordan's motion to extend the deadlines for filing of expert witness reports is an agreed to motion. The Court grants the motion. [Docket No. 47-1].

#### Document Number 52-1
Defendant Jordan Research Corporation's first motion in limine with regard to the expert testimony of Dr. Kenneth Laughery is granted by agreement. [Docket No. 52-1].

#### Document Number 53-1
Defendant Jordan Research Corporation's second motion in limine is overruled. [Docket No. 53-1]. The Court will not decide the weight that will be given to the testimony of Mr. Arndt. The Court concludes that Plaintiff has established that Mr. Arndt has sufficient scientific reliable and relevant knowledge which can be of some assistance to the jury. The Court additionally **overrules** Defendant's request to exclude the videotape demonstration.

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-11916-GCS-SDD ECF No. 77-4, PageID.2602 Filed 03/24/16 Page 30 of 35
Wilkins v. Ford Motor Co., Not Reported in F.Supp.2d (2003)
2003 WL 25694928

*Document Number 57-1*

The Court **grants in part and overrules in part** Plaintiff Wilkins' Omnibus Motion in Limine. [Docket No. 57-1]. The Court grants, based on no objection by Defendant Jordan, the following:

(1). Plaintiff's request number one (pertaining to ethnic or religious beliefs of Plaintiffs) is granted by agreement;

**\*2** (2). Plaintiff's request number two (evidence of prior settlement discussions) is granted by agreement;

(3). With regard to Plaintiff's request number three, which relates to collateral sources of payment, the Court sustains Plaintiff's motion prohibiting the introduction of such evidence unless the Plaintiff places collateral sources at issue.

(4). Plaintiff's request number four (coaching witnesses and making speaking objections) is granted by agreement;

(5). Plaintiff's request number five (type of car driven by Plaintiff) is granted by agreement;

(6). With regard to Plaintiff's request number six, related to prior lawsuits, settlements, or negotiations, the Court overrules the request finding relevance objections should be made at trial. The Court specifically finds that testimony related to Plaintiff's prior bankruptcy will be admissible if Plaintiff continues to pursue a claim for future earnings.

(7). Plaintiff's request number seven, which relates to evidence of prior marriages of Leza Williams and marital discord, is sustained with regard to prior marriages and divorces, and overruled with regard to marital discord. Evidence related to marital discord shall be admissible as relevant to loss of consortium.

(8). Plaintiff's request number eight (related to the state of residence of witnesses) is granted by agreement;

(9). Plaintiff's request number nine (related to prior criminal charges or convictions) is granted by agreement;

*Document Number 60-1*

Plaintiff has filed a motion to prohibit statements or questions regarding Syson's "loss of employment." The motion is sustained based on Defendant Jordan having no objection to the motion. [Docket No. 60-1].

*Document Numbers 61-1 and 61-2*

The Court finds the Motion by Ford to exclude evidence, which was adopted, in part, by Jordan, moot, by agreement of the parties, based on Ford's settlement with Plaintiff. [Docket No. 61-1, 61-2].

*Document Numbers 116-1*

Plaintiff's motion in limine to exclude testimony of Defendant Jordan's expert Ronald Rhoten is granted to the extent that Rhoten shall be excluded from testifying with regard to vehicle dynamics. [Docket No. 116-1].

*Document Numbers 55-1, 56-1, 58-1, 62-1, 102-1*

The following motions were filed by Defendant Ford Motor Company, and the Court concludes that the motions are moot due to the settlement between Ford and Plaintiff. [Docket Nos. 55-1, 56-1, 58-1, 59-1, 62-1, 102-1].

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 25694928

**WESTLAW** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 219771
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.

Oscar A. ARAUJO, et al

v.

TREASURE CHEST CASINO, L.L.C., et al

No. 97–3043.
|
April 14, 1999.

ORDER AND REASONS

CLEMENT, District J.

**\*1** Before the Court are four motions: (1) Plaintiff Oscar Araujo's Motion for Reconsideration; (2) Defendant Treasure Chest Casino, L.L .C.'s Motion *in Limine* to Exclude the Testimony and Expert Report of David Cole; (3) Plaintiff Oscar Araujo's Motion *in Limine* to Exclude the Testimony and Expert Report of James M. Sunderlin; and (4) Plaintiff Oscar Araujo's Motion *in Limine* to Exclude Particular Exhibits from Trial, to Exclude All Testimony Relative to Plaintiff's Bankruptcy Proceedings, to Exclude All Testimony Relative to Plaintiff's Workers' Compensation Claim and/ or Benefits, and to Exclude All Testimony About Plaintiff's Alleged Comparative Fault. The Court resolves these motions as follows.

A. BACKGROUND

While standing on a ladder and cleaning windows during the course of his employment for Defendant Treasure Chest Casino, L.L.C. ("Treasure Chest"), Plaintiff Oscar Araujo ("Araujo") allegedly fell and sustained injuries. The parties dispute whether Araujo was a Jones Act seaman, whether the ladder was eight or twelve feet tall, and whether the ladder's legs were properly opened and locked. Araujo and his wife Angiolina Araujo brought this action against Treasure Chest, ABC Insurance Corporation, and the M/V TREASURE CHEST pursuant to the Jones Act (46 U.S.C. § 688) and the general maritime law for unseaworthiness.

B. MOTION FOR RECONSIDERATION

By motion set for hearing on March 10, 1999, Treasure Chest moved to exclude the testimony and expert report of David Cole ("Cole"). Because Araujo did not timely file an opposition memorandum, this Court by order signed on March 5, 1999 granted Treasure Chest's motion as unopposed. This Court permitted Araujo to file a motion for reconsideration within thirty days. On March 15, 1999, Araujo filed a motion for reconsideration. Having considered the motion for reconsideration, Treasure Chest's opposition memorandum, and the applicable law, the Court grants the motion for reconsideration. The Court will reconsider the merits of Treasure Chest's motion to exclude the testimony and expert report of Cole. Pursuant to the Court's March 5, 1999 order, the Court awards Treasure Chest its costs including attorney's fees incurred in connection with Araujo's motion for reconsideration.

C. EXPERT TESTIMONY BY DAVID
COLE AND JAMES SUNDERLIN

Rule 702 of the Federal Rules of Evidence provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 702 requires two preliminary determinations by the Court. First, the proffered witness must be qualified as an expert by knowledge, skill, experience, training, or education. *Moore v. Ashland Chemical. Inc.,* 126 F.3d 679, 684 (5th Cir.1997). Second, the proffered expert's opinion, inference or other testimony must be based on scientific, technical, or other specialized knowledge "that will assist the trier of fact to understand the evidence or determine a fact in issue." *Id.* Because the premise of receiving expert testimony is that such testimony will assist the trier of fact, "the trial judge ought to insist that the proffered expert bring to the jury more than the lawyers can offer in argument ." *In re: Aircraft Disaster at New Orleans. Louisiana,* 795

F.2d 1230, 1233 (5th Cir.1986). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed.R.Evid. 702 advisory committee note (quoting Ladd, *Expert Testimony*, 5 VAND. L. REV. 414, 418 (1952)).

 **\*2** Interestingly, Araujo and Treasure Chest each move to exclude the other's expert witness as unhelpful to the trier of fact. Araujo's expert, Cole, intends to offer three expert opinions: (1) Araujo was injured due to the negligence of Treasure Chest's failure to provide proper supervision and safety equipment/training; (2) these failures amounted to unseaworthiness; and (3) Araujo was performing duties typical of a seaman aboard the vessel at the time of his alleged injuries. Treasure Chest's expert, James Sunderlin ("Sunderlin"), intends to offer two expert opinions: (1) Araujo's accident was due to his climbing and using a ladder improperly, and (2) "it is possible and reasonable to safely employ an eight-foot (or longer) stepladder to perform these tasks using the available tools as described in the testimony."

Not surprisingly, Araujo and Treasure Chest each insist that their own expert witness would be helpful, but not the other party's expert witness. Araujo argues that "unlike ... Cole, Mr. Sunderlin's ultimate conclusion does not rely on any safety statutes and thus, his testimony does not provide the trier of fact with any information, insight, or assistance in understanding the evidence or determining facts at issue." [1] Meanwhile, Treasure Chest contends that unlike Cole, Sunderlin "does not hold himself out as an expert in innumerable fields, but strictly limits his testimony to the areas where he has considerable education, practical and technical knowledge—specifically ladders." [2] Treasure Chest also contends that unlike Cole, Sunderlin does not reach legal conclusions, but only factual conclusions.

In Treasure Chest's motion to exclude Cole's testimony, Treasure Chest argues that "[t]he trier of fact is certainly capable of understanding the evidence in this case and determining the respective parties' liability, if any, without Mr. Cole's assistance ." [3] Treasure Chest points out that "the instrumentalities involved, i.e. cleaning windows from an ordinary step ladder, are clearly not beyond the common understanding of the average juror." [4] Treasure Chest even

cites *Lake v. Emigh*, 190 P.2d 550, 565 (Mont.1948), for the proposition that a ladder is "one of the most simple contrivances in general use." [5] Similarly, Araujo in his motion to exclude Sunderlin's testimony argues that Sunderlin's "findings of fact are inappropriate for an expert to decide. Findings of fact are solely within the province of the jury." [6] Sunderlin's report supports Araujo's position by describing Araujo's alleged misuse of the ladder as "obvious."

This Court concludes that the opinions of both Cole and Sunderlin are unhelpful because they relate to issues within the common knowledge, experience, and understanding of the average lay juror. The fact that Cole relies on safety regulations and Treasure Chest's Safety Manual does not make his opinions any more helpful. To the contrary, his opinions are doubly objectionable because he draws legal conclusions and even uses terms such as "negligence," "unseaworthiness," and "seaman." Put simply, testimony by Cole and Sunderlin would bring to the jury no more than the lawyers can offer in argument and through presentation of fact witnesses. Accordingly, the Court grants both Treasure Chest's motion to exclude the testimony and expert report of Cole and Araujo's motion to exclude the testimony and expert report of Sunderlin.

### D. TESTIMONY RELATIVE TO WORKERS' COMPENSATION CLAIMS/BENEFITS

 **\*3** Araujo moves to exclude from trial all evidence of workers' compensation benefits for injuries suffered in the accident at issue and for any previous accidents. Araujo argues that evidence of workers' compensation benefits would be irrelevant and unduly prejudicial, confusing or misleading under Rules 402 and 403 of the Federal Rules of Evidence.

With respect to current workers' compensation claims, Treasure Chest argues that benefits paid by Treasure Chest between January 28, 1997 (the date of the accident at issue) and May 20, 1997 (the date doctors allegedly cleared Araujo for work) are relevant to Araujo's claim for maintenance and cure. In a reply memorandum, Araujo agrees to "stipulate as to the amount paid by the Treasure Chest, upon submission to the Plaintiff of an accounting of benefits paid." This Court orders Treasure Chest to submit to Araujo an accounting of such benefits by April 23, 1999. The parties shall attempt to stipulate as to the amount of benefits paid and incorporate the stipulation into the pretrial order.

With respect to prior workers' compensation claims, Treasure Chest intends to introduce records from a work-related accident in 1990 in order to demonstrate that Araujo is a "malingerer." According to Treasure Chest, Araujo in 1990 injured his right hand and refused to return to work for a year and a half after his recovery. Allegedly, Araujo continued to collect workers' compensation benefits during this period. Araujo denies these allegations, stating that in 1991 he was physically incapable of returning to work and, upon exhaustion of his medical leave, was fired. As evidence that Araujo is once again "malingering," Treasure Chest contends that the opinions of Dr. Kevin Bianchini and Dr. Joseph Gautreaux, III, plus an audiological test, indicate that Araujo's current claims of brain injury, vertigo, and hearing loss are exaggerated. This Court concludes that evidence of workers' compensation benefits paid in connection with the 1990 accident would be irrelevant and unduly prejudicial, misleading, and confusing. Rather than permitting the parties to stage a mini-trial within a trial on whether Araujo "malingered" in 1991 and 1992, the Court directs the parties to focus on whether and to what degree Araujo sustained injuries in 1997. If Araujo's claims of injury are truly exaggerated, then Treasure Chest will not be prejudiced by this focus. Araujo's motion is granted with respect to evidence of workers' compensation claims for accidents prior to January 28, 1997.

**E. TESTIMONY RELATIVE TO PLAINTIFF'S BANKRUPTCY PROCEEDINGS**

Araujo moves to exclude evidence of prior bankruptcy proceedings. Araujo argues that such evidence would be irrelevant and unduly prejudicial, misleading, and confusing pursuant to Rules 402 and 403 of the Federal Rules of Evidence.

According to Treasure Chest, Araujo and his wife filed for bankruptcy on October 28, 1996. Although the January 28, 1997 accident allegedly occurred during the pendency of bankruptcy proceedings, Treasure Chest asserts that Araujo failed to include his resulting claims in his schedule of assets. Treasure Chest intends to introduce evidence of Araujo's prior bankruptcy proceedings for three reasons: (1) to demonstrate that Araujo's alleged emotional injuries resulted from financial problems, not the January 28, 1997 accident, (2) to utilize the detailed information in Araujo's bankruptcy filing for establishing Araujo's earning capacity,

and (3) to question Araujo's credibility based on his failure to amend his schedule of assets.

**\*4** Araujo, on the other hand, maintains that a prior bankruptcy proceeding could not have caused emotional injury because "if [he] was discharged in Bankruptcy, then he should have no money problems because he is debt free." Furthermore, Araujo contends that "to suggest that worrying over high bills is comparable to worrying over no income and no job, is also absurd. There is a clear and articulable difference between the two conditions." Araujo fails to address Treasure Chest's remaining two reasons for introducing evidence of bankruptcy proceedings.

The Court finds that evidence of Araujo's prior bankruptcy proceedings may be highly relevant to the issue of emotional damages. The Court will not exclude such evidence. True, there may be a "clear and articulable difference" between worrying over high bills and worrying over no income and no job. However, this "difference" is for the jury to ascertain, not the Court. As the Court finds no reason to exclude evidence of bankruptcy proceedings at this point, the Court declines to rule on whether such evidence is admissible for purposes of establishing Araujo's earning capacity and questioning his credibility. Araujo's motion to exclude evidence relative to prior bankruptcy proceedings is denied.

**F. TESTIMONY RELATIVE TO PLAINTIFF'S ALLEGED COMPARATIVE FAULT**

Araujo moves to exclude evidence of his alleged comparative fault. He argues that such evidence would be unduly prejudicial, misleading, and confusing pursuant to Rule 403 of the Federal Rules of Evidence. Araujo's argument is twofold. First, he objects to the introduction of evidence implying that he had a duty to find the safest method available for doing his work. Second, Araujo argues that Treasure Chest committed negligence *per se* by violating several regulations established under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651, *et seq.*, specifically 29 C.F.R. § 1915 (requiring safety belts in certain instances where employee working above five feet) and 29 C.F.R. § 1926 (requiring safety belts in certain instances where employee working above six feet). On the assumption that Treasure Chest has violated these regulations, Araujo argues that he as a Jones Act seaman cannot be held liable for contributory negligence under the Federal Employer's Liability Act ("FELA"), *see* 45 U.S.C. § 53 (providing that

1999 WL 219771

no injured employee may be held liable for contributory negligence where the common carrier's violation of a safety statute contributed to the injury).

Treasure Chest as a preliminary matter disputes Araujo's seaman status. Even assuming that Araujo is a seaman, Treasure Chest argues that the Coast Guard's regulations are the applicable regulatory authority not OSHA. See 29 U.S.C. § 653(b)(1) ("Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies ... exercise authority to prescribe or enforce standards or regulations affecting occupational safety and health."). Additionally, Treasure Chest asserts that 29 C.F.R. §§ 1915 and 1926 are inapplicable to the facts at hand. Even assuming a violation of OSHA, Treasure Chest argues that such a violation does not constitute negligence *per se* under FELA, 45 U .S.C. § 53. *See* *Ries v. National R.R. Passenger, Corp.,* 960 F.2d 1156 (3d Cir.1992).

 **\*5** For purposes of Araujo's motion *in limine,* it is unnecessary for this Court to resolve the issues of law raised by Araujo and Treasure Chest. This is so because Araujo's motion assumes that he is a seaman and that Treasure Chest has violated an OSHA regulation. This Court will make neither assumption. As Araujo has not moved for summary judgment on these issues, the Court will leave them for the jury to decide. A seaman is contributorily negligent if he does not act with ordinary prudence under the circumstances. *Crawford v. Falcon Drilling Co., Inc.,* 131 F.3d 1120, 1124–27 (5th Cir.1997) (relying on *Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331 (5th Cir.1997). Thus, the Court will permit evidence of contributory negligence. If Araujo can demonstrate in his trial memorandum and at trial that Treasure Chest's violation of a safety regulation bars consideration of contributory negligence, the Court will address this issue through jury instructions and the verdict form. Accordingly, the Court denies Araujo's motion to exclude evidence relative to his alleged comparative negligence.

## G. PARTICULAR EXHIBITS

Araujo specifically moves to exclude Treasure Chest's exhibits numbered and identified as follows: (10) Records of Workers' Compensation benefit payments, (11) Plaintiff's Bankruptcy Records, (12) Plaintiff's Louisiana Workers' Compensation claim documents and pleadings, (13) Plaintiff's Rhode Island Workers' Compensation claim documents and pleadings. In light of the Court's above

rulings, the Court grants Araujo's motion with respect to exhibits pertaining to workers' compensation claims for accidents prior to January 28, 1997. Otherwise, Araujo's motion to exclude particular exhibits is denied.

For the reasons set forth above,

IT IS ORDERED that Plaintiff Oscar Araujo's Motion for Reconsideration of the Court's March 5, 1999 order is GRANTED. The Court awards Treasure Chest its costs including attorney's fees incurred in connection with this motion.

IT IS FURTHER ORDERED that Defendant Treasure Chest Casino, L.L.C .'s Motion *in Limine* to Exclude the Testimony and Expert Report of David Cole is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Oscar Araujo's Motion *in Limine* to Exclude the Testimony and Expert Report of James M. Sunderlin is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Oscar Araujo's Motion to Exclude All Testimony Relative to Workers' Compensation Claims/Benefits is DENIED IN PART and GRANTED IN PART. The parties shall attempt to incorporate into the pretrial order a stipulation on benefits paid with respect to the January 28, 1997 accident.

IT IS FURTHER ORDERED that Plaintiff Oscar Araujo's Motion to Exclude All Testimony Relative to Plaintiff's Bankruptcy Proceedings is DENIED.

IT IS FURTHER ORDERED that Plaintiff Oscar Araujo's Motion to Exclude All Testimony About Plaintiff's Alleged Comparative Fault is DENIED.

IT IS FURTHER ORDERED that Plaintiff Oscar Araujo's Motion to Exclude Particular Exhibits from trial is GRANTED IN PART and DENIED IN PART.

| | |
|---|---|
| 1 | Motion in Limine to Exclude the Testimony and Expert Report of James M. Sunderlin, p. 4. |
| 2 | Motion in Limine to Exclude the Testimony and Expert Report of James M. Sunderlin, p. 4. |
| 3 | Motion in Limine to Exclude the Testimony and Expert Report of David Cole, p. 4. |

1999 WL 219771

4       Motion in Limine to Exclude the Testimony and Expert Report of David Cole, p. 6.

5       Motion in Limine to Exclude the Testimony and Expert Report of David Cole, p. 6.

6       Motion in Limine to Exclude the Testimony and Expert Report of James M. Sunderlin, p. 4.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 219771

---

**End of Document**                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.