# Exhibit A

Case 2:14-cv-11916-GCS-SDD ECF No. 80-2, PageID.2709 Filed 04/08/16 Page 2 of 19
Jama v. City of Memphis, Not Reported in F.Supp.2d (2006)
2006 WL 5499283

2006 WL 5499283
Only the Westlaw citation is currently available.
United States District Court,
W.D. Tennessee,
Western Division.

Abdisitar JAMA, Plaintiff,
v.
CITY OF MEMPHIS, et al., Defendants.

No. 03-2965 Ma/P.
|
Dec. 29, 2006.

Named Expert: Ken Barnes

**Attorneys and Law Firms**

Danese K. Banks, Cochran Cherry Givens Smith & Bolton, Memphis, TN, for Plaintiff.

Amber Isom-Thompson, Robert D. Meyers, Kiesewetter Wise Kaplan Schwimmer & Prather, PLC, Memphis, TN, Deborah A. Godwin, Mary Elizabeth McKinney, Godwin Morris Laurenzi & Bloomfield, P.C., Memphis, TN, for Defendants.

### ORDER ON PENDING MOTIONS *IN LIMINE*

SAMUEL H. MAYS, JR., District Judge.

**\*1** Plaintiff Abdisitar Jama ("Jama") brings suit against the City of Memphis ("Memphis") under the Tennessee Governmental Tort Liability Act ("TGTLA"), T.C.A. § 29-20-101, *et seq.*[1] On July 11, 2005, Memphis has filed seven motions *in limine* seeking to exclude evidence. Former Defendants Officer Maverick Gibbs ("Gibbs"), Officer Cathy Beacham ("Beacham"), Officer Julius Beasley ("Beasley"), and Officer Frank Bell ("Bell") filed a contemporaneous motion to join several of Memphis's motions in *limine.* Jama has not responded to any of these motions.

[1] Additional claims initially brought in this case against the city and other defendants have been dismissed.

### I. Motion of Defendant Officers to Join Memphis's Motions *in Limine*

The four law enforcement officers originally named as defendants in this case have since been dismissed. Because they are no longer defendants, their motion to join Memphis's motions *in limine* is DENIED as moot.

### II. Motion to Preclude Plaintiff's Expert Ken Barnes from Testifying About the Credibility of Police Officers

Based on the expert report and deposition testimony of Jama's expert Ken Barnes ("Barnes"), Memphis believes that Barnes will attempt to testify about the credibility of police officers generally. Memphis seeks to exclude that testimony as irrelevant under Fed.R.Evid. 401 and 402, and because the testimony would usurp the role of the court as the arbiter of credibility.

Fed.R.Evid. 402 provides that evidence that is not relevant is not admissible. Fed.R.Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Memphis specifically objects to statements like the following, which was included in Barnes's expert report: "Too often it is found that police officers fail to accurately report injuries of suspects thereby denying them immediate medical care."[2] Barnes testified during his deposition that:

[2] Barnes's expert report is attached at Tab B of Memphis's motion to exclude Barnes's testimony.

> there are lots of other cases out there where the officers did not want to report all of the injuries that the person had suffered, starting with Rodney King.... There's several of these that officers have injured somebody and they were not very forthcoming in telling about what happened.... [O]fficers, like any other human beings, sometimes will lie to protect themselves.

(Barnes dep., 107: 22-108:18.)[3]

[3] Excerpts of Barnes's deposition are attached at Tab C of Memphis's motion to exclude Barnes's testimony.

Barnes explained that he does not intend to say that any of the officers involved in this case have lied about their conduct or their knowledge about Jama's injuries. Barnes also stated that his statements about police officers' truthfulness were broad statements, not directed at any specific officer. (Barnes dep., 108:8-109:2.)

The assertion that some police officers sometimes lie in situations similar to the one in this case does not bear on whether the police officers involved here have been truthful. Because Barnes's statements refer only to police officers generally and not to any of the police officers involved in this case, his statements are not relevant under Fed.R.Evid. 402. Memphis's motion to exclude Barnes's testimony about the credibility of police officers generally is GRANTED.

### III. Motion to Exclude the Deposition Testimony of Dr. Daniel Kueter

**\*2** Memphis anticipates that Jama will attempt to offer Dr. Daniel Kueter's ("Kueter") deposition testimony as evidence at trial. Memphis asserts that this testimony is hearsay under Fed.R.Evid. 801(c), and does not fall within any recognized exception to hearsay under Fed.R.Evid. 803. Memphis also states that Kueter is not unavailable as a witness at trial, and, therefore, that his deposition testimony does not fall within any of the hearsay exceptions stated in Fed.R.Evid. 804(b).

The court will not exclude Kueter's deposition testimony prematurely. Jama may seek to introduce portions of the deposition testimony for a reason other than the truth of the statements asserted therein, in which case the statements would not be hearsay. Portions of the deposition testimony may fall within one of the Fed.R.Evid. 803 hearsay exceptions. Kueter may be unavailable as a witness at the trial, in which case his deposition testimony would be admissible under Fed.R.Evid. 804(b)(1).

Memphis may renew its objections to the admission of Kueter's deposition testimony at trial. Memphis's motion to exclude Kueter's deposition testimony is DENIED.

### IV. Motion to Exclude Testimony by Dr. Daniel Kueter that Is Outside the Scope of his Treatment of Plaintiff

Keuter is a doctor who treated Jama for the injuries that form the basis for this case. Based on Keuter's deposition, Memphis anticipates that Jama will seek to elicit testimony about matters outside the scope of Kueter's treatment of Jama, such as the possible cause of Jama's injuries.

Memphis asserts that any testimony related to the cause of Jama's injuries must be based upon Keuter's scientific, technical, or other specialized knowledge, and, therefore, is subject to the rules governing expert testimony and expert witnesses. Parties must disclose expert witnesses under Fed.R.Civ.P. 26(a)(2). Fed.R.Civ.P. 37(c)(1) provides that a party that fails to make required disclosures without substantial justification will be precluded from using as evidence any information not disclosed, unless the failure to disclose is harmless.

Memphis asserts that Jama has not identified Keuter as an expert witness and that this failure has not been harmless because Memphis has not been able to prepare fully for Kueter's testimony. Memphis does not know how far outside the scope of Kueter's treatment of Jama Kueter will seek to testify.

Memphis first objected to Kueter's testimony at Kueter's deposition. Jama has not moved to identify Kueter as an expert witness since learning of Memphis's objection. Because Kueter has not been identified as an expert witness, he may not present expert testimony. As a lay witness, Kueter's testimony may not be based on scientific, technical, or other specialized knowledge, and it must be rationally based on his own perception. Fed.R.Evid. 701. Therefore, Kueter may only testify about his treatment of Jama. Memphis's motion to exclude Kueter's testimony that is outside the scope of his treatment of Jama is GRANTED.

### V. Motion to Exclude All Evidence and/or Testimony by Plaintiff that his Alleged Physical Ailments Result from Trauma Allegedly Sustained on January 5, 2003

**\*3** Based on Jama's deposition testimony, Memphis anticipates that Jama will attempt to testify that physical conditions he allegedly now experiences, such as headaches, eye pain, and trouble breathing, standing, and lifting heavy objects, result from the incident of January 5, 2003, that is the basis for this case. Memphis argues that Jama's testimony about the cause of his alleged current physical conditions is inadmissible opinion testimony by a lay witness. Memphis asserts that Jama may testify about his physical conditions, but that his opinion about the cause of those conditions is beyond his experience and knowledge and, therefore, would be mere speculation.

Under Fed.R.Evid. 701, if a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge."

Courts have held that, when injuries are of such a character as to require skilled and professional persons to determine the cause and extent of the injuries, the cause of the injuries must be determined by medical testimony. *See Franklin v. Shelton, 250 F.2d 92, 97-98 (10th Cir.1958)*(holding that injured plaintiff was competent to testify that she was suffering from defective vision and certain female disorders, but she was not competent to testify as to the cause of those conditions). Here, the cause of Jama's injuries is not so plain as to be clear to a non-expert. While a lay witness may be competent to testify, for example, that a laceration was caused by a cut from a sharp object, Jama's complaints of pain and physical difficulties do not have such an obvious source. Jama is not competent to testify about the cause of his injuries. Memphis's motion to exclude this testimony is GRANTED.

**VI. Motion to Exclude All Evidence and/or Testimony by Paula Skahan or Other Witnesses About Alleged Statements by Officer Gibbs on April 23, 2003**

Memphis anticipates that Jama will attempt to offer Paula Skahan ("Skahan") as a witness at trial to testify about statements made by Gibbs on April 23, 2003, in response to Jama's being charged with a lesser crime for his actions on January 5, 2003. In a letter from Skahan to Jama's counsel dated April 24, 2003, [4] Skahan states that, before Jama's criminal trial on April 23, 2003, Gibbs stated that Jama had tried to kill Gibbs and stated several times, "I should have shot his ass." Skahan also stated that Gibbs became very upset when he heard the disposition of the charges against Jama and "went off on one of the junior Prosecutors." Memphis argues that Gibbs's statements must be excluded as hearsay, or, alternatively, as irrelevant to Jama's claim against Memphis under the TGTLA.

[4] Skahan's letter is attached at Tab B of Memphis's motion to exclude Skahan's testimony.

Fed.R.Evid. 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 802 provides that hearsay is not admissible unless it falls under one of the exceptions or exclusions set forth in the Federal Rules of Evidence.

**\*4** Jama's purpose for offering this testimony, if indeed he intends to do so, is not clear to the court. However, Gibbs's statements would not be hearsay if they were introduced to demonstrate Gibbs's state of mind after learning of the charges against Jama and their disposition. Because this seems the most likely reason that Jama would seek to introduce the evidence, the statements are not necessarily hearsay.

Jama's TGTLA claims against Memphis are based on the alleged negligent acts of Memphis police officers on January 5, 2003, in escorting Jama down a staircase and/or delaying Jama's medical treatment after a fall. Gibbs's state of mind three months after the alleged incident is not relevant to proving whether Gibbs or any other officer acted negligently on January 5, 2003. The statement that Jama tried to kill Gibbs might be relevant to demonstrate the amount of danger Jama posed to Gibbs and thus how a reasonable person might have reacted, but the statement would be hearsay if offered for this purpose. Therefore, Gibbs's statements must be excluded as irrelevant and, to the extent relevant, hearsay. Memphis's motion to exclude evidence and/or testimony about Gibbs's April 23, 2003 statements is GRANTED.

**VII. Motion to Exclude All Evidence and/or Testimony About Statements by Non-Management Police Department Officers About the City's Policies, Procedures, and Training**

Memphis anticipates that Jama will question non-management police officers about Memphis's policies, procedures, and training of police officers. Memphis argues that non-management police officers are not agents of Memphis as to its policies, procedures, and training, and, therefore, cannot bind Memphis by their statements. Therefore, Memphis asserts, any statements by such officers are irrelevant to examining Memphis's actual policies, procedures, and training.

In determining whether the police officers involved in the January 5, 2003 incident that is the basis for this case acted negligently, the training that police officers are given and the procedures that they are instructed to follow are relevant. It is not clear from the record before the court, however, exactly what testimony Jama will seek to elicit from non-management police officers. Because some of the testimony challenged in this motion may be relevant, the court will not exclude it prematurely and Memphis's motion is DENIED. Memphis may renew its objection to the introduction of non-management police officer testimony about these matters at trial.

**VIII. Motion to Exclude Evidence of Witness Statements Obtained by Inquisitor, Inc.**

Memphis anticipates that Jama will attempt to offer at trial evidence of witness statements obtained by Inquisitor, Inc. Memphis argues that all such statements are hearsay not within any hearsay exception provided by Fed.R.Evid. 803 or 804.

If testimony is hearsay that does not fall within an exception the testimony will be excluded. The court will determine at trial whether any witness statement the parties seek to introduce falls within a hearsay exception. Defendants may renew their objection to any hearsay statements at trial. Defendants motion to exclude this evidence is DENIED.

## IX. Conclusion

**\*5** For the foregoing reasons, the court DENIES Memphis's motions to exclude the Kueter's deposition testimony, to exclude statements by non-management police department officers about Memphis's policies, procedures, and training, and to exclude evidence of witness statements obtained by Inquisitor, Inc. The motion of former defendant officers to join Memphis's motions *in limine* is DENIED as moot. The court GRANTS Memphis's motions to preclude Barnes from testifying about the credibility of police officers, to exclude testimony by Kueter that is outside the scope of his treatment of Jama, to exclude evidence and testimony by Jama that his alleged physical ailments result from trauma sustained on January 5, 2003, and to exclude evidence of Gibbs's April 23, 2003 statements.

So ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 5499283

2012 WL 4356231
Only the Westlaw citation is currently available.
United States District Court,
D. Colorado.

Dawn M. LYNCH and Shawn P. Lynch, Plaintiffs,
v.
L'OREAL USA S/D, INC., a Delaware corporation, d/b/a Lancome, registered to do business in Colorado, Defendant.

Civil Action No. 11–cv–01343–RBJ–MWJ.
|
Sept. 24, 2012.

**Attorneys and Law Firms**

Dawn M. Lynch, Colorado Springs, CO, pro se.

Shawn P. Lynch, Colorado Springs, CO, pro se.

Lawrence Michael Brooks, Jr., Suanne Marie Dell, Wells, Anderson & Race, LLC, Denver, CO, for Defendant.

ORDER

R. BROOKE JACKSON, District Judge.

**\*1** This case was filed in November 2010 in El Paso County District Court. In May 2011 defendant removed the case to this Court based on diversity of citizenship jurisdiction. Defendant now seeks summary judgment.

**Facts**

In November of 2008, plaintiff Dawn Lynch purchased over $400 of cosmetic products sold by the defendant L'Oreal USA, Inc. ("L'Oreal"). These products, sold under the trade name Lancome, included Primordiale Cell Defense—Cell Defense & Skin Perfecting Serum, Tonique Pure Focus—Oil Control Mattifying Toner (Oily Skin), Pure Focus—Matifying Moisturizing Lotion (Oil Free/Oily Skin), Absolute Ultimate βχ—Serum Reconstituant—Replenishing and Restructuring Serum, High Resolution Eye with Fiberlastine—Intensive Recovery Anti–Wrinkle Eye Cream, and Gel Pure Focus—Oil Control Cleansing Gel—Oily Skin (collectively "Lancome Products"). Ms. Lynch began using the Lancome Products as directed on November 27, 2008. In mid-December Ms. Lynch noticed burning and sores on her face and discontinued using the Lancome Products. Within a few days of discontinuing use of the products, Ms. Lynch developed lesions on her face, and her skin began falling off. Ms. Lynch sought medical treatment. Her family doctor prescribed antibiotics, but when they did not help, Ms. Lynch went to the Evans Community Hospital emergency room and was given outpatient intravenous antibiotics. Ms. Lynch was admitted to the hospital on December 27, 2008 for treatment for chemical burns and facial cellulitis. Ms. Lynch's face was permanently scarred.

Ms. Lynch through counsel filed a complaint alleging that the Lancome Products were the cause of her injuries. She asserts product liability claims based on theories of negligence, breach of warranty, and strict products liability. L'Oreal now requests summary judgment, arguing that Ms. Lynch has failed to offer any evidence that the products were defective or that the defect caused Ms. Lynch's injuries.

**Standard**

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research,* 527 F.3d 1045, 1050 (10th Cir.2008) (quoting Fed.R.Civ.P. 56(c)). When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party...." *Id.* The Court does not weigh the evidence or make credibility determinations. *Id.* The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The nonmoving party must "des ignate specific facts showing that there is a genuine issue for trial." *Id.* at 324. In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**Conclusions**

**\*2** Ms. Lynch brings products liability claims under three separate theories of liability: negligence, breach of warranty, and strict products liability. Although each of these theories requires different elements to establish liability, they have in common the need for the plaintiff to prove causation. *Truck Ins. Exch. v. MagneTek, Inc.,* 360 F.3d 1206, 1214

(10th Cir.2004). L'Oreal argues that Ms. Lynch cannot meet her burden of proving causation without the assistance of expert testimony. Because Ms. Lynch has not designated any expert witnesses, L'Oreal argues that it is entitled to summary judgment.

The Federal Rules of Evidence describe two different types of witnesses, fact witnesses and expert witnesses. Testimony by fact witnesses is limited to that which is rationally based on the witness's perception, is helpful to clearly understanding a witness's testimony or to determining a fact in issue, and is not based on scientific, technical, or other specialized knowledge. Fed.R.Civ.P. 701. Comparatively, a witness who is qualified as an expert based upon knowledge, skill, experience, training or education may testify in the form of an opinion if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue and the opinion is based on sufficient data and reliable methodology. Fed.R.Civ.P. 702. Rule 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *James River Ins. v. Rapid Funding, LLC,* 658 F.3d 1207, 1214 (10th Cir.2011) (quoting *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 846 (10th Cir.2011)).

Presenting the testimony of expert witnesses also requires additional disclosures. Under Rule 26(a) a party seeking to call an expert witness must provide the opposing party with a written report prepared by the expert witness that outlines, among other things, "the opinions that will be expressed at trial by the expert witness, the facts or data considered by the expert witness in forming these opinions, the expert witness's qualifications ... and the compensation to be paid the expert witness for his work and testimony in the case." *ClearOne Commc'ns, Inc., v. Biamp Sys.,* 653 F.3d 1163, 1176 (10th Cir.2011) (citing Fed.R.Civ.P. 26(a)(2)(B)(i)-(vii)). Rule 26 "imposes a duty to disclose information regarding expert testimony sufficiently in advance of trial so that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other expert witnesses." *Id.* (quoting Fed.R.Civ.P. 26(a)(2) Advisory Committee's Note (1993)). When a party fails to comply with Rule 26(a)'s disclosure requirements, the general rule is that the party "is not allowed to introduce the expert witness's testimony ... at trial." *Id.* (quoting *Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 641 (7th Cir.2008)).

**\*3** According to the scheduling order for this case, the deadline for disclosure of expert witnesses was March 20, 2012. On March 27, 2012 L'Oreal filed this motion for summary judgment, arguing that Ms. Lynch had not disclosed any expert witnesses and therefore, she would not be able to prove that L'Oreal's products were defective in design or manufacturing or that any defects caused Ms. Lynch's injuries. Ms. Lynch, who has been proceeding pro se since her attorney was permitted to withdraw in November 2011, failed to respond to the summary judgment motion. Instead of granting the motion for summary judgment, this Court issued an order to show cause why the case should not be dismissed on July 6, 2012. Ms. Lynch responded on July 31, 2012 with a response to the motion for summary judgment and included copies of her medical records from her treatment of the face injuries. Ms. Lynch has not designated any expert witnesses or provided the necessary disclosures. Trial is set for October 22, 2012.

To prevail in this case, Ms. Lynch must prove that the Lancome Products caused her injuries. To prove her case, Ms. Lynch offers evidence that she used the Lancome Products and subsequently suffered injuries on her face. However, "[a] temporal relationship by itself, provides no evidence of causation." *In re Breast Implant Litig.,* 11 F.Supp.2d 1217, 1232 (D.Colo.1998). Thus, showing only the timeline of applying the Lancome Products and subsequently suffering facial injuries is not sufficient to show causation. Ms. Lynch must provide additional evidence to prove causation.

"It is uniformly held that where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts, but, that a lay witness is competent to testify concerning those physical injuries and conditions which are susceptible to observation by an ordinary person." *Franklin v. Shelton,* 250 F.2d 92, 97 (10th Cir.1957). For example, in *Franklin,* the plaintiff complained that after a car accident her eye was crossing and losing its power to focus and she was having certain female disorders. *Id.* at 97–98. The court held that the plaintiff was competent to testify that she was suffering from these disorders, but "her testimony was not competent to establish that these subjective conditions were the proximate cause of the accident." *Id.* at 98. Similarly, in *Wilkins v. Kmart Corp.* the plaintiff sought to testify that he experienced drowsiness and dizziness as the result of taking Flexeril. 487 F.Supp.2d 1216, 1221 (D.Kan.2007). The court held, "[s]uch a causation opinion can only be rendered on the basis of specialized knowledge

held by an expert qualified by medical education, experience and training." *Id.* However, the court explained, "the plaintiff certainly is qualified by personal knowledge to testify about what physical and emotional changes he experienced while taking Flexeril and about how these changes impacted him." *Id.*

**\*4** These cases are analogous to Ms. Lynch's claims. Ms. Lynch is certainly qualified to discuss the injuries to her face and how they affected her physically and emotionally. However, Ms. Lynch is not qualified to testify about the cause of these injuries. Linking the injuries to Ms. Lynch's face with the use of the Lancome Products would require expert testimony. "The weight of evidence, is, of course, for the jury's determination and not for the court. But whether proffered evidence is competent, is a question of law for the court's determination." *Douglas Aircraft Co. v. Kerns,* 164 F.2d 1007, 1011 (10th Cir.1947). Because Ms. Lynch has not identified any expert witness, she has not come forward with competent evidence to show causation. Accordingly, summary judgment for L'Oreal is appropriate.

The Court notes that in response in explanation of her failure to respond substantively to the motion for summary judgment, and implicitly in explanation for her failure to engage an appropriate expert, Ms. Lynch essentially has indicated that her lawyer did not develop the case and, to her surprise, withdrew from the engagement and left her to fend for herself. The Court does not know the details of what her attorney did or did not do or why he withdrew (which was permitted by a magistrate judge after Ms. Lynch offered no objection). Therefore, the Court has no basis to say that the lawyer did or did not fulfill his professional responsibilities to her. Nevertheless, it is unfortunate that Ms. Lynch—who claims to have sustained serious facial injuries and disfigurement which might be attributable to the cosmetics of which she complains—has not been able to prosecute her case due to the lack of a lawyer and her own inability properly to represent herself. The Court's role is to adjudicate this case with fairness to both parties, and the status of the record has left the Court no choice but to grant the motion.

Ms. Lynch may appeal from this order by filing a Notice of Appeal with the United States Court of Appeals for the Tenth Circuit, 1823 Stout Street, Denver CO 80257. The appeal must be filed within 30 days after entry of this Court's order and judgment. If she wishes to do this, she should consult the Federal Appellate Rules, and in particular Rules 3 and 4, which she can access on line at the Tenth Circuit's web site or in hard copy at this Court's library. There is a filing fee which can be waived in some circumstances.

If she believes that she has been mistreated by her attorney she can file a complaint with the Office of Attorney Regulation Counsel, 1560 Broadway, Suite 1800, Denver CO 80202. I take no position as to whether she should file such a complaint or whether it would have any merit but only advise her of these options because she is representing herself.

**Order**

Defendant L'Oreal's motion for summary judgment is GRANTED. The Court enters its final judgment dismissing this case and all claims within. Because of the nature of the reasons for dismissal, essentially failure properly to prosecute, the dismissal is without prejudice. Defendant is awarded its reasonable costs as the prevailing party.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4356231

Case 2:14-cv-11916-GCS-SDD ECF No. 80-2, PageID.2716 Filed 04/08/16 Page 9 of 19

Villalba v. Consol. Freightways Corp. of Delaware, Not Reported in F.Supp.2d (2000)
2000 WL 1154073

KeyCite Yellow Flag - Negative Treatment
Distinguished by Brossette v. Swift Transp. Co., Inc., W.D.La., October 30, 2008

2000 WL 1154073
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Elsa VILLALBA, Plaintiff,
v.
CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, a Delaware corporation, d/b/a Cf Motor Freight, and its agent, employee, and/or servant, Robert B. Riggs, and Robert Riggs, individually, Defendants.

No. 98 C 5347.
|
Aug. 14, 2000.

*MEMORANDUM OPINION AND ORDER*

NOLAN, Magistrate J.

**\*1** This case arises from an automobile and truck collision on August 4, 1996 in Justice, Illinois. Plaintiff Elsa Villalba sues the owner of the truck, Consolidated Freightways Corporation of Delaware ("CF"), and its employee and the driver of the truck at the time of the accident, Robert Riggs, for negligence. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This case is set for trial on September 18, 2000. Both parties filed motions in limine. The Court addresses each motion in turn.

A. Evidence of Plaintiff's Pecuniary Damage Claim
Defendants move to exclude evidence of the amount of money Villalba allegedly paid to persons to assist her in maintaining and operating the business she started in February 1997, which Villalba alleges is "not less than $70,191.40," and the alleged costs she incurred in establishing and operating her business since February 1997, which she alleges is "not less than $43,350.83." Defendants contend that Villalba cannot provide a reasonable basis for computing these damages. Under Illinois law, the plaintiff has the burden of proving damages to a degree of reasonable certainty. *Doe v. United States,* 976 F.2d 1071, 1085 (7th Cir.1992) (applying Illinois law). "Damages may not be awarded on the basis of conjecture or speculation; if the plaintiff establishes that he is entitled to damages but fails to provide a proper basis with which to determine those damages, he may be awarded only nominal damages." *Id.* (quoting *Adam Apple Distr. Co. v. Papeleras Reunidas, S.A.,* 773 F.2d 925, 930 (7th Cir.1985)).

Defendants argue that Villalba cannot provide a reasonable basis for computing these damages because she has no records regarding travel through her company, no state or federal employee tax filings, no employment records, no payroll records, no W–2 or W–4 forms for any employee, no 1099s filed with the IRS or issued to a subcontractor, independent contractor or salesperson, and no proof of the extent of her investment in the business, her start-up costs, or her overhead. Defendants admit, however, that Villalba has produced certain records relating to her business, including canceled checks for 1997, 1998, and six months in 1999, check registers for 1997 and 1998, telephone bills for some months in 1999, an income statement for 1998, a partial income statement for 1999, and Schedule Cs to her personal income tax returns for 1997 and 1998.

Until trial, the Court cannot determine whether Villalba will be able to establish the amount of money paid to persons to assist her in the operation of the business and the costs incurred in establishing a new business with reasonable certainty. Therefore, Defendants' motion in limine regarding evidence of the amount of money Villalba claims she paid to persons to assist her in maintaining and operating her business and the alleged costs incurred in establishing and operating her business is denied without prejudice to reassertion at trial if appropriate.

**\*2** Defendants further argue that Plaintiff should be barred pursuant to Federal Rule of Civil Procedure 37(c)(1) from offering evidence of the above described pecuniary damages because she gave evasive and inconsistent discovery responses regarding her damage claims and because she failed to disclose information required by Rule 26(a) and Rule 26(e)(1). Villalba responds that she has produced all responsive documents which are in her possession. Rule 37(c)(1) provides that "a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Rule 26(a)(1)

Case 2:14-cv-11916-GCS-SDD ECF No. 80-2, PageID.2717 Filed 04/08/16 Page 10 of 19
Villalba v. Consol. Freightways Corp. of Delaware, Not Reported in F.Supp.2d (2000)
2000 WL 1154073

(C) provides that a plaintiff must provide a computation of any damages claimed and make available for inspection and copying the documents or evidentiary material bearing on the nature and extent of injuries suffered.

Absent a showing of substantial justification, Villalba will not be allowed to rely on any evidence at trial which she failed to disclose as required by Rule 26(a) or 26(e)(1) unless such failure is harmless. Defendants' request that Villalba be barred from offering evidence on any of the damage claims described in their motion is denied without prejudice to reassertion at trial if necessary. Moreover, Defendants can sufficiently point out on cross-examination any evasive and inconsistent responses given by Villalba regarding her business records and the apparent lack of certain business records.

Defendants also argue that Plaintiff should be barred from making a claim for lost profits from a business not in existence at the time of the accident. The motor vehicle accident occurred on August 4, 1996. At the time of the accident, Villalba was employed as a sales manager for Aqua–Tech, a business which sold Rainbow vacuum cleaners. Villalba testified that after the accident, she "started having problems with Aquatech." Villalba Dep., pp. 60. On January 15, 1997, Aqua–Tech fired Villalba. *Id.* On February 1, 1997, Villalba opened her own business, E & V Marketing, which also sells Rainbow vacuum cleaners. *Id.,* pp. 64–65.

Under Illinois law, the general rule is that a new business cannot recover lost profits because evidence of lost profits from an unestablished business is too speculative. *Stuart Park Assocs. Ltd. Partnership v. Ameritech Pension Trust,* 51 F.3d 1319, 1328 (7th Cir.1995) (applying Illinois law); *SK Hand Tool Corp. v. Dresser Indust., Inc.,* 672 N.E.2d 341, 348 (Ill.App.1996); *Drs. Selke & Conlon, Ltd. v. Twin Oaks Realty, Inc.,* 491 N.E.2d 912, 197 (Ill.App.1986). "The reason for the rule is that a new business has yet to show what its profits actually are." *SK Hand Tool Corp.,* 672 N.E.2d at 348.

Exceptions to the "new business" rule have been recognized, but none apply here. For example, Illinois courts have held that "evidence of the profits of a person other than plaintiff, who operated the same established business at the identical location for the period of time which plaintiff seeks damages, is not of such a speculative nature to require a finding that plaintiff's lost profits may not be proved to a reasonable certainty." *Malatesta v.. Leichter,* 542 N.E.2d 768, 782 (Ill.App.1989). In *Malatesta,* the plaintiff sued defendant for tortious interference with prospective economic advantage when defendant's representations to General Motors prevented plaintiff from acquiring a car dealership. As evidence of his damages, plaintiff introduced testimony from the person who owned and operated the dealership plaintiff sought to acquire. The court noted that "[t]he business in issue here was never interrupted or delayed by defendant's conduct; rather, plaintiff was prevented from acquiring a business which was in existence at the time of, and which continued after, the purported wrongful conduct and which at all times was owned by a person other than plaintiff." *Id.* at 782. The court held that the "new business" rule did not apply and plaintiff's damages were not speculative because "the business here does not have the same uncertainties that are akin to a business which is not in existence at the time of, and does not continue after, the wrongful conduct." *Id.*

**\*3** Likewise, in *Milex Products, Inc. v. Alra Laboratories, Inc.,* 603 N.E.2d 1226, 1236 (Ill.App.1992), the plaintiff recovered lost profits for breach of a contract to manufacture a pharmaceutical product it had not previously marketed. The court held that plaintiff's lost profits were not based upon speculation or conjecture because plaintiff's expert testified that the lost profits calculations were based upon actual products in the marketplace and authoritative sources for the data used. The court stated: "[w]hile the product is a new one, the evidence showed it to have an established market. Given that fact, together with [plaintiff's expert's] testimony, we conclude that the proof of lost profits was neither speculative nor the product of conjecture but was based upon a reasonable degree of certainty." *Id.* at 1237. In sharp contrast to *Malatesta* and *Milex,* E & V Marketing was not operated by another person during the period of time during which Villalba seeks lost profits and Villalba has not provided any explanation of the type of evidence, expert or otherwise, which would establish her lost profits with reasonable certainty.

Moreover, the cases relied on by Villalba are distinguishable. In *Sezonov v. Wagner,* 654 N.E.2d 252 (Ill.App.1995), the plaintiffs, husband and wife, brought an action against defendant for injuries the husband received in a car accident with defendant and for the wife's loss of consortium. The husband's inability to work after the accident resulted in a 43–day delay in plaintiffs' ability to open a new pet store. Plaintiffs sought lost profits caused by a delay in opening the pet store. The court held:

> If plaintiffs can prove that the Westview store was unable to open timely because John was unable to

Case 2:14-cv-11916-GCS-SDD ECF No. 80-2, PageID.2718 Filed 04/08/16 Page 11 of 19

Villalba v. Consol. Freightways Corp. of Delaware, Not Reported in F.Supp.2d (2000)
2000 WL 1154073

supervise the installation of the fish department and to hire temporary help, then they can recover damages resulting from the later opening. However, plaintiffs can recover only that money which they personally would have received from the corporation, i.e. the earnings or wages lost.

*Id.* at 255.

The Court finds the *Sezenov* case inapplicable here because the *Sezenov* court did not discuss the "new business" rule or indicate how the plaintiffs would prove lost profits with reasonable certainty. In any event, even if *Sezenov* stood for the proposition that the "new business" rule did not automatically preclude Villalba's theory of lost profits, *Sezenov* is distinguishable from the instant case. In *Sezenov,* the plaintiffs already owned and operated one pet store before the accident. The issue was whether plaintiffs could seek lost profits from the delay in opening a second store. Thus, the plaintiffs' lost profits could likely have been proven based on the actual profits of the plaintiffs' other established pet store. Unlike the plaintiffs in *Sezenov,* Villalba does not have actual profits from a prior business selling vacuum cleaners to prove her lost profits here.

**\*4** *Scheibel v. Groeteeka,* 538 N.E.2d 1236 (Ill.App.1989), is also distinguishable. In *Scheibel,* the plaintiff sued the defendant for damages caused by alleged negligence in an automobile accident. The court held that the jury was properly instructed that they could compensate plaintiff for the value of earnings and profits lost and the present cash value of earnings reasonably certain to be lost in the future. The plaintiff testified that he was forced to decrease the scale of his fence business after the accident and then sell the business because the injuries he sustained as a result of defendant's negligence prevented him from performing the physical labor necessary to run the business. The plaintiff presented five years of prior tax returns to prove lost income. In contrast to the plaintiff's fence business in *Scheibel,* E & V Marketing did not exist before the accident in this case and thus, Villalba does not have prior tax returns to prove lost profits with reasonable certainty. Defendants' motion in limine is granted to the extent it seeks to exclude evidence of lost profits. [1]

---

[1] Defendants also object to Plaintiff offering evidence of lost profits from the time period between August 27 and August 30, 1997 when she was hospitalized following a suicide attempt because the issue of causation between the accident and the suicide attempt must be established by expert testimony and Plaintiff has not submitted any such expert testimony in support of that claim. This issue is the subject of an additional motion in limine by Defendants which is discussed in Section C below.

B. Evidence Regarding Traffic Citation Received By Defendant Riggs

Defendants' unopposed motion in limine to exclude evidence of a traffic citation received by Defendant Riggs following the motor vehicle accident at issue is granted.

C. Evidence of Causation Between the Accident and Plaintiff's Subsequent Suicide Attempt

Defendants seek to exclude any evidence concerning a causal connection between Villalba's suicide attempt on August 27, 1997 and the motor vehicle accident on August 4, 1996. Defendants maintain that specialized knowledge and training is required to establish causation between Villalba's suicide attempt and the accident. *See* Fed. Rules of Evid. 701 and 702. The Court agrees.

"It is uniformly held that where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts, but, that a lay witness is competent to testify concerning those physical injuries and conditions which are susceptible to observation by an ordinary person." *Franklin v.. Shelton,* 250 F.2d 92, 97 (10th Cir.1957); *see also Walker v. Shansky,* 28 F.3d 666, 672 (7th Cir.1994)(holding plaintiff not qualified to testify as to his mental condition); *Taifa v. Bayh,* 1996 WL 441809, *4 (N.D.Ind.1996)(holding "because the medical and psychological effects of drinking contaminated water and breathing fumes such as pepper spray would not appear to be within the ordinary person's knowledge, the inmates' lay testimony is insufficient without more to establish the medical causation needed to support Williams' damage claims.") For example, if a plaintiff in a personal injury case suffers a cut which is obviously the result of the accident, the jury can determine without expert testimony that the accident caused the cut. The cut would be immediately observable to a lay person after the accident and the nexus between the cut and the accident is a matter that a layperson can analyze without expert testimony. *See Brown v. Baker,* 672 N.E.2d 69, 71 (Ill.1996).

Case 2:14-cv-11916-GCS-SDD ECF No. 80-2, PageID.2719 Filed 04/08/16 Page 12 of 19

Villalba v. Consol. Freightways Corp. of Delaware, Not Reported in F.Supp.2d (2000)
2000 WL 1154073

**\*5** In contrast, any causal connection between the accident here and Villalba's suicide attempt over a year later requires expert testimony. In light of the complex nature of depression, its multiple and possible causes, and the length of time between the accident and the suicide attempt, the question of whether Villalba's suicide attempt was caused by the accident is a fact outside the understanding of lay jurors. A suicide attempt more than a year after the accident is not the type of injury which by its very nature reflects its cause and thus, is the type of knowledge which is beyond the common experience, knowledge, or observation of lay persons. Because the reasons for Villalba's suicide attempt over a year after the automobile accident are not sufficiently obvious to lay persons, any casual relationship between the accident and the suicide attempt must be established by expert testimony. Thus, Villalba is not competent to testify that she attempted suicide because of depression proximately caused by the accident.

Villalba claims that Dr. Michael Gelbort, her expert and a clinical psychologist, opined in his report and is expected to testify at trial that the car accident and the attempted suicide are causally connected. After carefully reviewing Dr. Gelbort's report, the Court concludes that Dr. Gelbort's report did not disclose an opinion that Villalba's suicide attempt is causally connected or related to the car accident. Thus, he may not render such an opinion at trial. *See* Fed.R.Civ.P. 26(a)(2)(B) and 37(c)(1); *Salgado v. General Motors Corp,* 150 F.3d 735, 741 (7th Cir.1998). Defendants' motion in limine is granted and evidence that her suicide attempt was causally related to the accident is excluded.

D. Evidence Relating to Post–Accident Remedial Measures
Defendants move to bar admission at trial of (1) the August 6, 1996 Report of Accident Review prepared subsequent to the accident, (2) the August 7, 1996 Letter of Investigation addressed to Riggs, and (3) the August 20, 1996 Letter of Discipline issued to Riggs by Consolidated Freightways. Defendants further request that Villalba be barred from mentioning or referring to these documents or their contents. The August 6, 1996 Report of Accident Review indicates that Riggs' supervisor found that the accident was preventable because Riggs made an improper lane change. The August 7, 1996 Letter of Investigation informed Riggs that the August 6, 1996 accident was under investigation and that he would be notified of the findings at the conclusion of the investigation. The August 20, 1996 Letter of Discipline issued to Riggs states that Riggs was involved in a preventable accident on August 4, 1996 when he made an improper lane change. The notice constituted a Final Warning and indicated that similar infractions would result in more severe disciplinary action up to and including discharge.

According to Defendants, these documents and their contents represent subsequent remedial measures under Federal Rule of Evidence 407 and are not admissible to prove negligence or culpable conduct in connection with the accident. Alternatively, Defendants maintain that allowing admission of these documents or testimony concerning their contents would be unduly prejudicial and should be barred under Rule 403 because the internal standard used by CF in determining that the accident was preventable holds the driver to a higher standard than that of ordinary care.

**\*6** Rule 407 provides in relevant part: "When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct...." Post-accident disciplinary action taken by CF with respect to Riggs constitutes a remedial measure and such evidence is inadmissible under Rule 407. *Specht v.. Jensen,* 863 F.2d 700, 701–02 (10th Cir.1988); *Hull v. Chevron U.S.A., Inc.,* 812 F.2d 584, 586 (10th Cir.1987); *Maddox v. City of Los Angeles,* 792 F.2d 1408, 1417 (9th Cir.1986); *Jumper v. Yellow Corporation,* 176 F.R.D. 282, 284–85 (N.D.Ill.1997); *Wanke v. Lynn's Transp. Co.,* 836 F.Supp. 587, 595 (N.D.Ind.1993).

Villalba argues that even if the disciplining of Riggs could be deemed a post-remedial action, CF's findings that the accident was preventable and that Riggs made an improper lane change are not remedial. A split in the case law exists concerning whether the conclusions of a post-accident investigation are admissible under Rule 407. *Compare Specht,* 863 F.2d at 701–02 and *Maddox,* 792 F.2d at 1417 with *Prentiss & Carlisle Co., Inc. v. Koehring–Waterous Div. of Timberjack,* 972 F.2d 6, 10 (1st Cir.1992)(holding "[t]he fact that the analysis may often result in remedial measures being taken (as occurred here) does not mean that evidence of the analysis may not be admitted"); *In re Chicago Flood Litigation,* 1995 WL 437501, [\*] 5 (N.D.Ill.1995). Even if CF's post-accident conclusions that the accident was preventable and that Riggs made an improper lane change are not remedial measures, the Court finds such evidence inadmissible under Rule 403.

Under Rule 403, even relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice." The phrase "unfair prejudice" used in

Case 2:14-cv-11916-GCS-SDD ECF No. 80-2, PageID.2720 Filed 04/08/16 Page 13 of 19

Villalba v. Consol. Freightways Corp. of Delaware, Not Reported in F.Supp.2d (2000)
2000 WL 1154073

Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the Advisory Committee of the Proposed Rules. CF's accident review was conducted pursuant to the company's fleet safety program for the sole purpose of increasing the driver's understanding of how to prevent accidents. CF utilizes the National Safety Council Rules to determine accident preventability.

Villalba clearly wants the jury to infer from the results of the accident review that Riggs was negligent. The problem with that inference is that the standard for determining preventability and the standard for determining negligence under Illinois law are not necessarily the same. Villalba maintains that the standard of preventability is the same as the standard of negligence law. *Compare* I.P.I. Civil No. 10.01 (negligence means "the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence) *with* National Safety Council, p. 2 ("A preventable accident is one in which the driver failed to do everything that reasonably could have been done to avoid the accident. In other words, when a driver commits errors and/or fails to react reasonably to the errors of others, the National Safety Council considers an accident to be preventable."). Although the standards appear similar, the National Safety Council makes clear that its preventability standard "is not solely based on or determined by legal liability." Defendants' Ex. E, p. 3. Thus, the two standards may confuse and mislead the jury and result in a mini-trial regarding the different standards and the significance of the preventability finding, diverting attention away from the real issue of negligence. Likewise, there exists a danger that the proposed evidence could suggest a decision to the jury on an improper basis. CF's finding of preventability could lead the jury to decide the issue of negligence by improper reference to the preventability standard and CF's finding of preventability.

E. Evidence of a Prior and a Subsequent Accident of Defendant Riggs

*7 Defendants move to exclude evidence of an accident involving Riggs which occurred on February 14, 1996, approximately six months before the accident in dispute here, and an accident involving Riggs subsequent to the accident here, which occurred on August 17, 1998. Defendants argue that such evidence may not be used to prove Riggs was negligent on August 4, 1996. Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." In this Circuit, evidence of "other acts" is admissible only if it meets the following four part test: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not outweighed by the danger of unfair prejudice. *United States v. Asher,* 178 F.3d 486, 492 (7th Cir.1999). The fourth prong of the test incorporates Rule 403, which provides for the exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. *United States v. Robinson,* 161 F.3d 463, 467 (7th Cir.1998). Evidence of "other acts" is admissible to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Rule 404(b) applies to civil cases as well as to criminal cases. *Huddleston v. United States,* 485 U.S. 681, 685 (1988).

Evidence of prior and subsequent accidents involving Riggs fails to satisfy at least two of the four prongs of the test. First, the evidence does not tend to establish something other than Riggs' alleged negligence. In *Sparks v. Gilley Trucking Co., Inc.,* 992 F.2d 50, 52 (4th Cir.1993), a personal injury action, the defendant sought to introduce evidence that the plaintiff had been convicted of speeding on several prior occasions to establish that the plaintiff was speeding at the time of the accident at issue. The Fourth Circuit held that the district court erred by admitting evidence of the prior speeding tickets because such evidence was not offered to show state of mind, plan, motive, preparation or any other permissible purpose under Rule 404(b):

> In a common law negligence case, however, the issue is generally not the defendant's state of mind. Rather the factfinder must determine whether the defendant was acting as a reasonable person would have acted in similar circumstances. In this case Gilley Trucking was attempting to prove that Sparks was speeding or racing at the time of the accident and therefore driving in a negligent manner that contributed to the resulting accident. Yet proof of negligence does not require showing of intent or plan, the stated purposes for which the prior speeding tickets were admitted by the district court.

Case 2:14-cv-11916-GCS-SDD ECF No. 80-2, PageID.2721 Filed 04/08/16 Page 14 of 19

Villalba v. Consol. Freightways Corp. of Delaware, Not Reported in F.Supp.2d (2000)
2000 WL 1154073

**\*8** Nor did Gilley Trucking present any foundation for the theory that prior tickets revealed a "plan" or a "motive" to race on the day of the accident, and none of the evidence about the tickets discloses preparation to speed or race that day.

*Id.* at 52–53. Likewise, it does not appear that motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident are at issue in this common law negligence action.

Villalba claims that the evidence of other accidents is intended to impact Riggs' credibility as a witness and his bias, interest, and motive in testifying in a particular manner. Villalba maintains that Riggs' concern about further disciplinary action is relevant to the explanation he gives for the August 4, 1996 accident and she should be able to offer an explanation for Riggs' decision not to acknowledge his own fault in this case.

Evidence that Riggs was involved in prior and subsequent accidents does not provide a motive for Riggs to give testimony inconsistent with Villalba's version of events in order to avoid further disciplinary action. Riggs was found not to have engaged in wrongful conduct and was not disciplined following the prior accident. Thus, the position Riggs took regarding the August 4, 1996 accident and his decision not to acknowledge his own fault was not motivated by a fear of further disciplinary action. Similarly, the explanation Riggs gave for the August 4, 1996 accident could not have been motivated by the subsequent accident because events after the August 4, 1996 accident are not probative of intent at that time. Villalba has not sufficiently articulated how the evidence of prior and subsequent accidents involving Riggs will establish his motive to testify in a particular manner to avoid further disciplinary action.

Villalba also argues that evidence of the prior and subsequent accidents will "reveal that [Riggs] engaged in a pattern of blaming the collisions he has engaged in on the individuals he has collided with." In the two other accidents, Riggs blamed the accident on drivers of vehicles attempting to overcome him, which is the same allegation he is making here. Villalba believes she should be able to "present to the jury the reaction that Riggs engaged in during the other accidents to demonstrate that his current excuse is not legitimate."

The fact that Riggs blamed the drivers in the prior and subsequent accidents does not make it more probable that Riggs' current explanation is false. Villalba wants to introduce this "pattern" evidence to show that it is more likely that Riggs acted in the same manner with respect to Villalba as he did with respect to the other drivers. This purpose is prohibited by Rule 404(b). As the Seventh Circuit has explained:

> "Pattern" usually is a shorthand for a series of acts that collectively identify the offender-the ten bank robberies by a gang disguised by red polka dot bandanna, the series of counterfeit bills made by an engraver who never gets the Great Seal quite right, and so on. The pattern serves as the signature that enable the jury to determine that this offense, too, was committed by the defendant.

**\*9** The inference from "pattern" by itself is exactly the forbidden inference that one who violated the drug laws on one occasion must have violated them on the occasion charged in the indictment. Unless something more than a pattern and temporal proximity is required, the fundamental rule is gone. This is why "pattern" is not listed in 404(b) as an exception. Patterns of acts may show identity, intent, plan, absence of mistake, or one of the other listed grounds, but a pattern is not itself a reason to admit the evidence.

*United States v. Beasley,* 809 F.2d 1273, 1277 (7th Cir.1987). Villalba has not established that a pattern of blaming accidents on other drivers shows any of the other permissible purposes enumerated in the Rule.

Moreover, the danger of unfair prejudice would substantially outweigh the probative value, if any, of the prior and subsequent accidents. Evidence is unduly prejudicial only if it will "induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Pulido,* 69 F.3d 192, 201 (7th Cir.1995) (citations and quotations omitted). Here, the jury may improperly infer from the mere existence of the prior and subsequent accidents that Riggs is a careless driver and must have been negligent on August 4, 1996 without that issue having been proved. Moreover, if evidence of the prior and subsequent accidents are admitted, CF and Riggs will likely present evidence establishing that Riggs was not negligent in the prior and subsequent accidents which will necessitate trials within a trial. This would consume substantial trial time and confuse the jury on issues of minimal probative value. Defendants' motion in limine to bar evidence of prior and subsequent accidents is granted.

Case 2:14-cv-11916-GCS-SDD  ECF No. 80-2, PageID.2722  Filed 04/08/16  Page 15 of 19
Villalba v. Consol. Freightways Corp. of Delaware, Not Reported in F.Supp.2d (2000)
2000 WL 1154073

F. Evidence of Villalba's Alleged Prior Suicide Attempt

Villalba moves to preclude the Defendants from introducing evidence regarding an alleged suicide attempt by her in 1990. Because the Court granted Defendants' motion in limine regarding any causation between the August 4, 1996 accident and Villalba's August 27, 1997 suicide attempt, Defendants concede that this portion of Villalba's consolidated motions in limine is moot. *See* Defendants' Response, p. 2. Accordingly, Defendants are barred from introducing evidence regarding an alleged suicide attempt in 1990.

G. Evidence of Plaintiff's Lifestyle

Villalba moves to bar defense attorneys from asking questions or offering evidence regarding her "lifestyle" since the accident on August 4, 1996, with the exception of questions relating to the operation of her business. Villalba's motion is too overbroad and vague. She does not specifically define what she means by "lifestyle" questions. Because Villalba's motion is too vague to determine whether evidence regarding her "lifestyle" would be admissible, the evidence will not be excluded on a motion in limine. Ruling on the admissibility of any "lifestyle" questions will be deferred until trial.

H. Evidence of Collateral Sources, Wealth or Poverty of the Parties, Tax Consequence of Any Award, and Settlement Negotiations

*10 Villalba's unopposed motion to bar any questions or argument regarding collateral sources, the wealth, poverty or pecuniary circumstances of the parties, the tax consequences of any recovery, and settlement negotiations is granted.

I. Testimony of Undisclosed Witnesses

Villalba moves to bar Defendants from calling any witnesses at trial who were not previously disclosed in answers to discovery. Villalba objects to Defendants calling the following witnesses because they were not previously disclosed: B.A. Smith, Bruce Hartman and/or Stan Tomscak, Jenny S. Chavarria, Laura Diaz, Maria Ulloa, Karine Flores, and Jorge Lopez.

*B.A. Smith*

B.A. Smith is the Intake Counselor who took and entered Villalba's history of an alleged prior suicide attempt in 1990 at Ingalls Hospital on August 27, 1997. Because Defendants indicate that they will not call Ms. Smith if the Court grants their motion in limine concerning evidence of any causation between the August 4, 1996 accident and Villalba's August 27, 1997 suicide attempt, Villalba's motion is granted with respect to B.A. Smith.

*Bruce Hartman and/or Stan Tomscak*

Bruce Hartman was formerly the Employee Safety Manager for CF. Defendants maintain that Hartman was identified and disclosed in CF's Answers to Plaintiff's Interrogatory No. 1. Accordingly, Villalba's motion is denied with respect to Bruce Hartman.

Stan Tomscak is CF's current safety manager. Defendants indicate that they do not anticipate offering any testimony from Tomscak "unless it be in the context of a representative of the corporate defendant in response to unanticipated issues raised by plaintiff at trial." Given Defendants' representation, Villalba's motion in limine is denied without prejudice to her reasserting it at trial if necessary.

*Chavarria, Diaz, Ulloa, Flores, and Lopez*

Jenny S. Chavarria, Laura Diaz, Maria Ulloa, Karina Flores, and Jorge Lopez are all either Villalba's friends, family members, and/or co-workers and all named as possible impeachment witnesses. Rule 26(a)(3) which requires certain pretrial disclosures including the name of witnesses not previously provided does not require disclosure of witnesses offered "solely for impeachment purposes." *See also* Rule 37(c)(1) Advisory Committee Notes for 1993 Amendment (stating because Rule 26(a) does not require disclosure of evidence offered solely for impeachment purposes, the preclusion sanction of Rule 37(c)(1) does not apply to that evidence). Villalba's motion to bar Chavarria, Diaz, Ulloa, Flores, and Lopez from testifying as impeachment witnesses is denied.

J. Testimony By Defendants' Expert, David E. Hartman

Villalba moves to bar the testimony of Defendants' expert, David E. Hartman, with respect to any opinion he renders which is not supported by full disclosure of the bases and underlying data for his comparative assessment. Specifically, Villalba complains that Dr. Hartman failed to reveal in his report the norms established for two tests Dr. Hartman administered to Villalba in his neuropsychological evaluation. Villalba contends that Dr. Hartman failed to reveal the norms which apply to the Computerized Assessment of Response Bias (CARB) and Test of Memory

Case 2:14-cv-11916-GCS-SDD ECF No. 80-2, PageID.2723 Filed 04/08/16 Page 16 of 19

Villalba v. Consol. Freightways Corp. of Delaware, Not Reported in F.Supp.2d (2000)
2000 WL 1154073

Malingering (TOMM) tests or the bases for the comparative figures relied upon to draw his conclusions. [2]

[2] Villalba also claims that at his deposition, Dr. Hartman refused to provide answers to questions about the two tests and norms, but she fails to provide any citation to Dr. Hartman's deposition to support this assertion. Villalba further asserts that Dr. Hartman's "inability to provide answers to these reasonable questions means that his opinions will go effectively unchallenged at trial without any showing that his opinions are valid or have been subjected to peer review or meet in any way the requirements set forth by the Supreme Court for controlling the rendering of unreliable opinions from experts. *Daubert v. Merrel Dow Pharmaceuticals,* 509 U.S. 579, 597 (1993)." Villalba's cursory challenge to the reliability of Dr. Hartman's opinions fails. Villalba has not provided the Court with any information concerning how to evaluate a neuropsychologist's opinions within the context of the four indices of reliability identified by the Supreme Court in *Daubert* (testing, peer review, error rate, and general acceptance). Given the current record, Villalba's motion in limine to bar Dr. Hartman's report under *Daubert* is denied without prejudice.

**\*11** Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert's report to contain, among other things, "a complete statement of all opinions to be expressed and the basis and reasons therefor" and "the data or other information considered by the witness in forming the opinions." Rule 37(c)(1) provides that a party who without substantial justification fails to disclose information required by Rule 26(a) shall not, unless such failure is harmless, be permitted to use such information at trial.

Dr. Hartman's report complies with Rule 26(a)(2)(B). Dr. Hartman's report contains a complete statement of all opinions to be expressed and the reasons therefore, the data or other information he considered in forming his opinions, and all exhibits or charts that summarize or support his opinions. With respect to the CARB test, Dr. Hartman stated in his report: "While Ms. Villalba's score was above the mean score of subtle fakers, she produced an error score that was three z-score deviations *worse* than scores produced by patients with *severe* traumatic brain injury." Hartman report, p. 12. With respect to the TOMM test, Dr. Hartman concluded that Villalba "concocted an error rate that would not be seen in any legitimate form of mild head trauma." *Id,* p. 14. Dr. Hartman's report contains charts which compare Villalba's scores on the CARB and TOMM tests with the norms for both tests. *Id.,* pp. 12, 14.

Villalba's claim that Dr. Hartman failed to comply with Rule 26(a)(2) by failing to disclose the underlying data for the norms in his report is without merit. The purpose of Rule 26(a)(2) is to require disclosure of expert testimony "sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *See* Advisory Committee Notes on 1993 Amendments to Rule 26(a)(2). Dr. Hartman disclosed the norms for the CARB and TOMM tests he utilized and relied on. No more is required by the federal rules. Dr. Hartman's report contained sufficient information for Villalba's attorneys to prepare for cross-examination.

Nevertheless, to the extent Villalba believes she will be harmed at trial without further information concerning the norms for the CARB and TOMM tests, the Court will alleviate any possible prejudice by allowing Villalba's counsel and expert to review Dr. Hartman's file before trial. Villalba's counsel may work with their own expert to obtain any further information they may need regarding the tests for cross-examination.

For the reasons set forth above, Defendants' Motion in Limine to Bar Portions of Plaintiff's Pecuniary Damage Claim (# 21) is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART, Defendants' Motion in Limine to Bar Plaintiff From Offering Evidence Regarding Traffic Citation Received by Defendant Riggs (# 22) is GRANTED, Defendants' Motion in Limine to Bar Plaintiff From Offering Any Testimony or Opinion at Trial Concerning Any Causation Between the Accident and Plaintiff's August 27, 1997 Suicide Attempt (# 23) is GRANTED, Defendants' Motion in Limine to Bar Admission of Documents and Testimony Relating to Post–Accident Remedial Measures (# 24) is GRANTED, Defendants' Motion in Limine to Bar Evidence of a Prior and a Subsequent Accident of Defendant Riggs and to Bar Admission of Documents Relating to Those Accidents (# 25) is GRANTED, Plaintiff's Motion in Limine to Bar Defendants' Expert (# 30) is DENIED, and Plaintiff's Consolidated Motions in Limine (# 31) are GRANTED IN PART, DENIED IN PART, and DENIED WITHOUT PREJUDICE IN PART.

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1154073

**Villalba v. Consol. Freightways Corp. of Delaware, Not Reported in F.Supp.2d (2000)**
2000 WL 1154073

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 2300762
Only the Westlaw citation is currently available.
United States District Court,
C.D. Illinois,
Urbana Division.

Earl BARLOW, Jr., Plaintiff,
v.
Officer Nicholas RILEY, Defendant.

No. 12–2058.
|
May 24, 2013.

**Attorneys and Law Firms**

Carey L. Ash, Paul Lazaro, University of Illinois College of Law, Champaign, IL, for Plaintiff.

**ORDER**

DAVID G. BERNTHAL, United States Magistrate Judge.

**1* Plaintiff Earl Barlow, Jr., brings an excessive force claim under 42 U.S.C. § 1983 against Defendant Nicholas Riley, a correctional officer at Jerome Combs Detention Center (JCDC) in Kankakee, Illinois, alleging that, during an incident in which inmates at JCDC refused to lock up after receiving their meal trays, Defendant kneed Plaintiff hard in the back while cuffing him, causing Plaintiff to suffer intense lower back pain. Before the Court are Defendant's motions *in limine,* filed in anticipation of the trial set to begin May 28, 2013. For the reasons explained below, Defendant's Motion *in Limine* # 3 Seeking To Bar Testimony Concerning Plaintiff's Complaints Apart from Excessive Force **(# 60)** is **GRANTED IN PART** and **DENIED IN PART,** and Defendant's Motion *in Limine* # 6 Seeking To Bar Plaintiff from Offering Medical Opinions or Hearsay Medical Testimony **(# 63)** is **GRANTED.**

**Defendant's Motion *in Limine* # 3 Seeking
To Bar Testimony Concerning Plaintiff's
Complaints Apart from Excessive Force (# 60)**

In addition to his claim of excessive force, Plaintiff's original complaint alleged that jail personnel had restricted his access to the courts and that he had been illegally placed in segregation. Following a merit review, the Court ordered that Plaintiff could proceed on his excessive force claim only.

Defendant Riley filed a motion *in limine* asking the Court to bar any testimony related to allegations that the jail lost Plaintiff's legal materials, that Plaintiff was illegally segregated, and that Plaintiff's access to courts had been restricted on the basis that the evidence is irrelevant.

Plaintiff does not challenge the motion *in limine* as it addresses loss of legal materials or access to court. However, he responds that barring testimony regarding his illegal segregation would preclude Plaintiff from introducing facts that would disprove one of Defendant Riley's primary justifications for his use of excessive force. Specifically, Plaintiff contends that, because he had been in segregation immediately before the incident, he could not have conspired with the other inmates. Plaintiff contends that the evidence would show that Plaintiff had not been involved in the other inmates' planned refusal to "lock up" and he was not an active participant in the other inmates' plan, which is Defendant's justification for using force. Plaintiff states that "the fact that the Plaintiff had been transferred from segregation minutes before the Defendant's use of excessive force increases the probability that the Plaintiff was not in willful disregard of commands, and was not an active resister" (# 71, p. 3), which undermines the reasonableness of Defendant's use of force.

"Relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Defendant does not contend that this evidence would be prejudicial or confusing, relying solely on the relevance argument.

*2 Based on the broad definition of relevance, the Court agrees with Plaintiff that evidence related to his placement in segregation and the timing of his release is arguably relevant to the reasonableness of Defendant's use of force. Accordingly, the Court denies Defendant's motion to bar evidence related to Plaintiff's placement in segregation. However, Plaintiff is barred from presenting any evidence as to the *illegality* of his placement in segregation. In addition,

the Court grants Defendant's motion to bar testimony regarding loss of Plaintiff's legal materials and restricted access to the courts.

### Defendant's Motion *in Limine* # 6 Seeking To Bar Plaintiff from Offering Medical Opinions or Hearsay Medical Testimony (# 63)

Defendant argues that Plaintiff should be barred from testifying about opinions or conclusions regarding his medical conditions, causation, diagnoses, or prognoses because Plaintiff, a lay witness, is not qualified to testify about the nature of any underlying medical condition, its cause, or its permanence. Defendant also contends that Plaintiff should be barred from testifying about what doctors may have told Plaintiff regarding his alleged back pain, causation, diagnosis, or prognosis, and about the policies and procedures of the medical center at the JCDC because that testimony would constitute impermissible hearsay under Federal Rule of Evidence 802.

Plaintiff responds that he should be permitted to testify about his current symptoms and how long he has experienced those symptoms based on his own perceptions. He also contends that medical records recorded at the JCDC should fall under the business records exception of the Federal Rules of Evidence 803(6). Defendant's motion *in limine* does not seek to bar evidence related to medical records from the JCDC's medical center and the Court need not address that issue at this time.

The Court agrees with Defendant that Plaintiff should be barred from providing opinions or conclusions, including his own opinions, about his medical condition. However, this does not prevent Plaintiff from testifying about his own perceptions of his symptoms. Plaintiff is also barred from testifying about what the doctors have told him about his condition. Plaintiff has not objected to Defendant's motion to bar testimony related to the policies and procedures of the medical center at the JCDC, therefore the Court grants Defendant's motion as to that issue.

### Conclusion

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion *in Limine* # 3 Seeking To Bar Testimony Concerning Plaintiff's Complaints Apart from Excessive Force **(# 60)** . Plaintiff may testify about his placement in segregation and the timing of his release, but he is barred from presenting any evidence related to the illegality of his placement in segregation, or any evidence about other potential claims including lost legal materials and restricted access to the courts. The Court **GRANTS** Defendant's Motion *in Limine* # 6 Seeking To Bar Plaintiff from Offering Medical Opinions or Hearsay Medical Testimony **(# 63).** Plaintiff may not testify as to (1) opinions and conclusions from Plaintiff or others about his medical condition, (2) what doctors have told him about his condition, or (3) the policies and procedures of the medical center at the JCDC.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2300762