# EXHIBIT D

2011 WL 873473
Only the Westlaw citation is currently available.
United States District Court,
D. South Dakota,
Southern Division.

Ryan BODDICKER, Plaintiff,
v.
ESURANCE, INC., Defendant.

No. CIV. 09–4027–KES.
|
March 8, 2011.

**Attorneys and Law Firms**

Pamela R. Bollweg, Ronald A. Parsons, Jr., Shannon Falon, Sara E. Show, Johnson, Heidepriem & Abdallah, LLP, Sioux Falls, SD, for Plaintiff.

George R. Wood, Littler Mendelson, P.C., Minneapolis, MN, Sandra K. Hoglund–Hanson, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for Defendant.

ORDER

KAREN E. SCHREIER, Chief Judge.

*1 Plaintiff, Ryan Boddicker, filed suit against defendant, Esurance, Inc.[1] Only Boddicker's Family Medical Leave Act (FMLA) interference and Consolidated Omnibus Budget Reconciliation Act (COBRA) causes of action survived summary judgment. The parties filed a number of motions in limine and, after a pretrial hearing, the court reserved ruling on three of Boddicker's motions in limine. Boddicker's motions in limine are granted in part and denied in part.

DISCUSSION

**I. Motions in Limine Numbers 2 and 3**
In his motion in limine number 2, Boddicker seeks to prohibit Esurance from offering "[e]vidence, testimony, or argument concerning or referencing any abuse suffered by Ryan Boddicker from his parents, stepparents, or other relatives." Docket 90. Motion in limine number 3 seeks to forbid Esurance from offering "[e]vidence, testimony, or argument concerning or referencing the relationship between Ryan Boddicker and his parents, stepparents, or any other relative." Docket 90.

Boddicker objects to the evidence on the basis of relevancy under Rules 401 and 402. "All relevant evidence is admissible...." Fed.R.Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "Relevancy is not an inherent characteristic of any item of evidence but exists only as relation between an item of evidence and a matter properly provable in the case." *Huddleston v. United States,* 485 U.S. 681, 689 (1988) (citing Advisory Committee's Notes on Fed. Rule. Evid. 401, 28 U.S.C.App., at 688).

During the pretrial hearing, the court requested Boddicker's mental health records and the depositions of his mental health providers. The records reflect that Boddicker told his mental health providers that he was exposed to, at a minimum, verbal abuse by his father and his stepmother. The records also state that Boddicker has experienced stressed relationships with some family members.

The central issue with regard to Boddicker's FMLA interference claim is whether Esurance chilled or interfered with Boddicker's FMLA rights resulting in Boddicker's suffering emotional stress or other mental problems that caused him to miss work. Esurance contends that Boddicker's relationship with and abuse from his family were the cause of his emotional stress and other mental problems and not Esurance's actions. Because the evidence goes to a material issue in the case, it is relevant.

Boddicker contends that the evidence is prohibited by Rule 403. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. "Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *Wade v. Haynes,* 663 F.2d 778, 783 (8th Cir.1981), *aff'd sub nom. Smith v. Wade,* 461 U.S. 30 (1983). Unfairly prejudicial evidence is evidence that is " 'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.' " *United States v. Adams,* 401 F.3d 886, 900 (8th Cir.2005) (quoting *United States v. Shoffner,* 71 F.3d 1429, 1433 (8th Cir.1995)).

**\*2** Boddicker does not identify the unfair prejudice that he would suffer if the evidence surrounding his familial relationship is admitted. Instead, he only asserts that "any possible probative value is substantially outweighed by the danger of unfair prejudice of this evidence, confusion of the issues, or misleading the jury and therefore, it should be excluded." Docket 91 at 3. Because the evidence is relevant and Boddicker has not articulated how the evidence would result in unfair prejudice, the motion in limine is without merit. Moreover, evidence of Boddicker's relationship with his family or any abuse he suffered from his family would not suggest a decision on an improper basis, because if the jury believes Esurance's version of the facts, Boddicker's familial difficulties may have been the cause of his missing work.

Boddicker further asserts Rules 404 and 608 as bases for refusing to admit the evidence. Evidence of a person's character is generally not admissible, *see* Fed.R.Evid. 404, especially in a civil case. *See, e.g.,* McCabe v. Macaulay, No. 05–CV–73–LRR, 2008 WL 1844048, at \*4 (N.D.Iowa 2008) ("[C]haracter evidence not admissible in civil actions, unless character or reputation is put in issue by the very proceeding itself." (citation omitted)). Additionally, if a witness's credibility is attacked, the evidence can only refer to the witness's character for truthfulness or untruthfulness. *See* Fed.R.Evid. 608(a). Character is not defined in the federal rules, but leading commentators have noted that character tends to refer to a personality trait or a person's mental or, in some cases, physical attributes. *See generally* Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5232 (1978).

Boddicker offers no argument on how evidence of his familial relationships or possible abuse is character or reputation evidence. A history of abuse or difficult familial relationships are neither mental or physical attributes nor personality traits. Thus, the evidence is not character evidence and Boddicker's motions in limine numbers 2 and 3 are denied.

**II. Motion in Limine Number 5**

In motion in limine number 5, Boddicker seeks to prohibit Esurance from offering:

> Evidence or testimony by Larry Plucker, Sr. or Larry Plucker, Jr. as well as evidence, testimony, or argument from any witness, attorney, or representative thereof concerning or referencing any statements made by the Plaintiff about other employees of the Defendant being "b\* \* \* \*es" or "b\* \* \* \*y" as well as statements allegedly made about the taxpayers or any other person paying for Plaintiff's disability.

Docket 90 at 1. Boddicker's motion in limine number 5 contains two separate types of evidence: (1) statements made to the Pluckers about his Esurance supervisors; and (2) statements made to the Pluckers about his disability and the taxpayers.

**A. Statements about Esurance Supervisors**

Boddicker worked full time for Save Our Space, a company specializing in closet organization, from October 22, 2007, through December 17, 2007. Plucker, Jr. owns Save Our Space and his father, Plucker, Sr., works for the company as an installer.

**\*3** In his deposition, Plucker, Jr. testified that when he interviewed Boddicker for the Save Our Space job, he asked Boddicker why he left Esurance. Boddicker

> basically told me that he was—he had two women supervisors, a direct supervisor and then someone over her, and that he just simply didn't get along with them. He at one point used the B word.... He called them b\* \* \* \*es, and that he had recently had his review, his annual review, and evidently it wasn't favorable, and he was upset because how could they give him an unfavorable review because they didn't even know what his job was, something to that effect.

Plucker, Jr. Dep., p. 10, lines 16–25, p. 11 line 1, Docket 110 at 3. Boddicker never told Plucker, Jr. the names of the women. *Id.* at p. 36 lines 17–25, p. 37 lines 1–5, 22–25, Docket 110 at 27–28.

Plucker, Sr. testified that Boddicker minimally spoke with him about Esurance. Plucker, Sr. Dep., p. 7 lines 4–6, Docket 111 at 7 ("Q: Did Mr. Boddicker ever talk about his work for Esurance? A: Yes, minimal."). According to Plucker, Sr., Boddicker "only kind of brought up maybe two or three times that he mentioned these women, and because he was quite upset about evidently his experience with them, but he didn't dwell on it. He just said that these two women up there that— you know, b\* \* \* \*y old women up there that he had to work

for, that that was his reason for leaving." *Id.* at p. 21, lines 13–18, Docket 111 at 21.

Boddicker argues that the Pluckers' testimony is "not relevant to whether Esurance, Inc.'s actions interfered with Ryan's right to take FMLA leave," and is inadmissable under Rules 401 and 402. Docket 91 at 5.

To determine if an employer interfered with an employee's FMLA rights, the fact finder views the situation from the totality of the circumstances. *Murphy v. FedEx Nat'l Ltl., 618 F.3d 893, 901 (8th Cir.2010)* (employing a totality of the circumstances test in an FMLA case); *Scobey v. Nucor Steel–Ark., 580 F.3d 781, 787 (8th Cir.2009)* (same). Boddicker claims that comments made by his supervisors to him after he returned from FMLA leave chilled the use of his FMLA rights. The statements Boddicker made about his supervisors are statements of a party opponent, and they are relevant to show Boddicker's view of and relationship with his supervisors. Such evidence allows the jury to determine whether it is more or less probable that Boddicker's supervisors chilled the exercise of his FMLA rights.

Boddicker contends that the evidence is also inadmissible under Rule 403. The jury will be required to determine if Esurance interfered with Boddicker's FMLA rights. While incantations of the word b* * * * may be offensive, such language is not so inflammatory that it will divert the jury's attention away from the material issue of FMLA interference.

Boddicker further contends that these statements are inadmissible character evidence because the statements concern his work ethic. The Pluckers will only testify about statements that Boddicker voluntarily made to them while working at Save Our Space. A person's statements about past supervisors is neither a personality trait nor a physical or mental attribute and, thus, the evidence is not character evidence.

*4 Finally, Boddicker contends that the evidence is hearsay and inadmissible under Rule 802. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801. Boddicker's statements about his supervisors that they were "b* * * *es" or "b* * * *y" are not offered to prove the truth of the statements, but rather to show Boddicker's mental impressions of his supervisors. Thus, Boddicker's motion in limine number 5 as

it pertains to his comments made to the Pluckers about his Esurance supervisors is denied.

### B. Taxpayers Paying for Boddicker's Disability

Boddicker only made statements about the taxpayers paying for his disability to Plucker, Sr.; he did not directly make statements about his disability or taxpayers to Plucker, Jr. *See* Plucker, Jr. Dep., p. 19, lines 15–18, Docket 110 at 5 ("Q: Did Mr. Boddicker at any point in time make statements to you about his—the fact that he was going to have a claim for disability benefits with the government? A: Not to me.").

Plucker Sr. testified that Boddicker "made a comment to me that I would be paying his disability check," Plucker, Sr. Dep., p. 8 lines 20–21, Docket 111 at 7, and "I understood what he meant, as a taxpayer that he would be filing or getting disability, and that as a taxpayer I would be paying part of his disability." *Id.* at p. 9 lines 6–8. Plucker Sr. further testified that "I believe, yeah, that it was kind of a dig, you know, that you're going to be paying my, you know—I don't know if he was bragging about it, but it was definitely that he was trying to make it clear that the taxpayers were going to be making a —paying him disability." *Id.* at p. 20, lines 24–25, p. 21, lines 1–4.

Plucker, Sr. did tell Plucker, Jr. about Boddicker's statements: "Q: What did he say to your father that you understand? A: He was bragging that the taxpayers would be paying his disability forever and that his two children would be going to college for free." Plucker, Jr. Dep., page 19, lines 22–25, Docket 110 at 5.

Esurance argues that it is relevant that Boddicker "viewed his own case as a 'scam.' " Docket 101 at 3. Boddicker correctly notes that there is no evidence that Boddicker referred to his case as a "scam." Instead, Don Welker, a non-party, told Plucker, Jr. that Boddicker's case was a "scam." *See* Docket 102 at 1–2. Because Boddicker never told either Plucker that this lawsuit was a "scam," that evidence is inadmissible.

Boddicker's statements about the taxpayers paying for his disability are not relevant under Rules 401 and 402. Whether the taxpayers will ultimately pay for Boddicker's disability benefits is not a matter relevant to any issue in this case. Accordingly, Boddicker's motion in limine number 5 as it pertains to statements Boddicker made to the Pluckers about receiving disability payments is granted. Accordingly it is

\*5 ORDERED that the motions in limine numbers 2 and 3 are denied and motion in limine number 5 is granted in part and denied in part.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 873473

Footnotes

1     In its recent briefs to the court, Esurance has noted in footnotes that after this litigation commenced, Esurance changed its name from Esurance, Inc. to Esurance Insurance Services, Inc. Until Boddicker or Esurance makes a motion to change the caption, the court will continue to use the original caption.

**End of Document**      © 2016 Thomson Reuters. No claim to original U.S. Government Works.