# Exhibit C

2009 WL 1228680
Only the Westlaw citation is currently available.
United States District Court,
W.D. Michigan,
Southern Division.

EL CAMINO RESOURCES, LTD., et al., Plaintiffs,
v.
HUNTINGTON NATIONAL BANK, Defendant.

No. 1:07-cv-598.
|
April 30, 2009.

**Attorneys and Law Firms**

John E. Anding, Thomas Vincent Hubbard, Drew Cooper & Anding, Grand Rapids, MI, John Albert Graham, Jeffer Mangels Butler & Marmaro LLP, Los Angeles, CA, for Plaintiffs.

Amanda May Fielder, Inga April Hofer, James Moskal, Jeffrey O. Birkhold, Kevin M. Kileen, Matthew T. Nelson, Warner Norcross & Judd LLP, Grand Rapids, MI, for Defendants.

*MEMORANDUM OPINION*

JOSEPH G. SCOVILLE, United States Magistrate Judge.

**\*1** This is a diversity action in which plaintiffs seek to hold the defendant bank responsible for aiding and abetting a massive fraud perpetrated by Cyberco Holdings, Inc., a former customer of the bank. Discovery in this matter is closed, summary judgment motions are pending, and the matter is set for trial in the month of July 2009. Presently pending before the court is plaintiffs' motion for leave to take the *de bene esse* deposition of James Michael Horton, a former executive officer of Cyberco. Leave of court is necessary because Mr. Horton is serving a prison sentence of over seven years, imposed by Judge Robert Holmes Bell on December 12, 2006, for Mr. Horton's complicity in the mail fraud, bank fraud, and money-laundering activities of Cyberco. (*United States v. Horton,* No. 1:06-cr-87).

Plaintiffs move pursuant to Rule 30(a)(2)(B), which requires leave of court to conduct a deposition of a deponent confined in prison. Generally, this court grants leave for such depositions freely, as long as the deposition can be conducted without undue imposition on prison authorities. In the present case, defendant objects to the deposition on two essential grounds. [1] First, defendant asserts that Horton's name is not contained on plaintiffs' Rule 26(a)(1) initial disclosure and that, by virtue of Rule 37(c) (1), exclusion of the witness's testimony is mandatory. Second, defendant argues that discovery is closed, and that plaintiffs have not shown good cause to amend the case management order to allow further discovery as required by Fed.R.Civ.P. 16(b). District Judge Janet T. Neff has referred this matter to me for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

[1] This memorandum opinion addresses only defendant's serious objections. The repeated suggestion that Horton's testimony should be excluded because he is a "convicted fraudster" merits little consideration. Such credibility issues are for the trier of fact and provide no reason to exclude testimony wholesale. The argument that Horton "will say whatever plaintiffs want him to say" is both puzzling and unsupported, and, in all events, frames only an issue of bias, again a question for the jury.

Upon review, I find that neither of the defendant's arguments are persuasive. Plaintiffs will be granted leave to take this deposition and preserve the testimony of James Horton for trial by means of an oral deposition.

**1.**

Rule 26(a)(1) requires that parties make initial disclosures, unless otherwise ordered by the court, providing specified information, including the name of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses. FED. R. CIV. P. 26(a)(1)(A) (i). Rule 37(c) provides sanctions for failure to make a proper Rule 26(a) disclosure. Rule 37(c)(1) provides in its entirety as follows:

**(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**

**(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or

instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

*2 (B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

FED. R. CIV. P. 37(c)(1). In the present case, it is undisputed that the name of James Michael Horton does not appear in plaintiffs' Rule 26(a)(1) disclosure, but it does appear in the disclosure submitted by defendant. Defendant argues that plaintiffs' failure to include Horton's name in its Rule 26(a)(1) disclosure requires preclusion of his testimony at trial.

Rule 37(c) (1), which has been part of the Federal Rules of Civil Procedure for over fifteen years, squints Janus-like in two opposite directions. The rule appears to establish a mandatory and automatic preclusion of a party's use of information or witnesses that the party did not disclose as required by Rule 26(a). This has led courts, including the Sixth Circuit, to observe that preclusion is automatic under Rule 37. See, e.g., Caudell v. City of Loveland, 226 F. App'x 479, 481 n. 1 (6th Cir.2007). The mandatory language of Rule 37(c)(1), however, is followed by a very important subordinate clause that is introduced with the conjunction "unless." Under the rule, exclusion is mandatory "unless" the court finds that the failure was substantially justified or is harmless. Furthermore, the rule provides for additional or alternative sanctions, including the payment of expenses or any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi). Consequently, what begins as a mandatory sanctions ends as a sanction that must be imposed unless the court finds that the failure was substantially justified or was harmless or unless the court chooses to impose an alternative sanction. In short, Rule 37(c)(1) bears all the hallmarks of a committee-made project, with something for everyone.

Courts attempting to apply these seemingly inconsistent provisions have determined that the sanctions of exclusion is "automatic and mandatory" unless the offending party can show that its violation was either justified or harmless. See, e.g., David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir.2003). This places the burden of avoiding automatic sanctions squarely on the party who failed to make a proper disclosure. See Roberts ex rel. Johnson v. Galen of Virginia, Inc., 325 F.3d 776, 782 (6th Cir.2003). Moreover, despite the mandatory language of the rule, the appellate courts continue to insist that the matter falls within the sound discretion of the trial court. Id.; accord Design Strategy, Inc. v. Davis, 469 F.3d 284, 297 (2d Cir.2006) (preclusion remains discretionary, even where nondisclosing party has not met its burden to show that violation was justified or harmless).

On the present record, I conclude that plaintiffs have met their burden of showing that their failure to include Horton's name in their Rule 26(a)(1) disclosure is harmless. In determining whether a nondisclosure is harmless, courts look at a number of factors, but the principal factor is whether the opponent will be prejudiced or surprised. See, e.g., David v. Caterpillar, Inc., 324 F.3d at 857. In light of the central role of the discovery rules in eliminating surprise in civil matters, the extreme sanction of preclusion is simply not warranted when the importance of the additional witness was already known to the opponent. See, e.g., Gutierrez v. AT & T Broadband, LLC, 382 F.3d 725, 732-33 (7th Cir.2004); Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir.1995). The seeds of this attitude are found in the commentary to Rule 37(c) itself. The Advisory Committee's comments identify, among other circumstances indicating that a failure would be harmless, the situation in which a party omits disclosure of a name "of a potential witness known to all parties," or omits "to list as a trial witness a person so listed by another party." FED. R. CIV. P. 37(c), advisory committee notes, 1993 amends. Along the same lines, the supplementation provisions of Rule 26, which require updating of a Rule 26(a)(1) disclosure throughout the life of a case, contain an exemption for information that has otherwise been made known to the opposing party during the discovery process. FED. R. CIV. P. 26(e)(1)(A). These provisions make it clear that a party will not be allowed to insist on exclusion of a witness whose relevance the party was already aware of, especially when that party has itself recognized the witness's importance by including him in the party's own Rule 26(a) disclosure.

*3 Defendant argues that a finding of harmlessness arising from the opponent's previous awareness of a witness was justifiable under the 1993 version of the rule, but is no longer valid after the amendments in 2000. The 1993 version of the rule required disclosure of all individuals "likely to have discoverable information," whether or not that information helped or hurt the disclosing party. After seven years of experimentation and experience under the 1993 rule, the Supreme Court narrowed its scope in the year 2000. By

Case 2:14-cv-11916-GCS-SDD ECF No. 100-4, PageID.3310 Filed 05/06/16 Page 4 of 9
El Camino Resources, Ltd. v. Huntington Nat. Bank, Not Reported in F.Supp.2d (2009)
2009 WL 1228680

reason of the 2000 amendment, a party is obliged to disclose individuals "likely to have discoverable information" but only if the disclosing party may use that individual "to support its claims or defenses." Defendant argues, with support from some unpublished decisions from several district courts, that the effect of this change is to force a party to commit in its Rule 26(a)(1) disclosures to the possible use of the person at trial. Therefore, the argument goes, the dual function of Rule 26(a)(1) disclosures after 2000 is to inform the opponent not only of the witness's existence but also of the party's intent to call the person as a witness. *See, e.g., Coles v. Perry,* No. 01-732, 2002 WL 1263979, at * 1 (D.D.C. June 7, 2002) ("The significant difference is that now the party is obligated to make the explicit representation that it is likely that she may rely on the potential testimony of the individual named."). Consequently, defendant asserts that the suggestion in the 1993 Advisory Committee Note that a failure to disclose is harmless if the identity of the witness was already known to the opponent, while cogent in 1993, is no longer valid. According to defendant and these courts, the opponent's knowledge of the existence of the witness cannot excuse a failure to disclose. Rather, exclusion is required unless the party has actually informed the opponent "that it might call the witness in support of its claims or defenses." *Pal v. New York Univ.,* No. 06Civ5892, 2008 WL 2627614, at *4 (S.D.N.Y. July 10, 2008).

This rigid view of the effect of the 2000 amendments is not persuasive, as it reads the rule in a vacuum. First, the disclosures required by Rule 26(a)(1) are expressly "initial" disclosures, not witness lists for trial. For that reason, this court routinely requires initial disclosures very early in the case, often within thirty days of the Rule 16 conference. It is unreasonable to read Rule 26(a)(1) as requiring some sort of commitment that the party will, or even might, call the person at trial; that is the function of the "Pretrial Disclosure" of witnesses required by Fed.R.Civ.P. 26(a)(3). The distinct purpose of the initial disclosure is to alert the opponent to the existence of a witness whose testimony may be helpful to the disclosing party. Far from seeking to impose a more rigorous disclosure burden on parties, the 2000 amendments were designed to "narrow" the scope of the disclosure obligation. FED. R. CIV. P. 26, advisory committee's notes, 2000 amends. Under the 1993 version of the rule, a party was obliged to disclose all individuals likely to have discoverable knowledge. In 2000, that obligation was narrowed to include only witnesses that the disclosing party deemed useful to its case, and relieve the party of disclosing harmful witnesses or information. *See* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2053 (Supp.2009). Even after the 2000 amendments, courts continue to observe that the purpose of Rule 26(a)(1) initial disclosures "is to give the opposing party information as to the identification and location of persons with knowledge, so that they can be contacted in connection with the litigation...." *Biltrite Corp. v. World Road Markings, Inc.,* 202 F.R.D. 359, 362 (D.Mass.2001). This, and not identification of testifying witnesses at trial, continues to be the function of initial disclosures. Defendant, and some of the cases it relies on, confuse these distinct functions.

**\*4** Defendant's reading of Rule 26(a)(1) also tends to repeal the exception for harmless failure to disclose contained in Rule 37(c) (1). According to defendant, the ironclad obligation created by the rule is that a party unambiguously commit to possible use of a witness in support of its case, no matter how obvious the witness's importance might otherwise be. Even in situations such as the present one, in which the objecting party has itself disclosed the witness, that party can exclude the same witness's testimony at trial, not on the ground that the witness's testimony is a surprise, but on the ground that the opponent's intention to use the same witness is a surprise. This appears to foster the very gamesmanship that the rules were designed to avoid. Under defendant's reading of the rule, the only way to prevent preclusion is to comply with the disclosure requirement, without exception. Significantly, the commentary to the 2000 amendments to Rule 37 does not state or imply that the harmlessness analysis set forth in the 1993 commentary, specifically referring to witnesses disclosed by the other party, was no longer valid in light of the 2000 amendments.

The weight of authority does not support this inflexible approach. Many of the cases cited by defendant itself recognize that prejudice to the objecting party remains the hallmark of the harmlessness analysis. For example, in *Troykna v. Cleveland Chiropractic Clinic,* 280 F.3d 1200 (8th Cir.2002), the court affirmed exclusion of undisclosed witnesses whose names had "been identified or referenced somewhere in the course of discovery." 280 F.3d at 1205. The court agreed that use of the witnesses would have been prejudicial on the ground of "unfair surprise" to the plaintiff. *Id.* Significantly, these witnesses did not appear on the plaintiff's own witness list, and it is doubtful that the court could or would have found unfair surprise if they had. Likewise, in *Lyman v. St. Jude Med. S. C., Inc.,* 580 F.Supp.2d 719 (E.D.Wis.2008) (also cited by defendant), the court

excluded undisclosed witnesses even though their names "surfaced" during the course of discovery. 580 F.Supp.2d at 729. There is a vast difference between witnesses whose names were "referenced" or "surfaced" during discovery and those whose importance is so apparent that the objecting party itself discloses them.

The crucial inquiry, therefore, is whether the nondisclosure is harmless on the one hand or prejudicial on the other. This is a factual inquiry, to be made on the basis of the circumstances of the case, not bright-line rules of exclusion. In arguing strenuously against Horton's deposition, defendant emphasizes that Horton's centrality to the facts of the case was patently obvious to plaintiffs. "Horton has been known to plaintiffs for years. He dealt with plaintiffs from the moment they negotiated and executed their lease transactions with Cyberco, and even signed the contract documents plaintiffs attached to their complaint. Plaintiffs further specifically referenced his conviction for crimes of dishonesty in their complaint." (Def. Brief, docket # 503, at 5-6) (citations to record omitted). In so arguing, defendant makes it just as plain that Horton's connection to the case was patently obvious to defendant as well. Defendant's own listing of Horton reinforces this conclusion. Furthermore, defendant cannot be surprised by the substance of Horton's testimony, because defendant has had the benefit of two Bankruptcy Rule 2004 examinations of Horton under oath in the Cyberco bankruptcy proceedings.

*5 In the circumstances of this case, where Horton's role in the case as a person with discoverable information was obvious to defendant at the outset and where defendant itself listed Horton in its Rule 26(a)(1) disclosure, the court can confidently conclude that plaintiffs' nondisclosure of Horton was harmless. The mandatory preclusion of Rule 37(c)(1) is therefore not applicable.

2.

Defendant further argues that the deposition of Horton should not be allowed because discovery has closed, plaintiffs have taken their maximum allotted number of depositions, and plaintiffs have not shown good cause for modifying the case management order as required by Rule 16(b). If plaintiffs were seeking a discovery deposition of Mr. Horton, this argument would be well taken. Plaintiffs, however, seek to preserve Horton's testimony for trial. Defendant correctly points out that the Rules of Civil Procedure do not specifically differentiate between discovery depositions and evidence depositions. The universal and longstanding practice in this court (and most other trial courts), however, has recognized this common-sense distinction. See Burket v. Hyman-Lippitt, P. C., Nos. 05-72110, 05-72171, 05-72221, 2008 WL 1741875, at *3 (E.D.Mich. Apr.11, 2008) (close of discovery did not preclude taking of *de bene esse* depositions). The simple fact, known to all trial practitioners, is that witnesses often become unavailable for trial, whether because of distance or conflicting schedules (as with testifying physicians). In such circumstances, *de bene esse* depositions taken shortly before trial are commonplace and are properly understood as part of the trial proceedings, not discovery.

It is not surprising that defendant has found some courts espousing a different view. Apparently, in the Southern District of New York, *de bene esse* depositions must be taken by the close of discovery. See George v. Ford Motor Co., No. 03Civ7643, 2007 WL 2398806, at *12 (S.D.N.Y. Aug.17, 2007). Whatever the practice may be in Manhattan, the longstanding approach in Western Michigan is to allow *de bene esse* depositions shortly before trial if there is a good reason preventing live appearance of a witness at trial. The court always has the authority to prevent abuse of the *de bene esse* procedure by a litigant, but no such abuse appears here.

In the present case, if the court acceded to defendant's argument, plaintiffs would still have the opportunity to present Horton's testimony at trial, through the expensive and cumbersome process of seeking a writ of habeas corpus *ad testificandum*. This would require transportation of Horton in custody from his place of incarceration in Wisconsin to this court, with all of the attendant costs and security concerns that such a process entails. A *de bene esse* deposition, taken at the place of incarceration, is safer and much less expensive to the parties and is a superior alternative in every way. To prevent any possible abuse of the *de bene esse* deposition process, the order allowing the deposition will provide that it can only be used for purposes of trial and not in connection with any pretrial motion, including motions for summary judgment.

*Conclusion*

*6 For the foregoing reasons, plaintiffs will be granted leave to depose James Michael Horton pursuant to Fed.R.Civ.P. 30(a)(2) (B).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1228680

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 1741875
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Jack BURKET, et al., Jennifer Adams, et al., William Cliff, et al., Plaintiffs,
v.
HYMAN LIPPITT, P.C., et al., Defendants.

Nos. 05-72110, 05-72171, 05-72221.
|
April 11, 2008.

**Attorneys and Law Firms**

Andrew H. Wilson, Wilson Campilongo, San Rafael, CA, James B. Eggenberger, Eggenberger Law Offices, Southfield, MI, Larry W. Bennett, Giarmarco, Mullins, Troy, MI, for Plaintiffs.

Steven C. Susser, Young & Susser, Southfield, MI.

Rodger D. Young, Young & Susser, Southfield, MI, T. S. Givens, Clinton Township, MI, for Defendants.

*OPINION AND ORDER DENYING HYMAN LIPPITT'S MOTION TO QUASH DEPOSITION OF NON-PARTY*

PATRICK J. DUGGAN, District Judge.

**\*1** This matter is before the Court on Defendant Hyman Lippitt's Motion to Quash the Non-Party Deposition of Robin Cotterell filed on March 27, 2003. Plaintiffs and Counter/Third-Party Defendants Keith and Laurence Mohn (the "Mohns") have filed a responses to Hyman Lippitt's motion. Having reviewed the parties' filings, the Court sees no need for oral argument, and is therefore dispensing with oral argument in accordance with Local Rule 7.1(e)(2).

**I Background**
The above-captioned matters are three separate but related lawsuits alleging Exchange Act and state law violations: *Burket, et al. v. Hyman Lippitt, et al.,* Case No. 05-72110; *Adams, et al. v. Hyman Lippitt, et al.,* Case No. 05-72171; and *Cliff, et al. v. Hyman Lippitt P. C., et al.,* Case No. 05-72221. All three of these lawsuits were filed in late May or early June 2005. Pursuant to the most recent amended scheduling order entered in each of these cases on April 20, 2007, discovery was scheduled to be "completed by" August 31, 2007.

The instant dispute stems from Plaintiffs' March 24, 2008 re-notice of deposition of non-party witness, Robin Cotterell. Plaintiffs' re-notice schedules the deposition of Mr. Cotterell for April 18, 2008 in St. Kitts, a island in the West Indies. Plaintiffs assert that Mr. Cotterell's testimony will undermine the defenses and counterclaims of Defendants.[1] (Pls.' Resp. Br. at 3.) According to Plaintiffs, "Mr. Cotterell, for personal reasons, refuses to come to the United States." (*Adams* Doc. No. 299, Cotterell Aff. ¶ 5.) "Several years ago he was the subject of baseless criminal proceedings in the State of New York."[2] (*Id.*) Although Plaintiffs state that Mr. Cotterell "remains free to travel to the U.S. at his leisure," (*id.*), "he has no desire to return to the country that-in his estimation-subjected him to an unjust and arbitrary prosecution." (*Id.*) For these reasons, Plaintiffs would like to depose Mr. Cotterell to preserve his testimony for trial.

[1] Plaintiffs proffered Mr. Cotterell's affidavit in support of their response to one of the Hyman Lippitt Defendants' motions for summary judgment. (*See Adams,* Doc. No. 260.)

[2] In his affidavit, Mr. Cotterell states that he was "acquitted of each and every charge on the 4th of December 2000." (Cotterell Aff. ¶ 19.)

In a letter dated August 22, 2007, counsel for the Mohns, Jack Mazzara, provided counsel for the Hyman Lippitt Defendants a notice of deposition for Mr. Cotterell. (Pls.' Resp. Ex. D.) The notice, dated August 23, 2007, informed Defendants that the Mohns "will take the telephone deposition" of Mr. Cotterell on August 30, 2007. (*Id.* Ex. E.) The Hyman Lippitt Defendants,[3] in a letter dated August 28, 2007, objected to the Mohns' notice on four separate grounds: (1) it failed to comply with Rule 28(b) of the Federal Rules of Civil Procedure; (2) it had no legal effect in St. Kitts; (3) there had been no stipulation by counsel or a court order authorizing a telephonic deposition; and (4) the deposition of Mr. Cotterell must take place in the United States where he is subject to the jurisdiction of the United States Federal Courts. (Hyman Lippitt's Mot. Ex. 1.) Mr. Cotterell was not deposed on August 30, 2007; nor has he been deposed.

3   The "Hyman Lippitt Defendants" include Hyman Lippitt, P.C., Norman Lippitt, Douglas Hyman, Brian O'Keefe, and John Sellers.

**\*2** On March 12, 2008, counsel for Plaintiffs sent an email informing counsel for the Hyman Lippitt Defendants that Mr. Cotterell "agreed to be deposed in London, Ontario on [March 17, 2008] at 11:00 am." (Hyman Lippitt's Mot. ¶ 8.) The next day, Hyman Lippitt filed an "Emergency Motion To Quash Deposition of Non-Party To Be Held In Canada On Two Business Days' Notice And/Or To Preclude Use of Same At Trial." On March 13, 2008, this Court referred Hyman Lippitt's emergency motion to Magistrate Mona K. Majzoub. Plaintiffs and the Mohns filed responses to Hyman Lippitt's emergency motion, and on March 14, 2008, Magistrate Judge Majzoub granted Hyman Lippitt's emergency motion finding that (1) the deposition was untimely as it was noticed six months after the close of discovery and Plaintiffs failed to show good cause for taking Mr. Cotterell's deposition, and (2) Plaintiffs failed to provide reasonable notice.

Plaintiffs, on March 14, 2008, and the Mohns, on March 16, 2008, appealed Magistrate Judge Majzoub's order granting Hyman Lippitt's emergency motion. On March 17 2008, this Court issued an Opinion and Order affirming Magistrate Judge Majzoub "because it [did] not believe that Magistrate Judge Majzoub's finding that the notice of Mr. Cotterell's deposition was not reasonable was 'clearly erroneous.'" (3/17/08 Op. & Or. at 4.) In the March 17, 2008 Opinion and Order, this Court stated that it "expresse[d] no opinion on the propriety of a subsequent notice of Mr. Cotterell's deposition." (*Id.*) A week after this Court issued the March 17, 2008 Opinion and Order, Plaintiffs re-noticed Mr. Cotterell's deposition for April 18, 2008 to preserve his testimony for use at trial. 4

4   The Court notes that there are two separate motions for summary judgment filed by the Hyman Lippitt Defendants currently pending. The Hyman Lippitt Defendants have also filed a "Motion for Dismissal of 7 Plaintiffs for Failure to Comply with Court's Order to Produce Returns," which is also pending. Moreover, Defendant Givens filed a motion for summary judgment on March 21, 2008. The Court will assume for the purposes of its analysis of the present motion that there will be a trial.

## II. *Discussion*

Hyman Lippitt again moves to quash Mr. Cotterell's deposition, asserting four reasons why Mr. Cotterell's deposition should be quashed. First, Hyman Lippitt argues that the deposition is untimely because discovery has been closed for seven months. Second, Hyman Lippitt asserts that Plaintiffs' statement that Mr. Cotterell's deposition is to "preserve testimony for trial" is irrelevant. The third reason Hyman Lippitt contends Plaintiffs' re-notice should be quashed is that Plaintiffs have failed to make a showing of good cause. Finally, Hyman Lippitt avers that allowing Mr. Cotterell to be deposed "at this late date would be unduly and unfairly prejudicial to Hyman Lippitt." (Hyman Lippitt's Br. at 7.)

Plaintiffs and the Mohns argue that Hyman Lippitt's reference to the close of discovery is irrelevant. Second, Plaintiffs argue that Defendants have known of Mr. Cotterell for years and they previously agreed that his deposition could be taken after the close of discovery; therefore, according to Plaintiffs, Hyman Lippitt will not suffer any prejudice if Mr. Cotterell's deposition goes forward. On the contrary, Plaintiffs contend that if they are not permitted to depose Mr. Cotterell, they will not be able to present his testimony should these cases go to trial. Finally, Plaintiffs contend that even if there is no distinction between a trial deposition and a discovery deposition, they have made a showing of "good cause" to allow the deposition.

**\*3** As an initial matter, this Court's scheduling order setting a date by which discovery shall be completed was intended to set a date to close discovery; it had nothing to do with *de bene esse* depositions. Furthermore, based on the specific facts and circumstances involved in the present dispute, this Court finds that Plaintiffs can take the *de bene esse* deposition of Mr. Cotterell on April 18, 2008 in St. Kitts. 5 When weighing the prejudice each side may incur, the Court is persuaded that the prejudice Plaintiffs would suffer if Mr. Cotterell is not deposed outweighs the potential prejudice to Hyman Lippitt. Hyman Lippitt argues that if Mr. Cotterell's testimony is unfavorable, it would be denied "the opportunity to conduct additional discovery to disprove or rebut [Mr.] Cotterell's testimony." 6 (Hyman Lippitt's Br. at 6.) However, as Plaintiffs contend, they submitted Mr. Cotterell's affidavit in response to one of the Hyman Lippitt Defendants' motions for summary judgment. Therefore, Mr. Cotterell's testimony will not be a complete surprise to Hyman Lippitt. 7 Finally and most importantly, if Mr. Cotterell's April 18, 2008 deposition does not go forward, Plaintiffs and the Mohns would almost certainly be deprived of the opportunity to present the testimony of a witness they believe will be favorable to their claims at trial.

[5] Even if Plaintiffs are required to make a showing of "good cause" to take the *de bene esse* deposition of Mr. Cotterell on April 18, 2008, the Court finds that such a showing has been made.

[6] Technically, because the Court's scheduling order setting August 31, 2007 as the discovery deadline has never been modified, the same would be true for the depositions that have occurred after the discovery deadline.

[7] Furthermore, issues relating to the use of the deposition or whether certain testimony should or should not be admitted are issues the trial court can deal with at the time the deposition is offered.

Accordingly,

**IT IS ORDERED** that Hyman Lippitt's Motion to Quash Deposition of Non-Party is **DENIED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1741875

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.