# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**NATALIE REESER**,

       Plaintiff,

v

**HENRY FORD HEALTH SYSTEM d/b/a HENRY FORD HOSPITAL**,

       Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh

| | |
|---|---|
| **MILLER COHEN, P.L.C.**<br>Richard G. Mack, Jr. (P58657)<br>Keith D. Flynn (P74192)<br>Adam C. Graham (P79361)<br>*Attorneys for Plaintiff*<br>600 W. Lafayette Blvd., 4th Floor<br>Detroit, MI  48226-0840<br>(313) 964-4454 | **VARNUM LLP**<br>Terrance J. Miglio (P30541)<br>Barbara E. Buchanan (P55084)<br>*Attorneys for Defendant*<br>160 W. Fort St., Ste. 500<br>Detroit, MI 48226<br>(313) 481-7300 |

## PLAINTIFF'S TRIAL BRIEF

# STATEMENT OF FACTS

**A. The Clinton Township Patient Service Center at Henry Ford Health System**

On May 16, 2011, Plaintiff began her employment at Henry Ford Health System ("Henry Ford") as a Laboratory Assistant. As a Laboratory Assistant, Plaintiff performed blood sample collection, among other duties.

Plaintiff was supervised by two managers at Clinton Township Patient Service Center (CTPSC), Fiona Bork and Martha Wiseheart. Bork, a Laboratory Sales Manager, wrote Plaintiff's reviews. Wiseheart, a Regional Laboratory Manager, supervised Plaintiff's administrative work. Wiseheart also advised Plaintiff on customer relations issues.

Before early 2014, Plaintiff had a good working relationship with Bork and Wiseheart and excellent performance reviews. On multiple occasions, Plaintiff's supervisors complemented her and noted that she went "above and beyond the call of duty."

**B. Henry Ford violated the Fair Labor Standards Act by failing to pay Plaintiff for lunch periods that she was engaged to wait. Plaintiff reported this violation to Henry Ford's Human Resources Department and the State of Michigan.**

Defendant had an unpaid mandatory 30 minute lunch policy while Plaintiff was employed at Henry Ford. Regardless of this policy, Plaintiff's repeated requests to take a 30 minute lunch were denied and she was repeatedly denied

compensation for being forced to work through lunch. From 2012 to 2014, Plaintiff was not paid for over 350 lunches to which she was entitled.

In early January 2014, after learning from a doctor in the facility that this practice was illegal, Ms. Reeser contacted the State. On January 14, 2014, Plaintiff contacted Human Resources (HR) Senior Business Partner Jill Hood to request a meeting concerning this issue, among others.

Before Plaintiff's meeting with Hood on January 15, 2014, Plaintiff discovered that Bork had somehow learned of her planned meeting with HR. After Plaintiff confirmed that she was meeting with HR, Bork "was appalled" and adopted a "how dare [you]" attitude. Eventually, this meeting was cancelled after Bork withdrew her permission for Ms. Reeser to attend the meeting with Hood.

On January 20, 2014, Plaintiff finally met with Hood. In this meeting, Plaintiff informed Hood that she had not been allowed to take 30 minute lunch breaks away from her office for years. Plaintiff indicated she "recently learned . . . The Fair Labor Standards Act (FLSA) states that hourly employees, who are required to work more than 40 hours in a work week, are to be compensated for those hours under a term called, 'engaged to work.'" Plaintiff requested "[HR] . . . intercede, and allow employees . . . a scheduled/advertised 30-minute closure of the lab each day for a meal break." Plaintiff explained that Bork said she would be "terminated" if she reported this issue. In response, Hood admitted that Henry

Ford had violated federal law by failing to pay Plaintiff for her 'lunches' and promised that she would correct the problem.

Hood explained that she would speak with Bork about the lunch policy and Plaintiff could then begin putting "no lunch" on her timecard to reflect the time owed pursuant to the FLSA.

**C.   Henry Ford failed to correct their illegal activity and, instead, retaliated against Plaintiff for reporting their violation**

On January 26, 2014, Bork emailed Plaintiff and asked "[c]ould you let me know what prevented you from taking lunch 8 out of the 10 days on your time card. Our policy has always been to contact me to get approval not to get a lunch. As you know lunches are mandatory." On January 27, 2014, Plaintiff emailed Hood, stating "I went ahead and put no lunch and I get an email stating, I cannot with out approval, I need some direction on this, because this is upsetting." After Plaintiff's email to Hood, Wiseheart sent an email to Plaintiff denying Plaintiff compensation for lunches she worked until verified by Bork. Later, Bork emailed her boss, John Waugh, Vice President of Laboratory Systems, and indicated that Plaintiff's complaints raised "a huge problem" and that Plaintiff was not entitled to pay for lunches because there were hours of downtime at CTPSC due to patient volume.

In late January or early February 2014, Bork called Plaintiff in the evening and "told [her] off", stating "[you'll] be sorry" for reporting unpaid lunches to the

3

State of Michigan. Even after being instructed by Hood to pay Reeser for lunches she worked in the future, Bork still refused.

On February 18, 2014, Plaintiff wrote to Hood and reiterated that she was still being denied the opportunity to take a lunch break and had still not been paid for the missed lunches owed to her. Plaintiff stated "Thursday will be a month that I was in your office. This is NOT fair to me as an employee, that I have no answers from you a month later . . . I still have hea[r]d nothing on the lunches I don't get yet am still not paid for either." Plaintiff added, "I have no choice but to file paperwork with the state."

Between February 18 and February 25, 2014, Bork, Hood, and Waugh decided to retaliate against Plaintiff by forcing her to transfer to a new site, even though Ms. Reeser had always been at CTPSC and against her wishes.

On the morning of February 25, Plaintiff received a phone call from Bork. Bork said "How dare you go to the State about me", told her that she would be losing CTPSC, indicated that Plaintiff thought she was "some superior person or something" for making a report to the State of Michigan, and threatened that Plaintiff would "be sorry." Plaintiff broke down and stated that she planned on taking a lunch that day.

After this call, Plaintiff, in tears, spoke with Wiseheart and told her that Bork "was upset because I reported the lunch" issue. She also told Wiseheart "that

4

she had to close down and go to lunch." Wiseheart stated: "You need to take some time to yourself and you definitely need to go to HR" and gave her a hug. Wiseheart waived her on to leave.

At 1:12 PM, in compliance with a lunch policy announced by Bork on 2/24/14, Plaintiff emailed a note to Bork, Wiseheart and Luain Hajjar, stating she was taking a break. Plaintiff posted a sign on the front door of the office indicating she would return in 30 minutes and left the office. After posting this sign, Plaintiff went to her car for 30 minutes. Before her lunch and during her lunch, no staff member of CTPSC "responded to [her] email, or called [her] on either [her] office line, or [her] work cell phone to say, 'No Natalie, you cannot take a break today.'" After Plaintiff's lunch, Bork sent an email to Ms. Reeser describing her new schedule. At or around 4:00 PM, Plaintiff was suspended pending an investigation and escorted off the premises by security without being allowed to take with her all of her personal belongings.

### D. Plaintiff reported to the Michigan Department of Licensing and Regulatory Affairs (LARA) leading Defendant to terminate her employment after a sham investigation

Plaintiff completed her FLSA complaint and mailed it to LARA on February 25, 2014. Hood was informed of Plaintiff's intent to file with LARA on February 18, 2014. LARA received the complaint on February 27, 2014. Plaintiff was informed that she was being terminated on March 7th. Ms. Reeser was not paid for

5

the lunches that she was forced to work until immediately before her termination. Hood expressed concern "that potential litigation may come from this" and stated that she understood that "the timing between when her actions of walking off the job so closely corresponded with when we were going to be issuing her back pay for the lunches, and it's very clear to me . . . even the prima facie of that is that it looks odd." Regardless, the decision to terminate was made by Waugh and Bork.

Hood engaged in a sham investigation relying solely on statements made by Bork and Wiseheart, even when they contradicted one another. Although Bork was accused of harassing and retaliating against Ms. Reeser, Hood allowed Bork to conduct her own interviews with staff members at the site regarding Reeser's termination. When it was clear the facts provided by Plaintiff's managers were damaging to Henry Ford, Hood simply neglected to mention those facts.

### E. Henry Ford's own policies make clear Plaintiff would have never been terminated, but for Defendant's agents' retaliatory action

The Hospital's "Break Period" policy provides that "[E]mployees may not work through unpaid break periods unless requested by or otherwise approved by operational leadership." "Employees may leave the premises during unpaid lunch periods, although employees doing so must return punctually." Defendant's HFML Lab Assistant Policies and Guidelines state "[e]ach Lab Assistant, regular full-time, part time, or temporary will . . . adhere to the following policies: Lunches and Breaks: 8 hours, but less than 12 hours = Two paid 15 minute breaks, One 30

6

minute unpaid." Defendant's Payroll Instructions inform Lab Assistants that "[a]ll staff who work 8 or more hours are to take a 30 minute lunch. It is not acceptable to state no lunch unless it is authorized by HFML management."

In the past, Bork instructed employees on several occasions that:

- "Lunches are Mandatory, Not Paid and are 30 minutes. Everyone should be taking a lunch everyday that you work." Unlike lunches, Bork explained, "[b]reaks are NOT mandatory and are paid."
- On January 26, 2014, Bork emailed Plaintiff and asked "[c]ould you let me know what prevented you from taking lunch 8 out of the 10 days on your time card. Our policy has always been to contact me to get <u>approval not to get a lunch</u>. As you know <u>lunches are mandatory</u>."
- On February 24, 2014, Bork sent an email to a number of employees, including Plaintiff, changing the policy and instructing that "[s]tarting tomorrow February 25th, 2014 When you take your lunch please send an email that you are signing out for lunch and when you return from lunch please send an email you are back from your lunch." In her email, Bork explained that this policy "is mandatory and failure to do so will result in a full occurrence."

In order to facilitate lunch breaks at CTPSC, employees had a practice of placing a break sign on the front door of the office informing potential customers that someone would return to the office soon. When Plaintiff sought to take lunch and another employee was not available to watch the office, such a sign would be taken from the Emergency Door Sign Folder and placed on the office door. One of Plaintiff's supervisors, Wiseheart, approved the sign every time Plaintiff utilized a sign in such a manner.

Defendant has a progressive discipline policy to handle workplace violations. Violations are divided into Group 1 and Group 2 violations. *Id.* at 40.

7

Group 1 violations include "attendance." Group 2 violations "are things such as . . . walking off the job." Walking off the job occurs when there is no notice provided and the employee walks away from their work. The Group 2 progressive discipline policy is "documented counseling, written warning, written warning with suspension and then termination."

Under HFML Employees Policies and Guidelines, if an employee fails to obtain approval by "email[ing] [their] arrival and departure", the penalty is "a full occurrence." According to the Attendance policy, if an employee fails to report to work as scheduled, they incur a full occurrence. If an employee leaves early or returns late from a lunch less than ½ an hour, that is ½ an occurrence—anything over ½ an hour is 1 occurrence. If an employee has three occurrences in 30 days, they "get [their] first corrective action." If there are then three more occurrences in 30 days or four more occurrences in 90 days or seven more occurrences in 160 days, an employee will receive the next corrective action in the progressive discipline policy. Before February 25, 2014, if Plaintiff had any occurrences, they were insufficient to bring her to the first corrective action level.

8

## LAW AND ARGUMENT

**A.    Plaintiff will show Defendant unlawfully retaliated against Plaintiff for engaging in protected activity under the FLSA and WPA**

Under both the FLSA[1] and the WPA[2], Plaintiff has the burden to show as part of her *prima facie* case that the adverse employment action was caused by her protected activity under those statutes—either asserting her rights under the FLSA or reporting or threatening to report a violation of law to a public body.  To show causation for purposes of the WPA, Plaintiff must show that Plaintiff's protected activity was at least a motivating factor in Defendant's decision to discharge.[3]  For purposes of FLSA retaliation, "Plaintiff must produce evidence sufficient to raise the inference that his protected conduct was the likely reason for his termination."[4]

---

[1] The FLSA provides, in relevant part, that, "it shall be unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act...." 29 U.S.C. § 215(a)(3).  FLSA anti-retaliation provisions can be triggered by informal, internal complaints. *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004).

[2] The WPA protects employees from discrimination and retaliation who report or are about to report a suspected violation of law to a public body.  M.C.L. §15.362.  In order to protect the public and deter retaliation, the Whistleblower Protection Act (WPA) is interpreted broadly. *See e.g.*, *Shimkus v Hickner*, 417 F. Supp. 2d. 884 (ED Mich. 2006).

[3] *Peake v. Martinrea Fabco Hot Stamping, Inc.*, No. 09-10348; 2011 WL 1157864, at *5 (E.D. Mich 2011).

[4] *Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883, 889 (W.D. Mich. 2007)

9

Plaintiff may meet the causal burden of either statute by providing sufficient direct evidence of retaliatory animus.[5] In the alternative, without direct evidence of discriminatory animus, the courts apply the burden-shifting test under *McDonnell Douglas v. Green*. "The direct evidence and circumstantial paths are mutually exclusive; the plaintiff can meet her burden with either method of proof."[6]

Here, there is significant direct evidence that unlawful retaliation was at least a motivating factor in Plaintiff's termination. Bork, the decision-maker according to Jill Hood,[7] conveyed retaliatory intent, as well as her displeasure with Plaintiff's protected activity, to Plaintiff and others on several occasions, both in writing and verbally:

(1) stating that Plaintiff was going to "be sorry" for reporting the lunch issue to LARA the day that Plaintiff was suspended and reprimanding her on other occasions for reporting to HR;[8]
(2) communications indicating that she was resentful of Plaintiff's reports to HR and the State, including personal attacks on Reeser for desiring to leave the site for lunch

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883, 888 (W.D. Mich. 2007); *Whitaker v. U.S. Sec. Associates, Inc.*, 774 F. Supp. 2d 860, 867 (E.D. Mich. 2011).

[6] *Weberg v. Franks,* 229 F.3d 514, 523 (6th Cir.2000).

[7] At a minimum, knowledge of a plaintiff's protected activities and retaliatory motive may be imputed to a decision maker under the "cat's paw" theory. The Sixth Circuit has explained that, "[i]n the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decision-making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Roberts v. Principi*, 283 Fed Appx 325, 333 (6th Cir 2008) In other words, "the retaliator is the decisionmaker, and the titular 'decisionmaker' is a mere conduit for the retaliator's discriminatory animus. *Id.*

(3) Bork's threats that if Plaintiff continued to request a lunch break that she would be transferred or lose her job;
(4) reprimanding Reeser for demanding that she be paid for the lunches she was forced to work;
(5) emailing Waugh reiterating her concerns that Ms. Reeser's complaints raised "a huge problem";
(6) directly expressing displeasure on several occasions about being forced to calculate Plaintiff's compensation from unpaid lunches and with her decisions regarding Reeser's schedule being questioned by Plaintiff ; and
(7) bypassing HR and going directly to the Waugh to deal with Reeser who Waugh described as feeling too "empowered" after Reeser's reports.

If the Court believes such evidence does not rise to the level of direct evidence, under the burden-shifting test, Plaintiff may still submit indirect evidence of her employer's unlawful motivations to show that a causal link exists between the protected activity and the employer's adverse employment action. As the court recognized in its' Order Denying Defendant's Motion for Summary Judgment, "close temporal proximity between two events is sufficient to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." [9] In *Morris v. Aon Service Corp.*, the court found "[d]etermining causation . . . ultimately turns on temporal issues related to notice." *Morris* at *3. The court noted that the Sixth Circuit has held that close temporal proximity between protected activity and firing is sometimes enough, by itself, to establish prima facie causation. *Id.* at 4 (citing *Hamilton v. General Electric Co.*, 556 F.3d

---

[9] *Light v. MAPCO Petroleum, Inc.*, No. 3:04-0460, 2005 WL 1868766, at *12 (M.D. Tenn. Aug. 4, 2005) (citing *DiCarlo v. Potter*, 358 F.3d 408, 421-22 (6th Cir.2004)).

428, 435-36 (6th Cir.2009)). Internal complaints about pursuing claims with a state agency can also be sufficient notice of a Plaintiff's report to a state agency even if a Plaintiff is terminated before providing specific notice of their report to an employer. *Id.*

In addition to temporal proximity, there is sufficient evidence for a reasonable jury to conclude that Defendant treated Plaintiff differently from other employees in terminating her employment, as the court discussed in its' Order Denying Summary Judgment. Defendant claimed that other employees had been terminated in the past for "job abandonment." In discovery, it became clear that the examples Defendant provided prove that there has never been a Lab Outreach employee who has been terminated for merely taking a 30-minute lunch. All the examples provided by Defendant involved employees who falsified time sheets, provided no notice, cussed and acted in a threatening manner in front of a patient, abandoned a patient, or had numerous other disciplinary problems or occurrences. Instead, she was terminated in contradiction to Defendant's own mandatory unpaid lunch policy and Attendance policy dictating that, at most, Ms. Reeser's February 25th lunch should only have warranted one occurrence.

Plaintiff may also prove retaliation by showing Defendant failed to follow many of its policies in regards to Ms. Reeser and her lunches.[10] Defendant's failure is obvious because:

- Defendant MANDATES an unpaid 30-minute lunch period;
- Hood instructed Bork to pay Plaintiff for lunches she worked through; Bork refused without reason later apologizing if this "screwed up" the case;
- According to the Hospital's Absenteeism Policy and the February 24th email from Bork, Plaintiff's action should have resulted in a single occurrence; yet, Ms. Reeser was terminated;
- Under the Hospital's Policies, if an employee fails to obtain approval by "email[ing] [their] arrival and departure", the penalty is "a full occurrence"; yet, Reeser was immediately terminated; and
- Requesting security to escort Ms. Reeser out of the facility without her personal belongings unlike others who had been terminated for worse infractions.[11]

## B. Plaintiff can easily disprove Defendant's pretextual reason for Plaintiff's termination

Defendant asserts that Plaintiff was discharged for "departure from the work site without obtaining authorization." Defendant's proffered reason has no basis in fact. As indicated above, Defendant's policy MANDATED employees to take a thirty minute UNPAID lunch during which they could leave the facility. Failure to

---

[10] Employer's failure to follow its own policies and discriminatory treatment compared to other similarly situated workers are evidence of retaliation. *McLemore v. Detroit Receiving Hosp. & Univ. Medical Center*, 196 Mich. App. 391, 398 (1992); *Turpin v. Cable Tel Servs., Inc.*, 3:09-CV-147, 2010 WL 670080, at *3 (E.D. Tenn. Feb. 22, 2010).

[11] Evidence that the direct supervisor requested that police be on standby when he fired the plaintiff could be used to mean that he thought the plaintiff was a troublemaker due to his complaints regarding unequal pay. *Moore v. Freeman*, 355 F.3d 558, 563 (6th Cir. 2004).

13

provide notice or to otherwise not show up for work, leave early, or arrive late only warranted an occurrence.

Prior to Ms. Reeser's departure on February 25, 2014, Plaintiff provided notice to Bork twice and notice to Wiseheart three times. At no time did any manager instruct that she did not have authority to leave the facility. Wiseheart also provided direct authorization for Plaintiff's lunch telling her to take some time for herself and by waiving Plaintiff on when she stated that she was going to lunch as she had done many times in the past.

Ms. Reeser leaving for lunch was insufficient to warrant termination. Defendant's agents have characterized Plaintiff's actions as "walking off the job." Walking off the job is a situation when there is no notice provided to the employer and the employee walks away from their work. Here, there is no question that notice was provided. Further, Defendant's managerial witnesses all testified that others had engaged in worse behavior who were not terminated.

Even if Defendant's proffered reason was not factually false and could motivate dismissal, it is more likely than not the case that Bork's decision to terminate Plaintiff resulted from retaliation over Plaintiff's complaints regarding rights under FLSA. Bork stated on multiple occasions that any attempt by Plaintiff to report Plaintiff's lunch situation would result in adverse action. Bork told her

14

that she would be "terminated" if she contacted Defendant's Human Resources department about her unpaid lunch concern.

## CONCLUSION

Plaintiff will meet her burden to prove that Defendant terminated her in violation of the Fair Labor Standards Act and the Whistleblowers Protection Act. Contrary to Defendant's assertions, the temporal proximity between Plaintiff's protected activity and her suspension and termination is alone enough to establish Defendant's liability. However, Plaintiff will offer further evidence, including (1) evidence that Plaintiff did not abandon her job; (2) evidence of Defendant's agents' threats of retaliation against Ms. Reeser for her reports to the State of Michigan; (3) evidence that Defendant treated Plaintiff differently from other employees in terminating her employment; and (4) evidence that Defendant failed to follow many of its policies in regards to Ms. Reeser and her lunches. For these reasons, the jury will properly find for Ms. Reeser and hold Defendant liable for its' unlawful retaliation.

Respectfully submitted,
**MILLER COHEN, P.L.C.**
By: /s/ Adam C. Graham
    Adam C. Graham (P79361)
    Richard G. Mack, Jr. (P58657)
    Keith D. Flynn (P74192)
    *Attorneys for Plaintiff*
    600 W. Lafayette Blvd., 4th Fl.
    Detroit, MI 48226

Dated: May 8, 2015
    (313) 964-4454

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**NATALIE REESER**,

          Plaintiff,

v

**HENRY FORD HEALTH SYSTEM d/b/a HENRY FORD HOSPITAL**,

    Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh

| **MILLER COHEN, P.L.C.** | **VARNUM LLP** |
|---|---|
| Richard G. Mack, Jr. (P58657) | Terrance J. Miglio (P30541) |
| Keith D. Flynn (P74192) | Barbara E. Buchanan (P55084) |
| Adam C. Graham (P79361) | *Attorneys for Defendant* |
| *Attorneys for Plaintiff* | 160 W. Fort St., Ste. 500 |
| 600 W. Lafayette Blvd., 4th Floor | Detroit, MI 48226 |
| Detroit, MI 48226-0840 | (313) 481-7300 |
| (313) 964-4454 | |

## CERTIFICATE OF SERVICE

    I hereby certify that on *May 8, 2016,* I electronically filed the foregoing paper with the Court using the ECF system, which will send notification of such filing to ECF participants.

          Respectfully submitted,

          **MILLER COHEN, P.L.C.**

          By: /s/ Adam C. Graham
              Adam C. Graham (P79361)
              *Attorneys for Plaintiff*
              600 W. Lafayette Blvd., 4th Fl.
              Detroit, MI 48226
              (313) 964-4454