## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**NATALIE REESER**,

               Plaintiff,

v.

**HENRY FORD HEALTH SYSTEM
d/b/a HENRY FORD HOSPITAL**,

               Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Stephanie Dawkins Davis

| MILLER COHEN, P.L.C. | VARNUM LLP |
|---|---|
| Keith D. Flynn (P74192) | Terrence J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 160 W. Fort, 5th Floor |
| Detroit, MI 48226-0840 | Detroit, MI 48226 |
| (313) 964-4454 | (313) 481-7300 |

## DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)

**NOW COMES** Defendant, **HENRY FORD HEALTH SYSTEM**
("HFHS"), by and through its attorneys, and pursuant to Fed. R. Civ. P. 50(b),
hereby submits this Renewed Motion for Judgment as a Matter of Law with respect
to Count II (Violation of Michigan's Whistleblower Protection Act) of Plaintiff's
Second Amended Complaint.   In making this Motion, HFHS specifically
incorporates and restates by reference each and every argument and issue it raised
in its initial motion, brought after the proofs at trial, pursuant to Fed. R. Civ.
P. 50(a).

As a matter of law, HFHS is not liable under the WPA because Plaintiff failed at trial to present sufficient evidence to establish a causal connection between her alleged protected activity and her termination for job abandonment. Therefore, for this reason and as more fully set forth in the accompanying Brief in Support, HFHS requests the Court to direct the entry of judgment as a matter of law in its favor on Plaintiff's WPA claim.

HFHS' counsel sought concurrence in the relief sought in this Motion from Plaintiff's counsel on June 15, 2016.  Concurrence was not given, thus making it necessary to file this Motion.

**WHEREFORE**, Defendant respectfully requests that this Honorable Court grant its Renewed Motion for Judgment as a Matter of Law and award such other relief as the Court deems appropriate.

Respectfully submitted,

VARNUM LLP


By:   */s/ Terrence J. Miglio*
Terrence J. Miglio (P30541)
Barbara E. Buchanan (P55084)
Attorneys for Defendant
160 W. Fort, 5th Floor
Detroit, MI  48226
(313) 481-7300

Dated: June 16, 2016

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**NATALIE REESER**,

            Plaintiff,

v

**HENRY FORD HEALTH SYSTEM
d/b/a HENRY FORD HOSPITAL**,

            Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Stephanie Dawkins Davis

| MILLER COHEN, P.L.C. | VARNUM LLP |
|---|---|
| Keith D. Flynn (P74192) | Terrence J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 160 W. Fort, 5th Floor |
| Detroit, MI  48226-0840 | Detroit, MI  48226 |
| (313) 964-4454 | (313) 481-7300 |

## BRIEF IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ ii

INDEX OF AUTHORITIES .................................................................iv

CONCISE STATEMENT OF ISSUES PRESENTED ................................v

INTRODUCTION ...............................................................................1

STATEMENT OF FACTS ....................................................................1

    A.    Plaintiff's Position Of Laboratory Assistant In The Outreach Program. .................................................................................1

    B.    The Outreach Program And HFHS Policies Prohibiting Job Abandonment. ......................................................................3

    C.    The Practice Regarding Lunch Breaks At CTPSC. .............5

    D.    Plaintiff's Complaints To Human Resources. ....................6

    E.    Events Leading to Plaintiff's Suspension And Subsequent Termination. .......................................................................7

    F.    Plaintiff's Complaint To LARA. ........................................8

STANDARD OF REVIEW ...................................................................9

ARGUMENT ....................................................................................10

    A.    Plaintiff Failed To Prove At Trial A Causal Connection Between Her Alleged Protected Activity And Termination. .............10

        1.    Plaintiff's Protected Activity Under The Whistleblowers' Protection Act. .......................................................11

        2.    Plaintiff Presented No Evidence That Any Similarly Situated Employee Was Treated For Job Abandonment. .........12

        3.    Plaintiff Offered No Evidence That Her Job Abandonment Should Have Been Governed By

Defendant's Attendance Policy As Opposed To The HFML Policy And HFHS' Corrective Action Policy. ..............13

CONCLUSION ......................................................................................15

# INDEX OF AUTHORITIES

## Cases

*Allen v. Michigan Dep't of Corr.*, 165 F.3d 405 (6th Cir. 1999)............................10

*American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155 (6th Cir. 1997)........................9

*Chandler v. Dowell Schlumberger Inc.*, 456 Mich. 395, 572 N.W.2d 210 (1998) .11

*Debano-Griffin v. Lake Cnty.*, 493 Mich. 167, 828 N.W.2d 634 (2013) ...............14

*Gray v. Toshiba America Consumer Products, Inc.*, 263 F.3d 595 (6th Cir. 2001)..9

*J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474 (6th Cir. 1991) ........................................................................................................9

*Kaufman & Payton, P.C. v. Nikkila*, 200 Mich. App. 250, 503 N.W.2d 728 (1993) ...............................................................................................................11

*Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992)..........................................12

*Noble v. Brinker Intern., Inc.*, 391 F.3d 715 (6th Cir. 2004)..................................12

*Saulter v. Detroit Area Agency on Aging*, 562 F. App'x 346, 357 (6th Cir. 2014) .14

*Shallal v. Catholic Soc. Services of Wayne County*, 455 Mich. 604, 566 N.W.2d 571 (1997)......................................................................................................10

*Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309 (6th Cir. 2001) ................13

*West v. GMC*, 469 Mich. 177, 665 N.W.2d 468 (2003) ................................... 10, 13

## Statutes

MCL § 15.363(4) ......................................................................................................10

## Rules

Fed. R. Civ. P. 50 .............................................................................................. 1, 8, 14

Fed. R. Civ. P. 50(a)...............................................................................................1, 8

Fed. R. Civ. P. 50(b) ...................................................................................... 1, 8, 9, 14

iv

## CONCISE STATEMENT OF ISSUES PRESENTED

I.      Is Defendant entitled to judgment as a matter of law on Plaintiff's Michigan Whistleblowers' Protection Act claim because Plaintiff failed to present any evidence at trial of a causal connection between protected activity and her suspension and termination for job abandonment?

Defendant answers "yes"

## **INTRODUCTION**

Plaintiff Natalie Reeser ("Plaintiff") alleged that she was terminated by her employer, Defendant Henry Ford Health System ("HFHS"), in violation of the Fair Labor Standards Act ("FLSA") and the Michigan Whistleblowers' Protection Act ("WPA"), after she reported to the Michigan Department of Licensing and Regulatory Affairs ("LARA") that Defendant failed to pay her for her lunch breaks.  In her case-in-chief, however, Plaintiff failed to establish a violation of the WPA because she failed to produce evidence to establish a causal connection between her alleged protected activity, the report to LARA, and her termination for job abandonment.  The jury trial in this case took place from May 9 to May 19, 2016.  Defendant moved for Judgment as a matter of law under FRCP 50(a) at the close of Plaintiff's case. The court denied Defendant's motion. The jury came back with a verdict in favor of Defendant on the FLSA claim and in favor of Plaintiff on the WPA claim. The jury awarded Plaintiff the sub-nominal amount of $3,200.00. Defendant now renews its Motion for Judgment as a Matter of Law, which should be granted for the reasons that follow.

## **STATEMENT OF FACTS**

### **A.     Plaintiff's Position Of Laboratory Assistant In The Outreach Program.**

At the trial in this case, the undisputed evidence showed that Plaintiff was hired in May 2011 as a full-time laboratory assistant or phlebotomist, in the

1

Laboratory Outreach Services division of Henry Ford Health System ("HFHS"). Fiona Bork, Sales Manager, Henry Ford Medical Laboratories, was Plaintiff's immediate supervisor. The Outreach Laboratory Services Program ("Outreach Program") provides laboratory and pathological services for patients of non-HFHS physicians. Lab work for the patients of these physicians is either collected at a "draw site" set up in the physicians' own offices (Warren and West Bloomfield) or at "patient service centers" (Shelby Township and Clinton Township facilities). As a lab assistant, Plaintiff drew blood, processed samples and registered patients, among other duties. Ms. Bork supervised thirty phlebotomists including Plaintiff, two Sales Reps, and six couriers (who picked up lab specimens).

The undisputed evidence established that physicians were induced to contract with the Outreach Program based upon the fact that the draw sites and service centers would be open during advertised hours of operation for the needs and convenience of their patients. The evidence also established that it was absolutely critical for the sites to remain open during those hours in order to provide essential patient care services.

For the majority of the time she was employed by Defendant, Plaintiff worked at the Clinton Township Patient Service Center ("CTPSC"). CTPSC was the least busy site. During the last year of her employment, it was staffed with only one phlebotomist, who was required to take care of patients who walk in

without notice, during the advertised hours of operation.  Hours would go by when there were no patients at the site.

**B.     The   Outreach   Program   And   HFHS   Policies   Prohibiting   Job Abandonment.**

The   uncontroverted   evidence   established   that   the   Outreach   Program maintained a written policy, "HFML Employees Policies and Guidelines" ("HFML Policy").   The   HFML   Policy,   which   was   repeatedly   distributed   to   employees, contained a "Code of Conduct" section that prohibited employees from leaving a site without prior authorization of a manager. (Exhibits 121, 122[1])  Plaintiff had expressly acknowledged receipt of the HFML Policy. (*Id.*) The Policy was also reviewed at staff meetings. (Exhibits 126, 162) Plaintiff admitted that she was aware   that   she   and   all   other   Laboratory   Outreach   Services   employees   were required   to   receive   authorization   from   Ms.   Bork   to   leave   the   site   during   their working hours.  If Plaintiff left the CTPSC without having it covered by another employee, the site would not be able to serve patients requiring laboratory services. Throughout her employment, Plaintiff had always contacted Ms. Bork to obtain authorization to leave the site. (Exhibits 140, 141, 142, 154, 158) In several emails seeking authorization, Plaintiff acknowledged that she was required to obtain Ms. Bork's authorization before leaving the CTPSC (*Id.*)

---

[1] All cites are to trial exhibits.

3

Jill Hood, Human Resources ("HR") Business Partner, and Debra Temrowski, a Director of HR, both testified that leaving a work site without authorization was considered "Job Abandonment," which was a "Group 2" violation under Defendant's System Wide Corrective Action Policy (Exhibit 118). They both testified that termination was **always** the penalty for any HFHS employee who engaged in job abandonment. **Plaintiff offered no evidence to the contrary**.

Moreover, the Code of Conduct provision of the HFML Policy which prohibited employees from leaving a site without authorization had been consistently and repeatedly enforced within the Outreach division: Five other employees supervised by Ms. Bork were **terminated for the same violation as Plaintiff – leaving a site without authorization.** (Exhibits 47, 51, 52, 53)

**Plaintiff introduced no evidence whatsoever that any other employees similarly situated (or for that matter any other employees) had been treated more favorably than Plaintiff for leaving a site without authorization.** Instead, the Court, over Defendant's objection, improperly allowed Plaintiff to introduce Defendant's Attendance Policy (Exhibit 8), a completely different policy from the HFHS Corrective Action Policy and "Code of Conduct" provision within the HFML Policy. Plaintiff was improperly allowed to assert her opinion and argue that job abandonment should be treated less seriously than a Code of Conduct

4

violation, but instead as an "attendance violation" under the Attendance Policy – an argument which had <u>no</u> supporting evidence. Every one of Defendant's witnesses testified, and the face of the policies themselves established, that job abandonment was <u>not</u> an attendance violation.  The HFML Policy (Exhibit 118) specifically separated "job abandonment" from attendance issues, consistent with the HFHS system-wide policies.  (*Id.*)   Similarly, the Court allowed Plaintiff, over Defendant's objection, to argue without any supporting evidence, that employees terminated for job abandonment by Ms. Bork were not similarly situated to Plaintiff because they had previous violations of the attendance policy on their record.

**C.    The Practice Regarding Lunch Breaks At CTPSC**.

Ms. Bork testified that since phlebotomists at CTPSC had significant "down time" to eat lunch at the site, she believed that was considered to be a lunch break. CTPSC had a break room, and Martha Wiseheart testified that Plaintiff regularly had food delivered, and ate her lunch in the break room, often with friends.  Only when a phlebotomist was so busy at the site that they could not take a lunch break would the employee be paid for that time. If a phlebotomist was unable to take a lunch at all on any given day, he or she was instructed to make a notation on their time sheet, "no lunch" for that day. Prior to February 2014, Plaintiff had never indicated "no lunch" on her timesheets.

**D.     Plaintiff's Complaints To Human Resources**.

In early January 2014, Plaintiff and Ms. Bork completed Plaintiff's annual performance review. Because she was angry about her performance rating on her performance review, Plaintiff contacted Jill Hood and requested a meeting. When Plaintiff met with Hood on January 20, 2014, she made a number of complaints about Ms. Bork, including a complaint that she was not paid for her lunches. (Exhibit 191)  Ms. Hood testified that at the meeting on January 20th, Plaintiff informed her that she had an attorney "but wanted to handle it internally first." (Exhibit 192)

After consulting with the legal department, Ms. Hood determined that the Outreach Program practice with respect to lunch breaks at CTPSC was incorrect and conducted a review of Plaintiff's schedules, payroll records, and compensation records for the prior two years.  Plaintiff was paid for the unpaid lunches over a period of two years, including overtime pay for any hours that crossed the 40-hour per week threshold.   Other employees who worked at the CTPSC were also reimbursed for unpaid lunches.   Ms. Hood investigated each of Plaintiff's complaints and found that the remainder of them were without merit and in some instances, Plaintiff had lied about the facts.

**E.      Events Leading to Plaintiff's Suspension And Subsequent Termination.**

On February 25, 2014, Plaintiff became angry over the fact that her complaints about Ms. Bork had not gotten Ms. Bork removed or in trouble, and sent an email to Ms. Bork and two other employees (Martha Wiseheart and Luain Hajjar, neither of whom had any supervisory authority for Plaintiff): "I AM VERY UPSET AND AM PUTTING A NOTE ON THE DOOR AND TAKING A 30 MINUTE LUNCH TODAY." (Exhibit 226) Plaintiff then got her coat, closed the site, put a sign on the door and left the site for 30 minutes.  The evidence demonstrated that Plaintiff did not request or receive authorization to leave the site from Ms. Bork. Ms. Bork immediately forwarded Plaintiff's email to Ms. Hood. Ms. Hood testified that she recommended that Plaintiff be suspended pending an investigation since leaving the site without authorization would be a terminable offense.  Ms. Bork went to CTPSC and informed Plaintiff she was suspended pending an investigation.

Later that day, Ms. Hood spoke to Plaintiff who claimed that she had left the site without permission on other occasions. (Exhibit 228) When asked for the sign she posted on that date, she said she had "shredded" it. (Exhibit 233)  Ms. Hood asked Plaintiff to provide a statement indicating what took place on that date and when on previous occasions did she leave the site without authorization. (*Id.*)  In

addition to obtaining information from Plaintiff, she obtained statements from Ms.

Bork, Ms. Wisehart and other employees.  The investigation revealed:

- Plaintiff did not obtain authorization from Ms. Bork or anyone for that matter to leave the site;
- Plaintiff could not identify a single time when she had previously closed CTPSC without authorization;
- No other employees were aware of Plaintiff or any other employees leaving the site without authorization or posting a sign in the past; and
- Plaintiff was aware of the policy prohibiting an employee from leaving the site without authorization and in fact had followed that policy in every instance in the past.

Plaintiff was informed of her termination by Hood via telephone on

March 7, 2015.

**F.   Plaintiff's Complaint To LARA.**

On February 27, 2015, **two days after her suspension** for leaving the site

without authorization, Plaintiff filed a Complaint with LARA alleging she was not

paid for her lunches when she worked at CTPSC.   Ms. Bork's undisputed

testimony was that she did not know anything about Plaintiff making a complaint

to LARA until **after** Plaintiff was no longer employed. In a May 14, 2014

decision, LARA found no merit to Plaintiff's claim.  **Plaintiff offered no evidence**

**that Ms. Hood was aware of the LARA complaint before the decision to**

**terminate Plaintiff was made.**

Defendant moved for Judgment as a Matter of Law in its favor, pursuant to

Fed. R. Civ. P. 50(a), because there was not a legally sufficient evidentiary basis

to find for Plaintiff on her claims. The Court denied Defendant's Rule 50(a) motion. The Court entered judgment on May 19, 2016. HFHS now renews its Motion as to Plaintiff's WPA claim, pursuant to Fed. R. Civ. P. 50(b).

## STANDARD OF REVIEW

Judgment as a matter of law ("JMOL") is proper where the evidence, considered in a light most favorable to the non-moving party, is insufficient as a matter of law to support judgment for the non-moving party. *See* Fed. R. Civ. P. 50; *see also American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 157 (6th Cir. 1997). The motion may be granted if, in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party. *Gray v. Toshiba America Consumer Products, Inc.*, 263 F.3d 595, 598 (6th Cir. 2001) (internal citation omitted). JMOL is also appropriate on purely legal issues unrelated to the sufficiency of the evidence at trial. *J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474 (6th Cir. 1991). A renewed JMOL is appropriate after the entry of judgment if the court did not grant a JMOL made under Rule 50(a). *See* Fed. R. Civ. P. 50(b).

## <u>ARGUMENT</u>

**A.     Plaintiff Failed To Prove At Trial A Causal Connection Between Her Alleged Protected Activity And Termination.**

To establish a claim under the WPA, Plaintiff must prove 1) she engaged in protected activity, 2) an adverse employment action, and 3) that there was a causal connection between her protected activity and the adverse employment action. *Shallal v. Catholic Soc. Services of Wayne County*, 455 Mich. 604, 610, 566 N.W.2d 571, 574 (1997).

In order to establish the element of causal connection for retaliation under the WPA, a plaintiff must offer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action. *Id*. at 620-621. A plaintiff must put forth evidence which deduces a causal connection between the retaliatory action and the protected activity and requiring the trier of fact to draw reasonable inferences from that evidence. *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999). Under the circumstances of this case, Plaintiff can only establish this inference with evidence demonstrating that other, similarly situated individual(s) who did not engage in protected activity were treated in a more favorable manner by the employer. *Id*. **Temporal proximity, (i.e., that the adverse employment action occurred within a short time after protected activity) alone is not enough to establish the causal connection element.** *West v. GMC*, 469 Mich. 177, 186, 665 N.W.2d 468 (2003).

10

1. **Plaintiff's Protected Activity Under The Whistleblowers' Protection Act.**

A plaintiff only engages in protected activity under the WPA when he/she "reports or is about to report a violation or a suspected violation of a law … to a public body." M.C.L. § 15.362. Unlike her FLSA retaliation claim, it was not sufficient for Plaintiff to merely make an internal complaint to Human Resources. *Chandler v. Dowell Schlumberger Inc.*, 456 Mich. 395, 572 N.W.2d 210 (1998) (citing Mich. Comp. Laws § 15.362). A threat to report to an internal corporate compliance body or even making such a report cannot trigger the protection of the "about to report" language of the statute, because the WPA does not apply if a plaintiff reports a violation "only to his employer, not to a public body." *Id*. at 399. For about-to-report claims, an employee must prove by clear and convincing evidence that he, or a person acting on his behalf, was about to report, verbally or in writing, a violation or a suspected violation of Michigan law to a public body, *see* MCL §15.363(4), and that the person who fired him was objectively aware that he was about to make a report before he was fired. *Kaufman & Payton, P.C. v. Nikkila,* 200 Mich. App. 250, 503 N.W.2d 728, 732 (1993).

Plaintiff's only protected activity under the WPA was the complaint she filed with LARA on February 27, 2014, **two days after she already been suspended** for leaving CTPSC without authorization.

11

### 2.     Plaintiff Presented No Evidence That Any Similarly Situated Employee Was Treated For Job Abandonment.

In order to prevail on her WPA claim, Plaintiff was required to show that there was a causal connection between her "complaint" and her suspension/termination for admittedly leaving her worksite without obtaining prior authorization.  Plaintiff could do so by showing that a similarly situated individual who did not engage in protected activity was treated in a more favorable manner by HFHS.  *Allen*, 165 F.3d at 413.  To be similarly situated in a disciplinary context, "the plaintiff must show that the 'comparables' are similarly-situated *in all respects*."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original).

In *Noble v. Brinker Intern., Inc.*, 391 F.3d 715 (6th Cir. 2004), the court reversed the denial of the defendant's renewed JMOL, holding that the employee failed to identify a similarly situated employee outside the protected class who was not terminated for similar wrongdoing.  The court also found that the plaintiff failed to prove his case at trial, stating "Noble bore the burden of proving '*both that* the [defendant's proffered] reason was false, *and* that discrimination was the real reason' for the adverse employment action.  Noble simply failed to produce sufficient evidence from which a rational jury could conclude that racial discrimination was the real reason for his termination."  *Id*. at 731-732 (internal citations omitted, emphasis in original)

12

Here Plaintiff, failed to produce <u>any</u> evidence at trial that she was terminated for making the LARA complaint, or that any similarly situated employee (who had not engaged in protected activity) was not terminated for leaving a worksite without prior authorization.   To the contrary, Defendant presented <u>unrefuted</u> evidence demonstrating that every employee who walked off the job (like Plaintiff) was terminated – with no exceptions.   HFHS also presented <u>unrefuted</u> evidence that Plaintiff's job abandonment – and not her alleged complaints – was the reason for her termination.

Moreover, Plaintiff could not establish causation by relying upon temporal proximity alone.  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001); *West v. GMC*, 469 Mich. 177, 186, 665 N.W.2d 468 (2003).  Because Plaintiff failed to present any evidence that she was terminated <u>because</u> she engaged in protected activity, and failed to offer any evidence showing a nexus between the complaint and her termination, judgment for HFHS as a matter of law is appropriate and warranted.

### 3.   Plaintiff Offered No Evidence That Her Job Abandonment Should Have Been Governed By Defendant's Attendance Policy As Opposed To The HFML Policy And HFHS' Corrective Action Policy.

Plaintiff has persisted in her unsupportable argument throughout this litigation and at trial that her <u>admitted</u> job abandonment should have been governed by HFHS' Attendance Policy.  However, all of the evidence presented at

trial by HFHS – which Plaintiff <u>did not</u> rebut – established that Plaintiff leaving her work site was considered job abandonment by HFHS, which was a Group 2 violation.   The testimony at trial also established that there have been no circumstances in which an employee avoided termination for "job abandonment" pursuant to HFHS' Corrective Action Policy.  At trial <u>not one witness</u> contradicted the testimony by Fiona Bork, Jill Hood, or Debra Temrowski that Plaintiff's actions constituted job abandonment and was a terminable offense.

Plaintiff provided no evidence to attempt to show that her suspension and termination has no basis in fact, did not actually motivate Defendant's decision, or was insufficient to warrant suspension and termination.  Plaintiff "cannot simply show that the employer's decision was wrong or mistaken" to establish pretext. *Saulter v. Detroit Area Agency on Aging*, 562 F. App'x 346, 357 (6th Cir. 2014).[2] The soundness of Defendant's business judgment in maintaining and enforcing the HFML Policy requiring authorization to leave a site and terminating employees for a violation, "may not be questioned as a means of showing pretext."  *Debano-Griffin v. Lake Cnty*., 493 Mich. 167, 828 N.W.2d 634, 641 (2013) (citation and internal quotation marks omitted).

---

[2] Unpublished cases are attached hereto at Exhibit 21.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant respectfully requests this Court grant its renewed Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b).

<div style="margin-left: 40%;">

Respectfully submitted,

VARNUM LLP

By:   */s/ Terrence J. Miglio*
      Terrence J. Miglio (P30541)
      Barbara E. Buchanan (P55084)
      Attorneys for Defendant
      160 W. Fort, 5th Floor
      Detroit, MI  48226
      (313) 481-7300

</div>

Dated: June 16, 2016

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 16, 2016, I caused the foregoing documents to be electronically filed with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record; and that I caused all documents filed under seal in the foregoing documents to be served upon counsel of record by United States Mail.

<u>/s/Terrence J. Miglio</u>
Terrence J. Miglio (P30541)
160 W. Fort, 5th Floor
Detroit, MI  48226
(313) 481-7300
tjmiglio@varnumlaw.com

16