Defendant's Trial Exhibit 228

**Hood, Jill**

| | |
|---|---|
| From: | Natalie K. Reeser <natalie_19_99@yahoo.com> |
| Sent: | Tuesday, February 25, 2014 11:17 PM |
| To: | Hood, Jill; Natalie 19_99; Hood, Jill |
| Subject: | Natalie Reeser: Response to Suspension, and Request for Reinstatement of Position |

Dear Ms. Hood,

Per your request for my written response, after months of continuing supervisory harassment (under the full knowledge of Human Resources), at about 4 p.m. today, my supervisor, Fiona Bork, brought security to the Clinton Township Patient Service Center and, with no prior knowledge, reasoning or warning, removed my employee credentials from me, refused to allow me to take any of my personal belongings with me, and informed me that I was being suspended for "abandoning my position," for taking a break today. I have NEVER abandoned anything in my career!

Please know that today, as with EVERY DAY since you and I met on Monday, January 20, 2014 – and for months before that date, Ms. Bork has been allowed to openly and continuously harass me at work for her own personal gain. I have supplied Human Resources/you with more than enough written and verbal documentation of this harassment, and yet nothing, *absolutely nothing* has been done to stop Ms. Bork from using company resources for her own personal vendetta against me. I am an excellent employee, and do not understand why anyone employed with this company, especially in a Human Resources capacity, will not assist an hourly employee in need of support and protection from a clearly unsteady manager.

Today, after enduring much more of Ms. Bonk's unprofessional behavior toward me, I emailed a note to Ms. Bork, Martha Wiseheart (our operations manager), and Luain Hajjar, stating I was taking a break. With regards to breaks, Clinton Township has been provided with signs to post on our entrance door for times when an employee 'truly' needs a rest, and/or in case of an emergency. I would substantiate, based on Ms. Bork's behavior toward me today, that both applied, and that the sign was more than appropriately posted on our entrance door. In addition, Ms. Wiseheart was on-site at the Clinton Township Patient Service Center when I sent out that email and when I left for my break. She could see I was crying from Ms. Bork's uncalled-for behavior, and that I 'truly' needed a rest. Surely I do not need to be crying in front of patients.

Since no one seemed to care that was I was taking a break (certainly no one responded to my email, or called me on either my office line, or my work cell phone to say, "*No Natalie, you cannot take a break today*," I thought it was okay to take a rest, ESPECIALLY since Ms. Wiseheart was on-site and aware of all situations. Therefore, I put on my shoes, put on my coat, posted the break sign on our entrance door, and left for a much needed rest. Again, our operations manager was on-site, in our lab, when I put on my shoes, put on my coat, posted the break sign on our entrance door, and left for a much needed rest, and she NEVER said one word to me about not leaving the premises.

Re-emphasizing, at no time today did anyone, including Ms. Bork or Ms. Wiseheart, relay to me that: 1) I was breaking any rules by taking a break; 2) that there would be consequences if I took a break; 3) that I would be "abandoning my position" by taking a break; 4) that I would be suspended from my position for taking a break; and/or 5) for any other reason, for taking a break.



1

HFH 543

Additionally, please know I have followed this same procedure in the past when 'truly' needing a break, and at no time in the past has anyone, including Ms. Bork or Ms. Wiseheart, relayed to me that: 1) I was breaking any rules by taking a break; 2) that there would be consequences if I took a break; 3) that I would be "abandoning my position" by taking a break; 4) that I would be suspended from my position for taking a break; and/or 5) for any other reason, for taking a break.

Therefore, it was my logical understanding that I could take a break. Why else would management keep a folder *on my desk* labeled, "Door Signs," if I was not allowed to use them when 'truly' needed; surely management would keep them securely filed away in their office if I wasn't allowed to make a decision about 'truly' needing a break. And I didn't just make a decision that I 'truly' needed a break, I also informed them that I 'truly' needed a break, and no one bothered to even acknowledge my simple request. Three management personnel were properly contacted, three management personnel disregarded me, and disregarded my email.

Please know that Ms. Wiseheart has shown herself to be a close friend of mine, a confident to me, up to and including inviting me to her son's wedding last fall. And up to today, I believed I could trust her guidance. So now I am questioning if, after I sent my e-mail today, that Ms. Wiseheart was ordered by Ms. Bork to allow me to take this break and not say anything to me, so Ms. Bork could use her power to suspend me from my position, ultimately following through on her personal threat against me (which you personally listened to on Monday, January 20, 2014).

The answer to this question could be easily found in any email/s relayed between Ms. Bork and Ms. Wiseheart immediately following my e-mail stating I needed a break. I would not be surprised to learn that instead of responding to my request, as a professional supervisor would do, Ms. Bork took the time and opportunity to plan my immediate suspension with the remaining management team. Now, I can't read such e-mails, but Human Resources can request access to them; however, whether or not anyone in Human Resources actually reads such e-mails on my behalf before they are deleted by management, says volumes about whether Human Resources is here to support an hourly person or solely Ms. Bork.

How much harassment, and embarrassment, and humiliation, is one person expected to endure to be successfully employed by Henry Ford Medical Laboratories? Please believe me when I say this is an honest question. On Monday, January 20, 2014, you personally stated to me you would resolve the issue of breaks, and implement a break/lunch policy at the Clinton Township Patient Service Center no later than Friday, January 24, 2014. As we both know, this did not happen. Perhaps if someone, *anyone* in Human Resources cared *anything* about me as a person, let alone as an employee, and/or other hourly persons/employees left alone in labs all day, Ms. Bork would not have had the free reign to do what she did to both me, and Henry Ford Medical Laboratories, today.

Let's be clear: we are talking about a suspension for a break for lunch, something both hourly and salary employees, including Ms. Bork and Ms. Wiseheart (who frequently 'rest' and eat their lunches in front of me) are provided by this medical institution each day, because we are, and promote ourselves to be – to this community and to the world – a health-conscious organization. Our West Bloomfield site has and promotes a 'professional chef' on staff so its employees can eat nutritious food during their daily lunch breaks. Our West Bloomfield site even has a beautiful 'waterfall' so its employees can experience peaceful moments during their daily lunch breaks. But Natalie Reeser is <u>suspended</u> for abandoning her position,' for taking a very rare break to drink a protein shake and take a peaceful moment, sitting in alone in her car, for less than 30 minutes, after following the appropriate and implemented procedures for taking such a break?

2

HFH 544

Therefore, I am asking to be reinstated into my position this week, and that any documentation related to Ms. Bork's truly unbelievable access to and use of our medical facility's proprietary resources for her own personal gain, be expunged from my record.

Please know I will fully cooperate with you throughout this investigation regarding my 'abandoning my position,' by taking a break today. Is this really what my talking to Human Resources, and asking for its intervention and protection from Ms. Bork, has been reduced to for me? A suspension for one of your most dedicated employees?

As known by all, if even based solely on my *empty* personnel file – which truly speaks for itself, I have been nothing less than an exemplary employee for Henry Ford Medical Laboratories, and I look forward to the opportunity to continue to care for our Clinton Township Patient Service Center patients again soon, under the guidance and supervision of a steady manager. Thank you.

Sincerely,
Natalie K. Reeser

HFH 545