Defendant's Trial Exhibit 233

**Hood, Jill**

From: Natalie K. Reeser <natalie_19_99@yahoo.com>
Sent: Thursday, February 27, 2014 1:38 PM
To: Hood, Jill; Natalie 19_99

Dear Ms. Hood,

Per your request, please find below my responses to your three questions:

Q1: You stated that Fiona and security "refused to allow me to take any of my belongings with me". My understanding however, is that the only items you were not allowed to take we're those that needed to be reviewed for Henry Ford property (which included a binder and file folder of documents). I was informed that you did collect and take personal items such as pictures, food, and a foot massager.

A1: Please let me clarify my statement. Ms. Bork stated that she did not want me to take any of my belongings with me; however, in that moment I was scared, and did stand up for myself; I grabbed one item and personal photos within reach, before being escorted out the door by security like a criminal. I do not own, have never owned, and did not keep a foot massager in the lab. I did have a tiny exercise bike in the lab that I used for one week, when our team was having a weight loss competition that several employees participated in, including Ms. Wiseheart. Ms. Bork refused to allow me to remove my radio and the majority of my personal photographs, and I did grab some of my food items from the lab (and why would food matter?).

Q2: You mentioned that "Clinton Township has provided us with signs to post on our entrance for times when an employee ' truly' needs a rest ". You later stated "management kept a folder on my desk labeled door signs". However when Fiona and Martha asked you for the sign that you posted on the door I understand that your response was "I shredded it ". Is that correct? If so, why would you have shredded company property?

A2: The signs are printed on 8.5" x 11" sheets of white copy paper. From the first day of my employment, to meet Henry Ford's proprietary directives for security purposes, I was under the order of my supervisor to shred any and all sheets of white copy paper that are no longer needed within our lab. Therefore, if you are asking why I shredded "company property" made out of sheets of white copy paper, then please know that all employees in our lab shred "company property" made out of pieces of white copy paper, that are no longer needed within our lab. This is why there is a shredder located in the Clinton Township Patient Service Center – to shred "company property" made out of sheets of white copy paper, that are no longer needed within our lab.

If would like to see what the sign/piece of paper looks like, please open the folder that is located on my desk in the lab and look at other copies of the same sign/piece of white copy paper. When we hang up signs/pieces of paper in our office, from door signs, up to and including "Happy Holiday" signs, when we take them down, we do not save them to use the next time; we shred them and

1

HFH 541

EXHIBIT 233

print/use new signs. It would look unprofessional to rehang pieces of paper, which had scotch tape torn from them, over and over again. This is normal procedure in our office to present a polished and professional image to our patients. And please remember, I shredded this piece of white copy paper before I knew I was going to be escorted out the door by security like a criminal. I certainly did not shred the sign after security arrived; I had no reason to believe Ms. Bork would need to rely upon the full resources of Henry Ford's security division, because I took a much needed break.

Q3: During our phone conversation yesterday you told me that there have been occasions in the past where you closed the office, for a designated period of time during the normal business hours, without prior authorization from Fiona. You stated that and there were no consequences (not viewed as job abandonment) on those occasions. I specifically requested that you provide me information on those situations as that information would be crucial to this investigation. That information however was not contained within your statement.

A3: You are asking me to remember specific dates and times, and I highly doubt any employee of Henry Ford Medical Laboratories, including Ms. Bork, Ms. Wiseheart, and Ms. Hajjar, and Human Resources personnel, could 'recall on demand' exact dates and times for odd breaks taken throughout nearly a three-year period of excellent employment with this company. I can share that there were occasions when I used the sign when I 'truly' needed a lunch break, twice of which I know Ms. Hajjar was aware of and, I also used the sign once when there was an emergency in my family. There was one time I recall, when I placed the sign on the door to take a lunch break, at the same time Maria Anger (a sales person on our management team) arrived, and she never said anything to me about closing up the lab to take a break.

Please let me know if I can provide further information; I am looking forward to returning to my position with the Clinton Township Patient Service Center this week.

Sincerely,
Natalie K. Reeser