Exhibit 1

2014 WL 11309770
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan, Southern Division.

Christopher James Bailey, Plaintiff,

v.

Scoutware, LLC, Defendant.

Case No. 12−10281
|
Signed August 19, 2014

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES [145]*

Nancy G. Edmunds, United States District Judge

## I. Introduction

**\*1** On August 8, 2014, a jury returned a verdict for Plaintiff Christopher James Bailey on his Michigan Whistleblowers' Protection Act and breach of contract claims against his former employer, Defendant Scoutware, LLC. (Dkt.143.) The jury awarded $18,000.00 in economic damages and $2,500.00 in non-economic damages for the WPA claim. (Dkt.143.) The jury awarded $2,000.00 for past economic damages on the breach of contract claim. (*Id.*)

On August 15, 2014, Plaintiff filed a motion for attorneys' fees and costs, which is now before the Court. (Dkt.145.) The Court needs neither a hearing nor a response to decide this motion; the Court therefore disposes with both and issues this order and opinion. E.D.Mich. LR 7.1(f).

Plaintiff requests the following amounts for the attorneys who worked on his case:

- Tom Pabst: $43,875.00, 97.5 hours spent at $450.00 per hour;

- William Moore: $140,612.50, 401.75 hours at $350.00 per hour;

- Michael A. Kowalko: $8,953.00, 25.58 hours at $350.00 per hour; and

- Jarret M. Pabst: $5,255.00, 21.02 hours at $250.00 per hour.

(Pl.'s Mot. at 25.) Plaintiff also requests $17,514.96 for actual costs in this case and interest. (*Id.*)

## II. WPA and Michigan attorneys' fees

The WPA provides for an award of attorneys' fees. Mich. Comp. Laws § 15.364, in relevant part; "[a] court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate."

Plaintiff argues that the Court must award all actual attorneys' fees under the WPA. (Pl.'s Mot. at 2–3.) Despite his argument, Plaintiff has pointed to no Michigan or federal case that says the WPA mandates an award of attorneys. Michigan cases, in fact, hold to the contrary —a court, under the WPA, has discretion in awarding attorneys' fees.[1] *See Heckmann v. City of Detroit,* No. 267391, 2007 WL 1989518, at \*10 (Mich.Ct.App. July 10, 2007) (citation omitted)(noting that an award of attorneys' fees under the WPA is "discretionary."); *Lease Acceptance Corp. v. Adams,* 724 N.W.2d 724, 733, n. 8 (Mich.Ct.Ap.2006) (pointing out that the WPA allows for the discretionary award of attorneys' fees.); *Gomery v. Crest Fin., Inc.,* No. 250881, 2005 WL 658818, at \*1–2 (Mich. Ct.App. Mar. 22, 2005) (citations omitted) (noting that the trial court has the "discretion" to award attorneys' fees under the WPA.).

[1] Michigan law governs a court's award of attorneys' fees. *See Hometown Folks, LLC v. S & B Wilson, Inc.,* 643 F.3d 520, 533 (6th Cir.2011) (citation omitted) ("In diversity cases, attorneys' fees are governed by state law.")

Plaintiff bears "the burden of proving the reasonableness of the requested fees[.]" *SMith v. Khouri,* 751 N.W.2d 472, 478 (Mich.2008) (citation omitted). To start, a court is to determine the "fee customarily charged in the locality for similar legal services[.]" *Id. at 479.* A court should look to "reliable surveys or other credible evidence of the legal market" to make such a determination. *Id.* After making findings on that hourly rate, a court is to multiply that number by the reasonable number of hours expended on the case. *Id.* That total is to serve as a trial court's starting point in calculating reasonable attorneys' fees.

*Id.* From that total, a court then is to look at other factors to determine whether to make adjustments to that initial figure. *Smith,* 751 N.W.2d at 478–79. Those factors include:

> **\*2** (1) the skill, time, and labor involved, (2) the likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer, (3) the fee customarily charged in that locality for similar services, (4) the amount in question and the results achieved, (5) the expense incurred, (6) the time limitations imposed by the client or the circumstances, (7) the nature and length of the professional relationship with the client, (8) the professional standing and experience of the attorney, and (9) whether the fee is fixed or contingent.

*Gomery,* 2005 WL 658818, at \*2 (the Wood factors) (citations omitted).

### III. Analysis

#### A. Civil rights reasonable billing rate

The Court looks to the State Bar of Michigan's 2014 Economics of Law Practice Attorney Income and Billing Rate Summary Report to fix a reasonable billing rate. [2] That report shows that the median range for hourly billing rates in civil rights cases is $250.00. That amount is therefore the Court's starting off point. The Court notes that $250.00 per hour hovers around the median rate for those attorneys working in Detroit and Downtown Detroit and for those attorneys with twenty-six to thirty-five years of experience.

[2]      available      at:http://www.michbar.org/pmrc/ articles/0000151.pdf (last visited August 19, 2014).

#### B. Reasonable hours expended in this case

The Court finds that a reasonable amount of hours expended in this case would have been one hundred hours. The Court notes that Plaintiff was in trial for around forty hours. The Court finds that sixty hours should have been

a reasonable amount of time to spend on a motion to dismiss, a motion for summary judgment, and then other pretrial work.

#### C. Other factors

The starting off reasonable attorneys' fees is therefore $25,000.00. Plaintiff has requested a significantly larger sum for attorneys' fees, over $200,000.00. The Court will not diverge from the starting off point. The case's claims were tenuous from the beginning. The WPA and breach of contract claims were basic claims that did not require any specialized skill. The pretrial matters were protracted and both sides involved in the pretrial litigation were at fault. Neither side acted in a civil manner that befits civil litigation.

Attorneys Pabst, Moore, and Kowalko are all requesting attorney fees above and beyond the median range. The Court will not increase the hourly rates for these three attorneys. As the Court has stated, the claims were not out of the ordinary. The claims did not require any specialized skill.

The Court also finds the fact that four attorneys worked on Plaintiff's case excessive. The Court will not allow an attorneys' fees award for work that could have been accomplished by one attorney. The Court specifically finds that the amounts requested by Kowalko and Jarrett M. Pabst unreasonable. Kowalko worked on jury instructions, which were not complicated and could have been handled by one attorney. Jarret M. Pabst is requesting fees for the time that he sat in on trial and the time that he read deposition transcripts into the record. An attorney need not have performed that function and the Court finds that award requested unreasonable.

The Court also finds that the $25,000.00 attorneys' fees award is reasonable in light of Plaintiff's recovery. Here, Plaintiff recovered only a sliver of what he hoped for, requested, and argued to the jury. The Court finds that Plaintiff's modest recovery should also limit his attorneys' fees recovery. *See Gomery,* 2005 WL 658818, at \*2 (citations omitted) ("A trial court *may* reduce an award of attorney fees on the basis of a plaintiff's limited success, but it not required to do so.").

#### D. Costs

Bailey v. Scoutware, LLC, Slip Copy (2014)
2014 WL 11309770

**\*3** Plaintiff has also requested costs. (Pl.'s Mot. at 24.) The WPA also provides for a discretionary award of costs, "if the court determines that the award is appropriate." Mich. Comp. Laws § 15.364. The Court finds that the $25,000.00 award in attorneys' fees is sufficient. The Court does not award costs.

**E. Judgment interest**
Plaintiff requests judgment interest, including pre-judgment interest. (Pl.'s Mot. at 2425.) The Court grants Plaintiff's request. Plaintiff is entitled to interest, including prejudgment interest, in accordance with Michigan Compiled Law § 600.6013. Plaintiff may calculate interest on the entire judgment award and attorneys' fees award, $47,500.00.

**IV. Conclusion**
For the above-stated reasons, the Court GRANTS in PART and DENIES in PART Plaintiff's motion for attorneys' fees. The Court ORDERS Defendant to pay $25,000.00 in attorneys' fees to Plaintiff within sixty (60) days of this order, or upon arrangement between the parties. The Court DENIES Plaintiff's request for costs and GRANTS Plaintiff's request for interest.

So ordered.

**All Citations**

Slip Copy, 2014 WL 11309770

---

End of Document © 2016 Thomson Reuters. No claim to original U.S. Government Works.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 658818
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Aileen GOMERY, Plaintiff/Counter-
Defendant-Appellee/Cross-Appellant,
v.
CREST FINANCIAL, INC., and Linda
Dargis-Giroux, Defendants/Counter-
Plaintiffs-Appellants/Cross-Appellees.

No. 250881.
|
March 22, 2005.

Before: SAAD, P.J., and SMOLENSKI and COOPER,
JJ.

[UNPUBLISHED]

PER CURIAM.

**\*1** Defendant Crest Financial, Inc. [1] appeals as of right
from an order granting plaintiff Aileen Gomery attorney
fees in this wrongful termination action. Plaintiff cross-
appeals from an order limiting her damages. We affirm the
trial court's order limiting plaintiff's damages. However,
we vacate the award of attorney fees and remand to allow
the trial court to make findings of fact regarding the
reasonableness of the awarded fees.

[1] While both defendants are named as appellants, only
Crest Financial actually has an interest in this appeal.
Therefore, we will refer to Crest Financial as the
singular defendant.

I. Facts and Procedural Background

This action arose when defendant terminated plaintiff's
employment in June of 2002. The termination occurred
one week after plaintiff threatened to contact the
Department of Labor regarding defendant's failure to pay
her accurate commissions. The termination also occurred

on the same day that plaintiff's doctor placed her on
leave due to work-related stress. As a result, plaintiff
filed suit alleging that she was terminated in violation
of the Whistleblowers' Protection Act (WPA) [2] and the
Worker's Disability Compensation Act. [3] Before trial,
the court granted defendant partial summary disposition
under MCR 2.116(C)(10) and limited plaintiff's damages
based on her failure to mitigate by accepting an offer
for similar employment. Following a three-day jury trial,
plaintiff was awarded $5,000. The trial court subsequently
awarded plaintiff $35,715 in attorney fees pursuant to
MCL 15.364.

[2] MCL 15.361 et seq.

[3] MCL 418.101 et seq.

II. Attorney Fees under the WPA

Defendant argues that the trial court abused its discretion
in awarding plaintiff $35,715 in attorney fees. Defendant
contends that plaintiff was not a prevailing party, that
the award was disproportionate to plaintiff's damages, and
that the trial court abdicated its responsibility to exercise
discretion in determining the reasonableness of the award.
We review a trial court's award of attorney fees under the
WPA for an abuse of discretion. [4]

[4] O'Neill v. Home IV Care, Inc, 249 Mich.App 606, 612;
643 NW2d 600 (2002).

We disagree with defendant's contention that plaintiff was
not a prevailing party. "In order to be considered the
prevailing party, [the party is] required to show at the very
least that its position was improved by the litigation." [5]
Under the "improved position" test, a plaintiff's position
"improves" when the plaintiff receives a judgment "in an
amount greater than the offer made by defendants." [6]
Defendant argues that plaintiff did not prevail because
the jury's award was very small compared to the amount
she sought during settlement negotiations. However, the
amount sought by plaintiff during settlement negotiations
is immaterial. Plaintiff was a prevailing party because the
judgment in her favor exceeded defendant's $500 offer of
judgment.

[5] Citizens Ins Co of America v. Juno Lighting, Inc, 247
Mich.App 236, 245; 635 NW2d 379 (2001).

*Gomery v. Crest Financial, Inc., Not Reported in N.W.2d (2005)*

2005 WL 658818

6    *Stamp v. Hagerman,* 181 Mich.App 332, 337; 448
     NW2d 849 (1989), citing *LaForest v. Grunow,* 43
     Mich.App 254, 256; 204 NW2d 355 (1972).

Furthermore, in awarding costs and attorney fees under
the WPA, the trial court is merely required to determine
that "the award is appropriate." [7] "Because the WPA is a
remedial statute, it is to be liberally construed to favor the
persons the Legislature intended to benefit." [8] Due to its
nearly identical language, this Court has held that case law
interpreting MCL 37.2802 under the Elliott-Larsen Civil
Rights Act (CRA) is applicable to MCL 15.364. [9] Under
the CRA, "[t]o be considered a prevailing party, a plaintiff
must receive at least some relief on the merits of plaintiff's
claim, such as an award of damages, an injunction, or
a declaratory judgment on a favorable consent decree or
settlement." [10] As the jury verdict was in plaintiff's favor
and she received some relief, she was also a prevailing
party under the WPA.

7    MCL 15.364.

8    *O'Neill, supra* at 614.

9    *Id.* at 612-613.

10   *Meyer v. Center Line,* 242 Mich.App 560, 576; 619
     NW2d 182 (2000).

*2   Therefore, the trial court had discretion to
        determine the reasonable amount of
        fees according to various factors,
        including (1) the skill, time, and
        labor involved, (2) the likelihood,
        if apparent to the client, that the
        acceptance of the employment will
        preclude other employment by the
        lawyer, (3) the fee customarily charged
        in that locality for similar services, (4)
        the amount in question and the results
        achieved, (5) the expense incurred, (6)
        the time limitations imposed by the
        client or the circumstances, (7) the
        nature and length of the professional
        relationship with the client, (8) the
        professional standing and experience
        of the attorney, and (9) whether the fee
        is fixed or contingent. [11]

11   *Grow v. WA Thomas Co,* 236 Mich.App 696, 714-715;
     601 NW2d 426 (1999), citing *Wood v. DAIIE,* 413
     Mich. 573, 588; 321 NW2d 653 (1982).

Defendant contends that the trial court's award was
unreasonably disproportionate to the amount of actual
success plaintiff achieved at trial. This Court has
emphasized that "the [United States] Supreme Court has
held that the degree of plaintiff's success is a 'crucial' factor
in determining a proper award of attorney fees...." [12] A
trial court *may* reduce an award of attorney fees on the
basis of a plaintiff's limited success, [13] but is not required
to do so. Therefore, the trial court did not abuse its
discretion by failing to limit plaintiff's award of attorney
fees based solely on her limited success at trial.

12   *Schellenberg v Rochester Michigan Lodge No 2225,*
     *of Benevolent & Protective Order of Elks of USA,*
     228 Mich.App 20, 47; 577 NW2d 163 (1998), quoting
     *Collister v. Sunshine Food Stores, Inc,* 166 Mich.App
     272, 275; 419 NW2d 781 (1988) (emphasis omitted).

13   *Id.* at 45-46.

Defendant also contends that the trial court failed to
engage in *any* consideration of the several factors. We
agree. "[F]ailure to exercise discretion when called on
to do so constitutes an abdication and hence an abuse
of discretion." [14] The trial court's opinion contains an
accurate summary of the purposes of the WPA and the
factors to be considered under *Grow,* as well as a similar set
of factors under *Crawley v. Schick.* [15] However, the trial
court's opinion contains no findings of fact regarding any
of the factors. The trial court stated that "Plaintiff seeks
to recover attorney fees in the amount of $36,180." The
trial court reduced that amount by $465, because the trial
court agreed with defendant that three items should not
have been included on plaintiff's billing statement.

14   *Rieth v. Keeler,* 230 Mich.App 346, 348; 583 NW2d
     552 (1998), quoting *People v. Stafford,* 434 Mich. 125,
     134 n 4; 450 NW2d 559 (1990).

15   *Crawley v. Schick,* 48 Mich.App 728, 737; 211 NW2d
     217 (1973).

A "trial court need not detail its findings as to each
specific factor considered." [16] However, the trial court
is required to make findings of fact. [17] The trial court's
bare conclusion that $35,715 was a reasonable amount

*Gomery v. Crest Financial, Inc., Not Reported in N.W.2d (2005)*

2005 WL 658818

of attorney fees is insufficient to show that it properly considered the reasonableness of plaintiff's requested fees. Accordingly, we must remand to allow the trial court to make a record of it findings regarding the reasonableness of the awarded fees. [18]

16    *Wood, supra* at 588.

17    *B & B Investment Group v. Gitler,* 229 Mich.App 1, 16; 581 NW2d 17 (1998), quoting *Howard v. Canteen Corp,* 192 Mich.App 427, 437; 481 NW2d 718 (1992).

18    See *JC Building Corp II v. Parkhurst Homes, Inc,* 217 Mich.App 421, 430-431; 552 NW2d 466 (1996).

### III. Mitigation of Damages

Plaintiff argues that the trial court erroneously granted defendant partial summary disposition, on the grounds that she failed to mitigate her damages by declining a job offer in favor of seeking a better job. We disagree. This Court reviews a trial court's determination regarding a motion for summary disposition de novo. [19] A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. [20] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in [the] light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists." [21] Summary disposition is appropriate only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. [22]

19    *Beaudrie v. Henderson,* 465 Mich. 124, 129; 631 NW2d 308 (2001).

20    *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc,* 238 Mich.App 394, 397; 605 NW2d 685 (1999).

21    *Singer v. American States Ins,* 245 Mich.App 370, 374; 631 NW2d 34 (2001).

22    *MacDonald v. PKT, Inc,* 464 Mich. 322, 332; 628 NW2d 33 (2001).

**\*3** Although a plaintiff is required to mitigate her damages, a plaintiff is not required "to make *all* efforts to eliminate the economic damages resulting from the

wrongdoing. Rather, [she] is only required to make efforts that are reasonable under the circumstances to find employment." [23] A plaintiff is not required "to accept an unacceptable job" or "employment that he or she finds demeaning, particularly inconvenient, or otherwise unacceptable," but a plaintiff *is* obligated "to accept, if offered, employment that is substantially similar to that from which he was fired." [24] Although a defendant cannot use the duty to mitigate as a "sword," a defendant is entitled to some measure of protection against unnecessary loss-a plaintiff does not have an unlimited right to pick and choose. [25]

23    *Morris v. Clawson Tank Co,* 459 Mich. 256, 264; 587 NW2d 253 (1998) (emphasis in original).

24    *Id.* at 265, citing *Ford Motor Co v. EEOC,* 458 U.S. 219, 231-232; 102 S Ct 3057; 73 L.Ed.2d 721 (1982).

25    *Id.* at 265, 268.

Plaintiff stated at her deposition that she was presented with two job offers in October of 2002, one with Wells Fargo and one with John Adams Mortgage Company. Her later affidavit states that John Adams did not extend an offer until December. However, a party may not submit an affidavit contradicting earlier sworn testimony in order to create an issue of fact and defeat a motion for summary disposition. [26] Both plaintiff's deposition testimony and her affidavit state that she turned down these jobs solely because she was seeking a better one, not because she found them unacceptable. Therefore, there was no factual dispute that plaintiff voluntarily extended her period of unemployment merely because she wanted better, rather than like, employment. Accordingly, summary disposition was appropriate.

26    *Dykes v. William Beaumont Hosp,* 246 Mich.App 471, 480; 633 NW2d 440 (2001).

Affirmed in part. We vacate the trial court's award of attorney fees and remand for a factual determination regarding the reasonableness of the requested fees. We do not retain jurisdiction.

### All Citations

Not Reported in N.W.2d, 2005 WL 658818

**Gomery v. Crest Financial, Inc., Not Reported in N.W.2d (2005)**

2005 WL 658818

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3932 Filed 07/12/16 Page 9 of 117
Richard v. Oak Tree Group Inc., Not Reported in F.Supp.2d (2009)
2009 WL 3234159

2009 WL 3234159
Only the Westlaw citation is currently available.
United States District Court,
W.D. Michigan,
Southern Division.

Donald RICHARD and Sandra Richard, Plaintiffs,

v.

OAK TREE GROUP INC., Defendant.

No. 1:06-CV-362.
|
Sept. 30, 2009.

West KeySummary

1   **Antitrust and Trade Regulation**
    👉 Attorney Fees

    Attorney fee request by prevailing party in
    a Fair Debt Collection Practices Act suit
    was reduced by 85 percent. After bringing
    numerous claims and motions and having
    them dismissed or denied, including the
    denial of two class certification attempts, the
    prevailing party was awarded $50 for the debt
    collectors minor violation. The attorney's fee
    request was reduced by 85 percent, partially
    because billing statements were cryptic and
    nearly unintelligible, and also so the attorney's
    fees would correspond to the reasonable work
    done on the prevailing claim and to the relief
    the client had received. Fair Debt Collection
    Practices Act, § 813(a) (3), 15 U.S.C.A. §
    1692k(a) (3).

    Cases that cite this headnote

**Attorneys and Law Firms**

Michael O. Nelson, Grand Rapids, MI, for Plaintiffs.

Marilyn S. Tyree, Smith Haughey Rice & Roegge PC,
Grand Rapids, MI, for Defendant.

**ORDER**

HUGH W. BRENNEMAN, JR., United States
Magistrate Judge.

*1   This matter is now before the court on plaintiffs'
motion for attorney fees and costs (docket no. 94).

**I. Background**

Plaintiffs filed this action against defendant on May 25,
2006, alleging violations of the Fair Debt Collection
Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692e(2)
(A), 1692e(2)(B), 1692f(1) and 1692g(a)(1), and seeking
damages as allowed under § 1692k(a)(1), (2) and (3).
On January 22, 2007, plaintiffs amended their complaint
to seek relief under the Michigan Occupational Code,
M.C.L. §§ 339.915(a), 339.915(e) and 339.915(f), and
to add allegations for a class action. See docket nos.
22, 23 and 24. Shortly thereafter, plaintiffs moved for
class certification. See docket no. 25. The court denied
plaintiffs' motion for class certification because they
lacked the typicality requirement under Fed.R.Civ.P.
23(a). See docket nos. 49 and 50. Plaintiffs' filed a
second motion for class certification, which the court
denied because the class plaintiffs' sought to certify
was different from the class as alleged in the first
amended complaint. See docket no. 79. On that same
date, the court granted defendant's motion for summary
judgment on the FDCPA claim brought pursuant to
15 U.S.C. §§ 1692g(a)(1), granted plaintiffs' motion for
partial summary judgment on the FDCPA claims brought
pursuant §§ 1692e and 1692f, and dismissed plaintiffs' state
law claims without prejudice pursuant to 28 U.S.C. § 1367.
See docket nos. 80 and 81.

The parties stipulated that in lieu of a non-jury trial on
the sole remaining issue of whether plaintiffs were entitled
to statutory damages of up to $1,000.00 as allowed by 15
U.S.C. § 1692k, the court would review that issue on the
briefs. See docket nos. 87 and 88. In its Finding of Facts
and Conclusions of Law entered on November 21, 2008,
the court entered judgment in favor of plaintiffs in the
amount of $50.00, stating in pertinent part as follows:

    [T]he non-compliance was relatively minor. This case
    arises from a single letter dated December 14, 2005, in
    which defendant failed to break down the "balance due"

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3933 Filed 07/12/16 Page 10 of 117
Richard v. Oak Tree Group Inc., Not Reported in F.Supp.2d (2009)

2009 WL 3234159

into its components of principal, interest and collection fees.

\* \* \*

[T]here is no evidence that defendant's December 14th letter was intended to violate the FDCPA to the detriment of plaintiffs. Admittedly, as the court observed [in] its previous opinion, this letter was confusing ... Nevertheless, the court finds no evidence that defendant intended to violate the FDCPA in this case. The record reflects that plaintiffs defaulted on their agreement with ACI, making none of the agreed-upon monthly payments. The contract authorized ACI to obtain collection costs in the event of a default. When plaintiffs requested an itemized breakdown of the balance due, defendant provided it within days after the request.

\* \* \*

Given the fact that defendant sent only one collection letter, that the FDCPA non-compliance was relatively minor, and the lack of evidence that defendant intended to violate the FDCPA, the court finds that minimal statutory damages in the amount of $50.00 are appropriate in this case.

**\*2** Findings of Fact and Conclusions of Law at 14-5 (Nov. 21, 2008) (docket no. 92).

Plaintiffs have now filed a motion seeking attorney fees and costs.

## II. Discussion

### A. Legal standard

The FDCPA authorizes the court to award a reasonable attorney's fee and costs to a prevailing party. *See* 15 U.S.C. § 1692k(a) (3); *Lee v. Thomas & Thomas,* 109 F.3d 302, 306-7 (6th Cir.1997). "In directing the courts to award "reasonable" fees ... Congress undoubtedly wished to ensure that the lawyer representing a successful plaintiff would receive a reasonable fee for work reasonably found necessary-nothing less, and nothing more." *Lee,* 109 F.3d at 306-7. "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers."

*Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The product of this calculation is the so-called "lodestar" amount. *See Garner v. Cuyahoga County Juvenile Court,* 554 F.3d 624, 642 (6th Cir.2009). Hours that are duplicative, excessive, or otherwise unnecessary should be excluded from the initial fee calculation. *Hensley,* 461 U.S. at 434. There is a strong presumption that the lodestar amount (i.e., "the product of reasonable hours times a reasonable rate") is consistent with the rationale behind a fee-shifting statute, which is "to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

However, the calculation of the lodestar amount does not end the court's inquiry. *Hensley,* 461 U.S. at 434. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' " *Id.* After determining the basic lodestar amount, "a court should determine whether the fee *should be adjusted in light of the results obtained." Moore v. Cycon Enterprises,* 2007 WL 2320051 (W.D.Mich.2007); (emphasis added), *Hensley,* 461 U.S. 434. The degree of success obtained is the most important factor in determining the reasonableness of a fee award. *Kentucky Restaurant Concepts Inc. v. City of Louisville,* 117 Fed. Appx. 415, 420 (6th Cir.2004) (citing *Hensley* at 434-36).

The degree of success obtained, however, is not the only factor to be considered in determining the reasonableness of a fee award.

**\*3** The reasonableness of a fee depends upon a number of factors, including 'the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which the fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity.' *Jenkins v. Missouri,* 127 Fed.3d 709, 718 (8th Cir.1997).

*Richard v. Oak Tree Group Inc., Not Reported in F.Supp.2d (2009)*

2009 WL 3234159

*Bankey v. Phillips & Burns, LLC,* 2008 WL 2405773 (D.Minn., 2008).

Further, and of particular importance in this case, the fee applicant bears the burden to produce evidence to support the rates charged and hours worked. *Hensley,* 461 U.S. at 433; *see also, Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Moore v. Cycon Enterprises, Inc., supra* ("the party seeking an award of fees has the burden of proving that her request is reasonable."). As noted below, the difficulty in ascertaining a proper attorney fee here is the lack of evidence furnished by plaintiffs to explain the hours worked.

**B. Plaintiffs' requested fees**
Plaintiffs seek attorney fees in the lodestar amount of $20,550.00 ($250.00 per hour x 82.20 hours). The court agrees with defendant that this fee should be reduced.

As an initial matter, plaintiff's hourly rate of $250 could fall within the reasonable range for an attorney of Mr. Nelson's caliber for federal consumer rights litigation in the Grand Rapids area, although counsel does not mention the actual amount he is charging his clients. *See, e.g., Moore v. Cycon Enterprises, Inc.,* No. 1:04-cv-800, 2007 WL 2320051 (W.D.Mich. Aug.10, 2007). The court will assume this is the amount he is charging his clients.

While plaintiffs were "prevailing parties" for purposes of 15 U.S.C. § 1692k, they were only partially successful, prevailing on only two of the FDCPA claims asserted. Defendants were granted summary judgment on one of the FDCPA claims, plaintiffs' state law claims were dismissed, and the court denied both of plaintiffs' motions for class certification. One could reasonably assume the two attempts to certify a class occupied a substantial portion of plaintiffs' counsel's time in this case, although after reviewing counsel's itemized statement of fees and expenses, it appears that only 20.10 hours were explicitly identified as being related to these unsuccessful attempts. [1] It would also appear that an attorney with Mr. Nelson's experience would work efficiently in this area and would not need to put many hours into such a modest case. Unfortunately, the cryptic and nearly unintelligible nature of this itemized statement makes it difficult for the court to meaningfully ascertain work done in regard to each of the various charges, or assess the same. Therefore, it is nearly impossible to know which hours should be stricken.

Where plaintiffs have failed to meet their burden, the court is constrained to hold for defendant. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley,* 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

1     This is based upon plaintiffs' charges for the following dates: 1/15/2007; 1/16/2007; 1/24/2007; 3/28/2007; 4/11/2007; 6/9/2007; 6/13/2007. *See* docket no. 95-3.

**\*4** Next, it is significant that plaintiffs only prevailed on a "relatively minor" violation of the FDCPA, arising from a single letter in which defendant failed to break down the balance due into its components of principal, interest and collection fees. The case amounted to no more than that. With no evidence that defendant intended to violate the FDCPA, the court concluded that plaintiffs were entitled only to minimal statutory damages of $50.00. *See* Findings of Fact and Conclusions of Law (FFCL) (docket no. 92). For these same reasons, the court finds that plaintiffs did not achieve a level of success sufficient to justify an attorney fee award of $20,550.00, and that such an award would be a windfall to plaintiffs' attorney.

There is no precise rule or formula for reducing a requested attorney fee due to bringing unsuccessful claims. *See Hensley,* 461 U.S. at 436-37. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* In this case, given the cryptic documentation of services performed by plaintiffs' counsel, the court will reduce plaintiff's requested fee to reflect the narrow and limited success in this matter. Accordingly, plaintiffs' requested fee of $20,550.00 will be reduced by 85% to $3,082.00. In the court's opinion, this amount (12.33 hours x $250.00 per hour) is a "reasonable fee for work reasonably found necessary" to prosecute a claim arising from defendant's relatively minor non-compliance with the FDCPA. *See Lee,* 109 F.3d at 306-7. This was a simple case with a minimal recovery. While plaintiff's counsel will receive only a portion of the fee requested, the court notes that fee-shifting statutes "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Delaware Valley Citizens' Council for Clean Air,* 478 U.S. at 565. Rather, as the court previously observed, "the aim

2009 WL 3234159

of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws." *Id.*[2] In the court's opinion, a fee award of $ 3,082.00 to secure a $50.00 remedy meets that aim. Finally, plaintiffs have requested and are entitled to their costs incurred in this litigation amounting to $587.69.

---

[2]     Courts have long recognized the problems inherent in determining a reasonable attorney's fee to be paid by a party's adversary. As the court observed in *King World Productions, Inc. v. Financial News Network, Inc.,* 674 F.Supp. 438 (S.D.N.Y.1987), "[w]hile parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist these extravagances

upon their unsuccessful adversaries." *King World Productions,* 674 F.Supp. at 440, *quoting Farmer v. Arabian American Oil Company,* 31 F.R.D. 191, 193 (S.D.N.Y.1963).

**III. Conclusion**
Accordingly, plaintiffs' motion for fees and costs (docket no. 94) is **GRANTED** in part. Plaintiffs are awarded reasonable attorney fees in the amount of **$3,082.00** and costs in the amount of **$587.69.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 3234159

---

**End of Document**                           © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2572768

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. Michigan,
Southern Division.

Mikah Fialka–FELDMAN, Plaintiff,
v.
OAKLAND UNIVERSITY BOARD OF
TRUSTEES, Gary D. Russi, Mary Beth
Snyder, and Lionel Maten, Defendants.

No. 08–14922.
|
June 23, 2010.

**Attorneys and Law Firms**

Chris E. Davis, Veena Rao, Michigan Protection and Advocacy Service, Livonia, MI, Mark A. Cody, Michigan Protection & Advocacy Service Lansing, MI, for Plaintiff.

Regan K. Dahle, Robert A. Boonin, Butzel Long, Ann Arbor, MI, for Defendants.

*OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR REASONABLE ATTORNEYS' FEES*

PATRICK J. DUGGAN, District Judge.

**\*1** Presently before the Court is Plaintiff's motion for reasonable attorneys' fees filed on January 20, 2010, pursuant to the attorney fee provisions in the Rehabilitation Act, 29 U.S.C. § 794a(2)(b), and The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The motion has been fully briefed. On March 12, 2010, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to the motion. For the reasons that follow, the Court grants Plaintiff's motion.

**Procedural Background**

Plaintiff initiated this lawsuit against Defendant Oakland University Board of Trustees on November 25, 2008, claiming that Defendant's denial of his request for housing in one of Oakland University's on-campus dormitory living spaces violates the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(B), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Plaintiff thereafter filed a motion for preliminary injunction based on his claims under the FHA. At the hearing with respect to his motion, Plaintiff asked the Court to also consider his Rehabilitation Act claims in deciding whether to grant his request for a preliminary injunction.

On February 5, 2009, this Court denied Plaintiff's motion concluding that the Board of Trustees is entitled to Eleventh Amendment Immunity and that Plaintiff in any event was not likely to succeed on the merits of his FHA claims. The Court indicated in a footnote that, even if it considered Plaintiff's Rehabilitation Act claims in deciding the motion and concluded that Eleventh Amendment Immunity did not bar those claims, it would reach the same result because its analysis of the merits of his FHA and Rehabilitation Act claims would be the same. (Doc. 12 at 11 n. 2.)

Plaintiff thereafter amended his complaint, with the Court's permission, to add University officials Gary D. Russi, Mary Beth Snyder, and Lionel Maten as defendants and to assert the following claims:

(I) disparate impact discrimination in violation of the FHA;

(II) disparate treatment discrimination in violation of the FHA;

(III) disparate treatment discrimination in violation of the Rehabilitation Act;

(IV) denial of a reasonable accommodation in violation of the Rehabilitation Act;

(V) disparate treatment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; and,

(VI) disparate impact discrimination in violation of the Rehabilitation Act.

The parties subsequently filed cross-motions for summary judgment.

Feldman v. Oakland University Bd. of Trustees, Not Reported in F.Supp.2d (2010)

2010 WL 2572768, 41 NDLR P 141

At a hearing with respect to the summary judgment motions, Plaintiff's counsel informed the Court that Plaintiff was abandoning his disparate impact discrimination claims brought under the FHA and Rehabilitation Act. On December 23, 2009, this Court issued an opinion and order with respect to Plaintiff's remaining claims. The Court concluded that Plaintiff's request for an accommodation of the University's housing policy was reasonable and that Defendants violated § 504 of the Rehabilitation Act by refusing to provide Plaintiff with this reasonable accommodation. The Court noted that while it had previously found in its opinion and order denying Plaintiff's motion for a preliminary injunction that Plaintiff was not likely to succeed on this claim, in reaching that conclusion it failed to consider the Supreme Court's decision in *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002), thus resulting in a flawed analysis. (Doc. 53 at 13 n. 2.) The Court held, however, that Plaintiff failed to demonstrate a prima facie case of disability discrimination to support his remaining claims. The Court issued a permanent injunction, requiring Defendants to provide on-campus housing for Plaintiff during his remaining semester at the University. A judgment was entered in favor of Plaintiff and against Defendants on January 7, 2010.

**Parties' Arguments**

**Motion**

**\*2** In his initial motion, Plaintiff seeks attorneys' fees in the amount of $176,841.43. This amount reflects hours billed by the following attorneys from the Michigan Protection and Advocacy Services, Inc. ("MPAS"), which represented Plaintiff in this matter: lead counsel Chris Davis, MPAS Legal Director Mark Cody, and staff attorneys Veena Rao, Joshua Kay, and Gabrielle Frampton. Ms. Frampton left MPAS while this matter was pending. Plaintiff has submitted affidavits from these attorneys detailing their education and legal experience and a "Time/Billable Hours Data Report" setting forth the tasks performed and hours spent by the attorneys on this matter. Plaintiff's attorneys are seeking the following hourly rates for the work performed in this case: $250 for Ms. Rao, Ms. Frampton, and Mr. Davis; $300 for Mr. Cody; and $150 for Mr. Kay.

**Response**

In their response to Plaintiff's motion, filed on February 3, 2010, Defendants raise several objections to Plaintiff's requested attorneys' fees. First, Defendants maintain that the billing rates of Plaintiff's attorneys are unreasonably high. Based on the State Bar of Michigan: *2007 Economics of Law Practice in Michigan Survey* (Resp.Ex. 2), Defendants contend that the hourly rates of Plaintiff's counsel should be no more than the $200 for Mr. Cody, Mr. Davis, and Ms. Rao and $150 for Ms. Frampton. Next, Defendants contend that Plaintiff's request for fees is not supported by appropriate billing records. Specifically, Defendants point out that nearly a half of the time records submitted by Plaintiff's counsel lack specific descriptions as to the task performed and that where descriptions are provided, they are too vague or incomplete to assess the reasonableness of the work performed and/or time spent on the task.

Even if the Court concludes that the time records submitted by Plaintiff's counsel are not vague or incomplete, Defendants raise several alternative arguments for why the Court should conclude that the fees set forth in those records are unreasonable. These arguments, as they relate to all of Plaintiff's attorneys are:

A. Excessive time on internal conferences is not reasonable;

B. Plaintiff is not entitled to fees for time spent at depositions by lawyers other than the essential participating lawyer;

C. Plaintiff is not entitled to the full amount of fees associated with travel time and should be awarded only a half of the total fees claimed for travel by Mr. Davis and no fees associated with Ms. Frampton as the billing records fail to support a justification for the travel time she billed;

D. Plaintiff is not entitled to fees for pre-litigation activities;

E. Plaintiff is not entitled to fees associated with his preliminary injunction motion because he did not prevail with respect to the motion; and

F. Any fee award should be reduced to reflect Plaintiff's limited success on his claims.

Feldman v. Oakland University Bd. of Trustees, Not Reported in F.Supp.2d (2010)

2010 WL 2572768, 41 NDLR P 141

Defendants raise arguments specific to each attorney representing Plaintiff, as well.

**\*3** With respect to Mr. Davis, Defendants contend that he spent hours performing tasks that should have been performed by attorneys billing at a lower hourly rate (e.g., performing Westlaw and Lexis research) or non-legal staff (e.g., filing and faxing) or that are not recoverable (e.g. attending Oakland University's Board of Trustee meetings). With respect to Mr. Cody, Defendants contend that his fees are unreasonable because Mr. Davis—who was lead counsel on the case—was (according to the statements in Mr. Davis' affidavit) more than qualified to take the lead in the case and did not require Mr. Cody's "supervision." As to Ms. Rao, Defendants object to $83.33 she billed for time spent associated with public and media relations and $208.34 she billed for tasks associated with replacing Ms. Frampton. Finally, as to Mr. Kay, Defendants contend that the services he performed were duplicative of those performed by other attorneys.

### Reply

In reply, Plaintiff has submitted revised billing records from his attorneys and asks the Court to base its decision regarding his motion for attorneys' fees on those records. In these revised records (Reply Ex. A), Plaintiff's attorneys have added entries derived from case notes in MPAS' client file to describe specifically the task performed and the aspect of the litigation to which it related. Additionally, Plaintiff's attorneys have removed from their revised billing records the following:

• any fees related to Ms. Frampton and Mr. Kay;

• most fees related to Mr. Davis performing such tasks as faxing, filing, and records organizing that do not relate to discovery; [1]

[1] In this category, there are four entries totaling 2.7 hours that still do not detail the task(s) performed (9/16/09; 10/27/09; 12/18/09; 12/21/09) and one entry for 3 hours where the specific task is described as "gathering list e-mails" (9/11/09). The Court cannot determine from these entries whether the time and/ or task was reasonable and therefore, as set forth *infra,* is deducting these hours from the attorneys' fees awarded.

• the majority of case conference items except those that Plaintiff's counsel claims were necessary to review discovery strategy and to discuss pleadings to be filed;

    • any hours expended before the complaint was filed that do not relate to researching and drafting requests for a reasonable accommodation;

    • any hours related to publicity; and

    • hours related to Mr. Cody's supervision and feedback.

Plaintiff's counsel further reduced by 50% the hours billed for a second attorney to attend depositions and reduced the hourly rate for travel to $125 (50% of Mr. Davis' and Ms. Rao's hourly billing rate and 40% of Mr. Cody's rate). As a result of these adjustments to the billing records, Plaintiff now seeks an award of attorneys' fees of $134,234.45 (as opposed to the previous $176,841.43).

Plaintiff continues to maintain that the hourly rates charged by his attorneys are reasonable in light of prevailing market rates and the various factors that courts consider to determine their reasonableness. *See infra* at 9 n. 2. He further argues that his lack of success with respect to his discrimination claims does not warrant a reduction in the requested fees because those claims and his reasonable accommodation claim under the Rehabilitation Act (on which he was successful) arise from a "common nucleus of operative fact" and assert indistinguishable legal theories. A full recovery also is warranted, Plaintiff argues, because he obtained excellent results.

### Sur–Reply

**\*4** Defendants argue that the revised billing records attached to Plaintiff's reply brief do not constitute "contemporaneous" time records and, as such, should not be considered to determine whether his attorneys' fees are reasonable. Defendants contend that these records were prepared after-the-fact, solely in response to the arguments asserted in their response brief, and therefore are not reliable. According to Defendants, "[i]t would be practically impossible for Plaintiff's counsel to recreate accurate detailed time records spanning a fourteen-month period." (Sur-reply at 3.)

### Applicable Law and Analysis

42 U.S.C. § 1988 and 29 U.S.C. § 794a(2)(b) grant courts the discretion to award reasonable attorney's fees to a "prevailing party." There can be no dispute in this case that Plaintiff prevailed in this lawsuit and therefore the Court will not discuss this issue further. The question is the reasonableness of the attorneys' fees that Plaintiff seeks.

The starting point for calculating a reasonable attorneys' fees award "should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his [or her] courtascertained reasonable hourly rate." *Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343, 349 (6th Cir.2000) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. The Supreme Court has instructed district courts to exclude fees that were not "reasonably expended," such as fees due to overstaffing or redundancy of work. *Id.* at 434, 103 S.Ct. at 1939.

Once the district court determines the fee applicant's lodestar, the court must consider other factors relevant to the reasonableness of any fee award.[2] One important factor is the "results obtained." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. As the Supreme Court has explained, there are two situations where the results obtained may affect the fee award:

[2] The factors identified by the Supreme Court are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)).

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit ... counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." ... The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Id.* at 434–35, 103 S.Ct. at 1940. The *Hensley* Court expressed doubt as to whether such claims will arise with frequency; rather, the Court explained, most civil rights cases will present only a single claim or multiple claims involving a common core of facts or based on related legal theories. In this second situation:

> **\*5** Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 435, 103 S.Ct. at 1940. The Court explained that in this situation, if the plaintiff has obtained excellent results, his or her attorney should recover a fully compensatory fee. *Id.* "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436, 103 S. Ct at 1941. As the Hensley Court instructed, it is within the district court's discretion to attempt to identify specific hours that should be eliminated or to simply reduce the award

to account for the limited success. *Id.* at 436–37, 103 S.Ct. at 1941.

Turning first to the hourly rates charged by Plaintiff's counsel, this Court agrees with Defendants that those rates are too high. According to the State Bar of Michigan 2007 survey, the top median hourly litigation rate is $200 and the top median hourly litigation rate for firms the size of MPAS is $195. (Resp. Ex. 2 at 18, 21.) For attorneys in practice between 15 and 19 years, such as Mr. Davis and Ms. Rao, the median litigation hourly rate is $200. (*Id* . at 20.) The same median rate is found for attorneys in practice for 30 to 39 years, such as Mr. Cody. (*Id.*) Therefore, the Court concludes that a reasonable hourly rate for each of Plaintiff's attorneys is $200.

With respect to Defendants' complaint regarding the absence of case-specific descriptions or vague or incomplete descriptions in the billing records initially submitted by Plaintiff's counsel, this Court finds that the revised billing records attached to Plaintiff's reply brief resolve this issue for almost all of the billing entries. As Mr. Davis explains in an affidavit filed on February 23, 2010, case notes in MPAS' case management system were used to prepare the revised billing records and these notes were recorded contemporaneously with the work performed on the case. (Doc. 65.) The only action that was performed "after-the-fact" was incorporating the information in the case notes into the Time/Billable Hours Data Report. Plaintiff's petition for attorneys' fees therefore is supported by contemporaneous time records. Compare *Calhoun v. Acme Cleveland Corp.,* 801 F.2d 558 (1st Cir.1986) (finding attorney submissions insufficient where they listed the different tasks each attorney performed, the total number of hours, and hourly billing rate but did not give the dates when the tasks were performed or the amount of time spent on each task).

There are a handful of time entries related to Mr. Davis in the revised billing records still lacking in details sufficient for the Court to assess whether the work performed and/or hours expended are reasonable. These include 5.7 hours related to "faxing, filing, and record organizing" (as mentioned *supra* at n. 1) and 8.1 hours for "research, reading, review and/or compiling information" (1.3 hours on 2/27/09; 1.5 hours on 8/7/09; 1.5 and 1.8 hours on 10/9/09; and 2 hours on 10/31/09). The Court therefore will reduce Mr. Davis' hours by 13.8 hours.

**\*6** With the submission of the revised billing records, Plaintiff also has addressed most of Defendants' objections to the fees billed. Plaintiff's counsel removed the majority of their time related to attorney conferences and any hours preceding the filing of the complaint to the extent the time did not relate to researching and drafting requests for reasonable accommodations for Plaintiff. In their sur-reply, Defendants do not contest the reasonableness of the remaining time in these categories. Plaintiff's counsel also removed all of the hours billed by Ms. Frampton, thereby resolving Defendants' contention that the time she billed for travel was unreasonable. As Defendants suggested would be appropriate in their response brief, Plaintiff's counsel additionally reduced the hourly rate for the travel time incurred by Mr. Davis and Mr. Cody to 50% and 40% of their normal hourly rate, respectively. Further, Plaintiff's counsel removed any hours billed by Mr. Davis for those tasks (except legal research) that Defendants argued should have been performed by less costly associates or office assistants. They also removed any hours associated with publicity, such as the time Ms. Rao spent to "review news stories and articles," which Defendants objected to as unreasonable in their response brief. Finally, Plaintiff's counsel removed any hours that Mr. Cody previously billed that related to "feedback and supervision."

This leaves the following objections by Defendants to the reasonableness of Plaintiff's counsels' fees. First, Defendants contend that it was unreasonable for Mr. Davis—rather than a less expensive attorney—to conduct 68.60 hours of legal research. This objection may carry more weight if Plaintiff had been represented by a law firm with several tiers of associates and partners. In a small non-profit office such as MPAS (that employs only four lawyers), however, it is likely that there are few if any "less expensive attorneys" available to handle the work. The Court therefore does not find Mr. Davis' hours conducting legal research unreasonable.

Second, Defendants object to the 8 hours that Mr. Davis billed to attend Oakland University Board of Trustee meetings. Plaintiff indicates in response that Mr. Davis' presence at these public meetings aided his discovery efforts and provided an opportunity to resolve Plaintiff's claims. These efforts, however, sought to resolve Plaintiff's dispute with the University through its administrative or hearing process. As such, the Court does not believe that the time Mr. Davis spent monitoring the Board of

Trustee's meetings is verable under 42 U.S.C. § 1988 or 29 U.S.C. § 794a. See *Webb v. Bd. of Educ. of Dyer County,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985).

With respect to Ms. Rao's time for entering her appearance in this matter (.17 hours on 10/5/09), the Court does not believe that it is reasonable to include this amount in Plaintiff's award. Defendants further object to several hours that Ms. Rao billed to attend depositions conducted by other attorneys (as set forth in Exhibit 7 to their Response). [3] Of the hours listed on Exhibit 7, only 6 hours on 9/15/09 and 3 hours on 9/22/09 remain in the revised billing records and will be deducted. While Defendants also identify in Exhibit 7 an entry on 10/20/09 for 3.5 hours, that time is billed as preparation for a deposition and not actual attendance at the deposition.

[3]     Exhibit 7 also includes hours billed by Mr. Cody and Mr. Kay to attend depositions; however, Plaintiffs' counsel removed those hours from the revised billing records.

**\*7** Finally, Defendants contend that any fees awarded to Plaintiff should be reduced to reflect Plaintiff's lack of success with respect to his preliminary injunction motion and the claims alleged other than his FHA reasonable accommodation claim. As referred to earlier, the Supreme Court advised in *Hensley:*

> [Where a plaintiff has obtained excellent results] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters. 461 U.S. at 435, 103 S.Ct. 1941. While Plaintiff perhaps did not achieve every result that he sought, he prevailed in his primary goal of opening access to University housing for himself.

Plaintiff asserted various claims arising from a common core of facts and based on related legal theories that were focused on the overall relief he eventually obtained. With respect to Plaintiff's preliminary injunction motion, as noted in the Court's December 23, 2009 decision, the Court probably would have reached a different result if it had reviewed the Supreme Court's decision in *Barnett.* Therefore, this Court concludes that Plaintiff's award of attorneys' fees should not be reduced to reflect limited success in this litigation.

**Conclusion**

In summary, this Court concludes that, except for the following hours, the remaining hours billed by Plaintiff's counsel as set forth in their revised billing records are reasonable:

• 8 hours billed by Mr. Davis to attend Oakland University Board of Trustee meetings

• 5.7 hours billed by Mr. Davis related to unspecified "faxing, filing, and record organizing"

• 8.1 hours billed by Mr. Davis for unspecified "research, reading, review, and/or compiling information

• 9 hours billed by Ms. Rao to attend depositions

• .17 hours billed by Ms. Rao to file her appearance in this matter.

The Court further concludes that a reasonable hourly rate for Plaintiff's counsel is $200, except with respect to hours billed for traveling and that rate is $100. Based on Plaintiff's attorneys' revised billing records, this results in the following billable hours, rate, and fees (minus the same percentage discount provided by counsel in their records):

| Attorney | Hours Billed | Hourly Rate | Total | Discount | Award |
| --- | --- | --- | --- | --- | --- |

| | | | | | |
|---|---|---|---|---|---|
| Cody | 11.92 (non-travel) 3.00 (travel) | $200 (non-travel) $100 (travel) | $2,384 (non-travel) *$ 300 (travel)* $2,684 | $1,250 [4] | $1,434 |
| Davis | 530.95 (non-travel) 17.5 (travel) | $200 (non-travel)$100 (travel) | $106,190 (non-travel) *$ 1,750 (travel)* $107,940 | $12,990 [5] | $94,950 |
| Rao | 31 (non-travel) | $200 (non-travel) | $6,200 | $908 [6] | $5292 |
| **TOTAL** | | | | | **$101,676** |

[4] Plaintiff's counsel provided a 50% discount for 11 hours of Mr. Cody's time billed at $300/hr. and for 3 hours billed at $125/hr (travel related time) for a total discount of $1,612.50. The Court has recalculated the discount by applying the same percentage discount to the same hours but new hourly rate.

[5] Plaintiff's counsel discounted 86.4 hours of Mr. Davis' time by 50% and 29 hours of his time by 75%. Again, the Court recalculated the discount based on the revised hourly rate of $200. In comparison to Ms. Rao, *see infra* at n. 6, none of the discounted hours have been eliminated by the Court.

[6] Plaintiff's counsel discounted 18.25 hours of Ms. Rao's time by 50%, 9.17 of which this Court has deducted completely. The Court recalculated the discount based on the revised hourly rate and the remaining discounted hours.

Accordingly,

**\*8 IT IS ORDERED,** that Plaintiff's motion for reasonable attorneys' fees is **GRANTED** and Plaintiff is awarded fees pursuant to 42 U.S.C. § 1988 and 29 U.S.C. § 794a in the amount of $101,676.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2572768, 41 NDLR P 141

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by Cortes v. Colvin, N.D.Ohio, September 10, 2014

2014 WL 1767815
United States District Court,
N.D. Ohio,
Eastern Division.

Jack C. DALLAS, Plaintiff,
v.
COMMISSIONER OF SOCIAL
SECURITY, Defendant.

No. 1:13–CV–00591.
|
Signed May 2, 2014.

**Attorneys and Law Firms**

Kirk B. Roose, Roose & Ressler, Lorain, OH, for Plaintiff.

Erin Brizius, Office of the U.S. Attorney, Cleveland, OH, for Defendant.

**ORDER**

GREG WHITE, United States Magistrate Judge.

**\*1** Plaintiff Jack C. Dallas ("Dallas"), through counsel Kirk B. Roose ("Roose"), filed an application for payment of attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (ECF No. 25.) The Acting Commissioner of Social Security ("Commissioner") filed a response on April 4, 2014, and Dallas replied on April 21, 2014.[1] (ECF Nos. 28 & 29.) For the reasons stated below, Dallas's application for attorney fees (ECF No. 25) and supplemental application for attorney fees (ECF No. 29) are GRANTED in part and DENIED in part.

[1] In his reply, Dallas made a supplemental application for EAJA fees associated with the time spent crafting the reply.

**A. Procedural History**

On December 16, 2013, the Court remanded this matter for further proceedings. (ECF Nos. 23 & 24.) Thereafter, Dallas filed a motion for attorney fees pursuant to the EAJA requesting fees in the amount of $6,323.60. (ECF No. 25.) This sum includes $6,133.60 for 32.8 hours of work performed by Roose—a rate of $187.00 per hour. *Id.* It also includes $190 for 3.8 hours of work performed by Roose's appellate assistant—a rate of $50 per hour. *Id.* After submitting a reply in response to the Commissioner's opposition, Dallas filed a supplemental application for attorney fees requesting an additional award of $1,870.00 for fees in connection with that reply. (ECF No. 29.) This sum represents an additional 10 hours of attorney fees billed at a rate of $187.00 per hour. *Id.*

**B. Prevailing Party Status and Substantial Justification**

The EAJA " 'departs from the general rule that each party to a lawsuit pays his or her own legal fees' and requires the payment of fees and expenses to the prevailing party in an action against the United States, unless the position of the United States was substantially justified," or special circumstances would make an award unjust. *Howard v. Barnhart,* 376 F.3d 551, 553 (6th Cir.2004), *quoting Scarborough v. Principi,* 504 U.S. 401, 124 S.Ct. 1856, 1860, 158 L.Ed.2d 674 (2004); *see also* 28 U.S.C. § 2412(d)(1)(A). The party seeking attorney's fees bears the burden of proving that he is an eligible and prevailing party, while the Commissioner must prove that the government's position was "substantially justified." It is undisputed that Dallas is an eligible and prevailing party, as the Commissioner has not argued that her litigation position was substantially justified. (ECF No. 28.)

**C. Evidence Supporting an Increase in the Hourly Rate of Attorney Fees**

Attorney Roose requests an hourly rate of $187.00, and urges the Court to utilize the national consumer price index ("CPI"). (ECF No. 29 at 8–9.) Under the EAJA, the amount of attorney fees awarded shall be based upon the prevailing market rates for the kind and quality of services furnished, except that "... attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

2014 WL 1767815, 202 Soc.Sec.Rep.Serv. 335

**\*2** Dallas has submitted the following evidence which he believes demonstrates that an upward departure from the statutory cap is warranted:

(1) Declaration of Dianne R. Newman, a Social Security attorney since 1982 in the northern Ohio area. (ECF No. 25–4 at ¶ 5) One-hundred percent of her practice consists of Social Security law, of which seventy-five percent focuses on appellate Social Security law. *Id* at ¶ 3. She declared that a rate of less than $200 per hour would be lower than the prevailing rates "in the Cleveland area for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at ¶ 13.

(2) Affidavit of Marcia Margolius, an attorney practicing for twenty-five years primarily in Social Security law in the northern and southern districts of Ohio. (ECF No. 25–5 at ¶¶ 1–2.) She only requests $125 per hour in EAJA applications, but does so for the sake of expediency and to avoid further litigation over fees. *Id.* at ¶ 5. She opined that based on the kind and quality of Roose's services the prevailing hourly rate for his services should exceed $175 to $200 per hour. [2] *Id.* at ¶ 10.

> [2] It bears noting that counsel Margolius, before this Court, requested and received a greater rate of $180.54 per hour—a rate that the Commissioner did not challenge. *See Conley v. Comm'r of Soc. Sec.,* 2013 U.S. Dist. LEXIS 90510 at *10, 2013 WL 1092457 (N.D.Ohio, Mar. 15, 2013).

(3) Declaration of Bradley J. Davis, an attorney who represented a successful social security claimant. (ECF No. 25–6 at ¶¶ 1–2.) He states that he requested $125 per hour in a subsequent fee application to avoid the additional time and research necessary to demonstrate a higher rate reflects the prevailing market rate. *Id* . at ¶ 4.

(4) The Ohio State Bar Association's profile of 2010 attorney hourly billing rates by both location and practice classification, including administrative law, showing hourly rates over $125. [3] (ECF No. 25–8.)

> [3] In the area of administrative law, the mean is $203 per hour, while the median is $180. (ECF No. 25–8 at 3.)

(5) The Survey of Law Firm Economics, 2011 edition, by The National Law Journal and ALM Legal Intelligence showing the trend comparison of expenses in law firms as compared to the Consumer Price Index during the relevant time period. (ECF No. 25–9 at 9–10.) It also shows the trend comparison of average billing rates. [4] *Id.* at 11–24.

> [4] The average hourly billing rate for an attorney in practice 21–30 years in the area of administrative law is $419, while the median is $425. (ECF No. 23–5 at 24.)

(6) The Consumer Price Index–All Urban Consumers for legal services from 1996 until May of 2012. [5] (ECF No. 25–11.)

> [5] The purpose of this exhibit is unclear. On its own, it does not offer any insight as to whether inflation in legal services outpaced inflation in general.

In support of the request for a rate of $187.00 per hour, Dallas has demonstrated that: (1) increases in law firm expenses in the relevant time frame have outpaced cost-of-living increases; (2) that the requested fee is less than or comparable to both the average and median rates in Ohio with respect to administrative law practice; and, (3) several attorneys who practice primarily or exclusively in social security law agree that prevailing hourly rates in this field exceed $200. In the recent past, this Court has repeatedly found that an upward departure from the statutory cap is justified based on identical evidence, or in some cases less evidence, as presented herein. *See, e.g., Gunther v. Comm'r of Soc. Sec.,* 943 F.Supp.2d 797 (N.D.Ohio 2013); *Coy v. Astrue,* 2013 U.S. Dist. LEXIS 50328, 2013 WL 1411137 (N.D.Ohio, Apr. 8, 2013); *Mohr v. Comm'r of Soc. Sec.,* 2013 U.S. Dist. LEXIS 18728, 2013 WL 557176 (N.D.Ohio, Fe.12, 2013); *Vasquez v. Astrue,* 2012 U.S. Dist. LEXIS 118588, 2012 WL 3637676 (N.D.Ohio, Aug. 22, 2012).

**\*3** Nevertheless, the Commissioner rehashes an old argument based on *Bryant v. Comm'r of Soc. Sec.,* 578 F.3d 443 (6th Cir.2009), and asserts that the evidentiary materials Dallas presented do not demonstrate the prevailing rates for legal services of the kind and quality rendered in social security cases in the Northern District of Ohio. (ECF No. 28.) The Commissioner's position in these cases is perplexing. After repeatedly challenging increases in the statutory cap based on *Bryant* with limited

success, the Commissioner for a time refrained from such arguments. *See, e.g., Hughley v. Comm'r of Soc. Sec.,* 3:11–cv–158 (N.D.Ohio) (attorney Roose requested a rate of $180.59 per hour for his services to which the Commissioner did not object) (ECF Nos. 20 & 23.) Furthermore, it does not appear that the Commissioner has appealed those cases wherein her position was rejected. The Commissioner, nonetheless, cites two recent decisions of the Northern District of Ohio that post-date this Court's most recent decision on the issue. (ECF No. 28 at 4–5.) In *Piporo v. Comm'r of Soc. Sec.,* 2013 WL 3006958, the court rejected an increase in the hourly rate based on similar though not identical materials. The *Piporo* court found that the evidence offered was insufficient because it was not specific to the prevailing rate for social security practitioners in particular. 2013 WL 3006958 (N.D.Ohio, Jun.12, 2013) (Wells, J.); *accord Hakkarainen ex rel. Blanton v. Comm'r of Soc. Sec.,* 2013 WL 2950529 (N.D.Ohio, Jun.11, 2013) (Wells, J.) The evidence offered here, however, is sufficiently specific as the affidavits of several attorneys specializing in the area of social security law support that the hourly rates charged exceed or are comparable to the inflation adjusted rates.

While the Court recognizes that a division may exist in the Northern District as to what level of evidence is required to satisfy the *Bryant* standard, it bears noting that at least one decision of this Court provides that the *Bryant* decision does not require more than a reference to the CPI. *See Elson v. Comm'r of Soc. Sec.,* No. 3:11–cv–183 at n. 2 (N.D Ohio, Aug. 7, 2012) (Carr, J.) ("The [*Bryant* ] court did not rule that as a matter of law that a judge's reliance on CPI is an abuse of discretion. Rather, the court merely stated that the district judge did not abuse his discretion by rejecting an increase under those circumstances.") While this Court does not necessarily agree with *Elson,* the *Bryant* decision did not delineate what kind of evidence could be used to justify an increase in the statutory cap. While it would be ideal if a survey existed that set forth the hourly rates of attorneys engaged in social security appellate practice in the Northern District, it does not appear that such a survey has been undertaken as the Court is unaware of any party ever citing such a source. The Court, however, believes that an upward departure from the statutory cap can be sufficiently demonstrated utilizing a combination of evidentiary sources as Dallas has herein.

**D. The Appropriate Hourly Rate**

**\*4** Attorney Roose requests an hourly rate of $187.00, and asks the Court to utilize the national consumer price index rather the "Midwest Urban" CPI the Court has used in the past. *See, e.g., Mohr v. Comm'r of Soc. Sec.,* 2013 WL 557176 (N.D.Ohio Feb.12, 2013), *Vasquez,* 2012 WL 3637676; *Jaworski v. Astrue,* 2012 WL 3552634; *Killings v. Comm'r of the SSA,* 2009 U.S. Dist. LEXIS 108524 (N.D.Ohio, Oct. 8, 2009). Roose has previously asked this Court to reconsider using the Midwest Urban CPI based on the finding in *Elson,* No. 3:11–cv–183 at n. 2 ("Because the statutory rate is fixed for all areas of the nation, logic dictates that I use the national CPI figure to maintain the uniformity Congress intended.") (Carr, J.)

Here, Dallas asserts that the Commissioner has advocated for using a national CPI in areas where the local rate of inflation exceeded the national rate. (ECF No. 29 at 8–9.) This argument merely highlights the fact that employing a more localized CPI is appropriate, because utilizing the national CPI would overstate inflation in some areas while understating it in others. Therefore, the Court continues to believe that utilizing a localized CPI is more consistent with the *Bryant* decision, which observed that requested fee rates should be "in line with those ***prevailing in the community*** for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Bryant,* 578 F.3d 443, 450 (6th Cir.2009) (emphasis added) (*quoting Blum v. Stenson,* 465 U.S. 886, 894 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also Killings v. Colvin,* 2013 WL 1455818 at \*5 (N.D.Ohio Apr.9, 2013) (acknowledging a split among the courts, but agreeing that "the 'Midwest' CPI appears to be the more appropriate measure of the increase in the cost of living for purposes of EAJA"); *Rodriguez v. Astrue,* 3:11–cv–00398 (N.D.Ohio, July 16, 2012) (finding the Midwest CPI more appropriate than the U.S. City Average CPI); *cf. Ralston v. Astrue,* 2011 WL 7299836 (E.D.Mich. Aug.30, 2011) (finding that the relevant market for calculating attorneys fees for a court sitting in the eastern District of Michigan is the Detroit market and utilizing the U.S. Department of Labor's CPI–U for the Detroit–Ann Arbor–Flint area.)

Conversely, the Commissioner argues that the Court should use the CPI for the Cleveland–Akron area. (ECF No. 28 at n. 2.) This argument is not without its logic, and is a more reasonable approach than utilizing the national CPI. [6] Nonetheless, this Court will continue to use the Midwest Urban CPI as not all of the social security attorneys who practice in the Northern District

of Ohio necessarily practice in the Cleveland–Akron area. Utilizing the "Midwest Urban" CPI for "All Items" for "All Urban Consumers," the index for March of 1996 was 151.7.[7] (Series Id: CUUR0200SA0, CUUS0200SA0) The second half index for 2013, when most of the attorney services were performed, was 222.381. *Id.* Given these figures, the appropriate hourly rate, using $125 as a base, would be $183.24 per hour.[8]

[6]    In *Lanken v. Comm'r of Soc. Sec.,* No. 5:11–cv–2607, 2013 U.S. Dist. LEXIS 8370, 2013 WL 237478 (N.D.Ohio Jan. 22, 2013) (Pearson, J.), plaintiff's counsel submitted a request for an increased hourly rate based on the Cleveland–Akron CPI, which the District Judge approved.

[7]    The Court utilizes March 1996 as the starting date in its calculations since Congress raised the EAJA cap to $125. The above CPI–U figures are from the web page of the Bureau of Labor Statistics and are not seasonally adjusted, http://data.bls.gov.

[8]    151.7 is to 222.381, as $125 is to x, resulting in x equaling $183.24. Notably, there is not a vast difference between this rate and the Cleveland–Akron area CPI, which would yield an hourly rate of $180.57. (CUURA210SA0, CUUSA210SA0.)

**E. Number of Hours Requested**

**\*5** The Commissioner also objects to the number of hours requested by Dallas and argues that the total numbers of hours should be reduced by 8.2. (ECF No. 28 at 7.) The Court must review Dallas's fee application to determine whether the requested hours are reasonable. *See* 28 U.S.C. § 2412(d)(1)(A), (B); *see also Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Courts are obligated to prune unnecessary hours from fee petitions because, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU v. Barnes,* 168 F.3d 423, 428 (11th Cir.1999).

The primary rationale behind the Commissioner's argument is that the Court addressed only one of Dallas's arguments, finding a remand necessary for a violation of the treating physician rule. (ECF No. 28 at 7.) The Commissioner, however, has not argued that any of Dallas's other arguments were frivolous

or raised in bad faith. While a court might expect counsel to winnow out weaker arguments in favor of stronger ones, counsel cannot be expected to predict which argument will ultimately be most persuasive. Moreover, the Commissioner cites no authority for the proposition that time spent on losing arguments or on arguments that were not addressed by the Court are not compensable under the EAJA.

The Commissioner also challenges a total of thirty minutes of attorney Roose's review of the docket, occurring mostly in six minute increments. *Id.* It is not unreasonable for a diligent attorney to spend a few minutes reviewing the electronic notice of documents filed with the Court. Nonetheless, this Court has reduced such hours in the past. *See, e.g., Mischka v. Astrue,* 2010 U.S. Dist. LEXIS 130774, 6–7, 2010 WL 4923093 (N.D.Ohio, Nov. 29, 2010) (spending six minutes reviewing the most basic docket entries, such as motions for extension of time and returns of service, is excessive, especially when one considers the cumulative effect of such billings) Here, a total of thirty minutes over the course of the case is not excessive.

The Court finds that no reduction in the number of hours requested is justified. As such, Dallas is awarded attorney fees for all 32.8 hours requested at the reduced rate of $183.24 per hour.

**F. Work Performed by a Legal Assistant and Expenses**

Dallas also requests $190 for 3.8 hours of work performed by Roose's appellate assistant—a rate of $50 per hour. (ECF No. 25.) The Commissioner argues that the rate for such services should be limited to $40 per hour. (ECF No. 28 at n. 1.)

Attorney Roose has repeatedly sought a twenty-five (25) percent increase for the services of his appellate assistant. This Court has rejected such an increase, as have numerous other decisions of this District. *See, e.g., Jeffries v. Comm'r of Soc. Sec.,* 2014 U.S. Dist. LEXIS 49019, 2014 WL 1394411 (N.D.Ohio Apr. 9, 2014) ("$40.00 rather than $50.00 is a reasonable fee for work performed by the appellate assistant."); *English v. Comm'r of Soc. Sec.,* No. 1:11–CV–2794 (N.D.Ohio August 31, 2012) (J. Adams) (finding $40.00 to be a reasonable fee for appellate assistant time); *De Nunez v. Comm'r of Soc. Sec.,* No. 1:11–CV–2285, 2013 U.S. Dist. LEXIS 863, 2013 WL 60429at \*3 (N.D.Ohio January 3, 2013), (J. Adams)

(same); *Gunther v. Comm'r of Soc. Sec.,* 943 F.Supp.2d 797, 804–05 (N.D.Ohio 2013) (same); *Montanez v. Comm'r of Soc. Sec.,* No. 1:11–CV–02475, 2013 U.S. Dist. LEXIS 166273, 2013 WL 6175451, at *3 (N.D.Ohio November 22, 2013) (same). Dallas has not provided this Court with any compelling reason to alter the hourly rate and any compensable hours will be limited to $40 per hour. [9]

[9] Dallas's reliance on *Ramos v. Comm'r of Soc. Sec.,* 1: 10:cv–01731 is disingenuous. Therein, the plaintiff was awarded the fees and rates requested because the Commissioner neglected to file a response to the EAJA application. The court never engaged in any discussion as to whether the rates or amounts requested were reasonable.

**\*6** The Commissioner asserts that the assistant should not be compensated for 2.0 hours spent preparing an outline and some language for Dallas's brief and fact sheet, because the assistant is not a lawyer. (ECF No. 28 at 7–8.) Courts in this Circuit have frequently awarded EAJA fees for the services of a paralegal or legal assistant. *See, e.g., Rhoads v. Comm'r of Soc. Sec.,* 2012 U.S. Dist. LEXIS 7252, 2012 WL 191756 (W.D.Mich., Jan. 6, 2012) ("Plaintiff is also entitled to recover the reasonable cost for legal assistant or paralegal services."); *Gilbert v. Comm'r of Soc. Sec.,* 2012 U.S. Dist. LEXIS 71809, 2012 WL 1890884 (E.D.Mich., May 23, 2012). However, "purely clerical or secretarial tasks should not be billed" under fee shifting statutes, "regardless of who performs them." *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *accord Snyder v. Comm'r of Soc. Sec.,* 2011 U.S. Dist. LEXIS 2077 (S.D.Ohio, Jan. 10, 2011). "Notwithstanding the prohibition against compensation for secretarial or overhead costs, work done by non-attorneys such as paralegals or law clerks, may be compensable under the EAJA if the work is 'sufficiently complex' or work 'traditionally performed by attorneys.' " *Snyder,* 2011 U.S. Dist. LEXIS 2077 at ——4–5. Furthermore, "Excluding compensation for work done by paralegals or law clerks would be counterproductive because excluding reimbursement for such work might encourage attorneys to handle entire cases themselves, thereby achieving the same results at a higher overall cost." *Id.*

For these reasons, the Court finds the 3.8 hours of work performed by the administrative assistant is reasonable and compensable at a rate of $40 per hour for a total of $152.

**F. Fees Associated With Preparation of a Reply**

Dallas also requests an additional award of $1,870.00 for preparing the reply to the Commissioner's brief opposing the EAJA application. (ECF No. 29.) This sum represents 10.0 hours at the rate of $187.00. The time expended upon fee applications and on reply briefs in response to the Commissioner's opposition to such an application is recoverable.

A court may compensate a claimant for the value of attorney services rendered in defending the propriety of an EAJA award, including a reply brief and supplemental application. *See Rodriguez v. Astrue,* No. 3:11–cv–398, 2012 U.S. Dist. LEXIS 98046, 2012 WL 2905928, at *6 (N.D.Ohio July 16, 2012), citing *Spurlock v. Sullivan,* 790 F.Supp. 979, 982 (N.D.Cal.1992) (citing *Comm'r I.N.S. v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990)). A claimant need not prove and a court need not find a second "substantial justification" before awarding EAJA fees for the EAJA fee litigation itself. *Jean,* 496 U.S. 154, 159–160, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). "[A]n award of attorney fees under the EAJA should encompass not only the fees incurred in the litigation on the merits, but also the fees incurred by the prevailing party in protecting that fee award in subsequent litigation by the government over the propriety or amount of the EAJA fee award, even if the position taken by the government in opposing the fee award is substantially justified." *Spurlock,* 790 F.Supp. at 982, citing *Jean,* 496 U.S. at 165.

**\*7** *Baker v. Colvin,* 2013 U.S. Dist. LEXIS 41426 at *3, 2013 WL 1284108 (N.D.Ohio Mar. 25, 2013). Here, the Commissioner has invited this expenditure by resurrecting its argument that the evidence offered was insufficient to support an upwards departure from the statutory cap. The Court finds the hours expended on the reply reasonable, but applies the Midwest Urban CPI rate— $183.24 per hour. Thus an additional award of $1,832.40 is appropriate.

**G. Payment**

In the instant matter, an agreement which shows that on June 24, 2010, Dallas consented to have all EAJA fees paid to counsel is attached to the application. (ECF No. 25– 14.) In accordance with *Astrue v. Ratliff,* 560 U.S. 586, 130

2014 WL 1767815, 202 Soc.Sec.Rep.Serv. 335

S.Ct. 2521, 177 L.Ed.2d 91 (2010), any fees paid belong to Dallas—not his attorney—and can be offset to satisfy preexisting debt that he may owe the United States. If Dallas has no outstanding federal debt, the Commissioner should honor the assignment of attorney fees and make the check payable to counsel.

**H. Conclusion**

Dallas's application for attorney fees (ECF No. 25) and supplemental application for attorney fees (ECF

No. 29) are GRANTED in part and DENIED in part. Specifically, Roose, through Dallas, is awarded $7,842.67 for 42.8 hours of work and $152.00 for the services of the appellate assistant—an aggregate sum of $7,994.67.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1767815, 202 Soc.Sec.Rep.Serv. 335

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4776837
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Kimberly SYKES and Tevya
Grace Urquhart, Plaintiffs,
v.
Derrick ANDERSON and Carol Nichols, Defendants.

Nos. 05–71199, 05–73725.
|
Oct. 31, 2008.

**Attorneys and Law Firms**

Julie H. Hurwitz, Goodman and Hurwitz, Detroit, MI,
Thomas M. Loeb, Farmington Hills, MI, for Plaintiffs.

Krystal A. Crittendon, Detroit City Law Department,
Detroit, MI, for Defendants.

### OPINION AND ORDER GRANTING IN PART PLAINTIFFS' PETITION FOR ATTORNEY'S FEES AND COSTS [201]

NANCY G. EDMUNDS, District Judge.

**\*1** This matter comes before the Court on Plaintiffs' joint petition for attorney's fees and costs under 42 U.S.C. § 1988. Plaintiff Kimberly Sykes has asked for an award of $995,530.85 in attorney's fees and $20,191.66 in costs. Plaintiff Tevya Urquhart has asked for an award of $267,541.75 in attorney's fees and $2,320.23 in costs. For the reasons set forth below, this Court GRANTS IN PART Plaintiffs' petition.

**I. Factual and Procedural Background**
The Court is familiar with the facts presented in this action, having presided over several motions and a jury trial in this matter. The facts relevant to Plaintiffs' fee petition are as follows.

In 2002, Plaintiffs Kimberly Sykes and Tevya Urquhart were arrested, convicted, and imprisoned in connection with the robbery of a Sprint store where they both worked. (Pls.' Pet. at 1). In May of 2004, the Michigan Court of Appeals vacated their convictions because there was no evidence to support the charges. (*Id.;* Opinion and Order, Docket Text # 132 at 3). [1] On March 8, 2005, Ms. Sykes filed an action under state tort law and 42 U.S.C. § 1983 against seven defendants in state court. Ms. Sykes asserted state-law claims of false arrest and imprisonment and violation of her Fourth and Fourteenth Amendment rights against six police officers, Derrick Anderson, Carol Nichols, Terrence Sims, Patrick Jones, Aaron Copeland, and Maurice McClure. (Sykes Compl., Ex. A, Docket Text # 1); Opinion and Order, Docket Text # 48 at 2). She also asserted a claim against the City of Detroit under 42 U.S.C. § 1983 for failure to train, discipline, or supervise its officers. (*Id.*). On September 29, 2005, Ms. Urquhart filed an action in this court under 42 U.S.C. § 1983 against the same six officers, alleging violation of her rights under the Fourth and Fourteenth Amendments. (Urquhart Compl. at 2, 5–6).

[1]    For purposes of this opinion, all Docket references will be for case number 05–71199.

Plaintiffs' cases were consolidated on June 19, 2006. (Docket Text # 18). On August 15, 2006, Ms. Sykes amended her complaint to add a state-law claim of malicious prosecution against the six officers. (Sykes Am. Compl., Docket Text # 37–3 at 14–15; Opinion and Order, Docket Text # 48 at 3). On the same day, Ms. Urquhart amended her complaint to add a claim against the City of Detroit under 42 U.S.C. § 1983 for failure to train, discipline, or supervise its officers. (Urquhart Am. Compl., Docket # 37–2 at 10–11).

On June 22, 2006, Defendants filed a motion for summary judgment, which was denied without prejudice on August 28, 2006. (Docket Text # 19; Opinion and Order, Docket Text # 48). On July 23, 2007, this Court issued a stipulated order, dismissing Defendants Terrence Sims, Patrick Jones, and Arthur Copeland from the lawsuit. (Docket Text # 77). On June 29, 2007, Defendants filed a second motion for summary judgment. (Docket Text # 73). On August 29, 2007, this Court denied the motion as untimely but granted summary judgment as to Plaintiff Urquhart's false-arrest and false-imprisonment claims. (Opinion and Order, Docket Text # 99 at 3). Ms. Urquhart had conceded that these claims were time-barred. (*Id.*). On November 6, 2007, this case was reassigned from the Honorable Bernard A. Friedman to the Honorable Nancy G. Edmunds. (Docket Text # 117). At a hearing on

November 16, 2007, the Court instructed the parties that it would rehear arguments on the City's motion for summary judgment and invited the parties to submit supplemental briefing. (Opinion and Order, Docket Text # 132 at 4). On December 20, 2007, this Court granted Defendant City of Detroit's motion for summary judgment, leaving only individual Defendants Anderson, Nichols, and McClure in the case at the time of trial. (*Id.* at 17).

**\*2** A trial was held from February 5 to February 25, 2008. At the close of Plaintiffs' proofs, Defendants orally moved for judgment as a matter of law with respect to all claims. (Opinion and Order, Docket Text # 179 at 2). The Court granted (1) Defendant Nichols' and Defendant McClure's motion for judgment as a matter of law with respect to Sykes' unlawful seizure claim; (2) Defendant McClure's motion for judgment as a matter of law as to Plaintiffs' malicious prosecution claims; and (3) Defendant Nichols' motion for judgment as a matter of law as to Plaintiff's due process claims. (*Id.* at 5).

On February 25, the jury rendered a verdict for Plaintiffs on their remaining claims against Defendants Anderson and Nichols. (Jury Verdict Forms, Docket Text # 170, # 171). The jury returned a verdict of "no cause of action" against Defendant McClure. (*Id.*). The jury awarded compensatory damages in the amount of $1,020,000 to Ms. Urquhart and $1,063,000 to Ms. Sykes. (*Id.*). The jury also awarded each plaintiff $150,000 in punitive damages against Defendant Anderson and $100,000 in punitive damages against Defendant Nichols. (*Id.*).

This matter is now before the Court on Plaintiffs' joint petition for attorney's fees and costs under 42 U.S.C. § 1988.

**II. Analysis**

In an action brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party" "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Plaintiffs are prevailing parties " 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal citation omitted). Defendants do not dispute that Plaintiffs are prevailing parties. [2]

[2] Defendants claim that, although Plaintiffs are prevailing parties, this Court should deny them attorney's fees under the criteria articulated in *Zarcone v. Perry,* 581 F.2d 1039 (2d Cir.1978). (Defs.' Resp. at 11–12). *Zarcone* is not binding on this Court and to the extent that it supports Defendants' argument, this Court disagrees with respect to its application to the facts of this case. *See Kindig v. Rockwell Int'l Corp.,* 709 F.Supp. 787, 790–92 (E.D.Mich.1989) (refusing to apply *Zarcone* ).

The "primary concern" then becomes ensuring that the "fee awarded be reasonable." *Hadix v. Johnson,* 65 F.3d 532, 535 (6th Cir.1995). "A reasonable fee is 'one that is 'adequate enough to attract competent counsel, but ... [does] not produce windfalls to attorneys.' ' " *Id.* (quoting *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (internal citation omitted)). The first step in assessing reasonable attorney's fees is to calculate the 'lodestar.' *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The lodestar is determined by multiplying the number of hours reasonably expended on the litigation by the attorney's reasonable hourly rate. *Hensley,* 461 U.S. at 433.

**A. Reasonable Hours**

This Court must "exclude from this initial fee calculation hours that were not 'reasonably expended.' " *Id.* at 434 (internal citation omitted). The Supreme Court has explained:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary ... In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here.

**\*3** *Id.* (internal citations and quotation marks omitted).

Plaintiffs staffed this case with five attorneys, three paralegals, two law students, and three technical assistants, and their time records reveal that they have not always exercised the required "billing judgment." [3] The Sixth Circuit has cautioned that "multiple representation can be productive [,]" "[b]ut there is also the danger of

duplication, a waste of resources which is difficult to measure." *Coulter v. Tennessee,* 805 F.2d 146, 152 (6th Cir.1986). This Court engaged in a painstaking review of every hour claimed by every staff member in this case and has, where possible, cut specific hours that it finds to have been duplicative or otherwise unreasonable. *See Northcross v. Bd. of Educ.,* 611 F.2d 624, 636 (6th Cir.1980), *overruled on other grounds* (noting that "[h]ours may be cut" "for duplication" and "padding"); *Roland v. Johnson,* No. 91–1460, 1992 WL 214441, at *2 (6th Cir. Sept.4, 1992) (affirming district court's exclusion of duplicative time spent by second attorney on case).

3      Defendants argue that Plaintiffs' fee petition should be denied due to the excessive hours claimed. (Defs.' Resp. at 6–11). Defendants rely for this proposition on a case in which a plaintiff's fee petition exaggerated hours expended by eight times. (*Id.* at 7 (citing *Brown v. Stackler,* 460 F.Supp. 446 (N.D.Ill.1978))). This Court does not find *Brown* applicable and concludes that it would be inappropriate to deny Plaintiffs a fee award.

To this end, this Court excludes all time billed by Kathleen Kalahar as it finds it unreasonable for Plaintiffs' counsel to have consulted with an additional attorney given the amount of time already being expended by lead counsel and their associates on this case.[4] This Court also excludes all time spent by Matthew Vasconsellos as it finds it unreasonable for Plaintiffs' counsel to have hired an additional attorney to work on tasks such as Plaintiffs' motion for sanctions and Plaintiffs' response to Defendants' summary judgment motion when Julie Hurwitz and Kathryn James also spent a tremendous amount of time on these pleadings.[5] This Court also excludes all time billed by law student Caryn Smith, the bulk of which was spent drafting Plaintiffs' fee petition. This is because the Court finds the approximately 50 hours spent by Ms. Hurwitz drafting the fee petition to be more than adequate. (Pls.' Pet., Ex. 9).[6] The Court also finds the time spent by paralegal Kara Sullivan typing handwritten time records and corresponding with attorneys about the fee petition to be unreasonable. The Court excludes these hours but will award fees for half of the time Ms. Sullivan spent compiling the costs incurred by Plaintiffs' counsel in this case. This Court also finds the hours billed by law student Melanie Elturk to be excessive for the tasks performed and has excluded two-thirds of her claimed time.[7] Finally, this Court finds the time spent

by Mr. Benchich creating a Powerpoint presentation and providing technical assistance at trial to be excessive and awards Plaintiffs for half of his total time.[8]

4      It is also the case that Ms. Kalahar's tasks were all ones for which other attorneys at Ms. Hurwitz's firm also billed substantial time.

5      This Court understands that Ms. James was out of the office during Mr. Vasconsellos' tenure, but notes that Ms. James spent more than sufficient time on these tasks upon her return.

6      Plaintiffs are correct that "time spent in preparing ... attorney fees applications is compensable." *Coulter,* 805 F.2d at 151. That time, however, must be reasonable.

7      For example, Ms. Elturk billed approximately 38 hours for drafting a memo on prejudgment interest. (Pls.' Pet., Ex. 9).

8      Plaintiffs request fees for Greg Angello and Jacob Lehman but do not include corresponding itemized time records. (Pls.' Pet., Ex. 9 at 101–02). For this reason, this Court does not award fees for these individuals' time.

In addition to general overstaffing of this litigation, Plaintiffs' counsel also spent excessive time on specific tasks. In the case of Mr. Gant, this Court was able to identify each excessive billing record and reduce it to a reasonable amount of time. (*See* Table 1). This Court found, however, that the billing of excessive time for particular tasks was a pervasive problem for Ms. Hurwitz and Ms. James. For example, they billed approximately: (1) 175.6 and 145.6 hours, respectively, for the drafting of a response to a motion for summary judgment; (2) 157.55 and 85.2 hours, respectively, for trial preparation; and (3) 76.15 and 100.5 hours respectively for the drafting of a response to a motion for a new trial. (Pls.' Pet., Ex. 9). Due to the difficulty of adjusting more than a hundred pages of individual billing entries to determine their reasonable hours, this Court reduces Ms. Hurwitz's and Ms. James' claimed hours by 25 percent. *See Northcross,* 611 F.2d at 636–637 (noting that "in complicated cases, involving many lawyers" "simply deducting a small percentage of the total hours to eliminate duplication of services" "seems preferable to an attempt to pick out, here and there, the hours which were duplicative"); *Coulter,* 805 F.2d at 152 ("Where duplication of effort is a serious problem, ... the District Court may have to make across the board

Sykes v. Anderson, Not Reported in F.Supp.2d (2008)
2008 WL 4776837

reductions ..."); *Louisville Black Police Officers Org. v. Louisville,* 700 F.2d 268, 272 (6th Cir.1983) (same). [9]

[9]  Before taking the twenty-five percent reduction, this Court does exclude as unreasonable the ten hours that Ms. Hurwitz bills on July 23, 2007 for "e-mail correspondence." (Pls.' Pet., Ex. 9 at 28). The Court also subtracts the 14 hours that Plaintiffs' counsel identified at oral argument as having been erroneously billed.

**\*4** This Court is also disallowing time spent by all staff that it finds to have been unreasonable. This includes time billed by staff for attending depositions, with the exception of the deposing counsel and lead counsel for each Plaintiff. *See E.E.O.C. v. E.J. Sacco,* 102 F.Supp.2d 413, 420–21 (E.D.Mich.2000) (noting that "an opposing party should only be charged for the cost of the essential participating attorney" at a deposition). This also includes time spent calling Judges' chambers because it was this Court's experience that these calls were unnecessary and needlessly time-consuming. This Court is also only awarding counsel for half of the time spent working with a jury consultant. A breakdown of the reasonable hours expended by each staff member in this litigation is as follows:

**Table 1**

**Plaintiff Sykes**

*Julie Hurwitz*

| | | |
|---|---|---|
| Claimed Hours | | 1615.1 |
| Hours Subtracted | calls to court clerk | 0.75 |
| | e-mailing on 7/23/07 | 10 |
| | erroneous hours | 14 |
| Percent Reduction for Overbilling | | 25% |
| Total Reasonable Hours | | 1192.76 |

*Kathryn James*

| | | |
|---|---|---|
| Claimed Hours | | 1099.85 |
| Hours as Law Student | | 35.6 |
| Hours as Law Associate | | 964.25 |
| Hours Subtracted from Assoc. | calls to court clerk | 1.25 |
| | half of jury consultant time | 0.75 |
| | attendance at depositions | 3 |
| Percent Reduction for Overbilling | | 25% |
| Total Reasonable Hours as Student | | 101.70 |
| Total Reasonable Hours as Assoc. | | 719.44 |

*Gary Gant*

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3953 Filed 07/12/16 Page 30 of 117
Sykes v. Anderson, Not Reported in F.Supp.2d (2008)
2008 WL 4776837

| Claimed Hours | | 547.95 |
|---|---|---|
| Hours Subtracted | attendance at depositions | 23 |
| | excessive hours on 8/2/06 | 3 |
| | excessive hours on 8/3/06 | 1.5 |
| | excessive hours on 8/7/06 | 3.5 |
| | excessive hours on 8/8/06 | 1.75 |
| | excessive hours on 8/10/06 | 7 |
| | excessive hours on 8/11/06 | 3 |
| | excessive hours on 8/14/06 | 7 |
| | excessive hours on 8/15/06 | 7 |
| | excessive hours on 8/16/06 | 7 |
| | excessive hours on 4/16/07 | 2 |
| | excessive hours on 4/18/07 | 1.5 |
| | excessive hours on 4/19/07 | 2 |
| | excessive hours on 4/20/07 | 2.5 |
| | excessive hours on 4/23/07 | 4.5 |
| | excessive hours on 4/27/07 | 3 |
| | excessive hours on 4/29/07 | 3.5 |
| | excessive hours on 6/25/07 | 4 |
| Total Reasonable Hours | | 461.2 |

### Kara Sullivan

| Claimed Hours | | 43.45 |
|---|---|---|
| Hours Subtracted | e-mailing attorneys re: fees | 6.45 |
| | typing handwritten fee records | 31.5 |
| | half time spent compiling costs | 2.25 |
| Total Reasonable Hours | | 3.25 |

### Alan Benchich

Sykes v. Anderson, Not Reported in F.Supp.2d (2008)

2008 WL 4776837

| | | |
|---|---|---|
| Claimed Hours | | 101.3 |
| Hours Subtracted | half total time | 50.65 |
| Total Reasonable Hours | | 50.65 |

**Maureen Kalahar**

| | | |
|---|---|---|
| Claimed Hours | | 5 |
| Total Reasonable Hours | | 5 |

**Bob Ingalls**

| | | |
|---|---|---|
| Claimed Hours | | 2.5 |
| Total Reasonable Hours | | 2.5 |

**Melanie Elturk**

| | | |
|---|---|---|
| Claimed Hours | | 198.8 |
| Hours Subtracted | two-thirds of total time | 132.53 |
| Total Reasonable Hours | | 66.27 |

**Plaintiff Urquhart**

**Thomas Loeb**

| | | |
|---|---|---|
| Claimed Hours | | 664.7 |
| Hours Subtracted | calls to court clerk | 0.7 |
| | half of jury consultant time | 0.9 |
| Total Reasonable Hours | | 663.1 |

**Kim Cochrane**

| | | |
|---|---|---|
| Claimed Hours | | 61.65 |
| Hours Subtracted | calls to court clerk | 0.1 |
| Total Reasonable Hours | | 61.55 |

**B. Reasonable Rate**

**\*5** "[H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter, 805*

F.2d at 149. In order to determine whether Plaintiffs' requested hourly rates are reasonable, the Court looks to " '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " *Hadix,* 65 F.3d at 536 (quoting *Blum,* 465 U.S. at 896 n. 11). This Court has "discretion to accept, reject, or modify [Plaintiffs'] requested rates based on its experience and knowledge of the relevant marketplace." *Roland,* 1992 WL 214441, at *3.

Plaintiffs have asked for hourly rates of $350 for Ms. Hurwitz and Mr. Loeb. (Pls.' Pet. at 10). Defendants respond that appropriate hourly rates would be $170 and $150, respectively. (Defs.' Resp. at 16). After considering "the attorneys' level of experience" and "the services they provided" (*Roland,* 1992 WL 214441, at *3), and after reviewing Plaintiffs' affidavits, the 2003 State Bar of Michigan *Economics of Law Practice Survey* submitted by the parties, and the 2007 State Bar of Michigan *Economics of Law Practice Survey* [10], this Court has determined that a reasonable hourly rate for Ms. Hurwitz and Mr. Loeb is $250. [11] Based on a review of the 2003 and 2007 editions of the State Bar of Michigan *Economics of Law Practice Survey* [12] and the Court's knowledge of the local market, the Court concludes that a reasonable hourly fee for associates, paralegals, and law students is $150, $100, and $75, respectively. [13] A breakdown of the lodestar calculation, based on these reasonable rates, is as follows:

[10] The Sixth Circuit has approved the use of the State Bar of Michigan surveys in calculating prevailing rates. *See, e.g. Lamar Adver. Co. v. Charter Twp.,* Nos. 04–2500, 04–2521, 2006 WL 1133309, at *2–3 (Apr. 27, 2006); Auto *Alliance Int'l, Inc. v. U.S. Customs Serv.,* No. 04–1764, 2005 WL 2149673, at *1 (6th Cir. Nov. 23, 2005).

[11] The 2003 *Economics of Law Practice Survey* lists a median hourly billing rate of $210 for attorneys in downtown Detroit and $175 for those in the remainder of Southeast Michigan. *2003 Economics of Law Practice Survey* at 26. The 2007 online version of the survey, which reports data differently, states that the median hourly billing rate for litigation firms in Michigan is $195. *2007 Economics of Law Practice Survey.*

[12] According to the 2003 *Survey,* for example, the median hourly rate for paralegals in downtown Detroit with at least 10 years of experience is $80.

*Economics of Law Practice Survey* at 26. The 2007 version states that the median hourly billing rate for paralegals throughout Michigan is $75. *2007 Economics of Law Practice Survey.*

[13] Plaintiffs have requested an hourly rate of $150 for Ms. James. This rate is only appropriate for hours billed after she became an associate in August of 2007. (Pls.' Pet. at 12). The reasonable rate for her work when she was a law student is $75 an hour.

*Table 2*

| Plaintiff Sykes | Reasonable Hours | Reasonable Hourly Rate | Lodestar |
|---|---|---|---|
| Julie Hurwitz | 1192.76 | 250 | 298190 |
| Kathryn James | 101.7 / 719.44 | 75 / 150 | 15543.5 |
| Gary Gant | 461.2 | 100 | 46120 |
| Kara Sullivan | 3.25 | 100 | 325 |
| Alan Benchich | 50.65 | 75 | 3798.75 |
| Maureen Kalahar | 5 | 75 | 375 |
| Bob Ingalls | 2.5 | 75 | 187.5 |
| Melanie Elturk | 66.27 | 75 | 4970.25 |
| **Total Lodestar:** | | | **469510** |

| Plaintiff Urquhart | Reasonable Hours | Reasonable Hourly Rate | Lodestar |
|---|---|---|---|
| Thomas Loeb | 663.1 | 250 | 165775 |
| Kim Cochrane | 61.55 | 100 | 6155 |
| **Total Lodestar:** | | | **171930** |

## C. Adjusting the Lodestar

Calculation of the lodestar "does not end the inquiry." *Hensley,* 461 U.S. at 434. This Court must next determine whether it is appropriate "to adjust the fee upward or downward" to reflect factors such as " 'the results obtained' " in the case. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)); *see also id.* at 438 (noting that district courts must "consider the relationship between the extent of [a plaintiff's] success and the amount of the fee award"). Plaintiffs argue that not only are they entitled to compensation for hours spent pursuing ultimately unsuccessful claims but that their fees should be adjusted upward to reflect their "exceptional

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3956 Filed 07/12/16 Page 33 of 117
Sykes v. Anderson, Not Reported in F.Supp.2d (2008)
2008 WL 4776837

success" in the case. (Pls.' Pet. at 19–24). Defendants object to both claims. (Defs.' Resp. at 16–18).

## 1. Unrelated Unsuccessful Claims

**\*6** If a plaintiff "fail[s] to prevail on claims that were unrelated to the claims on which he succeeded," "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley,* 461 U.S. at 434, 440. "[S]uccessful and unsuccessful claims are deemed related when they 'involve a common core of facts,' 'are based on related legal theories,' or when counsel's time is 'devoted generally to the litigation as a whole, making it difficult to divide the hours expended.'" *Barnes v. City of Cincinnati,* 401 F.3d 729, 745 (6th Cir.2005) (quoting *Hensley,* 461 U.S. at 433).

Plaintiffs' claim under 42 U.S.C. § 1983 against the City of Detroit was unsuccessful. At its earliest convenience upon inheriting this case, this Court dismissed Plaintiffs' municipal-liability claim because Plaintiffs could not prove that Detroit had a policy or custom of failing to "track, monitor, and respond to police misconduct" and of failing to train or supervise its officers. (Opinion and Order, Docket Text # 132, at 8, 12–17). This was "a distinctly different claim[] for relief" than Plaintiffs' claims against individual officers, "based on different facts and legal theories." *Hensley,* 461 U.S. at 434. A finding of municipal liability in this case required the existence of a policy or custom with respect to supervising, training, and overseeing officers and was wholly distinct from the proof that led to jury verdicts against individual officers for their treatment of Plaintiffs. [14] For this reason, the Court excludes the time spent by Plaintiffs on their municipal-liability claim. [15]

[14] This is to be distinguished from cases in which plaintiffs have sued under related theories of employment discrimination (*see e.g., Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1169–70 (6th Cir.1996); *Lilley v. BTM Corp.,* 958 F.2d 746, 756 (6th Cir.1992)), or cases in which plaintiffs have brought the same exact claims against municipal and individual defendants (*see, e.g., Wayne v. Village of Sebring,* 36 F.3d 517, 532 (6th Cir.1994)).

[15] Plaintiffs identified the hours spent exclusively on their claims against the City of Detroit. (Pls.' Reply, Docket Text # 216–6). Based on these figures, this Court excludes 95.35 hours from Ms. Hurwitz's time,

228.75 hours from Ms. James' time, 18.75 hours from Mr. Gant's time, and 4 hours from Ms. Elturk's time. The Court makes this reduction from Ms. James' *law-associate* hours rather than her *law-student* hours since the bulk of time spent on this claim seems to have been after August 2007.

## 2. Unsuccessful Related Claims

Defendants seem to suggest that Plaintiffs' fee award should be further reduced because Plaintiffs did not prevail on every claim against every individual officer (Defs.' Resp. at 16). Three officers were dismissed prior to trial and a fourth was found not to be liable by the jury. The Court also dismissed as a matter of law several claims against the remaining three officers.

Plaintiffs' claims against the individual officers were related claims, based on a common core of facts or legal theories. As such, a different legal standard applies to these unsuccessful claims than applies to Plaintiff's unsuccessful, unrelated claim against the City of Detroit. It is true that the Supreme Court has instructed that "even where the plaintiff's [successful and unsuccessful] claims were interrelated," if "a plaintiff has achieved only partial or limited success," "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley,* 461 U.S. at 436. But where, as in this case, "commonality is present" between the unsuccessful and successful claims against individual officers and "a plaintiff has obtained excellent results" on these claims overall, a "fee award should not be reduced because the plaintiff failed to prevail on every contention raised." *Hensley,* 461 U.S. at 435; *Phelan v. Bell,* 8 F.3d 369, 374 (6th Cir.1993).

**\*7** The Court finds the lodestar, as adjusted for the unsuccessful, unrelated municipal-liability claim, to be reasonable given Plaintiffs' overall success against the individual officers. That some of the Plaintiffs' related claims against some of the officers were ultimately unsuccessful does not necessitate a further reduction of the lodestar. *See City of Riverside v. Rivera,* 477 U.S. 561, 570–71, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (refusing to adjust fee award downward because Plaintiff did not ultimately prevail against all individual defendant-officers since "all claims were based on a common core of facts"); *Thurman,* 90 F.3d at 1169–70 (denying defendant's request for further reduction of lodestar to reflect plaintiff's limited success on related employment-discrimination claims).

Sykes v. Anderson, Not Reported in F.Supp.2d (2008)

2008 WL 4776837

### 3. Proposed Fee Enhancement

Plaintiffs have requested a 15% upward adjustment of the lodestar and base this request on several of the factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). [16] (Pls.'s Pet. at 19–20). The presumption is that the lodestar provides a reasonable attorney's fee. *Blum,* 465 U.S. at 897; *see also Murphy v. Int'l Union of Operating Eng'rs,* 774 F.2d 114, 128 (6th Cir.1985). An enhancement award is only justified in "rare cases[s]" "of exceptional success." *Blum,* 465 U.S. at 897, 899.

[16]  The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–719.

This Court has considered the twelve *Johnson* factors and finds that they are adequately reflected in Plaintiffs' reasonable hours and rate. *See Hensley,* 461 U.S. at 434 n. 9; *Blum,* 465 U.S. at 899. The lodestar, as adjusted to account for the unsuccessful unrelated municipal-liability claim, already represents Plaintiffs' reasonable attorney's fee award. As such, no enhancement is required. A breakdown of the reasonable fees to which Plaintiffs are entitled after adjustment of the lodestar is as follows [17]:

[17]  To calculate an adjusted lodestar for Ms. Hurwitz and Ms. James, this Court subtracted the time that each spent on the municipal-liability claim from their total claimed hours *before* taking the 25% reduction for overbilling. Similarly, this Court calculated Ms. Elturk's adjusted lodestar by subtracting her time spent on the municipal-liability claim *before* taking the two-thirds reduction of her time for overbilling. These necessary additional calculations are not laid out in Table 3 but *are* reflected in the three individuals' respective adjusted lodestars in Table 3.

*Table 3*

**Plaintiff Sykes**

| | Reasonable Hours | Subtracted Municipal–Liability Hours | Reasonable Rate | New Lodestar |
|---|---|---|---|---|
| Julie Hurwitz | 1192.76 | 95.35 | 250 | 280312.5 |
| Kathryn James | 101.7 / 723.19 | 228.75 | 75 / 150 | 89808.75 |
| Gary Gant | 461.2 | 18.75 | 100 | 44245 |
| Kara Sullivan | 3.25 | | 100 | 325 |
| Alan Benchich | 50.65 | | 75 | 3798.75 |
| Maureen Kalahar | 5 | | 75 | 375 |
| Bob Ingalls | 2.5 | | 75 | 187.5 |
| Melanie Elturk | 66.27 | 4 | 75 | 4870 |
| | | | Total Fee Award: | 423922.5 |

**Plaintiff Urquhart**

| | Reasonable Hours | Subtracted Municipal–Liability Hours | Reasonable Rate | New Lodestar |
|---|---|---|---|---|
| Thomas Loeb | 663.1 | | 250 | 165775 |
| Kim Cochrane | 61.55 | | 100 | 6155 |
| | | | Total Fee Award: | 171930 |

### D. Costs

Plaintiffs have also asked for an award of costs under 42 U.S.C. § 1988. (Pls.' Pet. at 27–28). "Some expenses are included in the concept of attorney's fees, as 'incidental and necessary expenses incurred in furnishing effective and competent representation,' and thus are authorized by section 1988." *Northcross,* 611 F.2d at 639 (internal citation omitted). These expenses are limited to "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Id.* [18]

[18]  The Clerk of Court has taxed costs in the amount of $7740.21 under 28 U.S.C. § 1920. Plaintiffs filed objections to the Clerk's failure to tax certain costs, which this Court has sustained. (Opinion and Order, Docket Text # 226).

**\*8** This Court has reviewed Plaintiffs' claimed costs and has excluded those costs it does not deem to be reasonable out-of-pocket expenses normally charged to a fee-paying client. These include the costs of: (1) transcripts of hearings and status conferences; (2) parking; (3) attorney and client meals; (4) lost wages of a witness [19]; and (5) jury-consultant services. This Court finds Plaintiffs' claimed per-page rate of fifty cents for photocopying to be excessive and will award costs for photocopying at a reasonable rate of twenty-five cents per page. *See, e.g., King v. Gowdy,* No. 02–75136, 2008 WL 1820837, at *3 (E.D.Mich. Apr.22, 2008). This Court excludes half of Plaintiffs' investigative expenses, finding the amount claimed excessive for a case of this type. This Court also excludes $333.90 in expenses sought by Plaintiff Urquhart for trial exhibits since this will be taxed by the Clerk of Court per this Court's Opinion and Order granting Plaintiffs' motion to adjust the taxed bill of costs. (Docket Text # 226). A breakdown of the costs that this Court will award Plaintiffs is as follows:

[19] This witness' fee, parking, and mileage were already taxed under 28 U.S.C. § 1920.

### Table 4

| Plaintiff Sykes | | |
|---|---|---|
| Total Claimed Costs | | 20191.66 |
| Subtracted Costs | discovery hearing transcript | 46.1 |
| | lunch case meeting | 24.91 |
| | motion hearing transcript | 72.6 |
| | half investigative costs | 3203.75 |
| | parking | 226.43 |
| | lost wages of Vendricks Smith | 175.26 |
| | status conference transcripts | 101.85 |
| | mid-trial meals | 136.07 |
| | meals during trial with clients | 212.45 |
| | meals during trial | 146.79 |
| | jury consultant fee | 2000 |
| | photocopying [.25/ page instead of .50] | 3929 |
| | jury consultant fee | 542.25 |
| **Total Awarded Costs** | | **9374.2** |
| **Plaintiff Urquhart** | | |
| Total Claimed Costs | | 2320.23 |
| Subtracted Costs | parking | 282.5 |
| | trial exhibits taxed under s.1920 | 333.9 |
| | motion for directed verdict transcript | 179.45 |
| **Total Awarded Costs** | | **1524.38** |

### III. Conclusion

For the reasons stated above, the Court reduces Plaintiff Sykes' requested attorney's fee award of $995,530.85 to $423,922.50 and Plaintiff Urquhart's requested attorney's fee award of $267,541.75 to $171,930. For the reasons stated above, the Court also reduces Plaintiff Sykes' requested costs of $20,191.66 to $9,372.20 and Plaintiff Urquhart's requested costs of $2,320.23 to $1,524.38.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 4776837

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3959 Filed 07/12/16 Page 36 of 117
Disabled Patriots of America v. Genesis Dreamplex, LLC, Not Reported in F.Supp.2d...

2006 WL 2404140

2006 WL 2404140
Only the Westlaw citation is currently available.
United States District Court,
N.D. Ohio,
Western Division.

DISABLED PATRIOTS Of AMERICA and
Michael Miles, Individually, Plaintiff,
v.
GENESIS DREAMPLEX, LLC, Defendant.

No. 3:05 CV 7153.
|
Aug. 18, 2006.

**Attorneys and Law Firms**

Lawrence A. Fuller, Fuller, Fuller & Associates, Miami, FL, Owen Benton Dunn, Jr., Toledo, OH, for Plaintiff.

Karyn McConnell Hancock, Toledo, OH, for Defendant.

MEMORANDUM DECISION AND ORDER

VERNELIS K. ARMSTRONG, Magistrate Judge.

**\*1** The parties have consented to have this discrimination case filed pursuant to the Americans with Disability Act (ADA) of 1990, 42 U.S.C. § 12101 *et seq* transferred to the docket of the undersigned Magistrate for purposes of entering final judgment. Pending is Plaintiff's Motion for Attorney Fees (Docket No. 25) to which Defendant filed an Opposition (Docket No. 29) and Plaintiff filed a Reply (Docket No. 34). For the reasons that follow, the Magistrate grants Plaintiff's Motion for Attorney Fees.

*FACTUAL BACKGROUND*

Plaintiff Michael Miles is a Findlay, Ohio resident (Docket No. 1, ¶ a). Plaintiff Disabled Patriots of America (Disabled Patriots) is a not for profit corporation formed under Florida law with its principal place of business in Lake Worth, Florida (Docket No. 1, ¶ b). Defendant, a limited liability corporation, is a hotel and conference center located in Toledo, Ohio (Docket No. 1, ¶ c).

Plaintiff Miles visited Defendant's hotel and conference center and discovered several architectural barriers that (1) presented concerns for his safety and (2) impeded his use of the services offered by the facility. Plaintiffs conducted a preliminary inspection and discovered that the facility was not in compliance with the ADA requirement that public facilities have accessible facilities by January 26, 1992. In particular, Defendant had, *inter alia,* failed to adequately designate disabled use spaces, provide adequate edge ramps, provide adequate access to goods and services including lavatories and guest rooms, or generally accommodate disabled persons (Docket No. 1). Consequently, Defendant Miles filed this lawsuit seeking compensatory damages, declaratory and injunctive relief, and attorney fees and costs. The parties entered a consent agreement that was approved by the Court on March 3, 2006 (Docket No. 24). The parties agreed to refer the matters of the amount of fees, litigation expenses and costs to the undersigned Magistrate Judge. These issues are addressed as follows.

*ATTORNEY FEE STANDARDS*

The ADA provides that "[i]n any action ... commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." 42 U.S.C. § 12205. A district court's decision to grant or deny attorney's fees is reviewed for an abuse of discretion. *Fogerty v. MGM Group Holdings Corp.,* 379 F.3d 348, 357 (6th Cir.2004). In order for a plaintiff to receive attorneys' fees in a civil rights action, the plaintiff must be the prevailing party. 42 U.S.C. § 12205 (Thomson/West 2006). A plaintiff may be considered a prevailing party if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart,* 103 S.Ct.1933, 1939 (1983). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties," *Texas State Teachers Association v. Garland Independent School District,* 109 S.Ct. 1486, 1493 (1989), such that "the defendant's behavior [is modified] in a way that directly benefits the plaintiff," *Farrar v. Hobby,* 111-12, 113 S.Ct. 572-573 (1992); *Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir.2005).

**\*2** It is well settled that the "lodestar" approach is the proper method to determine the amount of

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3960 Filed 07/12/16 Page 37 of 117
Disabled Patriots of America v. Genesis Dreamplex, LLC, Not Reported in F.Supp.2d...

2006 WL 2404140

reasonable attorneys' fees. *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir.1995) (citations omitted). In applying the lodestar approach, "[t]he most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (citing *Hensley,* 103 S.Ct. at 1939). There is a "strong presumption" that the lodestar figure represents a reasonable fee. *Id.* at 1401-1402 (citing *Pennsylvania v. Delaware Valley Citizen's Council,* 106 S.Ct. 3088, 3098 (1986); see also *Roland v. Johnson,* 978 F.2d 1339 (6th Cir.1992)).

Once the lodestar approach is calculated, the fee may be adjusted in consideration of a number of factors, including "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Disabled Patriots of America, Inc. v. Taylor Inn Enterprises, Inc.,* 424 F.Supp.2d 962, 965-966 (E.D.Mich.2006) (citing *Doran v. Corte Madera Inn Best Western,* 360 F.Supp.2d 1057, 1061 (N. D.Cal.2005)).

When counsel seeks compensation for an excessive number of hours, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. *Id.* at 969. In the case of *Disabled Patriots v. Taylor Inn,* a 40% reduction was deemed reasonable based on the ambiguities in the invoice and the bundling of otherwise discrete tasks. *Id.*

## DISCUSSION

Plaintiffs seek an award of $25,814.16 which consists of $18,228 in attorney fees, $5,950 in expert witness fees and $1,636.16 in litigation expenses [1] (Docket No. 25). Defendant argues that the number of hours spent by Plaintiffs' counsel on redundant and routine matters was excessive, the hours spent by counsel, the paralegal and

expert are duplicative, the hourly rates charged by counsel do not comport with prevailing rates in the Toledo, Ohio, legal community, the expert fee is unreasonable and the request for expenses is not substantiated.

[1]     Plaintiffs projected that they would incur additional attorney fees and costs of $2400 if the Court conducted an evidentiary hearing on the merits of their request for attorney fees. Since such hearing was not required, this amount is disallowed.

The terms of the Consent Decree indicate that Defendant agreed to make substantial changes to the premises that comply with ADA regulations. In doing so, Defendant waived any defenses and gave up something it may have otherwise won if this case proceeded to trial. The compromise directly benefits Plaintiffs. Consequently, Plaintiffs are the prevailing parties in this litigation. Plaintiffs, as prevailing parties, are entitled to reasonable attorney fees, expert fees and costs.

### I. Amount of Legal Fees

**Mr. Fuller's Hourly Rate**

**\*3** Plaintiffs argue that the issues in this case are complex, that it would be difficult to find competent and skilled counsel in the Toledo area able to undertake the "risk and expense of this type of civil rights action and that all services provided in this case were unique and tailored to their client's needs. Thus, Mr. Fuller is entitled to an hourly fee of $325. Defendant contends that co-counsel Owen Dunn could have provided equally skilled representation as he did in *Disabled Patriots of American, Inc. v. Suemar Realty, Inc,* Case No. 3:04CV7137 and *Disabled Patriots of America, Inc. v. Lane Toledo,* Case No. 1:04-CV-00538.

In determining the reasonableness of Mr. Fuller's request for an hourly rate of $325, the court must consider the prevailing market rates in the relevant community for similar services by attorneys with comparable skill, experience and reputation. *Disabled Patriots of America, Inc. v. Taylor Inn Enterprises, Inc.* 424 F.Supp.2d 962, 966 (E.D.Mich.2006) (citing *Fuhr v. School Dist. of Hazel Park, supra,* 364 F.3d at 762). Proof of prevailing market rates may be demonstrated in a number of ways, including: (1) affidavits of other attorneys or experts; (2) citations to prior precedents showing reasonable rate adjudications for the fee applicant,

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3961 Filed 07/12/16 Page 38 of 117

Disabled Patriots of America v. Genesis Dreamplex, LLC, Not Reported in F.Supp.2d...

2006 WL 2404140

for comparable attorneys, or for comparable cases; (3) references to fee award studies showing reasonable rates charged or awarded in the relevant community; (4) testimony of experts or of other attorneys in the relevant community; (5) discovery rates charged by the opposition party; and (6) reliance on the court's own expertise to recognize applicable prevailing rates. *Parker v. Secretary of Department of Health and Human Services,* 1992 WL 191102, *1 (Cl.Ct.1992).* (*citing* NEWBERG, ATTORNEY FEE AWARDS 198 (1986)).

Plaintiffs failed to submit affidavits or testimony of the prevailing rates in this community but do cite prior precedent showing reasonable rate adjudication. In addition, the Magistrate relies upon the Court's own expertise to determine the applicable prevailing rates. Attorney Christopher Parker attested in *Cox v. Sandusky City Schools,* Case No. 3:00 CV 7657 (N.D.Ohio 2000), that lead counsel in the Toledo area with specialties in employment law billed at $200 per hour (Docket No. 136, Exhibits B, C, D, & E). Attorney William Connelly attested that the rates for attorneys in the local economy with at least twenty six years of experience and specialized practices of law, were entitled to fees in the range of $175 to $250 per hour. *See Hess v. City of Toledo,* 139 Ohio App.3d 581, 585, 744 N.E.2d 1236, 1238 (2000). Plaintiffs' counsel cite the court's approval of a $335 hourly attorney fee in *Sandusky v. Blackwell,* 361 F.Supp.2d 688 (2005). Chief Judge Carr found that the Sandusky case presented novel and difficult questions. *Id.* at 697. This case, however, presented routine issues regularly litigated in ADA cases and fails to justify the award of a $325 hourly fee.

**\*4** The Magistrate is persuaded by the testimony in *Hess* that the $250 hourly rate charged by similarly situated practitioners in this community is reasonable given lead counsel's expertise and skill. Adjusting this three-year old figure for inflation, the hourly rate is increased to $275 [2]. For these reasons, Plaintiffs are awarded fees which shall be calculated at $275 per hour.

[2]    The inflation calculator shows that $250 in 2003 has the same buying power as $275 in 2006. United States Department of Labor, Consumer Price Index, *www.bls.gov.ifn*

**Mr. Fuller's Hours**

Mr. Fuller requests that he be compensated for 50.10 hours of services provided for Plaintiffs in this case. Defendant argues that the time Mr. Fuller spent was excessive due to the repetitive nature of previous filings made by Plaintiff as well as tasks performed by Mr. Dunn [3].

[3]    The Court's docket indicates that Disabled Patriots is a named plaintiff in approximately twenty cases with the Fuller firm appearing as counsel.

The court must decide the reasonable amount of time spent on each task. *Cleveland Area Bd. Of Realtors v. City of Euclid,* 965 F.Supp. 1017, 1020 (N. D.Ohio 1997) (total requested hours were reduced by 10% for insufficient documentation). The district court is empowered to reduce the award when the documentation of hours is inadequate. *Id.* (*citing Hensley, supra,* 103 S.Ct. at 1939). Counsel is not expected to record in great detail how he or she spent every minute; however, the general subject matter must be identified. *Id.* (*citing Hensley, supra,* at 1941 n. 12). The documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Id.* (*citing United Slate, Tile & Composition Roofers v. G & M Roofing,* 732 F.2d 495, 502 n. 2 (6th Cir.1984)).

After careful review of the billing records, the Court found numerous entries made by counsel that were "lumped" together thereby rendering it impossible for the Court to ascertain with a high degree of certainty, the time spent on each individual task. In some instances, the hours spent by counsel duplicated the hours spent by Mr. Dunn.

Plaintiffs' claim that Mr. Fuller spent 1.6 hours on March 16, 2005 to prepare a complaint and summons along with several other tasks. Since Mr. Fuller filed similar complaints in *Disabled Patriots v. Hotel Ventures,* Case No. 3:05 CV 7154 and *Disabled Patriots v. Toledo Hotel Investors,* Case No. 3:04 CV 7138, it is difficult to ascertain the amount of time spent preparing the complaint and summons for this case. Therefore, the total request is reduced by 30% or .48 hours.

Defendant argues that the time spent to prepare a Consent Decree and a Motion for Summary Judgment was an effort to collect additional attorney fees. Plaintiffs contend that preparation for the Consent Decree and the Motion

Disabled Patriots of America v. Genesis Dreamplex, LLC, Not Reported in F.Supp.2d...

2006 WL 2404140

for Summary Judgment was necessary. The Magistrate finds that it was within Plaintiffs' best interest to pursue summary judgment in the event settlement discussions were unsuccessful. The preparation of a Consent Decree memorializing the parties' agreement was equally in the parties' best interest. The hours expended preparing these documents is reasonable. Likewise, the hours spent preparing discovery requests produced by Plaintiffs is reasonable in light of the circumstances.

**\*5** Additionally, Defendant argues that the Consent Decree and Motion for Summary Judgment are boilerplate and the time spent in preparing them was excessive. After reviewing other Consent Decrees prepared by Plaintiffs in past cases, *e.g.* Case No. 1:05-CV-02466-PAG *Disabled Patriots of America v. Brighton Manor Company,* the court finds some similarity in content, however, the majority of the Consent Decree is case specific. Therefore, the hours spent by Plaintiffs' counsel preparing the Consent Decree are reasonable.

Defendant contends that the time expended by Plaintiffs' counsel reviewing the website is contrived since they have no website. Plaintiffs contend that Defendant's website is discoverable upon a Google search. The Magistrate finds that the time spent analyzing Defendants web site is reasonable [4].

[4] Plaintiff has a viewable website as *www.dotoledo.org*

Defendant alleges that Plaintiffs' Applications for Attorney's Fees in Case No. 3:04CV7137, *Disabled Patriots v. Suemar Realty, Inc.* and Case No. 1:04-CV-00538 *Disabled Patriots, Inc. v. Lane Toledo* are identical to the Application for Attorney's Fees to the case at bar. The Magistrate finds that the applications used in the two previous cases used much of the same research and case law. The documents used and the research done closely duplicate previous cases filed with the court, thus the hours spent preparing are excessive. The Court reduces Plaintiffs' request for 5.2 hours to prepare the application for fees by 30% or 1.56 hours.

Defendant alleges that the Application for Fees lacks adequate explanation for the numerous conferences between Mr. Fuller, Mr. Dunn and the expert witness, Mr. Pedraza. Plaintiffs believe that the conversations are cited with adequate detail. The Magistrate reviewed time requests submitted from Mr. Fuller and Mr. Dunn and finds that little or no detail is given about each phone call, with the exception of one. The phone conversation on August 22, 2005 goes beyond stating "phone call with Mr. Pedraza" and adds the phrase, "to discuss his inspection of the premises." This is enough to satisfy the court's specificity requirement and will not be reduced. However, the documentation of the remaining telephone calls lacks adequate detail from which the Court can determine if the telephone calls were actually and reasonably expended in the prosecution of this litigation. The Court reduces time spent "conferencing" with Mr. Pedraza by 30% as follows:

| Date | Time Spent |
| --- | --- |
| October 3, 2004: | 0.30 |
| February 8, 2005: | 0.90 |
| July 1, 2005: | 1.40 |
| August 9, 2005: | 1.30 |
| August 15, 2005: | 1.00 |
| August 16, 2005: | 0.40 |
| September 6, 2005: | 0.90 |
| October 3, 2005: | 0.70 |
| October 12, 2005: | 1.30 |
| October 17, 2005: | 0.80 |

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3963 Filed 07/12/16 Page 40 of 117
Disabled Patriots of America v. Genesis Dreamplex, LLC, Not Reported in F.Supp.2d...
2006 WL 2404140

| | |
|---|---|
| October 19, 2005: | 1.00 |
| November 1, 2005: | 1.10 |
| November 11, 2005: | 3.00 |
| January 3, 2006: | 0.60 |
| March 3, 2006: | 1.00 |

Total Reduction: 15.7 x 30% = 4.71 hours

Defendant challenges the fees requested for telephone conferences with Ms. Gallagher, President of Disabled Patriots. The Court finds that Ms. Gallagher is party to the suit and therefore a telephone call between the parties is reasonable. However, Plaintiffs' counsel fails to state with particularity the subject of the calls. Again, the calls are "lumped" with other tasks. Therefore, the time recorded as a phone call between Ms. Gallagher and Mr. Fuller is reduced by 30% as follows:

| Date | Time Spent |
|---|---|
| October 10, 2004: | 0.20 |
| March 17, 2005: | 0.60 |
| August 9, 2005: | 1.30 |
| November 1, 2005 | 1.10 |

Total Reduction: 3.2 x 30% =.96 hours

**\*6** Defendant states on several occasions time listed by Mr. Fuller, where co-counsel conversed, was not recorded by Mr. Dunn. On July 8, 2005 it appears that Mr. Fuller lists "phone call(s) with co-counsel, Owen Dunn," while Mr. Dunn lists "spoke with Tracie Dickerson at Fuller, Fuller & Associates regarding our response to Order to Show Cause." Clearly, the court finds some discrepancy and therefore the time listed by Mr. Fuller and Mr. Dunn is reduced by 30%.

On August 24, 2005, Mr. Fuller lists "Reviewing note from Mr. Dunn." While under Mr. Dunn's account for that day and several days prior no reference is made regarding a note written to Mr. Fuller. Therefore, due to the discrepancy in accounted time and the Court's inability to determine which note is referenced, the time spent by Mr. Fuller to review the note is reduced by 30%.

On September 7, 2005 Mr. Fuller listed, "prepar[ed] note to co-counsel." Again this "note" does not state any specificity and does not appear in Mr. Dunn's requested time. Thus, time spent to prepare the note is also reduced by 30%.

Finally, on November 17, 2005 Mr. Fuller stated he "review[ed] letter from co-counsel with attachment." There was no preparation of a letter on the part of Mr. Dunn and what was contained in the letter lacks specificity. This time spent is therefore stricken as well. As noted before, Plaintiffs' counsel "lumps" tasks together, thus the court reduces time spent on each day by 30% as follows:

| Date | Time Spent |
|---|---|
| July 8, 2005: | 1.50 |
| August 24, 2005: | 0.30 |
| September 7, 2005: | 2.00 |

**Disabled Patriots of America v. Genesis Dreamplex, LLC, Not Reported in F.Supp.2d...**

2006 WL 2404140

November 17, 2005:                                        0.20

Total Reduction: 4 x 30% = 1.2 hours

In conclusion, the Magistrate reduces Mr. Fuller's hours by 8.91.

### Mr. Dunn's Hourly Rate

Plaintiffs contend that the hourly rate of $275 requested by Mr. Dunn was reasonable. Defendant contends that the hourly rate does not comport with Mr. Dunn's experience and directs the Court to consider the case of *Preferred Properties, Inc. v. Indian River Estates, Inc.,* Case No. 3:99 CV 7342 (N.D.Ohio Oct. 11, 2000) and theories on attorney fee awards included in an affidavit by Daniel J. Steinbock as support.

In calculating the reasonable hourly rate, the court must consider the prevailing market rates in the relevant community for similar services by attorneys with comparable skill, experience and reputation. *Geier v. Sundquist,* 372 F.3d 784, 796-797 (6th Cir.2004) *(citing Geier v. Sundquist,* 227 F.Supp.2d 881, 886 (M.D .Tenn.2002)). It is the burden of the fee applicant to submit evidence supporting the number of hours expended and the hourly rates claimed. *Hensley,* 103 S.Ct. at 1940.

Although Plaintiffs cite *Sandusky v. Blackwell* to support the reasonableness of their fee requests, Chief Judge Carr characterized the issues in the *Sandusky* case as being "novel and difficult" unlike the routine issues in this case. 361 F.Supp.2d at 697. As previously discussed, litigators with twenty six years of experience and stellar reputations as litigation counsel for specialities were awarded attorney fees within a range of $175 to $250 per hour. *Cox v. Sandusky City Schools,* Case No. 3:00 CV 7657, Docket No. 158.

**\*7** While Mr. Dunn's resume boosts an impressive academic background, he was admitted to the Ohio bar in May, 2002; therefore, he has less than five years of experience as a practicing attorney (Docket No. 25). Based upon his experience level and the nature of this case, the Magistrate finds that a fee of $175 per hour is more reasonable for his work in Genesis Dreamplex.

### Mr. Dunn's Hours

Plaintiffs claim that Mr. Dunn expended 13.82 hours in preparing their case for trial. Defendant argues that the time spent on April 6, 2005 to review the Complaint, sign it, make copies and place it in a file are excessive. Plaintiff states that the Complaint contains a "list of 24 barriers to access and ADA violations that are specific to the Quality Hotel-Genesis."

After review of the Complaint, the court examined Complaints from the other cases filed by Plaintiff, in particular Case No. 3:04CV7137, *Disabled Patriots v. Suemar Realty,* and Case No. 1:04-CV-00538, *Disabled Patriots of America, Inc. v. Lane Toledo.* The Court finds the Complaint to be very similar to the Complaints in the cases listed above. The two hours claimed by Mr. Dunn for such review is excessive and reduced by 30% or .6 hours.

According to Defendant, Mr. Dunn expended several hours performing clerical duties. Plaintiff's reply does not address this issue. Mr. Dunn performed such duties as preparing a case file, mailings, filing and faxes on the following dates: April 6, July 21, August 11, August 15, August 22, September 8, October 24, and November 22, 2005; and January 27 and January 31, 2006.

This Court has previously found that "clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." *Cleveland Area Bd. of Realtors v. City of Euclid,* 965 F.Supp. 1017, 1022 ("attention to file and setting up of litigation files ... fax[ing]" are considered to be secretarial tasks and cannot be billed at attorney rates) *(citing Missouri v. Jenkins,* 491 U.S. 274 (1989)). To remedy this improper designation, the court in *Cleveland Area Bd. of Realtors* deducted 2% from the amount of fees requested. *Id.* The Magistrate adopts this district court precedent and reduces the time spent to review the Complaint to one hour and the time spent performing clerical tasks by 2%. There were 7.04 hours expended completing clerical tasks. Such amount reduced by 2% totals a deduction of .14 hours.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3965 Filed 07/12/16 Page 42 of 117
Disabled Patriots of America v. Genesis Dreamplex, LLC, Not Reported in F.Supp.2d...

2006 WL 2404140

Defendant also contends on June 17, and August 15, 2005 there were several discrepancies with listed time by Plaintiffs' counsel. Specifically, the overall time spent and hours listed by co-counsel do are inconsistent. Plaintiffs do not address this claim in their reply.

Upon review of Mr. Dunn's and Mr. Fuller's tasks and hours, the Court finds that on August 15, 2005 the tasks listed are inconsistent. The inspection lasted 1.5 hours in one request and two hours in another. The Court strikes the additional 0.05 hour. Equally, time spent claimed on June 17, 2005 for an inspection is excessive and reduced by 30%.

| Date | Time Spent |
|------|-----------|
| June 17, 2005 | 0.50 |
| August 15, 2005 | 2.0 |

Total Reduction: 2.5 x 40% = 1.54 hours

**\*8** In conclusion, the Magistrate disallows 2.33 of the hours requested by Plaintiffs for work performed by Mr. Dunn. Accordingly, of the 13.82 hours requested, Plaintiffs are entitled to fees for 11 .49 hours.

### *II. Costs*

*Expert Fees*

Plaintiffs claim that all hours expended by the expert, Dave Pedraza are reasonable. Defendant argues that the hours spent are unreasonable and inadequately cited.

In any action commenced pursuant to the ADA, the prevailing party may recover reasonable fees paid to an expert witness. 42 U.S.C. § 12205 (Thomson/ West 2005). Mr. Pedraza is a certified contractor by the State of Florida and is President and Registered Agent of ADA Compliance Team. *See Disabled Patriots v. Taylor Inn Enterprises, supra,* 424 F.Supp.2d at 967 fn. 2. He has extensive experience particularly as it relates to modification of existing buildings to accommodate disabled persons; however, the Court takes issue with the invoices submitted by the ADA Compliance Team. The descriptions of tasks and the amount of time spent on each task are minimal at best. First, the invoice states "Travel to and from location to perform additional ADA inspection." (Docket 25, Exhibit 12). The Court cannot ascertain if this is travel to and from Florida or travel limited to the Toledo area. Second, none of the items on the invoice give detail as to how much time each task took.

The Court is unable to determine if sending Mr. Pedraza from Florida twice to inspect a hotel in Ohio is reasonable. His account for time spent inspecting the property site is ambiguous and lacks the necessary specificity for the Court's evaluation of reasonableness. Therefore, if the travel time recorded is travel to and from Florida, the Court finds this request for travel to be unreasonable. Accordingly, this Court adopts the hourly rate awarded by the United States District Court in Southern Michigan and finds that a more reasonable hourly rate for Mr. Pedraza is $100. *See Id.* at 967.

| | |
|---|---|
| Expert Fee February 8, 2005 | 17 hours x $100 per hour |
| Expert Fee August 31, 2005 | 17 hours x $100 per hour |
| Total | 34 hours, $3400 |

*Additional Costs*

Plaintiffs contend that the amount requested for costs is reasonable. Defendant argues Plaintiffs did not substantiate costs requested. Specifically, Defendant points to the March 18, 2005 title search, the March 18, 2005 re-inspection fee to disability group, the April 11, 2005 service of process and multiple telephone, postage, long distance faxing, courier service, photocopying and filing.

Disabled Patriots of America v. Genesis Dreamplex, LLC, Not Reported in F.Supp.2d...

2006 WL 2404140

After reviewing the documents submitted by Plaintiff, the court agrees with Defendant regarding the re-inspection fee to a disability group. Defendant states that this fee is a cost for re-inspection of the premises. However, the court finds that this re-inspection fee is not listed on Mr. Pedraza's invoice. Also, there are no other presented reasons why this cost was listed, who the disability group was and why they billed $750 for a re-inspection fee. Therefore, the $750 for a re-inspection fee to disability group is stricken. The remainder of costs, $886.16, listed by Plaintiffs appears to be reasonable given the twelve months spent on the case and the nature of the case (Docket No. 34, Exhibit 1, pp. 4-6).

**\*9** In conclusion, Plaintiffs' Motion for Attorney Fees is granted. Plaintiffs are awarded attorney fees and costs as follows: $11,327.25 for Mr. Fuller, $2,010.75 for Mr. Dunn, expert costs of $3,400 and other costs of $886. The total award to Plaintiffs is $ 17,764.

IT IS ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2404140

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3967 Filed 07/12/16 Page 44 of 117
Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)

2009 WL 917737

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Lavin v. Brunner, N.D.Ohio, February 12, 2013

2009 WL 917737

Only the Westlaw citation is currently available.

United States District Court,
N.D. Ohio,
Eastern Division.

PROJECT VOTE, et al., Plaintiffs,

v.

J. Kenneth BLACKWELL, et al., Defendants.

No. 1:06–CV–1628.
|
March 31, 2009.

**Attorneys and Law Firms**

Donald J. McTigue, Mark A. McGinnis, McTigue Law Group, Columbus, OH, Brian W. Mellor, Dorchester, MA, Ezra W. Reese, Karl J. Sandstrom, Perkins Coie, Devlin Willis, Elliott M. Mincberg, People for the American Way Foundation, Washington, DC, Wendy R. Weiser, New York University School of Law, New York, NY, for Plaintiffs.

Damian W. Sikora, Richard N. Coglianese, Office of the Attorney General-Constitutional Offices, Columbus, OH, for Defendants.

*MEMORANDUM & ORDER*

KATHLEEN McDONALD O'MALLEY, District Judge.

**\*1** Pending before the Court is *Plaintiffs' Motion for Costs and Attorneys' Fees* (Doc. 63). For the reasons articulated below, the Court ***GRANTS IN PART*** Plaintiffs' motion and concludes that Plaintiffs are entitled to ***an award of attorneys' fees in the amount of $312,925.00*** and ***an award of costs in the amount of $8,560.28*** for ***a total award of $321,485.28.***

## I. BACKGROUND

## A. THE UNDERLYING LITIGATION—PLAINTIFFS SECURED A PRELIMINARY AND PERMANENT INJUNCTION PROHIBITING ENFORCEMENT OF THE CHALLENGED PROVISIONS OF OHIO VOTER REGISTRATION LAW

Plaintiffs are various civic organizations, and their individual members, who are engaged in voter registration activities throughout Ohio. The current Defendants are Ohio Secretary of State Jennifer Brunner and Ohio Attorney General Richard Cordray. [1]

[1]  Defendant Cordray, as the successor to now-former Ohio Attorney General Marc Dann, is automatically substituted as a party in this action under Rule 25(d) of the Federal Rules of Civil Procedure. Defendant Brunner similarly entered this case *via* substitution as the successor to former Ohio Secretary of State J. Kenneth Blackwell. (Court's July 17, 2007 Order.) This case also previously included Defendants William D. Mason (Cuyahoga County Prosecutor) and Sherri Bevan Walsh (Summit County Prosecutor). By agreement of the parties, Plaintiffs' claims against those Defendants were dismissed without prejudice. (Court's August 1, 2007 Order.)

On July 6, 2006, after substantial efforts to achieve an administrative resolution outside of court failed, Plaintiffs filed an eight-count Complaint (Doc. 1), alleging that recent amendments to the Ohio Election Code unlawfully impacted third-party voter registration efforts in Ohio and hindered low-income, minority, and disabled citizens from registering to vote. Specifically, Plaintiffs challenged the validity of various portions of Ohio Revised Code §§ 3503.14, 3503.19, 3503.28, 3503.29, and 3599.11. These sections were codified in Title 35 (titled "Elections") of the Ohio Revised Code by what the parties referred to as "House Bill 3." In sum, Plaintiffs claimed that House Bill 3's modifications and/or additions to the Ohio Election Code, and the implementing regulations enacted by the Ohio Secretary of State, violated the First and Fourteenth Amendments to the United States Constitution, the Voting Rights Act ("VRA"), and the National Voter Registration Act of 1993 ("NVRA").

One week later, on July 13, 2006, Plaintiffs filed a motion for preliminary injunction (Doc. 3), seeking to enjoin Defendants from enforcing any of the challenged legislation and regulations. Defendants opposed Plaintiffs' motion arguing that, among other things, Plaintiffs failed to show that the legislation

Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)

2009 WL 917737

and regulations unduly burdened any protected First Amendment right (Doc. 18).[2] Plaintiffs replied (Doc. 26) by essentially restating the positions asserted in their Complaint and motion. Shortly thereafter, all parties filed voluminous evidentiary materials in support of their respective positions. (*See* Docs. 28–43.) The Court then met with the parties and scheduled a hearing on Plaintiffs' motion for preliminary injunction.

2    With the exception of then-Defendant William D. Mason, Defendants simultaneously (*i.e.,* as part of their opposition papers) moved to dismiss Plaintiffs' Complaint. (Doc. 18.) Briefing on the motion to dismiss proceeded separately. (Doc. 49.)

On September 1, 2006, the Court conducted a preliminary injunction hearing. The parties presented oral arguments with substantial interaction by the Court; they did not present additional evidence. Given the approaching general election, and the Boards of Elections' stated need for relatively immediate guidance (*see* Doc. 46 at p. 78), the Court agreed that the circumstances necessitated an expedited ruling. The Court, therefore, after a lengthy recess to review the record and to consider its ruling, proceeded to deliver a detailed oral ruling at the hearing in which it granted a preliminary injunction to Plaintiffs (*see id.* at pp. 80–103). One week later, on September 8, 2006, the Court issued a 24–page written Order (Doc. 45), which memorialized and supplemented the Court's oral ruling granting the preliminary injunction. In short, the Court held that the challenged portions of Ohio Revised Code §§ 3503.14, 3503.19, 3503.28, 3503.29 and 3599.11 and the Secretary of State's interpretation of those provisions were likely unconstitutional and that certain of those provisions also likely violated the NVRA. (Docs.45, 46.)

**\*2**   Then, in the months that followed, the Court conducted two status conferences with the parties (*see* Docs. 50 and 52). Based on the parties' then-current belief that a resolution could be reached short of continued litigation, the Court referred the parties to mediation (*see* Doc. 52). In mid-June 2007, however, the parties determined that mediation would not be fruitful (*see* Doc. 54) and that the case should proceed toward a judicial resolution.

Several weeks later, on July 13, 2007, Plaintiffs filed a motion for partial summary judgment (Doc. 57), seeking final judgment on six of the eight counts alleged in their Complaint. The parties' briefing on the motion, however,

presented nothing new for the Court's consideration; instead, the parties simply incorporated the evidence and arguments presented in their prior briefs. (Doc. 59 at pp. 4–5; *see also* Docs. 57, 58.) After again reviewing the parties' voluminous filings relative to the motion for preliminary injunction, and upon a further review of the Court's oral and written Orders resolving that motion (Docs.45, 46), the Court entered an Order concluding that Plaintiffs' motion for partial summary judgment should be granted for the same reasons that Plaintiffs' motion for preliminary injunction was granted (Doc. 59). In a separate Order, the Court then entered partial final judgment in favor of Plaintiffs and against Defendants on the six counts advanced in Plaintiffs' motion. (Doc. 60.) Specifically, the Court entered a declaratory judgment that the challenged provisions of the Ohio Revised Code, as well as their accompanying regulations and administrative practices, violated the First and Fourteenth Amendments (Counts I, II, III, VII, and VIII) and the NVRA (Count VI), and the Court permanently enjoined Defendants from enforcing those provisions. (*Id.*)

The remaining two counts of the Complaint that were not litigated in Plaintiffs' motion for partial summary judgment were voluntarily dismissed without prejudice by Plaintiffs (*see* Docs. 49, 59, 65, 66), and the case was eventually closed (*see* Doc. 66).

## B. PLAINTIFFS' PENDING MOTION FOR ATTORNEYS' FEES AND COSTS

In the post-judgment context, Plaintiffs have now filed the pending motion seeking an award for the attorneys' fees and costs incurred in litigating this federal civil rights matter pursuant to 42 U.S.C. §§ 1988(b) and 1973*l* (e). (Doc. 63.) Plaintiffs argue that they are prevailing parties under the statutes and thus entitled to their reasonable attorneys' fees and costs. Plaintiffs request an award of $446,752.00 for attorneys' fees[3] and $10,808.32 in costs[4] for a total award of $457,560.32.[5] In support of their request for fees and costs, Plaintiffs have attached numerous documents to the motion (*e.g.,* declarations,[6] biographies of individuals who worked on the matter, billing time-entries, expenses), stating that they have properly computed the award to which they are entitled. Specifically, with respect to fees, Plaintiffs' request is based on bills for 1,416.45 hours by twenty-one time-keepers (fourteen attorneys, four law clerks/summer associates/

*Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)*

2009 WL 917737

interns, two administrative assistants, and one librarian) from four different firms/advocacy groups at hourly rates ranging from $500.00 to $110.00.

3    Plaintiffs originally requested $450,002.00 for attorneys' fees. (*See* Doc. 63 at pp. 2, 17.) Then, in their reply, Plaintiffs note that two particular billing entries were included in error and should be omitted from the total fee request. (*See* Doc. 68 at p. 12.) Specifically, Plaintiffs conceded that 5 hours should be deducted from Attorney Weiser's time, and 3 hours should be deducted from Attorney Bauer's time. Accordingly, Plaintiffs reduce the total fee request by $3,250 and list $446,752.00 as the total amount requested for attorneys' fees in their reply. (*See id.* at pp. 12, 16.)

4    Plaintiffs state in the text of their motion that the total amount of costs requested is $10,802.59. (*See* Doc. 63 at pp. 2, 17.) Based on the declarations and other supporting materials attached to their motion, however, the Court calculates the actual total amount of costs requested to be $10,808.32.

5    The Court notes that, in addition to the other modification described in previous footnotes, the spreadsheet submitted by Plaintiffs contains a clerical error by omitting Attorney Teresa James' requested fees in Project Votes's total amount requested and thus inaccurately lists Plaintiffs' total requested amount as $452,705.59. (*See* Doc. 63–3.)

6    Defendants state that none of Plaintiffs' "declarations" were properly executed affidavits. (Doc. 67 at p. 16 n. 8.) The Court largely disagrees. First, the declaration submitted by H. Ritchey Hollenbaugh was notarized and is a properly executed affidavit. (Doc. 63–2.) Second, the Court notes that unsworn declarations can be used as evidence if "subscribed ... as true under penalty of perjury and dated" under *28 U.S.C. § 1746*. *Bonds v. Cox, 20 F.3d 697, 702 (6th Cir.1994)*. Therefore, because the declarations submitted by Teresa James, Rayesh Nayak, Renee Paradis, and Wendy Weiser were all "subscribed as true under penalty of perjury and dated," each can be used as evidence under *28 U.S.C. § 1746*. (Docs .63–7, 63–8, 63–9, 63–10.) Likewise, even though the declarations submitted by Karl Sandstrom and Donald McTigue do not technically comply with the requirements of *28 U.S.C. § 1746*, these declarations cite the statute and satisfy the spirit of the rule and thus will be considered as evidence. (Docs.63–4, 63–5, 68–2.) The Court, however, notes

that the "declaration" submitted by Brian Mellor is unsigned. (Doc. 63–6 at p. 3.) Consequently, his "declaration" cannot be used as evidence, and the Court cannot consider his statement. *See Smith v. Jefferson County Sch. Bd., 549 F.3d 641, 657 n. 8 (6th Cir.2008).*

**\*3** Defendants have vigorously opposed Plaintiffs' motion. (Doc. 67.) First, Defendants argue that Plaintiffs' request for attorneys' fees and costs should be denied in its entirety, because the fee application is an attempt to inflate bills and should shock the conscience of the Court. Defendants contend that Plaintiffs' request in this case— nearly a half million dollar fee to pay for more than a dozen attorneys to prepare a case involving no witnesses or discovery—is so unreasonable, excessive, and improper that the Court should deny Plaintiffs' motion outright. Citing a number of specific examples, Defendants assert that Plaintiffs' counsel have over-lawyered the case, billed duplicatively, expended unnecessary amounts of time on simple assignments, included tasks that cannot conceivably be related to the litigation, requested hourly rates that cannot be justified, and asked for "costs" that are not reasonable. As such, Defendants believe that a complete denial of the fee request is more than appropriate. Alternatively, Defendants argue that if fees and costs are awarded, deductions from Plaintiffs' requested amount should be commensurately large.

In response to Defendants' opposition, Plaintiffs have filed a reply and submitted a supplemental declaration. (Doc. 68.) Plaintiffs argue that nothing in the record supports Defendants' allegation that the request was either "grossly and intolerably exaggerated" or "so exorbitant to shock the conscience of the Court" and that, therefore, there is no basis for the complete denial of fees and costs. In particular, Plaintiffs suggest that Defendants' argument is particularly inappropriate given Defendants' agreement, after reviewing Plaintiffs' motion and accompanying documentation, not to request a hearing or seek discovery. Further, Plaintiffs contend that their request for fees and costs is reasonable and should be granted. Specifically, Plaintiffs argue that: (1) Plaintiffs' fee request is justified by the extraordinary results achieved, the complexity of the case, and the novelty of the issues presented; (2) the particular billing time-entries challenged by Defendants are reasonable; (3) Plaintiffs' various counsel each played distinct roles in the litigation; (4) Plaintiffs' proposed hourly rates are

reasonable; and (5) the expenses claimed by Plaintiffs are reasonable and necessary.

Defendants have not sought leave to file a sur-reply or have otherwise responded to Plaintiffs' reply and supplemental declaration. Having received no other filings, the Court now resolves Plaintiffs' pending motion for fees and costs.

## II. DISCUSSION

In resolving Plaintiffs' pending motion, the Court first discusses generally the applicable law regarding awards for attorneys' fees and costs in federal civil rights suits. The Court then applies the applicable law to determine the appropriate award in this case.

### A. APPLICABLE LAW

#### 1. The Federal Civil Rights Fee Shifting Statutes

 **\*4** The federal civil rights fee shifting statutes provide for awards of reasonable attorneys' fees and costs to plaintiffs who prevail in civil rights suits, including suits to enforce First Amendment and voting rights. See 42 U.S.C. § 1973*l* (e) ("In any action or proceeding to enforce the voting guarantees of the Fourteenth or Fifteenth Amendment[s], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs."); 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...."); see also 42 U.S.C. § 1973gg–9(c) (providing for "reasonable attorney fees, including litigation expenses, and costs" for a prevailing party who brings suit under the NVRA). [7]

[7]  Because these fee shifting statutes contain nearly identical language and serve the same Congressional purposes, courts generally construe the sections similarly, and the same standards apply to fees recovered under all three sections. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Nat'l Coalition for Students with Disabilities v. Bush,* 173 F.Supp.2d 1272, 1274 (N.D.Fla.2001).

#### 2. Complete Denial Of Fees Only In Very Limited Circumstances

Accordingly, a prevailing plaintiff in a federal civil rights suit ordinarily should recover reasonable attorneys' fees and costs "unless special circumstances would render such an award unjust." *Hensley,* 461 U.S. at 429 (internal quotations omitted). Several courts have recognized that one special circumstance that justifies a district court's *complete* denial of fees is when the fee request is "so excessive it shocks the conscience of the court." *Scham v. Dist. Courts Trying Crim. Cases,* 148 F.3d 554, 557 (5th Cir.1998) (internal quotations omitted); *see also Fair Hous. Council v. Landow,* 999 F.2d 92, 96 (4th Cir.1993); *Lewis v. Kendrick,* 944 F.2d 949, 957–58 (1st Cir.1991); *Sun Publ'g Co. v. Mecklenberg News, Inc.,* 823 F.2d 818, 819 (4th Cir.1987); *Brown v. Stackler,* 612 F.2d 1057, 1059 (7th Cir.1980). These courts, however, generally have cautioned that the "[t]otal denial of requested fees ... is a stringent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances." *Jordan v. U.S. Dep't of Justice,* 691 F.2d 514, 518 (D.C.Cir.1982) (reversing district court order completely denying request for fees as an abuse of discretion). Further, in the Sixth Circuit, the defendant bears the burden of making a "strong showing" of special circumstances sufficient to warrant denying an award of fees and costs to a prevailing plaintiff. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County,* 421 F.3d 417, 422 (6th Cir.2005) (quoting *Morscott, Inc. v. City of Cleveland,* 936 F.2d 271, 273 (6th Cir.1991) (citation omitted)).

#### 3. The Lodestar Analysis

Once the Court finds that a prevailing plaintiff is entitled to attorneys' fees and costs under the fee shifting statutes, the primary concern with respect to attorneys' fees is that the fee awarded be reasonable. *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999). A reasonable fee is one that attracts competent counsel but avoids producing a windfall. *Id.*

 **\*5** In determining what is a reasonable amount of attorneys' fees, a useful starting point is to determine the "lodestar," which is calculated by multiplying the proven number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.; see also Isabel v. City of Memphis,* 404 F.3d 404, 415 (6th Cir.2004).

*Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)*

2009 WL 917737

When a court is calculating the lodestar, the party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates claimed. *Granzeier v. Middleton,* 173 F.3d 568, 577 (6th Cir.1999) (citing *Hensley,* 461 U.S. at 433). The reasonableness of a claimed hourly rate is determined by reference to the prevailing rate in the relevant market—*i.e.,* the rate that is customarily paid in the community to attorneys of reasonably comparable skill, experience, and reputation —regardless of whether plaintiff is represented by private or nonprofit counsel. *See Johnson v. City of Clarksville,* 256 Fed. Appx. 782, 783 (6th Cir.2007) (citing *Blum v. Stenson,* 465 U.S. 886, 895–96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)); *see also Fuhr v. Sch. Dist. of Hazel Park,* 364 F.3d 753, 762 (6th Cir.2004). In this regard, the Sixth Circuit specifically has found that the relevant market is "the venue of the court of record," rather than a foreign counsel's "geographical area wherein he maintains his office and/or normally practices." *Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir.2000). Moreover, the hourly rate "should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Reed,* 179 F.3d at 472 (quoting *Coulter v. Tennessee,* 805 F.2d 146, 149 (6th Cir.1986)). As the Sixth Circuit has stated, under the federal civil rights fee shifting statutes:

> [Attorneys'] fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $ 250 an hour in a field in which competent and experienced lawyers in the region normally receive $ 85 an hour should be compensated at the lower rate.

*Id.* at 472–73 (quoting *Coulter,* 805 F.2d at 149). And finally, in exercising its discretion to determine a reasonable hourly rate, a district court may consider a party's submissions (*e.g.,* affidavits or declarations from other attorneys or experts), awards in analogous cases, state bar association guidelines, and its own knowledge and experience from handling similar requests for fees. *See Johnson v. Connecticut Gen. Life Ins., Co.,* No. 5:07–CV–167, 2008 U.S. Dist. LEXIS 24026, at *14 (N.D. Ohio Mar. 13, 2008); *Mikolajczyk v. Broadspire Servs., Inc.,* 499 F.Supp.2d 958, 965 (N.D.Ohio 2007); *Barrett v. Detroit*

*Heading, LLC,* No. 05–72341, 2007 U.S. Dist. LEXIS 41555, at *25–26 (E.D. Mich. June 7, 2007); *Ousley v. Gen. Motors Ret. Program for Salaried Employees,* 496 F.Supp.2d 845, 850 (S.D.Ohio 2006) (citing *Coulter,* 805 F.2d at 149–50).

**\*6** Similarly, the party seeking attorneys' fees also bears the burden of proving the number of hours reasonably expended on the litigation. *Granzeier,* 173 F.3d at 577 (citing *Hensley,* 461 U.S. at 433). Counsel for the prevailing party must make a good faith effort to exclude from a fee application hours that are "excessive, redundant, or otherwise unnecessary," just as an attorney in private practice is expected to use "billing judgment" before submitting a bill to a client, and the district court should exclude any such hours improperly submitted. *Hensley,* 461 U.S. at 434. Further, sufficient documentation must be offered in support of the hours charged, *i.e.,* the documentation "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods.,* 515 F.3d 531, 553 (6th Cir.2008) (noting that "counsel need not record in great detail each minute he or she spent on an item," but indicating that "the general subject matter should be identified") (internal quotations omitted). Where reductions to the requested number of hours reasonably expended on the litigation are appropriate, a court has the discretion to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous. *See Auto Alliance Int'l, Inc. v. U.S. Customs Serv.,* 155 Fed. Appx. 226, 228 (6th Cir.2005) (affirming the district court's reduction of the fee award by 25% for general excessiveness in billing); *Hudson v. Reno,* 130 F.3d 1193, 1209 (6th Cir.1997) (applying across-the-board reduction of 25% for duplication), *overruled on other grounds by Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001); *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir.1994) ( "Where fee documentation is voluminous ... an hour-by-hour review is simply impractical and a waste of judicial resources."); *Coulter,* 805 F.2d at 152 ("Where duplication of effort is a serious problem, as in this case, the District Court may have to make across the board reductions by reducing certain items by a percentage figure, as Judge Morton did here in reducing this item by 50%"); *Hisel v. City of Clarksville,*

No. 3:04–0924, 2007 U.S. Dist. LEXIS 71766, at *6–16 (M.D.Tenn. Sept. 26, 2007) ("While cutting hours may appear arbitrary, it is an essentially fair approach ..., and an across-the percentage cut is a practical means of trimming the fat from a fee application.") (internal citations and quotations omitted); *see also Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n,* No. 1:98–CV–479, 2008 U.S. Dist. LEXIS 25640, at *14–15 (W.D.Mich. Mar. 31, 2008).

Then, after a court determines the proper lodestar amount, that amount can be adjusted (*i.e.,* enhanced or reduced by a multiplier) based on a twelve-factor test for assisting in the determination of the reasonableness of an application for attorneys' fees. *Reed,* 179 F.3d at 471–72 & n. 3 (noting that these factors were "enunciated by the Fifth Circuit in *Johnson v. Georgia Hwy. Express, Inc.,* 488 F.2d 714 (5th Cir.1974),* and adopted by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 432, 103 S.Ct. 1933, 76 L.Ed.2d 40 ... (1983)") (hereinafter, the "twelve *Johnson* factors").[8] These twelve *Johnson* factors are as follows:

[8]     Although the Supreme Court has recognized that the twelve factors "are usually subsumed with the initial calculation of hours reasonably expended at a reasonable hourly rate," a court should still address the relevant factors after the lodestar analysis. *Hensley,* 461 U.S. at 434 n. 9.

**\*7** (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* (quoting *Johnson,* 488 F.2d at 717–19). Of the twelve *Johnson* factors, the "results obtained" factor is "highly important." *Adcock–Ladd,* 227 F.3d at 349 (citing *Hensley,* 461 U.S. at 435–36). In fact, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 349–50 (quoting *Hensley,* 461 U.S. at 435). There is, however,

"a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *see also Bldg. Serv. Local 47 Cleaning Contr. Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir.1995).

**4. Costs And Expenses**

In addition to fees, a court also must consider the reasonable amount of costs to be awarded a prevailing plaintiff under the fee shifting statutes. The Sixth Circuit has explained that there are two types of expenses recoverable by prevailing parties in civil rights litigation:

There are two separate sources of authority to award out-of-pocket expenses. Some expenses are included in the concept of attorney's fees, as "incidental and necessary expenses incurred in furnishing effective and competent representation," and thus are authorized by [42 U.S.C.] § 1988.... The authority granted in section 1988 to award a reasonable attorney's fee includes the authority to award those reasonable out-of-pocket expenses incurred by the attorney, which are normally charged to a fee-paying client in the course of providing legal services.... Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of section 1988....

Other costs are on a different footing. These include those costs incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees.... These include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps.... Most of these expenses have long been recoverable in the court's discretion, as costs pursuant to 28 U.S.C. § 1920....

*Northcross v. Bd. of Educ. of Memphis City Sch.,* 611 F.2d 624, 639 (6th Cir.1979) (citations omitted); *see also Sigley v. Kuhn,* No. 98–3977/99–3531, 2000 U.S.App. LEXIS 1465, at *23–26 (6th Cir. Jan. 31, 2000).

**5. District Court's Discretion**

**\*8** And finally, it is worth noting that in awarding attorneys' fees and costs under the federal civil rights fee shifting statutes, a district court's decision is reviewed for an abuse of discretion, and the district court's "exercise of discretion is entitled to substantial deference because

*Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)*

2009 WL 917737

the rationale for the award is predominantly fact-driven." *Imwalle,* 515 F.3d at 551.

**B. APPLICATION**

Here, Defendants do not contest that Plaintiffs are "prevailing parties" under the federal civil rights fee shifting statutes. *See* 42 U.S.C. §§ 1988(b) and 1973*l* (e). Defendants also do not contest that Plaintiffs' counsel have obtained anything less than "excellent results." *See Adcock–Ladd,* 227 F.3d at 349–50 (quoting *Hensley,* 461 U.S. at 435). Instead, as noted, Defendants challenge Plaintiffs' request for fees and costs, by arguing that the request is so unreasonable, excessive, and improper that it should be denied *in toto.* Alternatively, Defendants contend that if fees and costs are awarded, the Court should impose significant reductions.

As explained in more detail below, the Court declines to deny the request for fees and costs *in toto,* but exercises its discretion to reduce Plaintiffs' requested award in light of the applicable law and a thorough review of the parties' submissions.

**1. Complete Denial Of Fees And Costs Is Inappropriate**

Defendants primarily argue that Plaintiffs' request for fees and costs should be denied in its entirety, because the fee application—both on its face and with respect to repeated specific instances of double billings, inflated hours, improper charges, and exorbitant and unsubstantiated proposed hourly rates—should shock the conscience of the Court. In support of this argument, Defendants first point to a litany of examples from the record and contend that: (1) it is beyond question that this case was "over-lawyered" and that 1,416.45 hours of work in this case with no discovery and relatively little filings is patently "absurd"; (2) a close inspection of the fee application demonstrates that Plaintiffs' counsel billed duplicatively, expended unnecessary amounts of time on simple assignments, included tasks that cannot conceivably be related to the litigation, and asked for "costs" that are not reasonable; and (3) Plaintiffs have requested hourly rates that cannot be justified. Defendants then cite to a number of cases generally standing for the proposition that a *complete* denial of a fee request is appropriate if the request is grossly and intolerably exaggerated, manifestly filed in bad faith, or wholly undocumented. *Jordan,* 691 F.2d at 518; *see also, e.g., Budget Rent–A–Car Sys., Inc. v. Consol. Equity LLC,*

428 F.3d 717 (7th Cir.2005); *Scham,* 148 F.3d at 557; *Fair Housing Council,* 999 F.2d at 96; *Lewis,* 944 F.2d at 957–58; *Sun Publ'g Co.,* 823 F.2d at 819; *Brown,* 612 F.2d at 1059; *Mendez v. County of San Bernardino,* No. CV 04–7131 GPS (RCx), 2007 U.S. Dist. LEXIS 75495, at * 1–4 (C.D.Cal. May 21, 2007).

**\*9** The Court, however, rejects Defendants' argument. While Defendants raise a number of valid concerns and Plaintiffs' fee application is lacking in some respects, the circumstances here do not justify the "stringent sanction" that Defendants seek, but instead direct the Court to reduce—not deny—the requested award. *Jordan,* 691 F.2d at 518, 521 ("To decline any fee award whatsoever simply because of doubts on parts of the claim is, in any but the most severe of cases, a failure to use ... discretion."). As Defendants do not dispute, Plaintiffs' counsel achieved "excellent results"—indeed, Plaintiffs secured all the relief that they sought in their Complaint: a declaratory judgment and a preliminary and permanent injunction prohibiting enforcement of the challenged provisions of Ohio registration law. This alone suggests that Plaintiffs' counsel should recover their requested fee. *See Adcock–Ladd,* 227 F.3d at 349–50 (quoting *Hensley,* 461 U.S. at 435). Further, Plaintiffs' counsel were forced to achieve these results on an expedited basis—in part because of the now-former Ohio Secretary of State's interpretation of the challenged provisions—by presenting a novel theory in a previously undeveloped area of election law. And finally, this is not a case where a party has failed to proffer *any* substantiation, as Plaintiffs' counsel has submitted multiple declarations, billing records, and other documents attached to their motion, demonstrating a significant effort to account for each hour spent working on this matter and to otherwise show that they are entitled to the requested award.

As such, the cases Defendants cite are easily distinguishable. In fact, the Court notes that the Central District of California's decision to deny an award entirely in *Mendez*—cited by Defendants for the proposition that it was unconscionable to bill over 2,500 hours to prepare for and try a case that only took a few days to try (*see* Doc. 67 at pp. 10–11)—has since been reversed by the Ninth Circuit and is particularly instructive. *Mendez v. County of San Bernardino,* 540 F.3d 1109, 1124–30 (9th Cir.2008). In its decision, the Ninth Circuit aptly discussed many of the same cases that Defendants argue are applicable here, concluding that those courts have denied a fee

Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)

2009 WL 917737

request in only two limited circumstances—in cases where the request appeared to be made in bad faith or where the plaintiff made no effort to eliminate time spent on unsuccessful claims:

> Those courts of appeals that have upheld a denial of fees under the "shocks the conscience" test have done so only where the fee request appeared to have been made in bad faith, such as billing outrageous numbers of hours on simple matters, or where the plaintiff made no effort to eliminate hours spent on unsuccessful, unrelated claims. In the **first** category are cases such as *Brown,* where the Seventh Circuit denied all fees to an attorney who submitted a request for 800 hours of billable time, even though his work consisted of filing a six-page complaint and then simply await[ed] the outcome of pending litigation in the Supreme Court that "almost automatically ... disposed of the case." 612 F.2d at 1059. Similarly, in *Scham,* the Fifth Circuit upheld a total denial of fees where an attorney billed 936 hours for a case where "discovery was limited, and there were no meetings of the parties or attorneys, no settlement negotiations, no mediation, no court appearances, and no trial." 148 F.3d at 558. The counsel in *Scham* was also a solo practitioner with one year of experience, who nonetheless requested $750 per hour for his time. *Id.* Therefore, in both of these cases, it was altogether improbable that any attorney could have reasonably expended such hours in good faith on matters so simple. Falling into the **second** category are cases such as *Fair Housing Council,* 999 F.2d 92, where the Fourth Circuit upheld a denial of fees to a prevailing plaintiff who made no effort to eliminate large numbers of hours spent on unsuccessful, unrelated claims. In that case, plaintiffs brought separate claims for housing discrimination and breach of contract, succeeding only on their breach of contract claim. *See id.* at 95. Although the housing discrimination and contract claims were not related—and the discrimination claim was by far the more complex of the two to litigate—the plaintiffs nonetheless submitted a request for $537,113 in fees for the entire litigation, with billing entries that "failed to allocate the fees attributable to each claim." *Id.* The First Circuit similarly upheld the denial of fees in *Lewis v. Kendrick,* 944 F.2d 949, 957–58 (1st Cir.1991), where plaintiffs achieved only minor success and yet "made no reduction for claims" that had "no relation" to the victorious claim.

**\*10** *Id.* at 1127 (emphasis added). The Ninth Circuit distinguished those cases and found that there was no evidence that the plaintiff's fee request was either made in bad faith or contained excessive hours spent on unrelated claims and thus found nothing in the request that would "shock the conscience" of the court, such as was present in cases like *Scham, Brown, Lewis,* and *Landow. Id.* at 1128.

Similarly, here, while the Court again recognizes that Defendants properly raise several questions regarding some deficient aspects of Plaintiffs' fee application (which are all addressed in detail below), the Court finds that there is no evidence that the request was made in bad faith, and, further, the request could not have contained any excessive hours spent on unrelated, unsuccessful claims because Plaintiffs' counsel has obtained all of the benefits Plaintiffs sought by bringing this suit. In short, therefore, the Court determines that, like the request in *Mendez,* and unlike the requests in cases like *Scham, Brown, Lewis,* and *Landow* and the other cases Defendants cite, Plaintiffs' fee request does not "shock the conscience" of the Court and should not be denied in its entirety. Quite simply, Defendants have not met their burden of making a "strong showing" of special circumstances sufficient to warrant denying an award, *Deja Vu of Nashville, Inc.,* 421 F.3d at 422. Despite any reductions that should (and will) be made to Plaintiffs' fee request, moreover, a complete denial of fees in this case would not be a "fair result with far-reaching positive consequences" (Doc. 67 at p. 11), but instead would frustrate the purpose of the federal civil rights fee shifting statutes, which is to encourage socially productive litigation like the instant lawsuit, *see Cleveland v. Ibrahim,* 121 Fed. Appx. 88, 91 (6th Cir.2005). Plaintiffs achieved a significant civil rights victory in an area of law that was anything but simple, which ultimately allowed them to register thousands of new voters in time for the November 2006 elections; their counsel should be awarded attorneys' fees and costs under the fee shifting statutes.

**2. The Court Reduces Plaintiffs' Requested Award**
Having found that Plaintiffs are entitled to attorneys' fees and costs under the federal civil rights fee shifting statutes, the Court next must address what constitutes a reasonable award and whether Plaintiffs are entitled to their full request. In this regard, the Court will first examine the reasonable amount of fees to be awarded and then will consider the reasonable amount of costs to be awarded.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3975 Filed 07/12/16 Page 52 of 117
Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)

2009 WL 917737

#### a. Attorneys' Fees

In determining what is a reasonable amount of attorneys' fees here, the Court first calculates the lodestar by multiplying the proven number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Reed,* 179 F.3d at 471. The Court then will analyze whether an adjustment of the lodestar should be made in light of the twelve *Johnson* factors.

#### i. Reasonable Hourly Rates

**\*11** Under the lodestar approach, the first step in the analysis is to determine the reasonable hourly rate. This is determined with respect to those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 895–96; *see also Reed,* 179 F.3d at 471. Courts will frequently award fees based on an attorney's customary rate, because "normal billing rates usually provide an efficient and fair short cut for determining the market rate." *Dowling v. Litton Loan Servicing, LP,* No. 05–CV–098, 2008 U.S. Dist. LEXIS 31669, at \*3–4 (S.D.Ohio Mar. 31, 2008) (citing *Hadix v. Johnson,* 65 F.3d 532, 536 (6th Cir.1995)). This analysis becomes more complicated, however, where, as is generally the case here, the attorneys do not usually practice within the jurisdiction in which they seek fees. *Compare Adcock–Ladd,* 227 F.3d at 350 ("When a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit.... [T]he 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices.") *with Berry v. School Dist.,* 703 F.Supp. 1277, 1283 (W.D.Mich.1986) ("A national market or a market for a particular legal specialization may provide the appropriate market.") (citing *Louisville Black Police Officers Organization v. City of Louisville,* 700 F.2d 268, 277 (6th Cir.1983)). [9] Regardless, as noted, the party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates requested. *Granzeier,* 173 F.3d at 577.

[9] This is not, of course, to say that the ordinary rate charged by those attorneys can not be probative. For example, if the most highly compensated partners in Chicago charge $650.00 an hour and the most highly compensated partners in Cleveland charge $550.00 an hour, a Chicago attorney's testimony that her normal hourly rate was $650.00 an hour might strongly support a court's determination that her hourly rate for work performed in Cleveland should be $550.00 an hour.

Here, Plaintiffs request the following hourly rates:

| Organization | Name | Title | Requested Hourly Rate |
|---|---|---|---|
| *Brennan Center for Justice* | | | |
| | Wendy Weiser | Partner | $350.00 |
| | Renee Paradis | Counsel (2003) | $235.00 |
| | Raj Nayak | Counsel (2003) | $235.00 |
| | Margaret Chen | Administrative Assistant | $140.00 |
| | Heather McGhee | Intern | $140.00 |

Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)

2009 WL 917737

|  | John Infranca | Intern | $140.00 |
| --- | --- | --- | --- |
| **McTigue Law Group** | | | |
|  | Donald J. McTigue | Partner | $450.00 |
|  | Mark A. McGinnis | Associate (2003) | $250.00 |
| **Project Vote** | | | |
|  | Teresa James | Counsel | $200.00 |
| **Perkins Coie** | | | |
|  | Robert Bauer | Partner | $500.00 |
|  | Karl Sandstorm | Of Counsel | $500.00 |
|  | Marc Elias | Partner | $375.00 |
|  | Scott Gingold | Associate (1998) | $250.00 |
|  | Ezra Reese | Associate (2002) | $240.00 |
|  | Patricia Alexander | Associate (2005) | $175.00 |
|  | Kerri–Ann Anderson | Summer Associate | $155.00 |
|  | Susan Cochard | Librarian | $175.00 |
|  | Christopher Johnson | Summer Associate | $155.00 |
|  | Lauren Lowe | Associate (2005) | $175.00 |

**\*12** (Doc. 63–3.) [10] In making these requests, Plaintiffs contend that the rates are consistent with the rates charged by attorneys with comparable litigation experience in Ohio (Doc. 63 at p. 14) and cite the attached declaration of H. Ritchey Hollenbaugh in support (Doc. 63–2). Plaintiffs do not assert that these rates represent the attorneys' normal hourly rates, but instead explicitly note that many of the attorneys, given their extensive experience and qualifications, could command even higher rates. (Doc. 63 at p. 14.) Further, while Plaintiffs suggest that courts are "free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases," *Louisville Black Police Officers Org., 700 F.2d at 278,* Plaintiffs do not argue that "out-of-town specialist" rates are being requested or were supplied to

this Court, *see Hadix,* 65 F.3d at 535 (setting forth a two-part inquiry when fees are sought for an out-of-town specialist).

10    The Court does not include Plaintiffs' requested hourly rate for Attorney Brian Mellor from Project Vote. As noted, *supra,* Attorney Mellor did not sign his "declaration," and the Court cannot consider his unsworn statement. (Doc. 63–6 at p. 3.) Because of the absence of any competent evidence regarding Attorney Mellor's requested hourly rate or the reasonableness of the number of hours he expended on the litigation, the Court cannot award Plaintiffs any fees for the time that Attorney Mellor may have reasonably spent on this matter, and this amount will be reduced from Plaintiffs' requested amount. *See Granzier,* 173 F.3d at 577 (noting that the burden of proof is on the party seeking fees).

    Similarly, the Court does not include Plaintiffs' requested hourly rate for Ellen Hepner of Perkins Coie, because Plaintiffs did not submit a biography for Ms. Hepner. (*See* Doc. 63–4.) Accordingly, the Court has no basis to confirm or deny the reasonableness of her requested rate. The Court does note that, based on the billing records submitted, it appears that Ms. Hepner may be a librarian, but that cannot be confirmed. (*Id.* at p. 20 .)

As an initial matter, upon a review of the requested hourly rates, the Court notes that it was somewhat concerned to realize that many of the rates requested by Plaintiffs are quite similar to the rates deemed reasonable for those practicing before courts in the District Court for the District of Columbia. *See Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983) (establishing the "Laffey Matrix," now frequently used to determine presumptively reasonable fees in Washington, D.C.); http:// www.laffeymatrix.com (last visited Mar. 30, 2009) (containing the current Adjusted Laffey Matrix); *see also Wade v. Kroger Co.,* No. 3:01CV–699, 2008 U.S. Dist. LEXIS 97200, at *31–32 (W.D.Ky. Nov. 20, 2008) (explaining that this on-line Laffey Matrix contains higher hourly rates than the Laffey Matrix maintained by the United States Attorney's Office for the District of Columbia). Although by no means dispositive, this does raise a number of flags for the Court. Election law, of course, is a difficult and worthy field, but there is no evidence before the Court that it is one known to command abnormally high billing rates. *See Luessenhop v. Clinton County,* 558 F.Supp.2d 247, 261 (N.D.N.Y.2008) (noting the award of an hourly rate of $225 in a

"complicated election law case" to a lawyer whose practice was described as "unique"); *cf. Bryant v. Nighbert,* No. 03–183, 2005 U.S. Dist. LEXIS 37131, at *9 (E.D.Ky. Sept. 14, 2005) ("[A] reasonable rate is one which will attract qualified and competent counsel but will not produce a windfall to the attorneys.") (citing *Northcross,* 611 F.2d at 638).

Accordingly, in light of the seemingly high hourly rates requested by Plaintiffs—particularly given the similarity of those rates to the reasonable rates for one of the most profitable jurisdictions in which to practice law—and the absence of any request for "out-of-town specialist" rates, Plaintiffs must demonstrate why their requested rates are reasonable here in the Northern District of Ohio. *See Blackmore v. Misner,* No. 1:02–CV–33, 22005 U.S. Dist. LEXIS 25882, at *5 (W.D.Mich. Oct. 20, 2005) ("It is the burden of the attorney seeking compensation to provide 'evidence supporting the hours worked and rates claimed.' ") (quoting *Hensley,* 461 U.S. at 433).

**\*13** After a thorough review of the parties' submissions, the Court finds that Plaintiffs have not met their burden. First, while the Court recognizes that Hollenbaugh's declaration is competent evidence submitted in support of Plaintiffs' request by a well-regarded Ohio expert in fee matters, with whose work the Court is familiar, the Court notes several deficiencies with the declaration and is not fully persuaded by his opinion. For example, Defendants are correct that Hollenbaugh's declaration is vague and conclusory, asserting that he has "reviewed the attorney declarations and itemized time records submitted in support of Plaintiffs' Motion for Attorneys' Fees in this case" and that it is his opinion that "the rates set forth in each of the declarations and attachments are reasonable for the nature of the legal action and based on the varying levels of experience of the attorneys involved." (Doc. 63–2.) There is no indication exactly what declarations or attachments Hollenbaugh reviewed, and upon close inspection, the Court notes that, given that he executed his declaration on March 21, 2008 (*id.*), Hollenbaugh could not have reviewed the declarations submitted by Attorneys McTigue, Nayak, Paradis, and Weiser, which were all executed after March 21, 2008 (Docs.63–5, 63–8, 63–9, 63–10). Further, the Court believes that Hollenbaugh's declaration does not adequately address the relevant legal inquiry: whether Plaintiffs' requested rates represent the prevailing market rates for lawyers of similar skill and reputation here in the Northern

District of Ohio. Accordingly, while the Court does provide some deference to Hollenbaugh's affidavit, out of deference to this substantial experience in the area, the Court ultimately does not attach significant weight to the submission. *See Rau v. Apple–Rio Mgmt. Co.,* 1:97–CV–2345, 2000 U.S. Dist. LEXIS 20395, at *11–12 (N.D.Ga. Mar. 29, 2000) ("[T]he weight the court gives to [this] affidavit is diminished by [the affiant's] failure to ... opine that the requested hourly rates of the plaintiff's attorneys are the prevailing rates for attorneys of their caliber for similar services in the Northern District of Georgia."); *Accord LeTourneau v. Pan Am Fin. Servs.,* No. 97–3543, 1998 U.S.App. LEXIS 20885, at *12–13 (7th Cir. Aug. 21, 1998) (reversing a district court who awarded fees based only on a "self-serving" affidavit attesting that such fees were "reasonable"); *cf. Small v. Richard Wolf Med. Instruments Corp.,* 264 F.3d 702, 706 (7th Cir.2001) (affirming a district court that lowered billing rates after concluding that a supporting affidavit was unpersuasive).

Plaintiffs also are unpersuasive in their attempt to analogize to another recent case in this district. Plaintiffs point this Court to an affidavit filed in another election law action in this district. *See Boustani v. Blackwell,* No. 06–CV–2065 (N.D.Ohio 2006). That affidavit, however, did not opine on these attorneys or this case, did not address the appropriate hourly rate for summer associates, administrative staff, or of counsel, and was not actually relied upon by that court. (*Boustani,* No. 06–CV–2065, Docs. 23–4, 41.) For these reasons, while the Court notes and carefully considers that affidavit as well, the Court certainly does not consider it binding.

**\*14** Therefore, on this record, which is devoid of any evidence that Plaintiffs' requested hourly rates are reasonable in the Northern District of Ohio, that this particular case should be judged with reference to a national market or an "out-of-town specialist," or that the requested rates are what these particular attorneys ordinarily charge for their services, the Court cannot conclude that the Plaintiffs have met their burden of demonstrating that such high hourly rates are proper. In reaching this conclusion, the Court is mindful that "[t]he statutes use the words 'reasonable' fees, not 'liberal' fees." *Coulter,* 805 F.2d at 149 ("Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate."); *Robinson v. City of*

*Edmond,* 160 F.3d 1275, 1288 (10th Cir.1998) ("Fee-shifting statutes ... do not permit an award of fees charged by 'the best attorneys that money can buy' if those rates exceed the prevailing market rate for similar services."); *Gratz v. Bollinger,* 353 F.Supp.2d 929, 947–948 (E.D.Mich.2005) ("[Section] 1988 only guarantees civil rights plaintiffs 'competent counsel.' "). *But see Cmtys. for Equity,* 2008 U.S. Dist. LEXIS 25640, at *34 ("[E]specially in cases involving particularly complex issues ... [a] national market or a market for a particular legal specialization may provide the appropriate market.") (citation omitted). The Court has, accordingly, relied on its own experience; a careful review of all the parties' filings, including the declarations and submitted attorney biographies; and the Ohio State Bar Association 2007 Publication entitled "The Economics of Law Practice in Ohio" to set the appropriate hourly rates in this case. *Accord Barrett,* 2007 U.S. Dist. LEXIS 41555, at *25–26 (consulting the State Bar Association and relying on the court's own experience in determining a reasonable fee).

As such, the Court will apply the following hourly rates [11] in this case:

[11] The Court notes that it reduced the hourly rates for associates far more than for the partners with substantial relevant experience. This litigation required specialized skills, and although these hourly rates are still quite high for the Northern District of Ohio, the Court believes that lower rates would not adequately compensate such counsel. This rationale does not apply, however, to young associates. While these associates have assuredly bright futures, absent supporting documentation justifying these rates, the Court has no basis to compensate them at levels so far above their peers.

| Organization | Name | Title | Requested Hourly Rate |
| --- | --- | --- | --- |
| *Brennan Center for Justice* | | | |
| | Wendy Weiser | Partner | $310.00 |
| | Renee Paradis | Counsel (2003) | $165.00 |
| | Raj Nayak | Counsel (2003) | $165.00 |
| | Margaret Chen | Administrative Assistant | $100.00 |
| | Heather McGhee | Intern | $70.00 |

Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)

2009 WL 917737

| | | |
|---|---|---|
| John Infranca | Intern | $70.00 |
| **McTigue Law Group** | | |
| Donald J. McTigue | Partner | $400.00 |
| Mark A. McGinnis | Associate (2003) | $175.00 |
| **Project Vote** | | |
| Teresa James | Counsel | $200.00 |
| **Perkins Coie** | | |
| Robert Bauer | Partner | $450.00 |
| Karl Sandstrom | Of Counsel | $450.00 |
| Marc Elias | Partner | $340.00 |
| Scott Gingold | Associate (1998) | $1750.00 |
| Ezra Reese | Associate (2002) | $170.00 |
| Patricia Alexander | Associate (2005) | $125.00 |
| Kerri–Ann Anderson | Summer Associate | $70.00 |
| Susan Cochard | Librarian | $80.00 |
| Christopher Johnson | Summer Associate | $70.00 |
| Lauren Lowe | Associate (2005) | $125.00 |

### ii. Reasonable Hours Expended

**\*15** Defendants have objected to the number of hours that Plaintiffs' counsel have billed, primarily on the grounds that it appears to be unreasonably duplicative. While many of Defendants' concerns appear to be unfounded, the Court is troubled by a number of billing issues and will adjust the hours billed accordingly.

Defendants first assert that the case was "over-lawyered." They contend, for example, that it was unnecessary to use lawyers from outside the jurisdiction. (Doc. 67 at 12 ("Mr. McTigue and Mr. McGinnis, both Ohio attorneys, concentrate their practices on federal and state election and campaign finance law. It would seem, therefore, that they possessed the expertise to brief this case without reaching outside the state.").) They also point to numerous examples that they believe establish duplicative billing. For example, they note that five to seven attorneys regularly participated in conference calls, eight lawyers and one intern participated in drafting the Complaint, and six attorneys participated in preparing for the preliminary injunction hearing. These examples, upon close inspection, are not particularly troubling. This was a complex case that was litigated on an expedited time-frame, which justifies a somewhat higher than usual number of attorneys. Indeed, it is possible, in some circumstances, for a larger number of lawyers to be more efficient than a smaller number of lawyers.

On the other hand, this case involved twenty-one separate time-keepers spread across four different firms, which is an extraordinary number by any measure for a case that did not involve formal discovery. The Court notes that paying clients, for even the most complicated litigation, insist on a finite number of time-keepers devoted to any particular issue or task to ensure maximum efficiency. The Court is aware, for example, of one Fortune 100 firm that ordinarily will allow no more than two individuals to be involved in the actual drafting of any motion. While the use of so many time-keepers and law firms is not *per se* unreasonable, it raises substantial concerns where, as here, a party seeking fees has not provided back-up documentation attesting that the work could not have been done with less. *Accord Ky. Rest. Concepts Inc. v. City of Louisville,* 117 Fed. Appx. 415, 419 (6th Cir.2004) ("[T]wo law firms would have been sufficient as opposed to four.") The Court will, consequently, reduce the hours worked across-the-board by 10% to try and account for this inefficiency. *Accord id.* ("Plaintiffs are not entitled to have any number of well-qualified attorneys reimbursed for their efforts, when fewer attorneys could have accomplished the job.") (quoting the district court with approval); *see also Cleveland Area Bd. of Realtors v. City of Euclid,* 965 F.Supp. 1017, 1021 n. 5, 1022 (N.D.Ohio 1997) (deducting the request by 10% across-the-board for instances of excessive and duplicative work).

Once that adjustment is made, however, the number of hours billed by lawyers do not strike the Court as unreasonable. For example, one of Defendants' major concerns is that the attorneys billed over one-hundred hours to draft their successful motion for a preliminary injunction. (Doc. 67 at p. 5.) Yet, this was an exceedingly complicated motion. Contrary to Defendants' assertion,

the Court finds this a fair measure of time to bill for such complicated work. [12]

[12]    Defendants, for example, complain that Mr. McTigue billed 3.2 hours on the draft even after Perkins Coie lawyers had apparently completed it. (Doc. 67 at p. 5.) Although the Court notes an apparent clerical error reflecting the date of the work performed, there is nothing obviously unreasonable about this: Mr. McTigue was the expert on Ohio law. It would have been imprudent for him *not* to spend this time with such a critical brief, and imprudent for the original drafters not to seek confirmation that their positions on complicated areas of state law were supportable.

 **\*16** The Court does note, however, that summer associates and interns have billed a substantial amount of time to this litigation. It appears, for example, that one summer associate from Perkins Coie billed fifty-eight hours drafting the motion for a preliminary injunction, which was then given to a relatively young associate who billed another thirty-five hours drafting this motion. As stated, the Court finds the total attorney time devoted to this motion to be generally reasonable and does not doubt that this summer associate added real value to that effort. Fifty-eight hours, however, is excessive, and the Court has similar concerns with the other summer associate on this case, as well as the interns from the Brennan Center for Justice (*see* Doc. 67 at p 6 ("If the work product from the intern was such that the attorneys needed sixteen hours to rewrite it, there is no excuse for the Brennan Center trying to bill the intern's time.)). To account for these concerns, the Court will halve the amount of hours billed by the summer associates and interns.

The Court also notes that Defendants raise a valid concern with respect to a number of billing entries that were unrelated to the litigation. (Doc. 67 at p. 7.) Specifically, Defendants argue that Plaintiffs improperly attempt to bill for counsel's participation at various pre-litigation "administrative proceedings," which Defendants contend were not "reasonably necessary" to the litigation under the Supreme Court's standard set forth in *Webb v. Bd. of Educ. of Dyer County,* 471 U.S. 234, 242–43, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). In response, Plaintiffs assert that the time spent by their counsel in attending these administrative hearings—which dealt with the third-party voter registration laws that were eventually challenged in this lawsuit—was reasonably necessary and cite in support *Chandler v. Vill. of Chagrin Falls,* No. 1:03–CV–

2057, 2007 U.S. Dist. LEXIS 1223, at \*13–14 (N.D.Ohio Jan. 5, 2007) (awarding attorneys' fees for counsel's time prior to litigation at administrative proceedings that became adversary). Upon considering these arguments and the applicable law, the Court finds some merit to both parties' positions. While Defendants correctly point out that Plaintiffs' counsel were not *required* to attend these hearings (*e.g.,* Plaintiffs did not have to exhaust any administrative remedies prior to filing this lawsuit), Plaintiffs' counsel's participation at the hearings was adversarial in a general sense, as the hearings took place after counsel had informed Defendants of the legal problems with the proposed interpretation of the voter registration laws and, further, was made in an attempt to avoid this litigation—certainly something the Court would encourage. Accordingly, on this record, and in its informed discretion, the Court will halve the amount of time billed by Plaintiffs' counsel spent attending the public hearings in question, in addition to the other adjustments to Plaintiffs' fee request outlined above. [13]

[13]    Specifically, the Court will deduct 2.85 hours from Attorney Nayak, 1.5 hours from Attorney McTigue, and 2.15 hours from Attorney James.

 **\*17** Beyond this, however, after a careful review of Defendants' other arguments and a close inspection of Plaintiffs' counsel's bills, the Court finds that the submitted time entries were reasonable under the circumstances. [14]

[14]    In this regard, the Court explicitly notes that it rejects Defendants' assertion that Attorney Paradis spent an unreasonable amount of time drafting Plaintiffs' summary judgment motion based on entries from October 2006. (*See* Doc. 67 at p. 6.) Plaintiffs submit that Attorney Paradis spent this time drafting much longer and more detailed motion papers, because at that point in the litigation, the case was still proceeding against then-Defendant Blackwell and that she could not have anticipated that the parties would later agree to rely on the parties' earlier briefs at the summary judgment stage. The Court notes that, as of October 2006, Attorney Paradis "believed the work to be reasonably expended in pursuit of success," and the hours in question should be awarded. *Woolridge v. Marlene Indus. Corp.,* 898 F.2d 1169, 1177 (6th Cir.1990), *overruled on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health*

& *Human Res.,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

Accordingly, the Court will award the following number of hours [15] for each time-keeper:

[15] The Court has rounded to the nearest whole number in the charts displayed in this opinion. **The Court used the exact provided numbers in its calculations.**

| Organization | Name | Title | Awarded Hours |
|---|---|---|---|
| *Brennan Center for Justice* | | | |
| | Wendy Weiser | Partner | 152 |
| | Renee Paradis | Counsel (2003) | 165 |
| | Raj Nayak | Counsel (2003) | 21 |
| | Margaret Chen | Administrative Assistant | 21 |
| | Heather McGhee | Intern | 10 |
| | John Infranca | Intern | 10 |
| *McTigue Law Group* | | | |
| | Donald J. McTigue | Partner | 131 |
| | Mark A. McGinnis | Associate (2003) | 45 |
| *Project Vote* | | | |
| | Teresa James | Counsel | 35 |
| *Perkins Coie* | | | |
| | Robert Bauer | Partner | 2 |
| | Karl Sandstorm | Of Counsel | 279 |
| | Marc Elias | Partner | 4 |
| | Scott Gingold | Associate (1998) | 54 |
| | Ezra Reese | Associate (2002) | 62 |
| | Patricia Alexander | Associate (2005) | 68 |
| | Kerri–Ann Anderson | Summer Associate | 30 |
| | Susan Cochard | Librarian | 1 |
| | Christopher Johnson | Summer Associate | 19 |
| | Lauren Lowe | Associate (2005) | 1 |

### iii. Lodestar Calculation

Therefore, based upon the above, the Court calculates the lodestar amount to be $312,925.00. Below is a quick-reference summary chart illustrating how the lodestar amount was calculated:

| Names | Title | Requested Rate | Awarded Rate | Requested Hours | Hours After Specific Reductions | Total Awarded Hours * | Total Compensation |
|---|---|---|---|---|---|---|---|
| W. Weiser | Partner | 350 | 310 | 174 | 169 | 152 | $47,039 |
| R. Paradis | Counsel (2003) | 235 | 165 | 183 | 183 | 165 | $27,205 |
| R. Nayak | Counsel (2003) | 235 | 165 | 26 | 24 | 21 | $3,497 |
| M. Chen | Admin. Assistant | 140 | 100 | 23 | 23 | 21 | $2,106 |
| H. McGhee | Intern | 140 | 70 | 22 | 11 | 10 | $706 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| J. Infranca | Intern | 140 | 70 | 23 | 11 | 10 | $718 |
| D. McTigue | Partner | 450 | 400 | 147 | 146 | 131 | $52,416 |
| M. McGinnis | Associate (2003) | 250 | 175 | 50 | 50 | 45 | $7,922 |
| T. James | Counsel | 200 | 200 | 41 | 38 | 35 | $6,903 |
| R. Bauer | Partner | 500 | 450 | 6 | 3 | 2 | $1,013 |
| K. Sandstrom | Of Counsel | 500 | 450 | 310 | 310 | 279 | $125,388 |
| M. Elias | Partner | 375 | 340 | 4 | 4 | 4 | $1,255 |
| S. Gingold | Associate (1998) | 250 | 175 | 60 | 60 | 54 | $9,466 |
| E. Reese | Associate (2002) | 240 | 170 | 69 | 69 | 62 | $10,618 |
| P. Alexander | Associate (2005) | 175 | 125 | 76 | 76 | 68 | $8,561 |
| L. Lowe | Associate (2005) | 175 | 125 | 41 | 41 | 37 | $4,613 |
| S. Cochard | Librarian | 175 | 80 | 1 | 1 | 1 | $72 |
| C. Johnson | Summer Associate | 155 | 70 | 43 | 21 | 19 | $1,348 |
| K. Anderson | Summer Associate | 155 | 70 | 66 | 33 | 30 | $2,079 |
| | | | | | | | **$312,925.00** |

FN* Hours after specific reduction, reduced by ten percent.

### iv. The Twelve *Johnson* Factors

Having calculated the lodestar to be $312,925.00, the Court next must determine whether an adjustment should be made in light of the twelve *Johnson* factors. *See Hensley,* 461 U.S. at 430 n. 3; *Reed,* 179 F.3d at 471. [16]

As noted, the twelve *Johnson* factors are as follows: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained;

*Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)*

2009 WL 917737

(9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed,* 179 F.3d at 471 n. 3 (quoting *Johnson,* 488 F.2d at 717–19).

**\*18** Upon review, the Court initially notes that a significant number of the factors weigh in favor of potentially enhancing the lodestar. In particular, the Court points out that the following factors suggest that Plaintiffs' counsel should be awarded a significant, if not a "fully compensatory fee":

(1) the time and labor required by the case;

(2) the novelty and difficulty of the questions presented;

(3) the skill needed to perform the legal service properly;

(7) the time limitations imposed by the client and the circumstances;

(8) the results obtained; and

(9) the experience, reputation, and ability of the attorneys.

*See Adcock–Ladd,* 227 F.3d at 349–50 (quoting *Hensley,* 461 U.S. at 435). As discussed, Plaintiffs' counsel achieved "excellent results" under considerable time limitations by presenting a novel theory in a previously undeveloped area of election law.

Here, however, the Court finds that the lodestar already incorporates the twelve *Johnson* factors and ultimately represents a reasonable attorneys' fee award for Plaintiffs. *See City of Burlington,* 505 U.S. at 562 (noting that there is "a strong presumption that the lodestar represents the reasonable fee"); *Hensley,* 461 U.S. at 434 n. 9 (noting that the twelve *Johnson* factors "are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"). Specifically, the lodestar already amounts to a substantial fee award based at least in part on a significant time commitment by a number of attorneys, several of whom had high hourly rates attributable to their experience and other qualifications—*i.e.,* the time, labor, skill, and experience required for counsel to successfully litigate this case already have been accounted for in the lodestar calculation. *See Adcock–Ladd,* 227 F.3d at 349 n. 8 ("Some of [the twelve *Johnson* ] factors ordinarily

may be considered only when resolving the basic lodestar fee and thus cannot be used to augment that lodestar."). By contrast, if Plaintiffs' counsel had accomplished the same results in such a complex and novel case on an expedited basis with fewer and less experienced attorneys, then, in that situation, an enhancement to the lodestar may have been warranted. *See West v. Tyson Foods, Inc.,* No. 4:05–CV–183M, 2008 U.S. Dist. LEXIS 97928, at \*7–11 (W.D.Ky. Dec. 3, 2008) (collecting "rare" and "exceptional" cases where courts enhanced the calculated lodestar). In this case, the lodestar has the effect of compensating items contemplated by the twelve *Johnson* factors.

Accordingly, the Court concludes that an adjustment to the lodestar is not appropriate, and Plaintiffs are awarded $312,925.00 for attorneys' fees.

**b. Costs**

Plaintiffs also request an award of costs and expenses in the amount of $10,808.32. As discussed above, costs and expenses that an attorney or law firm generally charge to the client are recoverable under the applicable fee shifting statutes. *See, e.g., Northcross,* 611 F.2d at 639; *Citizens Against Pollution v. Ohio Power Co.,* 484 F.Supp.2d 800, 815 (S.D.Ohio 2007); *Hall v. Ohio Educ. Ass'n,* 984 F.Supp. 1144, 1146 (S.D.Ohio 1997). The Court finds that most of the costs for which Plaintiffs request compensation are uncontroversial, sufficiently documented, and should be awarded as a matter of course. Certain expenses, however, are undocumented, excessive, or unnecessary.

**i. Compensable Expenses**

**\*19** It is well established that expenses such as travel (including airfare, milage, meal, and lodging), telephone bills, shipping and postage, photocopying, filing fees, and similar items are expenses necessarily incurred in the natural course of litigation and are recoverable. *See, e.g., Northcross,* 611 F.2d at 639; *Sigley,* 2000 U.S.App. LEXIS 1465, at \*23–26; *Cleveland Area Bd. of Realtors,* 965 F.Supp. at 1023–24 (citing *Northcross* in support of expenses recoverable under 42 U.S.C. § 1988 and *Crawford Fitting Co. v. J.T. Gibbons,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) for expenses recoverable under 28 U.S.C. § 1920). Of course, such expenses are only recoverable if reasonable and adequately documented. *See Cleveland Area Bd. of Realtors,* 965 F.Supp. at 1024.

Whether expenses for computerized legal research are recoverable is a close question. Although the weight of recent authority favors treating computerized legal research as a recoverable expense, the Sixth Circuit has not addressed this issue in a published opinion. *See Say v. Adams,* No. 3:07–CV–377–R, 2009 U.S. Dist. LEXIS 23863, at *19–20 (W.D.Ky. Mar. 24, 2009) ("The Sixth Circuit has yet to address the issue of whether costs associated with computerized legal research are recoverable under § 1988. However, other circuit and district courts have awarded the costs associated with computerized research. *See Cleveland Area Bd. of Realtors, ... 965 F.Supp. at] 1023* ... (compiling cases)."); *Cmtys. for Equity,* 2008 U.S. Dist. LEXIS 25640, at *75–76 ("The Third, Seventh, Tenth, and District of Columbia Circuit Courts of Appeal have all found these costs reasonable."); *Citizens Ins. Co. of Am. v. KIC Chem., Inc.,* No. 1:04–CV–385, 2007 U.S. Dist. LEXIS 73201, at *7 (reasoning that Westlaw and Lexis charges should be recoverable because they are routinely billed to clients and computerized legal research improves the quality of legal service and should be encouraged); *cf. Auto Alliance Int'l Inc.,* 155 Fed. Appx. at 228–29 (noting growing trend toward recoverability of cost of computerized legal research but affirming denial of award of such expenses for insufficient documentation). Furthermore, some courts exclude computerized legal research from recoverable expenses on the grounds that such research is either encompassed in the time the researching attorney billed or part of overhead. *See United States for the Use & Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 173 (2d Cir.1996); *Harco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago,* 38 F.3d 1429, 1440–41 (7th Cir.1994); *Standley v. Chilhowee R–IV Sch. Dist.,* 5 F.3d 319 (8th Cir.1993); *Weinberger v. Great N. Neekosa Corp.,* 801 F.Supp. 804, 827 (D.Me.1992).

The Court agrees with the line of recent authority finding computerized legal research recoverable. As even some of the cases cited for the alternative holding concede, computer research ultimately reduces the number of billable hours charged to the client.

> **\*20** The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching.

> Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee.

*Harco,* 38 F.3d at 1040–41. In other words, even in *Harco,* where the court denied computerized legal research fees in the context of the cost analysis, it recognized the charges as compensable within the attorneys' fees context. This strikes the Court as mere semantics, and, moreover, as a matter of clarity and transparency, it seems more appropriate and accurate to characterize computerized legal research charges as expenses rather than attorneys fees. As the Sixth Circuit concluded in *Northcross,* 611 F.2d at 638–39, costs customarily passed along to the client which "aid in the effective practice of law" should be treated as reimbursable expenses under 42 U.S.C. § 1988. *Cmtys. for Equity,* 2008 U.S. Dist. LEXIS 25640, at *76. Westlaw and Lexis charges are just such an expense. Moreover, because they are typically billed to the client, computerized legal research charges should not be treated as overhead. Accordingly, the Court will award Plaintiffs their adequately documented expenses associated with computerized legal research.

Against this legal backdrop, the Court will proceed to scrutinize Plaintiffs' request for an award of $10,808.32.

First, Plaintiffs have submitted adequate documentation related to parking, travel, filing fees, docket fees, photocopying, telephone bills, postage, shipping, and computerized legal research in the amount of $9,394.20. [17] Specifically, these expenses are supported by an affidavit or declaration of an attorney attesting to the authenticity of bills and records reflecting the reimbursements requested. Accordingly, $9,394.20 of expenses are compensable if reasonable. The remaining $1409.39 is attributable to two sources: (1) Attorney Brian Mellor, who requested $352.00 in travel expenses but did not sign his declaration or provide any documentation in support of the request; and (2) Attorney Elliot Mincberg, who requested $1,062.12 in expenses but did not provide *any* substantiation. Both of these request are denied *in toto* for insufficient documentation.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3985 Filed 07/12/16 Page 62 of 117
Project Vote v. Blackwell, Not Reported in F.Supp.2d (2009)

2009 WL 917737

17     The Brennan Center for Justice submitted documentation in connection with travel in the amount of $643.92 for Attorney Nayak (Doc. 63–8) and $372.10 for Attorney Paradis (Doc. 63–9). In addition, Brennan Center Attorney Weiser submitted a request for $205.64 in telephone bills (Doc. 63–10). The McTigue Law Group submitted expense documentation in the amount of $1,676.67 in connection with travel, parking, *pro hac vice* fees, docket fees, and transcripts (Doc. 63–5). Attorney Karl Sandstrom of the law firm Perkins Coie LLP submitted expense documentation in the amount of $6,495.87 in connection with photocopying, telephone bills, travel, postage, shipping, and computerized legal research (Doc. 68–2).

Second, of the $9,394.20 in documented expenses, the Court finds that only $8,560.28 reflects the reasonable expenses incurred under the circumstances of this case. Defendants argue that Attorney Nayak requests $643.92 in travel expenses for a trip to Ohio that occurred before the Complaint was even filed in this case. Plaintiffs do not rebut this contention in their reply brief, and the Court finds Defendants' contention persuasive. Defendants also compellingly argue that the Brennan Center unnecessarily filed a costly *pro hac vice* motion for an attorney who never actively litigated in the Northern District of Ohio. This further reduces the expenses award by $190.00.

 **\*21** Accordingly, the Court hereby awards Plaintiffs $8,560.28 in costs.

## III. *CONCLUSION*

For the foregoing reasons, the Court ***GRANTS IN PART*** Plaintiffs' motion and concludes that Plaintiffs are entitled to ***an award of attorneys' fees in the amount of $312,925.00*** and ***an award of costs in the amount of $8,560.28*** for ***a total award of $321,485.28.***

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 917737

---

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2016 Thomson Reuters. No claim to original U.S. Government Works. 19

2011 WL 1464678

KeyCite Yellow Flag - Negative Treatment
Declined to Follow by    Thies v. Life Ins. Co. of North America,
W.D.Ky.,    January 4, 2012

2011 WL 1464678
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Joel HELFMAN, Plaintiff,

v.

GE GROUP LIFE ASSURANCE COMPANY,
a foreign corporation, Genworth Life and
Health Insurance Company, a foreign
corporation, and Sun Life Assurance Company
of Canada, a foreign corporation, Defendants.

No. 06–13528.
|
April 18, 2011.

**Attorneys and Law Firms**

J. Laevin Weiner, Tamara Fraser, Frank, Haron, Troy, MI, for Plaintiff.

James E. Brenner, Clark Hill, Francis R. Ortiz, Dickinson Wright, Detroit, MI, Kimberly J. Ruppel, Dickinson Wright, Bloomfield Hills, MI, for Defendants.

*ORDER*

VICTORIA A. ROBERTS, District Judge.

**I. INTRODUCTION**

**\*1** This matter is before the Court on Plaintiff Joel Helman's motion for attorney's fees and supplemental motion for attorney's fees. These motions are **GRANTED IN PART AND DENIED IN PART.**

**II. BACKGROUND**

On December 23, 2009, this Court entered an Order Granting in Part Plaintiff's Amended Motion for Attorneys Fees and Costs, (Doc. # 85) following the Sixth Circuit's decision that Sun Life Assurance Company of Canada ("Sun Life") terminated Helfman's long-term disability benefits arbitrarily and capriciously. *See*

*Helfman v. GE Grp. Life Assur. Co.,* 573 F.3d 383, 396 (6th Cir.2009). But, the Sixth Circuit held that the record did not clearly establish that Helfman was still disabled. The court remanded the case here and this Court remanded it to the plan administrator for a full and fair review. *Id.*

Helfman requested $81,046, representing the total amount of fees charged by his attorneys. (Doc. # 68). In its order, the Court found that Helfman was not entitled to: (1) the fees associated with his claim that ERISA did not apply; (2) any duplicate entries; and (3) the fees associated with his claims against Genworth. (*Id.* at 9).

Helfman then filed a revised affidavit and now seeks $60,251.25 in attorney's fees. (Doc. # 87). On December 15, 2010, Sun Life issued its re-determination of Helfman's benefits claim. Helfman sought disability benefits covering a forty-eight month period, from April 1, 2005 to April 3, 2009. Sun Life determined that Helfman was entitled to an additional six months of benefits, from April 1, 2005 to September 30, 2005, or $27,559.74. Helfman filed a Supplemental Motion for Attorneys Fees, seeking an additional $18,443.75 in attorney's fees purportedly incurred during the administrative review period. (Doc. # 97). Sun Life filed briefs in opposition to the amounts in both fee requests. The Court first addresses Helfman's original motion for fees and revised affidavit and then his supplemental motion.

**II. LEGAL STANDARD**

"In an attorneys' fee case, the primary concern is that the fee awarded be 'reasonable.' " *Gonter v. Hunt Valve Co., Inc.,* 510 F.3d 610, 616 (6th Cir.2007) (citing *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999)). The award should be adequately compensatory to attract competent counsel but should also avoid producing a windfall for attorneys. *Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343, 349 (6th Cir.2000). "The trial court's initial point of departure, when calculating a 'reasonable' attorney fee, should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his courtascertained reasonable hourly rate." *Id.* The court may then adjust the "lodestar" based on relevant circumstances peculiar to the case. *Id.*

If the fee applicant has achieved only limited or partial success, "[a]n award based on the total number of hours reasonably expended on the litigation might [ ] result in an

2011 WL 1464678

excessive." *Imwalle v. Reliance Med. Prods.,* 515 F.3d 531, 552 (6th Cir.2008) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Work on an unsuccessful claim is not work "expended in pursuit of the ultimate result achieved" where plaintiff has presented distinct claims based on different facts and legal theories. *Id.* When a fee request is based, in part, on unsuccessful and distinct claims, the district court must reduce the fee award so that it is commensurate with "the degree of success obtained." *Hensley,* 461 U.S. at 436. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37. The district court has broad discretion to make these determinations. *Id.* at 437.

**\*2** In addition, "[t]he party seeking attorneys fees bears the burden of documenting his entitlement to the award." *Reed v. Rhodes,* 179 F.3d 453, 472 (6th Cir.1999). That party should submit evidence to support the number of hours worked and the rates claimed. *Id.* (citing *Hensley,* 461 U.S. at 433). The billing records submitted by Helfman's attorneys must "describe the work performed in sufficient detail to establish that the work is reasonably related to [Helfman's] claim that Sun Life acted arbitrarily and capriciously when terminating his benefits and to his defense to Sun Life's request for reimbursement]." *In re Pierce,* 190 F.3d 586, 593–94 (D.C.Cir.1999). Where documentation is insufficient to support the amount of fees requested, the district court may reduce the award accordingly. *Reed,* 179 F.3d at 472.

## II. ARGUMENTS AND ANALYSIS

### A. Helfman's Original Motion for Attorney's fees
In its Brief in Opposition, Sun Life alleges: (1) that Helfman did not adequately reduce his requested attorneys fees to reflect that he did not succeed on his claim that the administration of his disability benefits is not governed by ERISA, nor on his claims against Genworth; (2) that the revised affidavit contains duplicate entries; and (3) that Helfman's attorneys' hourly rates are excessive. (*Id.*) Sun Life says the maximum fee amount that Helfman should be awarded, at counsel's stated hourly rates, is \$35,548.96, and that after reduction of the hourly rates the total fee award should be \$30,853.61. (Doc. # 88, 6–7).

### 1. Reasonableness of Counsels' Hourly Rates
Sun Life contends that the hourly rates charged by Helfman's attorneys are excessive. (Doc. # 88, 6). It cites the 2007 Economics of Law Practice Report issued by the State Bar of Michigan in support of its claim that \$200 per hour is an appropriate rate for his attorneys. (*Id.* at 6–7). Helfman responds that the rates charged are not excessive, are in fact lower than those charged by Defendant, and that the Court should not rely on the median rate—which is not the true average—listed in a three year old report. (Doc. # 89, 6).

Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. *Stenson,* 465 U.S. at 895. The "relevant community" is the legal community within the court's territorial jurisdiction. *See Adcock–Ladd,* 227 F.3d at 350. "Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Coulter v. Tennessee,* 805 F.2d 146, 149 (6th Cir.1986).

Prevailing attorneys must justify the reasonableness of a requested fee award. *Stenson,* 645 U.S. at 896 n. 11. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.; see also Reed,* 179 F.3d at 472 (the party requesting the fee award bears the burden to produce evidence in support of the rates claimed); *Iley v. Metro. Life Ins. Co.,* No. 05–71273, 2007 WL 37740, at \* 2 (E.D.Mich. Jan.4, 2007) ("Plaintiff, as the party requesting an attorney fee [,] has the burden of establishing that the hourly rates requested are based on comparable rates in the local community.").

**\*3** The lead attorneys on the case were partner J. Laevin Weiner and associate Tamara Fraser. Mr. Weiner has been a member of the State Bar of Michigan since 1968; Ms. Fraser since 1994. (Rev. Aff. of J. Laevin Weiner ¶ 4, ¶ 7) Mr. Weiner requests compensation at the rates of \$300/hour and, after January 2007, \$350/hour. (*Id.* at ¶ 6) Ms. Fraser requests compensation at the rates of \$195/hour, \$200/hour, and later \$225/hour. (*Id.* at ¶ 7) Five other attorneys performed work on the case, with experience ranging from six to sixteen years, at requested rates of \$200/hour to \$275/hour. (*Id.* at ¶ 8)

2011 WL 1464678

Helfman's Motion and supporting affidavit do not provide evidence that his attorneys' requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Stenson,* 645 U.S. at 896 n. 11. Rather, Mr. Weiner's affidavit states, in a conclusory manner, that he believes the rates charged to be reasonable in the current marketplace given counsels' experience. (*Id.* at ¶ 6, ¶ 7). Helfman's Motion and counsel's supporting affidavit do not provide any information that would aid the Court in determining the prevailing market rate in southeastern Michigan for counsel competent in employment law and ERISA matters with comparable skill, experience and reputation. *See Blajei v. Sedgwick Claims Mgmt. Servs., Inc.,* No. 09–13232, 2010 WL 3855239, at *10–*11 (E.D.Mich. Sept.28, 2010) (unpublished) (reducing an attorney's rate from $325/hour to $275/hour after finding that Plaintiff's Motion and supporting affidavit were "deficient" in establishing that the hourly rates requested were commensurate with rates in the local community).

In *Blajei,* this Court independently researched and reviewed several recent opinions from this district where the court awarded attorney's fees in an ERISA denial-of-benefits case. *See id.* at *11. Based on its independent assessment, the Court found that $325/hour, for a "top" ERISA attorney with over forty years of experience, was too high. *See id.* (citing *Andrews v. Prudential Ins. Co. of Am.,* No. 08–14391, 2010 WL 1257784, at *2 (E.D.Mich. Mar.29, 2010); *Kramer v. Paul Revere Life Ins. Co.,* No. 04–74362, 2009 WL 2849067, at *7 (E.D.Mich., Sept.1, 2009); *Iley v. Metro. Life Ins. Co.,* No. 05–71273, 2007 WL 37740, at *2 (E.D.Mich. Jan.4, 2007)). This attorney, like Mr. Weiner, had over forty years experience as a practicing attorney. *Id.* He was rated "AV Preeminent" by Martindale Hubbell, and was named a "Top Lawyer" in ERISA law by DB Business Journal. *Id.* Nevertheless, the Court found the reduction warranted based on the attorney's failure to satisfy his burden to establish comparable local rates and based on its own review of those rates. *Id.*

Accordingly, the Court lowers Mr. Weiner's rate to $275/hour when determining Plaintiff's lodestar. On the other hand, the requested rates of Ms. Fraser and the other attorneys of record, all at or under $275/hour, appear reasonable based on their years of experience at the law firm and this Court's review of relevant case law.

**2. Calculating Plaintiff's Lodestar**

**\*4** Helfman's records show that Mr. Weiner spent 58.75 hours litigating this action, after making reductions to account for Helfman's claims against Genworth and that ERISA did not govern the administration of his benefits. Applying counsels' hourly rates to their hours of work, Helfman's lodestar is $56,182.50.

**3. Reduction of Plaintiff's Lodestar**

The calculation of Helfman's lodestar does not end the inquiry. *See Hensley,* 461 U.S. at 434. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'result obtained.' This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* (internal citation omitted). The Court next considers the impact of Helfman's limited success on his lodestar, as well as the adequacy of his billing records.

**i. Limited Success, Vague Billing and "Block Billing"**

Sun Life's next contention is that Helfman failed to adequately reduce his requested attorneys fees to account for the fact that his claims against Genworth, and his contention that ERISA did not apply to the administration of his benefits, were unsuccessful. (Doc. # 88, 2)

Sun Life states that there were four issues litigated: (1) whether ERISA applied to the Sun Life policy; (2) whether ERISA applied to the Genworth policy; (3) whether Sun Life's decision to terminate payment of Helfman's disability benefits was arbitrary and capricious; and (4) whether Helfman owed reimbursement to Genworth for overpayment of benefits. (*Id.* at 1). Helfman succeeded on only the third issue, Sun Life alleges.

Sun Life argues that the revised invoices reflect 123.5 hours of attorney time representing tasks associated with overlapping claims against Sun Life and Genworth, and to combined issues in the case, for a total of $31,611.16. (*Id.* at 5). This amount, Sun Life argues, must be reduced by seventy-five percent because Helfman did not prevail on three of the four issues. (*Id.*).

2011 WL 1464678

Helfman responds that it would be improper to reduce his attorney's fees by seventy-five percent for entries that cover tasks pertaining to claims other than Sun Life's termination of Helfman's benefits. He argues that Sun Life's mathematical approach lacks integrity for three reasons. (Doc. # 89). Specifically, Helfman contends:

(1) Sun Life brought a claim against Helfman for reimbursement of benefits, which was denied, meaning that Helfman succeeded on two of five claims, rather than one of four; it is misleading to state that Helfman's claims regarding the applicability of ERISA to his Sun Life and Genworth policies are two separate claims for purposes of calculating a fee award because the issue, research, and drafting were the same for both defendants; and (3) Sun Life's mathematical approach fails to take into account that Helfman's claim that Sun Life acted arbitrarily and capriciously required more factual and legal investigation than the other claims. (*Id.* at 2).

 **\*5** Helfman argues that a fifty percent reduction for tasks relating to both Sun Life and Genworth is not warranted because "the bulk of the substance of the case was directly related to the claim against Sun Life," and to the extent a time entry reflected work relating to both Sun Life and Genworth, the appropriate reductions were made. (*Id.* at 3) Helfman says further, "to the extent an entry equally corresponded to both Defendants, and that fee would have been incurred regardless of whether GE was in the lawsuit, that amount was not reduced...." (*Id.*).

In its December 23, 2009 Order the Court instructed Helfman to exclude the fees associated with his losing claims. (Doc. # 85, 9) This is in line with Sixth Circuit case law upholding district court decisions to deny the award of attorney's fees to parties who did not prevail on their claims. *See, e.g., Cattin v. General Motors Corp.,* 955 F.2d 416, 427 (6th Cir.1992) ( "Plaintiffs were not the prevailing party on the ERISA claim, and, therefore, it was not an abuse of discretion to deny plaintiffs' motion for attorney's fees."); *see also Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir.1978) ( "[T]he amount of attorney's fees [plaintiffs] receive should be based on the work performed on the issues in which they were successful.").

In *Hensley,* the Supreme Court held that the degree of a plaintiff's success is a "crucial factor" in determining what amount of attorney's fees to award. 461 U.S. at 440:

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants ... counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." ... The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

461 U.S. at 434–35.

The Court also recognized that in some cases the plaintiff's "claims for relief will involve a common core of facts or will be based on related legal theories." *Id.* at 435. When this occurs, counsel's time is devoted more generally to the litigation as a whole, "making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* In these instances, "[the] lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the law suit." *Id.* "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee." *Id.*

 **\*6** Helfman's case falls into the first category. Helfman's claim that ERISA did not apply to the administration of his benefits and his claim that Sun Life unlawfully terminated his benefits are distinct; their resolution requires the analysis of different facts and law. Moreover, the result achieved thus far, though favorable to Helfman, is not "excellent." *Id.* The claims administrator might still deny Helfman's request for benefits after a full and fair review. *Cf. Richard v. Oak Tree Grp. Inc.,* No. 1:06–362, 2009 WL 3234159 (W.D.Mich. Sept.30, 2009) (unpublished) (attorney's fee request reduced by eighty-five percent in part because plaintiffs only prevailed on a minor claim, and were awarded minimal statutory damages of $50.00, such that the award of $20,550.00 in attorney's fees "would be a windfall to plaintiff's attorney."). As the Supreme Court opined in *Hensley,*

2011 WL 1464678

a fee award must be proportional to "the extent of a plaintiff's success." 461 U.S. at 440.

The Court agrees with Helfman that, under the circumstances of this case, the seventy-five percent reduction advanced by Defendant would not adequately reflect the amount of time Helfman's attorneys spent litigating his claim that Sun Life acted arbitrarily and capriciously. *See, e.g., Hensley,* 461 U.S. at 435 n. 11 ("We agree with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.' ... Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors."). Helfman emphasizes that this claim required extensive research and "review and digestion of the medical evidence contained within Sun Life's voluminous administrative record." (Doc. # 89, 2). The ERISA claim and Genworth's claim for reimbursement did not require a substantial amount of administrative record review or other factual investigation. Likewise, Sun Life's seventy-five percent reduction fails to take into account that Helfman prevailed on Sun Life's counter-claim for reimbursement and that the ERISA claims against both defendants required the same legal research.

On the other hand, after reviewing the invoices submitting by Helfman to support his fee request, the Court finds that Helfman's attorneys have not satisfied their burden to produce adequate evidence that the fees requested are associated with only the claim on which Helfman prevailed. For example, one invoice states that on November 18, 2008, TEF spent five hours on "Continued research and appeal preparations; lengthy in office conference with JLW re issues on appeal." (Doc. # 87, Exh. 1, 11/18/08). Helfman's billing records include various additional vague entries where hours were not reduced, including, "Internet and westlaw research" for three hours; (*id.* on 11/13/08). "Review of additional case law; in office conference with JLW" for two and a half hours; (*id.* on 12/02/08) and "Telephone conference with client," (*id.*) among others. Other entries reference time spent preparing for oral argument before the Court of Appeals, reviewing briefs and recent cases, and arguing the issues before the Court of Appeals, without indicating what the preparation entailed, what issues the briefs and recent cases addressed, and what amount of time was spent arguing the winning versus losing issues. (*Id.* on 6/02/09–6/18/09).

*7 In *Imwalle,* the Sixth Circuit discussed the requirement that attorneys seeking fee reimbursement provide district courts with adequate billing statements. 515 F.3d at 553. The *Imwalle* court said:

The key requirement for an award of attorney fees is that "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine *with a high degree of certainty* that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate,* [*Tile & Composition Roofers v. G & M Roofing,* 732 F.2d 495, 502 n. 2 (6th Cir.1984) ]. Where the documentation is inadequate, the district court may reduce the award accordingly. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1933.

* * *

Courts in this Circuit have reduced attorney fees on the basis of insufficient billing descriptions where the attorney did not "maintain contemporaneous records of his time or the nature of his work," *Keener v. Dep't of the Army,* 136 F.R.D. 140, 147 (M.D.Tenn.1991), *aff'd on the decision of the district court by Keener v. Dep't of the Army,* No. 91–5442, 1992 WL 34580, 1992 U.S.App. LEXIS 2822 (6th Cir. Feb.24 1992), and where billing records "lumped" together entries under one total so that it was "impossible to determine the amount of time spent on each task." *Cleveland Area Bd. of Realtors [v. City of Euclid,* 965 F.Supp. 1017, 1021 (N.D.Ohio 1997) ].

*Id.* (emphasis added).

Helfman's invoices make it impossible for the Court to ascertain whether the reductions he made are sufficient to account for the issues and claims on which he did not prevail. These vague entries—though some could pertain solely to the arbitrary and capricious claim—could apply to the ERISA issue. The billing records submitted are not adequate for the Court to determine "with a high degree of certainty" that the time claimed was actually and reasonably spent in pursuit of Helfman's claims that Sun Life acted arbitrarily and capriciously when it terminated his disability benefit payments, and that Sun Life was not entitled to reimbursement for benefits paid while Genworth was paying same. *See Keener,* 136 F.D.R. at 147 (citing *United Slate,* 732 F.2d at 502–03 n. 2).

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3991 Filed 07/12/16 Page 68 of 117

Helfman v. GE Group Life Assur. Co., Not Reported in F.Supp.2d (2011)

2011 WL 1464678

While the Court recognizes that plaintiff's counsel is not required to provide a detailed record of how every minute of his time on the case is spent, counsel should identify the general subject matter of his time expenditures. *Hensley,* 461 U.S. at 436 n. 12. Entries such as "Internet and westlaw research" and "Telephone conference with client" do not identify the subject matter of the time expenditure. Such imprecise entries fail to identify the issue and Defendant(s) being addressed. They are problematic where Plaintiff achieved only limited success. Thus, the Court is constrained to find in Defendant's favor and reduce Helfman's lodestar amount accordingly.

 **\*8** The common practice in this circuit, and in others, when the court is confronted with a request for the award of attorney's fees in the face of inadequate billing records, is "across-the-board fee reductions." *See City of Euclid,* 965 F.Supp. at 1021 n. 5, and cases cited therein; *Gratz v. Bollinger,* 353 F.Supp.2d 929, 938 (E.D.Mich.2005) ("The Court cannot possibly determine from Plaintiffs' billing statements the amount of hours expended on this issue as opposed to the 'narrowly tailored' issue on which they prevailed. The Court therefore opts to reduce the hours expended by a percentage amount."); *Pierce,* 190 F.3d at 593–94 (imposing a ten percent fee reduction where fee petitioner's billing records included generalized entries such as "Various calls" and "Review of materials," making it impossible for the court to determine the reasonableness of the billings in terms of necessity and amount of time expended).

The Court reduces the total fee requested by twenty percent. This is appropriate in light of Helfman's burden of production and in light of the "block billing" and vague entries included in the billing records which make it impossible for the Court to determine whether adequate reductions were made. *See, e.g., Bollinger,* 353 F.Supp.2d at 939 (reducing award of attorneys fees by ten percent to account for vague billing entries such as "research," "office conference," and "review article" and for block billing, and by fifty percent to account for plaintiffs' limited success); *City of Euclid,* 695 F.Supp. at 1021 ("The total request is reduced by 10% for this insufficient documentation."); *Ragin v. Harry Macklowe Real Estate Co.,* 870 F.Supp. 510, 521 (S.D.N.Y.1994) ("In light of the numerous entries which contain insufficient descriptions of the work done, a lack of contemporaneous records for a significant number of hours, duplicative billing and

other errors found throughout the record, there will be a reduction of the lodestar by 30%.").

The Court takes into consideration Helfman's contention that his claim that Sun Life arbitrarily terminated his benefits required extensive factual and legal investigation as opposed to his other, more straightforward claims. The ERISA issue was important, but this claim was at least equally important; Helfman's success may result in retroactive reinstatement of his disability benefits. Thus, a larger reduction is not warranted. *Compare Bollinger,* 353 F.Supp.2d at 938 (reducing a fee request by fifty percent where plaintiffs failed to prevail on their primary argument, an issue of historical significance).

Moreover, Helfman's attorneys' billing records were kept contemporaneously and, while often overly generalized, they are not indecipherable. *Compare Richard,* 2009 WL at \*3 (applying an eighty-five percent reduction where an attorney's bills were "cryptic and nearly unintelligible"); *Keener,* 13 F.R.D. at 147–50 (denying altogether an attorney's fee request where the attorney admitted to sloppy record-keeping practices, including keeping records on napkins and failing to maintain contemporaneous records of his time and the nature of his work).

 **\*9** Helfman's lodestar is reduced by twenty percent because the Court cannot conclude, with a high degree of certainty, that the reductions made pursuant to this Court's December 23, 2009 Order adequately account for the limited nature of Helfman's success.

### ii. April 15, 2008 Time Entry

Sun Life next contends that the revised invoices contain two duplicate time entries on April 15, 2008, reflecting a task performed by two attorneys. (Doc. # 88, 3) Helfman responds that two lawyers may confer and both bill on a case for intra-office conferences, which keep legal fees down because they facilitate the use of junior, less-expensive attorneys. (Doc. # 89)

The Court agrees with Helfman. This is a common practice to keep costs down and the amount of time that was spent conferring, ninety minutes, is not excessive. Other courts sanction this practice. *See, e.g., McGrath v. City of Nevada,* 67 F.3d 248, 255 (9th Cir.1995); *Baughman v. U.S. Liability Ins. Co.,* 723 F.Supp.2d 741, 750–51 (D.N.J.2010); *Lenihan v. City of New York,* 640

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3992 Filed 07/12/16 Page 69 of 117

Helfman v. GE Group Life Assur. Co., Not Reported in F.Supp.2d (2011)

2011 WL 1464678

F.Supp. 822, 826 (S.D.N.Y.1986); *Veterans Educ. Project v. Secretary of the Air Force,* 515 F.Supp. 993, 994 (D.D.C.1981).

### iii. August 16, 2006 Time Entry
Sun Life contends that TEF's August 16, 2006 time entry should be stricken in its entirety because it relates solely to Helfman's claims against Genworth and/or his losing ERISA argument. (Doc. # 88, 9). Helfman responds that research into whether preemption might apply to an ERISA claim is necessary for any disability benefit case. (Doc. # 89, 5). The Court agrees with Sun Life. The issue on which it prevailed is entirely divorced from any potential ERISA pre-emption issue. Accordingly, the Court deducts this entry of 0.75 hours, at a rate of $195/hour, or $146.25, from Helfman's lodestar.

### B. Helfman's Supplemental Motion for Attorney's fees
In his supplement, Helfman seeks an award of $18,443.75 for over sixty more hours of work in connection with his administrative remand. Sun Life contends that because Helfman was only awarded benefits for an additional six month period, out of a possible forty-eight, he achieved only 12.5% success. As result, Sun Life says, he should be awarded no more than 12.5% of the reasonable fees that were incurred in connection with the remand. Sun Life invites the Court, however, to reweigh the *Sec'y of Dep't of Labor v. King,* 775 F.2d 666 (6th Cir.1985) factors as they apply to the administrative remand process, and to conclude that they weigh in favor of Sun Life this time, such that Helfman should not be awarded any additional fees. Sun Life also argues that $1,606.25 of the fees, for time purportedly spent discussing settlement, should not be awarded because it is unsupported by counsels' invoice. Finally, Sun Life contends that counsels' hourly rates must be reduced. Sun Life says the Court should award Helfman's attorneys no more than $1,500.

In reply, Helfman says the entries on the invoice pertaining to the $1,606.25 were redacted due to their confidential nature and that support for this amount is contained in J. Laevin Weiner's affidavit. Helfman further states that the $1,606.25 pertains to the administrative review process because but for Sun Life's failure to adequately review his claim in the first place, there would have been no need for settlement discussions. Helfman also takes issue with Sun Life's contention that the *King* factors do not warrant an award of fees related to the administrative remand

period. Finally, Helfman contends the Court is not bound by orders from this district where fee awards were reduced based on the degree of success obtained.

### 1. Reconsideration of the *King* Factors
**\*10** The Court declines Sun Life's invitation to reconsider the *King* factors in relation to the administrative remand. That process is a part of the overall case, and the factors that weighed in Helfman's favor when the Court first awarded fees, continue to weigh in Helfman's favor in connection with the administrative remand process; he is entitled to attorney's fees for the work done on remand. The question remains, however, is he entitled to all of the fees requested, or should they be reduced for any or all of the reasons listed in Sun Life's opposition?

### 2. The $1,606.25 Amount
The Court agrees with Sun Life that Helfman is not entitled to $1,606.25 in fees which purportedly corresponds to time spent in confidential settlement meetings. The Court agrees with Helfman that he should not have to reveal confidential information to be entitled to an award of fees. However, Helfman's attorney's affidavit does not reveal how many hours were spent by each partner in settlement talks. The Court could not discern the number of hours from the blacked out portions of the billing records; the Court's calculations do not comport with the fee requested in the affidavit. Helfman is not entitled to $1,606.25.

### 3. Calculating Plaintiff's Lodestar
The Court already determined the appropriate hourly rates for the attorneys who worked on the administrative remand. Applying these rates to the number of hours spent litigating Helfman's administrative case brings Helfman's lodestar to $14,737.50.

### 4. Reduction Based on Degree of Success
In *Blajei,* 2010 WL 3855239, at *12, this Court held that a plaintiff's attorney's fees award should be proportional to the degree of success on the merits. That case also involved an ERISA disability claimant who was denied benefits without a full and fair review, and whose case was remanded to the plan administrator to determine if she was entitled to benefits. *Id.* at * 1.

2011 WL 1464678

It is appropriate for the Court to reduce the amount of fees requested by Helfman in connection with his administrative remand, so that it is proportional to his degree of success on the merits. As Sun Life points out, Helfman sought benefits for a forty-eight month period, but obtained only six month's worth. This constitutes "some degree of success on the merits," but only partial success, namely, 12.5%. Accordingly, the Court reduces Helfman's lodestar by 87.5%. He is entitled to $1,842.19 in attorney's fees in connection with the remand.

### III. CONCLUSION

Plaintiff's request for Attorney's Fees is **GRANTED IN PART AND DENIED IN PART.**

With respect to Plaintiff's original motion, the Court reduces Helfman's lodestar of $56,182.50 by twenty percent ($56,182.50 x 20%), bringing his fee award to $44,946.00. From this, the Court subtracts his August 16, 2006 fee request ($44,946–$146.25), for a fee award of $44,799.75.

With respect to Plaintiff's supplemental motion, the Court reduces Helfman's lodestar by 87.5% ($14,737.50 x 87.5%), bringing his fee award to $1,842.19.

 **\*11** Sun Life is ordered to pay **$46,641.94** ($44,799.75+ $1,842.19). Payment must be made within 30 days of the date of this Order.

**IT IS ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2011 WL 1464678

---

**End of Document**                        © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3994 Filed 07/12/16 Page 71 of 117

Chad Youth Enhancement Center, Inc. v. Colony Nat. Ins. Co., Not Reported in...

2010 WL 4007300

KeyCite Red Flag - Severe Negative Treatment

Order Vacated by Chad Youth Enhancement Center, Inc. v. Colony Nat. Ins. Co., 6th Cir.(Tenn.), March 30, 2012

2010 WL 4007300
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
M.D. Tennessee,
Nashville Division.

CHAD YOUTH ENHANCEMENT CENTER, INC.
and Universal Health Services, Inc., Plaintiffs,
v.
COLONY NATIONAL INSURANCE CO., Defendant.

No. 3:09–0545.
|
Oct. 12, 2010.

**Attorneys and Law Firms**

Marty Roy Phillips, Ashley Donnell Cleek, Rainey, Kizer, Reviere & Bell, P.L.C., Jackson, TN, Meredith Ann Galto, Richard F. McMenamin, Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Plaintiffs.

Gilbert Morris Coogler, White, Fleischner & Fino, LLP, New York, NY, Larry I. Gramovot, Gramovot & Takacs, P.L., Tallahassee, FL, Michael B. Neal, McNabb, Bragorgos & Burgess, PLLC, Memphis, TN, for Defendant.

*MEMORANDUM*

ALETA A. TRAUGER, District Judge.

**\*1** This is a declaratory judgment action relating to coverage under an insurance policy issued to Plaintiffs Chad Youth Enhancement Center, Inc. and Universal Health Services, Inc. (collectively "Chad Youth") by Defendant Colony National Insurance Co. ("Colony"). After Judge Echols entered an Order (Docket No. 56) declaring that Colony's excess liability insurance policy provided coverage to Chad Youth for punitive damages that might be assessed in a related case pending in the

Eastern District of Pennsylvania, Chad Youth filed a "Motion for Award of Attorney's Fees" (Docket Entry No. 65).

In an Order dated July 28, 2010 (Docket No. 77), Judge Echols ruled that Chad Youth was entitled to an award of reasonable attorney's fees for the prosecution of this action, notwithstanding the fact that Colony had filed a notice of appeal. However, Judge Echols deferred ruling on the amount of fees because the requested fees were not substantiated in accordance with the requirements of Local Rule 54.01(b)(3). Chad Youth was afforded an opportunity to supplement the record, and did so by filing Supplemental Affidavits from counsel (Docket Nos. 78 & 79). Colony has filed a response in opposition to the supplemented fee request, and Chad Youth has filed a reply (Docket Nos. 80 & 86).

**I. DISCUSSION**

Chad Youth's attorney's fee request is governed by Tennessee law. Under Tennessee law, the appropriate factors to be used as guidelines in determining reasonable attorney's fees are as follows:

1. The time devoted to performing the legal service.

2. The time limitations imposed by the circumstances.

3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

4. The fee customarily charged in the locality for similar legal services.

5. The amount involved and the results obtained.

Connors v. Connors, 594 S.W.2d 672, 676 (Tenn.1980). While the parties agree that the foregoing factors control the award of attorney's fees in this case, they disagree as to whether the fees requested are reasonable.

Chad Youth seeks an award of attorney's fees in the amount of $252,001.10 for 510.3 hours of worked performed by lawyers at the Philadelphia, Pennsylvania law firm of Morgan, Lewis & Bockius, LLP ("Morgan Lewis"). It also seeks $27,859.50 for the 155.7 hours of

Chad Youth Enhancement Center, Inc. v. Colony Nat. Ins. Co., Not Reported in...

2010 WL 4007300

work performed by lawyers at Rainey, Kizer, Reviere & Bell, PLC ("Rainey Kizer") in Jackson, Tennessee. [1]

[1]    Chad Youth also seeks expenses in the amount of $10,265.42. While expenses (such as telephone charges and Westlaw fees) are often charged to a fee-paying client, Chad Youth has not provided any authority under Tennessee law for including such expenses as part of its attorney's fee award. *See, Intern. Paper Co. v. Frame,* 2003 WL 21195497 at *7 (5th Cir.2003) (recognizing that federal law sometimes allows expenses (as opposed to costs) as a part of attorney's fees, but finding district court abused its discretion in awarding such expenses as a part of fees where plaintiff pointed to no supporting state law authority and fee request was governed by state law). Moreover, the settlement letter written by Judge Mitchell S. Goldberg, upon which Judge Echols relied in determining that an award of fees was appropriate, specifically references only "reasonable attorney's fees" and no mention is made of expenses. Accordingly, the court will not award the requested expenses as a part of the attorney's fee award.

Colony raises a number of arguments in relation to the reasonableness of Chad Youth's fee request. Having considered the parties' arguments and conducted a detailed review of the record (including the billing statements), the court concludes that Chad Youth is entitled to a significant award of attorney's fees, but not nearly the full amount requested.

Colony first argues that while Chad Youth's counsel hold themselves out as having significant experience in insurance coverage disputes, the websites of Morgan Lewis and Rainey Kizer suggest otherwise. With regard to Morgan Lewis, which did the bulk of the work in this case, Colony asserts that neither "insurance coverage" nor "insurance" are listed in the firm's "areas of expertise" and that an associate by the name of Meredith Galto, for whom significant time is billed, does not even appear on the firm's website. (Docket Entry No. 80 at 3–4). As for Rainey Kizer, Colony asserts that, while the firm's website lists " 'insurance coverage issues' as an area of practice within the firm's "Tort and Insurance practice," none of the attorneys who billed for this matter are listed on the website as attorneys who practice in the firm's "Tort and Insurance Practice." (*Id.* at 4).

**\*2** Colony's contention that opposing counsel lack "familiarity with this specialty area of practice" is belied by the Supplemental Affidavits and accompanying biographies filed by Richard F. McMenamin of Morgan Lewis and by Marty R. Phillips of Rainey Kizer. Mr. McMenamin's biography, which appears on Morgan Lewis' website indicates that he is a partner in the firm's litigation practice, that his "commercial litigation practice includes regularly litigating insurance coverage disputes and counseling clients on coverage issues," that he "has experience in many types of coverage disputes," and that he "speaks and writes on insurance law issues." (Docket No. 79 at 79). As for Ms. Galto, Chad Youth notes in its reply brief that she does not appear on Morgan Lewis' website because she is now employed as an associate at Fox Rothschild LLP, another Philadelphia law firm. [2] (Docket Entry No. 82–1 at 2).

[2]    A review of Ms. Galto's biography on the Fox Rothschild website indicates that, prior to joining Fox Rothschild, she worked for Morgan Lewis in its litigation department. At Fox Rothschild, Ms. Galto's "practice focuses on litigation," and she has experience in "commercial litigation," and "insurance recovery," among other things. (*See,* www.FoxRothschild.com, last visited on October 6, 2010).

Mr. Phillips' biography, which appears on the Rainey Kizer website, indicates that he is a member of the firm with almost thirty years of legal experience. While he specializes in defending medical malpractice actions, "[h]e also has significant experience in general civil litigation." (Docket No. 78 at 32).

Based upon the above, the court rejects Colony's assertion that Chad Youth's counsel lack familiarity with insurance coverage matters and litigation involving insurance coverage disputes. This conclusion, however, directly segues into another argument raised by Colony and that is that the amount of time billed is excessive.

This court's review of the time records submitted indicates that there is some excessiveness in billing. For example, lawyers at Morgan Lewis billed more than 36 hours for tasks related to the preparation of the Complaint in this action. This appears excessive in light of the fact that the Complaint was just over nine pages long and contained only two counts, particularly when counsel hold themselves out as having expertise in insurance coverage and litigation matters.

Additionally, Morgan Lewis seeks to recover attorney's fees for more than 510 hours of work which, as Colony observes, amounts to more than three full months of attorneys' time (assuming a work week of 40 hours). For a case that was decided on the motions within seven months of filing and did not involve any discovery, the overall number of hours expended appears excessive.

Further, a review of the records indicates that there is some duplicative billing, involving both intra-firm communications between Mr. McMenamin and Ms. Galto (*see e.g.,* Morgan Lewis billing record for 6/11/09, 6/15/09, 6/22/09, 7/20/09, 7/22/09 & 8/10/09), and inter-firm conferences and communications between lawyers at Morgan Lewis and those at Rainey Kizer (*compare e.g.* Morgan Lewis billing records for 6/11/09, 6/30/09, 7/29/09, 8/06/09 & 9/10/09 *with* Rainey Kizer billing records for same dates). There also appears to be some duplication in several attorneys billing for review of the same filings or proposed filings. (*See, e.g.,* Morgan Lewis billing records for 7/1/09, 7/22/09, 8/24/09, 9/21/09, & 9/22/09 and Rainey Kizer billing records for 6/24/09, 6/25/09, 7/10/2009, 7/13/2009, 8/6/09 & 8/09/09). Moreover, the billing statements from Morgan Lewis contain extensive block billing, where discrete tasks are lumped together in one time entry.

**\*3** To account for apparent excessiveness and duplication, a district court may "mak[e] a simple across-the-board reduction by a certain percentage." *Hudson v. Reno,* 130 F.3d 1193, 1209 (6th Cir.1997), *overruled in part on other grounds, Pollard v. E.I. du Pont de Nemours & Co.,* 523 U.S. 843 (2001). Such a procedure (in lieu of a line-by-line reduction) is particularly appropriate where, as here, the fee documentation is voluminous. *Disabled Patriots of America, Inc. v. Reserve Hotel, Ltd.,* 659 F.Supp.2d 877, 885 (N.D.Ohio 2009) (collecting cases). Even though cutting hours in this fashion "may appear 'arbitrary,' it is an 'essentially fair approach" and " 'is a practical means of trimming the fat from a fee application.' *Hisel v. City of Clarksville,* 2007 WL 2822031 at \*6 (M.D.Tenn.2007) (internal citations omitted).

In this case, the court finds that a 25% across-the-board reduction is appropriate to account for any excessiveness, duplication, redundancy, and block billing. *See, Hudson,* 130 F.3d at 1209 (upholding 25% across-the-board reduction to account for duplication); *Lochren v. County of Suffolk,* 344 Fed. Appx. 706, 709 (2nd

Cir.2009) (court did not err in applying 25% across-the-board reduction in fees to compensate for overstaffing and needless duplication); *Hisel,* 2007 WL 2822031 at \*6 (cutting fees by 25% and collecting cases where fees were reduced by 25% to 30% to account for excessiveness and duplication); *Bryant v. Dollar Gen. Corp.,* 2007 WL 1875825 at \*4 (M.D.Tenn.2007) (discussing potential problems with block billing and collecting cases where fees were reduced by from 5% to 25% for block billing). [3]

[3] While the cited cases are based upon federal fee-shifting statutes, the court has located no cases which suggest that Tennessee law precludes an across-the-board reduction. The court notes that in *Connors,* the seminal case in Tennessee relating to fee awards, the Tennessee Supreme Court, on its own initiative, reduced the $20,000 award (which was supported by the expert opinion of lawyers) to $12,500.

In determining that a 25% reduction is appropriate, the court rejects Colony's additional request that the number of hours be further reduced to eliminate the hours that were spent on this case before the Complaint was filed. Obviously, "litigation is not something that springs forth instantaneously like Athena from Zeus's head." *Hunton & Williams v. U.S. Dept. of Justice,* 590 F.3d 272, 287 (4th Cir.2010). After all, a Complaint has to be drafted and that is not something that occurs in a vacuum. Counsel necessarily has to investigate the facts, research the law, and consult with the client, among other things. Moreover, in this case, Plaintiffs' counsel spent time trying to resolve the matter pre-filing, only to be thwarted by what they characterize as a recalcitrant insurer.

In addition to an across-the-board reduction, the court will reduce the hourly rate requested for the work performed by lawyers at Morgan Lewis. Chad Youth seeks attorney's fees at the hourly rate of $603.00 for Mr. McMenamin and $396.00 for Ms. Galto. [4] In support of that request, Mr. McMenamin avers that the rates requested are the customary rates charged by his firm in other cases and "are in line with the prevailing rates charged by other similarly experienced counsel in the Philadelphia, Pennsylvania community for providing similar services." (McMenamin Aff., Docket No. 79, ¶¶ 7–8). Even if that is so, *Connors* instructs that the fee be reasonable and based upon a fee which would be customarily charged in the locality of the court for similar legal services. *Connors,* 594 S.W.2d at 676; *see, Adcock–Ladd v. Sec'y of the Treasury,* 227 F.3d 343, 350 (6th

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.3997 Filed 07/12/16 Page 74 of 117

Chad Youth Enhancement Center, Inc. v. Colony Nat. Ins. Co., Not Reported in...

2010 WL 4007300

Cir.2000) ("the 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area where he maintains his office and/or normally practices").

4    In its reply brief, Chad Youth claims that Colony errs by listing the hourly rates for Mr. McMenamin and Ms. Galto as being $670.00 and $440.00, respectively. (Docket Entry No. 82–1 at 5 n. 6). However, any alleged error is understandable because Morgan Lewis' billing statement dated June 29, 2009 lists Mr. McMenamin's rate as being $670.00 per hour and Ms. Galto's at $440.00 per hour, even though all subsequent statements indicate the $603.00 and $396.00 hourly rates.

**\*4** Here, the relevant market is Nashville, Tennessee. However, the fees requested by Chad Youth for the work performed by Morgan Lewis attorneys are approximately double the amount generally awarded to Nashville lawyers with comparable skill and experience. *See, Grubb & Ellis/Centennial, Inc. v. Gaedeke Holdings,* 218 Fed. Appx. 390, 402 (6th Cir.2007) (affirming award of attorney's fees in Nashville based on rate of $270 per hour for lead counsel); *Cummings v. BP Products No. Amer., Inc.,* 2010 WL 796825 at *5 (M.D.Tenn.2010) (combined hourly rate for partners and associates of approximately $259 for work performed over three-year period of time was reasonable); *Harris v. Metro. Gov't. of Nashville,* 2009 WL 2423306 at *3 (M.D.Tenn.2009) (approving $275 hourly rate for solo practitioner who specialized in employment litigation); *Doe v. Wilson County School Sys.,* 2008 WL 4372959 at * 11 (M.D.Tenn.2008) (approving $350 hourly rate for lawyer with more than 20 years of litigation experience and $185 hourly rate for lawyer with seven years of experience); *Ibarra v. Battett,* 2008 WL 2414800 at *2 (M.D.Tenn.2008) (finding that "the requested rates of $250–$275 per hour are reasonable"). Accordingly, and to bring the fees in line with the prevailing rate in Nashville, the court will halve the hourly rates for the work performed by the lawyers at Morgan Lewis, making Mr. McMenamin's effective rate slightly more than $300 per hour and Ms. Galto's rate just under $200 per hour. Such hourly rates, as adjusted, are reasonable for the work performed in this case.[5]

5    No adjustment is necessary in relation to the fees requested for the work performed by the lawyers at Rainey Kizer. Mr. Phillips seeks hourly fees in the amount of between $230 and $240 per hour for the work he performed, and fees ranging from $185 to $195 per hour for the fees of his associates. These hourly rates are reasonable in the Nashville market, and Colony admits as much in its response brief (Docket No. 80 at 8).

Based upon the foregoing, Chad Youth will be awarded $94,500.41 ($252,001.10–25% = $189,000.82 ÷ 2 = $94,500.41, or $252,001.10 ÷ 2 = $126,000.55–25% = $94,500.41) in attorney's fees for the work performed by the attorneys at Morgan Lewis. Attorney's fees will also be awarded in the amount of $20,894.62 ($27,859.50–25% = $20,894.62) for the work performed by the attorneys at Rainey Kizer.

In determining to reduce the requested fees, the court is not suggesting that this was a run-of-the-mill or simple case. Quite the contrary, significant legal issues were raised and ably addressed by counsel, and both sides took the opportunity to litigate the matter fully. Moreover, the lawyers for Chad Youth achieved a very favorable result for their client because, if Judge Echols' merits ruling is upheld on appeal, Colony will be required to fund a significant percentage of the amount paid by Chad Youth to settle the underlying Pennsylvania action. Nevertheless, this case was decided strictly on the papers and the court finds that the amount awarded fully and fairly compensates Chad Youth's lawyers for the work performed.

## II. *CONCLUSION*

On the basis of the foregoing, the court will award Chad Youth $94,500.41 in attorney's fees for the work performed by Morgan Lewis, and $20,894.62 for the work performed by Rainey Kizer in this case.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 4007300

---

End of Document                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

E.E.O.C. v. Whirlpool Corp., Not Reported in F.Supp.2d (2011)

2011 WL 3321291

2011 WL 3321291
Only the Westlaw citation is currently available.
United States District Court,
M.D. Tennessee,
Nashville Division.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff,
v.
Carlota Freeman, Intervenor Plaintiff,
v.
WHIRLPOOL CORPORATION, Defendant.

No. 3:06–cv–0593.
|
Aug. 2, 2011.

**Attorneys and Law Firms**

Deidre Smith, Faye A. Williams, Equal Employment Opportunity Commission, Memphis, TN, Sally Ramsey, Equal Employment Opportunity Commission, Nashville, TN, for Plaintiff.

Helen Sfikas Rogers, Siew–Ling Shea, Rogers & Associates, Nashville, TN, Andy L. Allman, Kelly, Kelly & Allman, Hendersonville, TN, for Intervenor Plaintiff.

Adam Carl Wit, Asilia S. Backus, David Christlieb, Keith C. Hult, Littler, Mendelson, P.C., Chicago, IL, Timothy K. Garrett, Bass, Berry & Sims, Nashville, TN, for Defendant.

*ORDER*

JOHN T. NIXON, Senior District Judge.

**\*1** Pending before the Court are Intervenor Plaintiff Carlota Freeman's ("Plaintiff") First Motion for Attorney Fees and Costs ("First Fee Motion") (Doc. No. 209), which was filed along with a Memorandum in Support (Doc. No. 210), and Second Motion for Attorney Fees and Costs ("Second Fee Motion") (Doc. No. 229) (collectively, "Plaintiff's Fee Motions"). Also pending before the Court is Plaintiff's Motion for Review of the Final Taxation of Costs ("Motion for Review"). (Doc. No. 223.) Defendant Whirlpool Corporation ("Defendant") has filed a Response in Opposition to

Plaintiff's Fee Motions (Doc. No. 231), as well as a Response in Opposition to Plaintiff's Motion for Review (Doc. No. 224). For the reasons discussed herein, Plaintiff's Fee Motions and Plaintiff's Motion for Review are **GRANTED,** with the modifications discussed herein. Defendant is **ORDERED** to pay attorney's fees and costs consistent with this Order.

**I. BACKGROUND**

*A. Factual Background*
The Court adopts the Findings of Fact section of the Memorandum Order entering judgment in favor of Plaintiff (Doc. No. 194 at 2–6), unless otherwise noted.

*B. Procedural Background*
The Equal Employment Opportunity Commission (EEOC) initiated this suit against Defendant on June 6, 2006. (Doc. No. 1.) Plaintiff intervened in the action on July 24, 2006, and alleged causes of action for impermissible racial and sexual discrimination in violation of Title VII and 42 U.S.C. § 1981. (Doc. No. 9.) A bench trial was held from February 24 to 27, 2009, and this Court ruled in Plaintiff's favor on all claims. (Doc. No. 194.) The Court awarded total damages in the amount of $1,073,261.00 ($773,261.00 in front pay and back pay and $300,000.00 in compensatory damages). (*Id.*) Defendant filed a Motion to Alter or Amend the Judgment on January 15, 2010. (Doc. No. 196.)

Plaintiff's First Fee Motion (Doc. No. 209) and supporting Memorandum (Doc. No. 210) were filed on February 20, 2010. Defendant filed a Response in Opposition (Doc. No. 213) and a Memorandum in Support (Doc. No. 214) on March 1, 2010. The Clerk of Court entered a Taxation of Costs against Defendant in the amount of $4,570.95 on March 5, 2010. (Doc. No. 217.) The parties jointly filed a Motion to Stay Plaintiff's First Fee Motion (Doc. No. 220) on March 9, 2010, pending the outcome of Defendant's Motion to Alter or Amend the Judgment, which this Court granted (Doc. No. 222). While Defendant's Motion to Alter or Amend was pending, Plaintiff filed her Motion for Review on March 22, 2010. (Doc. No. 223.) This Court then denied Defendant's Motion to Alter or Amend the Judgment on March 31, 2011. (Doc. No. 226.) Plaintiff subsequently filed her Second Fee Motion on April 14, 2011. (Doc. No. 229.)

## II. LEGAL STANDARD

District courts have discretion pursuant to 42 U.S.C. § 1988 to award attorney's fees to a prevailing party in a civil rights suit. *Loudermill v. Cleveland Bd. of Educ.,* 844 F.2d 304, 310 (6th Cir.1988). Although discretionary, a district court should award fees to a plaintiff if that plaintiff prevails. *Gregory v. Shelby Cnty., Tenn.,* 220 F.3d 433, 447 (6th Cir.2000) (*citing Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402–03, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)). The first step in calculating reasonable attorney fees "is the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis,* 404 F.3d 404, 415 (6th Cir.2005) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The court should consider twelve factors when determining the reasonableness of the hours and rate:

> **\*2** (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley,* 461 U.S. at 430 n. 3.

Generally, there is a "strong presumption" that a prevailing party is entitled to the lodestar amount. *Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir.2000) (citing *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)). However, a court may adjust the lodestar "to reflect relevant considerations" of the particular case, including the abovementioned twelve factors. *Adcock–*

*Ladd,* 227 F.3d at 349. " 'Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.' " *Geier v. Sundquist,* 372 F.3d 784, 792 (6th Cir.2004) (quoting *Hensley,* 461 U.S. at 434 n. 9). In most cases, "the most crucial factor is the degree of success obtained." *Hensley,* 461 U.S. at 436. Although district courts have discretion in determining the proper award, they must "consider the relationship between the extent of success and the amount of the fee award." *Id.* at 438. Ultimately, district courts should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.

## III. ANALYSIS

Plaintiff seeks attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54, 42 U.S.C. § 1981, and 42 U.S.C. § 2000e, for work completed over the course of almost five years of litigation. Throughout this action, Plaintiff has been represented by two attorneys: Helen Rogers of Nashville, Tennessee, and Andy L. Allman, of Hendersonville, Tennessee. (Doc. Nos.209, 229.) Plaintiff requests $187,342.90 for Ms. Rogers' services and $56,105.00 for Mr. Allman's services, for a total of $243,447.90. (Doc. Nos. 210–1, 210–2, 229–1, 229–2.) Additionally, Plaintiff requests $37,5141.97 in costs and expenses related to the litigation. (*Id.*) Thus, the full amount that Plaintiff seeks from Defendant is $280,959.87. Defendant raises several challenges to Plaintiff's request, which are addressed below.

### A. Identification of Timekeepers and Reasonableness of Fees

Plaintiff seeks a total of $77,849.90 for seven employees performing work for Ms. Rogers over the course of litigation. Defendant urges the Court to refuse Plaintiff's request for these employees' fees because Ms. Rogers "does not identify seven timekeepers or provide supporting documentation to justify the reasonableness of their fees." (Doc. No. 231 at 2.) Specifically, Defendant alleges that Plaintiff "has not met her burden of establishing that the rate or amount of time billed is reasonable with regard to the following timekeepers: Lawrence Kamm ($1,935.50), Katie Marcottee ($45.00), Robin Barry ($970.00), Alan Gentry ($13,155.65), Nancy Hardt ($61,072.75), Audrey Anderson ($150.00), and Charla Chumney ($521.00)." (*Id.* at 3.) Defendant argues that Plaintiff's failure to identify the positions

2011 WL 3321291

and qualifications of each employee—whether they are lawyers, paralegals, or administrative staff—precludes recovery for these fees. (*Id.* at 4.)

**\*3** "The party seeking attorneys fees bears the burden of documenting [her] entitlement to the award." *Reed v. Rhodes,* 179 F.3d 453, 472 (6th Cir.1999) (citing *Webb v. Dyer Cnty. Bd. of Educ.,* 471 U.S. 234, 242, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985)). In order to enable the Court to make a determination regarding the reasonableness of the hours and rates requested, "[t]he fee applicant 'should submit evidence supporting the hours worked and rates claimed.' " *Reed,* 179 F.3d at 472 (citing *Hensley,* 461 U.S. at 433). Where the documentation is inadequate, the court may reduce the award accordingly. *Hensley,* 461 U.S. at 433.

Defendant is correct in asserting that Plaintiff's documentation in support of the hourly rate charged to each of the seven employees listed above is insufficient. This Court is unable to determine with a high degree of certainty that some of the listed employees are entitled to the rate at which Plaintiff requests compensation. However, Ms. Rogers' affidavit in support of the fees provides some indication of the qualifications and positions of her employees, from which the Court can deduce that these employees are paralegals. After discussing the traditional hourly rates for attorneys in her practice, Ms. Rogers stated that she "charge[s] between Seventy–Five Dollars ($75) and One Hundred Dollars ($100) per hour for [her] paralegals' time." (Doc. No. 210–2 at 2.) Ms. Rogers further stated that her "paralegals are experienced in this field and assisted greatly in this case ... [and] have undergraduate degrees and paralegal certificates." (*Id.*) Plaintiff's First Fee Motion only identifies two attorneys from Ms. Rogers' office who worked on this case: Ms. Rogers and Siew–Ling Shea. (*Id.*) From this information, the Court finds that the remaining employees are paralegals, since they were not identified specifically as attorneys and were billed at rates consistent with the firm's standard paralegal range.

Fees for paralegal services are recoverable; the Supreme Court has found that the term "attorney fees" as used in 42 U.S.C. § 1988 embraces the fees of paralegals as well as attorneys. *Richlin Sec. Serv. Co. v. Chertoff,* 553 U.S. 571, 580, 128 S.Ct. 2007, 170 L.Ed.2d 960 (2008). In determining the reasonableness of paralegal fees, "the court should scrutinize the reported hours and

suggested rates in the same manner it scrutinizes lawyer time and rates." *Ramos v. Lamm,* 713 F.2d 546, 559 (10th Cir.1983). Although Plaintiff provides significant documentation on the hourly activities of each employee, counsel for Plaintiff failed to provide evidence to justify her request for these employees' hourly rates, nor does counsel provide evidence that these requested rates are the prevailing market rate for paralegal work. A judge in this District, when faced with the same lack of documentation or support for paralegal fees of upwards of $100.00 per hour, found that $75.00 per hour for paralegal time was the appropriate rate. *Baltimore v. City of Franklin,* No. 06–0578, 2008 WL 2437637, at \*6 (M.D.Tenn. June 16, 2008). Accordingly, in light of *Baltimore* and the lack of documentation provided by Ms. Rogers justifying higher hourly rates, the Court will award those employees that it has determined to be paralegals a rate of $75.00 per hour for the hours reasonably expended on this litigation.

**\*4** Based on Ms. Rogers' affidavit and the requested rates, the Court assumes that the following employees are paralegals: Lawrence Kamm, Audrey Anderson, Robin Barry, Alan Gentry, Nancy Hardt, and Carla Chumney. Accordingly, the Court will award Plaintiff fees for these employees at the rate of $75.00 per hour for the hours that they reasonably expended on this litigation.

The Court cannot assume, however, that Ms. Marcotte is a paralegal. Plaintiff requests a total of $45.00 for her work at a rate of $45.00 per hour. This requested rate falls well below the standard range for paralegals at Helen Rogers & Associates. (Doc. No. 210–2 at 2.) The Court therefore assumes that Ms. Marcotte is neither a paralegal nor an attorney. Owing to the lack of sufficient detail regarding her position or qualifications, the Court finds the documentation inadequate to support an award of fees for Ms. Marcotte's work. Accordingly, the Court will reduce Plaintiff's request for fees as it pertains to work performed by Ms. Marcotte in the amount of $45.00.

### B. Reasonableness of Attorney Helen Rogers' Hourly Rates

Plaintiff seeks an hourly rate for Ms. Rogers ranging from $150.00 to $350.00 per hour for 286.35 hours over the course of litigation, for a total of $92,165.00. Defendant urges the Court to reduce Plaintiff's requested fees for Ms. Rogers because "the hourly rates for work performed by [Plaintiff's] attorneys are unreasonable." (Doc. No. 231 at 2.) Specifically, Defendant argues that "Ms. Rogers'

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 3321291

rate should be reduced to account for the drastic increase of her billing rate over the course of this litigation," because "[t]here is no explanation provided as to how the [hourly] rates were calculated or what system was used to determine the amount or timing of rate increases." (*Id.* at 5.) Defendant proposes that the Court award Ms. Rogers an hourly rate of $225.00 for all hours billed above that rate, for a total reduction of $29,323.75. (*Id.* at 5.)

Ms. Rogers' affidavit reveals that Ms. Rogers has practiced law since 1980 and is a senior member of her firm. (Doc. No. 210–2 at 1.) Additionally, she is certified as a Civil Trial Specialist by the Tennessee Commission of Continuing Legal Education & Specialization and the National Board of Trial Advocacy, and she is a Rule 31 Mediator. (*Id.*) However, Plaintiff provides no supportive documentation justifying or explaining the multiple increases in Ms. Rogers' hourly billing rate from $150.00 to $350.00 during the course of this litigation. Ms. Rogers' affidavit only enumerates her professional qualifications and states that her "usual and customary rates for professional services since 2004 when [she] began representing [Plaintiff] ... has ranged from One Hundred Fifty Dollars ($150) per hour to Three Hundred Fifty Dollars ($350) per hour." (Doc. No. 210–2 at 2–3.) Plaintiff states in conclusory fashion that the "hourly rates billed for the attorneys involved in this case are in keeping with the market rates prevailing in the community for similar services by lawyers of reasonable skill, experience, and reputation" (Doc. No. 210 at 6), but provides no documentary support other than the affidavit of Plaintiff's counsel to substantiate such a claim.

 *5 In 2008, a judge in this District awarded a rate of $250.00 to $275.00 per hour to three attorneys who provided documentary support indicating that their rates "were consistent with fee awards to other Nashville-based attorneys in other civil rights cases before courts in this district." *Ibarra v. Barrett,* No. 05–0971, 2008 WL 2414800, at *2 (M.D.Tenn. June 12, 2008). On another occasion, after ordering a decrease from a requested hourly rate of $350.00 per hour, a judge in this District granted an hourly rate of $275.00 per hour for an attorney who had been in private practice for fifteen years and focused his practice on civil rights. *Randolph v. Schubert,* No. 06–0050, 2007 WL 2220407, at *2–3 (M.D.Tenn. July 27, 2007). In both cases, the rates requested by the attorneys were supported by affidavits from outside counsel. Plaintiff has provided no such documentary

support here, nor justification as to why or how she earned a more than a 100 percent increase in her hourly billing rate during the course of this litigation.

The Court is persuaded that Ms. Rogers' proposed hourly rates of $300.00 and $350.00 are excessive based on awards in recent cases involving lawyers with similar experience, and the lack of sufficient evidence provided to justify her rate as comporting with prevailing market values. However, based on Ms. Rogers' substantial experience and the rates awarded to similarly experienced attorneys in this District, the Court finds that Defendant's proposed reduction in Ms. Rogers' rate is too drastic. Further, this Court has acknowledged that in some instances it is appropriate to stagger an attorney's hourly rate over the course of litigation. *Harris v. Metro. Gov't of Nashville,* No. 04–0762, 2009 WL 2423306, at *4 (M.D.Tenn. Aug.6, 2009). Accordingly, in light of the prevailing market rates that judges within this District have acknowledged, the Court finds that a reduction to $275.00 per hour is warranted for Ms. Rogers' hours billed at or above $300.00. The Court will not otherwise reduce Ms. Rogers' rates for hours that were reasonably expended on this litigation.

### C. Reasonable Relation of Time Spent to Litigation

Defendant further urges the Court to reduce Plaintiff's requested fees because "the time spent [by Plaintiff's attorneys] was not reasonably related to the litigation." (Doc. No. 231 at 2.) Specifically, Defendant alleges that Plaintiff's counsel seeks to recover "at least $6,595.50 in fees for time spent on work for other cases or unrelated matters," such as "time spent related to [Plaintiff's] claim for social security disability benefits, for workers' compensation benefits, and other matters unrelated to this case." (*Id.* at 6.) Defendant objects to a total of sixty-two individual entries for time spent by Ms. Rogers and her employees. (Doc. No. 231–1.)

The Supreme Court has held that a district court should exclude from the lodestar calculation hours that were not "reasonably expended" on pursuing the immediate litigation. *Hensley,* 461 U.S. at 434. As such, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obliged to exclude such hours from his fee submission." *Id.* Where "[n]o information has been provided regarding the relevance or relationship

of the other matters ... for which professional time was expended to the present case," fees requested for time spent on those matters will be rejected. *Tobin v. Gordon,* 614 F.Supp.2d 514, 526–27 (D.Del.2009). The Court therefore declines to award to Plaintiff any fees billed by her attorneys for time entries that are unrelated to her successful civil rights claims.

**\*6** Defendant claims that Ms. Rogers personally billed a total of $4,007.50 for time entries unrelated to this litigation. (Doc. No. 231–1.) The Court finds that the majority of the entries Defendant claims were unrelated were, in fact, reasonable expenditures of Ms. Rogers' time as they related directly to the litigation. For example, Defendant challenges multiple entries where Ms. Rogers' time entries dealt with Martin Holmes. A review of the case docket reveals that Mr. Holmes was a co-counsel for Plaintiff (Doc. No. 83) until January 27, 2009, at which point this Court permitted him to withdraw his representation owing to a conflict of interest (Doc. No. 91), and Ms. Rogers stopped billing time entries relating to him.

Nevertheless, the Court does find that several of Ms. Rogers' time entries were not reasonably expended on this litigation. On several occasions, Ms. Rogers submitted time entries for work related to Plaintiff's Social Security Administration request, workers' compensation claims, and disability claims.[1] There is nothing in the record connecting these claims to the instant litigation. As such, the Court finds that these specific entries were not reasonably expended on this litigation. Accordingly, the Court will reduce Plaintiff's award by 3.40 hours for time spent by Ms. Rogers on matters not related to the litigation.

[1]   The Court finds that Ms. Rogers' time entries on the following dates were not reasonably expended in relation to the immediate litigation: November 8, 2007; November 11, 2007; December 12, 2007; April 24, 2008; January 18, 2009. (*See* Doc. No. 210–2 at 10, 12, 14.)

Similarly, the Court finds that Defendant is correct in challenging a time entry for Robin Barry on September 28, 2005, wherein Ms. Rogers billed 1.9 hours for Barry to "[d]raft response to Whirlpool position statement: letter to D. High enclosing proposed response and EEOC ltr" (Doc. No. 210–2 at 26). Defendant alleges that High was Plaintiff's workers' compensation attorney (Doc. No.

231 at 6), and the Court finds no record of High's direct involvement in this litigation. The Court therefore must assume that he is unrelated to this litigation. Because this billing entry consisted of two activities and one was unrelated to this litigation, the Court finds that a fifty percent reduction is warranted for this time entry. As such, the Court will reduce Plaintiff's award by 0.95 hours for the time spent by Robin Barry on this particular task.

Finally, the Court finds that Defendant is also correct in challenging a portion of the time entries for work performed by Nancy Hardt, which Defendant alleges is unrelated to the litigation. Ms. Hardt billed multiple entries relating to Plaintiff's workers' compensation claims, Social Security claims, and disability claims.[2] There is nothing in the record connecting these claims to the instant litigation. As such, the Court finds that these specific entries were not reasonably expended on this litigation. Where the documentation includes multiple activities per time entry and the Court can determine that the entry partially related to the litigation, the Court will only partially reduce the fees requested to account for unrelated activities. Accordingly, the Court will reduce Plaintiff's award by 10.60 hours for time spent by Ms. Hardt on matters not related to the litigation.

[2]   The Court finds that Ms. Hardt's time entries on the following dates were not reasonably expended in relation to the immediate litigation: November 1, 2006; August 8, 2007; August 13, 2007; August 15, 2007; October 31, 2007; November 15, 2007 (one-half reduction); April 18, 2008 (one-half reduction); April 23, 2008; April 30, 2008; June 17, 2008; July 16, 2009; July 22, 2009; January 4, 2010 (one-third reduction); January 6, 2010; January 7, 2010; February 11, 2010, March 10, 2010 (one-half reduction); March 22, 2010; July 28, 2010 (one-half reduction); February 14, 2011 (one-half reduction). (*See* Doc. No. 210–2 at 30, 36, 41, 48–49, 59, 60–61; Doc. No. 22902 at 4–5.)

### D. Unreasonableness or Duplication of Fees for Clerical Tasks

**\*7** Defendant further urges the Court to reduce Plaintiff's requested fees because Plaintiff's "fees sought include fees for clerical tasks not recoverable as attorneys fees or was otherwise excessive or duplicative." (Doc. No. 231 at 2.) Specifically, Defendant alleges that Plaintiff seeks compensation for clerical work and for fees resulting from "overstaffing or duplicative efforts, excessive overbilling,

E.E.O.C. v. Whirlpool Corp., Not Reported in F.Supp.2d (2011)

2011 WL 3321291

and unnecessary time spent on simplistic tasks." (*Id.* at 7, 9.)

### 1. *Time Spent on Clerical Work*

Defendant seeks to reduce the fees sought by two of Ms. Rogers' employees, Nancy Hardt and Alan Gentry, by seventy-five percent, arguing that approximately seventy percent of their entries "are for purely clerical tasks and the remaining entries include a reference to a clerical task with an unknown amount of time expended on said task." (*Id.* at 8.) Defendant argues that clerical activities, such as indexing documents, reviewing and organizing correspondence and pleadings, managing calendars, printing documents, making copies and preparing poster exhibits, should not be compensated as legal work. (*Id.*)

A district court within the Sixth Circuit has found that "[t]ime spent by a lawyer on purely clerical matters not calling for the exercise of legal expertise or judgment, and which could be equally well performed by clerical staff, should not be recoverable under § 1988." *Tierney v. City of Toledo,* No.83–430, 1989 WL 161543, at *12 (N.D.Ohio Aug.28, 1989). Other district courts within this Circuit have arrived at a similar conclusion, albeit for clerical fees relating to non-civil rights claims. *See Richards v. Johnson & Johnson,* No. 08–279, 2010 WL 3219138, at *7 (E.D.Tenn. May 12, 2010) (finding that clerical tasks "are part of the overhead cost necessary to operate any law firm, and should not be compensated for a fee award"); *Ferrero v. Henderson,* No.00–00462, 2005 WL 1802134, at *3 (S.D.Ohio July 28, 2005). Additionally, the Sixth Circuit declined to find abuse of discretion where a district court reduced a fee award by striking clerical tasks, finding that "[w]hile reviewing correspondence can constitute legal work, receiving and filing correspondence presumably constitutes clerical work." *B & G Mining, Inc. v. Dir., Office of Workers' Comp. Programs,* 522 F.3d 657, 666 (6th Cir.2008).

In light of the foregoing, the Court will decline to award fees to Plaintiff for hours billed by her attorneys that amount to clerical tasks and constitute the overhead cost normally expected in legal practice. The Court finds no evidence for Defendant's allegation that Ms. Hardt or Mr. Gentry billed in excess of seventy percent of their time to clerical tasks. However, after reviewing their time entries, the Court finds that each billed approximately seven percent of their total billed hours to items that

are classifiable as clerical. In particular, both employees repeatedly billed time for entries such as copying files, organizing documents, and mailing correspondence. As such, the Court will reduce the final hours calculated for both Mr. Gentry and Ms. Hardt by seven percent.

### 2. *Duplicative, Excessive, or Unnecessary Billing*

**\*8** Defendant further seeks to reduce the fees sought by Ms. Rogers and her employees by five percent for duplicative efforts, overstaffing and overbilling, and unnecessary time spent on simplistic tasks. Defendant argues that Ms. Rogers' "fee submission is replete with entries for intra-office conferences, emails between counsel and paralegals in the same office, and multiple entries by many individuals to 'review' the file." (*Id.* at 9.) Defendant argues that the "duplicative and excessive time spent on this matter is without explanation and [Defendant] should not be forced to compensate counsel for [Plaintiff] for their own inefficiency." (*Id.*)

The Sixth Circuit has recognized "the propriety of across-the-board reductions based upon excessive or unnecessary hours." *Hisel v. City of Clarksville,* No. 04–0924, 2007 WL 2822031, at *4 (M.D.Tenn. Sept.26, 2007) (citing *Auto Alliance Intern., Inc. v. U.S. Customs Serv.,* 155 F. App'x 226, 228 (6th Cir.2005)). However, the Sixth Circuit has also held that "time spent by counsel discussing the case is properly compensable, and the mere fact that attorneys confer with one another does not automatically constitute duplication of efforts." *Sigley v. Kuhn,* No. 98–3977, 2000 WL 145187, at *8 (6th Cir. Jan.31, 2000) (quoting *Glover v. Johnson,* 138 F.3d 229, 252 (6th Cir.1998)). Only in certain specific instances will the Sixth Circuit rely on "the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services." *Northcross v. Bd. of Ed. of Memphis City Schs.,* 611 F.2d 624, 636–37 (6th Cir.1979).

After reviewing a number of cases in which a percentage reduction was found to be warranted, the Court finds that the extent of the alleged duplicative or excessive billing in this case does not rise to the requisite level. Defendant's conclusory allegations that Plaintiff repeatedly overbilled or engaged in duplicative billing are insufficient to warrant an across-the-board reduction of Plaintiff's remaining requested fees, where the requested reduction is not proportional to the instances that Defendant cites as indicative of the overall trend of duplication or excess.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.4004 Filed 07/12/16 Page 81 of 117
E.E.O.C. v. Whirlpool Corp., Not Reported in F.Supp.2d (2011)
2011 WL 3321291

Although another judge in this District has found such reductions warranted in the past, the reductions were imposed for significantly more egregious infractions that were identified at a much higher rate of occurrence. *See Hisel,* 2007 WL 2822031, at *5–6 (reducing the attorney fee award by twenty five percent for excessive billing for simplistic tasks where the issues in the case were "hardly new or novel to Plaintiff's counsel"). As such, Defendant's request to reduce Plaintiff's fee award on these grounds is denied.

### E. Block Billing

Defendant further urges the Court to reduce Plaintiff's requested fees by fifteen percent because Plaintiff's "block billing and vague time records prevent meaningful review." (Doc. No. 231 at 2.) Specifically, Defendant alleges that Plaintiff's "billing records contain vague entries and excessive block billing, without any means of apportioning the total time billed to individual tasks, making a detailed segregation of fees virtually impossible." (*Id.* at 12.)

 **\*9** Where a party provides "detailed, itemized billing records that specify, for each entry, the date that the time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and the specific task completed," the Sixth Circuit has held that "explicitly detailed descriptions are not required," even where "some of the time entries in counsel's billing statement provide only the briefest description of the task completed." *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 554 (6th Cir.2008). An across-the-board reduction of fifteen percent is unwarranted where, as here, "[c]ounsel's billing entries, when read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation, support the district court's determination that the hours charged were actually and reasonably expended in the prosecution of the litigation." *Id.* (citing *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). Counsel for Plaintiff satisfied that standard by enumerating in detail each activity for which she seeks recovery, as well as the increments of time spent on each item. To the extent previously discussed, the Court is able to identify distinct claims and determine with a high degree of certainty that the requested hours were actually and reasonably expended in the prosecution of the litigation. Again, Defendant's conclusory allegations that Plaintiff's documentation is insufficient to allow

adequate judicial review will not suffice in securing such a significant reduction in Plaintiff's requested fees. As such, Defendant's request to reduce Plaintiff's fee award on these grounds is denied.

### F. Lodestar Amount for Each Timekeeper

After making the foregoing reductions, the Court establishes the following lodestar amounts for each timekeeper for which Plaintiff requests fees. The Court awards Plaintiff 160.3 hours billed by Mr. Allman at a rate of $350.00 per hour [3] for a total of $56,105.00. For the hours billed by Ms. Rogers, the Court awards Plaintiff 2.6 hours at $150.00 per hour, 4.0 hours at $160.00 per hour, 13.9 hours at $175.00 per hour, and 265.95 hours at $275 per hour, for a total of $76,598.75, accounting for the foregoing reductions made to her rate and hours reasonably spent on the litigation. For the hours billed by Siew–Ling Shea, the Court awards Plaintiff 4.8 hours at $100.00 per hour, 92.1 hours at $150.00 per hour, and 11.3 hours at $160.00 per hour, [4] for a total of $16,103.00. For the six employees whom the Court identified as paralegals, the Court awards Plaintiff a total of 816.43 hours at a rate of $75.00 per hour for a total of $61,232.25, accounting for the foregoing reductions made to rates and hours reasonably spent on the litigation.

[3]    Defendant has not objected to this rate, and the Court finds it reasonable based on Mr. Allman's significant experience in the area of civil rights employement discrimination litigation, and the fact that his rates remained consistent throughout the course of this litigation.

[4]    Defendant has not objected to these rates, and the Court finds them reasonable based on Ms. Shea's level of experience.

### G. Request for Lodestar Multiplier

Plaintiff seeks an upward adjustment of the lodestar amount to compensate for the expertise of her counsel and the success obtained, as well as the undesirability of the case. (Doc. No. 210 at 10–11.) It is unclear to the Court what multiplier Plaintiff requests, because Plaintiff's First Fee Motion alternately requests a lodestar multiplier of 2.0 times (*id.* at 9) or 0.75 times (*id.* at 12). Defendant objects to the imposition of any multiplier, arguing that an "upward adjustment to an attorney's lodestar hourly rate is permissible in certain rare and exceptional cases, supported by both specific evidence on

2011 WL 3321291

the record and detailed findings." (Doc. No. 231 at 10.) Plaintiff acknowledges this same "exceptional and rare" language and appears to argue that her case satisfies such a standard. (Doc. No. 210 at 10.)

**\*10** The Supreme Court recently recognized that there exist limited circumstances in which superior attorney performance is not adequately taken into account in the lodestar calculation for an award of reasonable attorney fees in a civil rights case under § 1988. *Perdue v. Kenny A. ex rel. Winn,* —— U.S. ——, ——, 130 S.Ct. 1662, 1674, 176 L.Ed.2d 494 (2010). However, the Supreme Court qualified this observation by stating that such "circumstances are rare and exceptional, and require specific evidence that the lodestar fee would not have been adequate to attract competent counsel." *Id.* (citing *Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). As such, an upward adjustment based on the quality of representation may be justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.' " *Blum,* 465 U.S. at 899. Plaintiff has provided no such evidence here, other than stating that the quality of her representation was exceptional. Additionally, Plaintiff does not claim that the representation was *superior* to what was expected, or that the success obtained was exceedingly unusual or extraordinary for a comparable civil rights claim.

When faced with a Title VII racial discrimination case that dealt with a city's repeated failure to promote a minority employee, a judge in this District found that a multiplier of 0.10 to be warranted based on the difficulty of proving the employee's claim, which had developed over a span of many years, and the exceptional success obtained by the employee's counsel in securing a settlement for his client. *Baltimore,* 2008 WL 2437637, at \*6. However, *Baltimore* is distinguishable from the present case. Although the length and difficulty of this litigation is not disputed, Plaintiff's claims of racial and sexual harassment focused on a relatively short period of time and a few isolated incidents witnessed by multiple employees of Defendant, providing a stronger evidentiary basis from which counsel could prove Plaintiff's case. While counsel for Plaintiff was ultimately successful in securing a judgment for Plaintiff, the Court finds that the evaluation of this success has already been subsumed by the calculation of the

attorneys' reasonable hourly rate. *See Geier,* 372 F.3d at 792 (quoting *Hensley,* 461 U.S. at 434 n. 9) (finding that " '[m]any of [the twelve factors discussed in *Hensley*] usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate' ").

Additionally, although Plaintiff secondarily requests the enhancement owing to the undesirability of the case, the Court finds the evidentiary basis for such a claim to be lacking. In *Baltimore,* the court found that "[m]any lawyers would not consider this case to be particularly 'desireable' [sic] to accept on a contingent fee basis where multiple current employees wished to sue their employer for what they considered to be a lengthy and pervasive policy or practice of racial discrimination." 2008 WL 2437637, at \*5. Here, however, counsel for Plaintiff has not presented any support regarding the contingent nature of their fees nor the rationale for determining the case to be desirable short of claiming that Plaintiff would be "looked upon by the public as playing the race card to receive benefits [she is] not otherwise entitled to." (Doc. No. 210 at 12.) Furthermore, Plaintiff's attorneys only represented one party, not multiple parties, significantly lessening the complexity and burden of the litigation. Accordingly, despite the success obtained by Plaintiff's counsel, the Court finds that a lodestar multiplier, reserved for cases in which exceptional success is obtained, is not warranted in this case.

### H. Costs Already Taxed

**\*11** Plaintiff also seeks review of the Clerk of Court's Final Taxation of Costs. Defendant urges the Court to deny Plaintiff's request in its entirety because Plaintiff "cannot recover for costs already taxed on March 15th, 2010." (Doc. No. 231 at 2.) Specifically, Defendant argues that "[t]he costs sought in [Plaintiff's] Motion, are the same costs sought in the Bill of Costs," and "should be denied because the Clerk already taxed these costs and because they are not recoverable as part of the Motion for Fees." (*Id.* at 12.)

Upon receiving a Motion for Review of the Clerk of Court's Final Taxation of Costs, the Court reviews the Clerk's determination *de novo. Reed v. Cracker Barrel Old Country Store, Inc.,* 171 F.Supp.2d 751, 755 (M.D.Tenn.2001). In seeking an alteration of the Clerk's taxation of costs, " '[t]he party objecting to the clerk's taxation has the burden of persuading the court that it was improper.' " *BDT Prods., Inc. v. Lexmark Int'l, Inc.,*

2011 WL 3321291

405 F.3d 415, 420 (6th Cir.2005) (quoting 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2679 (3d ed.1998)). Accordingly, the burden rests on Plaintiff to persuade the Court that the amount taxed by the Clerk of $4,570.95 is insufficient or inaccurate.

In making the determination of costs, the Clerk relied by incorporation on the arguments laid out in Defendant's Objections to Plaintiff's Amended Bill of Costs, and made the reduction as requested by Defendant for the reasons stated in Defendant's Objections. (Doc. No. 212 (referencing Doc. No. 208)). Therefore, in order to seek sufficient review of the Clerk's Taxation of Costs, Plaintiff must respond to Defendant's Objections in order to persuade the Court that the Taxation was improper. Plaintiff has largely failed to do so. In her Motion for Review, Plaintiff provides only a reference to her Memorandum in Support as providing the rationale for her request for review. (Doc. No. 223.) Upon examination, Plaintiff's Memorandum fails to address the majority of the costs denied by the Clerk, and provides rationales only for her requests for costs for court reporters' transcripts and costs for exemplification and copies. As such, the Court finds that Plaintiff has not carried her burden in challenging the Clerk's taxation of costs for a majority of the costs taxed. Therefore, requests for costs that were not granted by the Clerk are denied, apart from the requests for costs for court reporters' transcripts and copies, which will be addressed below.

### 1. Costs for Court Reporters' Transcripts

Plaintiff seeks an award of costs of $7,839.72 for fees for printed or electronically recorded transcripts necessarily obtained for use in this case. (Doc. No. 204 at 1.) Plaintiff's Memorandum asks the Court to award costs for deposition transcripts where the Court determines "it was 'necessarily obtained for use in the case.' " (Doc. No. 210 at 12) (quoting *LeVay Corp. v. Dominion Fed. Savings & Loan Assoc.,* 930 F.R.D. 522, 528 (4th Cir.1987)). Defendant challenged $3,804.47 of that request on the grounds that the costs were not recoverable as costs under 28 U.S.C. § 1920, or, in the alternative, were not reasonable or necessary for use in this case. (Doc. No. 208 at 2–12.)

### i. Not Recoverable as Costs

**\*12** Defendant challenged $1,687.25 in costs billed as printed or electronically recorded transcripts as non-

recoverable fees. Upon examination, these costs appear to be fees for legal services performed by Netwon, Becker, Bouwkamp and Pendoski, PC, Attorneys at Law. The itemized receipt billed Plaintiff for such activities as "review voicemail," "prepare letter," "examine law re: service of out of state witness subpoena," and "file pleading in district court." (Doc. No. 204–2 at 18–21.) The Court finds that these fees are for legal services are not recoverable as costs, especially not as costs billed as printed or electronically recorded transcripts. As such, the Clerk's denial of such costs to Plaintiff is affirmed.

Defendant further challenged $28.00 in costs for postage relating to copies of transcripts, arguing that such costs are not enumerated in 28 U.S.C § 1920 and are therefore not recoverable. Plaintiff does not provide support for her claim that 28 U.S.C § 1920 allows for recovery for postage costs, and the Court finds that she has not carried her burden in establishing that they are recoverable despite the fact that they are not specifically enumerated in the statute as recoverable costs. As such, the Clerk's denial of such costs to Plaintiff is affirmed.

### ii. Not Reasonable or Necessary

Defendant challenged $405.35 in costs for the depositions of Karen Carey and Donald Payne, arguing that the subpoenas *duces tecum* and subsequent depositions were used to obtain several documents and testimony as to the authenticity of those documents which was never used in trial. "Ordinarily, the cost of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party. Necessity is determined as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling." *Sales v. Marshall,* 873 F.2d 115, 120 (6th Cir.1989). As such, the Court finds Defendant's argument without merit, and awards Plaintiff the requested costs of $405.35 for the depositions.

Defendant further challenged $50.00 in costs for the appearance fee for Alan Bouwkamp, a court reporter from Connor and Associates, where Plaintiff canceled the deposition after the reporter had already arrived. Defendant argued that the appearance was unnecessary because Plaintiff knew the day prior that the deposition had been rescheduled and therefore could have prevented the costs from being incurred. (Doc. No. 208 at 8.) The Court finds that this cost was indeed unnecessary, as evidenced by the letter from Plaintiff's attorney attached as an exhibit to Defendant's Response in Opposition,

confirming the rescheduled deposition the day prior to the date the cost was incurred. (Doc. No. 208–4). As such, the Clerk's denial of such costs to Plaintiff is affirmed.

Finally, Defendant challenged three cost requests on the grounds that Plaintiff failed to specify the purpose of these costs and to what end they were used. Defendant challenged $1,155.99 in costs for work of a court reporter named LaVonne Cleeton for an unspecified deposition; $460.00 in costs for copies of transcripts and DVDs of video depositions which Defendant argued were unnecessary and solely for Plaintiff's counsels' convenience; and $17.88 for fees for printed and electronically recorded transcripts where the invoices in that category totaled less than the amount requested on Plaintiff's Bill of Costs. Because there is no documentation provided to identify the nature of these costs, the Court is unable to determine whether these costs were reasonably necessary for use in this case. As such, the Clerk's denial of such costs to Plaintiff is affirmed.

### 2. Costs for Exemplification and Making Copies

 **\*13** Plaintiff seeks an award of costs of $4,925.20 for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. (Doc. No. 204 at 1.) Defendant objects to the entire request for these costs, arguing that "because of the limited documentation provided by [Plaintiff] to support her purported copying and exemplification costs, it cannot be said that these costs were incurred for copies 'necessarily obtained for use in the case.' " (Doc. No. 208 at 11.) Plaintiff's Memorandum provides no indication

of the purpose or use of these copies, and only cites law standing for the proposition that such copies may be taxable as costs *if* the Court finds they were necessarily obtained for use in the case. (Doc. No. 210 at 13.) Without any supportive documentation or declarations as to the nature of the documents copied or their use, the Court is unable to determine whether these costs were reasonably necessary for use in this case. As such, the Clerk's denial of such costs to Plaintiff is affirmed.

### 3. Final Costs Taxed

After review of the Clerk's Final Taxation of Costs, the Court awards Plaintiff the original taxation of costs in the amount of $4,570.95, and further awards Plaintiff the additional costs of $405.35 for the depositions of Karen Carey and Donald Payne. In total, the Court awards Plaintiff costs in the amount of $4,976.30.

### IV. CONCLUSION

Plaintiff's Fee Motions and Motion for Review are **GRANTED** with the foregoing adjustments. The Court finds that Plaintiff is entitled to an award of **$56,105.00** for Mr. Allman's work, **$153,934.00** for Ms. Rogers' work, and **$4,976.30** in costs.

It is so ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 3321291

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 661716
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Eastern Division.

Brandon J. GIBSON, Plaintiff,
v.
Sheriff Zach SCOTT, et al., Defendants.

No. 2:12–cv–1128.
|
Feb. 19, 2014.

**Attorneys and Law Firms**

James Donald McNamara, Columbus, OH, for Plaintiff.

Scott Oliver Sheets, Mary Jane Martin, Columbus, OH,
for Defendants.


*OPINION AND ORDER*

GEORGE C. SMITH, District Judge.

**\*1** This matter is before the Court on Plaintiff Brandon
J. Gibson's Motion for Award of Attorney Fees and Costs
(Doc. 5). The motion is briefed and ripe for disposition.
For the reasons that follow, the Court **GRANTS in part**
Defendant's motion.


**I. Background**

On August 11, 2011, two officers of the Franklin County
Sheriff's Department, without a warrant, consent, or
the presence of exigent circumstances, entered Plaintiff's
home and forcibly arrested him without cause. The
officers also caused charges to be filed against Plaintiff
without cause. As a result of that conduct, Plaintiff
initiated this action on December 7, 2012, pursuant
to 42 U.S.C. § 1983, against Defendant Zach Scott,
in his official capacity as Sheriff of Franklin County,
Ohio, Defendant Franklin County Deputy Sheriff Candy
Clark, in her individual capacity, and Defendant Franklin
County Sergeant Joshua Short, in his individual capacity.
Plaintiff alleged various civil rights violations, including
asserting that Defendants illegally entered his home,
arrested him without probable cause, caused charges
to be filed against him without probable cause, and

used excessive force. Plaintiff also alleged that the
constitutional violations committed by Defendants Clark
and Short were proximately caused by customs, policies
and practices existing within the Franklin County Sheriff's
Department, and under Defendant Sheriff Scott.

In February 2013, and pursuant to Federal Rule of
Civil Procedure 68, Defendants served an offer to allow
judgment to be entered in favor of Plaintiff and against
Defendants, in the amount of $35,000 in damages for
all of Plaintiff's claims for relief. The Offer of Judgment
specified that Plaintiff shall be entitled to an award
of costs, including attorney fees, in an amount to be
determined by the Court, as if Plaintiff had secured
judgment against Defendants following a trial of this
action on the merits. Plaintiff accepted the Offer of
Judgment, and filed both his Notice of Acceptance and the
Offer of Judgment with this Court pursuant to Rule 68.
Plaintiff then filed his Motion for Award of Attorney Fees
and Costs, which is fully briefed and ripe for disposition.


**II. Discussion**

Under the "American Rule," parties must generally
pay their own attorney's fees regardless of the ultimate
outcome of a case. *Hardt v. Reliance Standard Life Ins.
Co., 560 U.S. 242, 130 S.Ct. 2149, 176 L.Ed.2d 998
(2010)*. Various federal statutes, however, alter the default
approach. *Id.* As applicable here, Congress enacted 42
U.S.C. § 1988 as an exception to the "general rule in
our legal system ... in order to ensure that federal rights
are adequately enforced." *Perdue v. Kenny A., 559 U.S.
542, 550, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010)* (internal
citations omitted). Pursuant to § 1988, in certain civil
rights actions, "the court, in its discretion, may allow
the prevailing party, other than the United States, a
reasonable attorney's fee as part of the costs." *See* 42
U.S.C. § 1988(b); *Hensley v. Eckerhart, 461 U.S. 424, 426,
103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)*. A party seeking
attorneys' fees under a fee-shifting statute such as § 1988
bears the burden to show that he or she is entitled to the
amount requested. *Hensley, 461 U.S. at 433; Webb v. Dyer
County Bd. of Educ., 471 U.S. 234, 242, 105 S.Ct. 1923, 85
L.Ed.2d 233 (1985)*.

**\*2** When considering a motion for attorneys' fees, a
court must first determine whether the petitioning
party was the prevailing party. *Hensley, 461 U.S. at
433*. A court next determines what fee is "reasonable."
*Id.* "The starting point for determining the amount of

reasonable attorney fees is the 'lodestar amount' which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods. Inc.,* 515 F.3d 531, 551–52 (6th Cir.2008) (citing *Hensley,* 461 U.S. at 433); *Waldo v. Consumers Energy Co.,* 726 F.3d 802, 821 (6th Cir.2013) ("[A] district court begins by determining 'the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." (internal quotation marks and citation omitted)). The resulting sum may be adjusted to reflect factors such as the "results obtained." *Hensley,* 461 U.S. at 434 (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)); *Gonter v. Hunt Valve Co., Inc.,* 510 F.3d 610, 621 (6th Cir.2007). In exceptional circumstances, an upward adjustment of the lodestar amount may be appropriate. *See Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Such an adjustment is only permissible if "the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged" and the success was "exceptional." *Id.* at 889. "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge." *Perdue,* 559 U.S. at 558.

In reaching a determination as to the proper amount of reasonable attorneys' fees to award in a particular case, the court may implement an "across-the-board reduction by a certain percentage as an alternative to line-by-line reductions." *Project Vote v. Blackwell,* No. 06–CV–1628, 2009 WL 917737, at *6 (N.D.Ohio Mar. 31, 2009) (citing *Alliance Int'l, Inc. v. United States Customs Serv.,* 155 F. App'x 226, 228 (6th Cir.2005)). In this process of determining reasonable attorney's fees, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice,* ––– U.S. ––––, ––––, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011). "There is no precise rule or formula for making these determinations [.]" *Hensley,* 461 U.S. at 436. Ultimately, however, "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination ... Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely disparate awards may be

made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case." *Perdue,* 559 U.S. at 558–59.

**\*3** Plaintiff's counsel, James McNamara, avers that he has expended a total of 169.90 hours in this litigation. And Plaintiff requests a rate of $450 per hour for the work of his counsel. Therefore, Plaintiff's lodestar fee request is 169.90 hours of work, at $450 per hour, for a total of $76,455. Plaintiff argues that the number of hours expended by his counsel is reasonable, and that his counsel's hourly rate is also reasonable. Additionally, Plaintiff seeks a 30 percent enhancement of the requested lodestar amount. Plaintiff argues that an upward adjustment of 30 percent is proper in this case considering how his counsel handled this case. Plaintiff argues that his counsel took steps to avoid protracted litigation, which benefits the lawyers, the Court, and the public at large.

Defendants argue that many of the hours expended by counsel were unnecessary and should not be compensated. Defendants assert that Plaintiff's counsel's time spent preparing a settlement brochure, which he submitted to the Franklin County Sheriff before filing the lawsuit, should not be compensated. Defendants also challenge the compensation request for counsel's travel time, the amount of time related to public records research and requests, the amount of time spent on legal research, and other unnecessary tasks. Defendants also argue that Plaintiff's counsel seeks compensation at an attorney rate for administrative tasks, such as organizing the file, getting checks, and copying and sending documents. Defendants generally argue that Plaintiff's counsel's use of "block billing" has compounded these problems. Finally, Defendants argue that Plaintiff's upward adjustment request is inappropriate and would result in a windfall to Plaintiff's counsel.

**A. Reasonableness of Hourly Rate**

Plaintiff's counsel requests an hourly rate of $450, and he submits his own affidavit and the affidavits of other attorneys, namely John Marshall, Michael Rourke, and Fred Gittes, who all support his hourly rate of $450. Plaintiff's counsel, Mr. McNamara, also refers the Court to another case in the Southern District of Ohio in which the Court approved his request for compensation at $400 per hour in a § 1983 action, specifically finding as credible the opinions of respected litigators Messrs.

2014 WL 661716

Marshall, Rourke, and Gittes. *See McConaha v. City of Reynoldsburg,* No. 2:06–cv–419 (S.D.Ohio July 2, 2008) (Frost, J.). Defendants argue that Plaintiff's hourly rate request of $450 per hour is unreasonable, and they submit affidavits of two attorneys with knowledge of the legal marketplace in Columbus and familiarity with the billing practices of attorneys advancing civil rights actions, who indicate that the hourly rate for partners in their firms are substantially less than that requested by Mr. McNamara.

It is undisputed that Plaintiff's counsel is an excellent attorney with decades of experience litigating civil rights matters. Such experience commands a premium hourly rate. Furthermore, the Court will not reach a conclusion that implicitly undermines a previous decision of this Court specifically finding that $400 is a reasonable hourly rate for Mr. McNamara. However, the Court is not convinced that an increase to $450 per hour is consistent with the prevailing market rate. Therefore, the Court finds that Mr. McNamara has demonstrated that the prevailing market rate for someone with his skill, experience, and reputation is $400 per hour.

*4 Despite reaching this finding as to a reasonable hourly rate, the Court is mindful that Plaintiff's counsel's billing statement contains all types of work consistent with prosecuting a case, from purely secretarial and non-legal services, to services that can be performed by a paraprofessional, to work properly handled by an attorney. The Court is not condemning Plaintiff's counsel's decision not to have a support staff, but believes this circumstance should be considered in determining the appropriate amount of attorney's fees to award in this case. In other words, while Plaintiff's counsel's experience may command $400 per hour for his legal services, he should not be compensated at $400 per hour for work that readily may be completed by a paralegal, or for purely secretarial and non-legal services. For this reason, and for additional reasons expressed below, the amount of attorney's fees awarded will be substantially less than the amount Plaintiff requests.

## B. Reasonableness of Hours Billed

As noted above, Plaintiff's counsel seeks compensation for purely secretarial and nonlegal services. Plaintiff's counsel has attempted to bill for time associated with non-legal services, such as "organiz[ing] file," "get check for public records," "copy and send documents to client," and "get notebooks and dividers." (*See* McNamara

Billing Statement, Doc. 18–1). The Court will not award attorney's fees for these services, as purely clerical or secretarial tasks should not be billed (even at a paralegal rate), because "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley,* 461 U.S. at 437; *see Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). A "purely clerical or secretarial" activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead. *Holmes v. Astrue,* No. 3:08–1829, 2010 WL 3220085, *2 (D.S.C. Aug.12, 2010) (citing *Jenkins,* 491 U.S. at 288 n. 10); *see Shaffer v. Colvin,* No. 4:12– CV–3121, 2014 WL 185779 (N.D.Ohio Jan.16, 2014) (noting the distinction between billable legal work and non-billable clerical work).

It is not clear how many hours Plaintiff's counsel is attempting to bill for purely clerical or secretarial tasks because of his use of "block billing." Block billing involves identifying more than one task in a single billing entry, and Plaintiff's counsel's fees statement contains numerous block billing entries. Block billing is not *per se* improper as the underlying question is whether the fee is reasonable. *See Pittsburgh & Conneaut Dock Co. v. Director, Office of Workers' Compensation Programs,* 473 F.3d 253, 273 (6th Cir.2007) (holding that the proper question is whether the fee is reasonable and noting that other "circuits have rejected block-billing objections to fee awards in a number of contexts."). However, block billing becomes problematic in determining the reasonableness of fees when, as is the case here, counsel works on the case by himself, apparently with no administrative or paralegal support staff.

*5 Because block billing does not provide detail as to how much time was spent on each particular task, Plaintiff's counsel's use of block billing makes it inherently difficult to determine the reasonableness of his billing entries. Particularly, some of the billing entries contain clerical work, activities generally performed by legal assistants, and attorney work. Thus, Plaintiff's counsel's block billing has resulted in various types of work, requiring different levels of skill, being included on the same entries. In response to Defendant's opposition brief, which pointed out this billing deficiency, Plaintiff's counsel did assign more detailed time allocations, but there remain numerous entries without detailed apportionment. For example, the entry for August 13,

2012, states: "1.70 [hours:] Finish draft of complaint, organize exhibits, pull my hours, call to client," and the entry for September 5, 2012, states: "2.20 [hours:] Get replacement notebooks, work on notebooks, call Crystal, call from client, do cover letters." (Doc. 18–1). As a result, the Court cannot, with line-item precision, determine the total amount of time Plaintiff's counsel has billed for purely clerical or secretarial tasks. Nonetheless, the Court will consider this circumstance in determining the appropriate reduction to the requested award.

Other factors necessitate a significant reduction in the number of hours allowed. In particular, the Court finds that Plaintiff's counsel spent excessive hours working on a "settlement brochure" and conducting legal research, considering the relatively straightforward facts of this case. Plaintiff's counsel spent approximately 38 hours working on the 150–page settlement brochure that was delivered to the Franklin County Sheriff's Office in September 2012. The settlement brochure contained Plaintiff's settlement proposal (which included a demand for $290,000, including attorney's fees), a draft complaint, a 47–page narrative discussion of Plaintiff's claims against Defendants, an affidavit of Plaintiff, an affidavit of Plaintiff's girlfriend who witnessed the events on August 11, 2011, an affidavit of a former officer of the Franklin County Sheriff's Department who also witnessed the events on August 11, 2011, and miscellaneous attachments, including copies of the criminal complaint filed against Plaintiff and other official documents pertaining to Plaintiff's arrest and charging. Three months after delivering the settlement brochure, Plaintiff initiated this action, and two months after that, Defendants served their offer of judgment, which Plaintiff accepted. Thus, the case did not proceed beyond the Complaint.

Plaintiff reasons that this case was resolved quickly after the filing of the Complaint primarily due to his counsel's strategy of gathering all accessible pertinent information and then presenting the Defendants with the 150–page settlement brochure prior to even filing the Complaint. Defendants assert that their counsel did not examine the settlement brochure until the Complaint was filed, in December 2012, and that it added nothing because, by the time the Complaint was filed, counsel for Defendants knew the facts of the case and had decided to effect a strategy to "quickly resolve a bad case and minimize the costs." (Defs.' Mem. in Opp., at 9, Doc. 11). Defendants assert that the settlement brochure had

"zero bearing on defense counsel's and the Defendants' decision to make an offer of Judgment." *Id.* The Court does not agree with Defendants' contention that no time spent on the settlement brochure should be compensated because they would have settled the case regardless of receiving the document. It was certainly reasonable for Plaintiff's counsel to submit a settlement proposal to Defendants in an effort to resolve this matter early. However, considering the straightforward facts of this case, a majority of the time spent on the document was unreasonable and will not be allowed.

**\*6** Plaintiff's counsel spent approximately 30 hours conducting legal research in this case, which was unreasonable. Plaintiff's counsel concedes that this case "[f]rom a purely technical, legal perspective ... presented a fairly standard series of issues[.]" (McNamara Aff. at ¶ 9). Despite this concession, Plaintiff's counsel does not explain why an attorney, with his exceptional experience litigating civil rights cases, including police misconduct matters, would need more than a few hours of legal research in this matter. Plaintiff plainly had the facts and law on his side. While it was appropriate for Plaintiff's counsel to thoroughly investigate the matter prior to filing the Complaint, and to inquire into whether any recent update or change in his area of practice could be at least potentially applicable, Plaintiff's counsel does not explain the necessity of the extent of his legal research. Accordingly, a majority of the requested hours for legal research will not be allowed.

The Court will also disallow a majority of the requested compensation for travel time. Plaintiff's counsel seeks compensation for travel to the Plaintiff's residence (the location of the arrest) on multiple occasions, to the offices of the attorneys who provided affidavits in support of his fee request, and to The Ohio State University law library. Plaintiff's counsel does not explain the necessity of his trips. For example, he does not explain why he did not use electronic means to correspond with others, to conduct all of his legal research, or why he needed to go to the location of the arrest on multiple occasions. Therefore, he has not shown that he should be compensated for all of the time associated with those trips. *See Stahl v. Taft,* No. 2:03–CV–597, 2006 WL 314496 (Feb. 8, 2006) (Smith, J.) (excluding requested travel time from compensation because the plaintiffs failed to establish the necessity of the travel). Like other tasks, Plaintiff's counsel's use of block billing makes it difficult to ascertain the amount

of time requested for travel. Nonetheless, the Court will consider this circumstance in determining the appropriate reduction.

Finally, many of the activities billed by Plaintiff's counsel are activities that could have been performed by a paraprofessional. For example, many tasks relate to counsel's investigation of the facts and gathering of evidence. Additionally, Plaintiff's counsel has billed for frequent correspondences with Plaintiff and other persons involved in the matter. Considering the absence of any support staff for Plaintiff's counsel, it is likely that many of these correspondences involved status inquiries and updates and other discussions not involving the dispensing of legal advice. Plaintiff's counsel clearly has billed at his full attorney rate for tasks that, while reasonably necessary, are more administrative or investigative in character and that could have been performed by a non-attorney. Such tasks should not be billed at a premium attorney rate, or even an attorney rate. As noted by the Supreme Court, "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Jenkins,* 491 U.S. at 288 n. 10 (quoting *Johnson,* 488 F.2d at 717). [1]

[1]     Activities that are properly performed by a paralegal include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Id.*

*\*7* Therefore, although still compensable, the Court will not award Plaintiff's counsel $400 per hour for activities that could have been performed by a non-lawyer. Because of Plaintiff's counsel's block billing, the Court cannot separate work that could have been done effectively by a non-attorney under supervision, with such tasks as drafting the Complaint and briefs on the attorney's fees issue. In lieu of attempting to assign each particular task a designation, and then assigning a discounted rate to the work that could have been done by a paralegal, the Court will take this circumstance into consideration in determining the appropriate across-the-board reduction.

Based on the foregoing, the Court will apply a 70 percent across-the-board reduction to the number of hours requested, for a recalculated total of 50.97 hours (169.90 hours reduced by 70 percent). At $400 per hour, the total award of attorney's fees is $20,388. The reduction takes into account the relatively straightforward facts of this case, Plaintiff's counsel's extensive experience litigating civil rights matters and the corresponding expectation that such experience should require less research on relatively straightforward legal issues, the fact that many of the hours were billed at a premium attorney rate for investigatory conduct, the fact that a number of hours billed were for purely secretarial and non-legal tasks, the fact that Plaintiff's counsel billed for unnecessary tasks, and finally the fact that this case was settled before progressing any further than the filing of the Complaint.

### C. Expenses

In addition to requesting attorney's fees, Plaintiff requests compensation for other litigation costs, primarily in the form of out-of-pocket expenses. An award of costs, under fee shifting civil rights statutes, includes out-of-pocket expenses that are reasonably incurred by an attorney and normally passed on to a fee-paying client. *Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir.1984). The requested out-of-pocket expenses total $657.76, and include the filing fee for the lawsuit, payment for public records, copies, postage, and other expenses. Defendants do not challenge the request for an award of these costs to Plaintiff in this case. Therefore, these out-of-pocket expenses will be awarded to Plaintiff. Adding the requested $657.76 in expenses to the allowed amount of attorney's fees, $20,388, results in a total award of $21,045.76.

### III. Conclusion

For the forgoing reasons, the Court **GRANTS in part** Plaintiff Brandon J. Gibson's Motion for Award of Attorney Fees and Costs (Doc. 5). Defendants shall pay Plaintiff's counsel, Attorney James McNamara, a total of $21,045.76 in attorney's fees and other costs.

The Clerk shall remove Document 5 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

2014 WL 661716

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 661716

---

**End of Document**                                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.4014 Filed 07/12/16 Page 91 of 117
Heath v. Metropolitan Life Ins. Co., Not Reported in F.Supp.2d (2011)

2011 WL 4005409

2011 WL 4005409
Only the Westlaw citation is currently available.
United States District Court,
M.D. Tennessee,
Nashville Division.

Gregory HEATH, Plaintiff,
v.
METROPOLITAN LIFE
INSURANCE COMPANY, Defendant.

No. 3:09–cv–0138.
|
Sept. 8, 2011.

**Attorneys and Law Firms**

James Gerard Stranch, III, Branstetter, Stranch &
Jennings, Nashville, TN, for Plaintiff.

Joel T. Galanter, Adams and Reese LLP, Nashville, TN,
for Defendant.

*ORDER*

JOHN T. NIXON, Senior District Judge.

 **\*1** Pending before the Court is Plaintiff Gregory Heath's
("Plaintiff" or "Mr. Heath") Motion for and Award
of Attorney's Fees and Reimbursement of Expenses
("Motion") (Doc. No. 37), filed with a supportive
Memorandum (Doc. No. 38), to which Defendant
Metropolitan Life Insurance Company ("MetLife") filed
a Response (Doc. No. 44). Plaintiff then filed a Reply
(Doc. No. 45–1) and Supplemental Citation of Authority
(Doc. No. 47) in further support of his Motion, and
Defendant also filed a further Response to the Supplement
(Doc. No. 48).

For the reasons stated below, Plaintiff's Motion is
**GRANTED.**

**I. BACKGROUND**
Plaintiff worked as a maintenance supervisor at a
Honeywell International, Inc. chemical plant in Illinois.
(Doc. No. 29 at 2.) As an employee, he participated in
the company's short-term and long-term disability Plans
administered by MetLife. (*Id.*) Plaintiff applied for long-
term disability ("LTD") benefits on August 10, 2006,
claiming that he was disabled, having been diagnosed with
segmental or spinal myoclonus and suffering from related
symptoms such as jerking, pain, fatigue and memory loss.
(*Id.* at 3.) MetLife approved Plaintiff's claim for LTD
benefits, effective September 22, 2006. (*Id.*)

Subsequently, MetLife continued to receive medical
information on Plaintiff's condition from his neurologist,
and also enlisted an investigator to perform surveillance
on Plaintiff regarding a tip that Plaintiff was working at
his family's health food store. (*Id.* at 3–5.) pj By letter
dated October 12, 2007, MetLife informed Plaintiff that,
based on a review of his claim to determine if he was
eligible for LTD benefits pursuant to the Plan, MetLife
was withdrawing the claim and no further benefits would
be paid past October 11, 2007. (*Id.* at 6.) After an appeal,
Defendant again denied Plaintiff's LTD benefits claim
and informed Plaintiff that he had exhausted all of his
administrative remedies. (*Id.* at 8–9.) On February 11,
2009, Plaintiff brought this action pursuant to section
502(e) of the Employee Retirement Income Security Act
of 1974 (ERISA), 29 U.S.C. § 1332(e), *et seq.* (Doc. No. 1.)

On August 31, 2009, Plaintiff and Defendant both filed
Motions for Judgment on the Administrative Record.
(Doc. Nos. 17 & 19.) Magistrate Judge Brown issued a
Report and Recommendation ("Report") on November
23, 2009, recommending that Plaintiff's Motion for
Judgment on the Administrative Record should be
granted in part and denied in part, that Defendant's
Motion for Judgment on the Administrative Record
should be denied, and that Plaintiff's claim for LTD
benefits should be remanded back to MetLife for
further consideration. (Doc. No. 29.) Magistrate Judge
Brown found that MetLife's denial of Plaintiff's LTD
benefits was arbitrary and capricious, specifically, that
MetLife had submitted a paper review and failed to
adequately consider Plaintiff's medical record. (*Id.* at
16.) However, Magistrate Judge Brown declined to
award benefits because there were factual issues to be
resolved regarding Plaintiff's condition. (*Id.*) The parties
subsequently filed a Joint Notice of Intent Regarding
Report and Recommendation ("Joint Notice") stating
that neither party intended to submit objections to the
Report, and that the claim would be remanded to MetLife.
(Doc. No. 34.) This Court adopted the Report in its
entirety on January 21, 2010. (Doc. No. 35.)

2011 WL 4005409

**\*2** On February 22, 2010, Plaintiff filed the Motion now under consideration (Doc. No. 37) along with a Memorandum in Support (Doc. No. 38), claiming entitlement to $69,750.00 in fees and expenses available under ERISA. Defendant filed its Response on March 19, 2010 (Doc. No. 44). Plaintiff filed a Motion for Leave to File Reply (Doc. No. 45), along with a copy of the Reply (Doc. No. 45–1) on April 7, 2010.

On April 26, 2010, Defendant filed a Response opposing Plaintiff's request for leave to file the Reply, asking in part for the Motion for Attorney's Fees to be held abeyance pending the Supreme Court's decision in *Hardt v. Reliance Standard Life Insurance Co.,* —— U.S. ——, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). (Doc. No. 46.) After the *Hardt* case was decided, Plaintiff filed a Supplemental Citation of Authority on May 26, 2010 (Doc. No. 47), and Defendant responded to this last filing on June 11, 2010 (Doc. No. 48). The Court ultimately granted Plaintiff leave to file his Reply later, on April 1,2011. (Doc. No. 51.)

## II. LEGAL STANDARD

In *Hardt,* the Supreme Court held that it is within the discretion of the court to award attorney's fees to either party in an action seeking relief under ERISA, but that this discretion is not unlimited. 130 S.Ct. at 2158. The Supreme Court held that § 1132(g)(1), which provides for the awarding of attorney's fees, contains a threshold requirement:

> [A] fees claimant must show "some degree of success on the merits" before a court may award attorney's fees under § 1132(g) (1). A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.' "

*Id.* (quoting *Ruekelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)) (internal citations omitted). In *Hardt,* after the district court noted its inclination to rule for the plaintiff but remanded her case to the insurer for further consideration of her disability claim, the insurer reversed course and determined that the plaintiff was entitled to benefits. *Id.* at 2154. The Court found that this was clearly more than a trivial success

or procedural victory, and reserved judgment on whether a remand order, without more, would constitute "some success on the merits" and make a claimant eligible for an award of fees. *Id.* at 2159. Once the district court determines the threshold requirement under § 1132(g) (1) has been met, however, there is discretion as to the decision to award fees. See *id.* at 2158.

Prior to *Hardt,* courts within the Sixth Circuit applied a five-factor test known as the "*King* factors" to determine whether to award fees. *Moore v. Menasha Corp.,* Case No. 1:08–cv–1167, 2011 U.S. Dist. LEXIS 20020, at \*5, 2011 WL 811150 (W.D.Mich. Mar. 1, 2011). The *King* factors are:

> **\*3** (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King,* 775 F.2d 666, 669 (6th Cir.1985). In *Hardt,* the Supreme Court analyzed an identical five-factor test employed by the Fourth Circuit and held that the test "bear[s] no obvious relation to ERISA § 1132(g)(1)'s text" and thus was not required. *Hardt,* 130 S.Ct. at 2158. Although the Supreme Court found that the test was not required, the Court stated that it "do[es] not foreclose the possibility that once a claimant has satisfied [the threshold] requirement, and thus becomes eligible for a fees award under ERISA § 1132(g)(1), a court may consider the five factors." *Id.* at 2158 n. 8.

District courts within the Sixth Circuit have generally continued to apply the *King* factors as allowed in *Hardt.* Some have indicated that these factors are no longer mandatory but continue to apply them. *See, e.g., Moore,* 2011 U.S. Dist. LEXIS 20020, at \*7, 2011 WL 811150 (stating that the *King* factors are no longer mandatory, but applying them because the court found them to be "a

2011 WL 4005409

useful guide to exercising its discretion" and "both parties brief[ed] [the factors] extensively"). Others have applied the *King* factors without any mention of *Hardt. See, e.g., Reese v. CNH Global N.V.,* Case No. 04–70592, 2011 U.S. Dist. LEXIS 70607, at *9–*11, 2011 WL 2600988 (E.D. Mich. June 30, 2011); *Loan v. Prudential Ins. Co. of Am.,* Civil Action No. 5:08–cv–38–JMH, 2011 U.S. Dist. LEXIS 51205, at *6–*13, 2011 WL 1793389 (E.D.Ky. May 10, 2011). In addition, at least one district court within this Circuit has decided not to apply the *King* factors after *Hardt. Pemberton v. Reliance Standard Life Ins. Co.,* Civil Action No. 08–86–JBC, 2011 U.S. Dist. LEXIS 24939, at *8–*9, 2011 WL 1314888 (E.D.Ky. Mar. 10, 2011) (declining to apply the *King* factors because they would "add nothing to the analysis of eligibility or reasonableness").

However, a recent unpublished Sixth Circuit opinion, reviewing a district court decision that occurred well before *Hardt,* noted that this Circuit "requires" consideration of the *King* factors. *McKay v. Reliance Standard Life Ins. Co.,* Nos. 10–5154; 10–5155, 2011 U.S.App. LEXIS 13143, at *22, 2011 WL 2518728 (6th Cir. June 27, 2011). The Circuit Court found that the factors were evaluated properly in favor of the plaintiff, and then, also, that *Hardt* 's requirement of "some degree of success" was met. Although this Court perceives that there may be some limitations to *McKay*—particularly given that the appellate court appears not to have been asked about the continued relevance of *King,* and the factors were clearly controlling at the time of the district court's decision—the opinion suggests that the *King* factors should not be cast aside. In a case following (and citing) *McKay,* a court in the Eastern District of Kentucky addressed *Hardt* first, and then performed an extensive analysis of the *King* factors. *Bio–Med. Applications of Ky., Inc. v. Coal Exclusive Co., LLC,* Civil No. 08–80–ART, 2011 U.S. Dist. LEXIS 91187, at *5–*21, 2011 WL 3568249 (E.D.Ky. Aug. 15, 2011).

**\*4** As such, while this Court is of the view that *Hardt* controls its ability to grant an award of fees in this case, *King* has not lost its vitality in this jurisdiction and should also be considered to guide the Court's exercise of discretion in assessing Plaintiff's request.

### III. ANALYSIS
As described above, Plaintiff argues in his Motion and subsequent filings that he succeeded on the merits so as to

be eligible for reasonable fees and costs pursuant to the Supreme Court's interpretation of § 1132(g)(1) in *Hardt,* and that the *King* factors tip in favor of an award to Plaintiff, too. (*See* Doc. Nos. 38 & 47.) Plaintiff also rejects Defendant's assertion that he agreed to forego seeking fees and costs. (Doc. No. 45–1.) Although Defendant leads with the latter argument regarding an agreement between the parties, he focuses more heavily on Plaintiff's entitlement to any award under *Hardt* or *King,* and attacks the requested fees as unreasonable and insufficiently documented. (Doc. Nos. 44 & 48.)

The Court will first address the issue of an agreement between the parties, and then will reach the substance of Plaintiff's request for fees and expenses.

### A. Agreement Between the Parties
Defendant claims in its Response that Plaintiff's request that this Court award him fees and expenses is in violation of the parties' agreement not to file objections to the Magistrate Judge's Report. (Doc. No 44 at 2– 3.) Defendant asserts that, per the agreement, Plaintiff implicitly agreed to forego further action in this Court. (*Id.*) In his Reply, Plaintiff argues primarily that the written agreement, which was contained in their Joint Notice (Doc. No. 34), was limited on its face to an arrangement not to file objections to the Report, and that no implicit agreement exists beyond this. (Doc. No. 45–1 at 2.)

Indeed, the Joint Notice only states that "[the parties] do not intend to submit any objection to the Magistrate Judge's Report and Recommendation." (Doc. No. 34.) It does not reference any agreement concerning a motion for attorney's fees, nor is it suggestive of such an agreement. Defendant has provided the Court with no other evidence that indicates that the parties in fact intended or understood the Joint Notice to bar Plaintiff from requesting a fee award. Thus, this argument must fail.

### B. Plaintiff's Eligibility to Receive An Award of Fees
Next, the Court turns to the threshold requirement of whether Plaintiff has had "some degree of success on the merits" so as to be entitled to a fee award under § 1132(e) (1). *Hardt,* 130 S.Ct. at 2158. Plaintiff argues that under *Hardt,* he has shown some degree of success on the merits, and, particularly, that his situation is similar to that of Ms.

2011 WL 4005409

Hardt, whose claim was remanded by the district court due to the failure of the insurer to perform an adequate review and ultimately received the desired benefits on remand. (Doc. No. 47 at 2.) Defendant responds that the district court in *Hardt* found compelling evidence that the plaintiff was totally disabled and stated as much prior to remand; here, however, the Report adopted by this Court did not conclude that Plaintiff was disabled and that unresolved factual issues necessitated a remand. (Doc. No. 48 at 2–3.) The point of distinction Defendant seeks to highlight is that "unlike the plaintiff in *Hardt,* it was not at all clear prior to remand, based on the evidence before MetLife up to that point, that Plaintiff was entitled to any benefits." (*Id.* at 3.)

**\*5** The Court must note at this juncture that Defendant's effort to distinguish this case from *Hardt* is undermined by its assertion in a previous filing that "the Plaintiff here is in the precise position as the *Hardt* plaintiff," such that *Hardt* would be binding in this case and the Court should disregard arguments in Plaintiff's Reply. (Doc. No. 46 at 2.) While it is obvious why Defendant has changed its position, Defendant's earlier claim that the plaintiff in *Hardt* and Mr. Heath are in the "precise position" as each other cannot be ignored.

While it is true that the Court's orders in this case lack the conclusiveness of the district court's in *Hardt* as to the plaintiff's entitlement to benefits, Plaintiff has still achieved some success on the merits. MetLife's decision was found to be arbitrary and capricious on several grounds, such as the use of a paper review without examination of Plaintiff's condition or credibility in person; the failure to consider evidence of Plaintiff's receipt of disability benefits from the Social Security Administration; the lack of reasoning for conclusions regarding Plaintiff's condition; and MetLife's failure to rely on video surveillance of Plaintiff in resolving to deny him benefits, which led Magistrate Judge Brown to question the strength of this evidence, despite the fact that it was cited as a reason for MetLife's initial termination of benefits. (Doc. No. 29 at 11–14.) The Magistrate Judge was also "troubled" by the way in which MetLife used one doctor's non-response to a letter stating that Plaintiff could perform work as reflecting an affirmative response in agreement with that statement, without even confirming that the doctor had received the letter. (*Id.* at 14–15.) MetLife was instructed to cure its

clearly insufficient review on remand, and in doing so quickly reversed its denial of benefits.

Although this Court agrees Mr. Heath's case is not quite as similar to the plaintiff's in *Hardt* as he might like— the Magistrate Judge's findings stopped short of indicating that Plaintiff was entitled to benefits—his action was certainly somewhat successful on the merits in light of the Court's sound and overwhelming rejection of MetLife's decision. MetLife's subsequent reversal of the denial only emphasizes the magnitude and significance of the errors highlighted by the Magistrate Judge. The Court, thus, does not agree with Defendant's argument that it was "not at all clear, prior to remand ... that Plaintiff was entitled to benefits." Although MetLife considered further evidence in coming to its final decision that Plaintiff was entitled to benefits, the record before MetLife prior to that supplementation certainly did not support its finding that Plaintiff was not entitled to benefits, and it excluded facts that supported an opposite conclusion. Ultimately, it would be hard to consider Plaintiff's victory here to be "trivial success on the merits" or "purely procedural."

**\*6** Post-*Hardt* case law from within this Circuit contributes to this Court's conclusion that Plaintiff has achieved some success on the merits so as to be eligible for an award of attorney fees. In its unpublished *McKay* opinion, the Sixth Circuit upheld the determination of a court in the Eastern District of Tennessee that an ERISA plaintiff whose case was remanded for further consideration of his application for benefits—but whose claim ultimately failed on remand—had achieved adequate success to be eligible for attorney fees under *Hardt.* 2011 U.S.App. LEXIS 13143, at \*24–25; 2011 WL 2518728 *see also Bio–Med. Applications of Ky.,* 2011 U.S. Dist. LEXIS 91187, at \*6, 2011 WL 3568249 (following *McKay* to find that *Hardt* was satisfied where district court had vacated and remanded the defendant's decision on the plaintiff's claim for new review applying proper methodology).

In a case still more factually similar to the instant matter, a judge in the Eastern District of Kentucky recently held that a remand that resulted in an award of benefits to the plaintiff, who had "faced a complete denial of benefits at the beginning of the case," constituted some success on the merits. *Pemberton,* 2011 U.S. Dist. LEXIS 24939, at \*4, 2011 WL 1314888. The court emphasized that even though the ultimate benefit award on remand

2011 WL 4005409

included substantial deductions for an early-retirement offset, *Hardt* does not require a plaintiff to prevail but instead to achieve some success, and the reinstatement of benefits on remand could be "fairly characterize[d]" as such. *Id.* Although the defendant argued that the court's decision remanding the case was merely procedural and did not alter the parties' positions, the court emphasized that the plaintiff's eligibility for fees was based not simply on the fact of remand, but on the gain realized through the remand. *Id.* at \*4–\*5. Thus the open question of a "remand order, without more" set aside by Justice Thomas in *Hardt* was not before the court. *Id.* at \*5.

Similarly, in the present case, the Magistrate Judge did not grant Plaintiff's request for reinstatement of LTD benefits, but instead remanded the case back to MetLife. This remand resulted in MetLife's decision to reinstate Plaintiff's LTD benefits retroactive to their termination date. (Doc. No. 45 at 1.) Like the result in *Pemberton,* the outcome of the remand was a gain realized by Plaintiff and thus can fairly be characterized as "some degree of success on the merits." Indeed, as explained above, this Court is of the opinion that the remand in this case suggested that Defendant's evaluation of Plaintiff's condition was gravely flawed, not simply inconclusive. Plaintiff's success is at least as substantial as that in *McKay* or *Bio–Medical Applications of Kentucky,* which more closely tracked the "remand order alone" scenario that Justice Thomas left open for future determination (which courts in this Circuit have now begun to undertake). Indeed, this is not a situation where there was a remand order alone, and it is clear that the fact of remand and resulting proceedings conferred some degree of success to Plaintiff on the merits of his claim.

\*7 In light of this analysis, Plaintiff has established that he is eligible for an award of attorney fees under *Hardt.*

*C. Application of the* King *Factors*
Having determined that Plaintiff is eligible for an award of attorney fees under *Hardt,* the Court now addresses the *King* factors, which provide guidance on how judicial discretion should be exercised with regard to attorney fees. This discussion is brief, as Plaintiff's eligibility for fees has already been established, and, pursuant to the facts and analysis in Part II.b, *supra,* it is fairly clear to the undersigned that a fee award is appropriate here. "These factors are not statutory and therefore not dispositive. Rather, they are simply considerations representing a

flexible approach." *First Trust Corp. v. Bryant,* 410 F.3d 842, 851 (6th Cir.2008).

Regarding the first factor, MetLife's culpability or bad faith, the Magistrate Judge and this Court have taken note of the fact that MetLife's determination of Plaintiff's claim for benefits was largely an inadequate paper review that lacked an in-person assessment of Plaintiff's condition as well as reasoning to support medical conclusions. Additionally, MetLife engaged in questionable tactics in coming to its decision, such as the use of a doctor's non-response as an affirmative statement, and the shifting of emphasis on what would seem to be crucial evidence regarding Plaintiff's condition (namely, the surveillance video). Although Defendant emphasizes that the Court did not explicitly find it "culpable," and instead merely deemed its benefits decision arbitrary and capricious (Doc. No. 44 at 11–12), both the Report and the Court's analysis of it here indicate that this first *King* factor falls in Plaintiff's favor.

As to the second *King* factor, MetLife's ability to satisfy a fee award, there can be no question that this major corporation can do so; indeed, Defendant does not make such an argument. Instead, it emphasizes that this factor is of little consequence to the analysis of a fee award under § 1132(e)(1) because, as Judge Echols (formerly of this District) noted, ability to pay is "weighed more for exclusionary than for inclusionary purposes." (Doc. No. 44 at 12 (quoting *Platt v. Walgreen Income Protection Plan for Store Managers,* No. 3:05–0162, 2006 U.S. Dist. LEXIS 90496, at \*6, 2006 WL 3694580 (M.D.Tenn. Dec. 14, 2006)* (internal quotation omitted).) This Court agrees that in a case of this nature, the defendant's ability to pay is not particularly important as opposed to the other factors, but it is noted that Defendant does not contest the assertion that it will be able to satisfy a fee award. The factor leans at least somewhat in Plaintiff's favor, *see McKay v. Reliance Standard Life Ins. Co.,* 654 F.Supp.2d 741, 743 (E.D.Tenn.2008), *aff'd,* 2011 U.S.App. LEXIS 13143, 2011 WL 2518728 (6th Cir. June 27, 2011), though perhaps it does not carry the greatest weight.

The third factor pertains to the deterrent effect a fee award might have. Plaintiff argues that "overcoming ... the deferential arbitrary and capricious standard provides a general deterrence to other insurance companies because they will know that failure to provide a full and fair review could result in an award of attorney's fees." (Doc. No. 38

at 7–8 (citing *McKay v. Reliance Standard Life Ins. Co.,* 654 F.Supp.2d at 743).) Plaintiff thinks this is particularly so where there is evidence of bad faith or culpability. (Doc. No. 38 at 8.) In response, Defendant again emphasizes its opinion that no evidence of the latter exists, and points again to *Platt,* where Judge Echols found no evidence that defendant MetLife was culpable and ultimately denied the plaintiff's request for fees. (Doc. No. 44 at 13 (citing *Platt,* 2006 U.S. Dist. LEXIS 90496, at *6), 2006 WL 3694580.) "[G]iven that Defendant did not necessarily act in bad faith," the deterrence factor did not fall in the plaintiff's favor. *Platt,* 2006 U.S. Dist. LEXIS 90496, at *6, 2006 WL 3694580. Again, however, culpability on Defendant's part has been at least suggested in this case, apparently unlike in *Platt.* Further, this Court, like both the district and circuit courts that reviewed the claim for fees in *McKay,* is not of the view that culpability is necessary to serve the aim of deterrence—rather, an insurer such as MetLife might be deterred from performing unscrupulous reviews of LTD benefit claims in future by an award of fees. *See McKay,* 654 F.Supp.2d at 743; *McKay,* 2011 U.S.App. LEXIS 13143, at *23, 2011 WL 2518728. The third *King* factor, too, weighs in Plaintiff's favor.

**\*8** The fourth consideration contained in *King* is whether the plaintiff sought to confer a common legal benefit on all participants or beneficiaries of an ERISA plan, or to resolve significant legal questions regarding ERISA. Plaintiff has conceded this point: he is an individual seeking benefits and did not intend to help others or address a particular legal question by bringing this action. (Doc. No. 38 at 8.) While Plaintiff argues that this factor falls in favor of neither party (*id.*), Defendant argues that the case raised routine issues and benefited Plaintiff alone, such that the fourth factor weighs in its favor and against a fee award (Doc. No. 44 at 14). The Court agrees that this factor must favor Defendant if it is to have any meaning, but, similar to the analysis of the second *King* factor, finds that it is of limited importance—this factor is surely meant to have greater weight when it is in favor of fees.

The final *King* factor, the relative merits of the parties' positions, is clearly to Plaintiff's favor in light of the previous *Hardt* analysis, in which the Court concluded that Plaintiff had achieved some success on the merits. Although this was not an unqualified win for Plaintiff, the merits of the case are in its favor, particularly in light of the reason that remand, and not judgment, was necessary

—issues of fact were still unresolved after MetLife's review of the claim.

Ultimately, the Court finds that four out of the five *King* factors are in Plaintiff's favor, and that the fourth, which belongs to Defendant, carries only limited weight. Thus, not only is Plaintiff eligible for an award of attorney fees, but the Court also finds that he is entitled to and will be granted an award.

*D. Amount of Fees to Which Plaintiff Is Entitled*

Plaintiff seeks a total of $69,750.00 in fees and expenses, representing the lodestar (hourly rate multiplied by the number of hours worked) plus expenses (the filing fee and service of process fee). (Stranch Decl. [1] ¶¶ 5–7.) Plaintiff's fee request is supported by the memorandum of law cited repeatedly herein, and the Declaration of then-counsel Jane Stranch (now a Judge on the Sixth Circuit Court of Appeals), for whom attorney James Stranch, III, of her former law firm, has now been substituted (Doc. No. 50). An Exhibit, titled "Breakdown of Firm Time and Expenses," was included with Stranch's Declaration. (Doc. No. 39–1.) Further, Plaintiff submitted an Affidavit of Gareth S. Aden [2] and a Declaration of George Barrett [3], both of which documents contain statements of Nashville-area attorneys in support of the fee award requested.

[1]     Docketed at No. 39.

[2]     Docketed at No. 40.

[3]     Docketed at No. 41.

Defendant has challenged the reasonableness of the fees requested based on the degree of Plaintiff's success, their allegedly excessive nature, and the lack of detail in Plaintiff's filings in support of the fees. (*See* Doc. No. 44 at 4–16; Doc. No. 48 at 2.) Overall, Defendant seeks a reduction in the total amount of fees sought "by at least 75%." (Doc. No. 44 at 11; Doc. No. 48 at 3.) Defendant has not contested the $365.00 in expenses that Plaintiff has requested.

*i. Reasonableness of the Lodestar Figure*

**\*9** In an action, such as this one, where Congress has authorized a fee award to a successful party, courts apply a lodestar approach in which "the number of hours

*Heath v. Metropolitan Life Ins. Co., Not Reported in F.Supp.2d (2011)*

2011 WL 4005409

reasonably expended on the litigation [is] multiplied by a reasonable hourly rate," *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir.1995) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 104 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Although the resulting fee "must be reasonable" and may be adjusted, "[t]here is a 'strong presumption' that this lodestar figure represents a reasonable fee." *Id.* (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). "The party seeking attorneys fees bears the burden of documenting his entitlement to the award," including hours worked and rates claimed. *Reed v. Rhodes,* 179 F.3d 453, 472 (6th Cir.1999) (citing *Webb v. Dyer Cnty. Bd. of Educ.,* 471 U.S. 234, 242, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985)). Adjustments to the amount claimed can be made with consideration of factors enunciated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), which were adopted by the Supreme Court in *Hensley,* 461 U.S. at 432, and include:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed,* 179 F.3d at 472 n. 3.

In its Response, Defendant generally claimed that the fees requested were excessive, but did not specifically challenge the rates of pay charged by Plaintiffs attorneys, which were supported by the averments contained in counsel's Declaration, as well as the Aden Affidavit and Barrett Declaration [4]. Those rates were $350.00 per hour for attorney Stranch and $200.00 per hour for Denard

Mickens, an associate with her firm, and the rates reflected what the attorneys charged to clients in cases of this sort in 2008 (although the parties continued to litigate in this court through 2010). (Stranch Decl. ¶ 4.) Because these rates are supported by counsel's own claims and competently verified by two members of the Nashville legal community who find them to be reasonable in light of the case's nature and the experience of Plaintiffs' attorneys (Aden Aff. ¶¶ 9–10; Barrett Decl. ¶¶ 5–6, 11–12), the Court considers them to be reasonable.

[4]     In a filing contesting Plaintiff's request for leave to file a Reply, Defendant improperly set forth additional arguments that were not contained in its Response to the attorney fees motion and completely unrelated to Plaintiff's desire to file the Reply (including argument attacking the substance of Plaintiff's then-proposed Reply). (Doc. No. 46.) The Court strongly disapproves of this attempt to supplement the Response past the filing deadline and to submit argument that might properly belong in a Sur–Reply, all without the Court's leave and in disguise as opposition to Plaintiff's request for leave to Reply. The Court notes, nonetheless, that in this filing Defendant asserted that the Barrett Declaration was insufficient to support the rates and hours of Plaintiff's attorneys. (Doc. No. 46 at 4–5.) Particularly, Defendant claimed that the Barrett Declaration was insufficient because it did not indicate that Mr. Barrett had reviewed Plaintiff's counsel's invoices or the specific time entries she submitted. (*Id.*) The Court sees an adequate foundation for Mr. Barrett's assessment of the rates sought, and notes that Mr. Barrett did opine on the total number of hours requested by each attorney in light of the nature and complexity of this specific case, as well as pleadings and other documents filed in the case. (Barrett Decl. ¶¶ 6, 9–10.) Although the Barrett Declaration is perhaps not as complete as it could be, the Court does not find it baseless as Defendant suggests, if Defendant's concerns are to be considered at all in light of the circumstances of this challenge. Further, Defendant has not in any way contested the adequacy of the Aden Affidavit, which serves the same purpose as (and is consistent with) the Barrett Declaration.

What Defendant does challenge is the number of hours Plaintiffs attorneys have submitted, claiming that these are unreasonable and excessive, and that improper "block billing" has occurred. (Doc. No. 44 at 4–6.) Defendant did not cite any authority for the proposition that

Heath v. Metropolitan Life Ins. Co., Not Reported in F.Supp.2d (2011)

2011 WL 4005409

"block billing"—the use of general time entries for multiple tasks—is improper. Indeed, the Sixth Circuit has scarcely commented on this practice, and where it has, the court has expressed some indifference. *See Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Compensation Programs,* 473 F.3d 253, 273 (6th Cir.2007). However, the Sixth Circuit has recognized that the documentation in support of an award of attorney fees must be "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods., Inc.* 515 F.3d 531, 553 (6th Cir.2008) (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495, 502 n. 2 (6th Cir.1984)). If the documentation is inadequate, a court may reduce the award accordingly. *Id.* at 553 (citing *Hensley,* 461 U.S. at 433). However, the Sixth Circuit has stated that entries may be sufficient "even if the description for each entry is [not] explicitly detailed." *United States ex rel. Lefan v. Gen. Elec. Co.,* 397 F. App'x 144, 149 (6th Cir.2010) (quoting *McCombs v. Meijer, Inc.,* 395 F.3d 346, 360 (6th Cir.2005). Although each entry does not have to be detailed, "the general subject matter should be identified." *Hensley,* 461 U.S. at 437.

**\*10** As stated above, Plaintiff requests $69,385.00 in fees for 272.45 hours of work by two attorneys. Plaintiff divides the number of hours spent by each of his two attorneys into five entries: "Investigation, factual research and Complaint"; "Post Complaint investigation and work regarding Answer and Administrative Record"; "Benefit calculations and settlement efforts"; "Legal research and motion practice"; and "Court appearance and case management." (Doc. No. 39–1.) Defendant asserts these entries are too broad and make it impossible to determine how Plaintiff's counsel's time was spent. (Doc. No. 44 at 4–5.) Defendant also states that the number of hours Plaintiff's counsel is claiming is almost 100 hours more than MetLife's own counsel spent on this matter. (*Id.* at 5.)

These entries are not sufficient for the Court to determine with a high degree of certainty the reasonableness and accuracy of the hours billed, though a review of Plaintiff's Memorandum supporting his Motion and the Stranch Declaration fills in some of the holes left by entries such as "Benefit calculations and settlement efforts" (*compare* Doc. No. 39–1 *with* Doc. No. 38 at 11). The entries are examples of both block billing and vagueness that hinder

Plaintiff's opponent and this Court from performing a review of the fee request. Although there is nothing suspicious or concerning about the total number of hours Plaintiffs' attorneys spent on this case—particularly in light of its legal and factual complexity, as well as the support for amounts billed in the Aden Affidavit and the Barrett Declaration—the descriptions provided are vague and fairly generic. The Court has no basis for assessing certain factors, such as whether any of the work the two attorneys performed was redundant (as the entries for each attorney are the same but for the hours spent by each).

At the same time, the Court has not been given a good reason to doubt these figures. The fact that Defendant's own attorneys spent less time on this case is not particularly compelling, as this could be due to any number of factors (for example, that MetLife and its attorneys have likely defended cases much like this one repeatedly), and, of course, they were also unsuccessful in this litigation. The fact that Defendant's counsel cannot account for the 15.1 Plaintiff's attorneys spent on "Court appearance and case management" in a case that involved one case management conference does not mean that these hours were not spent in reasonable pursuits to this effect.

Thus, while the Court will not reduce the fees requested by seventy-five percent as Defendant desires, a reduction is necessary to account for the fact that the undersigned is not able to ensure with a high degree of certainty that the hours allegedly expended were in fact expended in a reasonable, non-duplicative fashion. "The common practice in this circuit, and in others, when the court is confronted with a request for the award of attorney's fees in the face of inadequate billing records, is 'across-the-board fee reductions.'" *Helfman v. GE Group Life Assurance Co.,* Case Number 06–13528, 2011 U.S. Dist. LEXIS 41608, at \*20, 2011 WL 1464678 (E.D. Mich. April 18, 2011) (quoting *Cleveland Area Bd. of Realtors v. City of Euclid,* 965 F.Supp. 1017, 1021 n. 5 (N.D.Ohio 1997)). In *Helfman* itself, the district court granted a reduction of twenty percent across the board "in light of [the plaintiff's] burden of production and in light of the 'block billing' and vague entries included in the billing records." *Id.* at 21. The Court was troubled by entries similar to those in this case, such as "Internet and westlaw research" and "Telephone conference with client." *Id.* at 20. In another recent case, a district court in this Circuit reduced a fee amount by ten percent overall in light

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.4022 Filed 07/12/16 Page 99 of 117
Heath v. Metropolitan Life Ins. Co., Not Reported in F.Supp.2d (2011)

2011 WL 4005409

of concerns about redundancies in work performed by multiple attorneys and "brief descriptions of the work performed for each time entry." *E.E.O.C. v. Cintas Corp.,* Case Nos. 04–40132;06–12311, 2011 U.S. Dist. LEXIS 86228, at *22–*23, 2011 WL 3359622 (E.D.Mich. Aug. 4, 2011). The court in *Cintas* relied on *Gratz v. Bollinger,* 353 F.Supp.2d 929 (E.D.Mich.2005), where the court had determined that a ten percent across-the-board reduction was appropriate due to vagueness, reflected in entries like "office conference" on several occasions, and instances of block billing that lumped three or four tasks into one time entry, *id.* at *24–*25. Although there are numerous other cases within the Circuit addressing this issue, the court also finds helpful Judge Trauger's recent opinion in this District reducing a fee amount by twenty-five percent overall "[t]o account for any excessiveness, duplication, redundancy, and block billing." *Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co.,* Case No. 3:09–9545, 2010 U.S. Dist. LEXIS 108769, at *7–*9, 2010 WL 4007300 (M.D.Tenn. Oct. 12, 2010). It should be noted, though, that the attorneys' records in the latter case contained evidence of duplication and excessiveness, while here there is simply not enough information to dispel concerns that such problems might have occurred.

**\*11** Having reviewed the records in this case, as well as relevant decisions within this circuit, this Court finds that an across-the-board reduction of twenty percent is appropriate.

*ii. Reduction of Fees Due to Plaintiff's "Limited Success"*
Defendant asserts that Plaintiff should not be awarded *any* of the fees that he seeks because he was unsuccessful in receiving a judgment in his favor from this Court, and instead only a remand. (Doc. No. 44 at 9–11.) Further, he argues that if any fees are granted, that they should at least be reduced due to the Court's adoption of the Magistrate Judge's recommendation that materials Plaintiff filed to supplement the administrative record should be stricken. (*Id.* at 6, 11.) Because Plaintiff's effort to expand the administrative record was unsuccessful, Defendant argues that to award fees for this work would be an abuse of discretion. (*Id.* at 11.)

The Sixth Circuit has held that ' "[t]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Isabel v. City of Memphis,* 404 F.3d 404, 416 (6th Cir.2005) (citing *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).

Further, "[w]here a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee; if a plaintiff obtains limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained." *Isabel,* 404 F.3d at 416. However, the Sixth Circuit has said that "a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised." *Cummings Inc. v. BP Prods. N. Am.,* Case Nos. 3:06–0890 & 3:0700834, 2010 U.S. Dist. LEXIS 19037, at *28, 2010 WL 796825 (M.D.Tenn. Mar. 3, 2010) (quoting *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1169 (6th Cir.1996)). Furthermore, "a reduction in attorney fees is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel,* 404 F.3d at 416 (citing *Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343, 349–50 (6th Cir.2000)).

First, the Court addresses Defendant's argument that because Plaintiff achieved a remand, rather than a reversal, before this Court, he should receive no fees at all. Although this Court did not grant Plaintiff's request for reinstatement of LTD benefits, it did find that MetLife's decision to terminate Plaintiff's LTD benefits was arbitrary and capricious, and cited several flaws and questionable practices that rendered MetLife's review inadequate. The claim was remanded back to MetLife for reconsideration, and reinstatement of benefits retroactive to the date of termination resulted. Although the decision to reinstate LTD benefits did not come directly from this Court, it was a result of the Court's decision to remand the claim back to MetLife.

If the Court had awarded benefits to Plaintiff based on the administrative record, this clearly could not be called "limited success." However, the Magistrate Judge declined to recommend a judgment for Plaintiff based on the administrative record because there were still factual issues to be resolved. (Doc. No. 29 at 16.) There were factual issues left unresolved, at least in part, because MetLife failed to adequately consider and analyze Plaintiff's medical record during its initial review. It would seem absurd to classify the a decision to remand the case back to Defendant for further review as "limited success" in this situation: this would allow Defendant to benefit from a reduction in attorney fees when it was Defendant's failure to consider and adequately analyze the Plaintiff's medical record that made judgment in Plaintiff's favor impossible. It cannot be that an inadequate review that

2011 WL 4005409

produces an insufficient basis for a benefits decision by the insurer or the court can result in a fee reduction due to the plaintiff's limited success in court. Nor would "limited success" properly characterize what ultimately came of this case: proceedings in accordance with the remand ordered by this Court resulted in a full victory for Plaintiff.

**\*12** Defendant's argument regarding a reduction due to Plaintiff's billing for hours spent seeking to expand the administrative record has more merit. Defendant argues that all the time Plaintiff spent trying to expand the administrative record—"including but not limited to, time spent drafting and gathering information relative to the affidavits that were struck by this court"—should be eliminated from the fee request. (Doc. No. 44 at 6.) Indeed, in the Report recommending remand adopted by this Court, Magistrate Judge Brown also recommended striking three affidavits Plaintiff submitted regarding evidence outside the administrative record. (Doc. No. 29 at 15–16.) The Magistrate Judge found the inclusion of these affidavits in the record was not permissible, and also that they were not timely filed. (*Id.*) In Plaintiff's Reply, he argues not that these filings played some important role in the case before this Court, but that they were an important part of the record considered on remand, and that investigation leading up to the affidavits in question was necessary to the investigation of the case. (Doc. No. 45–1 at 6 n.2.) In response, quotes a Sixth Circuit case, *Anderson v. Procter & Gamble Co.,* 220 F.3d 449 (6th Cir.2000), which states that "Section 502 of ERISA does not permit parties to recover attorneys' fees for legal work performed during the administrative phase of a benefits proceeding," *id.* at 456. (Doc. No. 46 at 5.) Defendant also asserts that the Sixth Circuit has held that it would be "an abuse of discretion for the district court to award attorneys' fees to a losing party." (*Id* (quoting *Cattin v. Gen. Motors Corp.,* 955 F.2d 416, 427 (6th Cir.1992)).)

Defendant takes *Anderson* out of context (the court had stated only a paragraph earlier that it was addressing the administrative *exhaustion* phase of a benefits proceeding), and the section of *Cattin* cited reflects not the body of the opinion but instead a parenthetical quotation of a Seventh Circuit case, *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 829 (7th Cir.1987). Were the principles Defendant cites not common sense in this context, the Court would be troubled by these misleading references to authority—Defendant places no qualifiers on its citations, and the Court would be unaware that there should be had

it not investigated further. Still, the Court must agree that Plaintiff's efforts were not timely or appropriate, as the affidavits submitted could not be used to supplement the administrative record in this forum, and their only use (by Plaintiff's admission) has been in subsequent proceedings. As such, they cannot be part of a reasonable fee award in this case.

The block billing of "Post Complaint investigation and work regarding Answer and Administrative Record" makes it difficult for the Court to ascertain precisely what work the accompanying hours (8 for attorney Stranch and 7.4 for attorney Mickens) reflect. However, the Court will not allow Plaintiff to benefit from his own error in submitting vague billing records. It seems reasonably certain that this entry is where any efforts to investigate and expand the administrative record occurred —a separate, more significant entry includes investigation that did not occur after the Complaint (presumably before), and no other entry references the administrative record. These hours (8 at $350.00 per hour and 7.4 at $200.00 per hour) will be reduced from the lodestar before the Court performs the overall reduction of twenty percent.

### iii. Final Fee and Expense Calculation

**\*13** First, the Court reduces the requested award by the number of hours Plaintiff improperly billed to supplement the administrative record. Thus, attorney Stranch's total hours billed will be reduced by 8, from 99.3 to 91.3, and attorney Mickens' total hours billed will be reduced by 7.4, from 173.15 to 165.75. When these new amounts are multiplied by the reasonable rates established above, they come to $31,955.00 and $33,150.00, for a total of $65,105.00. With a twenty percent overall reduction of the fee amount, the fee award comes to $52,084.00. Once the uncontested expenses, which total to $365.00, are added, the final amount of fees and expenses is $52,449.00.

### IV. CONCLUSION

As set forth above, the Court **GRANTS** Plaintiff's Motion and **AWARDS** him attorney fees and expenses in the amount of $52,449.00.

It is so ORDERED.

2011 WL 4005409

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4005409

---

**End of Document**                                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2922621
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Irina KONSTANTINOV, as Conservator
for the Estate of Vladimir Konstantinov,
a mentally incapacitated person,
and Sergei Mnatsakanov, Plaintiffs,
v.
FINDLAY FORD LINCOLN MERCURY, Defendant.

No. 04-CV-74928.
|
July 28, 2008.

**Attorneys and Law Firms**

Richard M. Goodman, Julie H. Hurwitz, Kathleen J. Kalahar, William H. Goodman, Goodman Kalahar, Detroit, MI, for Plaintiffs.

James P. Feeney, Paul L. Nystrom, Dykema Gossett, Bloomfield Hills, MI, Andrew J. Kolozsvary, Erica L. Keller, Dykema Gossett, Detroit, MI, Thomas G. Cardelli, Cardelli, Hebert, Royal Oak, MI, for Defendant.

*ORDER DENYING PLAINTIFFS' MOTION
FOR NEW TRIAL [DOC. 237] AND
GRANTING DEFENDANT'S MOTION
TO STRIKE AFFIDAVITS [DOC. 240]*

GEORGE CARAM STEEH, District Judge.

**\*1** Plaintiffs filed this motion for new trial on June 10, 2008, moving to set aside the jury verdict returned on May 23, 2008. Thirteen days later, on June 23, 2008, plaintiffs filed three affidavits in support of their motion for new trial. Fed.R.Civ.P. 59(c) provides that when a motion for new trial is based on affidavits, they must be filed with the motion. There is no provision in the Rules for giving the moving party an extension for good cause, nor did plaintiffs seek an extension in this case. The Court therefore GRANTS defendant's motion to strike plaintiffs' untimely affidavits.

*BACKGROUND*

This claim arises out of a limousine accident causing very serious injuries to the plaintiff passengers who were not wearing seat belts at the time. The defendant is a non-manufacturing seller of the limousine who was accused of negligence in the sale of the vehicle which took place about two years before the accident. Plaintiffs' negligence theories generally involved assertions that the vehicle was defective because the seat belts were not readily accessible to passengers and that the dealer should have known of the defects and corrected them prior to sale. The parties agreed that defendant could be held liable only if it knew or should have known of a defect prior to selling the limousine.

Trial in this matter commenced on April 28, 2008. During jury selection, the Court told the prospective jurors that they should plan to be in trial until approximately May 23, 2008, the Friday before Memorial Day weekend. This was an outside estimate based on the attorneys' predictions of the time needed to put in their proofs. Out of respect for the jurors' time and sacrifices, as well as the needs of other litigants to have access to the Court, an effort was made to manage the trial process to produce a smooth and efficient presentation while affording both sides fair opportunity to support their respective claims. This goal was particularly challenging for the Court in this case due to the attorneys' inability to work out ANY of the routine issues that arise during trials.

Other than a preplanned break of three-and-a-half days in the schedule, the trial proceeded with very few interruptions. Plaintiffs presented their case in approximately nine trial days, and defendant presented its case in approximately four days. Closing arguments were presented Friday morning, May 23, 2008. The jury was instructed immediately following plaintiffs' rebuttal argument, and was sent to begin their deliberations at 4:11 p.m. The jury had a few questions concerning the viewing of specific evidence, which the Court ruled upon. At 5:48 p.m. the jury came back with its no-cause verdict. This resulted from the jury's determination of the very first question presented, rendering it unnecessary to consider any of the other issues, including proximate causation, in the case.

Case 2:14-cv-11916-GCS-SDD ECF No. 121-2, PageID.4026 Filed 07/12/16 Page 103 of 117
Konstantinov v. Findlay Ford Lincoln Mercury, Not Reported in F.Supp.2d (2008)
2008 WL 2922621

Plaintiffs filed this motion for new trial claiming a litany of errors made by the Court. Plaintiffs claim that their brief is not intended to delineate all of the errors made during the trial, and if their motion for new trial is denied, "a much more extensive and comprehensive delineation of the errors will be made." (Brief in Support of New Trial, footnote 2). A court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). The Sixth Circuit has interpreted Rule 59(a) to require a new trial when the jury has reached a seriously erroneous result, as evidenced by the verdict being against the weight of the evidence, the damages being excessive, or the trial being unfair to the moving party in some fashion. *Holmes v. City of Massillon,* 78 F.3d 1041, 1045-46 (6th Cir.1996).

### ARGUMENT

I. *Testimony of Stanley Kujawa*-Owner of Defendant Ford Dealership

**\*2** Plaintiffs argue that their substantial rights were prejudiced by the improper testimony by Stanley Kujawa about his financial situation and good character, which was deliberately designed to improperly appeal to the sympathy and prejudice of the jury. The testimony referred to by plaintiffs concerns, in part, Mr. Kujawa's description of his involvement in humanitarian activities outside his dealership. Mr. Kujawa testified on direct examination about his involvement in running "Medical Equipment Services Abroad" (MESA), adopting two children from El Salvador, and establishing and raising funds for a children's home in El Salvador. Plaintiffs contend that this testimony amounts to character evidence that is inadmissible under FRE 404(a), providing that evidence of a person's character is generally not admissible for the purpose of proving action in conformity therewith on a particular occasion.

The Court concluded the evidence was not sought by defendant to prove that Mr. Kujawa acted in conformity with his character at the time of sale. Mr. Kujawa's testimony regarding his Rotary Club activities, his children, and his activities outside of the dealership are, as defendant contends, "simply background information about Mr. Kujawa." Such evidence is always of value to the fact finder in assessing the credibility and weight of the testimony on disputed issues. The testimony filled in the background narrative, and a party has considerable leeway on direct exam for proof of facts that do not bear purely on the legal issues. *United States v. Blackwell,* 853 F.2d 86, 88 (2nd Cir.1988).

Plaintiffs and their family witnesses were examined at great length about every aspect of their lives, about their childhood in Russia, about adjusting to life in the United States, and about acts of kindness to others. This is the same type of "background narrative" the Court permitted with regard to Mr. Kujawa. "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *United States v. Chambers,* 441 F.3d 438, 455 (6th Cir.2006). The Court does not find that the very limited (9 questions) background information about Mr. Kujawa, the representative of defendant, provides grounds for a new trial.

Plaintiffs also object to Mr. Kujawa's testimony concerning the impact witness Rick Manley's fraud scheme had on Findlay Ford. Mr. Kujawa testified that he considered Mr. Manley's criminal fraud as money stolen from Findlay Ford's employees, not from Findlay Ford, and that it was tantamount to stealing money from Findlay Ford employees' pension program. Plaintiffs first raised their objection to this testimony the day after it was elicited. The Court noted during a sidebar:

> Well, certainly I tend to agree that first of all, that the testimony by the witness was not contrived to elicit pity. He was, indeed, reporting I think the experience that he had with Mr. Manley and the impact it had on him and, of course, to the extent that the answer may have been unresponsive, that might have been a bell for plaintiff to object at the time and to approach the sidebar to ask for a caution to avoid later repetition, but the-I really don't think-I mean, the likelihood of any impact on the jury's willingness to award damages to me seems remote. These are not totally unsophisticated people. Most would, I assume know that there is insurance involved in defending the claims, and if they didn't make that assumption, they would at least have enough questions about it and will be cautioned presumably at some point in the instructions not to make awards out of sympathy or bias or prejudice for either side. I just don't see this as anything close as a basis for a mistrial.

**\*3** I will ask Mr. Feeney to caution his client to avoid repeating the risk that was created-that was created by Mr. Manley's wrongdoing ....

(Trial Transcript, May 21, 2008, pp. 50-51).

As the Court ruled during the sidebar conference, plaintiffs' objection to Mr. Kujawa's testimony during trial came too late, and in any event does not provide the basis for a mistrial. Plaintiffs' theory was that Mr. Manley provided Findlay Ford knowledge of National Coach Engineering's quality control problems. In this way, plaintiff argued, Findlay Ford was on notice of potential defects triggering a duty to inspect. It was certainly appropriate for Mr. Kujawa to explain that he had no knowledge of Mr. Manley's fraudulent activities involving National Coach Distributors, and how Manley concealed his crimes against Findlay Ford. None of Mr. Kujawa's challenged testimony provides a basis for granting a new trial in this case.

II. *Claimed Juror Misconduct*
Plaintiffs next contend that beginning during their cross-examination of Mr. Kujawa on May 21, juror # 6 began outwardly displaying hostility to plaintiffs' counsel. Plaintiffs first raised the matter before the Court on May 23:

> Over the last few days, myself and others on our side of the table have developed a great concern about one of the jurors, namely Number 6 who has been acting out very powerfully whatever words are against our side of the table. On a number of occasions she actually mouthed words that you can make out the words that she's saying, both directed toward myself and Ms. Kalahar, and there are other people who are also in the courtroom who made notes and noticed her behavior in this respect. It is openly hostile. She has used words like shut up toward Ms. Kalahar, and words like stop toward me when I get up, and-and it's very obvious there are other people who have

> similar observations of her behavior. I want to bring this matter up to the Court and-and frankly request some remedy for this in the nature of a recusal or exclusion of this juror from deliberation.

(Trial Transcript, May 23, 2008, pp. 16-17).

The claim by plaintiffs' counsel that a juror mouthed the words "shut up" during the examination of a witness was first addressed after the close of evidence, after the jury instructions were resolved by the Court, and just minutes before closing arguments were to begin. This claimed conduct was not observed by the Court or brought to the Court's attention when it was said to have occurred.

Despite repeated admonishments by the Court during this month long trial, plaintiffs' counsel persistently engaged in obstructionist, hostile, and unprofessional conduct in the courtroom. Continuous personal attacks on opposing counsel and sarcastic, hateful remarks combined with endless repetition in the presentation of evidence contributed to justifiable frustration among jurors who participated in this case at incredible personal sacrifice. It is hardly reasonable for counsel to intentionally create a poisonous, hostile atmosphere, and then blame the jurors for being affected by it.

**\*4** Frustration exhibited by jurors is insufficient to establish juror bias or misconduct. *Peterson v. Warren,* No. 04-CV-72299-DT, 2007 WL 496683, at \*7 (E.D.Mich. Feb.13, 2007) ("the juror's comments merely showed that the jurors in [the] petitioner's case were becoming frustrated by the many delays in the case. This is insufficient to establish juror bias or misconduct."). It is within the trial judge's sole discretion to handle alleged juror misconduct or bias as he sees fit "[b]ecause of his continuous observation of the jury in court...." *United States v. Panebiaco,* 543 F.2d 447, 457 (2nd Cir.1976) (the court further noted, "[t]hat jurors react naturally does not mean they are biased.")

Moreover, it is apparent that the jurors in this case admirably performed their jobs under very difficult circumstances. They rigorously reviewed the evidence relating to the initial question presented, that is whether the dealer-defendant was negligent in failing to identify and remedy the claimed defects in the seatbelt assemblies. Plaintiffs' theory was that the claimed defects should

have been obvious to the dealership prior to delivery to purchaser, and the jury correctly found otherwise. Despite plaintiffs' claim that the jury was rushed to judgment, its findings required consideration of relatively little evidence. The verdict was consistent with that evidence. The jury never had to address the more difficult issues of causation, comparative fault, non-party fault, and damages.

III. *Allowing Jury to Examine Rear-Bench Seat*
During their deliberations, the jury submitted a note to the Court asking for permission to look at the J-Seat and rear bench seat models that were in the courtroom. Plaintiffs objected to the jury looking at the rear bench seat because they argued it was not an exhibit. Plaintiffs further objected to the jury looking at both seats because doing so would encourage improper jury experimentation.

The rear bench seat, which was created by plaintiffs, was on plaintiffs' exhibit list, was in the courtroom during the entire trial, was used extensively by plaintiffs and defendant throughout trial with numerous witnesses, and was repeatedly referred to by plaintiffs' counsel as an exhibit. After the jury requested to look at the two seats, the Court and counsel for both parties discussed whether it had formally been moved into evidence during trial. Mr. Feeney offered it into evidence during this discussion on the record:

> If for any reason this is not been offered or received, I will renew it, and ask that it be marked as Plaintiff's Exhibit 5, I think, and be received just as I have reserved with regard to a number of exhibits which were also not identified, which have not been placed on the record, pursuant to the Court having given me the opportunity to do that. So I would like to do that.

(Trial Transcript, May 23, 2008, pp. 146-147).

The Court agreed that the back bench seat was an exhibit at trial and proceeded to admit it into evidence:

> **\*5** So I will grant the request that this item was repeatedly referred to, I know during the course of the

evidence phase of the trial by both sides, probably more often by the plaintiff than the defendant as an exhibit in the case. It would never qualify as a demonstrative for the Court, and it would be unfair to prevent the jury from examining it, but there should be some ground rules.

Trial Transcript, May 23, 2008, p. 152).

The Court then instructed the jury as follows:

> We believe that you know from the testimony in the case, and from the representations of counsel, that these were belts duplicative of a number of conditions of the actual seats that existed of the subject limousine in the case. These are seats in the place that have been produced, and so each is built individually, and it may well be that certain aspects of the seats is not exactly the same as the actual limousine that existed. The key parts of these seats that were the subject of demonstrations during the course of the trial were built as far as duplicates of the actual seats. The manner in which the belts were affixed and presented were done as much possible to duplicate the conditions as well.
>
> However, there may be-there may be aspects of the seats, especially aspects not subject of testimony that don't exactly duplicate those original seats, and we don't want you to approach your examination of these seats with the idea, for example, that something which wasn't the subject of testimony must be exactly as it was in the subject seat. They could under the circumstances and in recreating the seats, but because they are not mass produced and tolerance were not the primary concern of the builder of these, you shouldn't assume that they are, and so that is the caution that I want to give you in your examination of them.

(Trial Transcript, May 23, 2008, pp. 153-154). The jury was allowed to examine the two limousine seats in the closed courtroom for a very short time period. The Court does not have a record of the exact amount of time, but it does know that the courtroom was cleared for the jury for no more than ten minutes. Thereafter the jury returned to the jury room and announced it had a verdict at 5:48. (Trial Transcript, May 23, 2008, p. 154).

Konstantinov v. Findlay Ford Lincoln Mercury, Not Reported in F.Supp.2d (2008)
2008 WL 2922621

Plaintiffs contend that the jury conducted improper experimentation on the seats, but this Court disagrees. During its ten minute inspection, the jury appears to have done the same things it repeatedly saw demonstrated during trial. On the J-seat model, the seat belts had been pushed into the seats and were not visible when the jury examined the seat. The jurors apparently pulled the seat belts out from the seat bight of the J-seat, as that is where they were found after the jury completed its examination. The fact that the belts might then have been draped over the seat back, as plaintiffs contend, is of no relevance. On the rear bench seat, the same set of belts and the same configuration of those belts as when the accident occurred were present. The buckles for the center and right rear seating positions had the 1995 seat belts that plaintiffs argued should have been used in the limousine. The left seating position had the 1992 buckle hardware. Plaintiffs had installed all of these belts in these configurations during the trial, and reversed the buckle and latch plate at issue just before the jury entered the room to examine the seats. This was explained to the jury as well, before their examination of the evidence. In fact, jurors reported to this judge while the Court distributed its certificates of appreciation that the only purpose of the request to inspect the seats was to assess whether a casual observation of the 1992 belt assembly by the dealer would be a "red flag" triggering a duty to inspect further.

**\*6** The jury's examination was entirely proper, and there can be no prejudice to plaintiffs resulting from the jury having done the same things that they saw demonstrated throughout the trial, on seats that had been admitted into evidence.

## IV. *Jury Coerced to Reach Verdict*

Plaintiffs contend that the jury was coerced to rush to judgment and reach its verdict on Friday, May 23, 2008, the date before the Memorial Day weekend. This alleged coercion was at the hands of defense counsel and the Court. That the jury reached their verdicts in under an hour and a half, on the Friday before a holiday weekend, is not evidence of coercion. Any comments made by the Court during the course of the trial were intended to move the case along, out of respect for the jurors' time. The Court in no way indicated to the jury that they ought to come back with a verdict in any specific time-frame. In fact, when the jury asked if they could stay late to deliberate, the Court responded: "my feeling is that if you want to stay for awhile, we will stay at least

until six. Your cars are secured, and retrievable until 10:00 tonight." (Trial Transcript, May 23, 2008, p. 150). The jurors were clearly given the flexibility to continue deliberations or break for the weekend at their option. Plaintiffs have not brought forth any evidence of improper coercion of the jury in this case.

## V. *Surprise Testimony Regarding Findlay Ford Practice of Inspecting Limousines*

Plaintiffs allege that witnesses improperly testified for the first time at trial about a practice that Findlay Ford had of inspecting its limousines before sale to make sure that the belts were laid out on the seats. This testimony came from Mr. Kujawa, Brad Redman, and Ron Crawford. In earlier deposition testimony, both Kujawa and Redman testified that Findlay Ford conducted no inspections of the limousines once they arrived at Findlay Ford from National Coach. At trial, Crawford first testified on direct examination by plaintiffs' counsel that there was no inspection. The next day Crawford said that he had a practice of regularly preparing the vehicles for delivery, making sure the belts were laid out on the seats. Defendant also admitted in the Joint Final Pretrial Order that it conducted no inspection.

Plaintiffs have not supported their argument of "ambush" with any affidavits, citations to the trial record, or deposition testimony from the witnesses. Defendant challenges plaintiffs' allegation that the Joint Final Pretrial Order contains an admission that defendant did not conduct inspections, and plaintiffs have not included any citations for the Court to verify.

It is inaccurate to call what happened at trial an "ambush" when Brad Redman and Ron Crawford were subpoenaed and called by plaintiffs, not defendant. Contrary to plaintiffs' argument, the trial testimony is not inconsistent with previous deposition testimony. In their depositions, plaintiffs questioned the witnesses regarding whether Findlay Ford performed the same pre-delivery inspection required by Ford after the limousines were returned from National Coach. This was admittedly not done. At trial, the witnesses were asked about what was done to clean the limousines or make sure the seat belts were presentable prior to delivery. In addition they testified that the long drive back to Ohio from the limousine converter accomplished the same purpose as the pre-delivery inspection of new vehicles done pursuant to contractual agreements with Ford. Even if this was

somehow inconsistent testimony at trial, plaintiffs were given ample opportunity during cross-examination to use prior testimony for impeachment.

**\*7** It is worth noting that plaintiffs' own theory and claims evolved through multiple twists and turns after summary judgment motions and the Court was quite permissive in allowing plaintiffs such latitude, despite defendant's own protestations of "ambush."

## VI. *Verdict Against Weight of Evidence*

Plaintiffs contend that the jury's verdict is against the weight of the evidence. However, plaintiffs never moved for a directed verdict or judgment as a matter of law and, therefore, are precluded from now challenging the sufficiency of the evidence post-trial. "[A] party who has failed to move for a directed verdict at the close of all the evidence, can neither ask the district court to rule on the legal sufficiency of the evidence supporting a verdict for his opponent nor raise the question on appeal." *Portage II v. Bryant Petroleum Corp.,* 899 F.2d 1514, 1522 (6th Cir.1990).

Even if plaintiffs were permitted to challenge the sufficiency of the evidence, this case does not warrant a new trial on that basis. The Sixth Circuit has stated the standard that should apply to motions for new trial based on an against-the-weight-of-evidence theory: "The court is to accept the jury's verdict if it is one which reasonably could have been reached." *Denhof v. City of Grand Rapids,* 494 F.3d 534 (6th Cir.2007). The jury finding of no negligence in this case was supported by substantial evidence. Plaintiffs were unable to produce a single dealer in the United States who opined or practiced the kind of vehicle inspection plaintiffs theorized should have been performed by the defendant in this case. Plaintiffs' claim that defendant should have known all of the nuances of the design requirements of Federal Motor Vehicle Safety Standards, and identified the claimed deficiencies in an inspection of the belt assembly systems was contrary to the evidence and common sense. Virtually all of the evidence in the case established that the limousine's seat belts would have functioned properly and protected plaintiffs from injury if they had been worn. On that basis alone, the Court would not overturn the verdict as being against the weight of the evidence.

## VII. *Court Erred in Submitting Issues of Law to Jury*

### A. *Violation of FMVSS 208 S7.4.6.1*

Plaintiffs contend that the Court should have decided as a matter of law that the J-Seat violated FMVSS 208 S7.4.6.1 because it allegedly lacked guides or conduits, and erred in submitting this issue to the jury. The issue of interpreting FMVSS 208 and its regulations was first presented to the Court on the eve of trial, in the form of trial briefs filed by both parties. The Court did interpret the safety standard and ruled that FMVSS 208 required some type of guide or conduit. The Court left the issue of whether the limousine at issue complied with the safety standard:

> Defense counsel I know wishes to argue that the particular system in place in this vehicle included a means by which the belt would be maintained on top of seat or one part of the belt would be maintained on top of the seat. I'm not sure exactly what the expert testimony is about that, whether there's an argument that the-that there was some type of a de facto conduit of some type in place in the vehicle system. I really can't preclude that argument if there is some support for it, and I'm not sure if conduit of some type necessarily has a clear and unmistakable meaning, but the-so I guess there's a number of factual issues that the parties will be arguing to the jury ultimately, but that's the interpretation that the Court gives to this language.

**\*8** (Trial Transcript, May 13, 2008, pp. 13-15). The Court again referred to the fact that compliance was an issue in the case, as follows:

> In fact, at the time of my ruling, I left open the question whether he could establish that this particular mechanism included the use of some type of conduit.

(Trial Transcript, May 14, 2008, pp. 54-55).

Findlay Ford's seat belt expert, Bob Gratzinger, testified that the J-Seat's bight line acts as a *de facto* conduit for keeping the seat belts on the seats. (Trial Transcript, May

21, 2008, pp. 124-125). See *Powers v. Bayliner Marine Corp.,* 83 F.3d 789 (6th Cir.1996) (holding that evidence, including testimony that a sailboat's design did not violate safety standard, supported the jury's conclusion that the sailboat was not defective). It was properly left to the jury to decide whether the subject limousine violated FMVSS 208 as interpreted by the Court, as this was a question of fact on which reasonable minds could differ.

Of course, violations of Federal Motor Vehicle Safety Standards may establish negligence on the part of a manufacturer, like National Coach in this case, but have little to do with the findings of the jury of no negligence by the defendant as a seller of the vehicle.

B. *Violation of FMVSS 208 S7.2*

Plaintiffs argue that the Court should have instructed the jury that the latch plate mechanism violated FMVSS 208 S7.2 because it allegedly was not accessible in its stowed position. The Court declined to give the requested instruction because "the experts were never asked about this issue, and the ... Court really was never advised of it until in (sic) end point of the trial. It would be unfair to ... open that issue now." (Trial Transcript, May 23, 2008, p. 13). While plaintiffs contend that defendant repeatedly admitted that Gambino's and others stowed the latch plate in an inaccessible location, they do not cite to the record to support such contention. This argument does not provide a basis for granting a new trial.

C. *Partnership and/or Joint Venture*

Plaintiffs allege that the Court erred in not ruling as a matter of law that Findlay Ford was National Coach's partner or joint venturer, and the Court should have

instructed the jury to assess any fault by National Coach as the vehicle modifier against Findlay Ford. On May 21, 2008, plaintiffs filed their Trial Brief Regarding Allocation of Verdict [Doc. # 227]. In this brief, plaintiffs asked the Court to remove National Coach from the verdict form. Then, on the last day of trial, immediately prior to closing arguments, plaintiffs' counsel raised the "partnership/ joint venture" issue with the Court. However, plaintiffs did not submit any proposed jury instructions regarding partnership or joint venture, so plaintiffs cannot claim that the Court erred in failing to give such instruction. Fed.R.Civ.P. 51(d)(1)(B).

VIII. *Miscellaneous Arguments*

On May 16, 2008, juror Mr. Han arrived at Court sick and was obviously unable to participate. This day was scheduled to be a full day of trial, so the Court made the determination to excuse Mr. Han from his jury service, over plaintiffs' objection. The Court explained that there was no way of knowing how long Mr. Han would be incapacitated and events like this are the very reason additional jurors are selected.

**CONCLUSION**

**\*9** For the reasons stated above, plaintiffs' motion for new trial is DENIED, and defendant's motion to strike affidavits is GRANTED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2922621

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1687625
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

CROWN ENTERPRISES INC, Plaintiff–Appellee,
v.
CITY OF ROMULUS, Defendant–Appellant,
and
American Diesel Truck Repair Inc, Ruben
Chacon, and Juan Molinia, Defendants.

Docket No. 286525.
|
May 3, 2011.

West KeySummary

**1** **Municipal Corporations**
 Costs

Award of $186,679 to owner of a truck
terminal as an attorney's fee was unreasonable
based on the degree of success obtained by
owner in suit against city. Although owner
was able to secure a temporary restraining
order (TRO) ordering city to remove physical
barricades it erected on a vacated street
to prevent owner from routing commercial
trucks to its truck terminal, city's zoning
ordinance continued to preclude commercial
trucks from legally driving on that street.
Therefore, due to owner's limited success and
the fact that the city's due process violation
in erecting the barricades caused no real
damages, a reasonable attorney's fee should
have been limited to legal fees owner incurred
through obtaining the TRO. 42 U.S.C.A. §
1988.

Cases that cite this headnote

Wayne Circuit Court; LC No. 05–519614–CZ.

Before: BECKERING, P.J., and MARKEY and
BORRELLO, JJ.

ON REMAND

PER CURIAM.

**\*1** Plaintiff brought this action after the city of Romulus
erected barriers to prevent plaintiff from using an
unimproved, vacated street named Harrison Avenue for
the purpose of accessing its truck terminal. The trial court
dismissed all of plaintiff's legal theories except finding a
violation of procedural due process under 42 USC 1983
in the city's initial action of precluding plaintiff's use
of the easement without notice or an opportunity for
hearing. This Court reversed, finding that plaintiff had
abandoned its easement, and therefore, the city could not
have deprived plaintiff of any property rights without
due process. *Crown Enterprises, Inc v. City of Romulus,*
unpublished opinion per curiam of the Court of Appeals
issued May 20, 2010 (Docket No. 286525). Our Supreme
Court reversed in an order that reads as follows:

> [W]e REVERSE the judgment of
> the Court of Appeals on the
> issue of the abandonment of an
> easement for the reasons stated in
> the Court of Appeals concurring
> opinion and on the issue of the
> overburdening of a servient estate.
> While the Court of Appeals was
> correct that the plaintiff's use of the
> easement overburdened the servient
> estate, it provided no support for
> the proposition that such an act
> results in an automatic extinguishing
> of the easement right when the
> owner of the servient estate is not
> the complaining party. Therefore,
> we REINSTATE the decision of
> the Wayne Circuit Court that the
> plaintiff had an easement right in
> Harrison Road, that the defendant
> interfered with that right without
> notice and an opportunity to be
> heard and that, as a consequence,

*Crown Enterprises Inc. v. City of Romulus, Not Reported in N.W.2d (2011)*

2011 WL 1687625

the plaintiff's due process rights were violated. In addition, we REMAND this case to the Court of Appeals for consideration of whether the award of attorney fees under 42 USC 1988 was reasonable under all of the circumstances of this case. [*Crown Enterprises, Inc. v. City of Romulus,* 488 Mich. 1025, 1026, 792 N.W.2d 342 (2011).]

## I. STANDARD OF REVIEW

This Court stated the standard for appellate review of a trial court's award of attorney fees under 42 USC 1988 in our prior opinion, *Crown Enterprises, supra,* slip op at 8:

When contemplating an award of attorney fees under 42 USC 1988(b), [2] a court must employ a two-step analysis. The court must first determine whether a plaintiff seeking attorney fees is the "prevailing party." *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) ("no fee award is permissible until the plaintiff has crossed the 'statutory threshold' of prevailing party status"). Whether a plaintiff is a "prevailing party" is a question of law appellate courts review de novo. *Outdoor Systems, Inc. v. City of Clawson,* 273 Mich.App. 204, 209, 729 N.W.2d 893 (2006); *Radvansky v. City of Olmsted Falls,* 496 F.3d 609, 619 (C.A.6, 2007).

_____

2    42 USC 1988(b) provides in pertinent part: "In any action or proceeding to enforce [various federal statutes, including 42 USC 1983] ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...."

*2    _____

Second, an appellate court must review for an abuse of discretion the reasonableness of an attorney fee awarded to a "prevailing party." *Cramblit [v. Fiske,* 33 F.3d 633, 634 (C.A.6, 1994)]. "Abuse of discretion exists only when a district court relies upon clearly erroneous factual findings, applies the law

improperly, or uses an erroneous legal standard." *DiLaura v. Ann Arbor Twp.,* 471 F.3d 666, 671 (C.A.6, 2006) (citations and quotation marks omitted). [3] The degree of success a plaintiff achieves is the most important factor in determining a reasonable attorney fees under 42 USC 1988. *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). When a plaintiff wins only nominal damages, a reasonable attorney may be no fee at all. *Id.* at 115; *Cramblit,* 33 F.3d at 635–636.

_____

3    Federal law governs plaintiff's federal constitutional right to due process and its 42 USC 1983 claim. *Markis v. City of Grosse Point Park,* 180 Mich.App. 545, 553, 448 N.W.2d 352 (1988). An abuse of discretion occurs under Michigan law when the trial court's decision is outside the range of principled outcomes. *Taylor v. Currie,* 277 Mich.App. 85, 99, 743 N.W.2d 571 (2007).

_____

## II. FACTS AND PROCEEDINGS

In an opinion and order issued May 30, 2008, the trial court awarded plaintiff an attorney's fee of $186,679.58 for work on this case through the issuance of an injunctive order on February 17, 2006. The court determined that plaintiff was a "prevailing party" under § 1988:

Plaintiff prevailed on its procedural due process claim when the court ruled that Defendant's placement of barricades on Harrison Avenue in 2005 constituted a procedural due process violation, providing a basis for a cause of action pursuant to 42 U.S.C. § 1983 and an award of attorney fees pursuant to § 1988. *Pouillon v. Little,* 326 F.3d 713, 716 (6th Cir.2003).

* * *

In the case at bar, the Court's order enjoining Defendant from interfering with Plaintiff's use of Harrison Avenue as ingress to and egress from its truck terminal resolved the dispute initiated by Defendant's barricade of Harrison Avenue and affected Defendant's behavior toward Plaintiff.

The trial court then determined a reasonable attorney's fee to award under § 1988. The trial court discussed *Hensley*

*v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and quoting *Hensley,* opined that "[w]here the plaintiff's successful and unsuccessful claims are based on 'a common core of facts' and 'related legal theories,' the lawsuit cannot be viewed as a series of discrete claims, and the court should focus on the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' " The trial court then parsed plaintiff's various claims as follows:

Plaintiff alleged related claims seeking relief for the same course of conduct, Defendant's barricading of Harrison Avenue to prevent Plaintiff's use of the road to access its truck terminal. Plaintiff obtained relief, prevailing on the federal constitutional claim of a procedural due process violation when the Court granted its motion for preliminary injunctive relief and found that Defendant's placement of barricades to block access was without legal justification.... It is Plaintiff's success on the due process claim that entitles it to attorney's fees pursuant to § 1983 and § 1988.

**\*3** Plaintiff's choice to pursue its easement rights under state law after establishing the due process violation and remedying the course of conduct that gave rise to this litigation, though successful, removes the easement claim from the purview of § 1988 attorney fee eligibility. Alternatively, Plaintiff cannot be considered a prevailing party entitling it to attorney's fees beyond February 17, 2006.

Therefore, Plaintiff's total requested fee of $242,700.41 is reduced by $54,333.33, the latter figure reflecting all fees, in every category, incurred after February 17, 2006. Plaintiff's request for attorney's fees is granted in the amount $186,679.58.

Defendant filed a motion for reconsideration on June 13, 2008, which the trial court denied on June 19, 2008. This appeal followed.

### III. ANALYSIS

Applying the Supreme Court's analysis in *Farrar,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494, we conclude that the trial court correctly ruled that plaintiff achieved the status of "prevailing party" under § 1988. But we also conclude that the trial court abused its discretion by misapplying the legal principles discussed in *Farrar*

and not limiting an award of an attorney's fee to the very limited success plaintiff achieved—the removal of the barricade on Harrison Avenue. *DiLaura,* 471 F.3d at 671.

The threshold question regarding the propriety of an award of an attorney's fee pursuant to 42 USC 1988 is whether a plaintiff is a "prevailing party." *DiLaura,* 471 F.3d at 671, citing *Texas State Teachers Ass'n,* 489 U.S. at 789. The Supreme Court has explained that the *degree* of a plaintiff's success in relation to its overall goals are relevant to the reasonableness of a fee award, not the eligibility for a fee award as the prevailing party. *Texas State Teachers Ass'n,* 489 U.S. at 790. The Court held that "[a] prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Id.* at 791. The Court further opined that "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Id* at 791–792.

In this case, plaintiff received a temporary restraining order (TRO), on July 27, 2005, ordering defendant to remove the barricades it had placed that prevented plaintiff's access to and from its truck terminal by way of Harrison Avenue. The TRO achieved some of the relief plaintiff sought in its original complaint that requested damages, as well as injunctive and declaratory relief. In granting the TRO, the trial court concluded that defendant's actions displayed "unconstitutional lack of due process taking [plaintiff's] property." At the conclusion of the case, the trial court formally ruled in plaintiff's favor that the barricading of Harrison Avenue violated plaintiff's procedural due process rights.

**\*4** Despite plaintiff's success regarding defendant's initial action of barricading Harrison Avenue, the question remains whether removal of the physical barricade was a "significant" claim or issue given that, although it was ordered removed, the legal barrier of defendant's zoning ordinance, which precluded plaintiff's use of its Harrison Avenue easement for truck traffic, remained unaffected by the litigation. The Supreme Court has noted that "a technical victory may be so insignificant ... as to be insufficient to support prevailing party status." *Texas State Teachers Ass'n,* 489 U.S. at 792. This might occur when "a legal claim can be characterized as purely technical or *de minimis....* " *Id.* In hearings on this issue, the

2011 WL 1687625

trial court described plaintiff's success as more technical than substantive. "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792–793. Defendant argues, correctly, that the material relationship of the parties remained unaltered by this litigation because the city's zoning ordinance precluded plaintiff from using Harrison Avenue for truck traffic. On the other hand, plaintiff can correctly argue that defendant no longer acts to enforce its zoning ordinance without notice and an opportunity for a hearing.

In *Farrar,* the Court held that the civil rights plaintiff who had received only nominal damages was a "prevailing party" under § 1988 even though the plaintiff's *de minimis* success required that a "reasonable" attorney's fee award would be no award at all. *Farrar,* 506 U.S. at 105, 115. The Court explained:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to 'affect the behavior of the defendant toward the plaintiff.' Only under these circumstances can civil rights litigation effect 'the material alteration of the legal relationship of the parties' and thereby transform the plaintiff into a prevailing party. In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. [*Id.* at 111–112 (citations omitted).]

Plaintiff satisfies this test because it obtained an enforceable judgment (the TRO), which modified defendant's behavior in a way that directly benefited plaintiff by removing the physical barricade that blocked its access to its property via Harrison Avenue.

Pertinent to this case, the *Farrar* Court observed that " 'the denial of procedural due process should be actionable for nominal damages without proof of actual injury.' " *Farrar,* 506 U.S. at 112, quoting *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

Further, quoting *Carey,* 435 U.S. at 266, the Court opined that "awarding of nominal damages for the 'absolute' right to procedural due process 'recognizes the importance to organized society that [this] right be scrupulously observed' while 'remaining true to the principle that substantial damages should be awarded only to compensate actual injury.' " *Farrar,* 506 U.S. at 112. Therefore, the Court held that "a plaintiff who wins nominal damages is a prevailing party under § 1988," which "inquiry does not turn on the magnitude of the relief obtained." *Farrar,* 506 U.S. at 113–114. In this case, because the trial court determined that defendant's violation of plaintiff's right to procedural due process qualified for a nominal damage award, plaintiff satisfied the threshold query under § 1988 of being a "prevailing party."

**\*5** The next question is whether the trial court abused its discretion by awarding plaintiff all claimed attorney fees through the date the court issued a preliminary injunction on February 17, 2006. Was the court's award of $186,679 as an attorney's fee reasonable? "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Farrar,* 506 U.S. at 114. " '[T]he degree of the plaintiff's overall success goes to the reasonableness' of a fee award...." *Id.,* quoting *Texas State Teachers Ass'n, supra* at 793. Indeed, when determining the reasonableness of an attorney's fee award under § 1988, " 'the most critical factor[,] ... is the degree of success obtained.' " *Farrar,* 506 U.S. at 114, quoting *Hensley,* 461 U.S. at 436. The *Farrar* Court further held that when a plaintiff seeking money damages achieves prevailing party status but wins only nominal damages, the only reasonable attorney's fee award may be no award at all. *Farrar,* 506 U.S. at 115. The Court explained:

> In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his "absolute" right to procedural due process through enforcement of a judgment against the defendant. In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury. Whatever the constitutional basis for substantive liability, damages awarded in a § 1983

2011 WL 1687625

action "must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation.' " When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all. In an apparent failure to heed our admonition that fee awards under § 1988 were never intended to " 'produce windfalls to attorneys,' " the District Court awarded $280,000 in attorney's fees without "considering the relationship between the extent of success and the amount of the fee award." [*Farrar,* 506 U.S. at 115–116 (citations omitted).]

The Sixth Circuit Court of Appeals has followed *Farrar* by holding that in civil rights actions where a plaintiff primarily is seeking monetary damages but obtains only nominal relief with respect to their claims, a reasonable attorney's fee award was no fee at all. *Pouillon,* 326 F.3d at 717–718; *Cramblit,* 33 F.3d at 635–636. Under *Farrar* and its progeny in the Sixth Circuit Court of Appeals, if plaintiff had obtained only nominal damages on its federal claims, then the only reasonable attorney's fee under § 1988 would have been no fee at all. However, as we have noted already, plaintiff's case is distinguishable from *Farrar, Pouillon,* and *Cramblit,* because plaintiff obtained more than just nominal relief. Plaintiff also obtained equitable relief in the form of the trial court's order to remove the barricade blocking Harrison Avenue. However, this relief was obtained by the issuance of TRO at the end of July 2005. We conclude that the trial court abused its discretion by awarding plaintiff attorney's fees through the subsequent injunctive relief for ingress and egress because that relief was based on plaintiff's state law claim to an easement in Harrison Avenue. Plaintiff obtained relief for the procedural due process violation in July 2005 when the trial court issued the TRO for the removal of the barricades the city erected. Procedural due process does not guarantee any particular result on the merits but only requires "notice of the nature of the proceedings and an opportunity to be heard by an impartial decision maker at a meaningful time and in a meaningful manner." *Mettler Walloon, LLC v. Melrose Twp.,* 281 Mich.App. 184, 214, 761 N.W.2d 293 (2008). After the trial court ordered the removal of the barricades, plaintiff was accorded procedural due process regarding its easement and all other claims either party asserted. To the extent the trial court's determination in its February 17, 2006 order, "that placement of barricades by

[defendant] to prevent access from Harrison was without legal justification," was a finding regarding a violation of due process, it resulted in only nominal damages so that "no attorney fee" is a reasonable attorney fee under § 1988. *Farrar,* 506 U.S. at 115–116.

**\*6** The only tangible success plaintiff achieved in this case, apart from the finding of a procedural due process violation warranting only nominal damages, was the July 2005 TRO ordering the city to remove the physical barricades it erected on Harrison Avenue. All of plaintiff's other state and federal claims were dismissed. Plaintiff initiated this lawsuit to enable it to use Harrison Avenue for the purpose of daily routing hundreds of commercial trucks to its truck terminal. Plaintiff succeeded early in the litigation by obtaining an order that the city remove the physical barrier to its planned use of Harrison Avenue for truck traffic, but the legal barrier of defendant's zoning ordinance and the substandard condition of Harrison Avenue remained unaffected by this litigation. Further, although plaintiff was successful in establishing its state law claim to an easement, it was unsuccessful in achieving its overall objective of securing the right to use Harrison Avenue for the purpose of daily routing hundreds of trucks to its truck terminal via Harrison Avenue without fully complying with defendant's ordinance. Consequently, in light of the very limited success that plaintiff achieved, and in light of the fact that the due process violation caused no real damages to plaintiff, we conclude the trial court abused its discretion by not limiting a reasonable attorney's fee under § 1988 to the legal fees plaintiff incurred through its obtaining the TRO that resulted in the removal of the barricades the city had erected without notice and an opportunity for a hearing. Such an award of reasonable attorney's fees under § 1988 would thus be limited to the " 'degree of success obtained.' " *Farrar,* 506 U.S. at 114, quoting *Hensley,* 461 U.S. at 436.

We reverse in part and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219 as neither party fully prevailed.

**All Citations**

Not Reported in N.W.2d, 2011 WL 1687625

Crown Enterprises Inc. v. City of Romulus, Not Reported in N.W.2d (2011)

2011 WL 1687625

---

**End of Document**                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 728542

2009 WL 728542
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Cynthia TERRY, Plaintiff,

v.

Matthew AL–NAIMI, Recy–Clean
Services L.L.C., and Recy–Clean
Environmental Services L.L.C., Defendants.

No. 07–14130.
|
March 19, 2009.

West KeySummary

**1**  **Civil Rights**
   👉 Amount and Computation

**Civil Rights**
   👉 Time Expended;Hourly Rates

An employee who was the prevailing party in a sexual harassment case was entitled to an award of $20,963.50 in attorney fees. The employee requested $43,625.82 in attorney fees. Although the employer did not question the hourly rates, the court found that $200 an hour for an attorney in the Detroit area with under three years' experience was excessive and thus reduced the rate to $150.

Cases that cite this headnote

**Attorneys and Law Firms**

Mary A. Mahoney, Scwartz Law Firm, Farmington Hills, MI, for Plaintiff.

Austin M. Hirschhorn, Austin Hirschhorn Association, Troy, MI, for Defendants.

*MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES* [1]

[1]   The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. *See* E.D. Mich. LR 7.1(e)(2).

AVERN COHN, District Judge.

**I. Introduction**

*1 This is an employment discrimination case. On January 8, 2009, a jury found defendant Recy–Clean Environmental Services, L.L.C., (Recy–Clean) guilty of sexually harassing plaintiff Cynthia Terry (Terry) and awarded her $25,000 in compensatory damages and $125,000 in punitive damages. The jury acquitted Recy–Clean of retaliation and acquitted defendant Matthew Al–Naimi of sexual harassment and retaliation.

The Court entered a judgment on the verdict against Recy–Clean in the amount of $150,000.

Before the Court is Terry's motion requesting $43,625.82 in attorney fees. For the reasons that follow, the motion will be granted in the amount of $20,963.50.

**II. Legal Standards**

"In any action or proceeding under [subchapter VI, Equal Employment Opportunities, of Chapter 21, Civil Rights, of Title 42] the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of the costs." 42 U.S.C. § 2000e–5(k). "A court, in rendering a judgment in an action brought pursuant to [Michigan's Elliott–Larsen Civil Rights Act (ELCRA) ], may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate." M.C.L. 37.2802. A "prevailing party" is one who was entitled to some form of relief when the suit was brought. *Harrington v. Vandalia–Butler Bd. of Educ.,* 585 F.2d 192, 197 (6th Cir.1978). The awarding and amount of attorney fees are at the Court's discretion. 42 U.S.C. §

*Terry v. Al-Naimi, Not Reported in F.Supp.2d (2009)*
2009 WL 728542

12205; *Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir.2005).

The Supreme Court and the Sixth Circuit have recognized a modified rate-times-hours method of calculating a reasonable attorney fee. *E.g., Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Coulter v. State of Tenn.,* 805 F.2d 146 (6th Cir.1986). However, "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary ...." *Hensley,* 461 U.S. at 434. For example,

> Hours spent in reviewing records, talking to other lawyers or experts, preparing legal documents and the like cannot be fully verified and require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed. Depending on the situation, the lawyer may have strong economic incentives to spend too many hours on a piece of work or to exaggerate the number of hours spent or the necessity or importance of the work. Similarly, it

is often difficult to assess the need for two lawyers at a deposition, an interview, or a trial.

*Coulter,* 805 F.2d at 150. After the lodestar is calculated, the Court may adjust the fee for factors such as the number of defendants against whom a plaintiff prevailed compared with the number joined, the proportion of claims on which plaintiff prevailed, the experience of the attorneys, duplicated hours, and whether the agreement was for a fixed or contingent fee. *Marr v. Rife,* 545 F.2d 554, 555–56 (6th Cir.1976); *Disabled Patriots of Am., Inc., v. Taylor Inn Enters., Inc.,* 424 F.Supp.2d 962, 965–66 (E.D.Mich.2006). "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley,* 461 U.S. at 436–37.

## IV.

**\*2** As the prevailing party, Terry is entitled to attorney fees under Title VII of the Civil Rights Act and ELCRA. She seeks $43,625.82. Recy–Clean urges the Court in its discretion to reduce the amount.

Terry's attorneys billed the following hours:

| Name | Experience | Rate | Hours | Total |
|---|---|---|---|---|
| Mary Mahoney | 20.5 years litigation, including Civil Rights actions | $275.00 | 128.4 | $35,310.00 |
| Susan Brown | 21 years in employment law, especially Civil Rights cases | 275.00 | 5.5 | 1,512.50 |
| Erik Graney | 2.5 years; 2006 magna cum laude graduate of MSU Law; clinic experience in school; two summers clerking at a law firm where work included employment law | 200.00 | 34.03 | 6,803.32 |
| **TOTAL** | | | | $43,625.82 |

Recy–Clean does not question the hourly rates of the attorneys but the Court finds that a $200 hourly rate for an attorney in the Detroit area with under three years' experience is excessive. The hourly rate allowed for Mr.

Graney will be $150, reducing his total to $5,104.50 and the lodestar total to $41,927.00.

Counsel for Recy–Clean "believes" that some of the charges are not considered as taxable costs under local and

2009 WL 728542

federal rules; however, counsel does not cite any particular rules. Counsel for Recy–Clean also thinks "some of the costs" involve duplication of efforts by Terry's attorneys and charges for services unrelated to Recy–Clean but counsel does not cite any particular charges.

The original amount claimed by Terr's counsel was under $50,000, not an excessive amount for a case that went to trial. However, Terry prevailed against only one of two defendants, Recy–Clean, and was successful on only one of two claims against Recy–Clean.

Therefore, the Court will exercise its discretion in reducing the modified lodestar total by one-half. Recy–Clean is liable for $20,963.50 in attorney fees.

### V. Conclusion

The clerk will enter a supplemental judgment in Terry's favor in the amount of $20,963.50 as reasonable compensation for attorney fees.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 728542

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.