# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**NATALIE REESER**,

                  Plaintiff,

v

**HENRY FORD HEALTH SYSTEM
d/b/a HENRY FORD HOSPITAL**,

           Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Judge Mona K. Majzoub

| | |
|---|---|
| **MILLER COHEN, P.L.C.** | **VARNUM LLP** |
| Richard G. Mack, Jr. (P58657) | Terrance J. Miglio (P30541) |
| Keith D. Flynn (P74192) | Barbara E. Buchanan (P55084) |
| Adam C. Graham (P79361) | *Attorneys for Defendant* |
| *Attorneys for Plaintiff* | 160 W. Fort St., 5th Floor |
| 600 W. Lafayette Blvd., 4th Floor | Detroit, MI 48226 |
| Detroit, MI 48226-0840 | (313) 481-7300 |
| (313) 964-4454 | |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

# I. INTRODUCTION

Defendant is in denial. Defendant repeatedly states that Plaintiff lost at trial,[1] although there is no doubt Plaintiff prevailed (*Exhibit A*, Judgment for Plaintiff). As discussed below, Defendant has called Plaintiff's litigation costs and methods unreasonable while engaging in the same practices and refusing to engage in settlement discussions. To reduce a Plaintiff's attorneys' fees while allowing a Defendant to engage in the same conduct would pervert the practice of law beyond all repair, because this would allow rich Defendants to outspend Plaintiffs by over-litigating issues knowing they would never be forced to pay for their actions if they lose at trial. Such a situation is anathema to the interests of justice.

Defendant attempts to make it appear as though Plaintiff sought to overreach by seeking a high verdict, leading to needless litigation.[2] Such an argument is irrelevant to a determination on attorneys' fees. However, if Defendant is going to review the parties' settlement discussions, it is worth noting that Plaintiff offered to resolve this matter for **$50,000** in **August 2014** (*Exhibit B*). Defendant rejected this offer and **refused to make a counter offer until 2016**. By the point a counter offer was made, Plaintiff had been forced to expend in excess of $200,000 in attorney time litigating.[3] The fact that more than $400,000 may have been spent between the two

---

[1] Def.'s Resp. in Opposition, p. 2 ("failed case"), p. 4 ("essentially losing")

[2] *Id.* at 1.

[3] Although Plaintiff does not have a record of Defendant's full attorneys' costs, based

parties by early 2016, when the case could have been settled for an eighth of that amount two years earlier, is indeed regrettable. However, Plaintiff had no choice but to continue this case as she had no negotiating partner. By the time Defendant made the paltry pretrial settlement offer of $10,000, Plaintiff had spent that amount in costs alone. It is Plaintiff's position that Defendant's behavior was intentional. By forcing Plaintiff to spend excessive time in litigation, Defendant seeks to deter all litigation. Such behavior should not be rewarded by this Court.

## II.  ARGUMENT

### A.    Plaintiff Prevailed at Trial

As Plaintiff stated in her Motion for Attorneys' Fees, the Whistleblowers' Protection Act (WPA) allows a court to "award the complainant all or a portion of the costs of litigation, including reasonable attorney fees . . . if the court determines that the award is appropriate." MCL §15.364. "Because the [Whistleblowers' Protection Act] is a remedial statute, it is to be liberally construed to favor the persons the Legislature intended to benefit." *O'Neill v. Home IV Care, Inc.*, 249 Mich. App. 606, 612 (2002). In *O'Neill*, the court stated that "the purpose of the WPA was enacted to remove barriers to an employee who seeks to report violations of the law, thereby protecting the integrity of the law and the public at large." *Id.* at 614.  In furtherance

---

on the fees submitted in Defendant's Post-Judgment Motion for Sanctions, it is not unreasonable to extrapolate and come to the conclusion that Defendant had also spent in excess of $200,000 by the time the first counter offer was made.

of that important purpose, the WPA grants a prevailing party appropriate attorney fees to "'encourage persons who have been deprived of their civil rights to seek legal redress, to insure victims of employment discrimination access to the courts, and to deter discrimination in the work force.'"[4] The *O'Neill* court noted that these concerns must be considered in making a determination regarding the award of attorney fees and costs. *Id.* "To be considered a prevailing party, a plaintiff must receive at least some relief on the merits of Plaintiff's claim, such as an award of damages, an injunction, or a declaratory judgment on a favorable consent decree or settlement."[5]

Defendant disingenuously and delusionally insists that it is the prevailing party because of the size of the verdict.  Yet, Plaintiff was awarded economic back-pay damages of $3,200 by the jury.  As the prevailing party, an award of attorney fees is appropriate under the WPA.

Defendant misrepresents the *Gomery* case in its Response Brief by advocating that the Court apply a standard that was expressly rejected in that case. Defendant argues that *Gomery* supports its position that Plaintiff must show its position was improved by litigation and that improvement means achieving a higher result at trial

---

[4] *Id.* (quoting *Collister v. Sunshine Food Stores, Inc.*, 166 Mich. App. 272, 274 (1988)(while the *Collister* decision dealt with the Civil Rights Act, the Court in *O'Neill* applied this same reasoning to the WPA)).
[5] *Gomery v. Crest Fin., Inc.*, No. 250881, 2005 WL 658818, at *1 (Mich. Ct. App. Mar. 22, 2005)(attached as *Exhibit C*)(plaintiff was the prevailing party where plaintiff was awarded **$5,000 in actual damages**).

than any settlement offer made by Defendant.[6]

Unfortunately for Defendant, *Gomery* stands for the exact opposite proposition. In 2007, when *Gomery* was sent back to the Court of Appeals, the defendant argued that "plaintiff's cause of action was weak, that the jury rendered a verdict of only $5,000 whereas plaintiff had demanded several times that in settlement negotiations" and that the "verdict [was] '**CLEARLY A DEFENSE VERDICT**'", insisting "repeatedly that the trial court erred in refusing to decrease the award in light of plaintiff's limited success in winning damages." *Gomery v. Crest Financial, Inc.*, No. 250881, 2007 WL 1754814, at *2. (*See Exhibit C*) In both *Gomery* decisions, the defendant argued that the court should apply the very same "improved position" test that the Defendant in this case indicated in its Response Brief that the *Gomery* court supported. Despite Defendant's misrepresentations to the contrary, the *Gomery* court expressly rejected this approach, stating that "Plaintiff was a prevailing party because the judgment in her favor exceeded defendant's $500 **offer of judgment**." *Gomery* at *1 (emphasis added). In fact, the Court noted "the amount sought by plaintiff during settlement negotiations is immaterial." *Gomery* at *2. The Court stated "this Court has already ruled on those aspects of the case, expressly holding, as summarized above, that plaintiff was a prevailing party, and that <u>the trial court did not abuse its discretion</u>

---

[6] Def.'s Resp. in Opposition, p. 2 (also citing *Stamp v. Hagerman*, 181 Mich. App. 332, 335 (1989), which also only applies to offers of judgment)

in not reducing the fee award in light of plaintiff's limited success at trial." *Gomery* 2007 at *2. (Emphasis added).

Contrary to Defendant's assertion, "there is no requirement that a court must decrease an attorney fee award based on the amount of the jury verdict or what was offered in settlement negotiations - and Defendant has failed to cite to a single case that states otherwise. Instead, the consideration is whether the attorney fees are reasonable." *Carlson v. Optima Oil Enterprises, Inc.*, No. 279603, 2009 WL 2136879, at *2 (Mich. Ct. App. July 16, 2009)(attached as *Exhibit D*).

The remaining cases cited by Defendant are all clearly distinguishable even after a cursory reading. Those cases all involve **Michigan court rules** that are inapplicable to this **federal** case, either MCR 2.403 "Case Evaluation" or MCR 2.405 "Offers to Stipulate to Entry of Judgment" that "governs allowable costs following an opposing party's rejection of an offer to stipulate to a judgment."  In those cases, the defendants had either been ordered to case evaluation or had made offers of judgment pursuant to the court rules.  Not only are Michigan Court Rules inapplicable in this case, most importantly, **NO OFFER OF JUDGMENT WAS EVER MADE AS PART OF THIS LITIGATION AND THE PARTIES REJECTED CASE EVALUATION COSTS AND SANCTIONS.** [Dkt. No. 9, Pg. ID 62] So those cases and Defendant's "improved position" test are all inapplicable. Hence, reducing Plaintiff's award based on Defendant's argument

related to offers of judgment would not only misconstrue Michigan law, but fail to deter the wrongful conduct the Michigan Legislature intended to prohibit.

## B.   An Award of Attorneys' Fees Is Appropriate

As discussed above, an award of attorneys' fees is appropriate in a WPA case as the purpose of the Act and its' role in preventing wrongful conduct call for such fees. In response, Defendant offers three reasons, **and no case law**, to suggest that an award is inappropriate. Def.'s Resp. in Opposition, p. 4. First, Defendant argues an award is inappropriate due to Plaintiff's refusal to provide information in discovery. Next, Defendant argues that Plaintiff should not be granted attorneys' fees because of "inappropriate conduct at trial." Lastly, Defendant argues that Plaintiff's submission of her attorneys' fees was done in bad faith.

Defendant provides no authority for the suggestion that Defendant's attorneys' fees should be barred due to discovery issues. It is notable that Defendant has previously, repeatedly, requested sanctions for discovery issues. It is unclear how Defendant's request is not an attempt to re-litigate issues already decided by this court. Further, in Defendant's Motion for Discovery Sanctions, argued at trial, Defendant asked for Plaintiff's emotional damages to be stricken as a remedy for discovery misconduct. The jury did not award Plaintiff emotional damages. This argument is now moot. Defendant should not be permitted to re-raise this issue and request to strike an entirely different category of damages two months after the close

of the case. Plaintiff will more fully address this issue in her response to Defendant's Motion for Post-Judgment Sanctions.

Defendant provides no authority for the suggestion that the court should bar attorneys' fees due to Plaintiff's conduct at trial. It is notable that Defendant kept Plaintiff on the stand answering questions **for two days**. Frankly, for a witness kept on the stand to the point of exhaustion, Plaintiff's conduct at trial was well within the bounds of normal behavior. Defendant's suggestion that Plaintiff should not receive fees because she "falsely accused defense counsel of abusing and harassing her" is absurd. Defendant's counsel did abuse and harass her. Defendant needlessly extended Plaintiff's questioning, swore at her, repeatedly called her a liar, implied that she had been convicted of perjury in his opening statement, and even **stated that she had sexually transmitted diseases in his closing argument when it had absolutely no relevance to the case**.[7]

Finally, Defendant provides no authority for the suggestion that the court should bar attorneys' fees due to Plaintiff's attorneys allegedly submitting attorney fees in bad faith.  Defendant does not explain why Plaintiff's request was in bad faith, except to state that the request is made after Plaintiff "essentially [lost] the

---

[7] If anyone "made faces", "verbally assaulted witnesses", and made false accusations at trial, it was Mr. Miglio whose conduct was inappropriate as a member of the bar. Plaintiff answered days of questions and was only instructed to answer once or twice. Clearly, such conduct is not appropriate grounds to deny attorneys' fees and, instead, Mr. Miglio should be sanctioned for his deplorable conduct both at trial and throughout the litigation of this case.

case." As discussed above, the Michigan Court of Appeals in *Gomery* found such an argument inappropriate and unpersuasive.[8]

Plaintiff submitted a thorough accounting of every minute spent on this case in six minute increments over the course of two years. Every entry is explained. Every attorney submitted an affidavit. Is Defendant suggesting that Plaintiff's attorneys should have lied to the court regarding the number of hours it was forced to expend responding to Defendant's endless motions?

**C. Plaintiff's Attorney Fees Are Reasonable Given the Length of This Case and Defendant's Motion Practice**

**1. Settlement discussions and motion practice**

As discussed in the introduction, Plaintiff offered to resolve this case in August 2014 for $50,000. Defendant rejected this offer and refused to make a counter offer until 2016. When a settlement offer finally came, it was for $10,000, an amount spent on costs alone. Defendant's conduct made settlement impossible.

Throughout this case, Defendant's counsel has refused to cooperate, requiring Plaintiff to file a motion to compel discovery and to enforce a subpoena after Defendant unilaterally cancelled the deposition of Jill Hood days before that deposition was to be conducted. Instead of concurring, Defendant withheld concurrence until after those motions were fully briefed. Defendant, on the other

---

[8] *Gomery v. Crest Fin., Inc.*, No. 264906, 2007 WL 1754814, at *2 (Mich. Ct. App. June 19, 2007).

hand, has filed more than ten motions, totaling between 750 and 1000 pages with exhibits. Defendant demanded a forensic inspection of Plaintiff's cell phone, which required a review of 1000+ documents. Defendant asked for Summary Judgment, because Plaintiff had named Defendant Henry Ford Hospital based on its assumed name instead of Henry Ford Health System d/b/a Henry Ford Hospital, and then objected when Plaintiff motioned to Amend the Complaint to change the name of Defendant to the requested name. Defendant objected to **<u>every</u>** jury instruction proposed by Plaintiff, even instructions that were identical to Defendant's instructions. Defendant then objected to his **own** jury instruction at trial.[9]

If Plaintiff's two active attorneys did not respond in an adequate way to such action, Plaintiff could have lost her case. Defendant now argues Plaintiff's hours were unreasonable while expending similar, if not greater, time on this case. If the court accepted such an argument from Defendants, all Plaintiffs would be damned if they matched Defendants' litigation efforts (by a denial of attorneys' fees) and damned if they didn't (by putting the success of their case in jeopardy).

---

[9] Defendant, at various points, filed **separate** Motions to strike **every** category of damages available under the Fair Labor Standards Act and the Whistleblowers' Protection Act. Even months after the close of this case, Defendant continues to file motions. According to Defendant's Motion for Post-Judgment Sanctions, during a short period of time, Defendant's law firm employed **five attorneys** to work on a single discovery issue, billing at hundreds of dollars an hour. Def.'s Motion for Post-Jud. Sanctions, Exhibit 15, p. 1-7. (attached as *Exhibit E*)

**D.    Defendant Fails to Establish that the Fees and Hours Plaintiff Has Submitted are Excessive**

**1. Plaintiff's attorneys' rates**

Defendant acknowledges in its' Response in Opposition that a reasonable billing rate is generally calculated according to rates in the relevant community and that relevant community refers to the community in a court's territorial jurisdiction. Def's Resp. in Opposition, p. 6. As Defendant notes, Plaintiff submitted the "2014 Economics of Law Practice Attorney Income and Billing Report" to support its' fee rate. *Id.* at 7. Defendant focuses solely on years of practice as the appropriate measure of a reasonable rate. This is inappropriate. As the Eastern District has recognized, other factors, including title, firm size, field of practice, county, and firm location are important in making this determination.[10]

With regard to years of practice, Mr. Miglio, **Defendant's attorney, submitted an affidavit in support of attorney fees** he requested in Defendant's Motion for Post-Judgment Sanctions. (Attached as *Exhibit E*). In that affidavit, Defendant appears to suggest that **a court should calculate years of practice by law school graduation date**, as all of Varnum's attorneys list law school graduation date and do not otherwise list years of practice. *Id.*

---

[10] *See Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737, 743 (E.D. Mich. 2014) (determining a reasonable rate for a solo practitioner based on solo practitioner rates and a reasonable rate for insurance law attorneys based on the rate for insurance law).

Keith Flynn, lead attorney, graduated with honors from law school at Michigan State University in 2010, has focused his entire career on labor and employment law, and has successfully litigated many cases involving the WPA and retaliation.[11]  Mr. Flynn's years of practice fall into the 6-10 category, not the 3-5 year category, based on Defendant's calculation. Based on law school graduation, according to the Report, Mr. Flynn's requested fee of $275 an hour falls between the mean and the seventy fifth percentile based on years of practice. It also falls within the mean and the seventy fifth percentile based on his title, Senior Associate, by firm size, office location, county, and field of practice. In every metric related to the "relevant community" in this case, not just years of practice, Keith Flynn's rate of $275 is reasonable.

Adam Graham, second chair in this case, graduated with honors from law school at the University of Michigan in 2013. After law school, Mr. Graham served as law clerk in the Midland County Circuit Court. According to Defendant's calculation, Mr. Graham's years of practice fall into the 3-5 category, not the 1-2 category. Based on law school graduation, according to the Report, Mr. Graham's requested fee of $250 an hour falls between the mean and the seventy fifth percentile based on years of practice. It also falls within the mean and the seventy fifth percentile based on his title, Associate. Mr. Graham's rate is at the median based on firm size, field of practice, and county. Mr. Graham's rate is below the median based on firm location.

---

[11] See Flynn Bio, attached as *Exhibit F*.

Richard G. Mack, Jr.'s graduated law school from Wayne State University in 1998. According to Defendant's calculation, Mr. Mack's years of practice fall into the 16 to 25 year category. Mr. Mack's requested rate of $300 an hour falls between the mean and the seventy fifth percentile based on years of practice. It falls below the median for Partner, Mr. Mack's title.

Ada Verloren acquired her bar license in 1997. According to Defendant's calculation, her requested rate of $275 an hour is below the median for years of practice. Her requested rate is at or below the 75th percentile in every category.

The Eastern District of Michigan has recognized that awarding a median rate based solely on years of experience may not be appropriate. See *Disabled Patriots of Am., Inc. v. Taylor Inn Enterprises, Inc.*, 424 F. Supp. 2d 962, 966 (E.D. Mich. 2006). In *Disabled Patriots*, Defendant suggested that the court award the median rate of $183 an hour. *Id.* However, the Court awarded local counsel for Plaintiff $300 an hour. *Id.* In *Potter v. Blue Cross Blue Shield of Michigan*, the Court awarded rates well above the median rate for years of practice based on a number of factors including area of law, title of attorney, and firm size. *Potter* at 743. In this case, the court found that **$250 was a reasonable rate for Associates**, even in a situation where "**Plaintiffs did not submit any information regarding their experience level or years in practice**." *Id.*

Contrary to Defendant's assertions, the median rate is not the maximum rate an attorney can request. In *Spidell v. Colvin*, the Court found that a rate that "is also

very close to the . . . hourly rate used by the 75th percentile of attorneys practicing in [the area]" is a reasonable rate. *Spidell v. Colvin*, No. 3:12CV00039, 2016 WL 3625448, at \*2 (S.D. Ohio July 7, 2016)(attached as *Exhibit G*).

Defendant suggests Plaintiff's fees should be reduced because the rates are inappropriate. **However, Defendant's attorneys request even higher rates!**[12] Such an argument is not made in good faith.

## 2. Plaintiff's attorneys' time was not excessive given the length of this case and Defendant's efforts to string out litigation

Although Defendant's counsel may suggest instances in which the time expended seems long for the end result, "such anecdotal observation is not persuasive and does not overcome the deference that should be given to an attorney who has submitted a statement to the court claiming to have put in the number of hours listed in the billing statement." *Harvard Drug Grp., LLC v. Linehan*, 2010 WL 3906094, at \*11 (E.D. Mich. Sept. 3, 2010)(attached as *Exhibit H*). When there is nothing to "suggest anything grossly out of line with the work described . . . the

---

[12] In its' Motion for Post-Judgment Discovery Sanctions, Defendant provides an affidavit from Terrance Miglio, lead attorney for Defendant, in which he requests an hourly rate of **$300 an hour** (Exhibit B, Affidavit of Miglio). In this same affidavit, Miglio requests **between $265 and $285 an hour** for Barbara E. Buchanan, the second chair on this case. *Id.* **Varnum chose to have 5 attorneys work on discovery issues at the same time** during the time period submitted and none of these attorneys requested less than $225 an hour for their work. *Id.* **Plaintiff had 2 active attorneys on this case at any given time**, while partner Richard Mack occasionally provided work over the length of the case. Plaintiff's first chair, Keith Flynn, has requested $275 an hour, **$25 an hour less than Miglio**. Plaintiff's second chair, Adam Graham, has requested $250 an hour, **$25 an hour less than Buchanan**. *Id.*

amount of hours identified is found to be 'reasonable.'" *Id.*

As discussed above, this case has lasted **more than two years**, an unusually long time for a case. During this time, Plaintiff was not provided with an offer of settlement for the first year and a half of litigation. Instead, Defendant has filed nearly 1000 pages of Motions, filed renewed motions and multiple motions on the same subject, objected to almost every proposal made by Plaintiff making stipulations impossible, and forced a forensic examination of an entire cell phone's contents. Further, in Defendant's Response, Defendant's attorneys purposely misstate facts in order to argue that Plaintiff's work was excessive.[13]

Defendant does not dispute that it filed numerous motions necessitating numerous responses, Defendant simply argues that its' Motions were necessitated by Plaintiff's behavior in discovery and that this behavior made the work excessive. See Def.'s Resp. in Opposition, p. 10. **Defendant cites no case law for this argument that attorneys' fees should be reduced for this reason**. Defendant states Plaintiff forced Defendant to file two motions to strike Plaintiff's claims for

---

[13] For example, Defendant claims that Plaintiff spent 13.5 hours researching and crafting a Motion in Limine that dealt with excluding any proposed evidence that Plaintiff violated HIPAA. See Def.'s Resp. in Opposition, p. 11. Defendant argues that research into HIPAA violations was unnecessary because Defendant only sought to introduce evidence that Plaintiff violated Defendant's policies, not HIPAA. *Id.* **Defendant indicated in its' Response** to Plaintiff's Motion in Limine that it believed "Evidence Regarding Plaintiff's **Violation of HIPAA and** HFHS' HIPAA Policy Is Highly Relevant." (ECF Dkt. 77, p. 17) (emphasis added). Defendant is distorting the history of this case in an effort to label work excessive which clearly was not.

emotional and mental distress damages due to discovery issues. Such an argument is ridiculous. Plaintiff did not necessitate Defendant's two efforts to strike emotional distress damages, nor, for that matter, Defendant's multiple motions to strike punitive damages, backpay, or attorneys' fees. Defendant chose to file these motions. Plaintiff was forced to respond.

Defendant claims no skill was required to litigate this case, because no expert witnesses or statistical evidence was used. **Defendant cites no case law that suggests that this is an appropriate basis to determine skill required**. As discussed in Plaintiff's Motion for Attorneys' Fees, this case involved issues related to arguing over a forensic examination of a cell phone, the Sixth Circuit's stance on punitive damages under the Fair Labor Standards Act, the admissibility of evidence related to a sexual assault that occurred more than 15 years ago, and what constitutes a HIPAA violation in a client-attorney disclosure. This case involved five depositions, seven witnesses at trial, and a seven day trial over two years. For Defendant to argue this was a normal case is disingenuous.

Finally, Mr. Miglio's Affidavit is once again illuminating. One of the alleged excessive tasks Plaintiff completed was work associated with Defendant's motion to compel an examination of Plaintiff's phone. See Def.'s Resp. in Opposition, p. 11-12. Although Defendant claims that Plaintiff should not have opposed this Motion, the Motion was only granted in part (ECF Dkt. #48). This Order specifically placed

the cost of the examination on Defendant, which Plaintiff had opposed paying, and the Order allowed Plaintiff to screen documents for relevancy and privilege, which Defendant had refused to allow at the outset favoring complete discretion to rummage around Ms. Reeser's cell phone that contained private information unrelated to the case. Plaintiff was successful in limiting the Order despite Defendant's stubborn opposition.

Plaintiff's claimed fees for this motion response and review of the phone were **$15,085**. See Def.'s Resp. in Opposition, p. 11-12. Defendant's billing for this same motion and examination was **$14,908.75**, approximately **$175** less, or **less than an hour of work**. This is despite the fact that Plaintiff, unlike Defendant, was required to screen each of the **1000+ files** on the phone for privilege and relevancy. Clearly, this time was not excessive. It is impossible to know Defendant's total billing in this case, but based on this example, there is nothing to demonstrate Plaintiff's billing was excessive.

### 3. Plaintiff's attorneys' time is not redundant, inconsistent or vague and did not include clerical tasks

Defendant claims that Plaintiff's attorney fees are redundant without explaining how they are redundant. See Def.'s Resp. in Opposition, p. 13-14. Why is it excessive or redundant for an attorney to spend 8 hours reviewing discovery responses? Why is excessive or redundant for attorneys to spend 27.2 hours drafting a Motion to Compel, a Reply brief, and resolved/unresolved issues? Defendant

provides no explanation. Again, "anecdotal observation is not persuasive and does not overcome the deference that should be given to an attorney who has submitted a statement to the court claiming to have put in the number of hours listed in the billing statement." *Harvard Drug Grp.* at *11.

Defendant claims that 178.25 hours spent meeting, discussing, conferencing, and strategizing between attorneys on a case that took more than 2 years to litigate and included a 7 day jury trial is excessive or duplicative. This is less than 2 hours a week for attorneys to meet with one another and plan the case. Why is this unreasonable? Defendant offers no explanation. Defendant's complaint that two attorneys were used to meet is both ridiculous, as it takes two attorneys to meet, and hypocritical, as Defendant had five attorneys working on the same discovery issue. Def.'s Motion for Post-Judgment Sanctions, Exhibit 15, p. 1-7.

Defendant argues that Plaintiff should have her attorneys' fees reduced because Plaintiff's attorneys performed clerical work. However, it is unclear how selecting and preparing exhibits to a Response to a Motion for Summary Judgment, calling the Court regarding procedural questions, preparing notes for trial, or instructing a secretary on how the trial binder should be formatted are clerical tasks. If calls to the Court are clerical tasks, why are calls to a forensic computer expert, a task Defendant requests compensation for in its' Motion for Post Judgment Sanctions,[14] not clerical?

---

[14] *Id.* at 7 ("Call to/from forensic computer expert re search of Plaintiff's phone.")

Defendant argues that Plaintiff should have her attorneys' fees reduced because Plaintiff's attorneys' time entries are vague. Plaintiffs' counsel "is not required to record in great detail how every minute of his [or her] time was expended," so long as Plaintiff "identif[ies] the general subject matter of [ ] time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 (1983).[15] Defendant argues that billing such as "Talk to Keith about settlement conference", "Research for Motions in Limine," and "Drafted opening statement" are vague.[16] At the same time, Defendant asks for attorneys' fees in its' Motion for Post Judgment Sanctions for tasks like "Attention" to briefs.[17]

### 4. Block billing is not a reason to reduce plaintiff's attorneys' fees

Defendant relies heavily on one case, *Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, 2006 WL 2404140, at *4 (N.D. Ohio Aug. 18, 2006) (attached as *Exhibit I*), to argue that Plaintiff's fees should be reduced due to 'block billing.' However, this case has nothing to do with the situation here. In *Disabled Patriots*, the attorney fees requested **did not distinguish between billing on individual cases**. The court specifically noted "[s]ince Mr. Fuller filed similar complaints in *Disabled Patriots v. Hotel Ventures*, Case No. 3:05 CV 7154 and *Disabled Patriots v. Toledo Hotel Investors*, Case No. 3:04 CV 7138, it is difficult to ascertain the

---

[15] See also *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1020 (N.D.Ohio 1997).
[16] Def.'s Resp. in Opposition, Exhibit 13.
[17] Def.'s Motion for Post-Judgment Sanctions, Exhibit 15, p. 6-7.

amount of time spent preparing the complaint and summons for this case. Therefore, the total request is reduced by 30% or .48 hours." *Id.* at *4. Defendant also cites *Auto Alliance Inter., Inc. v. U.S. Customs Service,* 155 Fed. Appx. 226 (E.D. Mich. 2005) for the proposition that the court affirmed a 25% overall reduction for excessive and block billing. **This case does not discuss block billing**. In reality, the Sixth Circuit has long held that so long as the description of the work is adequate, block-billing can be sufficient. See *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007).[18]

5. **Filing a former associate's affidavit eight days after a motion for attorneys' fees, long before Defendant's response, where the associate was traveling in Germany and South Africa at the time, is excusable neglect**

Defendant argues that Plaintiff should have her attorneys' fees reduced because Plaintiff submitted attorney Ada Verloren's Affidavit eight days after filing the Motion for attorneys' fees. Ms. Verloren is a former associate who no longer works at Miller Cohen, P.L.C. Defendant suggests that Plaintiff's Affidavit for Verloren was late, due to the language of LR 54.1.2. However, this local rule requests only that the motion be supported by "an affidavit of counsel." LR 54.1.2. At the time of filing, Plaintiff submitted three affidavits of counsel. Verloren's

---

[18] See also *Oakley v. City of Memphis*, No. 06–2276 A/P, 2012 WL 2682755, at *3 (W.D.Tenn. June 14, 2012) report and recommendation adopted, No. 06-2276-STA-tmp, 2012 WL 2681822 (W.D.Tenn. July 6, 2012) aff'd, 566 Fed.Appx. 425 (6th Cir.2014) ("As far as this court is aware, the Sixth Circuit has never explicitly rejected the practice of block billing.")

affidavit was a supplement.

Even if Plaintiff's submission of the affidavit was late, it was clearly excusable neglect. "Whether conduct qualifies as 'excusable neglect' under Rule 6(e) is an equitable determination that should take into account all of the relevant circumstances, including the danger of prejudice, the length of the delay, the reason for the delay, and whether the movant acted in good faith." *Soltysiak v. Unum Provident Corp.*, 480 F. Supp. 2d 970, 973 (W.D. Mich. 2007). Ms. Verloren was traveling in South Africa and Germany for weeks prior to the submission of Plaintiff's Motion for Attorneys' Fees. Miller Cohen, P.L.C. attorneys began contacting Ms. Verloren soon after the jury verdict, seeking her review of her time and affidavit. (*Exhibit J*, email exchanges between Verloren and Graham). There was no way to obtain Ms. Verloren's Affidavit at the time of filing. Plaintiff submitted Ms. Verloren's time entries with the filing of the Motion and supplemented with Ms. Verloren's Affidavit as soon as it was received. Defendant suggests that "being out of the country was simply an excuse for an untimely filing." See Def.'s Resp. in Opposition, p. 22. Such an assertion is ludicrous. Plaintiff acted in good faith, timely submitting the affidavit when it was received by the former Associate.

WHEREFORE, Plaintiff requests that this Court award her attorneys' fees of $315,133.32.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By: /s/ Adam C. Graham
　　　Adam C. Graham (P79361)
　　　*Attorneys for Plaintiff*
　　　600 W. Lafayette Blvd., 4th Floor
　　　Detroit, Michigan 48226
Dated: July 28, 2016　　　(313) 964-4454

21

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**NATALIE REESER**,

               Plaintiff,

v

**HENRY FORD HEALTH SYSTEM
d/b/a HENRY FORD HOSPITAL**,

               Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Judge Mona K. Majzoub

---

| | |
|---|---|
| **MILLER COHEN, P.L.C.** | **VARNUM LLP** |
| Richard G. Mack, Jr. (P58657) | Terrance J. Miglio (P30541) |
| Keith D. Flynn (P74192) | Barbara E. Buchanan (P55084) |
| Adam C. Graham (P79361) | *Attorneys for Defendant* |
| *Attorneys for Plaintiff* | 160 W. Fort St., 5th Floor |
| 600 W. Lafayette Blvd., 4th Floor | Detroit, MI 48226 |
| Detroit, MI 48226-0840 | (313) 481-7300 |
| (313) 964-4454 | |

---

## CERTIFICATE OF SERVICE

I hereby certify that on *July 28, 2016*, the foregoing document was electronically filed by the undersigned's authorized representative, using the ECF system, which will send notification of such filing to all parties of record.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By: /s/ Adam C. Graham
      Adam C. Graham (P79361)
      *Attorneys for Plaintiff*
      600 W. Lafayette Blvd., 4th Floor
      Detroit, Michigan 48226
      (313) 964-4454