# EXHIBIT B

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**NATALIE REESER**,

        Plaintiff,

v

**HENRY FORD HOSPITAL**,

        Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Judge Stephanie Dawkins Davis

---

| **MILLER COHEN, P.L.C.** | **VARNUM LLP** |
|---|---|
| Keith D. Flynn (P74192) | Terrance J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 160 W. Fort, 5th Floor |
| Detroit, MI  48226-0840 | Detroit, MI 48226 |
| (313) 964-4454 Phone | (313) 481-7300 Phone |
| (313) 964-4490 Fax | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
## FOR JUDGMENT AS A MATTER OF LAW
## <u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)</u>

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..................................................................... iii

STATEMENT OF QUESTIONS PRESENTED .................................................. v

PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b) ............................................................... 1

## I.  INTRODUCTION ....................................................................... 1

## II. STATEMENT OF FACTS ......................................................... 3

A. Henry Ford violated the Fair Labor Standards Act by failing to pay Plaintiff for lunch periods that she was engaged to wait. Plaintiff reported this violation to Henry Ford's Human Resources Department and the State of Michigan ............................................................. 3

B. Henry Ford failed to correct their illegal activity and, instead, retaliated against Plaintiff for reporting their violation ............................................. 5

C. Plaintiff reported to the Michigan Department of Licensing and Regulatory Affairs (LARA) leading Defendant to terminate her employment after a sham investigation ....................................................... 7

D. Henry Ford's own policies make clear Plaintiff would have never been terminated, but for Defendant's agents' retaliatory action ......................... 8

## III.  STANDARD OF REVIEW ..................................................... 10

## IV.  ARGUMENT ........................................................................ 11

A. Defendant completely ignores evidence presented by plaintiff that (1) Plaintiff did not engage in any misconduct because her lunch break was authorized, (2) Defendant's agent's statements demonstrate evidence of discrimination, (3) there was close temporal proximity between the protected activity and termination, and (4) Plaintiff had no prior performance problems .......................................................................... 12

B. Even if plaintiff's conduct was not authorized, similarly situated employees were not fired for similar conduct ........................................... 15

C. Defendant makes a number of conclusory statements that do not reflect the record to argue that Plaintiff's conduct should have been governed by Defendant's HFML Policy and Corrective Action Policy .................. 15

## V. CONCLUSION ......................................................................... 16

# INDEX OF AUTHORITIES

**Cases**                                                                **Page**

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
   370 U.S. 690, 696, n. 6 (1962)...........................................................................11

*Carlson v. Leprino Foods Co.,* 522 F. Supp. 2d 883, 889 (W.D. Mich. 2007).......12

*Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554–555 (1990)................................11

*Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 524-25 (6th Cir. 2008)..............14

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000)..............10

*Thompson v. Aramark Sch. Support Servs., Inc.,*
   490 F.3d 506, 509 (6th Cir. 1007) ....................................................................15

## Statutes, Rules and Regulations

F.R.C.P. 50(a) ....................................................................................................10

F.R.C.P. 50(b) ....................................................................................................16

M.C.L. §15.362 ...........................................................................................1, 11, 12

## STATEMENT OF QUESTIONS PRESENTED

I.  Should this court deny Defendant's Renewed Motion for Judgment as a Matter of Law because a reasonable juror could have concluded that there was a causal connection between Plaintiff's protected activity and her suspension and termination as a result of (1) evidence related to Fiona Bork's adverse statements, (2) evidence showing Plaintiff did not engage in any misconduct because of her lunch break, (3) evidence demonstrating Plaintiff was entitled to less serious sanctions under the progressive discipline policy, (4) evidence related to the close temporal proximity between Plaintiff's protected activity and termination, (5) evidence that Plaintiff had no prior performance problems, (6) evidence that other employees were treated more favorably than her for similar or more egregious conduct, and/or (7) emails and deposition testimony from employer agents that demonstrate evidence of discrimination?

Plaintiff answers "yes"          Defendant answers "no"

II.  Should this court sanction Defendant for bringing a frivolous motion that has already been decided by this Court twice?

Plaintiff answers "yes"          Defendant answers "no"

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)</u>**

NOW COMES Plaintiff, NATALIE REESER, by and through her attorneys, in response to Defendant's Renewed Motion for Judgment as a Matter of Law, and states as follows:

## I. INTRODUCTION

This is Defendant's third attempt to argue that Plaintiff has not offered sufficient proof to demonstrate that she was terminated by Defendant in violation of Michigan's Whistleblowers' Protection Act (WPA), M.C.L. § 15.362. Defendant made this argument when it filed its' Motion for Summary Judgment (Doc. 43), which was denied (Doc. 60). At trial, Defendant motioned for a judgment as a matter of law at the close of Plaintiff's case; the motion was denied. Now, after a jury of eight unanimously found for Plaintiff at the conclusion of a seven day trial, Defendant once again argues no reasonable juror could have found in Plaintiff's favor. It is clear that reasonable jurors not only could have determined, but, in fact, did determine that Plaintiff was terminated by Defendant in violation of the WPA.

Defendant focuses on the element of causation in its' brief. A reasonable juror could have concluded that Plaintiff was terminated for engaging in protected activity numerous ways, most obviously, simply by finding Plaintiff's testimony regarding Fiona Bork credible. If a juror determined that this testimony was credible, Fiona

Bork called Plaintiff the day she was suspended before the suspension and told her she was going "to be sorry" for reporting her claims of unpaid wages to the State. As this Court found in its' Opinion and Order Denying Defendant's Motion for Summary Judgment, "<u>**a reasonable jury could make the inference that disciplinary action could be the consequence of her protected activity for which she would be 'sorry'**</u>" (Doc. 60, pg. 17-18) (emphasis added). In addition, Plaintiff offered evidence that (1) she did not engage in any misconduct because her lunch break was authorized, (2) she was entitled to less serious sanctions under the progressive discipline policy, (3) there was close temporal proximity between Plaintiff's protected activity and termination, (4) Plaintiff had no prior performance problems, (5) other employees were treated more favorably than her for similar or more egregious conduct, and (6) emails and deposition testimony from employer agents demonstrate evidence of discrimination.

The jury could have made its' determination is numerous ways, relying on all or some of the above evidence. In denying Defendant's Motion for Summary Judgment, this Court held that Plaintiff had demonstrated sufficient evidence for a reasonable jury to conclude that Plaintiff's termination was the consequence of her protected activity. Therefore, Defendant's Motion needlessly reargues an issue decided repeatedly by this Court and the jury. For this reason, Plaintiff asks that the Court impose sanctions.

## II.  STATEMENT OF FACTS

The Court is well acquainted with the facts in this case. Plaintiff, Natalie Reeser, was employed as a full-time laboratory assistant/phlebotomist with Henry Ford Health System (Henry Ford) at their Clinton Township Patient Service Center (CTPSC) from May 16, 2011 until her termination in March 2014. Plaintiff was supervised by two managers at CTPSC, Fiona Bork and Martha Wiseheart. Before early 2014, Plaintiff had a good working relationship with Bork and Wiseheart and excellent performance reviews.

**A.** **Henry Ford violated the Fair Labor Standards Act by failing to pay Plaintiff for lunch periods that she was engaged to wait. Plaintiff reported this violation to Henry Ford's Human Resources Department and the State of Michigan**

Defendant had an unpaid mandatory 30 minute lunch policy while Plaintiff was employed at Henry Ford. Plaintiff repeatedly requested to take a 30 minute lunch under this policy, but her requests were denied and she was denied compensation this time. From 2012 to 2014, Plaintiff was not paid for over 350 lunches to which she was entitled.

In early January 2014, after learning from a doctor in the facility that this practice was illegal, Ms. Reeser contacted the State. On January 14, 2014, Plaintiff contacted Human Resources (HR) Senior Business Partner Jill Hood to request a meeting concerning this issue, among others.

3

Before Plaintiff's meeting with Hood on January 15, 2014, Plaintiff discovered that Bork had somehow learned of her planned meeting with HR. After Plaintiff confirmed that she was meeting with HR, Bork "was appalled" and adopted a "how dare [you]" attitude. Eventually, this meeting was cancelled after Bork withdrew her permission for Ms. Reeser to attend the meeting with Hood.

On January 20, 2014, Plaintiff finally met with Hood. In this meeting, Plaintiff informed Hood that she had not been allowed to take 30 minute lunch breaks away from her office for years. Plaintiff indicated she "recently learned . . . The Fair Labor Standards Act (FLSA) states that hourly employees, who are required to work more than 40 hours in a work week, are to be compensated for those hours under a term called, 'engaged to work.'" Plaintiff requested "[HR] . . . intercede, and allow employees . . . a scheduled/advertised 30-minute closure of the lab each day for a meal break." Plaintiff explained that Bork said she would be "terminated" if she reported this issue. In response, Hood admitted that Henry Ford had violated federal law by failing to pay Plaintiff for her 'lunches' and promised that she would correct the problem.

Hood explained that she would speak with Bork about the lunch policy and Plaintiff could then begin putting "no lunch" on her timecard to reflect the time owed pursuant to the FLSA.

**B.** **Henry Ford failed to correct their illegal activity and, instead, retaliated against Plaintiff for reporting their violation**

On January 26, 2014, Bork emailed Plaintiff and asked "[c]ould you let me know what prevented you from taking lunch 8 out of the 10 days on your time card. Our policy has always been to contact me to get approval not to get a lunch. As you know lunches are mandatory." On January 27, 2014, Plaintiff emailed Hood, stating "I went ahead and put no lunch and I get an email stating, I cannot with out approval, I need some direction on this, because this is upsetting." After Plaintiff's email to Hood, Wiseheart sent an email to Plaintiff denying Plaintiff compensation for lunches she worked until verified by Bork. Later, Bork emailed her boss, John Waugh, Vice President of Laboratory Systems, and indicated that Plaintiff's complaints raised "a huge problem" and that Plaintiff was not entitled to pay for lunches because there were hours of downtime at CTPSC due to patient volume.

In late January or early February 2014, Bork called Plaintiff in the evening and "told [her] off", stating "[you'll] be sorry" for reporting unpaid lunches to the State of Michigan. Even after being instructed by Hood to pay Reeser for lunches she worked in the future, Bork still refused.

On February 18, 2014, Plaintiff wrote to Hood and reiterated that she was still being denied the opportunity to take a lunch break and had still not been paid for the missed lunches owed to her. Plaintiff stated "Thursday will be a month that I was in your office. This is NOT fair to me as an employee, that I have no answers from

5

you a month later . . . I still have hea[r]d nothing on the lunches I don't get yet am still not paid for either." Plaintiff added, "I have no choice but to file paperwork with the state."

Between February 18 and February 25, 2014, Bork, Hood, and Waugh decided to retaliate against Plaintiff by forcing her to transfer to a new site, even though Ms. Reeser had always been at CTPSC and against her wishes.

On the morning of February 25, Plaintiff received a phone call from Bork. Bork said "How dare you go to the State about me", told her that she would be losing CTPSC, indicated that Plaintiff thought she was "some superior person or something" for making a report to the State of Michigan, and threatened that Plaintiff would "be sorry." Plaintiff broke down and stated that she planned on taking a lunch that day.

After this call, Plaintiff, in tears, spoke with Wiseheart and told her that Bork "was upset because I reported the lunch" issue. She also told Wiseheart "that she had to close down and go to lunch." Wiseheart stated: "You need to take some time to yourself and you definitely need to go to HR" and gave her a hug. Wiseheart waived her on to leave.

At 1:12 PM, in compliance with a lunch policy announced by Bork on 2/24/14, Plaintiff emailed a note to Bork, Wiseheart and Luain Hajjar, stating she was taking a break. Plaintiff posted a sign on the front door of the office indicating

she would return in 30 minutes and left the office. After posting this sign, Plaintiff went to her car for 30 minutes. Before her lunch and during her lunch, no staff member of CTPSC "responded to [her] email, or called [her] on either [her] office line, or [her] work cell phone to say, 'No Natalie, you cannot take a break today.'" After Plaintiff's lunch, Bork sent an email to Ms. Reeser describing her new schedule. At or around 4:00 PM, Plaintiff was suspended pending an investigation and escorted off the premises by security without being allowed to take with her all of her personal belongings.

## C. Plaintiff reported to the Michigan Department of Licensing and Regulatory Affairs (LARA) leading Defendant to terminate her employment after a sham investigation

Plaintiff completed her FLSA complaint and mailed it to LARA on February 25, 2014. Hood was informed of Plaintiff's intent to file with LARA on February 18, 2014. LARA received the complaint on February 27, 2014. Plaintiff was informed that she was being terminated on March 7. Ms. Reeser was not paid for the lunches that she was forced to work until immediately before her termination. Hood expressed concern "that potential litigation may come from this" and stated that she understood that "the timing between when her actions of walking off the job so closely corresponded with when we were going to be issuing her back pay for the lunches, and it's very clear to me . . . **even the prima facie of that is that it looks**

7

**odd**" (emphasis added). Regardless, the decision to terminate was made by Waugh and Bork.

Hood engaged in a sham investigation relying solely on statements made by Bork and Wiseheart, even when they contradicted one another. Although Bork was accused of harassing and retaliating against Ms. Reeser, Hood allowed Bork to conduct her own interviews with staff members at the site regarding Reeser's termination. When it was clear the facts provided by Plaintiff's managers were damaging to Henry Ford, Hood simply neglected to mention those facts.

**D.      Henry Ford's own policies make clear Plaintiff would have never been terminated, but for Defendant's agents' retaliatory action**

The Hospital's "Break Period" policy provides that "[E]mployees may not work through unpaid break periods unless requested by or otherwise approved by operational leadership." "Employees may leave the premises during unpaid lunch periods, although employees doing so must return punctually." Defendant's HFML Lab Assistant Policies and Guidelines state "[e]ach Lab Assistant, regular full-time, part time, or temporary will . . . adhere to the following policies: Lunches and Breaks: 8 hours, but less than 12 hours = Two paid 15 minute breaks, One 30 minute unpaid." Defendant's Payroll Instructions inform Lab Assistants that "[a]ll staff who work 8 or more hours are to take a 30 minute lunch. It is not acceptable to state no lunch unless it is authorized by HFML management."

In the past, Bork instructed employees on several occasions that:

- "Lunches are Mandatory, Not Paid and are 30 minutes. Everyone should be taking a lunch everyday that you work." Unlike lunches, Bork explained, "[b]reaks are NOT mandatory and are paid."
- On January 26, 2014, Bork emailed Plaintiff and asked "[c]ould you let me know what prevented you from taking lunch 8 out of the 10 days on your time card. Our policy has always been to contact me to get <u>approval not to get a lunch</u>. As you know <u>lunches are mandatory</u>."
- On February 24, 2014, Bork sent an email to a number of employees, including Plaintiff, changing the policy and instructing that "[s]tarting tomorrow February 25th, 2014 When you take your lunch please send an email that you are signing out for lunch and when you return from lunch please send an email you are back from your lunch." In her email, Bork explained that this policy "is mandatory and failure to do so will result in a full occurrence."

In order to facilitate lunch breaks at CTPSC, employees had a practice of placing a break sign on the front door of the office informing potential customers that someone would return to the office soon. When Plaintiff sought to take lunch and another employee was not available to watch the office, such a sign would be taken from the Emergency Door Sign Folder and placed on the office door. One of Plaintiff's supervisors, Wiseheart, approved the sign every time Plaintiff utilized a sign in such a manner.

Defendant has a progressive discipline policy to handle workplace violations. Violations are divided into Group 1 and Group 2 violations. *Id.* at 40. Group 1 violations include "attendance." Group 2 violations "are things such as . . . walking off the job." Walking off the job occurs when there is no notice provided and the employee walks away from their work. The Group 2 progressive discipline policy is

"documented counseling, written warning, written warning with suspension and then termination."

Under HFML Employees Policies and Guidelines, if an employee fails to obtain approval by "email[ing] [their] arrival and departure", the penalty is "a full occurrence." According to the Attendance policy, if an employee fails to report to work as scheduled, they incur a full occurrence.  If an employee leaves early or returns late from a lunch less than ½ an hour, that is ½ an occurrence—anything over ½ an hour is 1 occurrence.  If an employee has three occurrences in 30 days, they "get [their] first corrective action." If there are then three more occurrences in 30 days or four more occurrences in 90 days or seven more occurrences in 160 days, an employee will receive the next corrective action in the progressive discipline policy. Before February 25, 2014, if Plaintiff had any occurrences, they were insufficient to bring her to the first corrective action level.

### III.  STANDARD OF REVIEW

Under Rule 50, a court should render judgment as a matter of law only when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. Rule Civ. Proc. 50(a). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The court "must

draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.*, citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555 (1990); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n. 6 (1962). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves* at 151.

## IV. ARGUMENT

Defendant's sole argument in its' brief is that Plaintiff failed to prove at trial a casual connection between her protected activity and termination. A plaintiff engages in protected activity under the WPA when she "reports or is about to report a violation or a suspected violation of a law … to a public body." M.C.L. § 15.362. Defendant asserts that Plaintiff could not have proven that she was terminated for filing a report, but only for being about to report a violation (Doc. 116, pg. 11). To bolster this claim, Defendant states, without support, that Plaintiff filed her complaint with LARA on February 27, 2014. *Id.* However, this issue was contested at trial.

Plaintiff stated in her deposition (Reeser Dep. 277) and at trial that she mailed her report to LARA on the morning of February 25, 2014, prior to her termination. In fact, Fiona Bork appeared to have knowledge of this report, because she told Plaintiff on February 25, 2014 that she was going "to be sorry" for reporting her

claims of unpaid wages to the State. Both Ms. Bork, as evidenced through the above statement, and Ms. Hood, through a February 18, 2014 email (*Exhibit A*), knew that Plaintiff was going to file paperwork with the State of Michigan. For these reasons, Plaintiff alleged that she was both terminated for reporting and for being about to report under M.C.L. § 15.362.

A reasonable jury could have found Plaintiff's testimony credible and determined a report had been made prior to Plaintiff's termination and that Plaintiff was fired for making this report. A reasonable jury could have also found that Plaintiff was terminated, because Ms. Bork and Ms. Hood knew she was about to report the FLSA violation.

**A.      Defendant completely ignores evidence presented by plaintiff that (1) Plaintiff did not engage in any misconduct because her lunch break was authorized, (2) Defendant's agent's statements demonstrate evidence of discrimination, (3) there was close temporal proximity between the protected activity and termination, and (4) Plaintiff had no prior performance problems**

Throughout the trial, Plaintiff repeatedly offered evidence that Plaintiff did not engage in misconduct, because various Defendant policies and her supervisors, Fiona Bork and Martha Wiseheart, indicated she could leave the site. If Plaintiff had authorization to leave, she clearly was not treated the same as similarly situated individuals who would not receive discipline for engaging in an authorized action. *See Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883, 889 (W.D. Mich. 2007).

Defendant's policies mandate a 30-minute unpaid lunch (*Exhibit B*). Wiseheart and Bork received notification of Plaintiff's intention to take lunch before she left. Wiseheart, the manager on site, testified that Plaintiff stopped in her office before she left for lunch. Plaintiff testified that she told Wiseheart in this conversation she was leaving for lunch and Wiseheart "waved her on." Defendant's own Lab Assistant Policies and Guidelines require only that an employee that wishes to leave the facility obtain authorization from **a manager**, not a particular manager. *Id.* Ms. Wiseheart was Plaintiff's manager. If the above testimony was considered credible by the jury, they could reasonably conclude job abandonment did not occur and, therefore, Plaintiff was treated differently than similarly situated individuals who had engaged in no misconduct.

In addition, Plaintiff offered evidence that Plaintiff complied with a new lunch policy introduced by Ms. Bork on February 24, 2014. As the court noted in its' Opinion and Order Denying Defendant's Motion for Summary Judgment, "given the surrounding circumstances of Reeser's ongoing discussions with human resources regarding her request for a paid off-site lunch break, Reeser's interpretation of the e-mail remains a possibility (Doc. 60, pg. 17)." If the jury believed this new policy authorized Plaintiff to leave for lunch, then the above analysis would also apply.

Plaintiff testified at trial that Ms. Bork called her on two separate occasions and threatened that she would be sorry for reporting the FLSA violation to the State

of Michigan. In addition, Plaintiff presented evidence in the form of emails between Defendant's agents which demonstrate animus (for examples, see *Exhibit C*). As the Court noted in its' Opinion and Order Denying Defendant's Motion for Summary Judgment, "a jury could reasonably infer from th[is] evidence that HFHS's actions were motivated by retaliation" (Doc. 60, pg. 18).

As the court noted in its' Opinion, "[e]ven taking Reeser's first informal complaint of a possible FLSA violation to her employer on January 20, 2014, as the triggering date, the time that elapsed between her protected activity and her suspension on February 25, 2014, and her ultimate termination on March 7, 2014, is so close in time that this temporal proximity **standing alone** may be sufficient to establish causation." *Id.* at 16 (emphasis added). The jury could have reasonably concluded that the timing between the events in this case was so suspect that judgment for the Plaintiff was necessary. Contrary to Defendant's assertions, in some cases, very close temporal proximity between protected activity and the adverse work action can establish causation for the purposes of establishing a prima facie case. *Id.*; *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524-25 (6th Cir. 2008).

Finally, Plaintiff presented evidence of a good performance record before her reports regarding the FLSA violation (*Exhibit D*). The fact that an employee had no prior performance problems prior to reporting violations of law can constitute

indirect evidence of causation. *Thompson v. Aramark Sch. Support Servs., Inc.*, 490 F.3d 506, 509 (6th Cir. 2007).

**B.    Even if Plaintiff's conduct was not authorized, similarly situated employees were not fired for similar conduct**

Defendant's failure to address the above issues is fatal to its' Motion. However, Plaintiff will respond to Defendant's arguments as well in case the court is persuaded otherwise. In trial, Plaintiff submitted the employment records of four employees who, despite repeated attendance problems, other performance issues, and multiple instances of falsifying time records and other integrity issues, were referred to counseling and received warnings prior to termination (*Exhibit E*).

In denying Defendant's Motion for Summary Judgment, the Court noted that these records established a genuine issue of fact as to whether Defendant's "decision to terminate Reeser for a taking a thirty minute lunch break was consistent with the way it treated other employees" (Doc. 60, pg. 20). In making this finding, the Court noted that "all of those employees were arguably treated more favorably than Reeser." *Id.* The jury could have reasonably concluded that Plaintiff's termination was a harsher penalty than those faced by these individuals.

**C.    Defendant makes a number of conclusory statements that do not reflect the record to argue that Plaintiff's conduct should have been governed by Defendant's HFML Policy and Corrective Action Policy**

Defendant suggests that Plaintiff admitted to abandoning her job (Doc. 116, pg. 13). This is incorrect. In fact, one of the key issues at trial was whether or not

Plaintiff's conduct, leaving her desk for approximately 30 minutes to sit in the parking lot, constituted job abandonment. Plaintiff stated at trial that she did not abandon her job, because she had authorization for her action. As was revealed at trial, there is no definition of job abandonment in any of Defendant's policies. Despite Defendant's assertions, Plaintiff contradicted testimony by Defendant's witnesses that her actions constituted job abandonment. A reasonable jury could have concluded that Plaintiff's actions did not constitute job abandonment and, therefore, should not be disciplined or, alternatively, should be reviewed under Defendant's Attendance Policy.

## V. CONCLUSION

For the foregoing reasons, there is no merit to Defendant's motion as the issues raised in Defendant's brief have previously been decided by this Court. Plaintiff respectfully requests the Court deny Defendant's renewed Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b) and award sanctions.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By:   /s/Adam C. Graham
        Keith D. Flynn (P74192)
        Adam C. Graham (P79361)
        *Attorneys for Plaintiff*
        600 W. Lafayette Blvd., 4th Floor
        Detroit, MI  48226

Dated: July 12, 2016        (313) 964-4454

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**NATALIE REESER**,

                        Case No. 2:14-cv-11916-GCS-MJH
       Plaintiff,           Hon. George Caram Steeh
v                          Magistrate Judge Stephanie Dawkins Davis

**HENRY FORD HOSPITAL**,

       Defendant.

---

| **MILLER COHEN, P.L.C.** | **VARNUM LLP** |
|---|---|
| Keith D. Flynn (P74192) | Terrance J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 160 W. Fort, 5th Floor |
| Detroit, MI 48226-0840 | Detroit, MI 48226 |
| (313) 964-4454 Phone | (313) 481-7300 Phone |
| (313) 964-4490 Fax | |

---

## CERTIFICATE OF SERVICE

I hereby certify that on *July 12, 2016*, I electronically filed the foregoing document(s) with the Court using the ECF system, which will send notification of such filing to all counsel of record.

                          Respectfully submitted,

                          **MILLER COHEN, P.L.C.**

                          By: /s/Adam C. Graham
                                Keith D. Flynn (P74192)
                                Adam C. Graham (P79361)
                                *Attorneys for Plaintiff*
                                600 W. Lafayette Blvd., 4th Floor
                                Detroit, MI 48226
                                (313) 964-4454