# EXHIBIT D
# Part 2

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**NATALIE REESER,**

|  |  |
|---|---|
| Plaintiff, | Case No. 2:14-cv-11916-GCS-MJH |
|  | Hon. George Caram Steeh |
| v | Magistrate Judge Stephanie Dawkins Davis |

**HENRY FORD HOSPITAL,**

Defendant.

| **MILLER COHEN, P.L.C.** | **VARNUM LLP** |
|---|---|
| Keith D. Flynn (P74192) | Terrance J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 160 W. Fort, 5th Floor |
| Detroit, MI 48226-0840 | Detroit, MI 48226 |
| (313) 964-4454 Phone | (313) 481-7300 Phone |
| (313) 964-4490 Fax | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)

**TABLE OF CONTENTS**

**INDEX OF AUTHORITIES** ................................................................. iii

**STATEMENT OF QUESTIONS PRESENTED** ................................. v

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)** ............................................. 1

**I. INTRODUCTION** ........................................................................... 1

**II. STATEMENT OF FACTS** ............................................................ 3

    A. Henry Ford violated the Fair Labor Standards Act by failing to pay Plaintiff for lunch periods that she was engaged to wait. Plaintiff reported this violation to Henry Ford's Human Resources Department and the State of Michigan ..................................................... 3

    B. Henry Ford failed to correct their illegal activity and, instead, retaliated against Plaintiff for reporting their violation ................................ 5

    C. Plaintiff reported to the Michigan Department of Licensing and Regulatory Affairs (LARA) leading Defendant to terminate her employment after a sham investigation .................................................. 7

    D. Henry Ford's own policies make clear Plaintiff would have never been terminated, but for Defendant's agents' retaliatory action ................... 8

**III. STANDARD OF REVIEW** ......................................................... 10

**IV. ARGUMENT** ............................................................................ 11

    A. Defendant completely ignores evidence presented by plaintiff that (1) Plaintiff did not engage in any misconduct because her lunch break was authorized, (2) Defendant's agent's statements demonstrate evidence of discrimination, (3) there was close temporal proximity between the protected activity and termination, and (4) Plaintiff had no prior performance problems ....................................................................... 12

    B. Even if plaintiff's conduct was not authorized, similarly situated employees were not fired for similar conduct ..................................... 15

    C. Defendant makes a number of conclusory statements that do not reflect the record to argue that Plaintiff's conduct should have been governed by Defendant's HFML Policy and Corrective Action Policy ............... 15

**V. CONCLUSION** .......................................................................... 16

i

# INDEX OF AUTHORITIES

**Cases**                                                                                  **Page**

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690, 696, n. 6 (1962) ................................................................. 11

*Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883, 889 (W.D. Mich. 2007) ....... 12

*Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555 (1990) ............................... 11

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524-25 (6th Cir. 2008) ............. 14

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) ............. 10

*Thompson v. Aramark Sch. Support Servs., Inc.*,
490 F.3d 506, 509 (6th Cir. 1007) ...................................................... 15

## Statutes, Rules and Regulations

F.R.C.P. 50(a) ............................................................................. 10

F.R.C.P. 50(b) ............................................................................. 16

M.C.L. §15.362 ................................................................. 1, 11, 12

## STATEMENT OF QUESTIONS PRESENTED

I.  Should this court deny Defendant's Renewed Motion for Judgment as a Matter of Law because a reasonable juror could have concluded that there was a causal connection between Plaintiff's protected activity and her suspension and termination as a result of (1) evidence related to Fiona Bork's adverse statements, (2) evidence showing Plaintiff did not engage in any misconduct because of her lunch break, (3) evidence demonstrating Plaintiff was entitled to less serious sanctions under the progressive discipline policy, (4) evidence related to the close temporal proximity between Plaintiff's protected activity and termination, (5) evidence that Plaintiff had no prior performance problems, (6) evidence that other employees were treated more favorably than her for similar or more egregious conduct, and/or (7) emails and deposition testimony from employer agents that demonstrate evidence of discrimination?

Plaintiff answers "yes"                    Defendant answers "no"

II. Should this court sanction Defendant for bringing a frivolous motion that has already been decided by this Court twice?

Plaintiff answers "yes"                    Defendant answers "no"

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW
<ins>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)</ins>**

NOW COMES Plaintiff, NATALIE REESER, by and through her attorneys, in response to Defendant's Renewed Motion for Judgment as a Matter of Law, and states as follows:

## I. INTRODUCTION

This is Defendant's third attempt to argue that Plaintiff has not offered sufficient proof to demonstrate that she was terminated by Defendant in violation of Michigan's Whistleblowers' Protection Act (WPA), M.C.L. § 15.362. Defendant made this argument when it filed its' Motion for Summary Judgment (Doc. 43), which was denied (Doc. 60). At trial, Defendant motioned for a judgment as a matter of law at the close of Plaintiff's case; the motion was denied. Now, after a jury of eight unanimously found for Plaintiff at the conclusion of a seven day trial, Defendant once again argues no reasonable juror could have found in Plaintiff's favor. It is clear that reasonable jurors not only could have determined, but, in fact, did determine that Plaintiff was terminated by Defendant in violation of the WPA.

Defendant focuses on the element of causation in its' brief. A reasonable juror could have concluded that Plaintiff was terminated for engaging in protected activity numerous ways, most obviously, simply by finding Plaintiff's testimony regarding Fiona Bork credible. If a juror determined that this testimony was credible, Fiona

1

Bork called Plaintiff the day she was suspended before the suspension and told her she was going "to be sorry" for reporting her claims of unpaid wages to the State. As this Court found in its' Opinion and Order Denying Defendant's Motion for Summary Judgment, "**<u>a reasonable jury could make the inference that disciplinary action could be the consequence of her protected activity for which she would be 'sorry'</u>**" (Doc. 60, pg. 17-18) (emphasis added). In addition, Plaintiff offered evidence that (1) she did not engage in any misconduct because her lunch break was authorized, (2) she was entitled to less serious sanctions under the progressive discipline policy, (3) there was close temporal proximity between Plaintiff's protected activity and termination, (4) Plaintiff had no prior performance problems, (5) other employees were treated more favorably than her for similar or more egregious conduct, and (6) emails and deposition testimony from employer agents demonstrate evidence of discrimination.

The jury could have made its' determination is numerous ways, relying on all or some of the above evidence. In denying Defendant's Motion for Summary Judgment, this Court held that Plaintiff had demonstrated sufficient evidence for a reasonable jury to conclude that Plaintiff's termination was the consequence of her protected activity. Therefore, Defendant's Motion needlessly reargues an issue decided repeatedly by this Court and the jury. For this reason, Plaintiff asks that the Court impose sanctions.

## II. STATEMENT OF FACTS

The Court is well acquainted with the facts in this case. Plaintiff, Natalie Reeser, was employed as a full-time laboratory assistant/phlebotomist with Henry Ford Health System (Henry Ford) at their Clinton Township Patient Service Center (CTPSC) from May 16, 2011 until her termination in March 2014. Plaintiff was supervised by two managers at CTPSC, Fiona Bork and Martha Wiseheart. Before early 2014, Plaintiff had a good working relationship with Bork and Wiseheart and excellent performance reviews.

**A.    Henry Ford violated the Fair Labor Standards Act by failing to pay Plaintiff for lunch periods that she was engaged to wait. Plaintiff reported this violation to Henry Ford's Human Resources Department and the State of Michigan**

Defendant had an unpaid mandatory 30 minute lunch policy while Plaintiff was employed at Henry Ford. Plaintiff repeatedly requested to take a 30 minute lunch under this policy, but her requests were denied and she was denied compensation this time. From 2012 to 2014, Plaintiff was not paid for over 350 lunches to which she was entitled.

In early January 2014, after learning from a doctor in the facility that this practice was illegal, Ms. Reeser contacted the State. On January 14, 2014, Plaintiff contacted Human Resources (HR) Senior Business Partner Jill Hood to request a meeting concerning this issue, among others.

Before Plaintiff's meeting with Hood on January 15, 2014, Plaintiff discovered that Bork had somehow learned of her planned meeting with HR. After Plaintiff confirmed that she was meeting with HR, Bork "was appalled" and adopted a "how dare [you]" attitude. Eventually, this meeting was cancelled after Bork withdrew her permission for Ms. Reeser to attend the meeting with Hood.

On January 20, 2014, Plaintiff finally met with Hood. In this meeting, Plaintiff informed Hood that she had not been allowed to take 30 minute lunch breaks away from her office for years. Plaintiff indicated she "recently learned . . . The Fair Labor Standards Act (FLSA) states that hourly employees, who are required to work more than 40 hours in a work week, are to be compensated for those hours under a term called, 'engaged to work.'"  Plaintiff requested "[HR] . . . intercede, and allow employees . . . a scheduled/advertised 30-minute closure of the lab each day for a meal break." Plaintiff explained that Bork said she would be "terminated" if she reported this issue.  In response, Hood admitted that Henry Ford had violated federal law by failing to pay Plaintiff for her 'lunches' and promised that she would correct the problem.

Hood explained that she would speak with Bork about the lunch policy and Plaintiff could then begin putting "no lunch" on her timecard to reflect the time owed pursuant to the FLSA.

**B.    Henry Ford failed to correct their illegal activity and, instead, retaliated against Plaintiff for reporting their violation**

On January 26, 2014, Bork emailed Plaintiff and asked "[c]ould you let me know what prevented you from taking lunch 8 out of the 10 days on your time card. Our policy has always been to contact me to get approval not to get a lunch. As you know lunches are mandatory." On January 27, 2014, Plaintiff emailed Hood, stating "I went ahead and put no lunch and I get an email stating, I cannot with out approval, I need some direction on this, because this is upsetting." After Plaintiff's email to Hood, Wiseheart sent an email to Plaintiff denying Plaintiff compensation for lunches she worked until verified by Bork. Later, Bork emailed her boss, John Waugh, Vice President of Laboratory Systems, and indicated that Plaintiff's complaints raised "a huge problem" and that Plaintiff was not entitled to pay for lunches because there were hours of downtime at CTPSC due to patient volume.

In late January or early February 2014, Bork called Plaintiff in the evening and "told [her] off", stating "[you'll] be sorry" for reporting unpaid lunches to the State of Michigan.  Even after being instructed by Hood to pay Reeser for lunches she worked in the future, Bork still refused.

On February 18, 2014, Plaintiff wrote to Hood and reiterated that she was still being denied the opportunity to take a lunch break and had still not been paid for the missed lunches owed to her.  Plaintiff stated "Thursday will be a month that I was in your office. This is NOT fair to me as an employee, that I have no answers from

you a month later . . . I still have hea[r]d nothing on the lunches I don't get yet am still not paid for either." Plaintiff added, "I have no choice but to file paperwork with the state."

Between February 18 and February 25, 2014, Bork, Hood, and Waugh decided to retaliate against Plaintiff by forcing her to transfer to a new site, even though Ms. Reeser had always been at CTPSC and against her wishes.

On the morning of February 25, Plaintiff received a phone call from Bork. Bork said "How dare you go to the State about me", told her that she would be losing CTPSC, indicated that Plaintiff thought she was "some superior person or something" for making a report to the State of Michigan, and threatened that Plaintiff would "be sorry." Plaintiff broke down and stated that she planned on taking a lunch that day.

After this call, Plaintiff, in tears, spoke with Wiseheart and told her that Bork "was upset because I reported the lunch" issue. She also told Wiseheart "that she had to close down and go to lunch." Wiseheart stated: "You need to take some time to yourself and you definitely need to go to HR" and gave her a hug. Wiseheart waived her on to leave.

At 1:12 PM, in compliance with a lunch policy announced by Bork on 2/24/14, Plaintiff emailed a note to Bork, Wiseheart and Luain Hajjar, stating she was taking a break. Plaintiff posted a sign on the front door of the office indicating

she would return in 30 minutes and left the office. After posting this sign, Plaintiff went to her car for 30 minutes. Before her lunch and during her lunch, no staff member of CTPSC "responded to [her] email, or called [her] on either [her] office line, or [her] work cell phone to say, 'No Natalie, you cannot take a break today.'" After Plaintiff's lunch, Bork sent an email to Ms. Reeser describing her new schedule. At or around 4:00 PM, Plaintiff was suspended pending an investigation and escorted off the premises by security without being allowed to take with her all of her personal belongings.

## C.     Plaintiff reported to the Michigan Department of Licensing and Regulatory Affairs (LARA) leading Defendant to terminate her employment after a sham investigation

Plaintiff completed her FLSA complaint and mailed it to LARA on February 25, 2014. Hood was informed of Plaintiff's intent to file with LARA on February 18, 2014. LARA received the complaint on February 27, 2014. Plaintiff was informed that she was being terminated on March 7. Ms. Reeser was not paid for the lunches that she was forced to work until immediately before her termination. Hood expressed concern "that potential litigation may come from this" and stated that she understood that "the timing between when her actions of walking off the job so closely corresponded with when we were going to be issuing her back pay for the lunches, and it's very clear to me . . . **even the prima facie of that is that it looks**

odd" (emphasis added). Regardless, the decision to terminate was made by Waugh and Bork.

Hood engaged in a sham investigation relying solely on statements made by Bork and Wiseheart, even when they contradicted one another. Although Bork was accused of harassing and retaliating against Ms. Reeser, Hood allowed Bork to conduct her own interviews with staff members at the site regarding Reeser's termination. When it was clear the facts provided by Plaintiff's managers were damaging to Henry Ford, Hood simply neglected to mention those facts.

### D. Henry Ford's own policies make clear Plaintiff would have never been terminated, but for Defendant's agents' retaliatory action

The Hospital's "Break Period" policy provides that "[E]mployees may not work through unpaid break periods unless requested by or otherwise approved by operational leadership." "Employees may leave the premises during unpaid lunch periods, although employees doing so must return punctually." Defendant's HFML Lab Assistant Policies and Guidelines state "[e]ach Lab Assistant, regular full-time, part time, or temporary will . . . adhere to the following policies: Lunches and Breaks: 8 hours, but less than 12 hours = Two paid 15 minute breaks, One 30 minute unpaid." Defendant's Payroll Instructions inform Lab Assistants that "[a]ll staff who work 8 or more hours are to take a 30 minute lunch. It is not acceptable to state no lunch unless it is authorized by HFML management."

In the past, Bork instructed employees on several occasions that:

- "Lunches are Mandatory, Not Paid and are 30 minutes. Everyone should be taking a lunch everyday that you work." Unlike lunches, Bork explained, "[b]reaks are NOT mandatory and are paid."
- On January 26, 2014, Bork emailed Plaintiff and asked "[c]ould you let me know what prevented you from taking lunch 8 out of the 10 days on your time card. Our policy has always been to contact me to get <u>approval not to get a lunch</u>. As you know <u>lunches are mandatory</u>."
- On February 24, 2014, Bork sent an email to a number of employees, including Plaintiff, changing the policy and instructing that "[s]tarting tomorrow February 25th, 2014 When you take your lunch please send an email that you are signing out for lunch and when you return from lunch please send an email you are back from your lunch." In her email, Bork explained that this policy "is mandatory and failure to do so will result in a full occurrence."

In order to facilitate lunch breaks at CTPSC, employees had a practice of placing a break sign on the front door of the office informing potential customers that someone would return to the office soon. When Plaintiff sought to take lunch and another employee was not available to watch the office, such a sign would be taken from the Emergency Door Sign Folder and placed on the office door. One of Plaintiff's supervisors, Wiseheart, approved the sign every time Plaintiff utilized a sign in such a manner.

Defendant has a progressive discipline policy to handle workplace violations. Violations are divided into Group 1 and Group 2 violations. *Id.* at 40. Group 1 violations include "attendance." Group 2 violations "are things such as . . . walking off the job." Walking off the job occurs when there is no notice provided and the employee walks away from their work. The Group 2 progressive discipline policy is

"documented counseling, written warning, written warning with suspension and then termination."

Under HFML Employees Policies and Guidelines, if an employee fails to obtain approval by "email[ing] [their] arrival and departure", the penalty is "a full occurrence." According to the Attendance policy, if an employee fails to report to work as scheduled, they incur a full occurrence.  If an employee leaves early or returns late from a lunch less than ½ an hour, that is ½ an occurrence—anything over ½ an hour is 1 occurrence.  If an employee has three occurrences in 30 days, they "get [their] first corrective action." If there are then three more occurrences in 30 days or four more occurrences in 90 days or seven more occurrences in 160 days, an employee will receive the next corrective action in the progressive discipline policy. Before February 25, 2014, if Plaintiff had any occurrences, they were insufficient to bring her to the first corrective action level.

### III.  STANDARD OF REVIEW

Under Rule 50, a court should render judgment as a matter of law only when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. Rule Civ. Proc. 50(a). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The court "must

draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.*, citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555 (1990); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n. 6 (1962). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves* at 151.

## IV. ARGUMENT

Defendant's sole argument in its' brief is that Plaintiff failed to prove at trial a casual connection between her protected activity and termination. A plaintiff engages in protected activity under the WPA when she "reports or is about to report a violation or a suspected violation of a law … to a public body." M.C.L. § 15.362. Defendant asserts that Plaintiff could not have proven that she was terminated for filing a report, but only for being about to report a violation (Doc. 116, pg. 11). To bolster this claim, Defendant states, without support, that Plaintiff filed her complaint with LARA on February 27, 2014. *Id.* However, this issue was contested at trial.

Plaintiff stated in her deposition (Reeser Dep. 277) and at trial that she mailed her report to LARA on the morning of February 25, 2014, prior to her termination. In fact, Fiona Bork appeared to have knowledge of this report, because she told Plaintiff on February 25, 2014 that she was going "to be sorry" for reporting her

claims of unpaid wages to the State. Both Ms. Bork, as evidenced through the above statement, and Ms. Hood, through a February 18, 2014 email (*Exhibit A*), knew that Plaintiff was going to file paperwork with the State of Michigan. For these reasons, Plaintiff alleged that she was both terminated for reporting and for being about to report under M.C.L. § 15.362.

A reasonable jury could have found Plaintiff's testimony credible and determined a report had been made prior to Plaintiff's termination and that Plaintiff was fired for making this report. A reasonable jury could have also found that Plaintiff was terminated, because Ms. Bork and Ms. Hood knew she was about to report the FLSA violation.

**A. Defendant completely ignores evidence presented by plaintiff that (1) Plaintiff did not engage in any misconduct because her lunch break was authorized, (2) Defendant's agent's statements demonstrate evidence of discrimination, (3) there was close temporal proximity between the protected activity and termination, and (4) Plaintiff had no prior performance problems**

Throughout the trial, Plaintiff repeatedly offered evidence that Plaintiff did not engage in misconduct, because various Defendant policies and her supervisors, Fiona Bork and Martha Wiseheart, indicated she could leave the site. If Plaintiff had authorization to leave, she clearly was not treated the same as similarly situated individuals who would not receive discipline for engaging in an authorized action. *See Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883, 889 (W.D. Mich. 2007).

Defendant's policies mandate a 30-minute unpaid lunch (*Exhibit B*). Wiseheart and Bork received notification of Plaintiff's intention to take lunch before she left. Wiseheart, the manager on site, testified that Plaintiff stopped in her office before she left for lunch. Plaintiff testified that she told Wiseheart in this conversation she was leaving for lunch and Wiseheart "waved her on." Defendant's own Lab Assistant Policies and Guidelines require only that an employee that wishes to leave the facility obtain authorization from **a manager**, not a particular manager. *Id.* Ms. Wiseheart was Plaintiff's manager. If the above testimony was considered credible by the jury, they could reasonably conclude job abandonment did not occur and, therefore, Plaintiff was treated differently than similarly situated individuals who had engaged in no misconduct.

In addition, Plaintiff offered evidence that Plaintiff complied with a new lunch policy introduced by Ms. Bork on February 24, 2014. As the court noted in its' Opinion and Order Denying Defendant's Motion for Summary Judgment, "given the surrounding circumstances of Reeser's ongoing discussions with human resources regarding her request for a paid off-site lunch break, Reeser's interpretation of the e-mail remains a possibility (Doc. 60, pg. 17)." If the jury believed this new policy authorized Plaintiff to leave for lunch, then the above analysis would also apply.

Plaintiff testified at trial that Ms. Bork called her on two separate occasions and threatened that she would be sorry for reporting the FLSA violation to the State

of Michigan. In addition, Plaintiff presented evidence in the form of emails between Defendant's agents which demonstrate animus (for examples, see *Exhibit C*). As the Court noted in its' Opinion and Order Denying Defendant's Motion for Summary Judgment, "a jury could reasonably infer from th[is] evidence that HFHS's actions were motivated by retaliation" (Doc. 60, pg. 18).

As the court noted in its' Opinion, "[e]ven taking Reeser's first informal complaint of a possible FLSA violation to her employer on January 20, 2014, as the triggering date, the time that elapsed between her protected activity and her suspension on February 25, 2014, and her ultimate termination on March 7, 2014, is so close in time that this temporal proximity **standing alone** may be sufficient to establish causation." *Id.* at 16 (emphasis added). The jury could have reasonably concluded that the timing between the events in this case was so suspect that judgment for the Plaintiff was necessary. Contrary to Defendant's assertions, in some cases, very close temporal proximity between protected activity and the adverse work action can establish causation for the purposes of establishing a prima facie case. *Id.*; *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524-25 (6th Cir. 2008).

Finally, Plaintiff presented evidence of a good performance record before her reports regarding the FLSA violation (*Exhibit D*). The fact that an employee had no prior performance problems prior to reporting violations of law can constitute

indirect evidence of causation. *Thompson v. Aramark Sch. Support Servs., Inc.*, 490

F.3d 506, 509 (6th Cir. 2007).

**B.    Even if Plaintiff's conduct was not authorized, similarly situated employees were not fired for similar conduct**

Defendant's failure to address the above issues is fatal to its' Motion.

However, Plaintiff will respond to Defendant's arguments as well in case the court

is persuaded otherwise. In trial, Plaintiff submitted the employment records of four

employees who, despite repeated attendance problems, other performance issues,

and multiple instances of falsifying time records and other integrity issues, were

referred to counseling and received warnings prior to termination (*Exhibit E*).

In denying Defendant's Motion for Summary Judgment, the Court noted that

these records established a genuine issue of fact as to whether Defendant's "decision

to terminate Reeser for a taking a thirty minute lunch break was consistent with the

way it treated other employees" (Doc. 60, pg. 20). In making this finding, the Court

noted that "all of those employees were arguably treated more favorably than

Reeser." *Id.* The jury could have reasonably concluded that Plaintiff's termination

was a harsher penalty than those faced by these individuals.

**C.    Defendant makes a number of conclusory statements that do not reflect the record to argue that Plaintiff's conduct should have been governed by Defendant's HFML Policy and Corrective Action Policy**

Defendant suggests that Plaintiff admitted to abandoning her job (Doc. 116,

pg. 13). This is incorrect. In fact, one of the key issues at trial was whether or not

Plaintiff's conduct, leaving her desk for approximately 30 minutes to sit in the parking lot, constituted job abandonment. Plaintiff stated at trial that she did not abandon her job, because she had authorization for her action. As was revealed at trial, there is no definition of job abandonment in any of Defendant's policies. Despite Defendant's assertions, Plaintiff contradicted testimony by Defendant's witnesses that her actions constituted job abandonment. A reasonable jury could have concluded that Plaintiff's actions did not constitute job abandonment and, therefore, should not be disciplined or, alternatively, should be reviewed under Defendant's Attendance Policy.

## V. CONCLUSION

For the foregoing reasons, there is no merit to Defendant's motion as the issues raised in Defendant's brief have previously been decided by this Court. Plaintiff respectfully requests the Court deny Defendant's renewed Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b) and award sanctions.

Respectfully submitted,

MILLER COHEN, P.L.C.

By:  /s/Adam C. Graham
     Keith D. Flynn (P74192)
     Adam C. Graham (P79361)
     *Attorneys for Plaintiff*
     600 W. Lafayette Blvd., 4th Floor
     Detroit, MI 48226
     (313) 964-4454

Dated: July 12, 2016

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**NATALIE REESER**,

        Plaintiff,

v

**HENRY FORD HOSPITAL**,

        Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Judge Stephanie Dawkins Davis

---

| **MILLER COHEN, P.L.C.** | **VARNUM LLP** |
|---|---|
| Keith D. Flynn (P74192) | Terrance J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 160 W. Fort, 5th Floor |
| Detroit, MI 48226-0840 | Detroit, MI 48226 |
| (313) 964-4454 Phone | (313) 481-7300 Phone |
| (313) 964-4490 Fax | |

---

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on *July 12, 2016*, I electronically filed the foregoing document(s) with the Court using the ECF system, which will send notification of such filing to all counsel of record.

                    Respectfully submitted,

                    **MILLER COHEN, P.L.C.**

                    By: /s/Adam C. Graham
                          Keith D. Flynn (P74192)
                          Adam C. Graham (P79361)
                          *Attorneys for Plaintiff*
                          600 W. Lafayette Blvd., 4th Floor
                          Detroit, MI 48226
                          (313) 964-4454

# EXHIBIT C

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6 PageID.4892 Filed 08/26/16 Page 25 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 2 of 33 Pg ID 4695
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 1 of 32 Pg ID 1339

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**NATALIE REESER**,

              Plaintiff,

v

**HENRY FORD HOSPITAL,**

            Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Judge Michael Hluchaniuk

| **MILLER COHEN, P.L.C.** | **VARNUM LLP** |
|---|---|
| Keith D. Flynn (P74192) | Terrance J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 39500 High Pointe Blvd., Ste. 350 |
| Detroit, MI 48226-0840 | Novi, MI 48375 |
| (313) 964-4454 Phone | (248) 567-7828 Phone |
| (313) 964-4490 Fax | (248) 567-7423 Fax |

# PLAINTIFF'S RESPONSE TO
# <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6 PageID.4893 Filed 08/26/16 Page 26 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 3 of 33 Pg ID 4694
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 2 of 32 Pg ID 1340

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

MOST CONTROLLING AUTHORITIES ...................................................iv

STATEMENT OF QUESTIONS PRESENTED ...........................................v

I. INTRODUCTION ..............................................................................1

II. STATEMENT OF FACTS ..................................................................2

    A. Plaintiff was not paid for lunch periods that she was "engaged to wait" in violation of the Fair Labor Standards Act, which she reported to the State of Michigan and Human Resources .............................................3

    B. Defendant's written policies have always required employees to take a 30 minute unpaid mandatory lunch ..........................................................7

    C. On February 25th, Reeser was retaliated against by Bork for reporting to the State and was suspended for taking a lunch that three managers were aware that she was taking before she left ...........................................9

    D. Plaintiff reported to the Michigan Department of Licensing and Regulatory Affairs (LARA) leading Defendant to terminate her employment after a sham investigation .......................................................11

    E. Defendant's discipline policy .........................................................12

III. ARGUMENT ....................................................................................14

    A. Henry Ford Hospital is an assumed name of Henry Ford Health System, Defendant has been on notice of the allegations in this lawsuit, and Plaintiff has submitted an amended complaint to cure any defect .15

    B. Defendant unlawfully retaliated against Plaintiff for engaging in protected activity under the FLSA and WPA .........................................15

    C. Defendant's Nondiscriminatory Reason for Termination is Mere Pretext ..............................................................................................21

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6 PageID.4894 Filed 08/26/16 Page 27 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 4 of 33 Pg ID 4695
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 3 of 32 Pg ID 1341

# TABLE OF AUTHORITIES

**Case**            **Page**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................14

*Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883 (W.D. Mich. 2007)...16, 19, 22

*DiCarlo v. Potter*, 358 F.3d 408, 421-22 (6th Cir.2004).........................................18

*Hamilton v. General Electric Co.*, 556 F.3d 428, 435-36 (6th Cir.2009) ..............19

*Hindman v. Transkrit Corp.*, 145 F.3d 986 (8th Cir. 1998) ....................................15

*Jacklyn v. Schering–Plough Healthcare Products Sales Corp.,*
    176 F.3d 921, 926 (6th Cir.1999) .........................................................................16

*Jones v Potter*, 488 F3d 397, 408 (6th Cir 2007) ....................................................21

*Light v. MAPCO Petroleum, Inc.,*
    No. 3:04-0460, 2005 WL 1868766, at *12 (M.D. Tenn. Aug. 4, 2005) ............18

*Markos v. Mt. Brighton, Inc.,*
    No. 08-CV-12588; 2009 WL 2591372 (E.D. Mich. 2009) ...............................18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)............................................................................................14

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...............................16, 22

*McLemore v. Detroit Receiving Hosp. & Univ. Medical Center,*
    196 Mich. App. 391, 398 (1992) ........................................................................20

*Moore v. Freeman*, 355 F.3d 558 (6th Cir. 2004) ............................................15, 21

*Morris v. Aon Service Corp.,*
    No. 10–14620, 2011 WL 5864757, at *1 (E.D. Mich. Nov. 22, 2011).........4, 18

*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ...........................17

*Peake v. Martinrea Fabco Hot Stamping, Inc.,*
    No. 09-10348; 2011 WL 1157864, at *5 (E.D. Mich 2011) ..............................16

*Roberts v. Principi*, 283 Fed Appx 325, 333 (6th Cir 2008) ..................................17

*Shimkus v Hickner*, 417 F. Supp. 2d. 884 (ED Mich. 2006) ..................................15

*Thompson v. Aramark Sch. Support Servs., Inc.,*
    490 F.3d 506, 509 (6th Cir. 1007).......................................................................19

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6 PageID.4895 Filed 08/26/16 Page 28 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 5 of 33 Pg ID 4696
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 4 of 32 Pg ID 1342

*Turpin v. Cable Tel Servs., Inc.*,
　3:09-CV-147, 2010 WL 670080, at *3 (E.D. Tenn. Feb. 22, 2010) ................20

*Weberg v. Franks,* 229 F.3d 514, 523 (6th Cir.2000).............................................16

*Whitaker v. U.S. Sec. Associates, Inc.*,
　774 F. Supp. 2d 860 (E.D. Mich. 2011) ......................................................16, 22

## Statutes, Rules and Regulations

29 U.S.C. § 215 ...........................................................................................................2

29 U.S.C. § 215(a)(3)................................................................................................15

F.R.C.P. 56(c) ...........................................................................................................14

M.C.L. § 15.361 .........................................................................................................2

M.C.L. §15.362 .........................................................................................................15

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6 PageID.4896 Filed 08/26/16 Page 29 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 06/24/16 Pg 6 of 33 Pg ID 4897
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 5 of 32 Pg ID 1343

## MOST CONTROLLING AUTHORITES

*Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883, 888 (W.D. Mich. 2007)

*Hamilton v. General Electric Co.*, 556 F.3d 428, 435-36 (6th Cir.2009)

*McLemore v. Detroit Receiving Hosp. & Univ. Medical Center*, 196 Mich. App. 391, 398 (1992)

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)

*Roberts v Principi*, 283 Fed Appx 325, 333 (6th Cir 2008)

*Weberg v. Franks,* 229 F.3d 514, 523 (6th Cir.2000)

*Whitaker v. U.S. Sec. Associates, Inc.*, 774 F. Supp. 2d 860, 867 (E.D. Mich. 2011)

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6, PageID.4897 Filed 08/26/16 Page 30 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 7 of 33 Pg ID 4698
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 6 of 32 Pg ID 1344

## STATEMENT OF QUESTIONS PRESENTED

(1) Whether the Court should deny Defendant's Motion for Summary Judgment alleging that the above-captioned Complaint should be dismissed for naming the wrong Defendant where Plaintiff named Henry Ford Hospital, an assumed name of Henry Ford Health System, where Plaintiff's former employer received notice having been served with the Summons and Complaint, where Plaintiff has filed a Motion to Amend the Complaint that is currently pending, and where Defendant has had every opportunity to litigate this matter and would suffer no prejudice from the correction of an alleged misnomer.

Plaintiff Answers: Yes.                    Defendant Answers: No.

(2) Whether the Court should deny Defendant's Motion for Summary Judgment asserting that there is no genuine issue of material fact as to whether Plaintiff was terminated in retaliation for asserting rights under Fair Labor Standards Act or in violation of the Whistleblower Protection Act where Plaintiff had been threatened by her direct supervisor in the past for reporting unpaid wages for lunches she was "engaged to work" to Human Resources, where Plaintiff's direct supervisor indicated that she was going "to be sorry" for reporting her claims of unpaid wages to the State the day she was suspended, where Defendant's policies do not provide for termination for Plaintiff taking a lunch, where no one has ever been terminated for Plaintiff's alleged misconduct, where other employees who did not engage in protected activity have engaged is much more severe misconduct were not terminated, and where Plaintiff provided notice and received approval from a manager to leave prior to taking her lunch.

Plaintiff Answers: Yes.                    Defendant Answers: No.

(3) Whether the Court should deny Defendant's Motion for Summary Judgment asserting that there is no genuine issue of material fact that Plaintiff was terminated for a legitimate non-discriminatory reason for "job abandonment" where Plaintiff had been threatened by her direct supervisor in the past for reporting unpaid wages for lunches she was "engaged to work" to Human Resources, where Plaintiff's direct supervisor indicated that she was going "to be sorry" for reporting her claims of unpaid wages to the State the day she was suspended, where Defendant's policies do not provide for termination for Plaintiff leaving work to go to lunch without approval, where no one has ever been terminated for such conduct, where other employees who did not engage in protected activity have engaged is much more severe misconduct were not terminated, and where Plaintiff provided notice and received approval from a manager to leave prior to taking her lunch.

Plaintiff Answers: Yes.                    Defendant Answers: No.

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6 PageID.4898   Filed 08/26/16   Page 31 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 8 of 33   Pg ID 4899
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 7 of 32   Pg ID 1345

# I. INTRODUCTION

Defendant claims that there is no genuine issue of material fact over whether Plaintiff's termination was motivated by Plaintiff's reports to Human Resources and the State of Michigan for not being paid for over 370 lunches she was forced to work through.  Yet, the morning that Plaintiff was suspended, her direct supervisor, Fiona Bork, threatened that Plaintiff would "be sorry" for going to the State of Michigan regarding the unpaid hours.  (Reeser Dep. 260-63, 264, 267)

Defendant alleges that Plaintiff was terminated for taking a thirty-minute unpaid lunch as she was entitled and **MANDATED** to take under Defendant's work rules.  (*Exhibits I & N*)   Notably, Defendant's own managerial witnesses acknowledged that no one has ever been terminated for taking a lunch.  (Wiseheart Dep. 44-47) Defendant's work rules even indicate that, at most, Plaintiff's discipline should only have been one occurrence.  (*Exhibit XX*)  Employees are not subject to the first corrective action, documented counseling, until they reach three occurrences. (Id.)  Yet, Plaintiff had never been disciplined before the suspension.

Defendant cites to several other examples of employees who were terminated for similar issues.  Yet, the disciplinary records provided by Defendant indicate that these individuals were not terminated until after numerous occurrences, including employees who would leave their facility hours before the end of the day or employees who committed fraud or engaged in workplace violence. (*Exhibits TT &*

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6 PageID.4899 Filed 08/26/16 Page 32 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 9 of 33 Pg ID 4700
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 8 of 32 Pg ID 1346

*UU*; Wiseheart Dep. 44-47) Defendant expects this Court to ignore all of that and find that Plaintiff's suspension, which occurred within a week after she threatened to report to the State and the same day her direct supervisor threatened her, and Plaintiff's termination, which occurred within a week after her report to the State, were solely related to Plaintiff's taking a lunch on February 25th. Of course, this also ignores the fact that Plaintiff notified three managerial employees that she intended to take a lunch that day on several occasions and even had the approval of the manager who was at the site. (Reeser Dep. 322; *Exhibits JJ & KK*)

Yet, Defendant argues that Plaintiff's claims of retaliation in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215, and the Whistleblower Protection Act, (WPA), M.C.L. § 15.361 *et seq.*, should be dismissed. Simply put, this argument strains credulity. At the very least, there are numerous genuine issues of material fact regarding these issues that should be addressed by a jury.

## II. STATEMENT OF FACTS

On May 16, 2011, Plaintiff began her employment at Henry Ford Health System (Henry Ford) as a Laboratory Assistant. (*Exhibit A*) As a Laboratory Assistant, Plaintiff performed blood sample collection, among other duties. (*Exhibit B*) For the majority of the time Plaintiff worked for Defendant, she performed her work at the Clinton Township Patient Service Center (CTPSC). (Bork Dep. 129)

Plaintiff was supervised by two managers at CTPSC, Fiona Bork and Martha

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4900   Filed 08/26/16   Page 33 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 10 of 33   Pg ID 4761
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 9 of 32   Pg ID 1347

Wiseheart. (Reeser Dep. 36, 222) Bork, a Laboratory Sales Manager, wrote Plaintiff's reviews. (Reeser Dep. 222) Wiseheart, a Regional Laboratory Manager, supervised Plaintiff's administrative work. (Reeser Dep. 36; Wiseheart Dep. 22) Wiseheart also advised Plaintiff on customer relations issues. (*Exhibit C*)

Before early 2014, Plaintiff had a good working relationship with Bork and Wiseheart and excellent performance reviews. (*Exhibits D, E, & F*) On multiple occasions, Plaintiff's supervisors complemented her and noted that she went "above and beyond the call of duty." (*Exhibits* G & H).

A.    **Plaintiff was not paid for lunch periods that she was "engaged to wait" in violation of the Fair Labor Standards Act, which she reported to the State of Michigan and Human Resources**

Defendant had an unpaid mandatory 30 minute lunch policy while Plaintiff was employed at Henry Ford. (*Exhibit I*) Regardless of this policy, Plaintiff's repeated requests to take a 30 minute lunch were denied and she was repeatedly denied compensation for being forced to work through lunch. (Reeser Dep. 92, 94, 115) From 2012 to 2014, Plaintiff was not paid for 376 lunches to which she was entitled. (*Exhibit J*)

In early January 2014, after learning from a doctor in the facility that this practice was illegal, Ms. Reeser contacted the State. (Reeser Dep. 110, 202-03, 291) On January 14, 2014, Plaintiff contacted Human Resources (HR) Senior Business Partner Jill Hood to request a meeting concerning this issue, among others. (*Exhibit K*)

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6   PageID.4901   Filed 08/26/16   Page 34 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 111 of 33   Pg ID 4762
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 10 of 32   Pg ID 1348

Before Plaintiff's meeting with Hood on January 15, 2014, Plaintiff discovered that Bork had somehow learned of her planned meeting with HR. (*Exhibit K*) After Plaintiff confirmed that she was meeting with HR, Bork "was appalled" and adopted a "how dare [you]" attitude. *Id.*

On January 16, 2014, Bork wrote an unsolicited email to Hood, stating, among other things, that Natalie routinely engaged in poor behavior, such as "want[ing] to leave a site unattended so that she can 'run' to take care of something quickly." (*Exhibit L*) In the same email, Bork asked Hood "[d]o you happen to know who is meeting with Natalie at 12:30 tomorrow?" *Id.* Hood purposefully did not respond to this email noting that the request was odd because it was none of her business. (Hood Dep. 107-08) Bork later sent a second email to Hood on January 17, 2014, stating "Natalie is very immature and has a tendency to take everything personally." (*Exhibit L*).

On January 20, 2014, Plaintiff informed Hood that she had not been allowed to take 30 minute lunch breaks away from her office for years. (*Exhibit M*) Plaintiff indicated she "recently learned . . . The Fair Labor Standards Act (FLSA) states that hourly employees, who are required to work more than 40 hours in a work week, are to be compensated for those hours under a term called, 'engaged to work.'" *Id.* Plaintiff requested "[HR] . . . intercede, and allow employees . . . a scheduled/advertised 30-minute closure of the lab each day for a meal break." *Id.*

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4902   Filed 08/26/16   Page 35 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 12 of 33   Pg ID 4783
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 11 of 32   Pg ID 1349

Plaintiff explained that Bork said she would be "terminated" if she reported this issue. (Hood Dep. 134) "I have been told by my supervisor that if I want a lunch break outside of the office, I will 'lose' the opportunity to work in Clinton Twp." (*Exhibit M*)

Hood explained that she would speak with Bork about the lunch policy and Plaintiff could then begin putting "no lunch" on her timecard to reflect the time owed pursuant to the FLSA. (Hood Dep. 151) On January 26, 2014, Bork emailed Plaintiff and asked "[c]ould you let me know what prevented you from taking lunch 8 out of the 10 days on your time card. Our policy has always been to contact me to get **approval not to get a lunch**. As you know **lunches are mandatory**." (*Exhibit N*) (emphasis added). On January 27, 2014, Plaintiff emailed Hood, stating "I went ahead and put no lunch and I get an email stating, I cannot with out approval, I need some direction on this, because this is upsetting." (*Exhibit N*)

After Plaintiff's email to Hood, Wiseheart sent an email to Plaintiff denying Plaintiff compensation for lunches she worked until verified by Bork. (*Exhibit O*) Plaintiff then emailed Hood, Bork, and Wiseheart, stating "Ladies, please be advised that HR has me recording days that I do not get a lunch. It is illegal to have me work through a lunch break and not pay me . . ." (*Exhibit P*) After receipt of this email, Hood called Bork, confirmed that she had not been paying Plaintiff's lunches, and informed her that under the FLSA an employee is entitled to 30 minutes of

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6   PageID.4903   Filed 08/26/16   Page 36 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 13 of 33   Pg ID 4704
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 12 of 32   Pg ID 1350

uninterrupted time if their lunch is uncompensated. (Hood Dep. 153-54). After receipt of Plaintiff's email, Bork emailed her boss, John Waugh, Vice President of Laboratory Systems, indicating that Plaintiff's complaints raised "a huge problem" and arguing that Plaintiff was not entitled to pay because there were hours of downtime at CTPSC due to patient volume. (*Exhibit Q*)

Soon after Plaintiff's January 27 email, in late January or early February 2014, Bork called Plaintiff in the evening and "told [her] off", stating "[you'll] be sorry" for reporting unpaid lunches to the State of Michigan. (Reeser Dep. 158-59). Notably, even after being instructed by Hood to pay Reeser for lunches she worked in the future, Bork still refused. (*Exhibit RR*)

On February 7, 2014, Bork complained to Waugh, Hood, and others about being required to calculate the unpaid lunches owed to Plaintiff. (*Exhibit R*). On February 14, Waugh replied to Bork, thanked her "for doing this ridiculously tedious work", and explained that he had spoken with Hood "this week and she planned to reel in the insubordination in the afternoon call today." (*Exhibit S*) Waugh reiterated his concerns about Plaintiff in an email sent on February 18, stating "[i]n my view Natalie is out of line and appears to be empowered in spite of recent counseling." (*Exhibit T*) That same day, Bork wrote to Hood and Waugh complaining about being made to explain to Natalie why she made scheduled changes. (*Exhibit U*)

Plaintiff wrote to Hood on February 18 as well, reiterating the fact that she

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6   PageID.4904   Filed 08/26/16   Page 37 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 14 of 33   Pg ID 4765
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 13 of 32   Pg ID 1351

was still being denied the opportunity to take a lunch break and had still not been paid for the missed lunches owed to her. (*Exhibit V*) Plaintiff stated "Thursday will be a month that I was in your office. This is NOT fair to me as an employee, that I have no answers from you a month later . . . I still have hea[r]d nothing on the lunches I don't get yet am still not paid for either." *Id.* Plaintiff added, "**I have no choice but to file paperwork with the state**." *Id.* (emphasis added)

Between February 18 and February 25, 2014, Bork, Hood, and Waugh decided to retaliate against Plaintiff by forcing her to transfer to a new site, even though Ms. Reeser had always been at CTPSC and against her wishes. (*Exhibit W, X, Y, Z, AA, & BB*; Hood Dep. 208-10; Reeser Dep. 296). In correspondence over this decision, the transfer was linked by managerial officials to Plaintiff's FLSA complaints.[1]

**B.     Defendant's written policies have always required employees to take a 30 minute unpaid mandatory lunch**

The Hospital's "Break Period" policy provides that "[E]mployees may not work through unpaid break periods unless requested by or otherwise approved by

---

[1] On February 18, Bork told Hood that she was planning on moving Natalie to a different site within two weeks. (*Exhibit W*) On February 23, Bork repeated this statement. (*Exhibit X*) On February 24, Hood wrote to Bork and Waugh and stated "This will not prevent us from moving forward . . . We can still proceed, as discussed, with Natalie." (*Exhibit Y*) Hood stated at her deposition that addressing Reeser's complaints presented "a good opportunity" to move Plaintiff from CTPSC to a different location. (Hood Dep. 208)

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4905   Filed 08/26/16   Page 38 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 15 of 33   Pg ID 4766
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 14 of 32   Pg ID 1352

operational leadership." (*Exhibit FFF*) "Employees may leave the premises during unpaid lunch periods, although employees doing so must return punctually." (Id.) Defendant's HFML Lab Assistant Policies and Guidelines state "[e]ach Lab Assistant, regular full-time, part time, or temporary will . . . adhere to the following policies: Lunches and Breaks: 8 hours, but less than 12 hours = Two paid 15 minute breaks, One 30 minute unpaid." (*Exhibit CC*) Defendant's Payroll Instructions inform Lab Assistants that "[a]ll staff who work 8 or more hours are to take a 30 minute lunch. It is not acceptable to state no lunch unless it is authorized by HFML management." (*Exhibit DD*)

Defendant's lunch policy is designed for the benefit of both employees and patients, to make sure employees "aren't running themselves down and that they have had some time away and can come back refreshed." (Hood Dep. 62). If an employee is not paid for lunch, but is required to remain at a facility, "[t]hat should not be occurring." (Hood Dep. 36)

In the past, Bork instructed employees on several occasions that:

- "Lunches are **Mandatory**, **Not Paid** and are **30 minutes**. Everyone should be taking a lunch everyday that you work." (*Exhibit EE*) Unlike lunches, Bork explained, "[b]reaks are **NOT** mandatory and are paid." *Id.*
- On January 26, 2014, Bork emailed Plaintiff and asked "[c]ould you let me know what prevented you from taking lunch 8 out of the 10 days on your time card. Our policy has always been to contact me to get **approval not to get a lunch**. As you know **lunches are mandatory**." (*Exhibit FF*) (emphasis added)
- On February 24, 2014, Bork sent an email to a number of employees, including Plaintiff, changing the policy and instructing that "[s]tarting

8

Case 2:14-cv-11916-GCS-SBD ECF No. 134-6 PageID.4906 Filed 08/26/16 Page 39 of 60
2:14-cv-11916-GCS-SBD Doc # 132-3 Filed 08/24/16 Pg 16 of 33 Pg ID 4767
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 15 of 32 Pg ID 1353

tomorrow February 25th, 2014 When you take your lunch please send an email that you are signing out for lunch and when you return from lunch please send an email you are back from your lunch." (*Exhibit GG*) In her email, Bork explained that this policy "is mandatory and failure to do so will result in a full occurrence." *Id.*

In order to facilitate lunch breaks at CTPSC, employees had a practice of placing a break sign on the front door of the office informing potential customers that someone would return to the office soon. (Resser Dep. 115-16; *Exhibit HH*) When Plaintiff sought to take lunch and another employee was not available to watch the office, such a sign would be taken from the Emergency Door Sign Folder and placed on the office door. (Resser Dep. 115-16, 153; *Exhibit II*). One of Plaintiff's supervisors, Wiseheart, approved the sign every time Plaintiff utilized a sign in such a manner. (Reeser Dep. 151) Plaintiff used such a sign with Wiseheart's approval more than five times while at CTPSC. (Reeser Dep. 152).

## C. On February 25th, Reeser was retaliated against by Bork for reporting to the State and was suspended for taking a lunch that three managers were aware that she was taking before she left

On the morning of February 25, Plaintiff received a phone call from Bork. (Reeser Dep. 260) Bork said "How dare you go to the State about me", told her that she would be losing CTPSC, indicated that Plaintiff thought she was "some superior person or something" for making a report to the State of Michigan, and threatened that Plaintiff would "be sorry." (*Id.* at 260-63, 267) Plaintiff broke down and stated "that [she] planned on taking a lunch that day from the new policy the day before."

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4907   Filed 08/26/16   Page 40 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 17 of 33   Pg ID 4708
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 16 of 32   Pg ID 1354

(Id. at 261) Bork "never once said anything about the lunch policy not being – not allowing me to go." (Id.)

After this call, Plaintiff, in tears, spoke with Wiseheart and told her that Bork "was upset because I reported the lunch" issue. (Reeser Dep. 264) She also told Wiseheart "that she had to close down and go to lunch." (*Exhibit JJ*) Wiseheart stated: "You need to take some time to yourself and you definitely need to go to HR" and gave her a hug. (Reeser Dep. 266) Wiseheart waived her on to leave. (Reeser Dep. 322)

At 1:12 PM, in compliance with the lunch policy announced by Bork on 2/24/14, Plaintiff emailed a note to Bork, Wiseheart and Luain Hajjar, stating she was taking a break. (*Exhibit KK*) Plaintiff then picked up her coat and purse and prepared to leave for lunch. (Reeser Dep. 265) Plaintiff posted a sign on the front door of the office indicating she would return in 30 minutes and left the office. *Id.* After posting this sign, Plaintiff went to her car for 30 minutes. *Id.* Before her lunch and during her lunch, no staff member of CTPSC "responded to [her] email, or called [her] on either [her] office line, or [her] work cell phone to say, 'No Natalie, you cannot take a break today.'" (*Exhibit LL*)

Instead of responding to Reeser's emails, Bork sent an email to Hood asking her "Can she do this?" exactly twenty-six minutes after Plaintiff sent her email to Wiseheart and Bork confirming her intention to leave the office for lunch. (*Exhibit*

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6, PageID.4908 Filed 08/26/16 Page 41 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 18 of 33 Pg ID 4709
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 17 of 32 Pg ID 1355

*MM*) Although only minutes had passed since Plaintiff placed the sign on the office door and left the office, Bork did not attempt to contact Plaintiff by email or phone to request she return to the office. After Plaintiff returned, she was suspended pending an investigation and escorted off the premises by security without being allowed to take with her all of her personal belongings. (*Exhibit NN*)

**D.  Plaintiff reported to the Michigan Department of Licensing and Regulatory Affairs (LARA) leading Defendant to terminate her employment after a sham investigation**

Plaintiff completed her FLSA complaint and mailed it to LARA on February 25, 2014. (Reeser Dep. 272) Hood was informed of Plaintiff's intent to file with LARA on February 18, 2014. (*Id.* at 204-07) LARA received the complaint on February 27, 2014. (*Id.* at 272-73)

Plaintiff was informed that she was being terminated on March 7th. (*Exhibit OO*) Ms. Reeser was not paid for the lunches that she was forced to work until immediately before her termination. (*Exhibit PP*) Hood expressed concern "that potential litigation may come from this" and stated that she understood that "the timing between when her actions of walking off the job so closely corresponded with when we were going to be issuing her back pay for the lunches, and it's very clear to me . . . even the prima facie of that is that it looks odd." (Hood Dep. 251) Regardless, the decision to terminate was made by Waugh and Bork. (Hood Dep. 250-51) During her deposition, Hood admitted that she has never stood in the way

11

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4909   Filed 08/26/16   Page 42 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 19 of 33   Pg ID 4710
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 18 of 32   Pg ID 1356

of a supervisor who wished to discipline an employee. (Hood Dep. 40)

Hood engaged in a sham investigation relying solely on statements made by Bork and Wiseheart, even when they contradicted one another.  (*Exhibit QQ*)[2] Although Bork was accused of harassing and retaliating against Ms. Reeser, Hood allowed Bork to conduct her own interviews with staff members at the site regarding Reeser's termination. (Hood Dep. 243-44).  When it was clear the facts provided by Plaintiff's managers were damaging to Henry Ford, Hood simply neglected to mention those facts.[3]

**E.     Defendant's discipline policy**

Defendant has a progressive discipline policy to handle workplace violations. (Hood Dep. 49) Violations are divided into Group 1 and Group 2 violations. *Id.* at 40. Group 1 violations include "attendance." *Id.* Group 2 violations "are things such as . . . walking off the job." *Id.* Walking off the job occurs when there is no notice

---

[2] For instance, Hood indicated in her report that no verbal communication occurred between Plaintiff and Wiseheart before Plaintiff left for lunch, ignoring Plaintiff's statements to the contrary. (Hood Dep. 188-90) She later admitted that Plaintiff and Wiseheart "may have had previous conversations earlier that morning." (Hood Dep. 191) Only during discovery did Bork admit that Plaintiff did in fact communicate with Wiseheart before exiting from the building. (Bork Dep. 163) Yet, Wiseheart herself disclosed to both Bork and Hood that on February 25, 2014 Plaintiff told her Plaintiff planned "to close down and go to lunch." (*Exhibit JJ*) Hood never asked Plaintiff if she had a conversation with Wiseheart about lunch. (Hood Dep. 190-91).
[3] For instance, Hood neglected to mention that Bork made a decision to continue withholding pay for Plaintiff's lunches in February, after being expressly told by Hood that Plaintiff needed to be paid on an ongoing basis in January. (*Exhibit RR*)

12

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6, PageID.4910 Filed 08/26/16 Page 43 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 20 of 33 Pg ID 4711
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 19 of 32 Pg ID 1357

provided and the employee walks away from their work. *Id*. The Group 2 progressive discipline policy is "documented counseling, written warning, written warning with suspension and then termination." *Id.* at 49.

Under HFML Employees Policies and Guidelines, if an employee fails to obtain approval by "email[ing] [their] arrival and departure", the penalty is "a full occurrence." (*Exhibit I*) [4] According to the Attendance policy, if an employee fails to report to work as scheduled, they incur a full occurrence. (*Exhibit GGG*) If an employee leaves early or returns late from a lunch less than ½ an hour, that is ½ an occurrence—anything over ½ an hour is 1 occurrence. (Id.)[5]

There are numerous examples of Bork applying the progressive discipline policy to individuals that performed actions substantially similar to Plaintiff's action. (*Exhibit TT & UU*) In a May 2, 2012 corrective action, an employee who arrived to work significantly late twice, no call no showed twice, and left significantly early once received a written warning with one day suspension. (*Exhibit TT*) In a July 31, 2013 corrective action, an employee refused to answer her phone for twenty minutes,

---

[4] If an employee has three occurrences in 30 days, they "get [their] first corrective action." *Id.* at 59. If there are then three more occurrences in 30 days or four more occurrences in 90 days or seven more occurrences in 160 days, an employee will receive the next corrective action in the progressive discipline policy. *Id.* Before February 25, 2014, if Plaintiff had any occurrences, they were insufficient to bring her to **the first** corrective action level. (*Id.* at 292; *Exhibit SS*)

[5] According to Jill Hood of Human Resources, Hospital disciplinary guidelines must be followed and managers cannot change the attendance policy to require an employee with a single occurrence to face corrective action. (Hood Dep. 257-58)

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4911   Filed 08/26/16   Page 44 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 21 of 33   Pg ID 4712
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 20 of 32   Pg ID 1358

resulting in a delay of patient care. (*Exhibit UU*) When asked why the employee did not answer the phone, the employee responded, she didn't have to "for that bitch". *Id.* This employee was given a written warning with a three day suspension. *Id.* All employees who have been discharged by Defendant for job abandonment have numerous previous occurrences or engaged in falsification of timecards or workplace violence. (*Exhibit VV & WW*; Reeser Dep. 94-95)   Wiseheart, an employee who has worked for Defendant for 20 years, could not recall any employee being immediately terminated for an act other than failing to show up to work for three days and being violent in the work place. (Wiseheart Dep. 44-47)

### III.  ARGUMENT

Summary judgment is only appropriate under the Federal Rules of Civil Procedure when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). "When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party."[6] However, the opposing party "must present more than a 'mere scintilla' of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff.[7]

---

[6] *Morris v. Aon Service Corp.*, No. 10–14620, 2011 WL 5864757, at *1 (E.D. Mich. Nov. 22, 2011) (attached as *Exhibit YY*)(citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[7] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Furthermore, employment actions are inherently fact-based.  Summary judgment should "seldom

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6, PageID.4912 Filed 08/26/16 Page 45 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 22 of 33 Pg ID 4713
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 21 of 32 Pg ID 1359

**A. Henry Ford Hospital is an assumed name of Henry Ford Health System, Defendant has been on notice of the allegations in this lawsuit, and Plaintiff has submitted an amended complaint to cure any defect**

In the interest of space, Plaintiff incorporates Plaintiff's Motion to Amend Her Complaint, which is responsive as to whether Plaintiff's case should be dismissed due to an alleged misnomer. (*Exhibit ZZ*)

**B. Defendant unlawfully retaliated against Plaintiff for engaging in protected activity under the FLSA and WPA[8]**

Under both the FLSA[9] and the WPA[10], Plaintiff has the burden to show as part of her *prima facie* case that the adverse employment action was caused by her protected activity under those statutes—either asserting her rights under the FLSA

---

be granted . . . unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998).

[8] Defendant's Motion only asserts that there is no genuine dispute as to fact regarding whether a causal connection existed between the activity and the discharge and whether their proffered legitimate non-discriminatory reason is pretext. The remainder of Plaintiff's prima facie case under both statutes Defendant does not contest in this Motion.

[9] The FLSA provides, in relevant part, that, "it shall be unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act...." 29 U.S.C. § 215(a)(3). FLSA anti-retaliation provisions can be triggered by informal, internal complaints. *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004).

[10] The WPA protects employees from discrimination and retaliation who report or are about to report a suspected violation of law to a public body. M.C.L. §15.362. In order to protect the public and deter retaliation, the Whistleblower Protection Act (WPA) is interpreted broadly. *See e.g.*, *Shimkus v Hickner*, 417 F. Supp. 2d. 884 (ED Mich. 2006).

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4913   Filed 08/26/16   Page 46 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 23 of 33   Pg ID 4714
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 22 of 32   Pg ID 1360

or reporting or threatening to report a violation of law to a public body.  To show causation for purposes of the WPA, Plaintiff must show that Plaintiff's protected activity was at least a motivating factor in Defendant's decision to discharge.[11]  For purposes of FLSA retaliation, "Plaintiff must produce evidence sufficient to raise the inference that his protected conduct was the likely reason for his termination."[12]

Plaintiff may meet the causal burden of either statute by providing sufficient direct evidence of retaliatory animus.[13] In the alternative, without direct evidence of discriminatory animus, the courts apply the burden-shifting test under *McDonnell Douglas v. Green*. "The direct evidence and circumstantial paths are mutually exclusive; the plaintiff can meet her burden with either method of proof."[14] "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[15] For example, "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is

---

[11] *Peake v. Martinrea Fabco Hot Stamping, Inc.*, No. 09-10348; 2011 WL 1157864, at *5 (E.D. Mich 2011) (attached as *Exhibit AAA*).
[12] *Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883, 889 (W.D. Mich. 2007)
[13] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883, 888 (W.D. Mich. 2007); *Whitaker v. U.S. Sec. Associates, Inc.*, 774 F. Supp. 2d 860, 867 (E.D. Mich. 2011).
[14] *Weberg v. Franks*, 229 F.3d 514, 523 (6th Cir.2000).
[15] *Jacklyn v. Schering–Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999).

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4914   Filed 08/26/16   Page 47 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 24 of 33   Pg ID 4715
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 23 of 32   Pg ID 1361

direct evidence of discriminatory intent."[16]

Here, there is significant direct evidence that unlawful retaliation was at least

a motivating factor in Plaintiff's termination. Bork, the decision-maker according to

Jill Hood,[17] conveyed retaliatory intent, as well as her displeasure with Plaintiff's

protected activity, to Plaintiff and others on several occasions, both in writing and

verbally:

    (1)  stating that Plaintiff was going to "be sorry" for reporting the lunch issue
        to LARA the day that Plaintiff was suspended and reprimanding her on
        other occasions for reporting to HR (Reeser Dep. 158-59, 260-61, 264,
        267);[18]

    (2)  communications indicating that she was resentful of Plaintiff's reports to
        HR and the State, including personal attacks on Reeser for desiring to
        leave the site for lunch (*Exhibits K & L*); [19]

---

[16] *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

[17] (Hood Dep. 40, 250-51)  At a minimum, knowledge of a plaintiff's protected activities and retaliatory motive may be imputed to a decision maker under the "cat's paw" theory. The Sixth Circuit has explained that, "[i]n the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decision-making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Roberts v. Principi*, 283 Fed Appx 325, 333 (6th Cir 2008) In other words, "the retaliator is the decisionmaker, and the titular 'decisionmaker' is a mere conduit for the retaliator's discriminatory animus. *Id.*

[18] Defendant argues that these statements never occurred, but that is an issue of fact subject to a jury trial.  Defendant argues that this issue of fact is not genuine citing to "phone records [that] demonstrate unequivocally" that this conversation "did not ever occur." (Def.'s Motion for Summary Judgment, p. 19 fn. 5) These records are certainly not "unequivocal" because Plaintiff has never asserted Bork called her from her work or personal cell phone. (Reeser Dep. 261-62) Instead, Reeser noted that there were other phone lines that Bork could have called from for which no records have been provided.  (Id.)

[19] Where an employee had testified that his supervisor had a negative reaction to his protected activity, he was able to successfully meet his causal burden.  *See e.g.*,

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6   PageID.4915   Filed 08/26/16   Page 48 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 25 of 33   Pg ID 4716
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 24 of 32   Pg ID 1362

(3)  Bork's threats that if Plaintiff continued to request a lunch break that she would be transferred or lose her job (Hood Dep. 134; *Exhibits L, W, Y, AA, & BB*);

(4)  reprimanding Reeser for demanding that she be paid for the lunches she was forced to work (*Exhibit N*);

(5)  emailing Waugh reiterating her concerns that Ms. Reeser's complaints raised "a huge problem" (*Exhibit Q*);

(6)  directly expressing displeasure on several occasions about being forced to calculate Plaintiff's compensation from unpaid lunches and with her decisions regarding Reeser's schedule being questioned by Plaintiff (*Exhibits R, S, U*); and

(7)  bypassing HR and going directly to the Waugh to deal with Reeser who Waugh described as feeling too "empowered" after Reeser's reports. (*Exhibit T*)

If the Court believes such evidence does not rise to the level of direct evidence, under the burden-shifting test, Plaintiff may still submit indirect evidence of her employer's unlawful motivations to show that a causal link exists between the protected activity and the employer's adverse employment action.[20] "[C]lose temporal proximity between two events is sufficient to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive."[21]

In *Morris v. Aon Service Corp.*, the court found "[d]etermining causation . . . ultimately turns on temporal issues related to notice." *Morris* at *3. The court noted that the Sixth Circuit has held that close temporal proximity between protected

---

*Markos v. Mt. Brighton, Inc.*, No. 08-CV-12588; 2009 WL 2591372 (E.D. Mich. 2009)(attached as *Exhibit BBB*).

[20] *See DiCarlo v. Potter*, 358 F.3d 408, 421-22 (6th Cir.2004) (overruled on different grounds).

[21] *Light v. MAPCO Petroleum, Inc.*, No. 3:04-0460, 2005 WL 1868766, at *12 (M.D. Tenn. Aug. 4, 2005) (citing *DiCarlo* at 421-22) (attached as *Exhibit CCC*).

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4916   Filed 08/26/16   Page 49 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 26 of 33   Pg ID 4717
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 25 of 32   Pg ID 1363

activity and firing is sometimes enough, by itself, to establish prima facie causation. *Id.* at 4 (citing *Hamilton v. General Electric Co.*, 556 F.3d 428, 435-36 (6th Cir.2009)). Internal complaints about pursuing claims with a state agency can also be sufficient notice of a Plaintiff's report to a state agency even if a Plaintiff is terminated before providing specific notice of their report to an employer. *Id.*

Here, Plaintiff had never been disciplined, had received numerous accolades in the past from Bork prior to her complaints regarding the lunches, and had a largely unblemished performance history with Defendant. (*Exhibits Hamilton v. General Electric Co.*, 556 F.3d 428, 435-36 (6th Cir.2009))[22] That all changed about a month after Plaintiff's initial complaint about lunches, when she was suspended and ultimately terminated. Her suspension occurred the same week that she threatened to file paperwork with the State, which is protected by the WPA. (Hood Dep. 188-90, 204-07, 267, 272-73; *Exhibit OO*) The decision to terminate was made about a week after the complaint to the State was filed. (Id.)

In addition to temporal proximity, there is sufficient evidence for a reasonable jury to conclude that Defendant treated Plaintiff differently from other employees in terminating her employment.[23] Defendant claimed that other employees had been

---

[22] *Thompson v. Aramark Sch. Support Servs., Inc.*, 490 F.3d 506, 509 (6th Cir. 1007)(the fact that employee had no prior performance problems prior to reporting violations of law constituted indirect evidence of causation).

[23] *See Carlson v. Leprino Foods Co.*, 522 F. Supp. 2d 883, 889 (W.D. Mich. 2007)(employees who received similar absences were not disciplined as severely as

19

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4917   Filed 08/26/16   Page 50 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 27 of 33   Pg ID 4718
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 26 of 32   Pg ID 1364

terminated in the past for "job abandonment." In discovery, it became clear that the examples Defendant provided prove that there has never been a Lab Outreach employee who has been terminated for merely taking a 30-minute lunch. All the examples provided by Defendant involved employees who falsified time sheets, provided no notice, cussed and acted in a threatening manner in front of a patient, abandoned a patient, or had numerous other disciplinary problems or occurrences. (*Exhibits TT & UU*; Wiseheart Dep. 44-47)[24] Instead, she was terminated in contradiction to Defendant's own mandatory unpaid lunch policy and Attendance policy dictating that, at most, Ms. Reeser's February 25th lunch should only have warranted one occurrence.

Defendant failed to follow many of its policies in regards to Ms. Reeser and her lunches, which is indirect evidence of retaliatory animus:[25]

- Defendant **MANDATES** an unpaid 30-minute lunch period. (*Exhibits* I & N; Hood Dep. 267-68; Bork Dep. 83);
- Hood instructed Bork to pay Plaintiff for lunches she worked through; Bork refused without reason later apologizing if this "screwed up" the case. (*Exhibit HHH*; Hood Dep. 246; Bork Dep. 106-07);

---

the plaintiff in that case leading the court to find that a reasonable fact finder could use that fact as evidence to conclude that the company was applying its attendance policy differently to the plaintiff to attempt to ensure his termination following his protected activity under FLSA).

[24] See Section II.E.

[25] Employer's failure to follow its own policies and discriminatory treatment compared to other similarly situated workers are evidence of retaliation. *McLemore v. Detroit Receiving Hosp. & Univ. Medical Center*, 196 Mich. App. 391, 398 (1992); *Turpin v. Cable Tel Servs., Inc.*, 3:09-CV-147, 2010 WL 670080, at *3 (E.D. Tenn. Feb. 22, 2010)(attached as Ex. DDD).

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4918   Filed 08/26/16   Page 51 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 28 of 33   Pg ID 4719
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 27 of 32   Pg ID 1365

- According to the Hospital's Absenteeism Policy and the February 24th email from Bork, (*Exhibit CC & GG*) Plaintiff's action should have resulted in a single occurrence; yet, Ms. Reeser was terminated. (Hood Dep. 257; Bork Dep. 43)
- Under the Hospital's Policies, if an employee fails to obtain approval by "email[ing] [their] arrival and departure", the penalty is "a full occurrence"; yet, Reeser was immediately terminated. (*Exhibits I & Z*); and
- Requesting security to escort Ms. Reeser out of the facility without her personal belongings unlike others who had been terminated for worse infractions (*Exhibit NN*).[26]

Finally, the record clearly establishes that Hood acted as a rubber stamp for Bork with the decision having been made well in advance. (*See* Section II.D) Clearly there is sufficient indirect evidence to prove causation.

## C.   Defendant's Nondiscriminatory Reason for Termination is Mere Pretext

If this Court finds that Plaintiff's direct evidence is insufficient, Defendant must proffer a legitimate non-discriminatory reason for the adverse employment action. Afterwards, the burden once again shifts to Plaintiff to provide enough evidence to where a jury could reasonably determine that the Defendant's legitimate non-discriminatory reason was mere pretext.[27]

To demonstrate a genuine issue of material fact exists with regard to Plaintiff's

---

[26] Evidence that the direct supervisor requested that police be on standby when he fired the plaintiff could be used to mean that he thought the plaintiff was a troublemaker due to his complaints regarding unequal pay. *Moore v. Freeman*, 355 F.3d 558, 563 (6th Cir. 2004).

[27] The definition of pretext is when "The employer . . . waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee." *Jones v Potter*, 488 F3d 397, 408 (6th Cir 2007).

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6 PageID.4919 Filed 08/26/16 Page 52 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 29 of 33 Pg ID 4720
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 28 of 32 Pg ID 1366

proffered reason, Plaintiff may show that the proffered reason: (1) has no basis in fact, (2) did not actually motivate Defendant's decision, or (3) was insufficient to warrant the challenged decision.[28]

Defendant asserts that Plaintiff was discharged for "departure from the work site without obtaining authorization." (Def.'s Motion for Summary Judgment, p. 20) Plaintiff asserts that this reason is mere pretext for unlawful retaliation for the three reasons described below.[29]

First, Defendant's proffered reason has no basis in fact. As indicated above, Defendant's policy **MANDATED** employees to take a thirty minute **UNPAID** lunch during which they could leave the facility. (See Section II.B) In an email that Bork sent to staff the day before Reeser's suspension, she indicated that all that was required to leave for lunch was notice. (*Exhibit GG*) Failure to provide notice or to otherwise not show up for work, leave early, or arrive late only warranted an **occurrence**. (Id.; *see* Section II.E) According to Henry Ford's work rules, three occurrences were required before the employer could issue a corrective action—a documented counseling. (*Exhibit XX*) Plaintiff had never received corrective action.

Prior to Ms. Reeser's departure on February 25, 2014, Plaintiff provided

---

[28] *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); s*ee also Whitaker v. U.S. Security Associates, Inc.*, 774 F. Supp. 2d 860 (E.D. Mich. 2011).
[29] Evidence presented on the issue of causation is also relevant to proving pretext. *See e.g., Carlson v. Leprino Foods Co.*, 522 F.Supp.2d 883 (W.D. Mich. 2007).

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4920   Filed 08/26/16   Page 53 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 30 of 33   Pg ID 4721
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 29 of 32   Pg ID 1367

notice to Bork twice and notice to Wiseheart three times. At no time did any manager instruct that she did not have authority to leave the facility.

Instead of instructing Ms. Reeser not to leave, Ms. Bork intentionally remained silent. (*Exhibit LL*) She did not respond to Ms. Reeser during their telephone call when Reeser indicated, in tears, that she needed to leave and wanted to take a lunch nor did Ms. Bork respond to Ms. Reeser's email, even though she took time to respond to the emails of others. (*Exhibit LL*)

Defendant relies solely on a provision in the Lab Assistant Policies and Guidelines that requires employees who leave the facility to obtain "prior authorization from **a manager**." (emphasis added). (*Exhibit CC*)[30]   While Defendant's reliance is misplaced, even if this was applied to the current situation, Ms. Reeser was in compliance. According to Defendant's Employees Policies and Guidelines, Wiseheart, **a Regional Laboratory Manager**, was an appropriate

---

[30] There are several problems with Defendant solely relying on this Provision. First, this is a misreading—the Lab Outreach policy only limits an employee's ability to leave the facility to take "breaks" when there is inadequate staffing, not "unpaid lunches." (*Exhibit CC*) Second, this interpretation ignores statements made by Bork to the contrary that approval was needed **NOT** to take a lunch. (*Exhibits EE, FF, & GG*) Third, this interpretation conflicts with a Hospital policy **MANDATING UNPAID** 30-minute lunch. Yet, the Senior Business Partner testified that Hospital disciplinary guidelines must be followed and cannot be changed by a manager. (Hood Dep. 257-58) Fourth, the law precludes enforcement of the Lab Outreach policy for precisely the reason that Ms. Reeser complained to Human Resources and the State of Michigan. Under the FLSA, employees must be paid for all time they spend "engaged to wait." If Defendant's interpretation is accepted, phlebotomists would be required to stay at the facility during lunch without being paid.

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4921   Filed 08/26/16   Page 54 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 31 of 33   Pg ID 4722
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 30 of 32   Pg ID 1368

individual for Plaintiff to seek approval from to take lunch leave. Wiseheart provided direct authorization for Plaintiff's lunch telling her to take some time for herself and by waiving Plaintiff on when she stated that she was going to lunch as she had done many times in the past. (Reeser Dep. 94-95, 322)[31]

Second, there is a question of fact as to whether Ms. Reeser leaving for lunch was sufficient to warrant termination. Hood has characterized Plaintiff's actions as "walking off the job." (Hood Dep. 251). Walking off the job is a situation when there is no notice provided to the employer and the employee walks away from their work. *Id.* at 40. Yet, the managerial witnesses all testified that others had engaged in worse behavior who were not terminated.[32] Additionally, Defendant allegedly implemented a lunch period for CTPSC a week after Plaintiff's termination. (*Exhibit EEE*)

Third and finally, even if Defendant's proffered reason was not factually false

---

[31] In order to facilitate lunch breaks at CTPSC, employees had a practice of placing a break sign on the front door of the office informing potential customers that someone would return to the office soon. (Reeser Dep. 115-16; *Exhibit HH*, Door Sign) Plaintiff used such a sign with Wiseheart's approval more than five times while at CTPSC. (Reeser Dep. 152)

[32] Bork applied Defendant's progressive discipline policy to two individuals that left work early, arrived late, or did not show up at all without providing notice. (*Exhibits TT & UU*) In a May 2, 2012 corrective action, an employee who arrived to work significantly late twice, no call no showed twice, and left significantly early once received a written warning with a one day suspension. (*Exhibit TT*) In a July 31, 2013 corrective action, an employee refused to answer her phone for an emergency request for twenty minutes and abandoned a patient. (*Exhibit UU*) This employee was given a written warning with a three day suspension. *Id.*

Case 2:14-cv-11916-GCS-SDD ECF No. 134-6, PageID.4922 Filed 08/26/16 Page 55 of 60
2:14-cv-11916-GCS-SDD Doc # 132-3 Filed 08/24/16 Pg 32 of 33 Pg ID 4723
2:14-cv-11916-GCS-MJH Doc # 49 Filed 06/10/15 Pg 31 of 32 Pg ID 1369

and could motivate dismissal, it is more likely than not the case that Bork's decision to terminate Plaintiff resulted from retaliation over Plaintiff's complaints regarding rights under FLSA. Bork stated on multiple occasions that any attempt by Plaintiff to report Pl`aintiff's lunch situation would result in adverse action. Bork told her that she would be "terminated" if she contacted Defendant's Human Resources department about her unpaid lunch concern. (Hood Dep. 134) Bork told her "[you'll] be sorry" for reporting unpaid lunches to the State of Michigan the day of her suspension. (Reeser Dep. 158-59) At the end of the day, the decision to terminate Plaintiff was left to Bork according to Ms. Hood. (Hood Dep. 40)

For the reasons provided above, Plaintiff has raised a question of fact regarding Defendant's proffered reason and, therefore, Defendant is not entitled to summary judgment on Plaintiff's FLSA and WPA claims.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By: /s/Adam C. Graham
Keith D. Flynn (P74192)
Adam C. Graham (P79361)
*Attorneys for Plaintiff*
600 W. Lafayette Blvd., 4th Floor
Detroit, MI 48226
(313) 964-4454

Dated: June 10, 2015

25

Case 2:14-cv-11916-GCS-SDD   ECF No. 134-6, PageID.4923   Filed 08/26/16   Page 56 of 60
2:14-cv-11916-GCS-SDD   Doc # 132-3   Filed 08/24/16   Pg 33 of 33   Pg ID 4724
2:14-cv-11916-GCS-MJH   Doc # 49   Filed 06/10/15   Pg 32 of 32   Pg ID 1370

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NATALIE REESER,

              Plaintiff,

v

HENRY FORD HOSPITAL,

            Defendant.

Case No. 2:14-cv-11916-GCS-MJH
Hon. George Caram Steeh
Magistrate Judge Michael Hluchaniuk

---

| **MILLER COHEN, P.L.C.** | **VARNUM LLP** |
|---|---|
| Keith D. Flynn (P74192) | Terrance J. Miglio (P30541) |
| Adam C. Graham (P79361) | Barbara E. Buchanan (P55084) |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 600 W. Lafayette Blvd., 4th Floor | 39500 High Pointe Blvd., Ste. 350 |
| Detroit, MI 48226-0840 | Novi, MI 48375 |
| (313) 964-4454 Phone | (248) 567-7828 Phone |
| (313) 964-4490 Fax | (248) 567-7423 Fax |

---

### CERTIFICATE OF SERVICE

I hereby certify that on *June 10, 2015*, I electronically filed the foregoing

document(s) with the Court using the ECF system, which will send notification of

such filing to all counsel of record.

           Respectfully submitted,

           **MILLER COHEN, P.L.C.**

           By:   /s/Adam C. Graham
                 Keith D. Flynn (P74192)
                 Adam C. Graham (P79361)
                 *Attorneys for Plaintiff*
                 600 W. Lafayette Blvd., 4th Floor
                 Detroit, MI  48226
                 (313) 964-4454

# EXHIBIT D

2010 WL 1254607
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. Michigan,
Southern Division.

David MacDONALD, Plaintiff,

v.

UNITED PARCEL SERVICE, Defendant.

No. 07-12022.
|
March 26, 2010.

**Attorneys and Law Firms**

Deborah L. Gordon, Deborah L. Gordon Assoc., Bloomfield Hills, MI, for Plaintiff.

Bonnie L. Mayfield, Dykema Gossett, Bloomfield Hills, MI, F. Arthur Jones, II, Dykema Gossett, Ann Arbor, MI, for Defendant.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S OBJECTIONS TO TAXED BILL OF COSTS AND GRANTING PLAINTIFF'S MOTION FOR A STAY PENDING APPEAL WITH RESPECT TO TAXATION OF COSTS*

MARIANNE O. BATTANI, District Judge.

**\*1** Before the Court is Defendant United Parcel Service, Inc.'s Objections to Taxed Bill of Costs (Doc. No. 72) and Plaintiff's Motion for Stay Pending Appeal With Respect to Taxation of Costs (Doc No. 67). For the reasons that follow, the Court **GRANTS in part and DENIES in part,** Defendant's Objections to Taxed Bill of Costs, and **GRANTS** Plaintiff's Motion for a Stay Pending Appeal with Respect to Taxation of Costs.

### I. BACKGROUND

The Court awarded United Parcel Service, inc. (UPS) summary judgment on all of the claims brought by its former employee, Plaintiff David MacDonald.

Thereafter, Defendant Defendants filed a Bill of Costs requesting $18,380.53. After reviewing the Bill of Costs, the Clerk taxed costs in the amount of $7,670.43. *See* Doc. No. 66. Thereafter, Defendant filed its Corrected Objection to the Bill of Taxable Costs.

Defendant objects to the denial of nonexpedited costs for the deposition of David MacDonald, Balbir Gandhi, M.D., Phil Siegel, Alice Tkachuk, Thomas Hooper, and Earl Bowen, as well as the court report's appearance fee and cost of the transcript of the video deposition of Bowen. In addition, Defendant objects to the denial of printing fees in the amount of $294.00, for the printing of documents from the electronic filing system and pleadings and other papers served by the parties. UPS further objects to the Clerk's denial of statutory witness fees of $40.00 for Mongkol Mong, M.D., Richard Gelb, Ph.D, and Balbir Gandhi, M.D. Finally, UPS objects to the Clerk's denial of copying fees in the amount of $794.60, which included the cost of copying documents produced to Plaintiff pursuant to his discovery requests, deposition exhibits, and documents necessarily provided to Plaintiff's counsel.

Plaintiff did not file an objection to Defendant's Bill of Costs, and did not file a response to Defendant's Corrected Objection to the Bill of Taxable Costs.

### II. STANDARD OF REVIEW

Title 28 U.S.C. § 1920 provides the basic rule for what costs may be taxed in federal court. It reads: "A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees,

expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C.1920.

"The court has broad discretion in allowing or disallowing the particular items listed in § 1920 as costs." *BTD Products, Inc. v. Lexmark Int'l, Inc.,* 405 F.3d 415, 419 (6th Cir.2005). With this standard in mind, the Court assesses the merits of the objections.

### III. ANALYSIS

#### A. Bill of Costs

##### 1. Court Reporter Fees
**\*2** Defendant initially sought $16,020.64 in court reporter fees. The Clerk allowed $7,250.43, noting that expedited surcharges were not permitted and that the identified depositions were not taxable because there were not used by UPS in support of its motion for summary judgment. *See* Doc. No. 66. The Clerk denied the costs for the video deposition of Bowen because it was not used in court proceedings. *Id.*

Defendants seeks costs for those court reporter fees, arguing that they were "necessarily obtained for use in the case" under 28 U.S.C. § 1920(2). Allowable costs include "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2), and the costs of taking and transcribing depositions reasonably necessary for the litigation typically are allowed to the prevailing party. *Sales v. Marshall,* 873 F.2d 115, 120 (6th Cir.1989). "Necessity is determined as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling." *Id.*

The Court is satisfied that the depositions for which Defendant seeks reimbursement were necessarily obtained to advance its successful motion for summary judgment. However, the Court declines to award Defendant $1,016.54 for the video deposition of Bowen. *See* Bill of Costs Handbook II G 1(c) (allowing costs for a **court ordered** video deposition) (emphasis added). Accordingly, the Court awards Defendant $277.55 in nonexpedited charges for the deposition of David MacDonald; $346.16 for the Deposition of Balbir Gandhi; $383.85, for the deposition of Phil Siegel; $1,270.47 for the deposition of

Alice Tkachuk; $533.00 for the deposition of Thomas Hooper; and $123.72 for the court reporter's appearance at the video deposition of Bowen as well as $364.00 for the stenographic transcript.

##### 2. Printing Fees
The Clerk denied Defendant's request for $294.00 in printing fees in accordance with Section II, E, Bill of Costs Handbook. According to the Handbook, "These fees and disbursements usually do not become involved in trial court proceedings. The Court of Appeals taxes these fees and disbursements and includes them in its mandate. These taxed costs are in addition to those recoverable in the trial court."

According to UPS, the printing fees found at Column 3 of Part D include costs for the printing of documents from the Court's Electronic Court Filing systems and pleadings and other papers served by the parties. The cost of printing documents for a litigant's own use is not recoverable. *Id.* Therefore, the Court denies Defendant's request of $294.00.

##### 3. Witness Fees
UPS objects to the Clerk's denial of statutory witness fees of $40.00 each for Mong, Gelb, and Gandhi. The basis for the Clerk's denial of a witness fee for Gandhi was that the deposition was not used by Defendant, and no appearance was made by the witness. As for Gelb and Mong, the Clerk noted that the date the witnesses testified as identified in the bill of cost, did not match the job dates on the deposition invoices. Moreover, no court hearing was held on the date identified. *See* Doc. No. 66.

**\*3** According to UPS, Dr. Gandhi was Plaintiff's treating physician, and UPS used the deposition to analyze Plaintiff's disability claim. As to Mong and Gelb, UPS notes that the date of their testimony is indicated on the court reporters' invoices, but also on the attached pages of the deposition transcripts. These fees were incurred.

The Court finds that the witness fees requested in Defendant's Bill of Costs to be taxable pursuant to 28 U.S.C. § 1920(3). Thus, the Court finds that Defendants are entitled to $120.00 in taxable witness fees.

##### 4. Exemplification and Copy Fees

Defendant's request for $794.00 in Exemplification and Copy Fees was denied by the Clerk because no prior court order authorizing the recovery was issued. *See* Doc. No. 66. UPS asserts that it only billed for the cost of copying documents produced to Plaintiff pursuant to his discovery requests, deposition exhibits, and documents that were necessarily provided to Plaintiff's counsel.

Section F of the Bill of Costs Handbook provides that the cost of obtaining "papers necessarily obtained for use in a case ... are **not** recoverable ... unless counsel has previous secured an order authorizing the recovery of these costs. Routine copy expenses; those made for service, filing or for the convenience of counsel are not taxable within the discretion of the taxation clerk."

The Court finds that two of the costs identified should be taxed: $135.30 for courtesy copies and other submissions to chambers and $532.00 for documents produced and sent to Plaintiff.

### B. Stay Pending Appeal

The Bill of Costs Handbook states that the Clerk will tax costs even if the case is appealed, unless a stay pending the appeal has been issued by the Court. Nevertheless, the parties also can agree "in writing (to the Clerk) if they wish to defer the taxation of the costs until the conclusion of the appellate proceedings." (E.D. Mich. Bill of Costs Handbook).

Here, the parties have not agreed to defer the taxation of the costs and no stay pending any post-judgment proceedings has been entered by the Court. Plaintiff advances his request based on the financial disparity of the parties. He is unemployed and asserts that UPS' refusal to postpone taxation proceedings demonstrates it desire to punish him for this litigation. In response, Defendant maintains that Plaintiff should post a bond.

The Court in its discretion finds Plaintiff has present a sufficient basis for granting the requested relief. Further, given the financial disparity of the parties, the Court declines to order a bond.

### IV. CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Defendant's Corrected Objection to Taxed Bill of Costs. The Court awards $3298.75 in court reporter fees; $120.00 in witness fees; $667.30 in Exemplification and Copy Fees. The Court **GRANTS** Plaintiff's Motion for a Stay Pending Appeal with Respect to Taxation of Costs.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2010 WL 1254607

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.