# EXHIBIT I

2008 WL 920135
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

CITY OF STERLING HEIGHTS, et al., Plaintiffs,
v.
UNITED NATIONAL INSURANCE
COMPANY, et al., Defendants.

No. 03-72773.
|
April 3, 2008.

**Attorneys and Law Firms**

Frederick A. Pettit, Anderson, Kill, John N. Ellison, Luke E. Debevec, Reed, Smith, Philadelphia, PA, John J. Gillooly, Garan Lucow, Detroit, MI, for Plaintiffs.

Catalina J. Sugayan, Sedgwick, Detert, Moran & Arnold LLP, Chicago, IL, Dennis M. Goebel, Milton S. Karfis, Bishop A.L.E. Bartoni, Harvey Kruse, Troy, MI, for Defendant.

Cindy R. Victor, Victor Firm, Duane M. Beeman, Roncelli, Inc, Sterling Heights, Mi,Edward J. Hood, Clark Hill, Dante A. Stella, Dykema Gossett, Katherine M. White, Dykema Gossett, Detroit, MI, Richard W. Paul, Dickinson Wright, Bloomfield Hills, MI, for Movant.

John N. Ellison, Reed, Smith, Philadelphia, PA, Mark D. Silverschotz, Anderson, Kill, New York, NY, John J. Gillooly, Garan Lucow, Detroit, MI, for Counter-Defendant.

**OPINION AND ORDER**

**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' OBJECTIONS AND MOTION TO ADJUST THE TAXED BILL OF COSTS [625];**

**(2) GRANTING IN PART AND DENYING IN PART UNITED NATIONAL'S MOTION TO ADJUST TAXED BILL OF COSTS [624]; AND**

**(3) CANCELLING THE MAY 14, 2008 HEARING DATE**

NANCY G. EDMUNDS, Judge.

*1 This matter comes before the Court on Plaintiffs' ("Insureds") and Defendant United National Insurance Company ("United National")'s cross-motions to adjust the taxed bill of costs entered by the Clerk of the Court on February 6, 2008. Insureds' objections and motion argue that the Clerk of the Court improperly disallowed costs that were reasonably necessary and thus taxable under Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. Defendant United National argues in its motion that the Clerk of the Court properly disallowed certain costs, but this Court should apply the *pro-rata* "time-on-the-risk" method of allocation to the $27,662.02 in allowed costs.

The Court finds that the facts and legal arguments are adequately presented in the parties' motions and supporting briefs and that the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), Insureds' and United National's motions to adjust the taxed bill of costs will be decided on the briefs and without oral argument.

For the reasons stated below, this Court GRANTS IN PART and DENIES IN PART Insureds' motion to adjust the taxed bill of costs and GRANTS that part of Defendant United National's motion requesting that the *pro rata* "time-on-the-risk" allocation method be applied to the amount of taxed costs set forth below.

**I. Facts**

The Court is familiar with the facts and issues presented in this coverage action as well as the underlying State and Federal Actions, having presided over the two underlying Federal Actions brought by the Underlying Plaintiffs against the Insureds and having addressed a number of coverage issues in previous opinions and orders. The facts relevant to the parties' cross-motions to adjust the Clerk of the Courts taxed bill of costs are as follows.

On July 18, 2003, Insureds filed this insurance coverage action against Defendants General Star Indemnity Company ("GenStar"), Specialty National Insurance

Company ("Specialty National"), and United National Insurance Company ("United National"). At issue here are costs incurred in connection with the Insureds' claims against United National. [1]

This Court has previously determined that coverage was triggered under policies issued by three separate insurance companies, one of whom is United National, for three separate time periods: September 1, 2000 to September 1, 2001; September 1, 2001 to September 1, 2002; and September 1, 2002 to May 13, 2003. (1/27/06 Orders, Doc. Nos. 308, 309, 310). United National's comprehensive general liability ("CGL") primary and excess policies issued to Insureds cover the first two time periods. [2] As to those United policies, this Court has determined that United's duty to indemnify for defense costs and damages was triggered as a result of the slander/libel/defamation claims asserted in the underlying State Action. (1/27/06 Order, Doc. No. 309). As to the § 1983 claims asserted in the State and Federal Action, this Court held that the policies of two other insurance companies, GenStar and Specialty National, were triggered. The Court also held that GenStar and Specialty National had a duty to defend. (1/27/06 Orders, Doc. Nos. 308, 310; 2/14/04 Order, Doc. No. 34.)

*2 On March 22, 2004, Insureds and the Underlying Plaintiffs entered into a settlement agreement that disposed of the State and Federal Actions in their entirety. The terms of the $31 million settlement did not contain any allocation of the total settlement amount among the various claims asserted in the State and Federal Actions. Two of the three potentially liable insurance companies, GenStar and Specialty National, participated in the settlement negotiations and subsequently settled with Insureds in this coverage action. [3] On July 27, 2006, Insureds' claims against GenStar were dismissed with prejudice and without costs. (Doc. No. 347.) On August 22, 2006, the claims against Specialty National were dismissed with prejudice and without costs. (Doc. No. 353.) Thus, after that date, the only remaining disputes in the coverage action were those between Insureds and United.

On January 19, 2007, this Court determined that the *pro rata* "time-on-the-risk" allocation method should be applied to the $31 million settlement of the underlying State and Federal Actions because the damages reflected in that global settlement were indivisible. (1/19/07 Order, Doc. No. 354.) Under this allocation method, the Court found that United had an indemnity obligation for $10.33 million, or one-third of the $31 million settlement. (*Id.* at 11, n. 7.) The Court did not determine United's indemnity obligation for defense costs at that time. It did, however, subsequently determine that Insureds need only satisfy a single self-insured retention. (3/13/07 Order, Doc. No. 543.)

On August 1, 2007 and October 24, 2007, this Court applied the *pro rata* "time-on-the-risk" allocation method to the Insureds' other damage elements; i.e., defense costs and consequential damages. (8/1/07 Order, Doc. No. 603; 10/24/07 Order, Doc. No. 609.)

On December 3, 2007, this Court entered a Final Judgment against United National, which awarded taxable costs to Insureds and directed that taxable costs and prejudgment interest on those taxable costs be calculated by the Clerk of the Court. (12/3/07 Final Judgment, Doc. No. 611 at 2.)

On December 21, 2007, Insureds filed their Bill of Costs, requesting $46,878.93 in taxable costs, plus prejudgment interest on all costs awarded. (Doc. No. 613.) Insureds subsequently filed an amended bill of costs to add additional references and citations requested by the Clerk. (Doc. No. 621.)

On February 6, 2008, the Clerk taxed costs against United National in the amount of $27,622.02; disallowing $19,356.91 of claimed taxable costs. (Doc. No. 623.)

This matter is now before the Court on the parties' cross-motions to adjust the taxed bill of costs.

## II. Analysis

Insureds' objections and motion to adjust the taxed bill of costs argues that the costs disallowed by the Clerk were all reasonably necessary for the preparation of their case against United National. United National's motion to adjust argues that, while the Clerk properly applied Rule 54(d) and 28 U.S.C. § 1920 in disallowing certain costs requested by Insureds, the Clerk should have applied the *pro-rata* "time-on-the-risk" allocation method to reduce the amount it owes the Insureds under that taxed bill of costs. This Court first addresses Insureds' objections.

### A. General Principles for Assessing Costs under Rule 54(d) and § 1920

*3 "Rule 54(d) of the Federal Rules of Civil Procedure establishes that the prevailing party shall be allowed to recover its costs unless the court directs otherwise. Costs that may be taxed are specified in 28 U.S.C. § 1920." *BDT Products, Inc. v. Lexmark Int'l, Inc.,* 405 F.3d 415, 417 (6th Cir.2005) (footnotes omitted). Section 1920 provides for the recovery of the following costs:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. "The prevailing party has the burden of establishing that the expenses it seeks to have taxed as costs are authorized by applicable federal law, including proof of necessity and reasonableness under 28 U.S.C. § 1920." *Keweenaw Bay Indian Community v. Rising,* No. 2:03-CV-111, 2005 WL 3535124 (W.D.Mich. Dec.22, 2005) (internal quotations and citation omitted).

"The court has broad discretion in allowing or disallowing the particular items listed in § 1920 as costs." *BDT Products,* 405 F.3d at 419. "In reviewing a request for taxation of costs, a court must look first to whether the expenses are allowable cost items and then to whether the amounts are reasonable and necessary." *Whirlpool Corp. v. LG Electronics, Inc.,* No. 1:04-CV-100, 2007 WL 2462659 (W.D.Mich. Aug.26, 2007) (internal quotations and citation omitted).

The Eastern District of Michigan has also promulgated a Local Rule for the taxation of costs, and incorporates a "Bill of Costs Handbook."[4] The Bill of Costs Handbook, revised in November 2007, expressly provides on its cover that it is not to be cited as legal authority. Rather, it:

> is provided by the Clerk's Office to assist parties in properly filing a Bill of Costs with this Court. Litigants are encouraged to review it thoroughly. The Handbook is NOT to be considered legal advice, nor should it be cited as legal authority. It is subject to exception and modification. Please use the Handbook in conjunction with the federal rules and the Local Rules of this Court.

E.D. Mich. *Bill of Costs Handbook* (rev.11/07). Accordingly, United's reliance on the Handbook, as opposed to Fed.R.Civ.P. 54 or 28 U.S.C. § 1920, as the appropriate legal authority is misplaced.

### B. Insureds' Objections

Insureds object to the denial of three categories of costs: (1) deposition transcript costs; (2) hearing transcript costs; and (3) service fees for deposition subpoenas. Each of these categories are allowable cost items. Thus, the court's task is to determine whether the disallowed costs were reasonable and necessary. "The party objecting to the clerk's taxation has the burden of persuading the court that it was improper." *BDT Products,* 405 F.3d at 420 (internal quotations and citation omitted).

#### 1. Deposition Transcript Costs and Service Fees for Deposition Subpoenas

*4 "The Court is permitted to tax as costs '[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case.' " *Whirlpool Corp.,* 2007 WL 2462659 at *4 (quoting 28 U.S.C. § 1920(2)). Generally, costs incurred in connection with taking depositions "reasonably necessary for the litigation are allowed to the prevailing party." *Id.* (internal quotations and citation omitted). Moreover, "[n]ecessity is determined as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling." *Id.* (internal quotations and citation omitted). Nonetheless, " '[d]epositions that are merely investigative, preparatory, or useful for discovery are not taxable as costs.' " *Id.* at 5 (quoting *Baker v. First Tenn. Bank Nat'l Ass'n,* No 96-6740, 1998 WL 136560, *5 (6th Cir. Mar.19, 1998) and citing *Kaiser Indus. Corp. v. McLouth Steel Corp.,* 50 F.R.D. 5, 12 (E.D.Mich.1970); 10 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice & Procedure* § 2676 (3d ed.1998)).

The Clerk of the Court disallowed costs associated with depositions for 25 individuals because (1) the depositions were not attached to the motion identified by Insureds in the Bill of Costs;[5] (2) the depositions were used in motion practice by Defendant Insurers; not Insureds; or (3) the cost for an expedited transcript was not allowed under Rule 54 or § 1920. Insureds object to all disallowed deposition costs and provide arguments as to each.

### a. Depositions of Duchane (8/11/05), Beeckman, Kebbe, DeHondt, Bartholomew, Ortega, Johnson, Mende, Blessed, Fachini, Romano, Koski, O'Kelley, Rice, Cardeccia, Youngblood, Munem, Rowe, Lehman, George, Walland, and Nastri

Insureds argue that the deposition costs for the above individuals, with the exception of Cardeccia and Youngblood, should be allowed because these were taken during the normal course of discovery, used for trial preparation, or both. (Pls.' Mot. at 9-10 .) This is not enough. It is well established that "[d]epositions that are merely investigative, preparatory, or useful for discovery are not taxable as costs." *Whirlpool Corp.,* 2007 WL 2462659 at *5 (internal quotations and citations omitted). *See also Kaiser Indus. Corp. v. McLouth Steel Corp.,* 50 F.R.D. 5, 12 (E.D.Mich.1970) ("[I]t is necessary to distinguish between depositions which are reasonably necessary to properly present a party's case and depositions used essentially for the purpose of investigation or the kindred purpose of thorough preparation by counsel. Investigation expenses are not chargeable as costs.")

Insureds next argue that the deposition costs for all of the above individuals, with the exception of Walland and Nastri, should be allowed because each deposition or an exhibit from a deposition was "used" by Insureds in motion practice. Insureds' objections are overruled in part and sustained in part.

*5 Insureds' objections as to the following individual deposition costs are OVERRULED.

First, as to Cardeccia and Youngblood, simply stating that their depositions were used in connection with a motion to compel additional discovery is not enough to show that they were used for something other than discovery purposes and are thus taxable costs. (Pls.' Mot. at 10.) Moreover, because these deposition costs are not taxable, the costs for service of the Cardeccia and Youngblood deposition subpoenas were properly disallowed.

Second, as to Blessed, Fachini, Munem, and Rowe, the affidavit referenced by Insureds reveals that these depositions were reviewed solely to oppose Specialty National's motion to reopen discovery. Once again, this is not enough to show that the depositions were used for something other than discovery purposes. (Doc. No. 281-2, Ellison Aff. ¶ 3.) As such, they are not taxable costs.

Third, as to Kebbe, DeHondt, Bartholomew, Mende, Blessed, Fachini, and Lehman, Insureds argued in a motion in limine (Doc. No. 465) that these individuals should not be allowed to testify at trial because their testimony was either irrelevant to Insureds' dispute with United or would be unnecessarily repetitive. Insureds' reference to this motion does nothing to establish that the depositions of these individuals should be allowed as taxable costs.

Fourth, as to Blessed (Ex. 44) and O'Kelley (Ex. 36), Insureds argue that these deposition costs are taxable because an exhibit from those depositions was used in its motion practice. The same exhibits, however, were also attached to other depositions, Richard Bracci (Ex. 19) and Jerry Hart (Ex. 42), respectively. The Clerk taxed the latter depositions. Thus, the Court overrules Insureds' objection to the disallowance of the depositions costs for Blessed and O'Kelley.

Insureds' objections as to the following individual deposition costs are SUSTAINED.

First, as to Ortega ($1,019.00) and Johnson ($1,358.50), because exhibits from their depositions were used by Insureds in motion practice and not purely discovery (Doc. No. 395), the costs of these depositions are taxable.

Second, as to Wallard and Nastri ($1,666.56), because Insureds' expert (Beeckman) reviewed their depositions to form opinions on key issues in this coverage litigation, the costs of these depositions are also taxable.

Third, as to Duchane ($775.30), George ($683.25), Koski ($1,193.65), Rice ($945.70) and Romano ($1,133.80), because these depositions were attached and used by United to oppose Insureds' motion in limine and argued

that they had important testimony as to the defamation claims covered under its policies and Insureds' claimed breach of the implied covenant of good faith and fair dealing (Doc. No. 550 at 5), the costs of these deposition costs are also taxable. "Courts within this Circuit found that depositions cited by either party in support or defense of a motion are 'reasonably necessary for the litigation' and, therefore, are taxable by the prevailing party under § 1920(2)." *Lahar v. Oakland County,* No. 05-72920, 2008 WL 239830, *1 (E.D.Mich. Jan.29, 2008) (citing *Keweenaw Bay Indian Community,* 2005 WL 3535124 at *2; *Johnson v. City of Battle Creek,* No. 4:04 CV 38, 2005 WL 1427716, *1 (W.D.Mich. June 16, 2005)).

**\*6** Finally, as to Beeckman ($343.30), because this is one of Insureds' expert witnesses whose deposition was attached as an exhibit to United's motion for summary judgment (Doc. No. 440), the costs of his deposition are taxable.

In sum, $9,119.06 should be added to the $27,622.02 taxable costs allowed by the Clerk. That is: $1,019.00 (Ortega) plus $1,358.50 (Johnson) plus $1,666.56 (Wallard and Nastri) plus $775.30 (Duchane) plus $683.25 (George) plus $1,193.65 (Koski) plus $945.70 (Rice) plus $1,133.80 (Romano) plus $343.30 (Beeckman) equals $9,119.06.

### b. Cost for Expediting Deposition Transcripts of Notte and Bavuso

The Clerk disallowed the cost for expediting the deposition transcripts of Notte and Bavuso. As to Notte, the Clerk disallowed $1,660.60 identified on the $1,888.60 invoice as costs for "expedited delivery (2-Day)" and allowed the remaining $228.00 identified on that invoice as costs for a copy of the transcript, exhibits, and other miscellaneous charges. Likewise, as to Bavuso, the Clerk disallowed $1,343.10 identified on the $1,751.60 invoice as costs for "expedited delivery (4-Day)" and allowed the remaining $408.50 identified on that invoice as costs for an original and one copy of the transcript, exhibits, and other miscellaneous charges. This is similar to the Clerk's treatment of deposition costs for Herschel Fink where the Clerk disallowed the $546.00 identified on the $2,587.08 invoice as costs for "expedited delivery" and allowed all remaining costs. Insureds object and ask the Court to recalculate the allowed costs so as to include their estimate of the cost of a non-expedited transcript for Notte (estimate of $883.14) and Bavuso (estimate of $546.12). Because Insureds failed to attach documentation from the court reporter confirming their recalculations, this Court sustains the Clerk's disallowance of costs for expedited transcripts and its allowance of the remaining costs in connection with the Notte and Bavuso depositions.

### 2. Hearing Transcripts

"Transcripts of court hearings fall within the scope of § 1920(2), but like depositions, they are only taxable as costs if they were 'necessarily obtained for use in the case.' " *Keweenaw Bay Indian Comm.,* 2005 WL 3535124 at *3. If transcripts were ordered for the convenience of counsel, they are not "reasonably necessary for use in the case." *Id.*

The Clerk disallowed the costs for transcripts of hearings held in this matter (Case No. 03-72773) held on January 26, 2004; November 18, 2004; November 19, 2004; March 9, 2005; September 29, 2005; and March 12 and 15, 2007. The Clerk also disallowed the costs for transcripts of hearings in the underlying Federal Action between the Hillside Plaintiffs and Insureds (Case No. 02-73618) held on February 19, 2004; July 21, 2004; and December 15, 2004. The costs for each of these transcripts was disallowed because Insureds failed to identify how they were used in this coverage action. Insureds object to the Clerk's disallowance arguing that each transcript was necessarily obtained for use in this case. Insureds' objections are SUSTAINED IN PART and OVERRULED IN PART.

**\*7** First, because the December 3, 2007 final judgment (Doc. No. 611) expressly references the January 26, 2004, March 12, 2007, and March 15, 2007 hearings, the costs associated with them are taxable. The taxable amount for the March 12 and 15, 2007 hearing transcripts is $31.54. The taxable amount for the January 26, 2004 hearing transcript is $106.14.[6] Insureds' objections as to the disallowance of the costs of these hearing transcripts are sustained and $137.68 in additional taxable costs are allowed. That $137.68 is to be added to the $9,119.06 in additional taxable costs discussed above for a total of additional taxable costs in the amount of $9,256.74.

Second, because the hearings held on February 19, 2004; July 21, 2004; November 18 and 19, 2004; December 15, 2004; March 9, 2005; and September 29, 2005 were not cited in any Court order, the transcripts were not used in connection with any motion filed by either party in this matter, and Insureds have not shown that they

were ordered for anything other than convenience or general preparation purposes, the costs of these hearing transcripts are not taxable. The Court is not persuaded by Insureds' arguments that the transcripts were "reasonably necessary" because discovery issues at a hearing "could have foreseeably arisen at other depositions" or that issues discussed at a hearing on one insurer's motion to dismiss "could have impacted" those raised by another (Mot. at 14.) The Court's written opinions and orders on discovery and dispositive motions mooted the need for these hearing transcripts. Accordingly, Insureds' objections as to the disallowance of the costs associated with these hearing transcripts are overruled.

### C. United's Argument for Apportionment

United National asks this Court to adjust the Clerk's taxed bill of costs by applying the *pro rata* "time-on-the-risk" allocation method it has consistently applied to each element of damages awarded to Insureds in this matter. Specifically, United proposes that the Court assess against it one-third of the taxed bill of costs as follows: (1) take the revised amount of taxable costs consistent with this Order ($27,622.02 plus $9,256.74 in additional costs = $36,878.76); (2) deduct the taxed expert deposition fees for Fink, Fisher, Kahaian, Crawford, and Kensicki, which were incurred without the involvement of GenStar or Specialty National, totalling $4,378.03 ($36,878.76 minus $4,378.03 = $32,500.73); (3) apply the *pro rata* "time-on-the-risk" allocation method by taking one-third of the remainder ($32,500.73 divided by 3 = $10,833.58); (4) add the $4,378.03, representing the taxed expert deposition fees, to that one-third ($10,833.58 plus $4,378.03) for a total amount of taxable costs of $15,211.61; and (5) add pre-judgment interest (to be calculated by the parties) to that $15,211.61 in taxable costs.

This Court finds persuasive United's argument that the *pro rata* "time-on-the-risk allocation method that the Court has consistently applied to each element of damages awarded to Insureds should be applied to the amount recoverable in taxable costs in the manner United proposes. The same rationale for applying this method of allocation discussed in the Court's previous Orders (Doc. Nos.354, 603, 609) justify its application here. *See also In Re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975,* 687 F.2d 626, 630 (2nd Cir.1982). This results in an award of taxable costs in the amount of $15,211.61, as calculated supra.

### IV. Conclusion

*8 For the above-stated reasons, this Court GRANTS IN PART and DENIES IN PART the parties' cross-motions to adjust the taxed bill of costs [624, 625].

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 920135

Footnotes

| | |
|---|---|
| 1 | On June 30, 2004, Insureds filed an amended complaint, alleging an additional claim that Defendant Insurers breached an implied covenant of good faith and fair dealing. |
| 2 | United's triggered policies provide a total CGL indemnity limit of $39,800,000 ($900,000 per year in primary and $19,000,000 per year in excess coverage). |
| 3 | GenStar agreed to pay $10.25 million of the $31 million settlement, and Specialty National agreed to pay $8.5 million. |
| 4 | Local Rule 54.1 provides that:<br>    A party seeking costs must file a bill of costs no later than 28 days after the entry of judgment. The clerk will tax costs under Fed.R.Civ.P. 54(d)(1) as provided in the *Bill of Costs Handbook* available from the clerk's office and the court's web site.<br>E.D. Mich. L.R. 54.1. |
| 5 | Insureds are mistaken in their belief that deposition costs were disallowed because the entire transcript was not attached to their Bill of Costs. That is not the Clerk's practice, and it was not the reason costs were disallowed here. |
| 6 | Judge Edmunds' court reporter reviewed her April 14, 2005 invoice and the appropriate Dockets for Case Nos. 03-72773 and 02-73618, and determined |

that the hearing transcript for January 26, 2004 (Doc. Entry No. 171, Case No. 03-72773) was on the parties' cross-motions for summary judgment, the transcript was 58 pages, and 58 x $1.83/page equals $106.14.

**End of Document**  © 2016 Thomson Reuters. No claim to original U.S. Government Works.