# EXHIBIT A

2009 WL 1664088
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

MICHIGAN FIRST CREDIT UNION, Plaintiff,
v.
CUMIS INSURANCE SOCIETY INC., Defendant.

No. 05–CV–74423.
|
June 15, 2009.

West KeySummary

1   **Evidence**
    👉 Making of Statement Fact in Issue

    In a credit union's suit alleging that a company was liable under the terms of a credit union bond, testimony from a credit union expert that an individual told him to remove a particular indirect loan from the "exceptions" section of an audit report was not hearsay as it was not offered for the truth of what was said. The testimony was offered to support the credit union's position that information was not being given to the credit union's board.

    Cases that cite this headnote

**Attorneys and Law Firms**

Charles J. Holzman, Patricia Corkery, Holzman, Ritter, Southfield, MI, Don W. Blevins, Mark L. Mcalpine, Ryan W. Jezdimir, McAlpine & Assoc., Auburn Hills, MI, Alan C. Harnisch, George S. Fish, Strobl and Sharp, Bloomfield Hills, MI, Michael P. Farrell, Mi Dept of Attorney General, Lansing, MI, for Plaintiff.

Mark S. Hayduk, Hayduk, Andrews, Lennox Emanuel, The National Law Group, P.C., Detroit, MI, Barry F. Mac Entee, Hinshaw & Culbertson, Chicago, IL, for Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT AS A MATTER OF LAW, FOR A NEW TRIAL AND FOR AMENDMENT OF JUDGMENT (# 295) AND GRANTING, IN PART, PLAINTIFF'S MOTION TO REVIEW ACTION OF TAXATION CLERK (# 302)**

GEORGE CARAM STEEH, District Judge.

*1 Defendant Cumis Insurance Society, Inc. (CUMIS) moves (Docket # 295) pursuant to Rules 50 and 59 for a ruling on its prior motions brought at the end of Plaintiff Michigan First Credit Union's (MFCU) case and at the end of all evidence for entry of judgment as a matter of law and for a new trial. CUMIS also moves for amendment of the judgment entered in this matter. In particular, CUMIS requests that the Court issue a specific interest award as opposed to a generalized interest award. MFCU moves for a review of the action of the taxation clerk (Docket # 302), and requests an additional $23,302.99 in taxed costs. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e) (2), it is ORDERED that the motion be resolved without oral argument.

The circumstances underlying this lawsuit have been set forth in prior opinions and orders, and will be reiterated herein only to the extent necessary to adjudicate the instant motions. *See, e.g.,* Order Denying Cross Motions for Summary Judgment (Docket # 237). Briefly, this matter involves MFCU's claim that CUMIS is liable pursuant to the terms of a written $5 million Credit Union Bond because three MFCU employees "consciously disregarded" MFCU policies established for a 2003 Indirect Lending Program with respect to 1,611 non-performing motor vehicle loans. This matter was tried over the course of seven days before a jury, with the jury returning its verdict in favor of MFCU in the amount of $5,050,000.

**I. CUMIS MOTIONS**

CUMIS moves alternatively for judgment as a matter of law under Rule 50, for a new trial under Rule 59 and/or for amendment of the judgment, as regards the Court's award of interest. As to its motion under Rule 50, CUMIS argues that it was entitled to judgment as a matter of law at the end of MFCU's case and at the end of all evidence

because: (1) "the evidence failed to establish that the principals acted with intentional disregard of [MFCU's] lending policy or that [MFCU] enforced its policy;" and/or (2) MFCU "acquiesced" in the actions of the principals.

As to its motion under Rule 59, CUMIS argues that it is entitled to a new trial because: (1) the jury's verdict is against the manifest weight of the evidence; (2) allowing MFCU to argue that CUMIS had a right (and/or a duty) to audit MFCU's consumer lending department was clear error, prejudicial to CUMIS and contrary to the Court's ruling on CUMIS' motion in limine no. 13; (3) Yarber and Poulos' hearsay testimony about their alleged conversations with Lewis unfairly prejudiced CUMIS and the Court should have excluded this testimony; (4) the Court used a general verdict form as opposed to CUMIS' proposed special verdict form or a general verdict form with special interrogatories; (5) the Court improperly admitted evidence of a romantic relationship between Hillary Clemens and Michael Lewis; (6) the Court's time limitations on trial—in combination with a week long hiatus during trial—were unfair and prejudicial to CUMIS; (7) MFCU's closing argument improperly prejudiced CUMIS; and/or (8) the cumulative effect of the errors identified above substantially prejudiced CUMIS and affected the outcome of the trial.

*2 Finally, asks the Court to amend the judgment to specifically set forth the amount of interest awarded to MFCU.

## A. MOTION FOR JUDGMENT AS A MATTER OF LAW

A motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 is decided in the district court's discretion. *Brown v. Village Green Mgt. Co.,* 342 F.3d 620, 626 (6th Cir.2003). In a diversity case such as this, the district court applies the state law standard of review to motions for judgment as a matter of law challenging the sufficiency of the evidence necessary to support a jury verdict. *Id; King v. Ford Motor Co.,* 209 F.3d 886, 893 (6th Cir.2000). "Under Michigan law, a judgment as a matter of law may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Ridgway v. Ford Dealer Services, Inc.,* 114 F.3d 94, 97 (6th Cir.1997) (internal quotations omitted).

CUMIS argues that MFCU offered only circumstantial evidence and failed to offer any direct evidence that two of MFCU's employees—Ms. Clouthier and Ms. Batton —intentionally disregarded MFCU's indirect lending policies. As to MFCU's Vice President of Lending— Mr. Lewis—CUMIS argues that MFCU failed to offer evidence that Mr. Lewis was required to enforce MFCU's indirect lending policies. CUMIS further argues that, even assuming that the evidence established that Clouthier, Batton and Lewis intentionally disregarded MFCU's lending policies, MFCU is precluded from recovering under the Bond, since the actions of these individuals were "acquiesced in" by MFCU's Board of Directors.

MFCU responds that it presented substantial circumstantial evidence to demonstrate that the employees at issue were conscious of MFCU's lending policies, including the employees' job descriptions and a history of their training and performance. MFCU also points out that it presented the jury with samples of the loans made by Clouthier and Batton, which were allowed to be made by Lewis. MFCU argues that the loans themselves demonstrated a pervasive, blatant disregard of the very lending policies that Clouthier and Batton had been trained in and that MFCU had enforced for years. In the same vein, MFCU also points out that its auditor, Alex Yarber, testified that in comparison to other loans that he had reviewed, he had not "seen anything that so grossly violates policy as what [he] saw at [MFCU] with the indirect loans," and that such violation was "very obvious." Tr. Vol. 4, Jan. 9, 2009, at 76. As to whether MFCU's Board "acquiesced in" the actions of Clouthier, Batton and Lewis, MFCU responds that it presented evidence that the board's function was not to review underwriting and that Lewis testified that he never informed the Board that these loans were being made in violation of MFCU's policies, that his department had insufficient staff or that training was inadequate.

As discussed in greater detail in the Court's order denying the parties cross-motions for summary judgment, numerous issues of fact existed in this case as to whether MFCU's losses directly resulted from Lewis', Clouthier's, or Batton's "conscious disregard" for an "established" and "enforced" MFCU lending policy; whether these employee's alleged acts of intentional disregard were known to, acquiesced in, or ratified by MFCU's Board of Directors; and whether such acts resulted from inadequate training. These factual issues were for the jury to decide.

The jury was not required to believe the testimony of any of the witnesses, or to adopt the opinions of the parties' expert witnesses.

**\*3** Concerning CUMIS' argument that MFCU only presented circumstantial, as opposed to direct, evidence in support of certain aspects of its case, the Court notes that there is nothing intrinsically wrong with the jury relying on circumstantial evidence. Indeed, the Court gave the jury the following instruction, which was proposed by CUMIS:

> Jury Instruction No. 8–Circumstantial Evidence
>
> Facts can be proved by direct evidence from a witness or an exhibit. Direct evidence is evidence about what we actually see or hear. For example, if you look outside and see rain falling, that is direct evidence that it is raining.
>
> Facts can also be proved by indirect or circumstantial evidence. Circumstantial evidence is evidence that normally or reasonably leads to other facts. So, for example, if you see a person come in from outside wearing a raincoat covered with small drops of water, that would be circumstantial evidence that it is raining.
>
> Circumstantial evidence by itself, or a combination of circumstantial evidence and direct evidence, can be used to prove or disprove a proposition. You must consider all the evidence, both direct and circumstantial.

The Court carefully reviewed the record established at trial and finds that CUMIS's motion is without merit as reasonable jurors could have drawn differing conclusions from the entirety of the record evidence. *Brown,* 342 F.3d at 626; *Ridgway,* 114 F.3d at 97. It was for the jury to consider the credibility of the witnesses and the conflicting evidence, and the Court finds that the jury's verdict could have reasonably been reached on this record. Accordingly,

CUMIS' motion for a judgment as a matter of law is hereby DENIED, with prejudice.

### B. MOTION FOR NEW TRIAL

Like a motion for a judgment as a matter of law, a motion for a new trial under Federal Rule of Civil Procedure 59 is directed to the district court's discretion. *Denhof v. City of Grand Rapids,* 494 F.3d 534, 543 (6th Cir.2007). A motion for a new trial may be premised on grounds that include the verdict is against the weight of the evidence or the movant was not given a fair trial. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). Even in diversity cases, the district court applies federal law in deciding a motion for a new trial. *Ridgway, supra,* 114 F.3d at 98. The court should deny a motion for a new trial if the verdict was reasonably reached. *Id.* As discussed above, CUMIS claims that it is entitled to a new trial for eight separate reasons:

**1. Verdict Against The Weight Of The Evidence**

CUMIS incorporates its arguments from its motion for a judgment as a matter of law into this portion of its motion for a new trial. CUMIS' motion for a new trial based upon the verdict being against the weight of the evidence is denied for the same reasons the Court denied CUMIS' motion for a judgment as a matter of law, above. The Court finds that the jury reasonably reached its verdict in this matter.

**2. MFCU's Argument That CUMIS Had A Right To Audit MFCU**

**\*4** This portion of CUMIS' motion actually raises two separate, but related, arguments: (a) that MFCU argued —in violation of the Court's ruling on CUMIS' motion in limine no. 13—that CUMIS had a right to audit or investigate MFCU's lending policies and that CUMIS did, in fact, review MFCU's policies; and (b) that MCFU's counsel improperly referred to certain "checklists" that were not ultimately introduced into evidence at trial.

As to CUMIS' first argument, the Court finds that CUMIS reads the scope of relief requested by motion in limine no. 13 too broadly. That motion stated:

> MFCU's claim for coverage under the Bond is based on the alleged conduct of three principals, Mike Lewis, Joyce Clouthier and Kathleen Batton. MFCU contends that the three principals failed to faithfully perform their trust and, in so doing, caused the losses on the loans at issue in this case. The Court should enter an order in limine barring MFCU from making arguments or attempting to introduce evidence that its claim for coverage is based on the conduct of any person other than the three principals, Lewis, Clouthier and Batton.
>
> WHEREFORE, CUMIS respectfully requests an order in limine barring testimony, evidence or references to a

claim for coverage based on the conduct of any person other than the three principals, Lewis, Clouthier and Batton.

In response to this motion, MFCU stated that it had never suggested that it would base its claim on the conduct of anyone other than these three individuals. Consequently, the Court granted motion in limine no. 13 as unopposed. By granting this motion, the Court did not exclude evidence relating to CUMIS' right to conduct audits or investigations of MFCU's lending policies; nothing in CUMIS' motion in limine no. 13 discussed audits or investigations by CUMIS. Accordingly, CUMIS' argument that the Court improperly admitted evidence in violation of its prior ruling on motion in limine no. 13 is not well-taken.

As to MFCU's counsel's reference to certain "checklists" during opening statements, the Court finds that MFCU's opening statement was made in good-faith on the assumption that the checklists would be admitted into evidence. MFCU sought to introduce the checklists at issue into evidence through the deposition testimony of Tim Hamele, CUMIS' underwriter. The Court ultimately denied MFCU's request to read Hamele's deposition testimony. However, MFCU reasonably believed that such checklists would be admitted. Moreover, even if MFCU's counsel's reference to the checklists were improper, the Court specifically instructed the jury that attorney's statements are not evidence. *See* Jury Instruction No. 4 (Docket # 294). As such, any claim of prejudice by CUMIS is negated by the Court's instructions, as the jury is "presumed to follow correctly the instructions of the court as given." *United States v. Campbell,* 317 F.3d 597, 607 (6th Cir.2003).

### 3. Yarber's and Poulos' Tertimony Concerning Their Conversations With Lewis

*5 CUMIS next argues that the Court improperly admitted hearsay testimony of Alex Yarber, one of MFCU's expert witnesses. Specifically, CUMIS complains that the Court allowed Mr. Yarber to testify that Lewis told him to remove a particular indirect loan from the "exceptions" section of an audit report. CUMIS also argues that the Court improperly admitted hearsay testimony from Michael Poulos, MFCU's CEO. Specifically, CUMIS complains that the Court permitted Mr. Poulos to testify that Mr. Lewis did not inform him until January 2004 that Lewis had not been monitoring the loans at issue. CUMIS claims that the admission of this hearsay testimony substantially prejudiced CUMIS and affected the outcome of the trial.

As to Yarber's testimony, MFCU responds that this testimony was offered in support of MFCU's position that information was not being given to MFCU's Board and that such testimony is not hearsay, because it was not offered for the truth of what Lewis was saying to Yarber. Rather, MFCU argues that Lewis' statement to Yarber constituted an instruction, and is evidence that Lewis' interference prevented MFCU's CEO (Poulos) and MFCU's Board from learning of significant lending policy violations as early as October 2003. As to Poulos' testimony, MFCU responds that this testimony was also not offered for the truth of Lewis' claim that he had not been monitoring the lending program. Rather, MFCU argues that Poulos' testimony was offered only to prove that Poulos did not learn of Lewis' failure to monitor the program under January 2004.

Whether to admit or exclude evidence is in the district court's discretion. *Williams v. General Motors Corp.,* 18 Fed. Appx. 342, 344–345 (6th Cir.2001) (*citing Muzquiz v. W.A. Foote Mem. Hosp., Inc.,* 70 F.3d 422, 428 (6th Cir.1995)). In reviewing a motion for a new trial premised on an erroneous admission of evidence, the Court will "view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative value and its minimum reasonable prejudicial value." *Williams,* 18 Fed. Appx. at 345 (*quoting Muzquiz,* 70 F.3d at 428). Even if a trial court abuses its discretion in admitting evidence, a new trial should not be granted unless a "substantial right of the party is affected." *Id.* (*citing* Fed.R.Evid. 103(a), *Slayton v. Ohio Dep't of Youth Servs.,* 206 F.3d 669, 677 (6th Cir.2000), and *Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 382 (6th Cir.1997)). An error in the admission or exclusion of evidence does not warrant a new trial unless "the evidence would have caused a different outcome at trial ." *Tompkin v. Phillip Morris USA, Inc.,* 362 F.3d 882, 891 (6th Cir.2004) (*quoting Morales v. Am. Honda Motor Co.,* 151 F.3d 500, 514 (6th Cir.1998)). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *United States v. Chambers,* 441 F.3d 438, 455 (6th Cir.2006).

*6 The Court finds that MFCU's arguments concerning the admission of this testimony are well-taken and that the testimony of Yarber and Poulos were properly admitted. Furthermore, even if this testimony were improperly admitted, the admission of this testimony did not affect a "substantial right" of CUMIS, warranting a new trial. *See Slayton, Morganroth, supra.* Also, the Court is not of the opinion that the exclusion of this purported hearsay testimony would have resulted in a verdict in CUMIS' favor (i.e. "caused a different outcome at trial"). As such, CUMIS would not entitled to a new trial due to the admission of this testimony, even if the Court were convinced that it improperly admitted this testimony. *See Tompkin, supra.*

### 4. CUMIS' Proposed Verdict Form

CUMIS next complains that the Court used a general verdict form, rather than CUMIS' proposed special verdict form under Fed.R.Civ.P. 49(a) or a general verdict form with interrogatories under Rule 49(b). The Sixth Circuit has made it clear that the Court has broad discretion in issuing a general verdict form to the jury. *See Workman v. Frito–Lay, Inc.,* 165 F.3d 460, 465 (6th Cir.1999) (holding that the decision to use a general verdict form, a special verdict form, or a general verdict form with special interrogatories is within the sound discretion of the trial court). CUMIS does not cite to any legal authority showing that the general verdict form and the jury instructions used in this matter, taken together, were "confusing, misleading and prejudicial." *Hostetler v. Consol. Rail Corp.,* 123 F.3d 387, 393 (6th Cir.1997). As such, the Court finds that CUMIS is not entitled to a new trial because the Court used a general verdict form, as opposed to CUMIS' preferred special verdict form.

### 5. Evidence Of The Romantic Relationship Between Clemens and Lewis

CUMIS next argues for a new trial on the ground that the Court improperly admitted evidence of a romantic relationship between Hillary Clemens and Michael Lewis. This too offers no valid ground for a new trial. The Court already ruled on the admissibility of this evidence. CUMIS' motion in limine no. 6 (Docket # 246) asked the Court to rule evidence of this relationship inadmissible; the Court denied CUMIS' motion (Docket # 285). CUMIS' present motion does not raise any additional support for the purported inadmissibility of this evidence, other than what it set out in its initial motion concerning this issue. The Court stands by its prior order and declines CUMIS' request to reconsider its earlier ruling.

Moreover, even if the Court were inclined to overturn its prior ruling concerning the admissibility of this evidence, the admission of this evidence was not "sufficiently prejudicial" to CUMIS so as to warrant a new trial. Likewise, the Court finds that the exclusion of all evidence concerning a romantic relationship between Clemens and Lewis would not have altered the outcome of the trial. *See Slayton, Morganroth & Tompkin, supra.*

### 6. Time Limitations On Trial

*7 CUMIS next argues that the Court's order permitting each side a maximum of 22 hours to try their case significantly prejudiced CUMIS. Specifically, CUMIS argues that it required approximately a month to adequately present its case. As the outset, the Court notes that CUMIS did not even exhaust all of its allotted 22 hours, nor was there a request made during the course of the trial for more time. Thus CUMIS' complaint that the time-limitations severely prejudiced it appears disingenuous. The Court has broad discretion in establishing reasonable time limits on this trial. *See United States v. Reaves,* 636 F.Supp. 1575 (E.D.Ky.1986) (Fed.R.Evid. 403 and 611(a) provides the court with inherent power to control its docket, including the imposition of reasonable time limits on trials). CUMIS' motion for a new trial argues that if it had more time, it would have called another eight witnesses. However, a mere desire to call additional witnesses, without more, does not establish unfairness or prejudice. For its part, MFCU might have called additional witnesses if it had been given unlimited time to present its case. There is no reason to presume that additional time would have benefitted CUMIS. Similarly, the week-long hiatus during trial did not severely prejudice CUMIS, so as to warrant an entirely new trial in this matter.

Finally, during closing argument, CUMIS' counsel made the following statement to the jury: "Now for very good reasons, the Court placed a 22 hour time limit on each side, or we would have kept you here for months, and you wouldn't want that." Tr. of Defendant's Closing Argument, p. 112. Having acknowledged to the jury that the Court limited each side to 22 hours "for very good reasons," CUMIS' cannot now be heard to complain that the Court's time limits severely prejudiced it. CUMIS is

not entitled to a new trial based upon the Court's time-limitations on trial.

### 7. MFCU's Closing Argument

CUMIS next complains about an analogy that MFCU's counsel used during closing arguments. Specifically, MFCU's counsel analogized the Credit Union Bond at issue to a homeowner's insurance policy, and argued that CUMIS' denial of coverage based on purportedly inadequate safeguards was akin to an insurer's denial of coverage on a homeowner's policy due to inadequate door locks and other security. CUMIS objected to the use of this analogy, as an improper appeal to the jury's sympathy, self-interest and passion. At trial, the Court considered CUMIS' objection to MFCU's counsel's analogy, and overruled CUMIS' objection. The Court stands by its ruling during trial.

First, even if MFCU's analogy were somehow inappropriate, this analogy would not be considered sufficiently prejudicial so as to merit a new trial. In determining whether there is a reasonable probability that the verdict of a jury has been influenced by improper conduct, warranting a new trial, the Court must examine, on a case-bycase basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the Court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself. See *City of Cleveland v. Peter Kiewit* Sons' Co., 624 F.2d 749, 756 (6th Cir.1980). Here, the analogy used by MFCU's counsel consumed little more than one page in a transcript of argument that exceeded one hundred pages; the analogy followed a trial that spanned three weeks.

*8 Moreover, even where closing argument does rise to the level of misconduct, the misconduct is not prejudicial unless it is "so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Lynch,* Nos. 85–5171, 85–5196, 85–5217, 1986 WL 17300 (6th Cir. July 8, 1986) (citing *United States v. Thomas,* 728 F.2d 313, 320 (6th Cir.1984)); *Matthews,* 871 F.2d at 278 ("Not every improper or poorly supported remark made in summation irreparably taints the proceedings"). Here, there is no indication that MFCU's analogy permeated the entire atmosphere of the trial or otherwise even influenced the jury. See *Bridgeport Music, Inc. v. Justin Combs Publishing,* 507 F.3d 470 (6th Cir.2008) (even where closing argument appealed to local bias and to defendant's corporate wealth, new trial properly denied. "In the context of the entire closing argument and trial, the comments of plaintiffs' counsel were not sufficiently prejudicial to warrant a new trial"); *United States v. Shalash,* 108 F. App'x 269 (6th Cir.2004) (improper comments in closing argument do not warrant new trial where they were isolated and where evidence otherwise supports the verdict).

Finally, even if prejudice otherwise could be found in the analogy at issue, any prejudice was cured by the Court's specific instruction to the jury that attorney comments were *not* evidence and that only evidence was to be considered. See *United States v. Smith,* 918 F.2d 1551, 1562 (11th Cir.1990) ("Because statements and arguments of counsel are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered"). CUMIS is not entitled to a new trial based upon the analogy used by MFCU's counsel during closing arguments.

### 8. Cumulative Error

Finally, CUMIS argues that, even if no single error would be sufficiently prejudicial to warrant a new trial, the cumulative effect of the purported errors identified above warrant a new trial. The cumulative-error doctrine applies if the combination of errors was so severe as to deny the movant a fundamentally fair trial. *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir.1988).

As discussed in the sections above, CUMIS has identified no error in the trial of this action which would warrant a new trial. Accordingly, there is no "cumulative effect," of error, and CUMIS' motion for a new trial based upon a purported cumulative effect of errors is likewise denied. *United States v. Trujillo,* 376 F.3d 593, 614 (6th Cir.2004) (even where an error had been found, argument rejected where appellant "failed to identify any other error committed by the district court which could be combined with this harmless error in order to support a finding of cumulative error and which would rise to the level of fundamental unfairness") (citing *United States v. Rivera,* 900 F.2d 1462, 1471 (10th Cir.1990) (holding that "a cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors"). Accordingly,

*9 CUMIS' motion for a new trial is hereby DENIED, with prejudice.

### C. MOTION TO AMEND JUDGEMENT

CUMIS additionally moves to amend the judgment entered on January 22, 2009 (Docket # 291), which read "IT IS ORDERED AND ADJUDGED that Plaintiff(s) recover of Defendant(s) the sum of $5,050,000.00 *with interest at the rate provided by law*" (emphasis added). CUMIS urges the Court to enter a Judgment which specifically sets forth the amount of interest awarded to MFCU. At the outset, the Court notes that CUMIS' motion reiterates arguments advanced in a previously filed a motion in limine (Docket # 252), which requested an order limiting an award of penalty interest under MCL § 500.2006 to circumstances under which the Court found that MFCU had proved that its claim was not "reasonably in dispute." The Court denied CUMIS' motion (Docket # 281), and ruled that "a first party insured is entitled to 12 percent penalty interest if a claim is not timely paid, irrespective of whether the claim is reasonably in dispute." The Court will not revisit this prior ruling.

The parties raise three additional issues as regards the Court's interest award, namely:

(1) is MFCU entitled to recover *both* penalty interest (MCL § 500.2006) and statutory interest (MCL § 600.6013), or does the penalty interest award *offset* the statutory interest award?

(2) when does the penalty interest begin to accrue? (60 days after the initial "proof of loss," or after each individual "loss/loan charge off date"); and

(3) when does interest stop accruing? (at the time of judgment, or until payment is made).

As to the first issue, CUMIS cites two Michigan Court of Appeals cases—*McCahill v. Commercial Union Ins. Co.,* 179 Mich.App. 761, 446 N.W.2d 579 (1989); *Angott v. Chubb Group of Ins.,* 270 Mich.App. 465, 717 N.W.2d 341 (2006)—for the proposition that a penalty interest award under MCL § 500.2006 should be offset by any other award of interest. Specifically, *McCahill* and *Angott* held that MCL § 500.2006(4) mandates that any penalty interest awarded under that section "shall be offset by any award of interest that is payable by the insurer pursuant to the award."

MFCU's response brief does not directly address *McCahill* and *Angott,* but instead points to a Michigan Supreme Court decision—*Wood v. Detroit Automobile Inter–Ins. Exchange,* 413 Mich. 573, 321 N.W.2d 653 (1982)—and an unpublished decision from this Court. The cases cited by MFCU concern interest awards under Michigan's No–Fault Act (which does not contain the offset requirement of MCL § 500.2006(4)). As such, the cases cited by MFCU are inapposite. Indeed, *McCahill* specifically distinguished MCL § 500.2006 from Michigan's No–Fault Act.

State law governs questions of prejudgment interest in diversity cases. *FDIC v. First Heights Bank, FSB,* 229 F.3d 528, 542 (6th Cir.2000). Concerning interpretations of state law, this Court looks to decisions of state appellate courts. *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995) (holding that in diversity cases if "the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from 'all relevant data,' " which includes "state appellate court decisions" and "the state's supreme court dicta") (citations omitted). MFCU has failed to proffer convincing argument or precedent to displace the holdings of *McCahill* and *Angott.* As such, this Court holds that any penalty interest awarded to MFCU under MCL § 500.2006 shall be offset by any other award of interest that is payable by CUMIS.

*10 As to the parties' second and third disputed issues concerning interest, the Court finds that these matters require further briefing and argument. As such, and consistent with the framework set forth above, the parties are instructed to file additional briefing containing detailed competing interest calculations. Specifically, CUMIS is directed to submit its proposed interest calculation within 14–days of this order; MFCU then has 7–days after service of CUMIS' calculation to file its proposed calculation.

The Court notes that MFCU previously filed an interest calculation (Docket # 300), however this calculation did not appropriately offset penalty interest by other interest awarded, consistent with the Court's ruling above. Furthermore, MFCU's prior calculation utilized a cost award of $48,584.95, which is too high, as discussed in greater detail below. The parties' interest calculations should *specifically state* (i.e. give the Court a dollar amount, not simply a framework for how to calculate

an amount) the amount of interest they believe is appropriate, the reasoning behind their calculation and citations to any applicable case law in support of their calculation. The parties' interest calculations should not attempt to reargue issues previously ruled upon by the Court.

The Court also notes that the parties entered an "Agreed Stipulation" (Docket # 311) on March 20, 2009, whereby CUMIS tendered a check to MFCU in the amount of $7,930,684.07. This check was accompanied by a cover letter, which stated, among other things: "CUMIS tenders this check to stop the running of any and all interest due to MFCU as of the date of this letter." MFCU disagreed that the tender of CUMIS' check would have that stated effect and, for that reason, rejected the tender. As part of the supplemental briefing discussed above, the parties are further instructed to: (1) inform the Court as to how the parties calculated interest for purposes of the March 20, 2009 Agreed Stipulation; and (2) present their arguments as to what effect, if any, the Agreed Stipulation should have on the Court's ultimate interest award. Accordingly,

CUMIS' motion to alter/amend the judgment as concerns the Court's interest award is hereby DENIED, without prejudice.

## II. MFCU's MOTION CONCERNING TAXED COSTS

MFCU filed a motion to review the action of the taxation clerk. Specifically, MFCU's motion requests an additional $4,975.05 in court reporter fees and $18,327.94 in copying fees. CUMIS did not file a response to MFCU's motion.

MFCU's original bill of costs (Docket # 299) sought $48,584.94 in costs; the Clerk only awarded MFCU $12,784.04 in costs (Docket # 301). The Clerk denied MFCU's request to tax $21,719.73 in copying costs, as such costs are not taxable absent a court order. *See* Bill of Costs Handbook § II(F). MFCU's present motion requests such an order, and reduces ("in the spirit of cooperation") the amount of copying costs it is seeking to $18,327.94.

*11 Concerning court reporter fees, MFCU's original bill of costs requested reimbursement for $23,966.45; the Clerk allowed only $11,140.10. The Clerk rejected over half of MFCU's requested court reporter costs because, among other things, MFCU failed to submit proper invoices/receipts and/or failed to demonstrate that certain transcripts were "necessarily obtained for trial," as required by 28 U.S.C. § 1920. MFCU's present motion presents supplemental invoices/receipts and argument concerning why certain transcripts were necessarily obtained for trial.

Rule 54(d) (1) of the Federal Rules of Civil Procedure provides: "[u]nless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees-should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1). The Sixth Circuit has held that Rule 54(d)(1) "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. Am. Hosp. Supply Corp.,* 786 F.2d 728, 730 (6th Cir.1986). Our corresponding local rule states: "A party seeking costs must file a bill of costs no later than 28 days after the entry of judgment. The clerk will tax costs under Fed.R.Civ.P. 54(d)(1) as provided in the Bill of Costs Handbook available from the clerk's office and the court's web site." E.D. Mich. LR 54. 1.

There is no dispute that MFCU prevailed in this action. As the prevailing party, MFCU presumed entitled to recover its costs. The Court concludes that CUMIS has failed to overcome the presumption of an award of costs in this case. The Court also finds that the supplemental amounts requested by MFCU in its motion are reasonable. However, the $387.95 cost for the deposition transcript of Valerie Lentz shall not be awarded, as the Clerk's taxed bill of costs does not appear to reject this cost. Therefore, the Court will tax additional costs in the amount of $4,587.10 (court reporter fees) and $18,327.94 (copying fees). The total amount of taxed costs in this matter is thus $35,699.08 ($4,587.10 [additional court reporter costs] + $18,327.94 [copying costs] + $12,784.04 [previously taxed costs] ). Accordingly,

IT IS ORDERED that MFCU's motion concerning taxed costs is GRANTED, in part.

## III. CONCLUSION

For the reasons set forth above, CUMIS' motions for judgment as a matter of law and/or for a new trial are hereby DENIED, with prejudice. CUMIS' motion to alter or amend the judgment is hereby DENIED, without prejudice. MFCU's motion to review action of taxation clerk is hereby GRANTED, in part.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1664088

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.