# EXHIBIT A

2017 WL 2471265
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007.
See also U.S.Ct. of App. 6th Cir. Rule 32.1.
United States Court of Appeals,
Sixth Circuit.

NATALIE REESER, Plaintiff-Appellant,
v.
HENRY FORD HOSPITAL, Defendant-Appellee.

Case No. 16-2303
|
June 08, 2017

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT
OF MICHIGAN

BEFORE: BOGGS, MOORE, and McKEAGUE,
Circuit Judges.

## OPINION

McKEAGUE, Circuit Judge.

**\*1** Plaintiff Natalie Reeser appeals the district court's
order granting in part and denying in part her motion
for attorneys' fees. Reeser sought $315,133.32 in fees
pursuant to Michigan's Whistleblowers' Protection Act
(WPA), MICH. COMP. LAWS § 15.364, but the district
court determined that she was only entitled to $10,000.
Her primary argument on appeal is that the district court
did not follow the correct process required by Michigan
law when it calculated this fee. We agree. As recently
confirmed by the Michigan Supreme Court in *Pirgu v.
United Services Automobile Ass'n*, 884 N.W.2d 257 (Mich.
2016), when Michigan statutes, such as the WPA, entitle
litigants to recover a "reasonable attorney fee," courts
are required to follow a particular three-part framework
when awarding the fee. This mandatory framework was
not followed here. Because this oversight constituted an
abuse of discretion, we vacate the district court's order and
remand for recalculation in line with *Pirgu*.

Additionally, while this appeal was pending, Henry Ford
Hospital filed a motion to strike portions of Reeser's
appellate briefing that it claims raised new arguments not
made in the proceedings below. We deny this motion and
order Henry Ford's counsel to show cause within 14 days
why it should not be sanctioned under 28 U.S.C. § 1927.

I

Natalie Reeser and Henry Ford Hospital have been
embroiled in contentious litigation for approximately
three years. Reeser brought federal and state retaliatory-
discharge claims against Henry Ford after it fired her
for leaving the clinic, where she worked as a laboratory
assistant, unattended during the lunch hour. According
to Reeser, she was fired for reporting Henry Ford to
state regulatory authorities after it forced her to work
through lunch without pay. Reeser filed the instant suit,
alleging that Henry Ford unlawfully retaliated against her
in violation of the Fair Labor Standards Act (FLSA), 29
U.S.C. § 215(a)(3). She also sought state-law relief under
the WPA, which prohibits an employer from discharging
an employee for "report[ing] ... a violation or a suspected
violation of a law ... [of] the United States to a public
body." MICH. COMP. LAWS § 15.362.

After a hostile discovery process that included more than
fifteen non-dispositive motion filings, the parties went to
trial. Reeser sought $730,000 in economic and emotional
distress damages. After seven days, the jury returned a no-
cause verdict on Reeser's FLSA claim, but found in her
favor on the WPA retaliation claim. It awarded her actual
damages of $3,200 for lost wages and fringe benefits.

Reeser then filed a motion for attorneys' fees pursuant
to the WPA, which provides a court with discretion to
award "reasonable attorney fees ... if the court determines
that the award is appropriate." MICH. COMP. LAWS §
15.364. Reeser requested $315,133.32. She arrived at this
figure by multiplying 1,189.7 hours expended by hourly
rates ranging from $250 to $300 for the four attorneys
involved. Reeser primarily blamed Henry Ford's hostile
tactics for the large number of hours accumulated.

**\*2** The district court granted Reeser's motion in part.
First, it concluded that Reeser was entitled to attorneys'
fees under the statute. Second, it determined that Reeser
was entitled to a "modest" fee of $10,000. The district

Case 2:14-cv-11916-GCS-SDD  ECF No. 145-1, PageID.5147  Filed 07/06/17  Page 3 of 6
NATALIE REESER, Plaintiff-Appellant, v. HENRY FORD..., --- Fed.Appx. ---- (2017)

2017 WL 2471265

court did not indicate how it arrived at this specific figure, although it justified awarding a substantially lower amount than Reeser requested by referring to certain factors delineated by the Michigan Supreme Court in *Wood v. Detroit Auto. Inter-Ins. Exch.*, 321 N.W.2d 653 (Mich. 1982) ("the *Wood* factors"). The district court did not explicitly discuss each *Wood* factor, finding that "the modest results achieved and the unnecessary protraction of the litigation outweigh[ed] the other[s]." R. 129 at 4, 7, PID 4599, 4602 (emphasizing that Reeser's ultimate recovery of $3,200 was less than 0.5% of the $730,000 she sought at trial). It also did not calculate a lodestar, instead concluding that Reeser's claimed hours "w[ere] not reasonable" and that the hourly rates she proposed were "irrelevant." *Id.* at 4, PID 5499. This appeal followed.


## II

"Under both Michigan and federal law, a trial court's award of attorney fees is generally reviewed under the abuse-of-discretion standard." *Bailey v. Scoutware*, 599 F. App'x 257, 258 (6th Cir. 2015) (quoting *Shields v. Gov't Emps. Hosp. Ass'n*, 490 F.3d 511, 514–15 (6th Cir. 2007)). A trial court abuses its discretion when it makes an error of law. *Pirgu*, 884 N.W.2d at 260.

When a state statute authorizes the grant of attorneys' fees, state law governs both whether the fees should be awarded and the amount of those fees. *See Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1238 (6th Cir. 1984) ("Federal courts must generally apply state law regarding attorney fees to a state law claim pendent to a federal claim.") (citing *Aleyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975)); *Bailey*, 599 F. App'x at 258 (applying Michigan law to a review of the reasonableness of attorneys' fees awarded under the WPA). Because the WPA is the source of authority for Reeser's award, Michigan law applies to the calculation of that fee.


## A

Historically, Michigan courts have applied a multi-factor test when calculating reasonable attorneys' fees. *See Wood*, 321 N.W.2d at 661. However, in 2008 the Michigan Supreme Court eschewed this flexible method in favor of a more structured approach.

In *Smith v. Khouri*, the Michigan Supreme Court reviewed the reasonableness of attorneys' fees awarded under the state's case-evaluation statute, MICH. COMP. LAWS § 2.403(O). 751 N.W.2d 472, 479 (Mich. 2008). In doing so, it provided a three-part framework for lower courts to follow. Step 1: "[A] trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services." *Id.* Step 2: "This number should be multiplied by the reasonable number of hours expended in the case." *Id.* The product of these two figures— i.e., the lodestar—"serves as the starting point." Step 3: "Thereafter, the court should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate." *Id.* at 479–80. This last step entails considering the *Wood* factors previously delineated by the Michigan Supreme Court as well as those listed in Rule 1.5(a) of the Michigan Rules of Professional Conduct (MRPC). The trial court in *Smith* did not follow this prescribed framework, as it failed to determine a reasonable hourly rate for each attorney. The Michigan Supreme Court held that this was an abuse of discretion. *Id.* at 475, 481.

In 2015, our own court applied the *Smith* framework to a review of attorneys' fees awarded under the WPA— the same statute at issue here. *See Bailey*, 599 F. App'x at 257 ("Under Michigan law, when calculating a fee award, the trial court *must* first determine the hourly fee ... and multiply that fee by the number of hours reasonably expended in the case. The court *must* then consider whether an adjustment is warranted based on other specified factors ....") (emphases added) (citing *Smith*, 751 N.W.2d at 478–80).

 **\*3** After *Smith*, some Michigan Courts of Appeals grew uncertain as to whether its attorneys' fees framework was applicable beyond the case-evaluation context; however, in June 2016, the Michigan Supreme Court decided *Pirgu v. United Services Automobile Ass'n* and resolved this uncertainty. In *Pirgu*, the Michigan Supreme Court confirmed our earlier belief that the *Smith* framework applied to all fee-shifting statutes that provided for "*a reasonable fee.*" *Pirgu*, 884 N.W.2d at 263 ("The operative language triggering the *Smith* analysis is the Legislature's instruction that an attorney is entitled to *a reasonable fee.*"). It also reiterated that following this framework was not optional for lower courts: "a trial court *must* begin its analysis" by calculating the two figures that comprise

the lodestar and then "*must consider and briefly discuss on the record* the remaining *Wood* factors and the factors in MRPC 1.5(a)." *Id.* (emphasis added). Since many of these factors overlapped, the *Pirgu* court distilled them into a single, eight-factor list. *See id.* at 264. Although trial courts were required to consider *all* eight factors, they were also permitted to consider other relevant factors as well. *Id.* "In order to facilitate appellate review," trial courts were directed to "briefly discuss ... each of the factors [ ] on the record and justify the relevance and use of any additional factors." *Id.* at 264–65.

As in *Smith*, the *Pirgu* court found the trial court abused its discretion by not following this framework when it awarded attorneys' fees under Michigan's no-fault insurance act: "The trial court erred by not starting its analysis by multiplying a reasonable hourly rate by the reasonable number of hours expended." *Id.* at 265. Moreover, it erred in "primarily relying on only one [*Wood*/MRPC] factor—the amount sought and the results achieved—and failing to briefly discuss its view of the other factors." *Id.*

### B

In this case, the district court did not follow *Smith* and *Pirgu* when it awarded Reeser $10,000 in attorneys' fees. Instead, it relied on Michigan's outdated, multi-factor approach under *Wood*. This was error. The WPA contains the *Smith* framework's triggering language: it provides courts with discretion to award "*reasonable* attorney fees." MICH. COMP. LAWS § 15.364 (emphasis added); *Pirgu*, 884 N.W.2d at 263.

The district court's principal error was in failing to follow the first two steps of the *Smith* framework, that is, in failing to calculate the lodestar. As to Step 1, the district court did not calculate a reasonable hourly rate for each of Reeser's four attorneys, finding instead that "the court's determination of an appropriate hourly fee is irrelevant here because [Reeser's] limited recovery necessitates a significant fee reduction." R. 112 at 4, PID 4599. As to Step 2, the district court did not calculate the reasonable number of hours expended by Reeser's attorneys, stating only that the 1,189.7 hours proffered "was not reasonable given the weakness of [Reeser's] damages evidence and the size of her ultimate recovery." *Id.*

But *Smith* required the district court to calculate a lodestar in order to establish a baseline figure from which to adjust downwards based on Reeser's limited recovery. Without such a baseline, courts are left with nearly unfettered discretion to award any seemingly arbitrary amount—a result the Michigan Supreme Court expressly sought to prohibit. Moreover, Michigan law provides no exceptions to calculating a lodestar, even if, as the district court found here, the results achieved are disproportionate to the hours expended. *See Pirgu*, 884 N.W.2d at 1261 (holding that "a trial court *must* begin its reasonableness analysis [by calculating the lodestar]") (citing *Smith*, 751 N.W.2d at 479). While the district court was not obligated to accept Reeser's proposed number of hours, it was required to formulate a reasonable alternative.

Finally, as to Step 3, the court appeared to consider at most only four of the eight *Wood*/MRPC factors. *Pirgu*, however, dictates that a district court consider "*all* of the [ ] *Wood* and MRPC 1.5(a) factors." *Id.* at 264. Here, the district court made the same misstep as the trial court in *Pirgu* by relying primarily on one factor—the amount in question and the results obtained—which was erroneous. *Id.* at 264, 265; *see also Kennedy v. Robert Lee Auto Sales*, 882 N.W.2d 563, 568 (Mich. Ct. App. 2015) (reversing the trial court's award of fees where it "focused myopically on the amount obtained by plaintiff"). Although the district court was correct that Reeser's jury verdict of only $3,200 —compared to the $730,000 sought—may undoubtedly be relevant, this factor comes into play only after the lodestar is calculated, and is considered alongside seven other factors. This single factor alone cannot serve as a substitute for dispensing with the *Smith* framework altogether.[1]

**\*4** In urging us to uphold the $10,000 award, Henry Ford primarily argues that the *Smith* framework does not apply and that, even if it does, the result a party obtains at trial is the most critical factor and can exclusively justify lowering an award. These arguments are unavailing. As to the former, our circuit had already applied the *Smith* framework to the WPA in 2015, and the Michigan Supreme Court's language in *Pirgu* removed any lingering doubt as to its applicability. Furthermore, Henry Ford cites exclusively federal law in support of its latter argument. But, as even it recognizes in its brief, Michigan law applies here. *See* Appellee Br. at 30 n.2. And while federal law may perhaps be more favorable

to Henry Ford's position, Michigan has "rejected the federal lodestar method," instead preferring a stricter, more comprehensive analysis. *See Smith*, 751 N.W.2d at 483.

The Michigan Supreme Court implemented and reaffirmed the *Smith* framework with the intent that it would "lead to greater consistency in awards." *Id.* at 479. And as that court has reiterated, a failure to follow it amounts to an abuse of discretion. Because the district court did not calculate a lodestar nor consider all eight *Wood*/MRPC factors—both of which are required by *Smith* and *Pirgu*—it abused its discretion in calculating Reeser's $10,000 fee award.[2]

### III

Next, Henry Ford filed a motion while this appeal was pending to strike parts of Reeser's briefing referring to the MRPC 1.5(a) factors, *Pirgu*, and two other court cases discussing various reformulations of the *Wood*/MRPC factors. A motion to strike may at times be warranted, for example, in asking the court to strike extraneous materials from the appellate record. *See Bailey*, 599 F. App'x at 257–58. But the motion is not a tool to strike words, sentences, or even arguments from an opponent's brief. *See Redwood v. Dodson*, 476 F.3d 462, 471 (7th Cir. 2007). Using the motion in this fashion "waste[s] everyone's time," "increase[s] the amount of reading the merits panel must do," and only serves "to aggravate the opponent." *Id.*

Yet this is precisely what Henry Ford has done. The appropriate tool for Henry Ford to have contested Reeser's allegedly new arguments was through its own responsive briefing. *Id.* It failed to utilize any of its 45-page merits brief for this purpose. Seeking to circumvent this oversight by way of its later filed motion to strike was improper. And it is worth noting that Henry Ford used the motion in a similarly inappropriate fashion below, where it filed three separate motions to strike specific claims from Reeser's complaint. The district court, in substantially denying each of these motions, concluded that Henry Ford should have raised its arguments in its earlier motion for summary judgment. *See* R. 83 at 88, PID 2893.

Moreover, what Henry Ford claims are new *arguments* are at most citations to new *authorities* unfavorable to

its position. The argument Reeser raised below, and the one before us on appeal, are the same: that she should be entitled to reasonable attorneys' fees under Michigan law. And to the extent Reeser cites new authorities, there is no rule prohibiting a party from doing so. *See Costantino v. TRW, Inc.*, 13 F.3d 969, 981 n.13 (6th Cir. 1994). In fact, "a new citation to relevant, binding authority is as welcome on appeal as in the court below." *Id.* For example, asking us to ignore *Pirgu*, a recent, binding authority from the state's high court, is akin to asking us to shirk our duty to say what the law is, and if anything, signals Henry Ford's awareness of the weaknesses *Pirgu* exposes in its own case.

Besides being improper, we also find that Henry Ford's motion was disingenuous. Contrary to Henry Ford's assertions, Reeser explicitly asked the district court to consider the factors listed in "Rule 1.5(a) of the Michigan Rules of Professional Conduct" in her motion for attorneys' fees. R. 112 at 6, PID 3422. And the two other cases cited by Reeser to which Henry Ford objects are nothing more than examples of recent courts applying the same *Wood*/MRPC factors that Reeser mentioned below. *See Grow v. WA Thomas Co.*, 601 N.W.2d 426 (1999); *Hemlock Semiconductor Corp. v. Solarworld Indus. Sachsen GmbH*, No. 13-CV-11037, 2016 WL 6471192 (E.D. Mich. Nov. 2, 2016).

**\*5** In her response to the motion to strike, Reeser asks us to sanction Henry Ford's counsel under 28 U.S.C. § 1927, specifically, to order that he reimburse her attorneys for the time spent having to respond to this motion. Section 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The purpose of § 1927 sanctions is "to deter dilatory litigation practices and punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Sanctions may be appropriate when an attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Id.* No finding of bad faith is necessary, but something more than negligence or incompetence must be demonstrated. *Id.*

Although both parties are partly to blame for the acrimonious nature of this case, it seems that Henry Ford's counsel initiated much of the dilatory conduct. His continued improper use of the motion to strike and overall antagonistic behavior below, coupled with the frivolous allegations contained in his most recent motion to strike, convince us that sanctions may be warranted. Reeser's entire objective in filing this appeal was to be awarded more fees for the thousand-plus hours that her attorneys spent litigating this case—hours she claims were accumulated in large part due to Henry Ford's obstructionist tactics. Henry Ford's motion to strike certainly seems to support Reeser's theory. Accordingly, we order Henry Ford's counsel to show cause, pursuant to 28 U.S.C. § 1927, why he should not be sanctioned for filing the motion to strike and be required to pay Reeser's attorneys the fees associated with having to respond.

**IV**

For the foregoing reasons, we **VACATE** Reeser's award of attorneys' fees and **REMAND** the case to the district court for a recalculation based on *Pirgu v. United Services Automobile Ass'n*, 884 N.W.2d 257 (Mich. 2016). Additionally, we **DENY** Henry Ford's motion to strike and **ORDER** its counsel to show cause why he should not be sanctioned. Counsel will have 14 days to submit a response to the clerk of this court.

**All Citations**

--- Fed.Appx. ----, 2017 WL 2471265

Footnotes

1  The district court also considered an additional, non-*Wood*/MRPC factor in determining Reeser's fee award: Henry Ford's prior settlement offers. This was appropriate and the trial court may do so again on remand, as *Pirgu* states that a "trial court may consider any additional relevant factors." *Pirgu*, 884 N.W.2d at 264.

2  While the district court must follow the correct framework on remand, we express no opinion on the amount of the fee award that may be appropriate.

**End of Document**                                           © 2017 Thomson Reuters. No claim to original U.S. Government Works.