UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATALIE REESER,

          Plaintiff,

CASE NO. 14-CV-11916
HON. GEORGE CARAM STEEH

v.

HENRY FORD HEALTH SYSTEM,

          Defendant.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION
FOR ATTORNEY FEES (Doc. 112) and PLAINTIFF'S
SUPPLEMENTAL MOTION FOR ATTORNEY FEES (Doc. 145)**

    In this retaliatory discharge action, Plaintiff Natalie Reeser alleged she was terminated in retaliation for asserting her right to a paid lunch hour in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3), and the Whistleblower Protection Act ("WPA"), Mich. Comp. Laws §15.362. Following a seven day trial, the jury rendered a no cause verdict on her FLSA claim, but awarded Reeser $3,200 in economic damages on her WPA claim. Reeser then filed a motion for attorney fees in the amount of

$315,133.[1] The court granted the motion but awarded only $10,000 based on the meager nature of Reeser's recovery at trial. Reeser appealed, and the Sixth Circuit ruled that this court did not follow the correct procedure for determining fees and remanded the matter to this court for reconsideration in light of the methodology outlined in *Pirgu v. United Serv. Auto. Ass'n*, 499 Mich. 269 (2016). In addition, Reeser now seeks attorney fees for the time expended on her motion for attorney fees, response to Defendant Henry Ford Health System's ("Henry Ford") renewed motion for judgment and motion for post-judgment sanctions, and her appeal. The court addresses both motions below.

## I. Background

Reeser seeks attorney fees for the work of four attorneys from the law firm of Miller Cohen — two trial attorneys, Keith Flynn and Adam Graham, a senior partner, Richard Mack, and a former associate, Ada Verloren. In total, Reeser claims 1,189.70 hours of attorney time broken

---

[1] There appears to be an error in this amount. The correct amount may be $316,047.50. Adam Graham billed 460.65 hours at $250 per hour, but states that the total amount he billed is $114,248.32; however, when multiplying these two figures the amount is $115,162.50. The discrepancy appears to be explained by Graham's billing entry on March 2, 2016 when he billed just $3.60 per hour for 3.7 hours worked on a motion in limine, and the entry of March 3, 2016 when he billed $225.00 for .10 hours of work for drafting an email to his client. Based on these apparent clerical errors, the court shall use the $115,162.50 figure in this order which employs the $250.00 hourly rate for all of the hours he billed.

down as follows: Flynn, 628.60 hours at $275.00 per hour for a total of $172,865; Graham, 460.65 hours at $250.00 per hour for a total of $115,162.50; Verloren, 84.60 hours at $275 per hour for a total of $23,265; and Mack, 15.85 hours at $300.00 per hour for a total of $4,755. In support of her motion, Reeser's attorneys have submitted over 55 pages of billing records consisting of approximately 550 entries.

In her supplemental motion for attorney fees, Reeser seeks an additional $45,260 in fees for 173.75 hours billed by Graham and Flynn on plaintiff's motion for attorney fees and reply brief, and time spent on appeal. The amount requested is based on Flynn billing a total of 75.4 hours worked comprised of 72.9 hours billed at $275.00 per hour, and 2.5 hours billed at $250.00 on December 16, 2016 and February 28, 2017,[2] for a total amount billed of $20,672.50. Graham billed at the $250 hourly rate for 98.35 hours worked for a total of $24,587.50. In support of her supplemental motion, Reeser's attorneys have submitted ten pages of billing records consisting of nearly one hundred entries.

## II. Standard of Law

The first step in determining an award of attorney fees is to determine the reasonable hourly rate customarily charged in the locality for similar

---

[2] It is unclear why Flynn charged a lower hourly rate for these entries.

services. *Pirgu*, 499 Mich. at 281. The second step is multiplying "that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Id.* Once the court arrives at this figure, referred to as the lodestar amount, the court considers the non-exhaustive list of eight factors identified by the Michigan Supreme Court in *Pirgu*:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent.

*Id.* at 282.

### III. Analysis

The WPA provides the court with discretion to award "reasonable attorney fees . . . if the court determines that the award is appropriate."

- 4 -

Mich. Comp. Laws § 15.364. In response to Reeser's original motion for attorney fees, Henry Ford argues that this court should exercise its discretion and deny any award of attorney fees based on the fact that Reeser recovered less at trial than Henry Ford offered her to settle the case. The court previously determined that some award of attorney fees was appropriate, and the court does not revisit that decision here.

Henry Ford also argues that Reeser is not entitled to fees incurred in filing her motion for attorney fees or fees incurred on appeal. Specifically, Henry Ford argues Reeser was not successful on appeal because the matter was merely remanded to this court, and argues that the WPA does not allow for such a recovery. Reeser responds that she was successful on appeal, and these fees are allowed under Mich. Comp. Laws § 15.352, which provides the court with discretion to award reasonable attorney fees. The court agrees with Reeser that she was successful on appeal. Also, Michigan courts have allowed appellate attorney fees under Michigan's Civil Rights Act, Mich. Comp. Laws § 37.2802, *Schellenberg v. Rochester Mich. Lodge No. 2225 of Benev. & Protective Order of Elks of U.S.A.*, 228 Mich. App. 20, 56 (1998), and Michigan courts have held that case law interpreting § 37.2802 applies to claims brought under the WPA. *O'Neill v. Home IV Care, Inc.*, 249 Mich. App. 606, 612-613 (2002). The court

agrees with Reeser's assessment that she was successful on appeal and determines that it is within the court's discretion to award fees incurred in filing her motion for attorney fees and on appeal. The court determines that such fees are appropriate here. The court turns now to the question of what is an appropriate amount of fees.

**A.    Hourly Rate**

The first matter for the court is determining the proper hourly fee for Reeser's counsel. The rate must be determined based on "the reasonable hourly rate customarily charged in the locality for similar services." *Pirgu*, 499 Mich. at 281. The customary fee may be established "by testimony or empirical date found in surveys and other reliable reports" such as those published by "the State Bar of Michigan, as well as other private entities." *Smith v. Khouri*, 481 Mich. 531, 531-32 (2008). Reeser relies on the State Bar of Michigan's publication "2014 Economics of Law Practice Attorney Income and Billing Rate Summary Report" ("Summary Report"). This court finds her reliance on the Summary Report to be appropriate as "Michigan federal courts routinely use this publication as evidence of reasonableness in determining attorney's fees." *Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778, 783 (E.D. Mich. 2011). Reeser relies on reported fees based on location and type of practice, namely, employment law in Detroit, to support Mack's

hourly fee of $300, Graham's hourly fee of $250, and Verloren's and Flynn's hourly fee of $275. These fees fall between the 25th and 75th percentile.

Henry Ford opposes the hourly fees asserted on the grounds that Reeser should have based the hourly fee on the number of years the attorneys have been employed which would result in an alleged reduction of $75,329.42. Reeser responds that even if the hourly rate is based on years of service, the Summary Report supports the hourly fees relied upon by her attorneys. Having carefully reviewed the Summary Report, the court finds that the hourly fees charged by Reeser's attorneys, ranging from $250 to $300, are in conformity with those customarily charged in Detroit by attorneys practicing employment law. Thus, the court will use the figures supplied by Reeser's counsel as the proper hourly rate.

**B.     Reasonable Number of Hours**

The next matter for the court is determining the reasonable number of hours billed. In its initial motion for attorney fees, Reeser represented that it had incurred 1,189.7 hours in attorney time from the inception of the lawsuit until the jury rendered its verdict. In its supplemental motion for attorney fees incurred post-verdict, Reeser represents that her attorneys billed an additional 173.75 hours.

Henry Ford opposes the amount of hours billed as excessive because (1) time billed was exaggerated based on Reeser's failure to cooperate in discovery, (2) time billed was unnecessary in numerous instances, for example, Reeser's counsel billed over 24 hours to amend her Complaint to correct Defendant's name from Henry Ford Hospital to Henry Ford Health System, billed over ten hours to oppose Henry Ford's request for a four-day extension to file its motion for summary judgment, and billed 59 hours to oppose Henry Ford's motion for a forensics examination of her telephone which the Magistrate Judge granted, and (3) Reeser's counsel billed for time which is excessive, redundant, inconsistent, block billed and for clerical tasks.

Henry Ford points out numerous other examples of excessive billing. The court mentions a few of those instances here. Flynn and Graham billed 120.6 hours amounting to $31,570 in fees preparing their response to the motion for summary judgment including 23 hours spent preparing for oral argument. They also billed 178 hours or $47,850 in claimed attorney fees for "conferencing," "meeting," "discussing" or "stratergizing." The amounts billed were also duplicative; for example, Graham billed 7.0 hours, or $1,750 to attend Jill Hood's deposition, yet he was not the one deposing the witness. Henry Ford also objects to Plaintiff's counsel's practice of

block billing numerous entries without sufficient particularity for the court to assess whether the time billed was reasonable. Henry Ford alleges that Flynn and Graham billed 16 hours for clerical tasks amounting to claimed fees of $4,050. Henry Ford also alleges that Reeser's attorneys submitted 337 hours in vague time entries totaling $92,100. Furthermore, Henry Ford also claims that Verloren's claimed fees in the amount of $23,265 should be denied in total because her affidavit was submitted eight days after the motion for attorney fees was filed. The court rejects this last argument and will excuse the late filing of the affidavit given that Verloren is no longer with the Miller Cohen firm and was out of the country.

Reeser responds that time billed was not excessive given that the lawsuit lasted two years, and the amount billed was required to respond to the nearly 1,000 pages of motions filed by Henry Ford, the trial spanned seven days and seven witnesses testified at trial. Further, Reeser responds that it was partially successful in its response to Henry Ford's motion for a forensics examination of Reeser's telephone as Henry Ford was required to pay for the examination and Reeser was allowed to screen for relevancy and privilege. Reeser also disputes that the time billed was redundant, inconsistent or vague.

In determining the reasonable number of hours Reeser's attorneys billed, the court considers the attorneys' billing records in the context of the court's own experience and knowledge as to the time required to complete similar activities. The number of hours claimed here: 1,189.7 for pretrial and trial work for a total of $316,047.50, and 173.75 hours for a total of $45,260 for post-trial work, is grossly excessive and unreasonable. In a similar case brought under the WPA in this district, the court found that one hundred hours should have been a reasonable amount of time for the attorneys to have spent on the case. *Bailey v. Scoutware, LLC*, No. 12-10281, 2014 WL 11309770, at *2 (E.D. Mich. Aug. 19, 2014) (Edmunds, J.), *aff'd*, 599 F. App'x 257 (6th Cir. 2015). Like here, that matter involved a one week jury trial. *Id.* In that case, the jury awarded $18,000.00 in economic damages and $2,500.00 in non-economic damages for plaintiff's WPA claim. *Id.* at *1.

Similar to the matter pending here, counsel in *Bailey* claimed to have worked over 500 hours on the case, an assertion the court flatly rejected. *Id.* Similarly, here, the court determines that the most that could reasonably have been expended on the case pretrial and trial is 250 hours. Also, a reasonable amount of time to spend on the matter post-trial is 30 hours. The percentage of time spent on the case pretrial and trial as set

forth in the billing records submitted is as follows: Flynn 53 percent, Graham 39 percent, Verloren 7 percent, and Mack 1 percent. The court than allocates the 250 hours among the four billing attorneys: Flynn 133 hours at $275.00 for a total of $36,575, Graham 97.5 hours at $250.00 for a total of $24,375, Verloren 17.5 hours at $275.00 for a total of $4,812.50, Mack 2.5 hours at $300 for a total of $750. The sum total for all four attorneys for pretrial and trial work is $66,512.50.

The court now determines post-judgment fees. Flynn worked 43 percent of the time on post-judgment work and Graham worked 57 percent. Thus, the reasonable number of hours post-judgment for Flynn is 12.9 hours at the rate of $275.00 for a total of $3,547.50 and for Graham 17.1 hours at $250 for a total of $4,275 for a combined total of $7,822.50.

Combining the sums for pre-judgment and post-judgment work, the total lodestar amount is $74,335.

**C.    *Pirgu* Factors**

The court next considers the eight factors identified in *Pirgu* as deserving of individual discussion in determining whether an up or down adjustment is appropriate.

## 1. The Experience, Reputation, and Ability of the Lawyer or Lawyers Performing the Services.

The lead attorneys, Flynn and Graham, are graduates of Michigan State University Law School and the University of Michigan Law School respectively.  Flynn has been practicing law since 2010 and Graham since 2013, beginning with a clerkship.  Mack graduated from Wayne State University Law School in 1998 and Verloren acquired her bar license in 1997.  Flynn and Graham are associates and Mack is a partner of the law firm of Miller Cohen, P.L.C.  Verloren is a former associate of the firm.  Flynn states that Miller Cohen is one of the preeminent labor and employment law firms in the state, whose lawyers have been recognized in Michigan's Super Lawyer magazine, and the firm has been recognized in DBusiness Journal.  Recognizing the reputation of the Miller Cohen firm and the credentials of Plaintiff's counsel, this factor supports using the hourly rates advocated for by counsel.

## 2. The Difficulty of the Case.

This was a garden variety WPA action involving a routine employment dispute.  The issue was simple: Did Henry Ford fire Reeser because she sought to exercise her rights under the FLSA for a paid lunch hour? There were seven trial witnesses, and the trial lasted seven days.  There were no novel issues of law, and no special skills were necessary to

prosecute the case. The court has taken Henry Ford's dilatory conduct, as recognized by the Sixth Circuit, into account in determining the reasonable number of hours that should have been billed in this matter. This court has awarded over twice as many hours for a WPA claim as awarded by Judge Edmunds in *Bailey*, *supra*. In awarding significantly more hours than those awarded in *Bailey*, the court has factored in the obstreperous conduct of Henry Ford's counsel, who objected to every one of Reeser's proposed jury instructions, and even to jointly proposed instructions, at trial.

But as this court recognized in its prior opinion, Plaintiff's counsel also bears some responsibility in the overly litigious manner in which the case was prosecuted. It goes without saying the case could have been more straightforward and handled more efficiently. Any complexities in the lawsuit were the result of a lack of cooperation between the parties, the filing of numerous *in limine* and discovery motions that the parties should have been reasonably expected to resolve on their own, and the acrimonious nature of the suit. Based on these considerations, the court finds that no upward adjustment is warranted.

3.  **The Amount in Question and the Results Obtained.**

The Michigan Court of Appeals has emphasized that "the [United States] Supreme Court has held that the degree of a plaintiff's success is a

'crucial' factor in determining a proper award of attorney fees." *Schellenberg*, 228 Mich. App. at 47. Michigan courts recognize that a trial court may reduce an award of attorney fees on the basis of a plaintiff's limited success. *Id.* at 45-46. Here, the jury awarded Reeser a mere $3,200 on her WPA claim, and rejected her claim for FLSA retaliation outright. In fact, the jury awarded Reeser less than 0.5 percent of the $730,000 she sought at trial and significantly less than Defendant offered to settle the case. Given her severely limited success, the court deems it appropriate to reduce recoverable prejudgment attorney fees by twenty percent.

**4. The Expenses Incurred.**

Reeser identifies attorney fees incurred because of defense counsel's conduct, but it does not strike the court that this is what is meant by expenses incurred. In any event, the court has already considered those fees in determining the difficulty of the case. The court believes this factor speaks to costs incurred because of expert witnesses, videotaped depositions, the use of paralegals, and the like, and not to ordinary fees for legal work performed. Reeser has not identified any such expenses incurred, and thus this factor does not require an upward or downward adjustment.

**5. The Nature and Length of the Professional Relationship.**

Reeser's attorneys shared a two-year professional relationship with their client. This factor does not suggest either increasing or decreasing attorney fees to be awarded.

**6. The Likelihood, if Apparent to the Client, that Acceptance of the Particular Employment Will Preclude Other Employment by the Lawyer.**

Reeser does not address this factor in her motion for attorney fees. In any event, it does not appear to the court that accepting Reeser's case would prevent her attorneys from taking on other work. Thus, this factor does not weigh in favor of an upward adjustment.

**7. The Time Limitations Imposed by the Client or by the Circumstances.**

Reeser filed her lawsuit in May, 2014 and following a stipulation to extend the scheduling order, the matter proceeded to a jury trial in May, 2016. There were no unusual time limitations imposed by Reeser or by the circumstances of the case which would warrant an upward adjustment.

**8. Whether the Fee is Fixed or Contingent.**

The attorney fee in this matter was contingent which weighs in favor of an award of fees here but does not require an upward adjustment.

In sum, upon consideration of the eight factors outlined in *Pirgu*, the court determines it appropriate to adjust downward the pretrial and trial

attorney fees in the amount of $66,512.50 by twenty percent for a total award of $53,210. The court does not adjust the post-judgment fee award of $7,822.50. Combining the sums for pre-judgment and post-judgment work, the total amount to be awarded is $61,032.50.

### 9. Settlement Offers.

Although settlement offers were not specifically mentioned as a factor to be considered in *Pirgu*, the court also considers that Henry Ford offered $10,000 and $15,000 to settle the case, amounts which were significantly more than the $3,200 Reeser recovered at trial. This factor bolsters the court's decision to adjust the lodestar amount downward by twenty percent.

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion for attorney fees (Doc. 112) and plaintiff's supplemental motion for attorney fees (Doc. 145) are GRANTED. Defendant is ORDERED to pay $61,032.50 in attorneys' fees to plaintiff within sixty (60) days of this order, or upon arrangement between the parties.

**IT IS SO ORDERED.**

Dated: October 4, 2017

                                              s/George Caram Steeh
                                              GEORGE CARAM STEEH
                                              UNITED STATES DISTRICT JUDGE

- 17 -

---

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon attorneys of record on October 4, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---